# Exhibit 3

Doc Code: PA
Document Description: Power of Attorney

PTO/AIA/82A (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# TRANSMITTAL FOR POWER OF ATTORNEY TO ONE OR MORE REGISTERED PRACTITIONERS

NOTE: This form is to be submitted with the Power of Attorney by Applicant form (PTO/AIA/82B) to identify the application to which the Power of Attorney is directed, in accordance with 37 CFR 1.5, unless the application number and filing date are identified in the Power of Attorney by Applicant form. If neither form PTO/AIA/82A nor form PTO/AIA82B identifies the application to which the Power of Attorney is directed, the Power of Attorney will not be recognized in the application.

| | |
|---|---|
| Application Number | Not Yet Assigned |
| Filing Date | Concurrently Herewith |
| First Named Inventor | Peter DILWORTH |
| Title | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| Art Unit | Not Yet Assigned |
| Examiner Name | Not Yet Assigned |
| Attorney Docket Number | 092749-0213 |

**SIGNATURE of Applicant or Patent Practitioner**

| | | | |
|---|---|---|---|
| Signature | /Douglas B. Espenschied/ | Date (Optional) | August 7, 2015 |
| Name | Douglas B. Espenschied | Registration Number | 66607 |
| Title (if Applicant is a juristic entity) | Attorney for Applicant | | |
| Applicant Name (if Applicant is a juristic entity) | WobbleWorks, Inc. | | |

**NOTE:** This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4(d) for signature requirements and certifications. If more than one applicant, use multiple forms.

☑ *Total of 1 forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

Doc Code: PA..
Document Description: Power of Attorney

PTO/AIA/82B (07-13)
Approved for use through 11/30/2014. OMB 0651-0051
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

# POWER OF ATTORNEY BY APPLICANT

I hereby revoke all previous powers of attorney given in the application identified in either the attached transmittal letter or the boxes below.

| Application Number | Filing Date |
|---|---|
| | |

(Note: The boxes above may be left blank if information is provided on form PTO/AIA/82A.)

☑ I hereby appoint the Patent Practitioner(s) associated with the following Customer Number as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above: 31824

**OR**

☐ I hereby appoint Practitioner(s) named in the attached list (form PTO/AIA/82C) as my/our attorney(s) or agent(s), and to transact all business in the United States Patent and Trademark Office connected therewith for the patent application referenced in the attached transmittal letter (form PTO/AIA/82A) or identified above. (Note: Complete form PTO/AIA/82C.)

**Please recognize or change the correspondence address for the application identified in the attached transmittal letter or the boxes above to:**

☑ The address associated with the above-mentioned Customer Number

**OR**

☐ The address associated with Customer Number:

**OR**

| | | | | | |
|---|---|---|---|---|---|
| Firm or Individual Name | | | | | |
| Address | | | | | |
| City | | State | | Zip | |
| Country | | | | | |
| Telephone | | Email | | | |

I am the Applicant (if the Applicant is a juristic entity, list the Applicant name in the box):

WobbleWorks, Inc.

☐ Inventor or Joint Inventor (title not required below)

☐ Legal Representative of a Deceased or Legally Incapacitated Inventor (title not required below)

☑ Assignee or Person to Whom the Inventor is Under an Obligation to Assign (provide signer's title if applicant is a juristic entity)

☐ Person Who Otherwise Shows Sufficient Proprietary Interest (e.g., a petition under 37 CFR 1.46(b)(2) was granted in the application or is concurrently being filed with this document) (provide signer's title if applicant is a juristic entity)

**SIGNATURE of Applicant for Patent**

The undersigned (whose title is supplied below) is authorized to act on behalf of the applicant (e.g., where the applicant is a juristic entity).

| | | | |
|---|---|---|---|
| Signature | [signature] | Date (Optional) | 03 June 2014 |
| Name | Peter Dilworth | | |
| Title | Vice President, WobbleWorks, Inc. | | |

**NOTE:** Signature - This form must be signed by the applicant in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications. If more than one applicant, use multiple forms.

☐ Total of forms are submitted.

This collection of information is required by 37 CFR 1.131, 1.32, and 1.33. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 3 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

# Privacy Act Statement

The **Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| | |
|---|---|
| **Title of Invention** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |

As the below named inventor, I hereby declare that:

This declaration is directed to:

[x] The attached application, or

[ ] United States application or PCT international application number ________ filed on ________.

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

**WARNING:**

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Maxwell BOGUE Date (Optional): 3/14/13

Signature: [signature]

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| Title of Invention | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number ____________ filed on ____________ .

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

**WARNING:**

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Peter DILWORTH Date (Optional): 3/14/2013

Signature: [signature]

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 092749-0213 |
|---|---|---|
| | Application Number | |

| Title of Invention | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
|---|---|

The application data sheet is part of the provisional or nonprovisional application for which it is being submitted. The following form contains the bibliographic data arranged in a format specified by the United States Patent and Trademark Office as outlined in 37 CFR 1.76.
This document may be completed electronically and submitted to the Office in electronic format using the Electronic Filing System (EFS) or the document may be printed and included in a paper filed application.

## Secrecy Order 37 CFR 5.2

☐ Portions or all of the application associated with this Application Data Sheet may fall under a Secrecy Order pursuant to 37 CFR 5.2 (Paper filers only. Applications that fall under Secrecy Order may not be filed electronically.)

## Inventor Information:

**Inventor 1** [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Peter | | DILWORTH | |

**Residence Information (Select One)** ◉ US Residency ○ Non US Residency ○ Active US Military Service

| City | Somerville | State/Province | MA | Country of Residence i | US |
|---|---|---|---|---|---|

**Mailing Address of Inventor:**

| | | | |
|---|---|---|---|
| **Address 1** | 23 Monmouth Street | | |
| **Address 2** | | | |
| **City** | Somerville | **State/Province** | MA |
| **Postal Code** | 02143 | **Country i** | US |

**Inventor 2** [Remove]

**Legal Name**

| Prefix | Given Name | Middle Name | Family Name | Suffix |
|---|---|---|---|---|
| | Maxwell | | BOGUE | |

**Residence Information (Select One)** ○ US Residency ◉ Non US Residency ○ Active US Military Service

| City | Hong Kong | Country of Residence i | HK |
|---|---|---|---|

**Mailing Address of Inventor:**

| | | | |
|---|---|---|---|
| **Address 1** | 1209 Orange Street | | |
| **Address 2** | | | |
| **City** | Wellesley | **State/Province** | MA |
| **Postal Code** | 19801 | **Country i** | US |

All Inventors Must Be Listed - Additional Inventor Information blocks may be generated within this form by selecting the **Add** button. [Add]

## Correspondence Information:

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 092749-0213 |
|---|---|---|
| | Application Number | |
| Title of Invention | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | |

**Enter either Customer Number or complete the Correspondence Information section below.**
**For further information see 37 CFR 1.33(a).**

☐ **An Address is being provided for the correspondence Information of this application.**

| | | | |
|---|---|---|---|
| **Customer Number** | 31824 | | |
| **Email Address** | | Add Email | Remove Email |

## Application Information:

| | | | |
|---|---|---|---|
| **Title of the Invention** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | | |
| **Attorney Docket Number** | 092749-0213 | **Small Entity Status Claimed** | ☒ |
| **Application Type** | Nonprovisional | | |
| **Subject Matter** | Utility | | |
| **Total Number of Drawing Sheets (if any)** | 4 | **Suggested Figure for Publication (if any)** | |

## Filing By Reference :

Only complete this section when filing an application by reference under 35 U.S.C. 111(c) and 37 CFR 1.57(a). Do not complete this section if application papers including a specification and any drawings are being filed. Any domestic benefit or foreign priority information must be provided in the appropriate section(s) below (i.e., "Domestic Benefit/National Stage Information" and "Foreign Priority Information").

For the purposes of a filing date under 37 CFR 1.53(b), the description and any drawings of the present application are replaced by this reference to the previously filed application, subject to conditions and requirements of 37 CFR 1.57(a).

| Application number of the previously filed application | Filing date (YYYY-MM-DD) | Intellectual Property Authority or Country i |
|---|---|---|
| | | |

## Publication Information:

☐ Request Early Publication (Fee required at time of Request 37 CFR 1.219)

☐ **Request Not to Publish.** I hereby request that the attached application not be published under 35 U.S.C. 122(b) and certify that the invention disclosed in the attached application **has not and will not** be the subject of an application filed in another country, or under a multilateral international agreement, that requires publication at eighteen months after filing.

## Representative Information:

Representative information should be provided for all practitioners having a power of attorney in the application. Providing this information in the Application Data Sheet does not constitute a power of attorney in the application (see 37 CFR 1.32).
Either enter Customer Number or complete the Representative Name section below. If both sections are completed the customer Number will be used for the Representative Information during processing.

| | | | |
|---|---|---|---|
| Please Select One: | ◉ Customer Number | ○ US Patent Practitioner | ○ Limited Recognition (37 CFR 11.9) |
| Customer Number | 31824 | | |

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 092749-0213 |
|---|---|---|
| | Application Number | |
| Title of Invention | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | |

## Domestic Benefit/National Stage Information:

This section allows for the applicant to either claim benefit under 35 U.S.C. 119(e), 120, 121, or 365(c) or indicate National Stage entry from a PCT application. Providing this information in the application data sheet constitutes the specific reference required by 35 U.S.C. 119(e) or 120, and 37 CFR 1.78.
When referring to the current application, please leave the application number blank.

| Prior Application Status | Pending | | Remove |
|---|---|---|---|
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| | Continuation of | 13831050 | 2013-03-14 |
| Prior Application Status | Expired | | Remove |
| Application Number | Continuity Type | Prior Application Number | Filing Date (YYYY-MM-DD) |
| 13831050 | Claims benefit of provisional | 61733689 | 2012-12-05 |
| Additional Domestic Benefit/National Stage Data may be generated within this form by selecting the **Add** button. | | | Add |

## Foreign Priority Information:

This section allows for the applicant to claim priority to a foreign application. Providing this information in the application data sheet constitutes the claim for priority as required by 35 U.S.C. 119(b) and 37 CFR 1.55(d). When priority is claimed to a foreign application that is eligible for retrieval under the priority document exchange program (PDX) i the information will be used by the Office to automatically attempt retrieval pursuant to 37 CFR 1.55(h)(1) and (2). Under the PDX program, applicant bears the ultimate responsibility for ensuring that a copy of the foreign application is received by the Office from the participating foreign intellectual property office, or a certified copy of the foreign priority application is filed, within the time period specified in 37 CFR 1.55(g)(1).

| | | | Remove |
|---|---|---|---|
| Application Number | Country i | Filing Date (YYYY-MM-DD) | Access Code i (if applicable) |
| | | | |
| Additional Foreign Priority Data may be generated within this form by selecting the **Add** button. | | | Add |

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Application Data Sheet 37 CFR 1.76 | Attorney Docket Number | 092749-0213 |
|---|---|---|
| | Application Number | |
| Title of Invention | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | |

## Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications

☐ This application (1) claims priority to or the benefit of an application filed before March 16, 2013 and (2) also contains, or contained at any time, a claim to a claimed invention that has an effective filing date on or after March 16, 2013.
NOTE: By providing this statement under 37 CFR 1.55 or 1.78, this application, with a filing date on or after March 16, 2013, will be examined under the first inventor to file provisions of the AIA.

## Authorization to Permit Access:

☒ Authorization to Permit Access to the Instant Application by the Participating Offices

If checked, the undersigned hereby grants the USPTO authority to provide the European Patent Office (EPO), the Japan Patent Office (JPO), the Korean Intellectual Property Office (KIPO), the World Intellectual Property Office (WIPO), and any other intellectual property offices in which a foreign application claiming priority to the instant patent application is filed access to the instant patent application. See 37 CFR 1.14(c) and (h). This box should not be checked if the applicant does not wish the EPO, JPO, KIPO, WIPO, or other intellectual property office in which a foreign application claiming priority to the instant patent application is filed to have access to the instant patent application.

In accordance with 37 CFR 1.14(h)(3), access will be provided to a copy of the instant patent application with respect to: 1) the instant patent application-as-filed; 2) any foreign application to which the instant patent application claims priority under 35 U.S.C. 119(a)-(d) if a copy of the foreign application that satisfies the certified copy requirement of 37 CFR 1.55 has been filed in the instant patent application; and 3) any U.S. application-as-filed from which benefit is sought in the instant patent application.

In accordance with 37 CFR 1.14(c), access may be provided to information concerning the date of filing this Authorization.

## Applicant Information:

Providing assignment information in this section does not substitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 092749-0213 |
|---|---|---|
| | Application Number | |

| Title of Invention | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
|---|---|

**Applicant 1** Remove

If the applicant is the inventor (or the remaining joint inventor or inventors under 37 CFR 1.45), this section should not be completed. The information to be provided in this section is the name and address of the legal representative who is the applicant under 37 CFR 1.43; or the name and address of the assignee, person to whom the inventor is under an obligation to assign the invention, or person who otherwise shows sufficient proprietary interest in the matter who is the applicant under 37 CFR 1.46. If the applicant is an applicant under 37 CFR 1.46 (assignee, person to whom the inventor is obligated to assign, or person who otherwise shows sufficient proprietary interest) together with one or more joint inventors, then the joint inventor or inventors who are also the applicant should be identified in this section.

Clear

- (●) Assignee
- ( ) Legal Representative under 35 U.S.C. 117
- ( ) Joint Inventor
- ( ) Person to whom the inventor is obligated to assign.
- ( ) Person who shows sufficient proprietary interest

If applicant is the legal representative, indicate the authority to file the patent application, the inventor is:

Name of the Deceased or Legally Incapacitated Inventor :

If the Applicant is an Organization check here. [X]

| Organization Name | WobbleWorks, Inc. |
|---|---|

**Mailing Address Information:**

| | | | |
|---|---|---|---|
| **Address 1** | 1209 Orange Street | | |
| Address 2 | | | |
| **City** | Wilmington | **State/Province** | DE |
| **Country** i | US | Postal Code | 19801 |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Applicant Data may be generated within this form by selecting the Add button. Add

## Assignee Information including Non-Applicant Assignee Information:

Providing assignment information in this section does not subsitute for compliance with any requirement of part 3 of Title 37 of CFR to have an assignment recorded by the Office.

**Assignee 1**

Complete this section if assignee information, including non-applicant assignee information, is desired to be included on the patent application publication . An assignee-applicant identified in the "Applicant Information" section will appear on the patent application publication as an applicant. For an assignee-applicant, complete this section only if identification as an assignee is also desired on the patent application publication.

Remove

If the Assignee or Non-Applicant Assignee is an Organization check here. [ ]

PTO/AIA/14 (12-13)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **Application Data Sheet 37 CFR 1.76** | Attorney Docket Number | 092749-0213 |
|---|---|---|
| | Application Number | |

| Title of Invention | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
|---|---|

| Prefix | **Given Name** | Middle Name | **Family Name** | Suffix |
|---|---|---|---|---|
| | | | | |

**Mailing Address Information For Assignee including Non-Applicant Assignee:**

| | | | |
|---|---|---|---|
| **Address 1** | | | |
| Address 2 | | | |
| **City** | | **State/Province** | |
| **Country** i | | Postal Code | |
| Phone Number | | Fax Number | |
| Email Address | | | |

Additional Assignee or Non-Applicant Assignee Data may be generated within this form by selecting the Add button. Add

## Signature:

Remove

NOTE: This form must be signed in accordance with 37 CFR 1.33. See 37 CFR 1.4 for signature requirements and certifications

| **Signature** | /Douglas B. Espenschied/ | | | Date (YYYY-MM-DD) | 2015-08-07 |
|---|---|---|---|---|---|
| First Name | Douglas B. | Last Name | Espenschied | Registration Number | 66607 |

Additional Signature may be generated within this form by selecting the Add button. Add

This collection of information is required by 37 CFR 1.76. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 23 minutes to complete, including gathering, preparing, and submitting the completed application data sheet form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

Attorney Docket No.: 092749-0213

U.S. PATENT APPLICATION FOR

# HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

Inventors: Peter Dilworth, residing at
Somerville, Massachusetts 02143

Maxwell BOGUE, residing at
Hong Kong, Hong Kong

Assignee: WobbleWorks, Inc.
1209 Orange Street
Wilmington, DE 19801

Entity: Small

McDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, D.C. 20001-1531
(949) 851-0633

# HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

## CROSS-REFERENCE TO RELATED APPLICATIONS

**[0001]** The present application is a continuation of U.S. Application Serial No. 13/831,050, filed March 14, 2013, which claims benefit of and priority to U.S. Provisional Patent Application Serial No. 61/733,689, filed on December 5, 2012, the entirety of each of which is hereby incorporated herein by reference.

## BACKGROUND

### Field

**[0002]** The present disclosure relates to extrusion devices and, in particular, a hand-held implement configured to extrude a material so as to construct three-dimensional (3D) objects.

### Description of the Related Art

**[0003]** Three-dimensional printers are known which may be used to produce 3D items of all types. Certain printers operate by deposition of sequential layers of plastic while others function by sequential agglomeration or solidification of layers of a precursor material. These printers tend to be large and expensive and require the design to be provided as a computer file, for example as generated by a Computer-Aided Design (CAD) program.

**[0004]** U.S. Patent 3,665,158 to Froedge discloses a conventional handheld extrusion device. A chamber is filled with a granulated solid plastic material and then sealed with a cap. The contents of the chamber are heated to melt the plastic and create pressure within the chamber. A passage leads from the chamber to a rotatable nozzle that blocks flow in a first position and allows flow in a second position. A trigger is attached to the nozzle such that pulling the trigger moves the nozzle to the second position, thereby allowing the molten plastic to be expelled from the nozzle due to the pressure within the chamber. Releasing the trigger allows the nozzle to return to the first position, thereby stopping the flow of plastic. There is no provision to replenish the raw material without shutting off the device nor any mechanism to mechanically

feed material to the nozzle at a constant rate. In addition, Froedge's system does not provide a means of cooling the extruded material.

## SUMMARY

**[0005]** It is desirable to provide a reliable, easily refillable hand-held device to form 2D and 3D items without the need for computerized design files. The present disclosure describes a hand-held device that allows a user to "draw" a 3D structure with a feed stock that can be replenished while in continuous use.

**[0006]** In certain embodiments, a 3D drawing device is disclosed that includes a housing configured for manipulation by a user's hand and to accept a feed stock, a nozzle assembly at least partially disposed within the housing and having an exit nozzle, a motor disposed within the housing, and a gear train disposed within the housing and coupled between the motor and the feed stock and configured such that rotation of the motor causes the feed stock to be extruded out of the exit nozzle to form a three-dimensional object.

**[0007]** In certain embodiments, a 3D drawing device is disclosed that includes a housing configured for manipulation by a user's hand and to accept a feed stock. The housing has an internal volume and at least one cooling port in fluid communication with the internal volume. The 3D drawing device also includes a nozzle assembly at least partially disposed within the housing proximate to the at least one cooling port and having an exit nozzle, a fan disposed within the housing and configured to draw air into the internal volume and then force the air out of the at least one cooling port, a motor disposed within the housing, and an actuator coupled to the housing. Actuation of the actuator causes the feed stock to be extruded out of the exit nozzle to form a three-dimensional object.

## BRIEF DESCRIPTION OF THE DRAWINGS

**[0008]** The accompanying drawings, which are included to provide further understanding and are incorporated in and constitute a part of this specification, illustrate disclosed embodiments and together with the description serve to explain the principles of the disclosed embodiments. In the drawings:

**[0009]** FIG. 1 is a perspective view of an exemplary 3D drawing device according to certain aspects of the present disclosure.

**[0010]** FIG. 2 is a cut-way view of the device of FIG. 1 with a portion of the housing removed according to certain aspects of the present disclosure.

**[0011]** FIGS. 3A-3B are cross-sectional and cutaway views of the device of FIG. 1 according to certain aspects of the present disclosure.

**[0012]** FIGS. 4A-4B are plan and perspective views of the feed mechanism according to certain aspects of the present disclosure.

**[0013]** FIGS. 5A-5B are perspective and cutaway views of another embodiment of a 3D drawing device according to certain aspects of the present disclosure.

DETAILED DESCRIPTION

**[0014]** The present disclosure describes a hand-held device that allows a user to "draw" a 2D or 3D structure and to easily refill or replace the feed stock.

**[0015]** The detailed description set forth below is intended as a description of various configurations of the subject technology and is not intended to represent the only configurations in which the subject technology may be practiced. The appended drawings are incorporated herein and constitute a part of the detailed description. The detailed description includes specific details for the purpose of providing a thorough understanding of the subject technology. However, it will be apparent to those skilled in the art that the subject technology may be practiced without these specific details. In some instances, well-known structures and components are shown in block diagram form in order to avoid obscuring the concepts of the subject technology. Like components are labeled with identical element numbers for ease of understanding.

**[0016]** As used within this disclosure, the phrase “feed stock” means any material provided in any form suitable for processing within the 3D drawing device so as to provide the desired output stream. Feed stock may be a thermoplastic such as acrylonitrile butadiene styrene (ABS),

polyvinyl chloride (PVC) or a polylactic acid (PLA), a thermoset material such as an epoxy, a metal such as tin or lead or a mixture of metals. Feed stock may be a single material or a mixture of materials, such as a rod having particles of a first material dispersed within a matrix of a second material.

**[0017]** FIG. 1 is a perspective view of an exemplary 3D drawing device 100 according to certain aspects of the present disclosure. The device 100 includes a housing 110 in which a control assembly 120, a nozzle assembly 130, a fan assembly 140 are provided. The housing 110 may be sized and configured to fit in a user's hand and suitably shaped to allow for manipulation like a pen or pencil. An actuator, for example buttons 122 and 124 in this embodiment, may be positioned to allow the user to actuate either the actuator while holding the device 100. In this embodiment, the user may actuate one or both of buttons 122, 124 while manipulating the 3D drawing device 100. In this embodiment, the device 100 is configured to accept a feed stock 20 in the form of a strand that may be 3 mm in diameter. In certain embodiments, the feed stock 20 may be provided as a cut length, for example 30 cm in length, or as a continuous strand drawn from a spool (not shown in FIG. 1). includes an input portal 18, or other input element, such as a hopper, for example, through which a raw material 19 is provided to the implement 10. The feed stock 20 may be a thermoplastic material, for example a PVC, an ABS, or a PLA, however, other embodiments may accept other types of material, such as a thermoset plastic or a metal or combination of materials.

**[0018]** In an example of use of one embodiment of the device 100, the user selects a particular type and color of a thermoplastic feed stock 20 and introduces the feed stock 20 into the entrance port 115 (see FIG. 2) and connects a power cord (not shown in FIG. 1) to a power source, such as a wall outlet. In certain embodiments, the 3D drawing device 100 may include a portable power source (not shown in FIGS. 1-2), for example a lithium polymer battery, to power the device 100. After a warm-up period, the user may press button 122 while drawing a line on a surface with the device 100, for example tracing a pattern on a printed sheet, in a manner similar to drawing a line with a pencil. A column 22 of the feed stock 20 is extruded from the nozzle assembly while the button 122 is depressed. In certain embodiments, the column 22 may be 0.3 mm in diameter. If the user moves the device along the surface at approximately the same speed as the rate of extrusion of the column 22, the user will create a solid, three-dimensional

"line" on the surface. In certain embodiments, the feed stock 20 exists the nozzle assembly 130 in essentially a solid form such that the extruded column retains its shape. In certain embodiments, freshly extruded feed stock 20 will bond to previously extruded columns 22 such that a structure may be formed by drawing a line across to onto a previously drawn column 22.

**[0019]** In certain embodiments, button 122 may cause the feed stock 20 to be extruded at a first rate, for example 2.6 mm/sec, while the second button 124 may cause the feed stock 20 to be extruded at a second rate, for example 5.0 mm/sec. In certain embodiments, the first rate may be in the range of 0.1-10.0 mm/sec and the second rate may be in the range of 2-50 mm/sec. In certain embodiments, the first and second rates are chosen to provide a speed appropriate for the intended user, for example a device 100 intended for use by a young child may have slower rates than a device 100 intended for an adult artist. In certain embodiments, the 3D drawing device 100 may include a variable speed control mechanism (not shown in FIG. 1-2) to allow the user to adjust one or more of the rates of extrusion. In certain embodiments, the variable speed control mechanism may include a dial. In certain embodiments, releasing either of the buttons 122, 124 may cause the internal mechanism to draw the feed stock 20 backward a certain amount, thereby breaking off the extruded column 22. In this manner, the user can "write" with the 3D drawing device 100 in much the same manner as they would with a pen except they can do so in three dimensions since the extruded material is three-dimensional. The user can create free-form lines, shapes or other objects, as desired. A user may additionally use stencils or other guides in order to create desired objects such as sculpture, jewelry, artistic pieces, etc. In addition, or in the alternative, the 3D drawing device 100 may be used to repair or enhance existing objects and structures. In certain embodiments, pressing both buttons 122, 124 at the same time may cause another action, such as expelling the unused portion of the feed stock 20 from the entrance port 115 such that the user may switch to a different color or type of feed stock 20.

**[0020]** FIG. 2 is a cut-way view of the device 100 of FIG. 1 with a portion of the housing 110 removed according to certain aspects of the present disclosure. It can be seen that a circuit assembly 126 is positioned under the switches 122, 124 and a feed mechanism 150 is disposed on the lower housing 114, with the feed stock 20 entering through the entrance port 115 and passing over and between elements of the feed mechanism 150, which is discussed in greater

detail with respect to FIGS. 4A-4B. In certain embodiments, the circuit assembly 126 may include a processor while, in certain embodiments, the circuit assembly 126 may include analog circuit elements such as mechanical switches, resistors, capacitors, and other electrical elements (not visible in FIG. 2) as known to those of skill in the art. In certain embodiments, the circuit assembly 126 may include a power conditioning circuit (not shown) that converts power from the power source to a different form, such as a direct current (DC) voltage. In certain embodiments, the circuit assembly 126 may include a portable power source (not shown in FIG. 2). In certain embodiments, the circuit assembly 126 may be connected to an external power source through a power cord (not shown in FIGS. 1-2). In certain embodiments, the 3D drawing device 100 also includes an external control interface 127 that is connected to the circuit assembly 126 and configured to accept actuation commands from a remote system, such as a computer numerical control (CNC) machine. In certain embodiments, the housing 110 may be adapted for mounting on a tool interface of a CNC machine such that the machine can manipulate the 3D drawing device 100 to create 3D objects. For example, the external control interface 127 may include three electrical pins, wherein a pin 1 is a common such as a ground, a pin 2 that is coupled to the button 122 such that provision of a DC voltage across pin 1 and pin 2 is equivalent to pressing button 122, and a pin 3 that is coupled to the button 124 such that provision of a DC voltage across pin 1 and pin 3 is equivalent to pressing button 124. In certain embodiments, the external control interface 127 may be configured to accept signals through a radio frequency (RF) or optical wireless system. In certain embodiments, the external control interface 127 may be configured to accept signals through a fiber-optic cable.

**[0021]** FIGS. 3A-3B are cross-sectional and cutaway views of the device 100 of FIG. 1 according to certain aspects of the present disclosure. FIG. 3A is a side view of the entire 3D drawing device 100, showing how the upper housing 112 and lower housing 114 together form an internal volume 116 in which is located the feed mechanism 150. At the right end, it can be seen that the nozzle assembly 130 includes an extruder 132 and a guide tube 134, which are discussed in greater detail with respect to FIG. 3B. the fan assembly 140 includes a fan cover 142, which is stationary and attached to the upper housing 112, an impeller 14 located underneath the cover 142 and configured to draw air into the internal volume 116 through ports (not visible in FIG. 3A) in the cover 142. A motor 146 is mounted, in this example, to the lower

housing 114 and drives the impeller 144 at a constant speed. The air that is drawn into the internal volume may, in certain embodiments, flow out through either cooling ports 118 in the upper and lower housings 112, 114. The cooling ports 118 are discussed in greater detail with respect to FIG. 3B. It can be seen in FIG. 3A that, in this embodiment, the feed stock 20 follows a straight path though the device 100.

**[0022]** FIG. 3B is a close-up, cutaway view of the nozzle assembly 130. The extruder 132 has a first chamber 135 formed as a cylindrical bore of approximately the same diameter as the feed stock 20 and an extrusion passage 133 of a smaller diameter, terminating in an exit nozzle 133A. In certain embodiments, the first chamber 135 may have a first diameter of 3 mm while the extrusion passage 133 has a diameter of 0.3 mm. In certain embodiments, the extruder 132 is formed of a thermally conductive material, for example a metal or a ceramic, with a heating element, for example a nichrome wire, (not visible in FIG. 3B) wound around the exterior circumference. When the device 100 is connected to a power source, the heating element raises the temperature of the extruder 132 to a temperature that may be above the melting point of the feed stock 20. In certain embodiments, the nozzle assembly 130 includes a temperature sensor that is connected to the circuit assembly 126 which may include a temperature control circuit to regulate the power to the heater element so as to maintain the temperature of the extruder 132 within a desired range of a setpoint. As systems and methods for temperature regulation are known to those of skill in the art, the details are not provided herein. In certain embodiments, an indicator (not shown), for example an LED, may be provided to indicate that the extruder 132 has reached a temperature sufficient to melt the feed stock 20.

**[0023]** In certain embodiments, for example with a feed stock comprising a plastic, the temperature of the extruder 132 may be in the range of 20-500 °C. In certain embodiments, for example with a feed stock comprising a metal, the temperature of the extruder 132 may be in the range of 1000-2000 °C. In certain embodiments, for example with a feed stock comprising a metal such as lead, tin, or mixtures thereof, the temperature of the extruder 132 may be in the range of 100-400 °C. In certain embodiments, for example with a feed stock comprising a metal such as copper, gold, silver or mixtures thereof, the temperature of the extruder 132 may be in the range of 1000-1200 °C. In certain embodiments, for example with a feed stock comprising a metal such as platinum, the temperature of the extruder 132 may be in the range of

1600-2000 °C. In certain embodiments, the 3D drawing device 100 may include a variable temperature controller (not shown) that is connected to the circuit assembly 126 to allow a user to select a setpoint temperature for the extruder 132. In certain embodiments, the variable temperature controller may allow the use to select a type of material, for example "thermoplastic," and the circuit assembly 126 will adjust the setpoint temperature of the extruder 132. In certain embodiments, the variable temperature controller may include a dial.

**[0024]** A guide tube 134 is aligned with the first chamber 135 of the extruder 132 such that feed stock passing through the guide tube 134 enters the first chamber 135. In certain embodiments, the guide tube 134 may be formed of a low-friction material, such as polytetrafluoroethylene (PTFE), so allow the feed stock 20 to slide easily while also minimizing the gap between the guide tube 134 and feed stock 20. The extruder 132 and guide tube 134 are held in alignment by a mounting tube 138. In certain embodiments, the mounting tube 138 is formed of a metal having a relatively low thermal conductivity, compared to other metals. In certain embodiments, the mounting tube 138 may be a stainless steel. In certain embodiments, an insulating film (not visible in FIG. 3B), for example a polyimide tape, may be applied over the heating element and under the mounting tube 138.

**[0025]** In certain embodiments, an insulator 131 may be provided over the mounting tube 138 so as to reduce the amount of heat transferred from the extruder 132 to the upper and lower housings 112, 114. In certain embodiments, one or both of the upper and lower housings 112, 114 may have cooling ports 118 formed therethrough such that air can flow from the interior volume 116 to the ambient atmosphere. In certain embodiments, the passages formed in the top and bottom housings 112, 114 that lead to the cooling ports 118 may be angled such that the air that emerges from the cooling ports 118 is directed inward toward the tip 137. Thus, as the air exits the cooling ports 118, the air passes by the tip 137 of the extruder 132, cooling both the tip 137 and the feed stock 20 that just been extruded from the extrusion passage 133. Both of these cooling effects serve to reduce the temperature of the feed stock 20 as it exits the extrusion passage 133 such that the feed stock 20 may be essentially solid as it exits the extrusion passage 133. In certain embodiments, the freshly extruded feed stock 20 may be pliable and formable into various shapes. In certain embodiments, the surface of the freshly

extruded feed stock 20 may be receptive to attachment, *e.g.* sticky, such that the extruded material will bond to other previously extruded feed stock 20.

**[0026]** In certain embodiments, there may be a gap between the insulator 131 and the mounting tube 138. In certain embodiments, this gap may provide a thermal break so as to further thermally isolate the upper and lower housings 112, 114 from the extruder 132.

**[0027]** As the feed stock 20 is driven toward the extrusion passage 133 by the feed mechanism 150 (not shown in FIG. 3B), the portion of the feed stock 20 that is within the extruder 132 will be heated by the extruder 132 such that the feed stock 20 within the first chamber 135 softens or melts. As the solid feed stock 20 is forced forward, the softened or molten feed stock 20 will be forced out through the extrusion passage 133 and emerge from the tip 137, where the cooling air that is flowing out of the cooling ports 118 flows over the freshly extruded feed stock 20, thereby cooling and solidifying the feed stock 20. In certain embodiments, a portion of the extruder 132 that extends outward beyond a front plane 102 may be cooled to a temperature below the temperature of the main portion of the extruder 132 by the air flowing out of the cooling ports 118. In certain embodiments, the temperature of the tip 137 may be below the melting point of the feed stock 20.

**[0028]** FIGS. 4A-4B are plan and perspective views of the feed mechanism 150 according to certain aspects of the present disclosure. FIG. 4A shows a series of gear pairs 153, 154, 155, 156, and 157 that are driven by the motor 152 through a spur gear (not visible in FIG. 4A) that is attached to the rotor of the motor 152. Each gear pair has a large gear and a small gear that are fixedly attached to each other and rotate about a common axis. The small gear of the motor 152 drives the large gear 153A, which causes the small gear 153B to drive the large gear 154A. In certain embodiments, the large gears 153A, 154A, 155A, 156A, and 157A each may have 40 teeth while the small gears 153B, 154B, 155B and 156B (not visible in FIG. 4A), and 157B may have 12 teeth, providing a 40:12 step-down ratio between each gear pair. In certain embodiments, the step-down from the motor 152 to the small gear 157B may be 5*(40:12) or approximately 17:1, *i.e.* seventeen complete rotations of the motor 152 causes only one complete rotation of the small gear 157B. In certain embodiments, the gear pairs 153, 154, 155, 156, and 157 may have a different number of teeth on the large and/or small gears. In certain

embodiments, the gear pairs 153, 154, 155, 156, and 157 may not have the same number of teeth on each corresponding large or small gear.

**[0029]** In use, the use of a motor 152 to drive a step-down gear train 150 to control the advancement of the feed stock 20 provides an improved level of control over the rate of extrusion of the feed stock 20. For example, a conventional glue gun has a direct linkage between a trigger and the glue stick, such that pressure on the trigger on the trigger is directly transferred to the rod. The rate of advancement of the glue stick, and therefore the rate of extrusion, is dependent upon the viscosity of the melted glue and therefore caries over a die range. This often results in excessive glue being dispensed. In addition, since releasing the trigger does not retract the glue stick, there is frequently a "tail" of glue drawn out of the glue gun as the nozzle is moved away from the dispensing location. In contrast, the disclosed 3D drawing device 100 provides a constant rate of extrusion, for example 3 mm/sec, due to the controlled motion provided by the motor 152 and gear train 150. In addition, the circuit assembly 126 causes the motor 152 to briefly run in reverse when the button 122 is released, thereby retracting the feed stock 20 slightly and drawing the melted feed stock 20 that is within the extrusion passage 133 back into the extruder 132, thereby cleanly severing the extruded column 22 from the tip 137.

**[0030]** FIG. 4B shows how the teeth of the final small gear 157B engage the feed stock 20. In this embodiment, the feed stock 20 passes by a post 119 of the lower housing 114, then by the small gear 157B, and then into the guide tube 134. In certain embodiments, the gear 157B is positioned such that the teeth press against the feed stock 20, which is restrained from lateral motion away from the teeth of gear 157B by the post 119 and the guide tube 134, such that rotation of the gear 157B applies an axial force, *i.e.* directed along the length, to the feed stock 20. Rotation of the gear set 150 in a first direction will cause the feed stock 20 to move linearly forward, *i.e.* toward the tip 137. As this portion of feed stock 20 is not affected by the heating within the extruder 132, rotation of the gear set 150 in a reverse direction will cause the feed stock 20 to move linearly backward, *i.e.* away from the tip 137.

**[0031]** It can be seen from FIGS. 4A and 4B that rotation of the motor 152, which is controlled by pressing one of the buttons 122, 124, causes the feed stock 20 to move forward or

backward. The step-down from the motor 152 to the small gear 157B provides a smooth rate of motion of the feed stock, as the motor 152 may turn at a speed within a normal range of smooth operation while the step-down converts this to a low rate of linear motion of the feed stock 20.

**[0032]** FIGS. 5A-5B are perspective and cutaway views of another embodiment 200 of a 3D drawing device according to certain aspects of the present disclosure. FIG. 5A shows a 3D drawing device 200 configured to accept a feed stock in the form of pellets 25 that are held in a hopper 250 attached to the body 210. A power cord 270 is attached to the body 210. FIG. 5B is a cut-away view showing a feed screw 260 that transfers the pellets 25 from the hopper 250 to the nozzle assembly 230 that melts the pellets 25 and, under pressure provided by the feed screw 260, extrudes the melted feed stock 25 in a manner similar to the nozzle assembly 130 of embodiment 100, previously discussed. Other features of the embodiment 100, such as the cooling ports 118, may also be provided in embodiment 200. In certain embodiments, the pellets may be transferred from the hopper 250 to the nozzle assembly 130 by other mechanisms, for example a reciprocating cylinder (not shown in FIGS. 5A-5B) as will be known to those of skill in the art. In certain embodiments, the feed stock may be provided as a liquid, for example an epoxy with beads of catalyst suspended in a liquid polymer, that is held in the hopper 250. In certain embodiments, passage of the liquid feed stock through an extrusion passage, similar to extrusion passage 133 of embodiment 100, may modify the liquid feed stock such that it hardens quickly after extrusion from the 3D drawing device 200.

**[0033]** The disclosed examples of a 3D drawing device illustrate the principles of its construction and use. The provision of a flow of cooling air at the tip to quickly solidify the extruded feed stock allows the user to work in three dimensions, rather than being forced to rely on a support surface to hold the still-fluid extruded material in place while it hardens. The use of a mechanical gear train to advance the feed stock, instead of a pressurized supply or a direct connection between a trigger and a feed rod, allows precise control of the rate of extrusion, thereby increasing the uniformity of the extruded column of material and allowing precise placement without excess material.

**[0034]** This application includes description that is provided to enable a person of ordinary skill in the art to practice the various aspects described herein. While the foregoing has

described what are considered to be the best mode and/or other examples, it is understood that various modifications to these aspects will be readily apparent to those skilled in the art, and the generic principles defined herein may be applied to other aspects. It is understood that the specific order or hierarchy of steps or blocks in the processes disclosed is an illustration of exemplary approaches. Based upon design preferences, it is understood that the specific order or hierarchy of steps or blocks in the processes may be rearranged. The accompanying method claims present elements of the various steps in a sample order, and are not meant to be limited to the specific order or hierarchy presented. Thus, the claims are not intended to be limited to the aspects shown herein, but is to be accorded the full scope consistent with the language claims.

**[0035]** Headings and subheadings, if any, are used for convenience only and do not limit the invention.

**[0036]** Reference to an element in the singular is not intended to mean "one and only one" unless specifically so stated, but rather "one or more." Use of the articles "a" and "an" is to be interpreted as equivalent to the phrase "at least one." Unless specifically stated otherwise, the terms "a set" and "some" refer to one or more.

**[0037]** Terms such as "top," "bottom," "upper," "lower," "left," "right," "front," "rear" and the like as used in this disclosure should be understood as referring to an arbitrary frame of reference, rather than to the ordinary gravitational frame of reference. Thus, a top surface, a bottom surface, a front surface, and a rear surface may extend upwardly, downwardly, diagonally, or horizontally in a gravitational frame of reference.

**[0038]** Although the relationships among various components are described herein and/or are illustrated as being orthogonal or perpendicular, those components can be arranged in other configurations in some embodiments. For example, the angles formed between the referenced components can be greater or less than 90 degrees in some embodiments.

**[0039]** Although various components are illustrated as being flat and/or straight, those components can have other configurations, such as curved or tapered for example, in some embodiments.

**[0040]** Pronouns in the masculine (*e.g.*, his) include the feminine and neuter gender (*e.g.*, her and its) and vice versa. All structural and functional equivalents to the elements of the various aspects described throughout this disclosure that are known or later come to be known to those of ordinary skill in the art are expressly incorporated herein by reference and are intended to be encompassed by the claims. Moreover, nothing disclosed herein is intended to be dedicated to the public regardless of whether such disclosure is explicitly recited in the claims. No claim element is to be construed under the provisions of 35 U.S.C. §112, sixth paragraph, unless the element is expressly recited using the phrase “means for” or, in the case of a method claim, the element is recited using the phrase “operation for.”

**[0041]** A phrase such as an “aspect” does not imply that such aspect is essential to the subject technology or that such aspect applies to all configurations of the subject technology. A disclosure relating to an aspect may apply to all configurations, or one or more configurations. A phrase such as an aspect may refer to one or more aspects and vice versa. A phrase such as an “embodiment” does not imply that such embodiment is essential to the subject technology or that such embodiment applies to all configurations of the subject technology. A disclosure relating to an embodiment may apply to all embodiments, or one or more embodiments. A phrase such as an embodiment may refer to one or more embodiments and vice versa.

**[0042]** The word “exemplary” is used herein to mean “serving as an example or illustration.” Any aspect or design described herein as “exemplary” is not necessarily to be construed as preferred or advantageous over other aspects or designs.

**[0043]** All structural and functional equivalents to the elements of the various aspects described throughout this disclosure that are known or later come to be known to those of ordinary skill in the art are expressly incorporated herein by reference and are intended to be encompassed by the claims. Moreover, nothing disclosed herein is intended to be dedicated to the public regardless of whether such disclosure is explicitly recited in the claims. No claim element is to be construed under the provisions of 35 U.S.C. §112, sixth paragraph, unless the element is expressly recited using the phrase “means for” or, in the case of a method claim, the element is recited using the phrase “step for.” Furthermore, to the extent that the term “include,” “have,” or the like is used in the description or the claims, such term is intended to be inclusive

in a manner similar to the term "comprise" as "comprise" is interpreted when employed as a transitional word in a claim.

**[0044]** Although embodiments of the present disclosure have been described and illustrated in detail, it is to be clearly understood that the same is by way of illustration and example only and is not to be taken by way of limitation, the scope of the present invention being limited only by the terms of the appended claims.

CLAIMS

What is claimed is:

1. A three-dimensional (3D) drawing device comprising:

a housing configured to accept a feed stock;

a nozzle assembly at least partially disposed within the housing and having an exit nozzle;

a motor disposed within the housing; and

a gear train disposed within the housing and coupled between the motor and the feed stock and configured such that rotation of the motor causes the feed stock to be extruded out of the exit nozzle to form a three-dimensional object.

2. The 3D drawing device of claim 1, further comprising a heating element positioned adjacent to the exit nozzle and configured to melt the feed stock prior to extrusion through the exit nozzle.

3. The 3D drawing device of claim 1, further comprising a fan configured to provide a flow cooling air at exit nozzle.

4. The 3D drawing device of claim 3, wherein:

the housing comprises an internal volume and at least one cooling port proximate to the exit nozzle, the cooling port in fluid communication with the internal volume; and

the fan is disposed within the housing and configured to draw air into the internal volume.

5. The 3D drawing device of claim 4, wherein the at least one cooling port is configured to direct a flow of cooling air from the internal volume onto the extruded feed stock at the exit nozzle.

6. The 3D drawing device of claim 1, further comprising an actuator configured to selectably cause the motor to rotate in at least a first direction that causes the feed stock to be extruded out of the exit nozzle.

7. The 3D drawing device of claim 6, wherein the actuator is configured to selectably cause the motor to rotate in a second direction that is opposite the first direction.

8. The 3D drawing device of claim 7, wherein the actuator comprises at least one button.

9. The 3D drawing device of claim 8, wherein the actuator comprises:

a first button that causes the motor to rotate in the first direction at a first speed such that the feed stock is extruded out of the exit nozzle at a first rate; and

a second button that that causes the motor to rotate in the first direction at a second speed such that the feed stock is extruded out of the exit nozzle at a second rate that is greater than the first rate,

wherein simultaneous actuation of the first and second buttons causes the motor to rotate in the second direction.

10. The 3D drawing device of claim 1, wherein:

the feed stock is provided in the in the form of a strand; and

the gear train comprises a final gear having teeth that engage the strand of feed stock such that rotation of the final gear causes the strand of feed stock to linearly move.

11. A three-dimensional (3D) drawing device comprising:

a housing configured to accept a feed stock, the housing having an internal volume and at least one cooling port in fluid communication with the internal volume;

a nozzle assembly at least partially disposed within the housing proximate to the at least one cooling port and having an exit nozzle;

a fan disposed within the housing and configured to draw air into the internal volume and then force the air out of the at least one cooling port;

a motor disposed within the housing; and

an actuator coupled to the housing, wherein actuation of the actuator causes the feed stock to be extruded out of the exit nozzle to form a three-dimensional object.

12. The 3D drawing device of claim 11, further comprising a heating element positioned adjacent to the exit nozzle and configured to melt the feed stock prior to extrusion through the exit nozzle.

13. The 3D drawing device of claim 11, wherein the at least one cooling port is configured to direct a flow of cooling air from the internal volume onto the extruded feed stock at the exit nozzle.

14. The 3D drawing device of claim 11, further comprising:

a motor disposed within the housing and coupled to the actuator such that actuation of the actuator causes the motor to rotate in at least a first direction; and

a gear train disposed within the housing and coupled between the motor and the feed stock and configured such that rotation of the motor in the first direction causes the feed stock to be extruded out of the exit nozzle.

15. The 3D drawing device of claim 14, wherein the actuator is configured to selectably cause the motor to rotate in a second direction that is opposite the first direction.

16. The 3D drawing device of claim 15, wherein the actuator comprises at least one button.

17. The 3D drawing device of claim 16, wherein the actuator comprises:

a first button that causes the motor to rotate in the first direction at a first speed such that the feed stock is extruded out of the exit nozzle at a first rate; and

a second button that that causes the motor to rotate in the first direction at a second speed such that the feed stock is extruded out of the exit nozzle at a second rate that is greater than the first rate,

wherein simultaneous actuation of the first and second buttons causes the motor to rotate in the second direction.

18. The 3D drawing device of claim 14, wherein:

the feed stock is provided in the form of a strand; and

the gear train comprises a final gear having teeth that engage the strand of feed stock such that rotation of the final gear causes the strand of feed stock to linearly move.

19. The 3D drawing device of claim 1, wherein the housing is configured to be held in a user's hand.

20. The 3D drawing device of claim 11, wherein the housing is configured to be held in a user's hand.

## ABSTRACT

A three-dimensional (3D) drawing device having a housing configured for manipulation by a user's hand and to accept a feed stock that is, in certain embodiments, a strand of thermoplastic. The drawing device has a nozzle assembly with an exit nozzle and a motor connected to a gear train that engages the strand of thermoplastic feed stock such that rotation of the motor causes the feed stock to be extruded out of the exit nozzle to form a three-dimensional object.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 23146979 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Douglas B. Espenschied/Sonia Velazquez |
| **Filer Authorized By:** | Douglas B. Espenschied |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 07-AUG-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 17:27:09 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | Drawings-only black and white line drawings | 092749-0213figs.pdf | 371940<br>ed04f46f8a9d63c8cf1a621a25f7e64ea20974f9 | no | 4 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 2 | Power of Attorney | 092749-0213poa.pdf | 2162853<br>f58808f3449889e9749bc552bac49d3d629c8fc0 | no | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 3 | Oath or Declaration filed | 092749-0213dec.pdf | 1801241<br>c8f9d60fd9897c9b6686ae4b40d1df744f98f540 | no | 2 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 4 | Application Data Sheet | 092749-0213ads.pdf | 1561574<br>aab4903db074e12c2d8b2fc7207025d5a8c6c9ce | no | 7 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 5 | | 092749-0213spec.pdf | 132745<br>943823c3b34b5dc306eeaff4d4ec0c7eb5839c7a | yes | 19 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Specification | 1 | 15 |
| Claims | 16 | 18 |
| Abstract | 19 | 19 |

| | |
|---|---|
| **Warnings:** | |
| **Information:** | |
| **Total Files Size (in bytes):** | 6030353 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**




*FIG. 1*




*FIG. 2*


100
140
142
144
146
20
112
116
130
118
150
114
134
132
118

*FIG. 3A*


102
112
118
135
20
134
137
132
116
138
131
133A
133
114
118

*FIG. 3B*


150
153
154
155
156
153A
154A
155A
156A
153B
154B
152
157A
157B

*FIG. 4A*


134
20
119
157B
114

*FIG. 4B*




*FIG. 5A*




*FIG. 5B*

DocCode - SCORE

# SCORE Placeholder Sheet for IFW Content

Application Number: 14821399 Document Date: 08/07/2015

The presence of this form in the IFW record indicates that the following document type was received in electronic format on the date identified above. This content is stored in the SCORE database.

- Drawings – Other than Black and White Line Drawings

Since this was an electronic submission, there is no physical artifact folder, no artifact folder is recorded in PALM, and no paper documents or physical media exist. The TIFF images in the IFW record were created from the original documents that are stored in SCORE.

To access the documents in the SCORE database, refer to instructions below.

At the time of document entry (noted above):

- Examiners may access SCORE content via the eDAN interface.
- Other USPTO employees can bookmark the current SCORE URL (http://Score.uspto.gov/ScoreAccessWeb/).
- External customers may access SCORE content via the Public and Private PAIR interfaces.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 |

**CONFIRMATION NO. 9856**

**FORMALITIES LETTER**

*OC000000077027079*

31824
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

Date Mailed: 08/24/2015

## NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION

**FILED UNDER 37 CFR 1.53(b)**

***Filing Date Granted***

**Items Required To Avoid Abandonment:**

An application number and filing date have been accorded to this application. The item(s) indicated below, however, are missing. Applicant is given **TWO MONTHS** from the date of this Notice within which to file all required items below to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee under the provisions of 37 CFR 1.136(a).

- The statutory basic filing fee is missing.
- The application search fee must be submitted.
- The application examination fee must be submitted.
- Surcharge as set forth in 37 CFR 1.16(f) must be submitted.
  The surcharge is due for any one of:
  - late submission of the basic filing fee, search fee, or examination fee,
  - late submission of inventor's oath or declaration,
  - filing an application that does not contain at least one claim on filing, or
  - submission of an application filed by reference to a previously filed application.

**SUMMARY OF FEES DUE:**

The fee(s) required within **TWO MONTHS** from the date of this Notice to avoid abandonment is/are itemized below. Small entity discount is in effect. If applicant is qualified for micro entity status, an acceptable Certification of Micro Entity Status must be submitted to establish micro entity status. (See 37 CFR 1.29 and forms PTO/SB/15A and 15B.)

- $ **70** basic filing fee.
- $ **70** surcharge.
- $ **300** search fee.
- $ **360** examination fee.
- $( **0**) previous unapplied payment amount.
- $ **800** TOTAL FEE BALANCE DUE.

Replies must be received in the USPTO within the set time period or must include a proper Certificate of Mailing or Transmission under 37 CFR 1.8 with a mailing or transmission date within the set time period. For more information and a suggested format, see Form PTO/SB/92 and MPEP 512.

Replies should be mailed to:

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria VA 22313-1450

Registered users of EFS-Web may alternatively submit their reply to this notice via EFS-Web, including a copy of this Notice and selecting the document description "Applicant response to Pre-Exam Formalities Notice". https://sportal.uspto.gov/authenticate/AuthenticateUserLocalEPF.html

For more information about EFS-Web please call the USPTO Electronic Business Center at 1-866-217-9197 or visit our website at http://www.uspto.gov/ebc.

If you are not using EFS-Web to submit your reply, you must include a copy of this notice.

Questions about the contents of this notice and the requirements it sets forth should be directed to the Office of Data Management, Application Assistance Unit, at **(571) 272-4000** or **(571) 272-4200** or **1-888-786-0101**.

/thaile/

# PATENT APPLICATION FEE DETERMINATION RECORD

Substitute for Form PTO-875

Application or Docket Number
14/821,399

## APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 70 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 300 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 360 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 20 minus 20 = | * | x 40 = | 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 2 minus 3 = | * | x 210 = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| | | | TOTAL | 730 | | TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2.

## APPLICATION AS AMENDED - PART II

### AMENDMENT A

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | 3725 | 0.00 | 092749-0213 | 20 | 2 |

**CONFIRMATION NO. 9856**

**FILING RECEIPT**

OC000000077027078

31824
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

Date Mailed: 08/24/2015

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Peter DILWORTH, Somerville, MA;
Maxwell BOGUE, Hong Kong, HONG KONG;

**Applicant(s)**

WobbleWorks, Inc., Wilmington, DE;

**Power of Attorney:** The patent practitioners associated with Customer Number 31824

**Domestic Priority data as claimed by applicant**

This application is a CON of 13/831,050 03/14/2013 PAT 9102098
which claims benefit of 61/733,689 12/05/2012

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

Permission to Access - A proper **Authorization to Permit Access to Application by Participating Offices** (PTO/SB/39 or its equivalent) has been received by the USPTO.

**If Required, Foreign Filing License Granted:** 08/21/2015
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/821,399**
**Projected Publication Date:** To Be Determined - pending completion of Missing Parts
**Non-Publication Request:** No
**Early Publication Request:** No

**** SMALL ENTITY ****

**Title**

HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

**Preliminary Class**

072

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

Docket No.: 092749-0213 PATENT

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Application of | : | Customer Number: 31824 |
| Peter DILWORTH et al. | : | Group Art Unit: 3725 |
| Application No.: 14/821,399 | : | Examiner: Not yet assigned |
| Filing Date: August 7, 2015 | : | Confirmation No.: 9856 |

For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

**PRELIMINARY AMENDMENT**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

Prior to examination of the above-referenced application, please amend the application as follows:

**Amendments to the claims** begin on Page 2.

**Remarks** begin on Page 6.

## AMENDMENTS TO THE CLAIMS

A complete listing of all claims and their current status is presented below. In the changes made to the following claims, [[deletions are double bracketed]] or ~~shown with strike-through~~, and <u>additions are underlined</u>. This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1.–20. (Canceled)

21. A three-dimensional (3D) drawing device comprising:

an elongate housing configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having a first end, a second end, and a port configured for introduction of a feed stock through the second end and into an internal volume of the housing, the housing having a length between the first end and the second end, the length being greater than a maximum transverse extent of the housing, and the housing having at least one cooling port extending between the internal volume and an ambient atmosphere;

a first actuator and a second actuator each coupled to the housing and positioned to be actuated by the user's hand while holding the housing;

a motor disposed within the internal volume and controlled in response to operation of the first actuator and the second actuator;

a gear train operatively coupled with the motor to drive the gear train, disposed within the internal volume to receive the feed stock, and configured to move the feed stock when engaged with the gear train; and

a nozzle assembly disposed at the first end of the housing and at least partially within the housing, the nozzle assembly comprising an extruder, an exit nozzle, and a guide tube, the extruder having a heating element surrounded by an insulator, the guide tube extending between the gear train and the extruder, a first end of the guide tube positioned to receive the feed stock from the gear train, a second end of the guide tube

aligned with a chamber of the extruder such that the feed stock is directed into the chamber, the extruder being disposed between the guide tube and the exit nozzle.

22. The 3D drawing device of claim 21, further comprising a mounting tube having a first end and a second end, and wherein the second end of the guide tube extends into the first end of the mounting tube, and an end of the extruder opposite the nozzle extends into the second end of the mounting tube, the mounting tube holding the second end of the guide tube in alignment with the end of the extruder opposite the nozzle.

23. The 3D drawing device of claim 21, further comprising an upper housing and a lower housing, at least one of the upper housing and the lower housing comprising a cooling port proximate to the nozzle.

24. The 3D drawing device of claim 23, wherein each of the upper housing and the lower housing comprises a cooling port.

25. The 3D drawing device of claim 21, wherein the first actuator and the second actuator are axially aligned and disposed on an outer surface of the housing between the first end and the second end.

26. The 3D drawing device of claim 21, further comprising a circuit assembly, wherein the circuit assembly directs the motor to rotate in a first direction at a first motor rate in response to actuation of the first actuator such that the feed stock is extruded out of the exit nozzle at a first extrusion rate, and the circuit assembly directs the motor to rotate in the first direction at a second motor rate in response to actuation of the second actuator such that the feed stock is extruded out of the exit nozzle at a second extrusion rate that is greater than the first extrusion rate.

27. The 3D drawing device of claim 26, wherein the circuit assembly directs the motor to rotate in the second direction in response to simultaneous actuation of the first and second actuators.

28. The 3D drawing device of claim 26, further comprising a variable speed control mechanism operatively connected to the circuit assembly to adjust one or more of the first extrusion rate and the second extrusion rate.

29. A three-dimensional (3D) drawing device comprising:

a housing having a first end and a second end, the housing configured for introduction of a feed stock through the second end and into an internal volume of the housing;

a nozzle assembly at the first end of the housing and at least partially disposed within the housing and having an exit nozzle;

a motor disposed within the housing;

a gear train disposed within the housing and operatively coupled between the motor and the feed stock;

a first actuator disposed on an outer surface of the housing between the first end and the second end; and

a variable speed control mechanism operatively connected to the motor and the first actuator to adjust a rate of extrusion of the feed stock out of the exit nozzle.

30. The 3D drawing device of claim 29, further comprising a second actuator disposed on the outer surface of the housing between the first end and the second end.

31. The 3D drawing device of claim 30, further comprising a circuit assembly operatively connected to the motor, the first actuator, and the second actuator, the circuit assembly configured to control the motor to rotate at a first rate in response to operation of the first actuator such that the gear train urges the feed stock out of the exit nozzle at a first rate, and the circuit assembly configured to control the motor to rotate at a second rate in response to operation of the second actuator such that the gear train urges the feed stock out of the exit nozzle at a second rate.

32. The 3D drawing device of claim 31, wherein the circuit assembly is configured to control the motor to rotate in the second direction in response to simultaneous actuation of the first and second actuators.

33. The 3D drawing device of claim 30, wherein the first actuator and the second actuator are axially aligned.

## REMARKS

Claims 1–20 were originally filed in this application. Without prejudice or disclaimer of subject matter, Applicant cancels claims 1–20 and adds claims 21–33 by this preliminary amendment. Accordingly, upon entry of this amendment, claims 21–33 are pending in this application for examination. Applicant reserves the right to pursue claims to the originally pending subject matter in the future.

No new matter is believed to have been introduced to the application by this amendment. Please amend this application as set forth above prior to the first Office Action on the merits. However, if the Examiner believes that any new claim would introduce new matter to this application, Applicant respectfully requests the Examiner not to enter the addition of that claim. Also, if the Examiner believes that all of the new claims introduce new matter to this application, Applicant respectfully requests the Examiner not to cancel the originally filed claims.

In view of the foregoing amendments and remarks, Applicant respectfully requests favorable action on this application.

Please charge any shortage in fees due in connection with the filing of this paper, including extension-of-time fees, to Deposit Account 502624, and please credit any excess fees to that deposit account.

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

/Douglas B. Espenschied/

Douglas B. Espenschied
Registration No. 66,607

4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
Phone: 949.851.0633 DM:sv
Facsimile: 949.851.9348

**Please recognize our Customer No. 31824 as our correspondence address.**

**Date: October 22, 2015**

DM_US 65247313-4.092749.0213

Docket No.: 092749-0213 PATENT

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Application of | : | Customer Number: 31824 |
| Peter DILWORTH et al. | : | Group Art Unit: 3725 |
| Application No.: 14/821,399 | : | Examiner: Not yet assigned |
| Filing Date: August 7, 2015 | : | Confirmation No.: 9856 |

For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

**RESPONSE TO THE NOTICE TO FILE MISSING PARTS OF NONPROVISIONAL APPLICATION**

Mail Stop Missing Parts
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

In response to the Notice To File Missing Parts Of Nonprovisional Application mailed August 24, 2015, submitted herewith are:

1. Statutory Basic Filing Fee of $70.00;
2. Search Fee of $300.00;
3. Examination Fee of $360.00;
4. Late Filing Fee Surcharge of $70.00;
5. Executed Declarations of Peter DILWORTH and Maxwell BOGUE;
6. A Preliminary Amendment including amendments to the claims.

Please charge our Deposit Account No. 502624 in the amount of $800.00 covering the fees set forth in 37 C.F.R. 1.136. Please charge any shortage in fees due in connection with the filing of this paper, including extension of time fees, to Deposit Account 502624, and please credit any excess fees to such deposit account.

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

/Douglas B. Espenschied/

Douglas B. Espenschied
Registration No. 66,607

4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
Phone: 949.851.0633 DM:sv
Facsimile: 949.851.9348

**Please recognize our Customer No. 31824 as our correspondence address.**

**Date: October 22, 2015**

DM_US 65508590-1.092749.0213

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

**DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)**

| **Title of Invention** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

[X] The attached application, or

[ ] United States application or PCT international application number ____________ filed on ____________ .

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

**WARNING:**

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Peter DILWORTH Date (Optional): 3/14/2013

Signature: [signature]

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

PTO/AIA/01 (06-12)
Approved for use through 01/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## DECLARATION (37 CFR 1.63) FOR UTILITY OR DESIGN APPLICATION USING AN APPLICATION DATA SHEET (37 CFR 1.76)

| **Title of Invention** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
|---|---|

As the below named inventor, I hereby declare that:

This declaration is directed to:

- [x] The attached application, or
- [ ] United States application or PCT international application number ____________ filed on ____________ .

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

**WARNING:**

Petitioner/applicant is cautioned to avoid submitting personal information in documents filed in a patent application that may contribute to identity theft. Personal information such as social security numbers, bank account numbers, or credit card numbers (other than a check or credit card authorization form PTO-2038 submitted for payment purposes) is never required by the USPTO to support a petition or an application. If this type of personal information is included in documents submitted to the USPTO, petitioners/applicants should consider redacting such personal information from the documents before submitting them to the USPTO. Petitioner/applicant is advised that the record of a patent application is available to the public after publication of the application (unless a non-publication request in compliance with 37 CFR 1.213(a) is made in the application) or issuance of a patent. Furthermore, the record from an abandoned application may also be available to the public if the application is referenced in a published application or an issued patent (see 37 CFR 1.14). Checks and credit card authorization forms PTO-2038 submitted for payment purposes are not retained in the application file and therefore are not publicly available.

LEGAL NAME OF INVENTOR

Inventor: Maxwell BOGUE Date (Optional): 3/14/13

Signature: [signature]

Note: An application data sheet (PTO/SB/14 or equivalent), including naming the entire inventive entity, must accompany this form or must have been previously filed. Use an additional PTO/AIA/01 form for each additional inventor.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14821399 |
| **Filing Date:** | 07-Aug-2015 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Filer:** | Douglas B. Espenschied/Sonia Velazquez |
| **Attorney Docket Number:** | 092749-0213 |

Filed as Small Entity

**Filing Fees for Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| Utility filing Fee (Electronic filing) | 4011 | 1 | 70 | 70 |
| Utility Search Fee | 2111 | 1 | 300 | 300 |
| Utility Examination Fee | 2311 | 1 | 360 | 360 |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| Late Filing Fee for Oath or Declaration | 2051 | 1 | 70 | 70 |
| **Petition:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | **Total in USD ($)** | | | **800** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 23868397 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Douglas B. Espenschied/Sonia Velazquez |
| **Filer Authorized By:** | Douglas B. Espenschied |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 22-OCT-2015 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 19:06:24 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Deposit Account |
| Payment was successfully received in RAM | $800 |
| RAM confirmation Number | 5177 |
| Deposit Account | 502624 |
| Authorized User | ESPENSCHIED, DOUGLAS B. |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

Charge any Additional Fees required under 37 C.F.R. Section 1.16 (National application filing, search, and examination fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.17 (Patent application and reexamination processing fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.19 (Document supply fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.20 (Post Issuance fees)

Charge any Additional Fees required under 37 C.F.R. Section 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213PrelimAmend.pdf | 27517<br>df548159f3750b08197fd3ea12ff7b14df4c4f70 | yes | 6 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Preliminary Amendment | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 6 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Applicant Response to Pre-Exam Formalities Notice | 092749-0213ResponsetoMP.pdf | 18469<br>405e82b68b48124b64d6751153726697d26b699c | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Oath or Declaration filed | 092749-0213decs.pdf | 331550<br>e774fad66e9e079f2ec3f85fef482f39e61ef1ee | no | 2 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Fee Worksheet (SB06) | fee-info.pdf | 37581<br>d8aedb4b62aaa3ea1e1bf738cda084cb0a779e45 | no | 2 |

**Warnings:**

**Information:**

**Total Files Size (in bytes):** 415117

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING or 371(c) DATE | GRP ART UNIT | FIL FEE REC'D | ATTY.DOCKET.NO | TOT CLAIMS | IND CLAIMS |
|---|---|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | 3725 | 800 | 092749-0213 | 13 | 2 |

**CONFIRMATION NO. 9856**

**UPDATED FILING RECEIPT**

OC000000078347516

31824
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

Date Mailed: 10/29/2015

Receipt is acknowledged of this non-provisional patent application. The application will be taken up for examination in due course. Applicant will be notified as to the results of the examination. Any correspondence concerning the application must include the following identification information: the U.S. APPLICATION NUMBER, FILING DATE, NAME OF APPLICANT, and TITLE OF INVENTION. Fees transmitted by check or draft are subject to collection. Please verify the accuracy of the data presented on this receipt. **If an error is noted on this Filing Receipt, please submit a written request for a Filing Receipt Correction. Please provide a copy of this Filing Receipt with the changes noted thereon. If you received a "Notice to File Missing Parts" for this application, please submit any corrections to this Filing Receipt with your reply to the Notice. When the USPTO processes the reply to the Notice, the USPTO will generate another Filing Receipt incorporating the requested corrections**

**Inventor(s)**

Peter DILWORTH, Somerville, MA;
Maxwell BOGUE, Hong Kong, HONG KONG;

**Applicant(s)**

WobbleWorks, Inc., Wilmington, DE;

**Power of Attorney:** The patent practitioners associated with Customer Number 31824

**Domestic Priority data as claimed by applicant**

This application is a CON of 13/831,050 03/14/2013 PAT 9102098
which claims benefit of 61/733,689 12/05/2012

**Foreign Applications** for which priority is claimed (You may be eligible to benefit from the **Patent Prosecution Highway** program at the USPTO. Please see http://www.uspto.gov for more information.) - None.
*Foreign application information must be provided in an Application Data Sheet in order to constitute a claim to foreign priority. See 37 CFR 1.55 and 1.76.*

Permission to Access - A proper **Authorization to Permit Access to Application by Participating Offices** (PTO/SB/39 or its equivalent) has been received by the USPTO.

**If Required, Foreign Filing License Granted:** 08/21/2015
The country code and number of your priority application, to be used for filing abroad under the Paris Convention, is **US 14/821,399**
**Projected Publication Date:** 02/04/2016
**Non-Publication Request:** No
**Early Publication Request:** No

**** SMALL ENTITY ****

**Title**

HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

**Preliminary Class**

072

**Statement under 37 CFR 1.55 or 1.78 for AIA (First Inventor to File) Transition Applications:** No

## PROTECTING YOUR INVENTION OUTSIDE THE UNITED STATES

Since the rights granted by a U.S. patent extend only throughout the territory of the United States and have no effect in a foreign country, an inventor who wishes patent protection in another country must apply for a patent in a specific country or in regional patent offices. Applicants may wish to consider the filing of an international application under the Patent Cooperation Treaty (PCT). An international (PCT) application generally has the same effect as a regular national patent application in each PCT-member country. The PCT process **simplifies** the filing of patent applications on the same invention in member countries, but **does not result** in a grant of "an international patent" and does not eliminate the need of applicants to file additional documents and fees in countries where patent protection is desired.

Almost every country has its own patent law, and a person desiring a patent in a particular country must make an application for patent in that country in accordance with its particular laws. Since the laws of many countries differ in various respects from the patent law of the United States, applicants are advised to seek guidance from specific foreign countries to ensure that patent rights are not lost prematurely.

Applicants also are advised that in the case of inventions made in the United States, the Director of the USPTO must issue a license before applicants can apply for a patent in a foreign country. The filing of a U.S. patent application serves as a request for a foreign filing license. The application's filing receipt contains further information and guidance as to the status of applicant's license for foreign filing.

Applicants may wish to consult the USPTO booklet, "General Information Concerning Patents" (specifically, the section entitled "Treaties and Foreign Patents") for more information on timeframes and deadlines for filing foreign patent applications. The guide is available either by contacting the USPTO Contact Center at 800-786-9199, or it can be viewed on the USPTO website at http://www.uspto.gov/web/offices/pac/doc/general/index.html.

For information on preventing theft of your intellectual property (patents, trademarks and copyrights), you may wish to consult the U.S. Government website, http://www.stopfakes.gov. Part of a Department of Commerce initiative, this website includes self-help "toolkits" giving innovators guidance on how to protect intellectual property in specific countries such as China, Korea and Mexico. For questions regarding patent enforcement issues, applicants may call the U.S. Government hotline at 1-866-999-HALT (1-866-999-4258).

## LICENSE FOR FOREIGN FILING UNDER

## Title 35, United States Code, Section 184

## Title 37, Code of Federal Regulations, 5.11 & 5.15

**GRANTED**

The applicant has been granted a license under 35 U.S.C. 184, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" followed by a date appears on this form. Such licenses are issued in all applications where the conditions for issuance of a license have been met, regardless of whether or not a license may be required as set forth in 37 CFR 5.15. The scope and limitations of this license are set forth in 37 CFR 5.15(a) unless an earlier license has been issued under 37 CFR 5.15(b). The license is subject to revocation upon written notification. The date indicated is the effective date of the license, unless an earlier license of similar scope has been granted under 37 CFR 5.13 or 5.14.

This license is to be retained by the licensee and may be used at any time on or after the effective date thereof unless it is revoked. This license is automatically transferred to any related applications(s) filed under 37 CFR 1.53(d). This license is not retroactive.

The grant of a license does not in any way lessen the responsibility of a licensee for the security of the subject matter as imposed by any Government contract or the provisions of existing laws relating to espionage and the national security or the export of technical data. Licensees should apprise themselves of current regulations especially with respect to certain countries, of other agencies, particularly the Office of Defense Trade Controls, Department of State (with respect to Arms, Munitions and Implements of War (22 CFR 121-128)); the Bureau of Industry and Security, Department of Commerce (15 CFR parts 730-774); the Office of Foreign AssetsControl, Department of Treasury (31 CFR Parts 500+) and the Department of Energy.

**NOT GRANTED**

No license under 35 U.S.C. 184 has been granted at this time, if the phrase "IF REQUIRED, FOREIGN FILING LICENSE GRANTED" DOES NOT appear on this form. Applicant may still petition for a license under 37 CFR 5.12, if a license is desired before the expiration of 6 months from the filing date of the application. If 6 months has lapsed from the filing date of this application and the licensee has not received any indication of a secrecy order under 35 U.S.C. 181, the licensee may foreign file the application pursuant to 37 CFR 5.15(b).

---

## *SelectUSA*

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The U.S. offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to promote and facilitate business investment. SelectUSA provides information assistance to the international investor community; serves as an ombudsman for existing and potential investors; advocates on behalf of U.S. cities, states, and regions competing for global investment; and counsels U.S. economic development organizations on investment attraction best practices. To learn more about why the United States is the best country in the world to develop technology, manufacture products, deliver services, and grow your business, visit http://www.SelectUSA.gov or call +1-202-482-6800.

# PATENT APPLICATION FEE DETERMINATION RECORD

Substitute for Form PTO-875

Application or Docket Number 14/821,399

## APPLICATION AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE($) | SMALL ENTITY FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY FEE($) |
|---|---|---|---|---|---|---|---|
| BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | 70 | | N/A | |
| SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | 300 | | N/A | |
| EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | 360 | | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | 13 minus 20 = | * | x 40 = | 0.00 | OR | | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | 2 minus 3 = | * | x 210 = | 0.00 | | | |
| APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | 0.00 | | | |
| MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | 0.00 | | | |
| | | | TOTAL | 730 | | TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2.

## APPLICATION AS AMENDED - PART II

**AMENDMENT A**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

**AMENDMENT B**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE($) | SMALL ENTITY ADDITIONAL FEE($) | OR | OTHER THAN SMALL ENTITY RATE($) | OTHER THAN SMALL ENTITY ADDITIONAL FEE($) |
|---|---|---|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | x = | | OR | x = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | x = | | OR | x = | |
| Application Size Fee (37 CFR 1.16(s)) | | | | | | | | | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | | OR | | |
| | | | | | TOTAL ADD'L FEE | | OR | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest found in the appropriate box in column 1.

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/821,399 | Filing Date<br>08/07/2015 | ☐ To be Mailed |
|---|---|---|---|

ENTITY: ☐ LARGE ☒ SMALL ☐ MICRO

## APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter “0” in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

AMENDMENT

| 10/22/2015 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 13 | Minus | ** 20 | = 0 | x $40 = | 0 |
| Independent (37 CFR 1.16(h)) | * 2 | Minus | ***3 | = 0 | x $210 = | 0 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

AMENDMENT

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write “0” in column 3.
** If the “Highest Number Previously Paid For” IN THIS SPACE is less than 20, enter “20”.
*** If the “Highest Number Previously Paid For” IN THIS SPACE is less than 3, enter “3”.
The “Highest Number Previously Paid For” (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
/AMANDA FORD/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
U.S. Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

31824 e 2015-11-30

MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

**Paper No.**

| | | | |
|---|---|---|---|
| **Application No.:** | **14/821,399** | **Date Mailed:** | **2015-11-30**<br>**ELECTRONIC** |
| First Named Inventor: | Peter DILWORTH | Examiner: | HOHENBRINK JR, LAWRENCE D |
| Attorney Docket No.: | 092749-0213 | Art Unit: | 1743 |
| Confirmation No.: | 9856 | Filing Date: | 08/07/2015 |

**Please find attached an Office communication concerning this application or proceeding.**

**Commissioner for Patents**

| **Notice of Non-Compliant Amendment (37 CFR 1.121)** | **Application No.**<br>14/821,399 | **Applicant(s)**<br>DILWORTH ET AL. |
|---|---|---|
| | | **Art Unit**<br>OPES |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

The amendment document filed on *22 October, 2015* is considered non-compliant because it has failed to meet the requirements of 37 CFR 1.121 or 1.4. In order for the amendment document to be compliant, correction of the following item(s) is required.

THE FOLLOWING MARKED (X) ITEM(S) CAUSE THE AMENDMENT DOCUMENT TO BE NON-COMPLIANT:

☐ 1. Amendments to the specification:
- ☐ A. Amended paragraph(s) do not include markings.
- ☐ B. New paragraph(s) should not be underlined.
- ☐ C. Other _____.

☐ 2. Abstract:
- ☐ A. Not presented on a separate sheet. 37 CFR 1.72.
- ☐ B. Other _____.

☐ 3. Amendments to the drawings:
- ☐ A. The drawings are not properly identified in the top margin as “Replacement Sheet,” “New Sheet,” or “Annotated Sheet” as required by 37 CFR 1.121(d).
- ☐ B. The practice of submitting proposed drawing correction has been eliminated. Replacement drawings showing amended figures, without markings, in compliance with 37 CFR 1.84 are required.
- ☐ C. Other _____.

☒ 4. Amendments to the claims:
- ☐ A. A complete listing of all of the claims is not present.
- ☐ B. The listing of claims does not include the text of all pending claims (including withdrawn claims)
- ☒ C. Each claim has not been provided with the proper status identifier, and as such, the individual status of each claim cannot be identified. Note: the status of every claim must be indicated after its claim number by using one of the following status identifiers: (Original), (Currently amended), (Canceled), (Previously presented), (New), (Not entered), (Withdrawn) and (Withdrawn-currently amended).
- ☐ D. The claims of this amendment paper have not been presented in ascending numerical order.
- ☐ E. Other: _____.

☐ 5. Other (e.g., the amendment is unsigned or not signed in accordance with 37 CFR 1.4): For further explanation of the amendment format required by 37 CFR 1.121, see MPEP § 714.

TIME PERIODS FOR FILING A REPLY TO THIS NOTICE:

1. Applicant is given **no new time period if the non-compliant amendment is an** after-final amendment or an amendment filed after allowance, or a drawing submission (only) If applicant wishes to resubmit the non-compliant after-final amendment with corrections, the **entire corrected amendment** must be resubmitted.

2. Applicant is given **two months** from the mail date of this notice to supply the correction, if the non-compliant amendment is one of the following: a preliminary amendment, a non-final amendment (including a submission for a request for continued examination (RCE) under 37 CFR 1.114), a supplemental amendment filed within a suspension period under 37 CFR 1.103(a) or (c), and an amendment filed in response to a Quayle action. If any of above boxes 1 to 4 are checked, the correction required is only the corrected section of the non-compliant amendment in compliance with 37 CFR 1.121.

**Extensions of time** are available under 37 CFR 1.136(a) only if the non-compliant amendment is a non-final amendment or an amendment filed in response to a *Quayle* action.

**Failure to timely respond** to this notice will result in:

**Abandonment** of the application if the non-compliant amendment is a non-final amendment or an amendment filed in response to a *Quayle* action; or

**Non-entry** of the amendment if the non-compliant amendment is a preliminary amendment or supplemental amendment.

Legal Instruments Examiner (LIE), if applicable /AMANDA FORD/ Telephone No: (571)272-1573

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Sheet | 1 | of | 3 |
|---|---|---|---|

| *Complete if Known* | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1* | US-3,281,576 | 10-25-1966 | Cooper et al. | |
| | A2* | US-3,665,158 | 05-23-1972 | Froedge | |
| | A3* | US-4,059,204 | 11-22-1977 | Duncan et al. | |
| | A4* | US-4,552,287 | 11-12-1985 | Dziki | |
| | A5* | US-4,597,821 | 07-01-1986 | Munro | |
| | A6* | US-4,681,524 | 07-21-1987 | Ikeda et al. | |
| | A7* | US-5,853,774 | 12-29-1998 | Dreve | |
| | A8* | US-6,162,378 | 12-19-2000 | Bedal et al. | |
| | A9* | US-6,776,602 | 08-17-2004 | Swanson et al. | |
| | A10* | US-8,221,669 | 07-17-2012 | Batchelder et al. | |
| | A11* | US-8,236,227 | 08-07-2012 | Batchelder et al. | |
| | A12* | US-8,439,665 | 05-14-2013 | Batchelder et al. | |
| | A13* | US-9,102,098 | 08-11-2015 | Dilworth et al. | |
| | A14* | US-2001/0033037-A1 | 10-25-2001 | Nitschke et al. | |
| | A15* | US-2001/0030383-A1 | 10-18-2001 | Swanson et al. | |
| | A16* | US-2003/0137077-A1 | 07-24-2003 | Lee et al. | |
| | A17* | US-2007/0003656-A1 | 01-04-2007 | LaBossiere et al. | |
| | A18* | US-2007/0029693-A1 | 02-08-2007 | Wigand et al. | |
| | A19* | US-2012/0219699-A1 | 08-30-2012 | Pettersson et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B1 | CN-101172428-A | 05-07-2008 | Lite On Technology Corp | | X |
| | B2 | CN-202399493-U | 08-29-2012 | Shenzhen Weistek Technology Co.,ltd | | X |
| | B3 | CN-203592687-U | 05-14-2014 | Wobble Works Inc | | X |
| | B4 | JP-S 61-141959-A | 06-28-1986 | Bosch Gmbh Robert | | X |
| | B5 | JP-S63-205216-A | 08-24-1988 | Junkosha Co Ltd | | X |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Complete if Known | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

Sheet 2 of 3

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A20* | US-2012/0258190-A1 | 10-11-2012 | Batchelder et al. | |
| | A21* | US-2013/0234366-A1 | 09-12-2013 | Batchelder et al. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | **Application Number** | 14/821,399-Conf. #9856 |
| | | | | **Filing Date** | August 7, 2015 |
| | | | | **First Named Inventor** | Peter DILWORTH |
| | | | | Art Unit | 1743 |
| *(Use as many sheets as necessary)* | | | | Examiner Name | L. D. Hohenbrink |
| Sheet | 3 | of | 3 | Attorney Docket Number | 092749-0213 |

| NON PATENT LITERATURE DOCUMENTS | | | |
|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
| | C1 | Donutman.sub.--2000 "Plastic Welding Gun (Plastruder MK4)" published Sep. 19, 2010, http://www.thingiverse.com/thing:4156, last accessed Jul. 3, 2014 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

Espacenet

# Bibliographic data: CN203592687 (U) — 2014-05-14

## 3D drawing device

**Inventor(s):** PETER DILWORTH; MAXWELL BOGUE ± (PETER DILWORTH, ; MAXWELL BOGUE)

**Applicant(s):** WOBBLE WORKS INC ± (WOBBLE WORKS INC)

**Classification:**
- **international:** ***B29C67/00***
- **cooperative:** **B29C47/0002; B29C67/0055; B29C67/0085;** B05C17/0053; B29C2947/9258; B29C2947/92704; B29C47/0805; B29C47/364; B29C47/802; B29C47/862; B29C47/92

**Application number:** CN20132686485U 20131101

**Priority number(s):** US201261733689P 20121205 ; US201313831050 20130314

**Also published as:** DE202013010264 (U1) US2014154347 (A1) US9102098 (B2) WO2014088681 (A1) RU155234 (U1) more

## Abstract of CN203592687 (U)

The utility model relates to a 3D drawing device which is provided with a housing; the housing is operated by hands of a user and used for accommodating raw material. In certain special embodiments, the raw material is a thermoplastic stranded wire. The 3D drawing device comprises a spray nozzle set accessory and a motor, wherein the spray nozzle set accessory comprises outflow spray nozzles; the motor is connected with a gear train; the gear train is meshed with the thermoplastic stranded wire, so that the rotation of the motor drives the raw material to be extruded from the outflow spray nozzles to draw three-dimensional objects. The utility model provides a hand-held device reliable and easy to backfill, which can form a 2D project and a 3D project under the condition of not needing computerized design documents. The utility model discloses the hand-held device which can allow the user to use the raw material to draw the 3D structure, and can supplement the raw material in continuous use.

(19)中华人民共和国国家知识产权局

(12)实用新型专利

(10)授权公告号 CN 203592687 U
(45)授权公告日 2014.05.14

(21)申请号 201320686485.5
(22)申请日 2013.11.01
(30)优先权数据
61/733,689 2012.12.05 US
13/831,050 2013.03.14 US
(73)专利权人 摇晃商品股份有限公司
地址 美国马萨诸塞
(72)发明人 彼得·迪尔沃斯 麦斯威尔·博格
(74)专利代理机构 中国国际贸易促进委员会专利商标事务所 11038
代理人 钱亚卓
(51)Int.Cl.
*B29C 67/00*(2006.01)

(ESM)同样的发明创造已同日申请发明专利

权利要求书2页 说明书9页 附图4页

(54)实用新型名称

三维抽制装置

(57)摘要

本实用新型涉及一种三维抽制装置，其具有外壳，所述外壳被配置为供用户的手部操纵用并容置原物料，在某些具体实施例中，所述原物料为热塑性绞线。所述抽制装置具有含出流喷嘴的喷嘴组配件、以及连接至齿轮系的马达，所述齿轮系与所述热塑性原物料绞线啮合，使得所述马达的旋转带动所述原物料被挤出所述出流喷嘴，以形成三维物件。本实用新型提供一种可靠的、可轻易回填的手持装置，以在不需要计算机化设计文档下形成二维和三维项目。本实用新型说明了一种手持装置，所述手持装置可供用户以原物料来“抽制”3D结构，其可在连续使用时补充所述原物料。



1. 一种三维抽制装置，其特征在于，所述三维抽制装置包括：

外壳，被配置以容置原物料；

喷嘴组配件，至少部分地被配置在所述外壳内并具有出流喷嘴；

马达，被配置在所述外壳内；以及

齿轮系，被配置在所述外壳内且被耦接在所述马达与所述原物料之间，并被配置为使得所述马达的旋转带动所述原物料被挤出所述出流喷嘴，以形成三维物件。

2. 根据权利要求 1 所述的三维抽制装置，其特征在于，所述三维抽制装置还包括加热组件，所述加热组件被置放与所述出流喷嘴相邻并被配置以使所述原物料在挤压通过所述出流喷嘴之前熔化。

3. 根据权利要求 1 所述的三维抽制装置，其特征在于，所述三维抽制装置还包括风扇，所述风扇被配置以在所述出流喷嘴处提供流动冷却空气。

4. 根据权利要求 3 所述的三维抽制装置，其特征在于：

所述外壳包括内部空间以及在所述出流喷嘴近侧的至少一个冷却口，所述冷却口与所述内部空间流体相通；并且

所述风扇被配置在所述外壳内并被配置以将空气吸取到所述内部空间中。

5. 根据权利要求 4 所述的三维抽制装置，其特征在于，所述至少一个冷却口被配置以自所述内部空间引导冷却空气流至所述出流喷嘴处的经挤出的原物料上。

6. 根据权利要求 1 所述的三维抽制装置，其特征在于，所述三维抽制装置还包括驱动器，所述驱动器被配置以可选择性地带动所述马达以至少第一方向旋转，其带动所述原物料被挤出所述出流喷嘴。

7. 根据权利要求 6 所述的三维抽制装置，其特征在于，所述驱动器被配置以可选择性地带动所述马达以第二方向旋转，所述第二方向与所述第一方向相反。

8. 根据权利要求 7 所述的三维抽制装置，其特征在于，所述驱动器包括至少一个按钮。

9. 根据权利要求 8 所述的三维抽制装置，其特征在于，所述驱动器包括：

第一按钮，带动所述马达以第一速度沿所述第一方向旋转，使得所述原物料以第一速率被挤出所述出流喷嘴；以及

第二按钮，带动所述马达以第二速度沿所述第一方向旋转，使得所述原物料以第二速率被挤出所述出流喷嘴，所述第二速率比所述第一速率大，

其中所述第一按钮和所述第二按钮的同时驱动带动所述马达沿所述第二方向旋转。

10. 根据权利要求 1 所述的三维抽制装置，其特征在于：

所述原物料以绞线的形式提供；并且

所述齿轮系包括最终齿轮，所述最终齿轮具有与所述原物料绞线啮合的齿部，使得所述最终齿轮的旋转带动所述原物料绞线线性地移动。

11. 根据权利要求 1 所述的三维抽制装置，其特征在于，所述外壳被配置为能被握持在使用者的手中。

12. 一种三维抽制装置，其特征在于，所述三维抽制装置包括：

外壳，被配置以容置原物料，所述外壳具有内部空间和与所述内部空间流体相通的至少一个冷却口；

喷嘴组配件，至少部分地被配置在所述外壳内靠近所述至少一个冷却口，并具有出流

喷嘴 ;

风扇,被配置在所述外壳内且被配置以吸取空气至所述内部空间中,并接着使空气离开所述至少一个冷却口 ;

马达,被配置在所述外壳内 ;以及

驱动器,耦接至所述外壳,其中所述驱动器的驱动带动所述原物料被挤出所述出流喷嘴,以形成三维物件。

13. 根据权利要求 12 所述的三维抽制装置,其特征在于,所述三维抽制装置还包括加热组件,所述加热组件被置放与所述出流喷嘴相邻并被配置以使所述原物料在挤压通过所述出流喷嘴之前熔化。

14. 根据权利要求 12 所述的三维抽制装置,其特征在于,所述至少一冷却口被配置以自所述内部空间引导冷却空气流至所述出流喷嘴处的所述经挤出的原物料上。

15. 根据权利要求 12 所述的三维抽制装置,其特征在于,所述三维抽制装置还包括 :

马达,被配置在所述外壳内且耦接至所述驱动器,使得所述驱动器的驱动带动所述马达沿至少第一方向旋转 ;以及

齿轮系,被配置在所述外壳内并被耦接在所述马达与所述原物料之间,且被配置为使得沿所述第一方向的所述马达的旋转带动所述原物料被挤出所述出流喷嘴。

16. 根据权利要求 15 所述的三维抽制装置,其特征在于,所述驱动器被配置以可选择性地带动所述马达沿第二方向旋转,所述第二方向与所述第一方向相反。

17. 根据权利要求 16 所述的三维抽制装置,其特征在于,所述驱动器包括至少一个按钮。

18. 根据权利要求 17 所述的三维抽制装置,其特征在于,所述驱动器包括 :

第一按钮,带动所述马达以第一速度沿所述第一方向旋转,使得所述原物料以第一速率被挤出所述出流喷嘴 ;以及

第二按钮,带动所述马达以第二速度沿所述第一方向旋转,使得所述原物料以第二速率被挤出所述出流喷嘴,所述第二速率比所述第一速率大,

其中所述第一按钮和所述第二按钮的同时驱动带动所述马达沿所述第二方向旋转。

19. 根据权利要求 15 所述的三维抽制装置,其特征在于 :

所述原物料以绞线的形式提供 ;并且

所述齿轮系包括最终齿轮,所述最终齿轮具有与所述原物料绞线啮合的齿部,使得所述最终齿轮的旋转带动所述原物料绞线线性地移动。

20. 根据权利要求 12 所述的三维抽制装置,其特征在于,所述外壳被配置为能被握持在使用者的手中。

# 三维抽制装置

## 技术领域

[0001] 本实用新型涉及挤压装置，具体地，本实用新型涉及一种被配置以挤出材料以建构三维（3D）对象的手持装置。

## 背景技术

[0002] 用以产生所有类型的 3D 项目的三维打印机是已知的。某些打印机是通过连续塑料层的沉积而运作，而其他的通过前驱物材料层的依序集聚或固化而作用。这些打印机倾向于大型且昂贵，并且需要以计算机文档方式提供的设计，例如由计算机辅助设计（CAD）程序所产生。

[0003] Froedge 在美国专利 3,665,158 中公开了一种传统的手持挤出装置。以粒状固体塑料材料填充腔体，然后以盖体密封所述腔体。对腔体的内容物加热以熔化塑料并在腔体内产生压力。通道从所述腔体导至可旋转喷嘴，所述可旋转喷嘴在第一位置时会阻挡流动，而在第二位置时则允许流动。触发器被装设至所述喷嘴，使得拉动触发器时会使喷嘴移动到所述第二位置，从而使熔化的塑料因为腔体内的压力而从喷嘴排出。释放触发器可使喷嘴转回到第一位置，从而停止塑料流动。现仍无法在不关闭装置时补充原料，也没有任何机制可在固定速率下对喷嘴机械性地馈送材料。此外，Froedge 的系统并没有提供冷却经挤出的材料的手段。

## 实用新型内容

[0004] 需要提供一种可靠的、可轻易回填的手持装置，以在不需要计算机化设计文档下形成二维（2D）和三维（3D）项目。

[0005] 在某些具体实施例中，本实用新型提供一种三维抽制装置，包括：外壳，被配置以容置原物料；喷嘴组配件，至少部分地被配置在所述外壳内并具有出流喷嘴；马达，被配置在所述外壳内；以及齿轮系，被配置在所述外壳内且被耦接在所述马达与所述原物料之间，并被配置为使得所述马达的旋转带动所述原物料被挤出所述出流喷嘴，以形成三维物件。

[0006] 在一个实施例中，所述三维抽制装置还包括加热组件，所述加热组件被置放与所述出流喷嘴相邻并被配置以使所述原物料在挤压通过所述出流喷嘴之前熔化。

[0007] 在一个实施例中，所述三维抽制装置还包括风扇，所述风扇被配置以在所述出流喷嘴处提供流动冷却空气。

[0008] 在一个实施例中，所述外壳包括内部空间以及在所述出流喷嘴近侧的至少一个冷却口，所述冷却口与所述内部空间流体相通；并且所述风扇被配置在所述外壳内并被配置以将空气吸取到所述内部空间中。

[0009] 在一个实施例中，所述至少一个冷却口被配置以自所述内部空间引导冷却空气流至所述出流喷嘴处的经挤出的原物料上。

[0010] 在一个实施例中，所述三维抽制装置还包括驱动器，所述驱动器被配置以可选择性地带动所述马达以至少第一方向旋转，其带动所述原物料被挤出所述出流喷嘴。

[0011] 在一个实施例中，所述驱动器被配置以可选择性地带动所述马达以第二方向旋转，所述第二方向与所述第一方向相反。

[0012] 在一个实施例中，所述驱动器包括至少一个按钮。

[0013] 在一个实施例中，所述驱动器包括：第一按钮，带动所述马达以第一速度沿所述第一方向旋转，使得所述原物料以第一速率被挤出所述出流喷嘴；以及第二按钮，带动所述马达以第二速度沿所述第一方向旋转，使得所述原物料以第二速率被挤出所述出流喷嘴，所述第二速率比所述第一速率大，其中所述第一按钮和所述第二按钮的同时驱动带动所述马达沿所述第二方向旋转。

[0014] 在一个实施例中，所述原物料以绞线的形式提供；并且所述齿轮系包括最终齿轮，所述最终齿轮具有与所述原物料绞线啮合的齿部，使得所述最终齿轮的旋转带动所述原物料绞线线性地移动。

[0015] 在某些具体实施例中，本实用新型提供一种三维抽制装置，包括：外壳，被配置以容置原物料，所述外壳具有内部空间和与所述内部空间流体相通的至少一个冷却口；喷嘴组配件，至少部分地被配置在所述外壳内靠近所述至少一个冷却口，并具有出流喷嘴；风扇，被配置在所述外壳内且被配置以吸取空气至所述内部空间中，并接着使空气离开所述至少一个冷却口；

[0016] 马达，被配置在所述外壳内；以及驱动器，耦接至所述外壳，其中所述驱动器的驱动带动所述原物料被挤出所述出流喷嘴，以形成三维物件。

[0017] 在一个实施例中，所述三维抽制装置还包括加热组件，所述加热组件被置放与所述出流喷嘴相邻并被配置以使所述原物料在挤压通过所述出流喷嘴之前熔化。

[0018] 在一个实施例中，所述至少一冷却口被配置以自所述内部空间引导冷却空气流至所述出流喷嘴处的所述经挤出的原物料上。

[0019] 在一个实施例中，所述三维抽制装置还包括：马达，被配置在所述外壳内且耦接至所述驱动器，使得所述驱动器的驱动带动所述马达沿至少第一方向旋转；以及齿轮系，被配置在所述外壳内并被耦接在所述马达与所述原物料之间，且被配置为使得沿所述第一方向的所述马达的旋转带动所述原物料被挤出所述出流喷嘴。

[0020] 在一个实施例中，所述驱动器被配置以可选择性地带动所述马达沿第二方向旋转，所述第二方向与所述第一方向相反。

[0021] 在一个实施例中，所述驱动器包括至少一个按钮。

[0022] 在一个实施例中，所述驱动器包括：第一按钮，带动所述马达以第一速度沿所述第一方向旋转，使得所述原物料以第一速率被挤出所述出流喷嘴；以及第二按钮，带动所述马达以第二速度沿所述第一方向旋转，使得所述原物料以第二速率被挤出所述出流喷嘴，所述第二速率比所述第一速率大，其中所述第一按钮和所述第二按钮的同时驱动带动所述马达沿所述第二方向旋转。

[0023] 在一个实施例中，所述原物料以绞线的形式提供；并且所述齿轮系包括最终齿轮，所述最终齿轮具有与所述原物料绞线啮合的齿部，使得所述最终齿轮的旋转带动所述原物料绞线线性地移动。

[0024] 在一个实施例中，所述外壳被配置为能被握持在使用者的手中。

[0025] 在一个实施例中，所述外壳被配置为能被握持在使用者的手中。

[0026] 本实用新型提供一种可靠的、可轻易回填的手持装置，以在不需要计算机化设计文档下形成二维（2D）和三维（3D）项目。本实用新型说明了一种手持装置，所述手持装置可供用户以原物料来“抽制”3D 结构，其可在连续使用时补充所述原物料。

## 附图说明

[0027] 所包含的附图是用以提供进一步的理解且被整合在本说明书中而作为说明书的一部分，附图说明了所公开的具体实施例，且与说明内容一起用以解释所公开的具体实施例的原理。在附图中：

[0028] 图 1 是根据本实用新型的某些方面方面的示例性示例性 3D 抽制装置的立体图。

[0029] 图 2 是根据本实用新型的某些方面方面的图 1 的装置的剖视图，图 2 已移去一部分的外壳。

[0030] 图 3A 至图 3B 为根据本实用新型的某些方面方面的图 1 的装置的截面图和剖视图。

[0031] 图 4A 至图 4B 为根据本实用新型的某些方面方面的馈送机制的平面图和立体图。

[0032] 图 5A 至图 5B 为根据本实用新型的某些方面方面的 3D 抽制装置的另一具体实施例的立体图和剖视图。

## 具体实施方式

[0033] 本实用新型说明了手持装置，手持装置允许用户“抽制”2D 或 3D 结构并轻易地回填或替换原物料。

[0034] 下文所提出的详细说明是目标技术的各种型态的说明，且并不意欲表示所述目标技术仅能在这些型态中实施。附图被并入本文中，且构成详细说明的一部分。详细说明包括具体细节以作为提供对所述目标技术的通盘理解的目的。然而，本领域中的技术人员将显然理解所述目标技术可在没有这些具体细节下实施。在某些例子中，公知的结构和构件是以方块图形式加以绘示，以避免对所述目标技术的概念造成混淆。为易于理解，相同的构件是以相同的附图标记来加以标示。

[0035] 如在本说明书中所用，用语“原物料”」是指以任何用于在所述 3D 抽制装置内进行处理的形式所提供、进以提供所需输出流的任何材料，原物料可为热塑料（例如丙烯睛 - 丁二烯 - 苯乙烯 （ABS）、聚氯乙烯 （PVC） 或聚乳酸 （PLA））、热固性材料（例如环氧树脂）、金属（例如锡或铅）或金属的混合物。原物料可为单一材料或材料的混合物（例如棒材，其具有分散在第二材料的基质内的第一材料的粒子）。

[0036] 图 1 是根据本实用新型的某些方面的示例性 3D 抽制装置 100 的立体图。装置 100 包括外壳 110，在外壳 110 内提供有控制组配件 120、喷嘴组配件 130、风扇组配件 140。外壳 110 可按尺寸制作与被配置以配合用户的手部，且经适当成形而能以类似于笔或铅笔的方式操纵。驱动器（例如在此具体实施例中的按钮 122 和 124）可被置放以供用户在握持装置 100 时驱动任一驱动器。在这个具体实施例中，用户可驱动一个或两个按钮 122、124，同时操纵 3D 抽制装置 100。在这个具体实施例中，装置 100 被配置为接收以绞线形式（直径可为 3mm）的原物料 20。在某些具体实施例中，可以一切截长度（例如长度为 30cm）或以从线滚动条（未示出于图 1）拉出的连续绞线来提供原物料 20。装置 100 包括输入入口 18 或其

他的输入组件(举例而言,例如加料斗),原料 19 即通过输入入口 18 或其他输入组件而被提供至工具 10。原物料 20 可为热塑性材料,例如 PVC、ABS 或 PLA,然而,其他具体实施例接受其他类型的材料,例如热固性塑料或金属或材料的组合。

[0037] 在装置 100 的具体实施例的使用实例中,用户选择特定类型与颜色的热塑性原物料 20,并将原物料 20 注入至进入口 115 (见图 2)中,且将电源线(未示出于图 1)连接至电源(例如墙上电源插座)。在某些具体实施例中,3D 抽制装置 100 可包括可携式电源(未示出于图 1 与图 2 中),例如锂聚合物电池,以启动装置 100。在暖机时期之后,用户可按压按钮 122,同时以类似于用铅笔画线的方式利用装置 100 在表面上抽制线条,例如在印刷薄片上描绘图案。在按钮 122 被压下时,即从喷嘴组配件挤压出原物料 20 的柱体 22。在某些具体实施例中,柱体 22 具有 0.3mm 的直径。当使用者沿着表面以几乎与柱体 22 的挤出速率相同的速度来移动装置时,用户将在表面上产生固体的、三维的“线”。在某些具体实施例中,原物料 20 是以基本上固体形式离开喷嘴组配件 130,因此所挤出的柱体会保持其形状。在某些具体实施例中,刚挤出的原物料 20 将接合至先前挤出的柱体 22,因此通过在先前所抽制的整个柱体 22 上抽制线条即可形成结构。

[0038] 在某些具体实施例中,按钮 122 会使原物料 20 以第一速率被挤出(例如 2.6mm/sec),而第二按钮 124 则使原物料 20 以第二速率被挤出(例如 5.0mm/sec)。在某些具体实施例中,第一速率是在 0.1 至 10.0mm/sec 的范围中,而第二速率是在 2 至 50mm/sec 的范围中。在某些具体实施例中,第一和第二速率是被选择以提供适合预期的用户的速度,例如预期供年轻孩童使用的装置 100 可具有比预期供成年艺术家使用的装置 100 更慢的速率。在某些具体实施例中,3D 抽制装置 100 可包括可变速度控制机制(未示出于图 1 至图 2),以让使用者调整一种或多种挤出速率。在某些具体实施例中,可变速度控制机制包括刻度盘。在某些具体实施例中,释放按钮 122、124 中任一个会带动内部机制向后抽制特定量的原物料 20,从而中断所挤出的柱体 22。在此方式中,使用者可用 3D 抽制装置 100 来“写”,以他们用笔的相同方式;另外他们可在三维中进行,因为所挤出的材料是三维的。使用者可依需要产生自由形式的线条、形状或其他对象。使用者可另外使用镂花模板或其他引导物以产生所需要的对象,例如雕塑、珠宝、艺术作品等。此外,或是在替代例中,3D 抽制装置 100 可被用以修复或加强现有对象与结构。在某些具体实施例中,同时按压按钮 122、124 会产生另一动作,例如从进入口 115 排出原物料 20 的未使用部分,使得使用者可切换至不同颜色或类型的原物料 20。

[0039] 图 2 是根据本实用新型的某些方面的图 1 的装置 100 的剖视图,其中一部分的外壳 110 已被移除。可见到电路组配件 126 是位于切换器 122、124 下方,而进料机构 150 被配置在下外壳 114 上,其中原物料 20 经由进入口 115 而进入并且通过进料机构 150 的组件上方和进料机构 150 的组件之间,其将以图 4A 至图 4B 进一步详细说明。在某些具体实施例中,电路组配件 126 可包括处理器,而在其他具体实施例中,电路组配件 126 可包括模拟电路组件,例如本领域中的技术人员熟知的机械式切换器、电阻器、电容器和其他电气组件(未示出于图 2)。在某些具体实施例中,电路组配件 126 可包括功率调整电路(未示出),其将来自电源的功率转换为不同形式,例如直流(DC)电压。在某些具体实施例中,电流组配件 126 可包括可携式电源(未示出于图 2)。在某些具体实施例中,电流组配件 126 可经由电源线(未示出于图 1 至图 2 中)而连接至外部电源。在某些具体实施例中,3D 抽制装置 100 也

包括外部控制接口 127，其连接至电路组配件 126 并被配置以接收来自远程系统(例如计算机数字控制 (CNC) 机器)的驱动指令。在某些具体实施例中，外壳 110 适合用于固定在 CNC 机器的工具接口上，使得所述机器可操纵 3D 抽制装置 100 以产生 3D 对象。举例而言，外部控制接口 127 可包括三个电气接脚，其中接脚 1 是共同(例如接地)接脚，接脚 2 是耦接至按钮 122 而使得在接脚 1 和接脚 2 两端的 DC 电压供应即相当于按压按钮 122，而接脚 3 是耦接至按钮 124 而使得在接脚 1 和接脚 3 两端的 DC 电压供应即相当于按压按钮 124。在某些具体实施例中，外部控制接口 127 可被配置以经由射频(RF)或光学无线系统来接收信号。在某些具体实施例中，外部控制接口 127 可被配置以经由光纤缆线接收信号。

[0040] 图 3A 至图 3B 是根据本实用新型的某些方面的图 1 的装置 100 的截面图和剖视图。图 3A 是整个 3D 抽制装置 100 的侧视图，示出了上外壳 112 和下外壳 114 如何一起形成内部空间 116，其中进料机构 150 是位于内部空间 116 中。在右端部处，可见到喷嘴组配件 130 包括挤出器 132 与引导管件 134，其将以图 3B 详细加以说明。风扇组配件 140 包括了静止的且装设至上外壳 112 的风扇盖体 142，位于盖体 142 下方的叶轮 14，其中叶轮 14 被配置以经由盖体 142 中的端口(在图 3A 中不可见)吸取空气至内部空间 116 中。在此实例中，马达 146 被固定至下外壳 114 并以固定速度来驱动叶轮 144。在某些具体实施例中，被吸取至内部空间的空气会经由上或下外壳 112、114 中的任一冷却口 118 而流出。冷却口 118 以图 3B 加以更详细说明。从图 3A 可见，在此具体实施例中，原物料 20 会依循直线路径而通过装置 100。

[0041] 图 3B 为喷嘴组配件 130 的放大剖视图。挤出器 132 具有第一腔体 135 与挤出通道 133，第一腔体 135 是形成为具有大致与原物料 20 相同的直径的圆柱内膛，挤出通道 133 则具有较小的直径并终止于出流喷嘴 133A 中。在某些具体实施例中，第一腔体 135 可具有 3mm 的第一直径。在某些具体实施例中，挤出器 132 是以热传导性材料所形成，例如金属或陶瓷，挤出器 132 具有沿着外部周围缠绕的加热组件，例如镍铬合金线(在图 3B 中不可见)。当装置 100 连接至电源时，加热组件会使挤出器 132 的温度上升至可高于原物料 20 的熔点的温度。在某些具体实施例中，喷嘴组配件 130 包括连接至电路组配件 126 的温度传感器，温度传感器包括温度控制电路，用以调节加热器组件的功率，进以使挤出器 132 的温度保持在设定点的所需范围内。由于温度调节的系统和方法属于本领域中的技术人员所熟知，因而不在本文中详细提供细节。在某些具体实施例，可提供指示器(未示出)(例如 LED)来指示挤出器 132 已经达到足以熔化原物料 20 的温度。

[0042] 在某些具体实施例中，例如当原物料包括塑料时，挤出器 132 的温度可介于 20 至 500℃的范围内。在某些具体实施例中，例如当原物料包括金属时，挤出器 132 的温度可介于 1000 至 2000℃的范围内。在某些具体实施例中，例如当原物料包括例如铅、锡或其混合物的金属时，挤出器 132 的温度可介于 100 至 400℃的范围内。在某些具体实施例中，例如当原物料包括例如铜、金、银或其混合物的金属时，挤出器 132 的温度可介于 1000 至 1200℃的范围内。在某些具体实施例中，例如当原物料包括例如铂的金属时，挤出器 132 的温度可介于 1600 至 2000℃的范围内。在某些具体实施例中，3D 抽制装置 100 可包括可变温度控制器(未示出)，其连接至电路组配件 126 以供使用者为挤出器 132 选择设定点温度。在某些具体实施例中，可变温度控制器可允许用户选择材料类型，例如“热塑性”，且电路组配件 126 将调整挤出器 132 的设定点温度。在某些具体实施例中，可变温度控制器可包括刻度

盘。

[0043] 引导管件 134 与挤出器 132 的第一腔体 135 对齐,因此通过引导管件 134 的原物料会进入第一腔体 135。在某些具体实施例中,引导管件 134 可由低摩擦性材料所形成,例如聚四氟乙烯(PTFE),因此使原物料 20 可轻易滑动,同时也使引导管件 134 和原物料 20 之间的间隙达到最小。挤出器 132 和引导管件 134 是通过固定管件 138 而保持对齐。在某些具体实施例中,固定管件 138 是由具有热传导性比其他金属相对为低的金属所形成。在某些具体实施例中,固定管件 138 是不锈钢。在某些具体实施例中,绝缘薄膜(在图 3B 中不可见),例如聚酰亚胺胶带,可被施用在加热组件上方及固定管件 138 下。

[0044] 在某些具体实施例中,绝缘器 131 可在固定管件 138 上方提供,以减少从挤出器 132 传送到上和下外壳 112、114 的热量。在某些具体实施例中,上和下外壳 112、114 中的一者或两者可具有贯穿其间而形成的冷却口 118,使得空气可从内部空间 116 流至周围大气。在某些具体实施例中,形成在上和下外壳 112、114 中、导向冷却口 118 的信道可呈倾斜,使得从冷却口 118 出现的空气被向内引导向尖端部 137。因此,当空气离开冷却口 118 时,空气会通过挤出器 132 的尖端部 137 而冷却尖端部 137 和才刚从挤出通道 133 挤出的原物料 20。在原物料 20 离开挤出通道 133 时,这两种冷却效果都用以降低原物料 20 的温度,因此原物料 20 在离开挤出通道 133 时实质上是固体的。在某些具体实施例中,刚挤出的原物料 20 可为易弯的且可成形为各种形状。在某些具体实施例中,刚挤出的原物料 20 的表面可易于装设(例如粘接),因此挤出的材料将接合至其他先前挤出的原物料 20。

[0045] 在某些具体实施例中,在绝缘器 131 与固定管件 138 之间可存有间隙。在某些具体实施例中,此间隙可提供断热部,以进一步使上下外壳 112、114 与挤出器 132 热隔离。

[0046] 当进料机构 150 (未示出于图 3B 中)将原物料 20 驱动向挤出信道 133 时,在挤出器 132 内的部分的原物料 20 将受挤出器 132 加热,使得在第一腔体 135 内的原物料 20 软化或熔化。当固体原物料 20 被驱动向前时,软化或熔化的原物料 20 将被强迫离开挤出通道 133,并从尖端部 137 出现,在该处正流出冷却口 118 的冷却空气会流动于刚挤出的原物料 20 上方,从而冷却并固化原物料 20。在某些具体实施例中,向外延伸超过前平面 102 的一部分挤出器 132 可被流出冷却口 118 的空气冷却至低于挤出器 132 的主要部分的温度。在某些具体实施例中,尖端部 137 的温度可低于原物料 20 的熔点。

[0047] 图 4A 至图 4B 是根据本实用新型的某些方面的进料机构 150 的平面和立体图。图 4A 示出一系列的齿轮对 153、154、155、156 和 157,其经由装设至马达 152 的转子的圆柱齿轮(在图 4A 中不可见)而受马达 152 驱动。每一个齿轮对具有大齿轮与小齿轮,其固定装设至彼此并沿着共同轴旋转。马达 152 的小齿轮驱动大齿轮 153A,其带动小齿轮 153B 以驱动大齿轮 154A。在某些具体实施例中,大齿轮 153A、154A、155A、156A 和 157A 可各具有 40 齿,而小齿轮 153B、154B、155B、156B (在图 4A 不可见)和 157B 则可具有 12 齿,因此在每一齿轮对之间提供了 40 :12 的减速比。在某些具体实施例中,从马达 152 至小齿轮 157B 的减速比可为 5*(40:12),或大致为 17 :1,亦即马达 152 的 17 次完整旋转仅带动小齿轮 157B 的一次完整旋转。在某些具体实施例中,齿轮对 153、154、155、156 和 157 在大及 / 或小齿轮上可具有不同的齿数。在某些具体实施例中,齿轮对 153、154、155、156 和 157 在各对应的大或小齿轮上可不具有相同的齿数。

[0048] 在使用时,使用马达 152 驱动减速齿轮系 150 来控制原物料 20 的前进在原物料 20

的挤出速率上提供了增进的控制度。举例而言，传统胶枪在触发器和胶条之间具有直接连结，因此施加在触发器上的压力会直接传送至条体。胶条的前进速率及因此所致的挤出速率取决于与熔化胶体的黏滞性，因此在模具范围上内龋(caries)。这通常导致有过多的胶体被分配。此外，由于释放触发器并不会使胶条收缩，因此当喷嘴移动离开分配位置时，通常会有胶体"尾部"被拉出胶枪外。相较之下，所公开的3D抽制装置100则因马达152和齿轮系150提供的受控制动作而提供了固定的挤出速率，例如3mm/sec。此外，当按钮122被释放时，电路组配件126会使马达152简单地反向运转，从而使原物料20稍微收缩并将在挤出通道133内的熔化原物料20拉回到挤出器132中，从而可使挤出的柱体22从尖端部137干净地断开。

[0049] 图4B示出最终小齿轮157B的齿部如何与原物料20啮合。在此具体实施例中，原物料20通过下外壳114的柱体119，然后通过小齿轮157B，然后进入引导管件134。在某些具体实施例中，齿轮157B被置放为可使齿部压抵于原物料20，原物料20则因柱体119与引导管件134而受限于离开齿轮157B的齿部的侧向动作，因此齿轮157B的旋转会对原物料20施加轴向力，亦即轴向力直接沿着长度。齿轮组150在第一方向的旋转将使原物料20线性地向前移动，亦即朝向尖端部137。由于这个部分的原物料20并不受到挤出器132内加热的影响，因此齿轮组150在反方向的旋转将始原物料20线性地向后移动，亦即离开尖端部137。

[0050] 从图4A和图4B可知，马达152的旋转(其受到按压按钮122、124中的一个控制)会使原物料20向前或向后移动。从马达152到小齿轮157B的减速比提供了原物料的平滑移动速率，因为马达152可在平滑操作的正常范围内的速度转动，而减速将此转换为原物料20的低线性移动速率。

[0051] 图5A至图5B为根据本实用新型的某些方面的3D抽制装置的另一具体实施例200的立体图和剖视图。图5A示出了被配置以容置以丸粒25形式的原物料的3D抽制装置200，这些丸粒25是固持在安装于本体210的进料斗250中。电线270是装设至本体210。图5B是剖视图，示出了进料螺旋部260，进料螺旋部260将丸粒25从进料斗250传送至熔化丸粒25、并在进料螺旋部260提供的压力下挤出熔化的原物料25(以类似于先前讨论的具体实施例100的喷嘴组配件130的方式)的喷嘴组配件230。具体实施例100的其他特征(例如冷却口118)也可以提供于具体实施例200。在某些具体实施例中，丸粒可通过其他机构而从进料斗250传送至喷嘴组配件130，例如具有本领域中的技术人员熟知的往返动作的圆柱(未示出于图5A至图5B中)。在某些具体实施例中，原物料可以液体的形式提供，例如环氧树脂，其具有悬浮在固持在进料斗250中的液体聚合物中的触媒粒。在某些具体实施例中，液体原物料通过挤出通道(类似于具体实施例100的挤出通道133)可改质液体原物料，因此其会在从3D抽制装置200挤出后快速地硬化。

[0052] 所公开的3D抽制装置的实例说明了其建构与使用的原理。在尖端部处提供冷却空气的流动以快速固化挤出的原物料可让使用者在三个维度中作业，而非被强迫为仅能仰赖支撑表面来使仍为流体的挤出材料在其硬化时固定定位。使用机械式齿轮系(而非加压供应源、或者在触动器和进料条之间的直接连接)来推进原物料可允许挤出速率的精确控制，从而增加挤出的材料柱体的均匀度，并能允许精确放置而无过剩材料。

[0053] 本申请包括了为使本领域中的技术人员能实施本文所述的各种方面而提供的说

明内容。前文已经说明了被视为最佳实施方式及/或其他实例，但应理解本领域中的技术人员定可直接无歧异得知这些方面的各种修饰例，并且本文所定义的一般性原理也可应用至其他方面。应理解在本文所公开的处理中的步骤或方块的具体次序或架构仅为示例性方式的说明；基于设计喜好，应理解这些处理中的步骤或方块的具体次序或架构是可以重新安排的。如附方法宣告了以简单次序的各种步骤的要件，并非意欲限制为所提出的具体次序或架构。因此，权利要求书不意欲为限于本文所示出的方面，而是作为与权利要求书语言一致的完整范畴的依据。

[0054] 标题或子标题（如果有的话）是仅为方便说明，其并不限制本实用新型。

[0055] 在以单数形式参照组件时，并不意欲为表示"一个且仅有一个"，除非具体作此陈述，否则皆指"一个或多个"。冠词"一"的使用是解释为等同于用语"至少一个"。除非具体进行相反陈述，否则用词"一组"及"某些"是指一个或多个。

[0056] 在本说明书中所使用的例如"顶部"、"底部"、"上"、"下"、"左"、"右"、"前"、"后"等用语应被理解为是指一任意参考系，而不是指一般的重力参考系。因此，顶部表面、底部表面、前表面与后表面可于重力参考系中向上地、向下地、斜向地、或水平地延伸。

[0057] 虽然在本文中说明了各个构件之间的关系，且这些构件之间的关系描述为正交或垂直，但在某些具体实施例中，这些构件也可排列为其他型态。举例而言，在某些具体实施例中，在所指构件之间形成的角度可大于或小于 90 度。

[0058] 虽然各种构件是描述为呈平坦及/或直线，但这些构件也可具有其他型态，举例而言，在某些具体实施例中，其是呈例如曲线或渐缩。

[0059] 男性代名词（例如"他的"）包括女性或中性性别者（例如"她的"或"其"），且反之亦然。对于本说明书中所描述的各种方面的组件，其所有的结构性与功能性等效例皆属本领域中的技术人员能得知或后续可知，这些等效例皆以参照方式并入于本文中且意欲为被权利要求书所涵盖。此外，在本文中所公开的内容皆作为贡献予公众之用，无论是否明确记载在权利要求书中。

[0060] 例如"方面"的用语并不是暗示这类方面为目标技术所必须、或这类方面应用至目标技术的所有型态。与一种方面相关的内容可应用至所有型态、或一个或多个型态。例如"方面"的用语可指一种或多种方面，且反之亦然。例如"具体实施例"的用语并不是暗示这类具体实施例为目标技术所必须、或这类具体实施例应用至目标技术的所有型态。与一种具体实施例相关的内容可应用至所有具体实施例、或一个或多个具体实施例。例如"具体实施例"的用语可指一个或多个具体实施例，且反之亦然。

[0061] 本文中所使用的用语"示例性"是意指"作为实例或说明"。本文中以"示例性"所说明的任何方面或设计不一定要被解释为比其他方面或设计更佳或更具优势。

[0062] 对于本说明书中所描述的各种方面的组件，所有的结构性与功能性等效例皆属本领域中的技术人员能得知或后续可知，这些等效例皆以参照方式并入于本文中且意欲为权利要求书所涵盖。此外，在本文中所公开的内容皆作为贡献予公众之用，无论是否明确记载在权利要求书中。另外，关于在说明书或权利要求书中所使用的用语"包括"、"具有"、或类似用语的范围，这类用语是指与用语"包含"相同的广泛方式（如使用作为权利要求中的转折词时的解释）。

[0063] 虽已详细描述和说明本实用新型的具体实施例，但应清楚理解这些具体实施例是

仅作为说明与实例的用途，而非作为限制，本实用新型的范畴应仅由如附权利要求书的用语所限制。

[0064] 本申请要求 2012 年 12 月 5 日提交的系列号为 No. 61/733,689 的美国临时专利申请的优先权和权益，该临时专利申请的整体内容通过引用而并入本文。




图1




图2



140
100
142
144
146
20
112
116
130
118
150
114
134
132
118


图 3A



102
112
118
135
137
20
134
132
116
138
131
133A
133
114
118


图 3B


150
153
154
153A
154A
154B
155
155A
156
156A
153B
152
157A
157B

图 4A


134
20
119
157B
114

图 4B




图 5A




图 5B

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24246801 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Mark John Itri/Sharon Fennessy |
| **Filer Authorized By:** | Mark John Itri |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 02-DEC-2015 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 19:32:28 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213-IDS.pdf | 223600<br>e07146a01ba32329e8791732b503b5b5e7970387 | yes | 5 |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | **Document Description** | **Start** | **End** |
| | Transmittal Letter | 1 | 2 |
| | Information Disclosure Statement (IDS) Form (SB08) | 3 | 5 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 2 | Foreign Reference | CN203592687U.pdf | 1459024<br>a564578a1b5c612fb389d64d4fc0d7760549b67f | no | 17 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 1682624 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Docket No.: 092749-0213
(PATENT)

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re Patent Application of:<br>Peter DILWORTH et al. | : Customer Number: 31824 |
| Application No.: 14/821,399 | : Confirmation No.: 9856 |
| Filed: August 7, 2015 | : Art Unit: 1743 |
| For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | : Examiner: L. D. Hohenbrink Jr. |

## INFORMATION DISCLOSURE STATEMENT

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Pursuant to 37 C.F.R. § 1.56, 1.97 and 1.98, the attention of the Patent and Trademark Office is hereby directed to the references listed on the attached PTO/SB/08. It is respectfully requested that the information be expressly considered during the prosecution of this application, and that the references be made of record therein and appear among the "References Cited" on any patent to issue therefrom.

This Information Disclosure Statement is filed before the mailing date of a first Office Action on the merits as far as is known to the undersigned (37 C.F.R. § 1.97(b)(3)).

With the exception of CN 203592687U, all of the foreign and non-patent literature references were cited by or submitted to the U.S. Patent and Trademark Office in parent Application

No. 13/831,050, filed March 14, 2013, which is relied upon for an earlier filing date under 35 U.S.C. § 120. Thus, copies of the references cited in the parent are not attached. 37 C.F.R. § 1.98(d). A copy of newly-cited CN 203592687U is attached.

In accordance with 37 C.F.R. § 1.97(g), the filing of this Information Disclosure Statement shall not be construed to mean that a search has been made or that no other material information as defined in 37 C.F.R. § 1.56(a) exists. In accordance with 37 C.F.R. § 1.97(h), the filing of this Information Disclosure Statement shall not be construed to be an admission that any patent, publication or other information referred to therein is "prior art" for this invention unless specifically designated as such.

The Director is hereby authorized to charge any deficiency in the fees filed, asserted to be filed or which should have been filed herewith to Deposit Account No. 50-2624.

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

Mark J. Itri
Registration No. 36,171

**Please recognize our Customer No. 31824 as our correspondence address.**

4 Park Plaza
Suite 1700
Irvine, CA 92614-2559
Phone: (949) 757-7104 MJI:snf
Facsimile: (949) 851-9348
**Date:** December 2, 2015

Docket No.: 092749-0213 PATENT

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Application of | : | Customer Number: 31824 |
| Peter DILWORTH et al. | : | Group Art Unit: 3725 |
| Application No.: 14/821,399 | : | Examiner: LAWRENCE D HOHENBRINK JR |
| Filing Date: August 7, 2015 | : | Confirmation No.: 9856 |

For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

**RESPONSE TO NOTICE OF NON-COMPLIANT AMENDMENT**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

In response to the Notice of Non-Compliant Amendment mailed November 30, 2015, in the above-captioned application, Applicant resubmits herewith the Preliminary Amendment previously filed October 22, 2015, with proper status identifiers in compliance with 37 C.F.R. § 1.121. Accordingly, prior to examination of the above-referenced application, please amend the application as follows:

**Amendments to the claims** begin on Page 2.

**Remarks** begin on Page 6.

**AMENDMENTS TO THE CLAIMS**

A complete listing of all claims and their current status is presented below. In the changes made to the following claims, [[deletions are double bracketed]] or ~~shown with strike-through~~, and additions are underlined. This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1.–20. (Canceled)

21. (New) A three-dimensional (3D) drawing device comprising:

an elongate housing configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having a first end, a second end, and a port configured for introduction of a feed stock through the second end and into an internal volume of the housing, the housing having a length between the first end and the second end, the length being greater than a maximum transverse extent of the housing, and the housing having at least one cooling port extending between the internal volume and an ambient atmosphere;

a first actuator and a second actuator each coupled to the housing and positioned to be actuated by the user's hand while holding the housing;

a motor disposed within the internal volume and controlled in response to operation of the first actuator and the second actuator;

a gear train operatively coupled with the motor to drive the gear train, disposed within the internal volume to receive the feed stock, and configured to move the feed stock when engaged with the gear train; and

a nozzle assembly disposed at the first end of the housing and at least partially within the housing, the nozzle assembly comprising an extruder, an exit nozzle, and a guide tube, the extruder having a heating element surrounded by an insulator, the guide tube extending between the gear train and the extruder, a first end of the guide tube positioned to receive the feed stock from the gear train, a second end of the guide tube

aligned with a chamber of the extruder such that the feed stock is directed into the chamber, the extruder being disposed between the guide tube and the exit nozzle.

22. (New) The 3D drawing device of claim 21, further comprising a mounting tube having a first end and a second end, and wherein the second end of the guide tube extends into the first end of the mounting tube, and an end of the extruder opposite the nozzle extends into the second end of the mounting tube, the mounting tube holding the second end of the guide tube in alignment with the end of the extruder opposite the nozzle.

23. (New) The 3D drawing device of claim 21, further comprising an upper housing and a lower housing, at least one of the upper housing and the lower housing comprising a cooling port proximate to the nozzle.

24. (New) The 3D drawing device of claim 23, wherein each of the upper housing and the lower housing comprises a cooling port.

25. (New) The 3D drawing device of claim 21, wherein the first actuator and the second actuator are axially aligned and disposed on an outer surface of the housing between the first end and the second end.

26. (New) The 3D drawing device of claim 21, further comprising a circuit assembly, wherein the circuit assembly directs the motor to rotate in a first direction at a first motor rate in response to actuation of the first actuator such that the feed stock is extruded out of the exit nozzle at a first extrusion rate, and the circuit assembly directs the motor to rotate in the first direction at a second motor rate in response to actuation of the second actuator such that the feed stock is extruded out of the exit nozzle at a second extrusion rate that is greater than the first extrusion rate.

27. (New) The 3D drawing device of claim 26, wherein the circuit assembly directs the motor to rotate in the second direction in response to simultaneous actuation of the first and second actuators.

28. (New) The 3D drawing device of claim 26, further comprising a variable speed control mechanism operatively connected to the circuit assembly to adjust one or more of the first extrusion rate and the second extrusion rate.

29. (New) A three-dimensional (3D) drawing device comprising:

a housing having a first end and a second end, the housing configured for introduction of a feed stock through the second end and into an internal volume of the housing;

a nozzle assembly at the first end of the housing and at least partially disposed within the housing and having an exit nozzle;

a motor disposed within the housing;

a gear train disposed within the housing and operatively coupled between the motor and the feed stock;

a first actuator disposed on an outer surface of the housing between the first end and the second end; and

a variable speed control mechanism operatively connected to the motor and the first actuator to adjust a rate of extrusion of the feed stock out of the exit nozzle.

30. (New) The 3D drawing device of claim 29, further comprising a second actuator disposed on the outer surface of the housing between the first end and the second end.

31. (New) The 3D drawing device of claim 30, further comprising a circuit assembly operatively connected to the motor, the first actuator, and the second actuator, the circuit assembly configured to control the motor to rotate at a first rate in response to operation of the first actuator such that the gear train urges the feed stock out of the exit nozzle at a first rate, and the circuit assembly configured to control the motor to rotate at a second rate in response to operation of the second actuator such that the gear train urges the feed stock out of the exit nozzle at a second rate.

32. (New) The 3D drawing device of claim 31, wherein the circuit assembly is configured to control the motor to rotate in the second direction in response to simultaneous actuation of the first and second actuators.

33. (New) The 3D drawing device of claim 30, wherein the first actuator and the second actuator are axially aligned.

## REMARKS

Claims 1–20 were originally filed in this application. Without prejudice or disclaimer of subject matter, Applicant cancels claims 1–20 and adds claims 21–33 by this preliminary amendment. Accordingly, upon entry of this amendment, claims 21–33 are pending in this application for examination. Applicant reserves the right to pursue claims to the originally pending subject matter in the future.

No new matter is believed to have been introduced to the application by this amendment. Please amend this application as set forth above prior to the first Office Action on the merits. However, if the Examiner believes that any new claim would introduce new matter to this application, Applicant respectfully requests the Examiner not to enter the addition of that claim. Also, if the Examiner believes that all of the new claims introduce new matter to this application, Applicant respectfully requests the Examiner not to cancel the originally filed claims.

In view of the foregoing amendments and remarks, Applicant respectfully requests favorable action on this application.

Please charge any shortage in fees due in connection with the filing of this paper, including extension-of-time fees, to Deposit Account 502624, and please credit any excess fees to that deposit account.

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

/Douglas B. Espenschied/

Douglas B. Espenschied
Registration No. 66,607

4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
Phone: 949.851.0633 DM:sv
Facsimile: 949.851.9348

**Please recognize our Customer No. 31824 as our correspondence address.**

**Date: December 18, 2015**

DM_US 68597653-1.092749.0213

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 24417378 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Douglas B. Espenschied/Sara Lin |
| **Filer Authorized By:** | Douglas B. Espenschied |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 18-DEC-2015 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 19:27:15 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213-noncompliance.pdf | 75314<br>157fd5c7ed723218f4495b945d974675969d53a1 | yes | 6 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Applicant Response to Pre-Exam Formalities Notice | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 6 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 75314 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/821,399 | Filing Date<br>08/07/2015 | ☐ To be Mailed |
|---|---|---|---|

ENTITY: ☐ LARGE ☒ SMALL ☐ MICRO

## APPLICATION AS FILED – PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| AMENDMENT | 12/18/2015 | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * 13 | Minus | ** 20 | = 0 | x $40 = | 0 |
| | Independent (37 CFR 1.16(h)) | * 2 | Minus | ***3 | = 0 | x $210 = | 0 |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | 0 |

| AMENDMENT | | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|---|
| | Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| | Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| | ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| | ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

HSLIE
/LELAND WATKINS/

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NUMBER | FILING OR 371(C) DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO./TITLE |
|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 |

**CONFIRMATION NO. 9856**

**PUBLICATION NOTICE**

*OC000000080334025*

31824
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

**Title:**HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

**Publication No.**US-2016-0031141-A1
**Publication Date:**02/04/2016

## NOTICE OF PUBLICATION OF APPLICATION

The above-identified application will be electronically published as a patent application publication pursuant to 37 CFR 1.211, et seq. The patent application publication number and publication date are set forth above.

The publication may be accessed through the USPTO's publically available Searchable Databases via the Internet at www.uspto.gov. The direct link to access the publication is currently http://www.uspto.gov/patft/.

The publication process established by the Office does not provide for mailing a copy of the publication to applicant. A copy of the publication may be obtained from the Office upon payment of the appropriate fee set forth in 37 CFR 1.19(a)(1). Orders for copies of patent application publications are handled by the USPTO's Office of Public Records. The Office of Public Records can be reached by telephone at (703) 308-9726 or (800) 972-6382, by facsimile at (703) 305-8759, by mail addressed to the United States Patent and Trademark Office, Office of Public Records, Alexandria, VA 22313-1450 or via the Internet.

In addition, information on the status of the application, including the mailing date of Office actions and the dates of receipt of correspondence filed in the Office, may also be accessed via the Internet through the Patent Electronic Business Center at www.uspto.gov using the public side of the Patent Application Information and Retrieval (PAIR) system. The direct link to access this status information is currently http://pair.uspto.gov/. Prior to publication, such status information is confidential and may only be obtained by applicant using the private side of PAIR.

Further assistance in electronically accessing the publication, or about PAIR, is available by calling the Patent Electronic Business Center at 1-866-217-9197.

---

Office of Data Managment, Application Assistance Unit (571) 272-4000, or (571) 272-4200, or 1-888-786-0101

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 3

| *Complete if Known* | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | US-3,559,241 | 02-1971 | Chu | |
| | A2 | US-3,604,597 | 09-1971 | Pohl et al. | |
| | A3 | US-3,887,319 | 06-1975 | Cottingham | |
| | A4 | US-5,121,329 | 06-1992 | Crump | |
| | A5 | US-5,169,587 | 12-1992 | Courval | |
| | A6 | US-6,129,872 | 10-2000 | Jang | |
| | A7 | US-6,238,613 | 05-2001 | Batchelder et al. | |
| | A8 | US-6,500,374 | 12-2002 | Akioka et al. | |
| | A9 | US-6,558,059 | 05-2003 | Hillinger et al. | |
| | A10 | US-8,262,304 | 09-2012 | Llach et al. | |
| | A11 | US-8,926,882 | 01-2015 | Batchelder | |
| | A12 | US-2005/0129941-A1 | 06-2005 | Comb et al. | |
| | A13 | US-2005/0288813-A1 | 12-2005 | Yang et al. | |
| | A14 | US-2007/0228590-A1 | 10-2007 | LaBossiere et al. | |
| | A15 | US-2008/0197116-A1 | 08-2008 | Achtner et al. | |
| | A16 | US-2008/0213419-A1 | 09-2008 | Skubic et al. | |
| | A17 | US-2010/0147465-A1 | 06-2010 | Di Miceli et al. | |
| | A18 | US-2010/0327479-A1 | 12-2010 | Zinniel et al. | |
| | A19 | US-2011/0076496-A1 | 03-2011 | Batchelder et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B1 | CN-101166597-A | 04-2008 | Tdy, Ind Inc | | X |
| | B2 | CN-102922721-A | 02-2013 | Chen | | X |
| | B3 | CN-2761402-Y | 03-2006 | Overseas Univ | | X |
| | B4 | CN-201086388-Y | 07-2008 | Pumma Technology Co., Ltd | | X |
| | B5 | DE-3341201-A1 | 05-1985 | Ursprung,reinhard | | X |
| | B6 | EP-0257838-A2 | 03-1988 | Bostik Ltd | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | Application Number | 14/821,399-Conf. #9856 |
| | | | | Filing Date | August 7, 2015 |
| | | | | First Named Inventor | Peter DILWORTH |
| | | | | Art Unit | 1743 |
| *(Use as many sheets as necessary)* | | | | Examiner Name | L. D. Hohenbrink |
| Sheet | 2 | of | 3 | Attorney Docket Number | 092749-0213 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A20 | US-2011/0079936-A1 | 04-2011 | Oxman | |
| | A21 | US-2011/0196660-A1 | 08-2011 | Liu et al. | |
| | A22 | US-2012/0070523-A1 | 03-2012 | Swanson et al. | |
| | A23 | US-2013/0209600-A1 | 08-2013 | Tow | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] *(if known)* | Publication Date MM-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B7 | WO-2012152510-A1 | 11-2012 | Evonik Roehm Gmbh | | |
| | B8 | WO-2012152511-A1 | 11-2012 | Evonik Roehm Gmbh | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | **Application Number** | 14/821,399-Conf. #9856 |
| | | | | **Filing Date** | August 7, 2015 |
| | | | | **First Named Inventor** | Peter DILWORTH |
| | | | | Art Unit | 1743 |
| *(Use as many sheets as necessary)* | | | | Examiner Name | L. D. Hohenbrink |
| Sheet | 3 | of | 3 | Attorney Docket Number | 092749-0213 |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | C1 | "A Range of Leister Hand-Held and Automatic Welders from Techspan," December 12, 2006, retrieved from http://www.ferret.com.au/c/techspan-group/a-range-of-Leister-hand-held-automatic-welders-from-Techspan-n667443 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

Espacenet

# Bibliographic data: CN101166597 (A) — 2008-04-23

## Composite article with coolant channels and tool fabrication method

**Inventor(s):**

**Applicant(s):** TDY IND INC [US] + (TDY IND INC)

**Classification:**
- international: *B22F5/10; B22F7/06*
- cooperative: **B21C23/22**; **B21C25/02**; **B22F5/10**; **B22F7/06**; **B29C47/06**; B22F2005/001; B22F2005/004; B22F2998/00; B22F2998/10; Y10T407/19; Y10T407/1904; Y10T408/907; Y10T428/131; Y10T428/1317 more

**Application number:** CN2006814550 20060614

**Priority number(s):** US20050167811 20050627

**Also published as:** US2006288820 (A1) US8637127 (B2) US2014097553 (A1) US2013043615 (A1) US8808591 (B2) more

**Abstract not available for CN101166597 (A)**
**Abstract of corresponding document: US2006288820 (A1)**

Embodiments of the present invention include composite articles comprising at least a first region and a second region and methods of making such articles. The first region may comprise a first composite material, wherein the first region comprises less than 5 wt. % cubic carbides by weight, and the second region may comprise a second composite material, wherein the second composite material differs from the first composite material in at least one characteristic. The composite article may additionally comprise at least one coolant channel.; In certain embodiments, the first and second composite material may individually comprise hard particles in a binder, wherein the hard particles independently comprise at least one of a carbide, a nitride, a boride, a silicide, an oxide, and solid solutions thereof and the binder comprises at least one metal selected from cobalt, nickel, iron and alloys thereof. In specific embodiments, the first composite material and the second composite material may individually comprise metal carbides in a binder, such as a cemented carbide.


610
Tube of
Grade A
600
620
Rod of
Grade B
630
640
Die With
Internal
Spiral
Serrations
Spiral
Coolant
Channels
Direction of Twist

[19] 中华人民共和国国家知识产权局

[51] Int. Cl.
*B22F 7/06* (2006.01)
*B22F 5/10* (2006.01)

[12] 发明专利申请公布说明书

[21] 申请号 200680014550.2

[43] 公开日 2008 年 4 月 23 日

[11] 公开号 CN 101166597A

[22] 申请日 2006.6.14
[21] 申请号 200680014550.2
[30] 优先权
[32] 2005.6.27 [33] US [31] 11/167,811
[86] 国际申请 PCT/US2006/023238 2006.6.14
[87] 国际公布 WO2007/001870 英 2007.1.4
[85] 进入国家阶段日期 2007.10.29

[71] 申请人 TDY 工业公司
地址 美国宾夕法尼亚州
[72] 发明人 普拉卡什 · K · 默钱达尼
迈克尔 · E · 沃勒
杰弗里 · L · 韦戈尔德
比利 · D · 斯韦伦金

[74] 专利代理机构 北京市柳沈律师事务所
代理人 曲 莹

权利要求书 5 页 说明书 10 页 附图 14 页

[54] 发明名称

具有冷却剂通道的复合制品和工具制造方法

[57] 摘要

本发明的实施例包括复合制品和制造这种制品的方法，该复合制品包括至少一第一区域和一第二区域。第一区域可包括第一复合材料，其中第一区域包括小于 5wt.%重量的立方相碳化物，第二区域可包括第二复合材料，其中第二复合材料在至少一种特性方面与第一复合材料不同。复合制品还可包括至少一个冷却剂通道。在某些实施例中，第一和第二复合材料可以各包括粘结剂中的硬颗粒，其中这些硬颗粒独立地包括碳化物、氮化物、硼化物、硅化物、氧化物及其固溶体中至少之一，并且粘结剂包括从钴、镍、铁及其合金中选出的至少一种金属。在具体实施例中，第一复合材料和第二复合材料可以各包括粘结剂中的金属碳化物，例如硬质合金。



1. 一种复合制品，包括:

至少一第一区域和一第二区域，其中，第一区域包括第一复合材料和小于 5wt.%重量的立方相碳化物，第二区域包括第二复合材料，其中第一复合材料在至少一种特性方面与第二复合材料不同；以及

至少一个冷却剂通道。

2. 如权利要求 1 的复合制品，其中，第一和第二复合材料各包括粘结剂中的硬颗粒，这些硬颗粒独立地包括碳化物、氮化物、硼化物、硅化物、氧化物及其固溶体中至少之一，并且粘结剂包括从钴、镍、铁及其合金中选出的至少一种金属。

3. 如权利要求 1 的复合制品，其中，所述特性是从由弹性模量、硬度、耐磨性、断裂韧度、拉伸强度、耐蚀性、热膨胀系数和导热系数构成的组中选出的至少一种特性。

4. 如权利要求 1 的复合制品，其中，第一复合材料和第二复合材料各包括粘结剂中的金属碳化物。

5. 如权利要求 4 的复合制品，其中，第一复合材料的金属碳化物的金属和第二复合材料的金属碳化物的金属各从由 IVB 族、VB 族和 VIB 族元素构成的组中选出。

6. 如权利要求 4 的复合制品，其中，第一区域通过粘结剂基体自生地结合到第二区域。

7. 如权利要求 4 的复合制品，其中，第一复合材料的粘结剂和第二复合材料的粘结剂各包括从由钴、钴合金、镍、镍合金、铁和铁合金构成的组中选出的金属。

8. 如权利要求 4 的复合制品，其中，第一复合材料的粘结剂和第二复合材料的粘结剂在化学组成方面不同。

9. 如权利要求 4 的复合制品，其中，第一复合材料的粘结剂的重量百分比不同于第二复合材料的粘结剂的重量百分比。

10. 如权利要求 4 的复合制品，其中，第一复合材料的金属碳化物在化学组成和平均粒度中至少一个方面不同于第二复合材料的金属碳化物。

11. 如权利要求 4 的复合制品，其中，第一复合材料和第二复合材料各

包括 2 至 40 重量百分比的粘结剂和 60 至 98 重量百分比的金属碳化物。

12. 如权利要求 11 的复合制品，其中，第一复合材料和第二碳化物材料中之一包括比第一复合材料和第二复合材料中另一个多 1 至 10 重量百分比的粘结剂。

13. 如权利要求 1 的复合制品，其中，复合制品是旋转工具、旋转工具坯、钻、端铣刀、丝锥、杆和棒中之一。

14. 如权利要求 1 的复合制品，其中，第一区域内的第一复合材料的弹性模量不同于第二区域内的第二复合材料的弹性模量。

15. 如权利要求 1 的复合制品，其中，第一区域内的第一复合材料的硬度和耐磨性中至少之一不同于第二区域内的第二复合材料。

16. 如权利要求 1 的复合制品，还包括两个冷却剂通道。

17. 如权利要求 1 的复合制品，其中，所述至少一个冷却剂通道基本上是直的。

18. 如权利要求 1 的复合制品，其中，所述至少一个冷却剂通道为大致螺旋形。

19. 如权利要求 18 的复合制品，包括两个冷却剂通道。

20. 如权利要求 1 的复合制品，其中，复合材料是硬质合金。

21. 一种形成制品的方法，包括：

共挤出包括金属碳化物的至少两种复合材料，以形成生坯。

22. 如权利要求 21 的形成制品的方法，其中，通过模具进行所述至少两种复合材料的共挤出。

23. 如权利要求 22 的方法，其中，模具包括用于在生坯中制出内部通道的装置。

24. 如权利要求 22 的方法，其中，模具包括至少一根丝线。

25. 如权利要求 24 的方法，其中，所述至少一根丝线形成生坯内的内部通道。

26. 如权利要求 24 的方法，其中，模具包括至少两根丝线。

27. 如权利要求 26 的方法，其中，模具包括三根丝线。

28. 如权利要求 24 的方法，其中，至少一根丝线是柔韧的丝线。

29. 如权利要求 28 的方法，其中，所述柔韧的丝线包括尼龙、涂有聚合物的金属丝线、聚乙烯、高密度聚乙烯、聚酯、聚氯乙烯、聚丙烯、芳族聚

酰胺、凯夫拉尔、聚醚醚酮、棉花、动物肠线、大麻和黄麻中至少之一。

30. 如权利要求 24 的方法，其中，丝线是刚性的。

31. 如权利要求 30 的方法，其中，丝线包括金属。

32. 如权利要求 21 的方法，还包括:

用至少两个硬质合金等级装载供料腔。

33. 如权利要求 32 的方法，其中，至少一个硬质合金等级是挤出的形式。

34. 如权利要求 33 的方法，其中，所述挤出的形式是杆、棒和管中至少之一。

35. 如权利要求 32 的方法，其中，装载供料腔包括装载杆形的至少一个硬质合金等级和管形的至少一个硬质合金。

36. 如权利要求 33 的方法，其中，多个硬质合金等级以管的形状装载到供料腔中。

37. 如权利要求 32 的方法，还包括:

挤出管形式的第一硬质合金等级。

38. 如权利要求 37 的方法，还包括:

挤出杆形式的第二硬质合金等级。

39. 如权利要求 38 的方法，其中，杆形式的硬质合金被直接挤出到共挤出机的供料腔中。

40. 如权利要求 21 的方法，其中，复合材料是硬质合金。

41. 如权利要求 21 的方法，其中，生坯包括两个硬质合金等级并且所述硬质合金等级共轴设置。

42. 如权利要求 21 的方法，其中，模具包括通道模具。

43. 如权利要求 42 的方法，其中，将所述至少两个硬质合金等级共挤出通过包括内部螺旋锯齿的模具。

44. 如权利要求 42 的方法，其中，将所述至少两个硬质合金共挤出通过旋转的模具。

45. 如权利要求 22 的方法，其中，生坯包括至少一个通道。

46. 如权利要求 22 的方法，其中，生坯包括两个螺旋形通道。

47. 如权利要求 1 的复合制品，其中，所述第一硬质合金材料和所述第二硬质合金材料中至少之一包括平均粒度为 0.3 至 10μm 的碳化钨颗粒。

48. 如权利要求 1 的复合制品，其中，所述第一硬质合金材料和所述第

二硬质合金材料中至少之一包括平均粒度为 0.5 至 10μm 的碳化钨颗粒，且所述第一硬质合金材料和所述第二硬质合金材料中另一个包括平均粒度为 0.3 至 1.5μm 的碳化钨颗粒。

49. 如权利要求 1 的复合制品，其中，复合制品是钻、端铣刀和丝锥中之一。

50. 如权利要求 5 的复合制品，其中，所述第一硬质合金材料和所述第二硬质合金材料中之一包括比所述第一硬质合金材料和所述第二硬质合金材料中另一个多 1 至 10 重量百分比的所述粘结剂。

51. 如权利要求 1 的复合制品，其中，所述第一区域内的所述第一硬质合金材料的弹性模量不同于所述第二区域内的所述第二硬质合金材料的弹性模量。

52. 如权利要求 1 的复合制品，其中，所述第一区域内的所述第一硬质合金材料的弹性模量为 $90\times10^6$ 至 $95\times10^6$ psi，所述第二区域内的所述第二硬质合金材料的弹性模量为 $69\times10^6$ 至 $92\times10^6$ psi。

53. 如权利要求 1 的复合制品，其中，所述第一区域内的所述第一硬质合金材料的硬度和耐磨性中至少之一不同于所述第二区域内的所述第二硬质合金材料。

54. 如权利要求 1 的复合制品，其中，所述第一硬质合金材料包括 6 至 15 重量百分比的钴合金，所述第二硬质合金材料包括 10 至 15 重量百分比的钴合金。

55. 一种制造具有复合结构的旋转工具的方法，该方法包括：

将挤出的第一粉末金属置于模具空隙的第一区域中；

将第二冶金粉末金属置于空隙的第二区域中，所述挤出的第一粉末金属不同于第二冶金粉末；

压缩模具以使所述挤出的第一粉末金属和第二粉末金属固结以形成生坯；和

过压烧结所述生坯。

56. 如权利要求 55 的方法，还包括：

从所述生坯中去除材料以提供至少一个切削刃。

57. 如权利要求 56 的方法，其中，模具是干套模橡皮模具，并且其中，压缩模具包括均衡地压缩干套模橡皮模具以形成生坯。

58. 如权利要求 56 的方法，其中，从生坯去除材料包括对生坯进行机加工，以形成至少一个确定至少一个螺旋形取向的切削刃的螺旋形取向的出屑槽。

59. 如权利要求 55 的方法，其中，所述挤出的第一复合粉末包括至少一个通道。

60. 如权利要求 59 的方法，其中，所述挤出的第一粉末金属包括至少两个通道。

61. 如权利要求 55 的方法，其中，第一粉末金属和第二粉末金属都包括粉末粘结剂和由 IVB 族、VB 族和 VIB 族元素构成的组中选出的至少一种元素的碳化物的颗粒。

62. 如权利要求 61 的方法，其中，第一粉末金属和第二粉末金属的粘结剂各包括从由钴、钴合金、镍、镍合金、铁和铁合金构成的组中选出的至少一种金属。

63. 如权利要求 55 的方法，其中，第一粉末金属和第二粉末金属各包括 2 至 40 重量百分比的粉末粘结剂和 60 至 98 重量百分比的碳化物颗粒。

64. 如权利要求 55 的方法，其中，第一粉末金属和第二粉末金属中至少之一包括平均粒度为 0.3 至 10μm 的碳化钨颗粒。

65. 如权利要求 55 的方法，其中，过压烧结生坯包括在 300-2000psi 的压力下、在 1350℃至 1500℃的温度下对生坯进行加热。

66. 如权利要求 55 的方法，其中，压缩模具包括在 5000 至 50000psi 的压力下均衡地压缩模具。

67. 如权利要求 55 的方法，其中，通过压缩模具形成的生坯包括:

通过使第一冶金粉末固结而提供的包括第一硬质合金材料的第一区域；和

通过使第二冶金粉末固结而提供的包括第二硬质合金材料的第二区域，第一区域和第二区域在至少一种特性方面不同。

68. 如权利要求 67 的方法，其中，所述特性是从由弹性模量、硬度、耐磨性、断裂韧度、拉伸强度、耐蚀性、热膨胀系数和导热系数构成的组中选出的至少一种特性。

# 具有冷却剂通道的复合制品和工具制造方法

## 技术领域

本发明总体上涉及形成具有复合构造的制品(例如，工具坯)的方法，所述复合构造包括不同的成分和/或微观结构的区域。本发明还涉及旋转工具和旋转工具的工具坯，旋转工具具有复合构造和至少一个冷却剂通道。本发明的方法基本上应用于旋转工具的生产，并且可以例如应用于硬质合金旋转工具的生产，该硬质合金旋转工具用于材料去除操作，例如钻孔、铰孔、钻埋头孔、镗孔和端铣削。

## 背景技术

硬质合金旋转工具(即，受到驱动进行旋转的工具)通常用于机加工操作，例如钻孔、铰孔、钻埋头孔、镗孔、端铣削和攻丝。这类工具一般具有实心的整体构造。这类工具的制造过程可以包括固结冶金粉末(包括微粒陶瓷和粘结金属)，以形成压块。然后烧结该压块以形成具有实心整体构造的圆柱形工具坯。正如这里所使用的，整体构造是指工具由例如硬质合金材料构成，该材料在工具内的任何工作容积处都具有大致相同的特性。在烧结之后，对工具坯进行适当的机加工，以形成旋转工具的具有特定几何形状的切削刃和其它部件。旋转工具包括例如钻、端铣刀、铰刀和丝锥。

由硬质合金构成的旋转工具适合于许多工业应用，包括由例如金属、木材和塑料制成的材料的切割和成形。硬质合金工具因这些材料的特性中结合了拉伸强度、耐磨性和韧性而在工业上很重要。硬质合金材料包括至少两相：至少一种硬陶瓷组分和由金属粘结剂构成的柔软基体。硬陶瓷组分可以是例如在元素周期表中位于 IVB 至 VIB 族内的元素的碳化物。通常的示例是碳化钨。粘结剂可以是金属或金属合金，一般是钴、镍、铁或这些金属的合金。粘结剂将陶瓷组分“接合”在三维空间中互连的基体内。硬质合金可以通过固结由至少一种粉末陶瓷组分和至少一种粉末粘结剂构成的冶金粉末混合物来制造。

硬质合金材料的物理和化学性质部分地取决于用于生产该材料的冶金

粉末的单个组分。硬质合金材料的性质由例如陶瓷组分的化学组成、陶瓷组分的颗粒尺寸、粘结剂的化学组成以及粘结剂与陶瓷组分的比例确定。通过改变冶金粉末的组分，可以将诸如钻和端铣刀的旋转工具生产成具有与特定应用场合相匹配的独特性质。

整体旋转工具还可以包括延伸通过其主体和柄部的冷却剂通道，以允许诸如油或水的冷却剂流到旋转工具的切削表面。冷却剂可以在柄端部处进入通道并在钻尖处离开。冷却剂冷却旋转工具和工件，并有助于将碎屑和灰尘从孔中喷出。在机加工操作期间使用冷却剂除了延长工具寿命以外，还允许利用旋转工具的更高的切削速度和更快的进给速率。具有冷却剂通道的旋转工具特别适合于在硬材料中钻深孔。

然而，旋转工具的整体构造在本质上限制了其性能和应用范围。例如，图 1 示出螺旋钻 10 的侧视图和端视图，该螺旋钻 10 具有用于在诸如木材、金属和塑料的构造材料中形成并抛光孔的典型设计。螺旋钻 10 包括最初切入工件中的横刃 11。钻 10 的切削尖 14 跟随横刃 11 并且在钻孔的同时去除大部分材料。切削尖 14 的外周 16 对孔进行抛光。在切削过程中，切削速度从钻的中心到钻的外周显著不同。该现象在图 2 中示出，该图示意性地比较了典型螺旋钻的切削尖的内径 D1、外径 D3 和中径 D2 的切削速度。在图 2(b)中，外径 D3 为 1.00 英寸，直径 D1 和 D2 分别为 0.25 和 0.50 英寸。图 2(a)示出螺旋钻以每分钟 200 转的速度工作时三个不同直径处的切削速度。如图 2(a)和(b)所示，在旋转工具的切削刃上的不同点处测量的切削速度将随着距工具旋转轴线的距离的增加而增加。

由于切削速度的变化，具有整体构造的钻和旋转工具将不能经受均匀的磨损和/或切削和工具切削刃在从工具切削表面的中心到外侧边缘的不同点处的开裂。此外，在钻经过表面硬化的材料时，横刃一般用于穿透外层，而钻体的剩余部分去除表面硬化材料的较软芯部的材料。因此，在上述应用场合使用的整体构造的常规钻的横刃的磨损速度将比切削刃的剩余部分的磨损速度快得多，从而致使这种钻的使用寿命相对较短。在这两种情况下，由于常规硬质合金钻的整体构造，必须频繁地重新研磨切削刃，从而大大地限制了刀刃的使用寿命。频繁的重新研磨和工具改变也会导致所使用的机床有过多的停机时间。

因此，已经使用了诸如复合旋转工具的复合制品，例如在美国专利 No.

6,511,265 中所描述的那些工具，该专利的全部内容在此引作参考。如果适当设计，复合旋转工具与具有整体性更强的构造的旋转工具相比可以具有增加的工具使用寿命。然而，需要这样的钻和其它旋转工具，它们在工具的不同区域具有不同的特性并包括冷却剂通道。作为示例，需要这样的硬质合金钻和其它旋转工具，无论相对于工具旋转轴在工具表面上的位置如何，都将受到大致均匀的磨损，并且允许在切削表面处进行冷却。需要一种具有冷却剂通道的复合旋转工具，使得复合旋转工具可以具有与整体式旋转工具相同的益处。还需要一种制造复合旋转工具和包括冷却剂通道的复合旋转工具的通用方法。

发明内容

本发明的实施例包括复合制品，该复合制品包括至少一第一区域和一第二区域。第一区域可包括第一复合材料，其中第一区域包括小于 5wt.%重量的立方相碳化物(cubic carbides)，第二区域可包括第二复合材料，其中第二复合材料在至少一种特性方面与第一复合材料不同。复合制品还可包括至少一个冷却剂通道。在一些实施例中，第一和第二复合材料可以各包括粘结剂中的硬颗粒，其中这些硬颗粒独立地包括碳化物、氮化物、硼化物、硅化物、氧化物及其固溶体中至少之一，并且粘结剂包括从钴、镍、铁及其合金中选出的至少一种金属。在具体实施例中，第一复合材料和第二复合材料可以各包括粘结剂中的金属碳化物。

所述特性可以是从由弹性模量、硬度、耐磨性、断裂韧度、拉伸强度、耐蚀性、热膨胀系数和导热系数构成的组中选出的至少一种特性。复合制品例如可以是旋转工具、旋转工具坯、钻、端铣刀、丝锥、杆和棒中之一。在一些实施例中，复合制品还可包括两个或更多的冷却剂通道，并且这些冷却剂通道可以是大致直线或大致螺旋线的形状。

本发明的实施例还包括一种形成制品的方法，该方法包括共挤出包括金属碳化物的至少两种复合材料以形成生坯。所述复合材料可以是上述的那些。可以通过模具进行所述至少两种复合材料的共挤出，并且在某些实施例中，模具可包括用于在生坯中制出内部通道的装置。模具可包括至少一根丝线以形成生坯内的内部通道，其中丝线可以是刚性的或柔韧的。

实施例还包括一种制造具有复合结构的旋转工具的方法，该方法包括：

将挤出的第一粉末金属置于模具空隙的第一区域中；将第二冶金粉末金属置于空隙的第二区域中，所述挤出的第一粉末金属不同于第二冶金粉末；压缩模具以使挤出的第一粉末金属和第二粉末金属固结以形成生坯。可以烧结生坯以形成制品。在烧结之前或之后可以从生坯中去除材料以提供至少一个切削刃。

读者通过考虑下面对本发明实施例的详细描述，将理解本发明上述的细节和优点以及其它。读者在利用本发明时也可以理解本发明的其它细节和优点。

附图说明

本发明的特点和优点可以通过参照附图更好地理解，附图中：

图 1(a)和 1(b)分别是具有冷却剂通道的常规螺旋钻的平面图和端视图；

图 2(a)是示出图 2(b)所示的常规螺旋钻的三个直径 D1、D2 和 D3 处的切削速度的图示；

图 3(a)和(b)包括根据本发明方法的实施例生产的杆的横截面(图 3(a))和纵截面(图 3(b))，该杆包括中心碳化物等级 B 的芯和硬质合金等级 A 的壳；

图 4(a)-(d)示出复合硬质合金的实施例的截面图；

图 5(a)-(d)是坯的实施例，示出不同构造的冷却剂通道的示例，例如直的单一冷却剂通道(图 5(a))；两个直的通道(图 5(b))；两个螺旋形或螺线形通道(图 5(c))；以及三个螺旋形或螺线形通道(图 5(d))；

图 6(a)示出共挤出挤压设备，用于将等级 A 的管和等级 B 的杆共挤压通过具有内部螺旋锯齿的模具，以生产具有螺旋形或螺线形通道的坯；

图 6(b)示出通道模具；

图 6(c)是离开具有螺旋锯齿的模具的具有内部通道的共挤压复合硬质合金杆的照片；

图 7 示出用在本发明的方法的实施例中的干套模均衡压制设备，其中本发明的方法包括固结具有挤出杆的硬质合金等级 B 和由硬质合金等级 A 制成的内部通道；

图 8(a)是具有本发明内部冷却剂通道的复合杆的纵截面的照片，照片中的尼龙丝线已经插入到通道中，从而更清晰地示出其位置和冷却剂通道的路径；和

图 8(b)是由具有内部冷却剂通道的复合硬质合金制成的钻的纵截面的照片。

具体实施方式

本发明提供了旋转切削工具、切削工具坯、杆和其它具有复合构造的制品以及制造这些制品的方法。如果期望，这些制品还可包括内通道，例如冷却剂通道。正如这里所使用的，旋转工具是具有至少一个受到驱动以进行旋转的切削刃的工具。正如这里所使用的，“复合”构造是指具有在化学组成和/或显微结构方面不同的区域的制品。这些不同导致这些区域在至少一种特性方面具有不同的性质。所述特性可以是例如硬度、拉伸强度、耐磨性、断裂韧性、弹性模量、耐蚀性、热膨胀系数和导热系数中的至少一个。可以根据本发明构造的复合旋转工具包括钻和端铣刀以及其它可以用于例如钻孔、铰孔、钻埋头孔、镗孔、端铣削和对材料进行攻螺纹的工具。

本发明更具体地提供了一种复合旋转工具，其具有至少一个切削刃、至少两个硬质合金材料的区域和至少一个冷却剂通道，其中所述至少两个硬质合金材料的区域在至少一种特性方面不同。可以通过在两个硬质合金材料的区域中间改变化学组成和显微结构中至少之一来提供不同的特性。区域的化学组成是例如陶瓷组分和/或区域粘结剂的化学组成和区域的硬质合金与粘结剂之比的函数。例如，旋转工具的两个硬质合金材料区域之一与两个区域中另一区域相比，可以显示出更大的耐磨性、增强的硬度和/或更大的弹性模量。

本发明的各方面可以参照工具坯 400 来描述，工具坯 400 在图 4(a)中以横切轴线的横截面示出。工具坯 400 是具有两个共轴设置的硬质合金区域 410、420 和冷却剂通道 430 的大体圆柱形的烧结体。然而对本领域的技术人员显然的是，本发明的下面的讨论也可以适于制造几何形状更为复杂和/或具有多于两个区域的复合旋转工具和工具坯。因此，下面的讨论不是限制本发明，而是仅示出本发明的实施例。

在图 4(a)的实施例中，圆柱形的旋转工具坯 400 包括两个不同的硬质合金区域，即芯区域 400 和外部区域 410。芯区域 420 和外部区域 410 均由包括连续粘结剂基体的陶瓷颗粒的硬质合金材料制成。优选地，芯区域 420 和外部区域 410 中的硬质合金材料包括由属于周期表的 IVB 至 VIB 族的一种

或多种元素的包括小于 5%的立方相碳化物或在一些应用场合小于 3wt.%的立方相碳化物的碳化物构成的陶瓷组分。本发明的实施例可以包括小于5wt.%的立方相碳化物，因为立方相碳化物可以降低制品的横向断裂韧度，增加制造成本并降低断裂韧度。这对于用于机械加工硬工件的工具来讲尤其重要，其中机加工导致剪切作用并且钻的强度应当是最大的。

每个区域中陶瓷组分优选地占硬质合金材料总重量约60至约80的重量百分比。硬质合金颗粒嵌入在粘结剂材料基体内，每个区域中所述粘结剂材料优选地占全部材料的约2至约40的重量百分比。粘结剂优选地是Co、Ni、Fe和这些元素的合金中的一种或多种。粘结剂例如还可含有含量达到在粘结剂中的溶解度极限的元素，诸如W、Cr、Ti、Ta、V、Mo、Nb、Zr、Hf和C。此外，粘结剂可以含有达重量百分比为5的元素，诸如Cu、Mn、Ag、Al和Ru。本领域的技术人员将理解，硬质合金材料的任一或全部构成组分可以以元素的形式、作为化合物、和/或作为中间合金引入。

工具坯400的芯区域420在界面415处自生地结合到外部区域410。图4(a)中所示的界面440是圆柱形的，但要理解，本发明复合旋转工具的硬质合金材料区域的界面的形状不限于圆柱形的构造。区域之间在界面415处的自生结合可以例如通过粘合剂基体而形成，其中粘合剂基体从芯区域420三维地延伸到外部区域410，或者从外部区域410三维地延伸到芯区域420。两个区域中粘结剂与陶瓷组分之比可以相同或不同，并且可以在区域之间改变以影响区域的相对特性。仅作为示例地，复合工具坯30相邻区域中粘结剂与陶瓷组分之比可以变化1至10重量百分比。本发明复合旋转工具的不同区域中的硬质合金材料的特性可以适应于具体的应用场合。

本领域的技术人员在考虑本发明的描述之后将理解，本发明的改进的旋转工具可以构造成具有数个不同的硬质合金材料层，以产生从工具的芯区域到周边的一个或多个特性的量值的递变。从而，例如可以提供这样一种螺旋钻，该螺旋钻具有多个共轴设置的硬质合金材料区域，并且其中每个这样的区域与相邻的更接近中心设置的区域相比依次具有更大的硬度和/或耐磨性。冷却剂通道可以设置在任一区域中，或与两个或更多区域相交。本发明的方法提供了压出制品的设计中较大的设计灵活性。或者，本发明的旋转工具可以具有其它的复合构造，其中在工具的不同区域处存在不同的特定特性。

本发明的复合硬质合金旋转工具的主要优点在于，为工具设计者提供了

使工具各区域的性质适合于不同的应用场合的灵活性。例如，本发明的具体复合坯的各个硬质合金材料区域的尺寸、定位、厚度、几何形状和/或物理性质可以选择成适合于由该坯所制造的旋转工具的特定应用场合。此外，冷却剂通道可以定位于期望的位置，并且可以是螺旋形、螺线形、直线形或这些形状的组合。因此，例如，在使用中经受显著弯曲的旋转工具的一个或多个硬质合金区域的刚度可以是具有增强弹性模量的硬质合金材料的刚度；可以使具有切削表面且切削速度大于其它区域的一个或多个硬质合金区域的硬度和/或耐磨性增大；和/或可以增强在使用中受到化学接触的硬质合金材料的区域的耐蚀性。

图 4(b)和 4(c)示出本发明的另外的实施例。这些实施例还可以包括通道，例如冷却剂通道。图 4(b)的实施例包括具有不同硬质合金等级的内部区域的管。在该示例中，杆 440 包括由第一硬质合金制成的外部区域 441、由第二硬质合金制成的第一内部区域 442、和可以包括相同或不同硬质合金的附加内部区域 443。杆 440 可以通过例如共挤出包括填充有杆 452 和 453 的管 451 的组件 450 而生产。杆 452 可以由例如至少一种特性与杆 453 不同的硬质合金制成。

仅作为示例地，图 4 和 5 示出本发明旋转工具的另外的实施例。图 4 示出根据本发明构造的阶梯钻 110。该阶梯钻 110 包括具有多个螺旋形取向的切削刃 114 的切削部分 112。钻 110 还包括由卡盘接收的用于将钻安装到机床(未示出)的安装部分 116。示出了钻 110 的局部横截面，以显示在至少一种特性方面彼此不同的三个硬质合金材料区域。第一区域 118 设置在钻 110 的切削尖处。构成区域 118 的硬质合金材料相对于形成钻 110 的芯的芯区域 120 显示出增强的耐磨性和硬度。芯区域由相对于剩下的两个区域显示出增强的弹性模量的硬质合金材料制成。增强的弹性模量减小了迫使钻 110 接触工件时钻 110 弯曲的趋势。钻还包括确定多个螺旋形取向的切削刃 114 的外部区域 122。外部区域围绕芯区域 120 并相对于芯区域 120 共轴设置。外部区域 122 由硬质合金材料组成，并且相对于芯区域 120 和尖区域 118 显示出增强的硬度和耐磨性。由外部区域 122 确定的切削表面 114 与接近钻中心轴的切削区域相比经受更快的切削速度。因此，外部区域 122 的增强的耐磨性和硬度可以选择成使得切削表面的均匀磨损可以实现。

本发明的实施例还包括制造复合硬质合金制品的另外的方法。实施例包

括通过共挤出包括硬质合金的至少两种复合材料以形成生坯来形成复合制品的方法。共挤出可以通过直接或间接挤出过程来进行。挤压机的供料腔填充有两个等级的材料，例如两个等级的硬质合金粉末，和混合有塑料粘结剂的粘结剂粉末。塑料粘结剂材料的含量可以为约 33 wt.%至 67 wt.%，并且可以降低粉末金属混合物的粘度以允许进行挤压操作。

硬质合金的挤压过程是本领域熟知的。在典型的挤压过程中，金属粉末与塑料粘结剂混合。可以使用任何典型的塑料粘结剂，例如基于苯甲醇、纤维素、聚合物或石油产品的塑料粘结剂。一般地，使用高光泽混合过程以确保金属粉末与塑料粘结剂之间的紧密接触。

金属/粘结剂混合器可以由螺旋进料机抽吸通过挤压机以生产挤出产品。本发明方法的实施例包括至少两个硬质合金等级的共挤出。这里使用的术语共挤出是指同时挤出两种材料以形成结合有该两种材料的单一制品。在本发明的方法中可以采用任何共挤出过程，例如抽吸两个等级的硬质合金，以分离浇口杯或模具的区段，其中两个等级彼此紧密接触地离开模具。

共挤出过程的实施例在图 6(a)中示出。供料腔 600 填充有由第一等级的硬质合金粉末制成的杆 610 和由第二等级的硬质合金粉末制成的管 620。杆 610 和管 620 各由本领域熟知的单独的挤出过程形成。在一些实施例中，管 620 可以直接挤出到供料腔 600 中。在单独挤出过程中形成的杆 610 而后可以插入到已经处于供料腔 600 中的管 620 中。

在该挤出过程的实施例中，活塞(未示出)推动杆 610 和管 620 通过供料腔并进入浇口杯 630。浇口杯 630 的横截面积从供料腔到模具 640 减小。浇口杯 630 使硬质合金粉末致密并固结，从而使杆 610 与管 620 之间紧密接触并形成生坯(“挤出材料”)。

在一些实施例中，挤出过程还可以包括结合在浇口杯 630 和模具 640 之间的通道模具 650。该通道模具包括两根丝线 660 或者该通道模具可以包括用于制成生坯中的内部通道的其它装置。丝线 660 连接到保持丝线 660 的臂 670 上，使得它们可以接触到挤出材料。丝线 660 使得在挤出材料中形成通道。丝线 660 可以由任何能够在挤出材料中形成通道的材料制成，例如，但不限于，尼龙、涂有聚合物的金属丝、聚乙烯、高密度聚乙烯、聚酯、聚氯乙烯、聚丙烯、芳族聚酰胺、凯夫拉尔(Kevlar)、聚醚醚酮、天然材料、棉花、大麻和黄麻。优选地在一些应用中，例如为了形成螺旋形取向的通道，

丝线是柔韧的丝线。然而，对于直线取向的通道和在一些螺旋的应用中，可以使用刚性丝线。这些通道可以用作旋转工具中的冷却剂通道。丝线 660 可以用于形成螺旋形取向的通道、线性取向的通道或其组合。丝线的横截面或构成组件的其它通道可以具有任何形状，例如圆形、椭圆形、三角形、正方形或六角形。

在挤出材料相对于通道模具 650 旋转的实施例中，螺旋形取向的通道可以形成在挤出材料中。通过在模具 640 中并入螺旋锯齿，可以使挤出材料旋转。在图 6(c)中，挤出材料 680 离开模具 645，在模具 645 的内表面上具有螺旋锯齿。随着挤出材料通过锯齿，使挤出材料相对于通道模具(未示出)旋转。或者，可以使模具旋转来使挤出材料相对于通道模具旋转。可以使用其它的通道模具，这种模具包括固定螺旋线圈，其中使挤出材料以与螺旋线圈相同的旋转方向相对于通道模具旋转，或者可以使用任何其它的通道形成装置。

通道模具可以是单独的组件或者可以整合到挤出系统中的浇口杯、模具或其它组件。通道模具能够在挤出材料中制造出至少一个通道。通道的数量和尺寸可以由挤出材料的尺寸、通道的尺寸和挤出材料的最终应用场合来限定。在包括具有丝线的通道模具的实施例中，丝线的数量将对应于形成在挤出材料中的通道的数量。对于旋转工具的应用，可以优选地具有与例如出屑槽相等数量的通道。

本发明的实施例还可包括在供料腔中装载至少两个硬质合金等级。装载于供料腔中的至少一个硬质合金等级可以挤出为如下形式：杆、管、棒、条、矩形、齿形、星形或任何其它可以在挤出过程中形成的形状。在旋转工具或辊的应用中，可以优选地，两个硬质合金等级中的至少一个是杆形状的形式，并且至少一个硬质合金是管的形状。在其它应用中，供料腔可以填充有不同硬质合金等级的多个管和/或多个杆。如果使用多个杆，则挤出材料可以在特定区域中形成有特定等级的硬质合金，或者挤出材料可以在其横截面上随机分布。

本发明的进一步的实施例可以包括挤出硬质合金等级以形成挤出的生坯并用第二硬质合金等级压制该挤出的生坯以形成压制的生坯。该挤出的生坯例如可以有选择地包括如上所述形成的内部通道。

应用上述方法提供根据本发明的复合旋转工具的实际示例如下。

虽然已经结合一些实施例描述了本发明，但是本领域的技术人员将在考虑上述描述的基础上意识到可以采用本发明的许多变形和改变。所有这些本发明的改变和变形将由前面的描述和所附的权利要求覆盖。




图 1(a)




图 1(b)




图 2(a)




图 2(b)




横截面

图 3(a)




纵截面

图 3(b)




图 4(a)




图 4(b)




图 4(c)



图 4(d)




图 5(a)

单一直孔




图 5(b)

两个直孔




图 5(c)

两个螺旋形或螺线形孔




图 5(d)

三个螺旋形或螺线形孔




图 6(a)




图 6(b)




图 6(c)

离开具有螺旋锯齿的模具的具有整体冷却剂通道的共挤出的复合硬质合金杆




图 7

将外部等级粉末压紧到具有整体冷却剂孔的挤出杆上



图 8(a)

具有整体冷却剂通道的复合杆的纵截面(尼龙丝线插入到通道中以显示其位置)



图 8(b)

由复合硬质合金制成的并具有整体冷却剂通道的钻的纵截面

Espacenet

# Bibliographic data: CN102922721 (A) — 2013-02-13

## Fiber reinforced plastic tube extruder

**Inventor(s):** CHEN GENGTIAN ± (CHEN GENGTIAN)

**Applicant(s):** CHEN GENGTIAN ± (CHEN GENGTIAN)

**Classification:**
- international: *B29C47/50*
- cooperative: B29C47/0023; B29C47/6012; B29C47/6018

**Application number:** CN20111230436 20110812

**Priority number(s):** CN20111230436 20110812


## Abstract of CN102922721 (A)

A fiber reinforced plastic tube extruder can be used for producing high-strength plastic tubes, enables the cost to be greatly reduced, and is characterized in that the fiber reinforced plastic tube extruder comprises a motor (1), a speed reducer (2), a feeding hopper (3), a fiber cloth roller emptying shaft (4), a mixing segment extrusion barrel (7), heating sleeves (8), mixing segment screws (9), a fiber cloth inlet (10), fiber addition segment screws (11), a fiber addition segment extrusion barrel (12), an extrusion head (13), a cooling device (14) and a drawing device (15); and the mixing segment and the fiber addition segment are positioned in a split manner, difference specifications of the plastic tubes can be produced through replacing different specifications of the screws (11), the extrusion barrel (12) and the extrusion head (13), the emptying shaft (4) is fixed through a support, and the position of the emptying shaft (4) and an angle between the emptying shaft (4) and the extrusion barrel can be adjusted to adapt to the needs of the different specifications and the push speed.

(19) 中华人民共和国国家知识产权局

(12) 发明专利申请

(10) 申请公布号 CN 102922721 A
(43) 申请公布日 2013.02.13

(21) 申请号 201110230436.6

(22) 申请日 2011.08.12

(71) 申请人 陈耕田
地址 115200 辽宁省盖州市北关双乐复印社

(72) 发明人 陈耕田

(51) Int. Cl.
*B29C 47/50* (2006.01)

权利要求书 1 页 说明书 2 页 附图 1 页

(54) 发明名称

纤维增强塑料管挤出机

(57) 摘要

纤维增强塑料管挤出机可生产高强的塑料管，且成本大幅度降低，特征在于：由电动机 (1)，减速机 (2)，加料斗 (3)，纤维布卷筒放料轴 (4) 混炼段挤出桶 (7)，加热套 (8)，混炼段螺杆 (9)，纤维布入口 (10)，纤维添加段螺杆 (11)，纤维添加段挤出桶 (12)，挤出头 (13)，冷却装置 (14)，牵引装置 (15) 组成；其中混炼段和纤维添加段为分体式，更换不同规格的螺杆 (11)、挤出桶 (12)、挤出头 (13) 便可生产不同规格的塑料管，放料轴 (4) 通过支架固定，并可调整位置和与挤出桶的夹角，以适应不同规格和推进速度的需要。




CN 102922721 A

# 权 利 要 求 书



1. 纤维增强塑料管挤出机的特征在于：由电动机（1），减速机（2），加料斗（3），纤维布卷筒放料轴（4）混炼段挤出桶（7），加热套（8），混炼段螺杆（9），纤维布入口（10），纤维添加段螺杆（11），纤维添加段挤出桶（12）挤出头（13），冷却装置（14），牵引装置（15）组成；其中电动机（1）与减速机（2）连接，减速机（2）与螺杆（9）连接，螺杆（9）与螺杆（11）连接，挤出桶（7）的加料斗一端通过轴承与螺杆（9）的一端连接，挤出桶（7）的另一端与挤出桶（12）连接，螺杆（9）的另一端与螺杆（12）连接，挤出桶（12）与挤出头（13）连接，挤出头（13）与冷却装置（14）连接，牵引装置（15）可以用独立的动力，也可以用电动机（1）通过传动机构驱动，加热套（8）在挤出桶外表面，并通过通过温控、电控装置与电源连接，加料斗位于挤出桶（7）的起始段。

2. 纤维增强塑料管挤出机的特征在于：挤出桶（12）处开有轴向扁长的纤维布入口（10），放料轴（4）通过支架固定，并可调整位置和与挤出桶的夹角，以适应不同管径和挤出速度的需要，当混炼后的塑料推进到螺杆（11）处使，将纤维布（6）从入口（10）输入，卷在螺杆（11）上，并向挤出头方向移动，螺杆（11）梯形槽内的塑料和螺杆（9）外侧的塑料会均匀的分布在纤维布的内外，再通过挤出头（12）挤出，经冷却定型并牵引拉出。

3. 纤维增强塑料管挤出机的特征在于：混炼段和纤维添加段为分体式，更换不同规格的螺杆（11）、挤出桶（12）、挤出头（13）便可生产不同规格的塑料管。

# 纤维增强塑料管挤出机

[0001] 技术领域：本发明涉及一种塑料挤出机，尤其是一种纤维增强塑料管挤出机，属塑料加工设备领域。

[0002] 背景技术：现有的塑料管挤出机大多是只能生产不含增强纤维的塑料管产品，不仅产品强度低，而且为了提高强度，只能少添加填充料，增加树脂比例，成本居高不下，个别的可添加纤维增强材料的挤出机也只能添加短纤维，强度提高有限并添加纤维处在混炼段，因此设备磨损严重。

[0003] 发明内容：为了解决上述问题，本发明提供了一种纤维增强塑料管挤出机，可以添加纤维布作为增强材料，使塑料管的强度与钢管的强度接近，并可降低生产成本，实现上述发明所采取的技术方案特征在于：由电动机（1），减速机（2），加料斗（3），纤维布卷筒放料轴（4）混炼段挤出桶（7），加热套（8），混炼段螺杆（9），纤维布入口（10），纤维添加段螺杆（11），纤维添加段挤出桶（12）挤出头（13），冷却装置（14），牵引装置（15）组成；其中电动机（1）与减速机（2）连接，减速机（2）与螺杆（9）连接，螺杆（9）与螺杆（11）连接，挤出桶（7）的加料斗一端通过轴承与螺杆（9）的一端连接，挤出桶（7）的另一端与挤出桶（12）连接，螺杆（9）的另一端与螺杆（12）连接，挤出桶（12）与挤出头（13）连接，挤出头（13）与冷却装置（14）连接，牵引装置（15）可以用独立的动力，也可以用电动机（1）通过传动机构驱动，加热套（8）在挤出桶外表面，并通过通过温控、电控装置与电源连接，挤出桶（12）处开有轴向扁长的纤维布入口（10），加料斗位于挤出桶（7）的起始段，放料轴（4）通过支架固定，并可调整位置和与挤出桶的夹角，当混炼后的塑料推进到螺杆（11）处使，将纤维布（6）从入口（10）输入，卷在螺杆（11）上，并向挤出头方向移动，螺杆（11）梯形槽内的塑料和螺杆（9）外侧的塑料会均匀的分布在纤维布的内外，再通过挤出头（12）挤出，经冷却定型并牵引拉出，更换不同规格的螺杆（11）、挤出桶（12）、挤出头（13）便可生产不同规格的塑料管，本发明的有益效果在于：大幅度通过塑料管的强度并降低成本，下面结合附图和实施例进一步说明。

[0004] 附图是纤维增强塑料管挤出机剖面结构图

[0005] 实施例，附图所示的结构特征在于：由电动机（1），减速机（2），加料斗（3），纤维布卷筒放料轴（4）混炼段挤出桶（7），加热套（8），混炼段螺杆（9），纤维布入口（10），纤维添加段螺杆（11），纤维添加段挤出桶（12）挤出头（13），冷却装置（14），牵引装置（15）组成；其中电动机（1）与减速机（2）连接，减速机（2）与螺杆（9）连接，螺杆（9）与螺杆（11）连接，挤出桶（7）的加料斗一端通过轴承与螺杆（9）的一端连接，挤出桶（7）的另一端与挤出桶（12）连接，螺杆（9）的另一端与螺杆（12）连接，挤出桶（12）与挤出头（13）连接，挤出头（13）与冷却装置（14）连接，牵引装置（15）可以用独立的动力，也可以用电动机（1）通过传动机构驱动，加热套（8）在挤出桶外表面，并通过通过温控、电控装置与电源连接，挤出桶（12）处开有轴向扁长的纤维布入口（10），加料斗位于挤出桶（7）的起始段，放料轴（4）通过支架固定，并可调整位置和与挤出桶的夹角，当混炼后的塑料推进到螺杆（11）处使，将纤维布（6）从入口（10）输入，卷在螺杆（11）上，并向挤出头方向移动，螺杆（11）梯形槽内的塑料和螺杆（9）外侧的塑料会均匀的分布在纤维布的内外，再通过挤出头（12）挤

出，经冷却定型并牵引拉出，更换不同规格的螺杆(11)、挤出桶(12)、挤出头(13)便可生产不同规格的塑料管。


5
4
6
3
2
1
15
14
13
12
11
10
9
8
7

Espacenet

# Bibliographic data: CN2761402 (Y) — 2006-03-01

## Fused body continuous extrusion device

| | |
|---|---|
| **Inventor(s):** | JIANG KAIYONG [CN]; WANG FEI [CN]; GU YONGHUA [CN]; LUO CANBIN [CN] ± (KAIYONG JIANG, ; FEI WANG, ; YONGHUA GU, ; CANBIN LUO) |
| **Applicant(s):** | OVERSEAS UNIV [CN] ± (OVERSEAS UNIV) |
| **Classification:** | **- international:** ***B29C47/38; B29C47/82*** <br> **- cooperative:** **B29C47/6018; B29C47/6093** |
| **Application number:** | CN2005280240U 20050118 |
| **Priority number(s):** | CN2005280240U 20050118 |


## Abstract of CN2761402 (Y)

The utility model relates to a fused body continuous extrusion device, which is mainly used in fusing depositing rapid prototyping equipment. The utility model comprises a heating cylinder, a nozzle, a motor, an extrusion threaded rod and a motor output shaft, wherein the nozzle is arranged at the lower end of the heating cylinder, the motor is fixedly arranged on the heating cylinder, the extrusion threaded rod is rotatable and is arranged inside the heating cylinder, and the upper end of the extrusion threaded rod is connected with the motor output shaft. A heat dissipating device is arranged between the heating cylinder and the motor, and a feeding device is communicated with the side wall of the heating cylinder. The utility model is characterized in that the extrusion device adopts the fusing extrusion continuous design, omits a wire feed system, and extrudes fused materials directly out from the nozzle via the motor driving the threaded rod. Because the extruding force is notably enhanced, the utility model can stably extrude casting wax that is of low viscosity and polymers such as ABS and polypropylene that are of high viscosity, and completely avoids the phenomenon of nozzle blockage. Besides, molding materials are directly added into the feed cylinder through a feeding device, and agglomerate, granular or powdery thermoplastic polymers molding materials can all be directly added into the feed cylinder without being prefabricated into filament materials, which realizes continuous feeding.

[19] 中华人民共和国国家知识产权局

[51] Int. Cl.
*B29C 47/82* (2006.01)
*B29C 47/38* (2006.01)

[12] 实用新型专利说明书

专利号 ZL 200520080240.3

[45] 授权公告日 2006 年 3 月 1 日

[11] 授权公告号 CN 2761402Y

[22] 申请日 2005.1.18

[21] 申请号 200520080240.3

[73] 专利权人 华侨大学

地址 362021 福建省泉州市华侨大学机电及自动化学院

[72] 设计人 江开勇 王 菲 顾永华 骆灿彬

[74] 专利代理机构 厦门市首创君合专利事务所有限公司

代理人 李秀梅

权利要求书 1 页 说明书 5 页 附图 3 页

[54] 实用新型名称

熔体连续挤出装置

[57] 摘要

熔体连续挤出装置，主要用于熔融沉积快速成型设备，包括加热料筒，加热料筒的下端具有喷嘴，加热料筒上固设有电机，加热料筒中设置有可转动的挤出螺杆，挤出螺杆的上端与电机输出轴连接。在加热料筒与电机之间设置散热装置，在加热料筒的侧壁连通有加料装置。其特点是采用熔融挤出连续设计，省去了送丝系统，通过电机驱动螺杆直接将熔融的材料从喷嘴挤出。由于挤出力显著提高，因此无论是低粘性的铸造蜡，还是粘度较大的 ABS、聚丙烯类的聚合物，均可实现稳定挤出，完全避免喷嘴堵塞现象。而且，成型材料通过加料装置直接加入料筒，块状、颗粒状或粉状热塑性聚合物成型材料均可直接加料，无需预制成丝材，实现了连续加料，大大提高了效率。



# 权 利 要 求 书



1、熔体连续挤出装置，包括加热料筒，加热料筒的下端具有喷嘴，其特征在于：加热料筒的上端固设有电机，加热料筒中设置有可转动的挤出螺杆，挤出螺杆的上端与电机输出轴连接。

2、根据权利要求1所述的熔体连续挤出装置，其特征在于：所述挤出螺杆、电机输出轴、加热料筒、喷嘴呈同轴排列。

3、根据权利要求1所述的熔体连续挤出装置，其特征在于：电机采用步进电机。

4、根据权利要求1所述的熔体连续挤出装置，其特征在于：料筒加热采用PWM功率控制。

5、根据权利要求1所述的熔体连续挤出装置，其特征在于：在所述加热料筒与电机之间设置散热装置。

6、根据权利要求5所述的熔体连续挤出装置，其特征在于：所述散热装置为流体介质循环强制制冷装置。

7、根据权利要求1所述的熔体连续挤出装置，其特征在于：所述加热料筒的侧壁连通有加料装置。

8、根据权利要求1所述的熔体连续挤出装置，其特征在于：所述电机固设在电机座上，电机座固定连接在加热料筒上部，散热装置设置在加热料筒与电机座之间。

9、根据权利要求1所述的熔体连续挤出装置，其特征在于：所述挤出螺杆通过滚动轴承支承。

10、根据权利要求1或9所述的熔体连续挤出装置，其特征在于：所述挤出螺杆通过推力轴承支承。

# 熔体连续挤出装置

## 技术领域

本实用新型涉及熔体连续挤出装置，尤其是一种用于熔融沉积快速成型设备的熔体连续挤出装置。

## 背景技术

快速成型技术是20世纪80年代末新兴的先进制造技术，是一种基于离散堆积思想的原型制造技术。快速成型技术的突出优势体现在：首先，它是一种完全基于数字驱动的数字化制造技术，实现直接由CAD模型到物理原型的制造过程，无需专用的工装夹具；其次，成型过程与零件的复杂程度无关，可以制造任意复杂形状的零部件。快速成型有着广泛的应用领域，尤其在新产品开发阶段，采用快速成型技术，可以大大缩短产品的开发周期，大幅度降低产品试制造费用，快速响应市场需求。

目前，快速成型工艺技术有10余种之多，最典型的工艺方法有立体光刻（SL）、叠层实体制造（LOM）、选择性激光烧结（SLS）和熔融沉积成型（FDM）。

在熔融沉积成型（FDM）设备中，包含一挤出装置。其工作原理如图1所示，在成型过程中，丝状的成型材料101通过一对相对滚动的摩擦轮102送入挤出装置的加热料筒103（加热液化器）而被逐渐加热熔融。在材料丝送进过程中，位于加热料筒103上段的材料丝起着类似于活塞推进的作用，把加热料筒103下段处于熔融态的熔体挤出喷嘴104。

上述挤出装置的不足之处在于:（1）成型材料首先必须预先制作成丝材（直

径约为 1.78 mm)，对成型材料的拉伸、延展性、塑性等有一定要求，限制了成型材料选用的自由度；（2）选用的材料还必须保证制备成丝后具有足够的抗弯强度，以实现依赖材料丝本身的活塞推进作用挤出熔体，由此进一步限制了材料的选择范围。如，同样是聚丙稀材料，低压聚丙稀具有足够的抗弯强度，可以作为 FDM 成型材料使用，而高压聚丙稀抗弯模量低，制成材料丝不能实现活塞挤出的过程；（3）现有挤出装置最突出的问题在于，材料丝所提供的推进压力有限，在熔体挤出过程中，经常发生喷嘴堵塞现象，导致成型过程失败。

针对上述问题，国内外的许多研究机构、生产厂商对挤出装置进行了研究和改进，如德国 Fraunhofer Institute IFAM and IPA 研制了螺杆驱动的柱塞式挤出装置，该装置可以达到很高的挤出速率，但存在无法连续加料的缺陷；美国西北大学医学院研制了基于螺杆挤压原理的挤出装置，仍然没有很好解决连续送料问题；中国清华大学研制的螺旋送丝装置，结构紧凑，挤出效果有所改进，但挤出力并没有显著提高，喷嘴堵塞现象仍然存在。可以看出，这些装置仍有一些不完善之处，还需进一步加以改进。

发明内容

本实用新型的目的是为解决现有熔融沉积快速成型设备的熔体挤出装置所存在的问题，提供一种螺杆式熔体连续挤出装置。

本实用新型提供的熔体连续挤出装置，包括加热料筒，加热料筒的下端具有喷嘴，其特征在于：加热料筒上固设有电机，加热料筒中设置有可转动的挤出螺杆，挤出螺杆的上端与电机输出轴连接。

在所述熔体连续挤出装置中，最好是使挤出螺杆、电机输出轴、加热料筒、喷嘴呈同轴排列，以使结构更紧凑。

在所述熔体连续挤出装置中，电机最好采用步进电机，以实现精确送料。

在所述熔体连续挤出装置中，料筒加热最好采用 PWM 功率控制，以实现料筒温度的精确控制。

作为进一步改进，在加热料筒与电机之间设置散热装置，以有效地避免加热料筒的热量传导到电机，导致其过热损坏。

作为进一步改进，加热料筒的侧壁连通有加料装置，以实现连续加料。

本实用新型提供的熔体连续挤出装置与现有的挤出装置相比，具有如下优点：采用熔融挤出连续设计，省去了送丝系统，通过电机驱动螺杆直接将熔融的材料从喷嘴挤出。由于挤出力显著提高，因此无论是低粘性的铸造蜡，还是粘度较大的 ABS、聚丙稀类的聚合物，均可实现稳定挤出，完全避免喷嘴堵塞现象。而且，成型材料是通过加料装置直接加入料筒的，块状、颗粒状或粉状热塑性聚合物成型材料均可直接加料，无需预制成丝材，实现了连续加料，大大提高了效率。

附图说明

图 1 是现有的熔融沉积快速成型设备的挤出装置原理图。

图 2 是本实用新型提供的熔体连续挤出装置的结构剖视图。

图 3 是本实用新型提供的熔体连续挤出装置的构件分解图。

具体实施方式

参照图 2、图 3，本实用新型提供的熔体连续挤出装置，既可用于熔融沉积快速成型设备，也可以用于改进的熔融沉积型快速成型设备，提高其成型性能。熔体连续挤出装置由以下部件构成：

加热料筒 7，料筒 7 中空、上下端开口。其侧壁具有轴向延伸的安装孔 24，用于设置加热元件如电热棒等，锣钉 8 用于将电热棒紧固在安装孔 24 中。为了实现对料筒 7 温度的精确控制，加热元件采用 PWM 功率控制。在料筒 7 外壁设置有加料斗 10，加料斗 10 通过加料口与料筒 7 内部贯通。在料筒 7 下端开口处套设有铜套 6，铜套 6 与螺杆 9 的前端配合，起到限位及防止熔融泄漏的作用。

连接筒 4，具有轴向贯通的熔融料挤出通道。连接筒 4 的上端通过螺钉 5 固定于料筒 7 下端、且使熔融料挤出通道与料筒 7 下端开口连通。

喷嘴 1，具有熔融料挤出口。喷嘴 1 通过喷嘴垫片 2、螺母 3 连接在连接筒 4 下端。

电机座组件，其通过螺钉 22 固设在料筒 7 上端。该组件包括盖设于料筒 7 上端面的绝热盖板 11、置于绝热盖板 11 上的下滚动轴承座、以及置于下滚动轴承座上的电机座 15。绝热盖板 11 能起到部分隔热作用，盖板中心处具有通孔，挤出螺杆 9 可从此穿过。下滚动轴承座用于安装下滚动轴承 23，该轴承座由上、下两片 12a、12c 构成，每片轴承座的相对端面上均具有环形凹槽 12d，两片轴承座组合后其环形凹槽 12d 构成了环形散热管 12b。在所述环形散热管 12b 的两个开口处分别连接上输入、输出管道，送入水、冷却油等流体介质，即可实现循环强制制冷，将加热料筒 7 产生的、经绝热盖板 11 传导来的热量带出，从而有效地避免热量传导到电机，导致其过热损坏。当然，散热装置并不限于流体介质循环强制制冷式装置，也可以采用诸如半导体制冷片等其它公知形式。在电机座 15 中安装有上滚动轴承 20、推力轴承座 14，在推力轴承座 14 中安装有推力轴承 21、垫圈 13。

电机 18，其通过螺钉 19 固设在电机座 15 上部。为实现精确送料，电机 18 采用步进电机。

挤出螺杆 9，其通过螺母 16、上滚动轴承 20、推力轴承 21、垫圈 13、下滚动轴承 23 可转动地支承在电机座 15 中。挤出螺杆 9 的上端通过键 17 与电机输出轴 17a 连接，其下端为螺旋状且配置于连接筒 4 的熔融料挤出通道中。其中，推力轴承 21 保证挤出螺杆 9 可承受轴向负荷，顺畅转动。

这种熔体连续挤出装置，由于在工作过程中必须能灵敏地移动，因此最好是使挤出螺杆、电机输出轴、加热料筒、喷嘴呈同轴排列，以使结构更紧凑。

这种熔体连续挤出装置的工作原理如下：将热塑性聚合物成型材料通过加料斗 10、加料口加入到料筒 7 中，料筒 7 将材料加热熔化，同时电机 18 驱动螺杆 9 旋转，在螺杆下端螺旋的搅动下，使熔融的材料从喷嘴 1 挤出

本实用新型提供的熔体连续挤出装置与现有的挤出装置相比，具有如下优点：采用熔融挤出连续设计，省去了送丝系统，通过电机驱动螺杆直接将熔融的材料从喷嘴挤出。由于挤出力显著提高，因此无论是低粘性的铸造蜡，还是粘度较大的 ABS、聚丙稀类的聚合物，均可实现稳定挤出，完全避免喷嘴堵塞现象。而且，成型材料是通过加料装置直接加入料筒的，块状、颗粒状或粉状热塑性聚合物成型材料均可直接加料，无需预制成丝材，实现了连续加料，大大提高了效率。




图 1




图2




图3

Espacenet

# Bibliographic data: CN201086388 (Y) — 2008-07-16

## Two-liquid type mix glue injection device

**Inventor(s):** XINMING ZENG [CN]; HUIXIONG CHEN [CN]; MINXIONG ZHOU [CN]; JINGREN HONG [CN] ± (ZENG XINMING, ; CHEN HUIXIONG, ; ZHOU MINXIONG, ; HONG JINGREN)

**Applicant(s):** PUMMA TECHNOLOGY CO LTD [CN] ± (PUMMA TECHNOLOGY CO., LTD)

**Classification:** **- international:** ***B29C47/10; B29C47/38***
**- cooperative:** **B29C47/0002**

**Application number:** CN20072156312U 20070716

**Priority number(s):** CN20072156312U 20070716

## Abstract of CN201086388 (Y)

The utility model relates to a two-fluid mixed glue injecting device, comprising a gun body, a mixing chamber unit, a driver element and a control unit. Two flow passages for providing A liquid and B liquid to enter are arranged on the gun body; the mixing chamber unit is provided with a material ejecting tube and a screw which can extrude mixed glue combined by the A liquid and the B liquid; the driver element is provided with a set of motors and a set of shaft combinations for driving the screw to rotate; the control unit is provided with a set of piston combinations and two sets of valve combinations for controlling the on-off action of the flow passages which is connected and arranged on the piston combinations. By utilizing the moving route that the external numerical control (NC) drives the gun body, the dynamic glue injection has the advantages of no contact junction, no residual material deposit and easy maintenance and care.

[19] 中华人民共和国国家知识产权局

[51] Int. Cl.
*B29C 47/38* (2006.01)
*B29C 47/10* (2006.01)

[12] 实用新型专利说明书

专利号 ZL 200720156312.7

[45] 授权公告日 2008 年 7 月 16 日

[11] 授权公告号 CN 201086388Y

[22] 申请日 2007.7.16

[21] 申请号 200720156312.7

[73] 专利权人 裕发科技股份有限公司
地址 中国台湾台中县乌日乡长春街 583 巷 16 号

[72] 发明人 曾信铭 陈辉雄 周敏雄 洪景仁

[74] 专利代理机构 上海恩田旭诚知识产权代理有限公司
代理人 丁惠敏

权利要求书 1 页 说明书 5 页 附图 9 页

[54] 实用新型名称

两液型混合注胶装置

[57] 摘要

一种两液型混合注胶装置，包含有一个枪本体、一个混合头单元、一个驱动单元及一个控制单元，枪本体设有可供 A、B 两液进入的二流道，混合头单元具有一个射料管及一根可押出 A、B 两液混合胶料的螺杆，驱动单元具有一组马达及一组可带动螺杆运转的轴组合，控制单元具有一组活塞组合及二组接设在活塞组合上可控制流道开闭动作的阀组合，借由利用外部数值控制(NC)带动枪本体的移动路径，以达到动态注胶无接点、不残留积料及维修保养容易的优点。



# 权 利 要 求 书



1. 一种两液型混合注胶装置，其特征在于：

一个枪本体，具有二道设在枪本体两侧边处供 A、B 两液进入的进料口、以及二道直设在枪本体下端处与二道进料口相连通的流道；

一个混合头单元，具有一个套设在枪本体下端处的射料管、以及一根套设在射料管内部的螺杆，射料管在上端处设有一间与流道连通可供 A、B 两液混合成为胶料的混合室；

一个驱动单元，具有一组马达以及一组伸设在枪本体内部可供马达与螺杆相接连动运转的轴组合；及

一个控制单元，具有一组活塞组合、二个埋设固定在枪本体进料口内的阀套、以及二组与活塞组合相接可对阀套作开闭动作的阀组合。

2. 如权利要求 1 所述的两液型混合注胶装置，其特征在于：所述枪本体在两侧边处设有二道分别接通至流道内的清洁剂入口。

3. 如权利要求 1 所述的两液型混合注胶装置，其特征在于：所述混合头单元包含有一个锁接固定在射料管上端处的螺帽。

4. 如权利要求 1 所述的两液型混合注胶装置，其特征在于：所述驱动单元的轴组合包含有一根与马达相接连动的心轴、以及一个相接在心轴及螺杆中间的联轴器。

5. 如权利要求 1 所述的两液型混合注胶装置，其特征在于：所述活塞组合包含有一个气压缸、一个套设在气压缸内的活塞元件、一个套设在气压缸内对活塞元件作弹推的弹性元件、一个套设在气压缸外端处对活塞元件作限位的抵止座、以及一个螺设在抵止座上的调整环。

6. 如权利要求 1 所述的两液型混合注胶装置，其特征在于：所述控制单元的阀组合包含有一根与活塞组合相接连动的驱动杆、以及一个接设在驱动杆下端处且气密套入阀套内的针阀元件。

# 两液型混合注胶装置

## 技术领域

本实用新型是涉及一种注胶装置，特别是涉及一种利用数值控制(NC)带动移动路径的两液型混合注胶装置。

## 背景技术

参见图 1 所示，一般需要作防水、气密或缓冲功能的物品 1(例如车灯、灯罩、窗台、滤水器…等等)，通常会沿着物品 1 的外形贴设有一胶条 2，由于每一种物品 1 的形状不一，如果物品 1 本身具有复杂轮廓形状，制造者通常会将胶条 2 预先裁剪成为段材，再一段段地弯曲接黏在物品 1 上，如此就完成复杂形状胶条 2 的制做，虽然利用上述手段确实可将胶条 2 黏接在物品 1 上，然而使用上仍有些问题亟待解决，第一、如果胶条 2 经过裁切后再黏贴在物品 1 上，在两胶条 2 间难免会有空隙产生，严重影响胶条 2 的防水性及气密性；第二、两胶条 2 相接时会形成突起状的接点 3，严重影响胶条 2 的外观性。

目前业者开发出有一种注胶机械，其内部具有进料口及混合室，胶料由进料口到达混合室充份混合后，便可押出成型出一胶条，然而一般注胶机械的进料口距离混合室的路径相当远，且流道是呈弯曲状，死角众多相当容易屯积残留胶料，胶料在通过长流道时，容易结晶化变硬而不利于清洗，如果要更换不同颜色的胶料时，新胶料容易与流道内的旧胶料混合而产生颜色色差，不论是保养或维修上都相当麻烦且费时。

## 实用新型内容

本实用新型目的在于提供一种可达到动态注胶无接点、不残留积料及维修保养容易的两液型混合注胶装置。

本实用新型提供一种两液型混合注胶装置，包含有一个枪本体、一个混合头单元、一个驱动单元及一个控制单元，其特征在于：枪本体具有二道设在枪本体两侧边处可供 A、B 两液进入的进料口、以及二道直设在枪本体下端处与二进料口相连通的流道；混合头单元具有一个套设在枪本体下端处的射料管、以及一根套设在射料管内部可对胶料高速推转押出的螺杆，射料管在上端处设有一间与流道连通可供 A、B 两液混合成为胶料的混合室；驱动单元具有一组马达以及一组伸设在枪本体内部可供马达与螺杆相接连动运

转的轴组合；控制单元具有一组活塞组合、二个埋设固定在枪本体进料口内的阀套、以及二组与活塞组合相接可对阀套作开闭动作的阀组合。

本实用新型的功效是利用外部数值控制(NC)带动射料管移动路径以动态地押出复杂形状的胶条，并借由缩短二流道的距离以达到不易积料及维修保养容易的优点。

附图说明

图 1 是一般物品黏设胶条的的示意图；

图 2 是本实用新型两液型混合注胶装置一较佳实施例的立体图，说明本实用新型包含有一个枪本体、一个混合头单元、一个驱动单元及一个控制单元；

图 3 是上述较佳实施例的立体半剖图；

图 4 是上述较佳实施例的剖视图，说明控制单元具有二个针阀元件，借由抽拉针阀元件可对胶料产生回吸作用的情形；

图 5 是上述较佳实施例的动作图，说明混合头单元可自枪本体拆卸后进行清理；

图 6 是上述较佳实施例的动作图，说明开始注料时是借由打开针阀元件，使胶料透过一流道到达混合头单元进行押出作业；

图 7 是上述较佳实施例的示意图，说明枪本体安装在一种成型机上的情形；

图 8 是上述较佳实施例的示意图，说明枪本体在成型机上可自由移动路径可押出复杂形状胶条的情形；及

图 9 是上述较佳实施例的示意图，说明枪本体安装在另一种成型机上可押出圆形胶条的情形。

具体实施方式

有关本实用新型前述及其他技术内容、特点与功效，以下配合参考图式的一较佳实施例的说明中，将能清楚的呈现，下面通过最佳实施例及附图对本实用新型两液型混合注胶装置进行详细说明。

参见图 2、图 3 及图 4 所示，本实用新型两液型混合注胶装置在一较佳实施例中，主要包含有一个枪本体 10、一个混合头单元 20、一个驱动单元 30 及一个控制单元 40，接着，再将上述各构件的形状位置及组成空间型态详述于后。

该枪本体 10 是略呈圆筒形状，其两侧周边处朝内部凹设有二道可供 A、B 两液进入的进料口 11，其内部凹设有二道与进料口 11 相连通的通道 12，

位于二通道 12 下端处平直地设有二条路径较小的流道 13，二流道 13 末端乃连接至枪本体 10 的下端部，枪本体 10 两侧周边处朝内部凹设有二道清洁剂入口 14，清洁剂入口 14 可供通入清洁剂到达二流道 13 内，另外，枪本体 10 下端部在外周处设有一段外螺纹 15。

该混合头单元 20 具有一个套设在枪本体 10 下端处的射料管 21、一个套设在射料管 21 上端处的螺帽 22、以及一根套设在射料管 21 内部的螺杆 23，该射料管 21 是呈长直形状的管体，其上端处扩大设有一个锥形套头 211，该螺帽 22 套合在套头 211 上与枪本体 10 外螺纹 15 转紧螺合，使射料管 21 锁接固定在枪本体 10 上，螺帽 22 旋松后与外螺纹 15 脱离，可令整支射料管 21 与枪本体 10 分离开来，此有利于内部的清洗作业，如图 5 所示，该套头 211 内部凹空形成有一间混合室 212，枪本体 10 的二流道 13 刚好可汇集连通至混合室 212 内，使通过流道 13 的 A、B 两液在此混合成为一团胶料，射料管 21 内部中空具有一道管孔 213，该螺杆 23 刚好设置在该管孔 213 内，射料管 21 的下端处设有一口径渐渐缩小的押出口 214，螺杆 23 本身具有复数叶片，使螺杆 23 进行旋转时，可将混合室 212 的胶料推压至押出口 214 外侧押出成为一胶条。

该驱动单元 30 具有一组马达 31 以及一组伸设在枪本体 10 内部中央处的轴组合 32，在本实施例中，该马达 31 设置在枪本体 10 的上端位置，业者可以采用气压或电动马达等类型的马达 31，该轴组合 32 包含有一根穿设在枪本体 10 中央处与马达 31 相接连动的心轴 321、以及一个相接在心轴 321 及螺杆 23 中间的联轴器 322，启动开关可让马达 31 带动心轴 321 运转，心轴 321 透过联轴器 322 可带动整根螺杆 23 作高速旋转。

该控制单元 40 具有一组活塞组合 41、二个埋设固定在枪本体 10 通道 12 内部的阀套 42、以及二组与活塞组合 41 相接可对阀套 42 作开闭动作的阀组合 43，该活塞组合 41 是设置在枪本体 10 的上端处，主要包含有一个固接在枪本体 10 上端处的气压缸 411、一个套设在气压缸 411 内可受到高压空气推动的活塞元件 412、一个套设在气压缸 411 内部可对活塞元件 412 往上弹推的弹性元件 413、一个套设在气压缸 411 外侧端处可对活塞元件 412 作抵止限位的抵止座 414、以及一个螺设在抵止座 414 外侧端处可调整活塞元件 412 移动距离的调整环 415，气压缸 411 外侧处设有二道进气口 416，可供高压空气进入借以推动活塞元件 412 上下移动，弹性元件 413 两端分别抵在气压缸 411 内壁与活塞元件 412 中间，提供活塞元件 412 具有缓冲作用及助动效果，该抵止座 414 内侧端可伸入气压缸 411 内对活塞元件 412 作挡止定位，调整环 415 螺设在抵止座 414 外侧端处可作螺转，借由改变抵止座 414 的位置可控制调整活塞元件 412 移动的距离，阀组合 43 包含有二根接设在

活塞元件 412 下端处形成连动的驱动杆 431、以及二个接设在驱动杆 431 下端处且气密套入阀套 42 内的针阀元件 432，该驱动杆 431 可接受活塞元件 412 带动，令针阀元件 432 在阀套 42 内作成开闭动作，针阀元件 432 在阀套 42 内以抽吸动作形成闭合，使针阀元件 432 对射料管 21 内的胶料可产生一具有回吸作用的负压。

以上为本实用新型两液型混合注胶装置各项结构及形状的概述，接着，再将本实用新型的各项成型动作以及预期所能达成的功效陈述如后：

参见图 6 所示，本实用新型在使用时，首先，启动马达 31 运转，让 A、B 两液由进料口 11 到达通道 12 内，此时高压空气灌入气压缸 411，作动活塞元件 412 连同驱动杆 431 一起推动，借以带动针阀元件 432 与阀套 42 脱离呈打开状，如此 A、B 两液便可由通道 12 进入流道 13 内，再汇集至混合室 212 内进行混合成为胶料，接着马达 31 透过轴组合 32 带动螺杆 23 传动运转，可将混合室 212 内的胶料推送至押出口 214 向外押出成为一胶条。

参见图 7、图 8 所示，本实用新型可安装在一种成型机 50 上，该成型机 50 具有一个机台 51、一个设置在机台 51 中间处的工作台 52、二道设置在机台 51 两侧边处的直向滑轨 53、一道横跨设置在二直向滑轨 53 上的横向滑轨 54、以及一个滑设在横向滑轨 54 上的固定座 55，该固定座 55 上可供固接枪本体 10，工作台 52 上可供放置一工件(图未示)予以固定，利用外部一数值控制(NC)机械控制固定座 55 做三维(3D)座标移动，可稳定精确地控制枪本体 10 沿着一预定形状的轨迹路径作位移，如此本实用新型可在工件上成型出一具有复杂形状且厚度匀称无接点的胶条。

参见图 9 所示，另外，本实用新型也可安装在另一种成型机 60 上，另一种成型机 60 包含有一个机台 61、一个设置在机台 61 上的延伸架 62、一个工作台 63、以及一个设置在工作台 63 上的旋转工作盘 64，延伸架 62 末端处可供固接枪本体 10，旋转工作盘 64 上可供放置一工件进行回转，如此本实用新型便可自然地在工件上成型出一圆形胶条。

综上所述，本实用新型两液型混合注胶装置主要是为解决一般胶条制做上的缺失，其改良的技术手段是借由外部数值控制(NC)机械控制枪本体 10 的移动路径，可达到精准、稳定的移动效果，因此本实用新型可成型出具有相当复杂轮廓形状的胶条，而且胶条的厚度均匀且滑顺，线段与线段的交叉点不会形成突起接点，可达到无接点的成型效果，对于产品外观性具有极大助益，当本实用新型停止使用时，利用驱动杆 431 对针阀元件 432 抽拉动作可产生一负压，对射料管 21 内的原料具有回吸作用，因此本实用新型不会产生滴料的问题，另外，本实用新型还有一项特点是，流道 13 进入混合室 212 的管路是呈直线型态且路径相当短，由于流道 13 没有死角，因此不易产

生积料残留的问题，进料不容易结晶硬化，清洗保养上就显得相当容易，而且因为没有积料的关系，本实用新型要更换不同颜色的原料时，通过流道 13 不会出现染色而造成原料有色差的问题，加上本实用新型的射料管 21 可拆卸下来方便进行维修保养，因此本实用新型在使用上具有极佳的实用进步性。




图1




图2


31
30
411
32
412
414
415
40
41
413
11
321
10
431
43
14
12
42
13
432
322
22
212
21
20
23
214

图3


31
30
32
414
415
411
40
412
41
413
431
321
43
12
11
42
10
432
14
322
15
13
212
211
22
213
20
21
23
214

图4




图5




图6




图7




图8




图9

Espacenet

# Bibliographic data: DE3341201 (A1) — 1985-05-30

## Adhesive gun

**Inventor(s):** URSPRUNG REINHARD [DE] + (URSPRUNG,REINHARD)

**Applicant(s):** URSPRUNG REINHARD + (URSPRUNG,REINHARD)

**Classification:**
- **international:** ***B05C17/005;*** (IPC1-7): B05C17/00
- **cooperative:** **B05C17/00536**

**Application number:** DE19833341201 19831114

**Priority number(s):** DE19833341201 19831114

## Abstract of DE3341201 (A1)



The invention relates to an adhesive gun with a motor drive for the application of a thermoplastic present in rod form, and having a motor actuable by a finger trigger and a reduction gear between the electric motor and two drive rollers (10,11), which are opposed in relation to the adhesive rod and engage the periphery of the rod. The essential element here is that the electric motor (7) is arranged within the gun housing (1). This confers the advantage of a particularly compact and handy structure. The use of a DC motor is found to be advantageous, as is the production of the gun housing in two parts by injection-moulding, the mountings and in part the shafts for the gear parts and drive parts being directly moulded on the housing.

(19) BUNDESREPUBLIK DEUTSCHLAND

DEUTSCHES PATENTAMT

(12) **Offenlegungsschrift**

(11) **DE 3341201 A1**

(51) Int. Cl.³: **B 05 C 17/00**

(21) Aktenzeichen: P 33 41 201.4
(22) Anmeldetag: 14. 11. 83
(43) Offenlegungstag: 30. 5. 85

DE 3341201 A1

(71) Anmelder:
Ursprung, Reinhard, 8088 Eching, DE

(72) Erfinder:
gleich Anmelder

(54) Klebepistole

Die Erfindung bezieht sich auf eine Klebepistole mit einem Motorantrieb zum Auftragen von in Stangenform vorliegenden thermoplastischem Kunststoff, welche einen über einen Fingerabzug betätigbaren Motor aufweist und bei welchem ein Übersetzungsgetriebe zwischen Elektromotor und zwei sich im Verhältnis zur Klebestange gegenüberliegenden und in den Stangenumfang eingreifenden Antriebswalzen (10, 11) aufweist. Wesentlich ist dabei, daß der Elektromotor (7) im Inneren des Pistolengehäuses (1) angeordnet ist. Hierdurch ist der Vorteil einer besonders kompakten und handlichen Bauweise gegeben. Als vorteilhaft zeigt sich die Verwendung eines Gleichstrommotors und die Fertigung des Pistolengehäuses in zweiteiliger Ausführung im Spritzgußverfahren, wobei die Lagerungen und z. T. die Wellen für die Getriebe- und Antriebsteile am Gehäuse direkt angeformt sind.




DE 3341201 A1



ORIGINAL INSPECTED

3341201

Reinhard Ursprung
Eduard-Thöny-Straße 19
D-8919 Utting / Ammersee

# Klebepistole

## Patentansprüche

1. Klebepistole mit Motorantrieb zum Auftragen von in Stangenform vorliegenden thermoplastischem Kunststoff, mit

- einem über einen Fingerabzug betätigbaren Elektromotor (7),
- einem Untersetzungsgetriebe (13) zwischen Elektromotor und zwei sich im Verhältnis zur Klebestange (15) gegenüberliegenden und in den Stangenumfang eingreifenden Antriebswalzen (10, 11),

d a d u r c h   g e k e n n z e i c h n e t ,

daß der Elektromotor (7) im Inneren des Pistolengehäuses (1) angeordnet ist.



BAD ORIGINAL

2. Klebepistole nach Anspruch 1, dadurch gekennzeichnet, daß der Elektromotor (7) ein Gleichstrommotor ist.

3. Klebepistole nach den Ansprüchen 1 und 2, dadurch gekennzeichnet, daß das Pistolengehäuse (1) im wesentlichen zweiteilig ausgebildet ist.

4. Klebepistole nach Anspruch 3, dadurch gekennzeichnet, daß das Gehäuse (1) aus Kunststoff in ansich bekanntem Spritzgußverfahren gebildet ist.

5. Klebepistole nach den Ansprüchen 3 und 4, dadurch gekennzeichnet, daß die Lagerungen (17) und z. T. die Wellen (18) für die Getriebe- und Antriebsteile am Gehäuse (1) direkt angeformt sind.

6. Klebepistole nach mindestens einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, daß der Elektromotor (7) in dem Griffteil des Pistolengehäuses (1) angeordnet ist.

7. Klebepistole nach mindestens einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, daß sämtliche Getriebeteile aus Kunststoff gebildet sind.

8. Klebepistole nach mindestens einem der vorhergehenden Ansprüche, dadurch gekennzeichnet, daß zwecks Verwendung von Stäben unterschiedlicher Durchmesser und auch weichen Materials mindestens eine der Antriebswalzen (10, 11) auf Spannung elastisch gelagert sind.

P 103

3.

3341201

Reinhard Ursprung
Eduard-Thöne-Straße 19
D-8919 Utting / Ammersee

# Klebepistole

Die Erfindung bezieht sich auf eine Klebepistole mit motorischem Antrieb nach dem Oberbegriff des Anspruches 1, wie sie zum Auftragen für in Stangenform vorliegenden thermoplastischen Kunststoff verwendet werden.

Pistolenförmige Handauftragevorrichtungen für in Stangenform vorliegenden thermoplastischen Kunststoff sind in unterschiedlichen grundsätzlichen Arten bekannt.

So sind z. B. aus der DE-AS 12 49 783, der DE-PS 16 96 370, und der GB-PS 2 028 687 Daumenvorschubgeräte bekannt, bei welchen mit dem Daumen direkt auf die Klebepatronen der Vorschubdruck aufgebracht wird. Durch den mit dem Daumen erzeugten Vorschub können nur kurze Stäbchen verwendet werden, so daß der Klebeprozeß bei längeren Nähten öfter unterbrochen werden und ein Nachfüllvorgang stattfinden muß. Auch ist der durch den Daumen ausgeübte Vorschubdruck nicht immer gleich groß. Eine gleichmäßige Schweißnaht kann somit insbesondere bei relativ langen Nähten durch diese bekannten Einrichtungen nicht erzielt werden.

Des weiteren sind Geräte mit mechanischen Vorschüben bekannt, bei welchen über eine Hebelmechanik Klebestäbe (Patronen) beliebiger Länge dem Heizkanal zugeführt werden können, wie beispielsweise in der US-PS 3 743 142 beschrieben. Der Vorschub wird jedoch intermittierend, also portionsweise vorgenommen, wodurch eine relativ ungleichmäßige Klebenaht entsteht. Zudem sind diese Geräte sehr störanfällig, da die Transporteinrichtungen bei sich aufweichendem Klebematerial nicht mehr funktionsfähig ist.

Schließlich ist aus der DE-AS 1 089 961 eine pistolenförmige Handauftragevorrichtung bekannt, bei welcher der Vorschub des stangenförmigen Klebematerials mit Hilfe eines Elektromotors vorgenommen wird. In einem kastenförmigen Gehäuse sind neben anderen Ventil-Betätigungseinrichtungen eine Serie von Zahnrädern angeordnet, die die vom außen an dem Gehäuse angebrachten relativ großen Elektromotor gelieferte Drehbewegung in entsprechendem Übertragungsverhältnis an zwei Druckwalzen, die das Stangenmaterial bewegen, weitergeben. Es ist ein Abzug vorgesehen, welcher neben anderer Funktion auch diejenige des Einschaltens des Elektromotors erfüllt. Der Aufbau dieser bereits aus dem Jahre 1957 bekannten Einrichtung ist verhältnismäßig aufwendig, wie dies auch aus der Beschreibungseinleitung der DE-PS 16 96 370 hervorgeht. Das Gerät ist im Ganzen sehr unhandlich, wozu die Anbringung des Motors außerhalb des Vorrichtungsgehäuses nicht unwesentlichen beiträgt. Der Verwender einer solchen Einrichtung wird nach kurzer Zeit Ermüdungserscheinungen zeigen, wodurch die Qualität der Schweißnaht nachläßt. Auch ist im Gehäuseinneren die Lagerung der Übertragungsteile relativ aufwendig und teilweise über schwere Lagerböcke gestaltet, was den Nachteil eines hohen Gewichts mit sich bringt.

Aufgabe der Erfindung ist es, eine leichte und gut handhabbare Klebepistole mit Motorantrieb anzugeben, die ein-

fach und kompakt im Aufbau und wirtschaftlich herstellbar ist.

Diese Aufgabe wird durch eine Klebepistole mit Maschinenantrieb, die die Merkmale des Anspruches 1 aufweist, gelöst.

Demgemäß ist der Elektromotor für den Stangenvorschub im Inneren des Pistolengehäuses angeordnet.

Gemäß einer vorteilhaften Ausführungsform des Erfindungsgedankens ist der Elektromotor ein Gleichstrommotor. Hierdurch besteht die Möglichkeit, einen sehr kleinen Motor zu verwenden, welcher bereits in den Griffteil des Gehäuses einer üblichen (Daumenvorschub-) Klebepistole eingebaut werden kann. Dadurch entsteht eine leichte und handliche Klebeeinrichtung, die durch die gute Handhabbarkeit zu der erwünschten Naht guter Qualität führt.

In einer weiteren vorteilhaften Ausgestaltung kann die erfindungsgemäße Klebepistole ein im wesentlichen zweiteiliges Gehäuse aufweisen. Von Vorteil ist, wenn das Gehäuse aus Kunststoff im bekannten Spritzgußverfahren hergestellt wird. Die für das Untersetzungsgetriebe notwendigen Lagerungen bzw. Wellen können dabei in günstiger Weise direkt bei der Herstellung des Gehäuses mit angeformt werden.

Sämtliche Getriebeteile können, da keine großen Kräfte zur Übertragung gelangen, aus Kunststoff gefertigt sein. Für eine größere Lebensdauer ist es jedoch zweckmäßig, die dem Elektromotor zunächst liegenden Räder aus Metall, z. B. Messing zu fertigen. Hierdurch wird eine äußerst wirtschaftliche Herstellungs- und Montageweise der erfindungsgemäßen Klebepistole sichergestellt. So können beispielsweise nach Fertigstellung der Einzelteile in die eine Pistolengehäusehälfte die entsprechenden

Zahnräder aufgesteckt und der Motor und die restlichen Elemente in entsprechende Halterungen eingelegt werden, wonach der zweite Gehäuseteil einfach über die erste Hälfte gelegt und durch entsprechend vorgesehene Schnappverschlüsse befestigt wird.

In weiterer vorteilhafter Ausgestaltung ist mindestens eine Antriebswalze auf Spannung elastisch gelagert. Daher können unterschiedliche Patronendurchmesser sowie weiches Material problemlos verkraftet werden.

Nachfolgend wird die Erfindung anhand eines Ausführungsbeispieles unter Bezug auf die Zeichnung näher beschrieben.

Es zeigt:

Figur 1 einen Querschnitt entlang der Längsachse durch die Klebepistole nach der Erfindung,

Figur 2 einen teilweisen Schnitt nach den Linien II-II aus Figur 1,

Figur 3 eine Teilansicht in Richtung des Pfeiles III, mit abgebrochenem oberen Gehäuseteil, und

Figur 4 eine schematische Darstellung des Antriebsteiles der Pistole gemäß Figur 1.

Wie insbesondere aus Figur 1 ersichtlich ist, weist die erfindungsgemäße Klebepistole ein entsprechend pistolenförmiges Gehäuse 1 auf, in welchem ein mit einer Heizung 2 und einem Heizkanal 3 versehene Führung 4 für die stabförmige Klebestange 5 in dem oberen, im wesentlichen horizontalen Schenkel angeordnet ist. Die Führung 4 mündet am vorderen Ende in ein vorzugsweise auswechselbares Mundstück 6, aus welchem das verflüssigte Klebematerial austritt.

Im Griffteil des Gehäuses 1 ist ein Gleichstrommotor 7 angeordnet, an dessen Welle ein Antriebsritzel befestigt ist. Das Antriebsritzel 8 kämmt mit einem entsprechenden konischen Zahnrad, welches seinerseits mit einem ganzen Zug stirnverzahnter Ritzel und Räder in Verbindung steht, wodurch ein Übersetzungsgetriebe mit einem Übertragungsverhältnis von vorzugsweise i = 400 gebildet wird. Zu beiden Seiten der horizontal geführten Klebestange sind sich gegenüberliegend oberhalb und unterhalb der Stange je ein Transportrad 10 und 11 angeordnet. Die Transporträder 10, 11 weisen vorzugsweise eine geriffelte oder gezahnte Mantelfläche auf mit welcher sie in die Mantelfläche des stangenförmigen Klebestabes 5 eingreifen. Das Rad 10 ist dabei schwimmend gelagert und wird durch eine Feder 11 in Richtung auf die vorbeigeführte Klebepatrone 5 gedrückt. Hierdurch wird ein guter Transportkontakt erreicht, als auch sichergestellt, daß Klebepatronen unterschiedlicher Durchmesser sicher transportiert werden.

Ebenfalls am Griffteil des Gehäuses 1 befindet sich im wesentlichen an der oberen, vorderen Seite ein Abzug 14, welcher über eine Feder 15 unter Spannung gehalten ist. Im Betätigungsfeld des Abzuges 14 ist ein Wechselschalter 16 angeordnet, der zum Einschalten des Gleichstrommotors 7 dient. Wie aus den Figuren 2 und 3 ersichtlich ist, sind am spritzgußgefertigten Gehäuse 1 die Lager 17 direkt angeformt. Auch die Wellen 18 der Getriebeteile können zumindest teilweise direkt einstückig mit dem Gehäuse gefertigt sein. Des weiteren sind im Gehäuse Schultern 19 angeformt, die zum Einfügen beispielsweise des Motors 7 und der Führung 4 dienen, so daß keine zusätzlichen Montagemittel notwendig sind.

Aus Figur 4 schließlich wird der gesamte Getriebezug vom Elektromotor 7 bis zu den Transporträdern 10, 11 transparent, wobei zu erkennen ist, daß der gesamte Aufbau in relativ einfacher, wirtschaftlicher Weise vorgenommen worden ist.

BAD ORIGINAL

Bezugszeichen zur Klebepistole/Motorantrieb

1.- Gehäuse
2.- Heizung
3.- Heizkanal
4.- Führung
5.- Klebestange
6.- Mundstück
7.- Gleichstrommotor
8.- Antriebsritzel
9.- konisches Zahnrad
10.- Transport-Rad
11.- Transport-Rad
12.- Feder
13.- Übersetzungsgetriebe
14.- Abzug
15.- Feder
16.- Wechselschalter
17.- Lager
18.- Wellen
19.- Schulter

Nummer: 33 41 201
Int. Cl.³: B 05 C 17/00
Anmeldetag: 14. November 1983
Offenlegungstag: 30. Mai 1985

3341201



(19) Europäisches Patentamt
European Patent Office
Office européen des brevets

(11) Publication number: **0 257 838 A2**

(12) **EUROPEAN PATENT APPLICATION**

(21) Application number: **87306834.0**

(51) Int. Cl.⁴: **B05C 17/00**

(22) Date of filing: **31.07.87**

(30) Priority: **23.08.86 GB 8620535**

(43) Date of publication of application:
**02.03.88 Bulletin 88/09**

(84) Designated Contracting States:
**DE ES FR GB IT SE**

(71) Applicant: **BOSTIK LIMITED**
**Ulverscroft Works Ulverscroft Road**
**Leicester LE4 6BW(GB)**

(84) **GB**

(71) Applicant: **BOSTIK GMBH**
**Gattenhoferweg 36 Postfach 1260**
**D-6370 Oberursel/Taunus(DE)**

(84) **DE IT**

(71) Applicant: **BOSTIK S.A.**
**5 Route de Saint Leu**
**F-95360 Montmagny (Val d'Oise)(FR)**

(84) **ES FR**

(71) Applicant: **BOSTIK AB**
**Strandbadsvaegen**
**S-25229 Helsingborg(SE)**

(84) **SE**

(72) Inventor: **Borst, Willi**
**Stammheimerstrasse 3a**
**D-6364 Florstadt(DE)**
Inventor: **Wooge, Christian**
**Hamelstrasse 10**
**D-6380 Bad Homburg(DE)**

(74) Representative: **Wetters, Basil David Peter et al**
**Emhart Patents Department Lyn House 39 The Parade**
**Oadby, Leicester LE2 5BB(GB)**

(54) **Hot-melt guns.**

(57) Hot-melt gun especially for adhesives with trigger-operated feeding means using at least one continuous feed-belt or-chain to engage a glue-stick so as to feed it to the melt-chamber of the hot-melt gun. Preferably the feed-belt is driven by an electric motor and may be provided with outward-facing hooks adapted to engage a glue-stick. A twin-belt arrangement feeding the glue-stick between the belts is described. The second belt may be positively driven or may function as an idler. A computer logic device may be incorporated.



FIG. 1

EP 0 257 838 A2

## HOT MELT GUNS

This invention relates to dispensers of hot, molten materials of the kind known as hot-melt guns.

Various proposals have been made to provide apparatus for melting and dispensing thermoplastic material supplied in the form of a rod. Such apparatus is usually provided with a melt-body having a melt-chamber in which thermoplastic material is melted, an inlet for the rod of thermoplastic material and an outlet comprising an orifice for dispensing and applying melted material, and means for heating the melt-body so that thermoplastic material fed as a rod into the melt-chamber, where it is then melted, may be dispensed and applied in molten condition from the orifice. Such apparatus finds use in various fields of application, commonly in the form of applicators for hot-melt adhesives and sealants and especially in hot-melt glue-guns having provision for feeding a rod of adhesive, known as a glue-stick, to the melt-body, for example by trigger-operated means.

The present invention is concerned with hot-melt guns for melting rods of thermoplastic material and dispensing and applying the resulting hot-melt materials, and more particularly is concerned with a hand-held glue-gun comprising improved feeding means adapted to feed hot-melt material in the form of a rod to the melt-body.

Rod-feeding means employed in hand-held glue-guns often include a trigger and associated mechanism arranged to grip a rod of composition to be fed, and to advance it towards the melt chamber. An inlet sleeve of resilient material is often provided at the entrance to the melt-chamber to assist in guiding the rod into the melt chamber and also to grip the surface of the rod as it is fed into the melt-chamber to minimise outflow of melted material from the melt-chamber inlet. For example, a hand-held, hot-melt glue-gun is described in GB Patent Specification 1402648 having feeding means for feeding a rod of solid, hot-melt material into a melt body, under the control of an operator, in which the feeding means comprises a carriage mounted for movement towards and away from the melt-body, a clamp member pivotally mounted on the carriage and a trigger connected to the clamp member by connecting means and arranged to be operated by the operator to pivot the clamp member into engagement with the rod of hot-melt material supported by the carriage to grip the rod and, on further pressure on the trigger by the operator, to feed the rod into the melt-chamber. The clamp member comprises a knife member by which the rod is engaged in the operation of the feeding means to feed the rod into the melt chamber.

Although such feeding means is acceptably effective to feed rod adhesive into the melt chamber, the knife member may tend to indent or otherwise distort the rod when excessive pressure is exerted on the trigger. The problem of outflow of melted material from the melt-chamber has long been recognised and deformation of the rod surface by the knife member renders it impossible to rely upon the inlet sleeve to provide sufficient seal on rod entering the melt chamber to prevent melted material being forced out between the inlet sleeve and the rod.

Problems associated with distortion of the rod are especially relevant in hand guns used for prolonged industrial use and particularly those using a high melt-capacity melt-body which has a particular need for rapid feeding of the rod, and also in those cases where the rod is unusually soft or unusually brittle.

Another disadvantage of available hand-operated glue-guns has been that a comparatively large application of effort is required to maintain the gripping of the rod whilst the carriage and clamp are moved towards the melt-chamber. Not only can this accentuate the distortion of the rod, but also may give rise to control difficulties or operator fatigue in those cases where the glue-gun is used for prolonged continuous periods, especially where a substantially uniform rate of rod feed is required intermittently.

It is therefore an object of the present invention to provide improved rod feeding means for a hot-melt gun.

According to the present invention, a hot-melt gun provided with trigger-operated feeding means for feeding a solid rod of thermoplastic material to the melt-chamber of said hot-melt gun is characterised by a positive feed mechanism comprising a driven elongated feed member controlled by drive means operated by the trigger, said elongated feed member comprising a driven continuous feed-belt arranged with its longitudinal axis parallel to the axis of the rod of thermoplastic material being fed to the melt-chamber. The feed-belt may be arranged so that one outer face contacts the rod along a substantial part of its length. Preferably a second belt is arranged in parallel to contact the opposite side of the rod so that the rod is engaged between the two parallel belts. The second belt may also be driven either by the same motor that drives the feed-belt or by a separate motor or it may function as an idler.

Alternatively, the feed-belt may be provided with at least one out-facing engagement member arranged to contact the rod so that the rod is urged to move in the direction of travel of the feed-belt. Preferably such a "hook-belt" is provided with a plurality of outfacing engagement members (hooks), preferably equispaced around the belt.

The driven belts may be powered by suitable means e.g. by hydraulic, pneumatic or clockwork devices but preferably are electrically driven by electric motors which can be arranged to drive one or more belts. The trigger may control the operation of the motor by conventional switching arrangements and these may incorporate control elements such as electronic computer chip devices. Such devices facilitate control of feed rate, can provide for pressure relief to inhibit unwanted outflow from the nozzle ("drool"), enable pre-set amounts to be extruded and also provide safeguards against overload pressures, over-heating, operation at below optimum temperature and similar undesirable conditions.

Throughout this specification the term "belt" is used to include all similar, continuous structures such as chains which are equally effective. For example, a so-called gripper chain lends itself very well to the incorporation of outfacing stud elements to form a hook-belt.

In order that the invention be better understood, preferred embodiments will now be described by way of example and with reference to the accompanying drawings in which:-

Figures 1, 2 and 3 are schematic representations illustrating alternative arrangements for feeding means for a hot-melt gun according to the invention, each showing a rod and associated feed mechanism,

Figure 4 is a side view of a glue-gun according to the invention, part in section, part broken away,

Figure 5 is a cross-section on line V-V of Figure 4, and,

Figure 6 is a plan view, part broken away, of the glue-gun of Figure 4.

Figure 1 illustrates a single-belt feed, where feed-belt 11 is arranged with its longitudinal axis parallel to the axis of rod 12 which is a 'glue-stick' comprising thermoplastic adhesive material. The outer surface of feed-belt 11, which has a corrugated finish to enhance its grip, is in contact with a significant length of the surface of rod 12 and thus, when the feed-belt moves in direction B, the rod is urged in direction D towards the melt-chamber (not shown) of the hot-melt gun.

The arrangement of Figure 2 is similar to that of Figure 1 with the addition of a second belt 13 arranged with its axis parallel to that of feed-belt 11 and that of rod 12. Second belt 13, which has the same corrugated finish as feed-belt 11, is in contact with a length of rod 12 opposite to that in contact with feed-belt 11 so that the rod 12 is gripped between the belts 11 and 12 and, when the belts move in direction B, again the rod is urged in direction D.

Figure 3 illustrates the so-called "hook-belt" drive in which a driven hook-belt 14 is provided with outfacing projections 15. The hook-belt is similarly arranged with its axis parallel to that of a rod 12 and arranged so that as hook-belt 14 moves in direction B, a projection (or hook) 15 engages end 16 of rod 12 and pushes it in direction D.

The glue-gun illustrated in Figures 4, 5 and 6 is a conventional, hand-held glue-gun wherein a handle 21 supports a body 22 containing a melt chamber 23 into which thermoplastic glue material is fed in solid (stick) form through sleeve portion 24. The glue material is melted in melt-chamber 23 by PTC heaters (not shown) and the resulting molten material is expelled from nozzle 25 by pressure applied to melt-chamber 23 by the feed of solid glue material through sleeve portion 24.

The illustrated glue-gun is fitted with feeding-means according to the present invention by means of which a glue-stick 12 is fed through sleeve portion 24 to melt chamber 23. The feeding means comprise a pair of endless belts 11,11′ which are located with their longitudinal axes parallel to the axis of glue-stick 12 with their outer, corrugated faces (having transverse ridges) in contact with opposite sides of glue-stick 12. Belt 11 is driven by a drive wheel 26 connected to electric motor 27 through bevel gearing 28. Motor 27 is controlled by trigger 29 through an electronic control device (not shown) which responds not only to trigger 29 but also to the temperature of the molten material in melt-chamber 23, the pressure in melt chamber, the quantity of material fed into melt-chamber 23 through sleeve portion 24, the amount of molten material extruded through nozzle 25 etc.

Free-running idler wheels 30 support belt 11 along its length and at the other end. Belt 11′ acts as an idler and is supported on free-running idler wheels 31. In operation, glue-stick 12 is gripped between parallel faces of belts 11,11′ and thereby constrained to move in the direction of driven belt 11. Usually motor 27 is used to carry glue-stick 12 towards sleeve portion 24 but the electronic control device can be used, for example, to reverse motor 27 so that partial withdrawal of glue-stick 12 reduces the pressure on the material in melt-chamber 23 and so reduces unwanted extrusion ("drooling") of molten material through nozzle 25.

**Claims**

1. A hot-melt gun provided with trigger-operated feeding means for feeding a solid rod of thermoplastic material to the melt-chamber of said hot-melt gun characterised by a positive feed mechanism comprising a driven elongated feed member controlled by drive means operated by the trigger, said elongated feed member comprising a driven continuous feed-belt arranged with its longitudinal axis parallel to the axis of the rod of thermoplastic material being fed to the melt-chamber.

2. A hot-melt gun according to claim 1, wherein the feed-belt is arranged to that one outer face contacts the rod along a substantial part of its length.

3. A hot-melt gun according to claim 1 or 2, wherein a second belt is arranged in parallel to contact the opposite side of the belt so that the rod is engaged between the two parallel belts.

4. A hot-melt gun according to claim 3, wherein the second belt is driven by the same motor that drives said feed-belt or by a separate motor.

5. A hot-melt gun according to claim 3, wherein the second belt functions as an idler.

6. A hot-melt gun according to claim 1, wherein the feed-belt is provided with at least one out-facing engagement member arranged to contact the rod of thermoplastic material so that the rod is urged to move in the direction of travel of the feed-belt.

7. A hot-melt gun according to claim 6, wherein the feed-belt is provided with a plurality of out-facing engagement members, preferably equispaced around the belt.

8. A hot-melt gun according to any one of the preceding claims, wherein the drive means is electrically powered.

9. A hot-melt gun according to any one of the preceding claims, wherein the feed member is controlled by a computer logic device.




Fig_1




Fig_2




Fig_3





Fig. 4




Fig. 5

0 257 838




FIG_6

(12) NACH DEM VERTRAG ÜBER DIE INTERNATIONALE ZUSAMMENARBEIT AUF DEM GEBIET DES PATENTWESENS (PCT) VERÖFFENTLICHTE INTERNATIONALE ANMELDUNG

(19) Weltorganisation für geistiges Eigentum
Internationales Büro

(43) Internationales Veröffentlichungsdatum
15. November 2012 (15.11.2012)

WIPO | PCT

(10) Internationale Veröffentlichungsnummer
**WO 2012/152510 A1**

(51) **Internationale Patentklassifikation**:
***B29C 67/00*** (2006.01) ***B01F 5/00*** (2006.01)

(21) **Internationales Aktenzeichen**: PCT/EP2012/056009

(22) **Internationales Anmeldedatum**:
3. April 2012 (03.04.2012)

(25) **Einreichungssprache**: Deutsch

(26) **Veröffentlichungssprache**: Deutsch

(30) **Angaben zur Priorität**:
102011075540.3 10. Mai 2011 (10.05.2011) DE

(71) **Anmelder** *(für alle Bestimmungsstaaten mit Ausnahme von US)*: **EVONIK RÖHM GMBH** [DE/DE]; Kirschenallee, 64293 Darmstadt (DE).

(72) **Erfinder; und**
(75) **Erfinder/Anmelder** *(nur für US)*: **PRIDÖHL, Markus** [DE/DE]; Robert-Koch-Weg 7, 63538 Großkrotzenburg (DE). **SCHMITT, Günter** [DE/DE]; Nach dem Wieschen 3, 64291 Darmstadt (DE). **POPPE, Dirk** [DE/DE]; Röderbergweg 172, 60385 Frankfurt am Main (DE). **KOHLSTRUK, Stephan** [DE/DE]; Am alten Stadion 33, 48249 Dülmen (DE). **HAMMANN, Benjamin** [DE/DE]; Lettigkautweg 25, 60599 Frankfurt (DE). **CREMER, Sonja** [DE/DE]; Am Weiher 6, 63834 Sulzbach (DE). **BEKS, Kris** [BE/BE]; Daalstraat 58A, B-3740 Bilzen (Rosmeer) (BE). **DEWAELHEYNS, Ludo** [BE/BE]; Genkerweg 15, B-3690 Zutendaal (BE).

(81) **Bestimmungsstaaten** *(soweit nicht anders angegeben, für jede verfügbare nationale Schutzrechtsart)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IS, JP, KE, KG, KM, KN, KP, KR, KZ, LA, LC, LK, LR, LS, LT, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM,

*[Fortsetzung auf der nächsten Seite]*

**(54) Title**: MULTICOLOURED FUSED DEPOSITION MODELLING PRINT

**(54) Bezeichnung** : MEHRFARBIGER FUSED DEPOSITION MODELING DRUCK




Fig.1

**(57) Abstract**: A fused deposition modelling method for producing multicoloured three-dimensional objects, in particular a 3D printing method with which 3D objects can be produced with a particularly good colour image in comparison with the prior art. The method is based on the concept that the polymer strand (2), or the resultant melt, that is used for producing the actual object is superficially coloured or coated with additives in the nozzle (1).

**(57) Zusammenfassung**: Ein Fuse Deposition Modeling-Verfahren zur Herstellung mehrfarbiger dreidimensionaler Objekte, insbesondere ein 3D-Druckverfahren mit dem gegenüber dem Stand der Technik 3D-Objekte mit besonders gutem Farbbild hergestellt werden können. Das Verfahren basiert darauf, dass der zur Herstellung des eigentlichen Objekts verwendete Polymerstrang (2) oder die daraus resultierende Schmelze oberflächlich in der Düse (1) eingefärbt oder mit Additiven beschichtet wird.

WO 2012/152510 A1

**WO 2012/152510 A1**

TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

**(84) Bestimmungsstaaten** *(soweit nicht anders angegeben, für jede verfügbare regionale Schutzrechtsart)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, SZ, TZ, UG, ZM, ZW), eurasisches (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), europäisches (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

**Veröffentlicht**:

— *mit internationalem Recherchenbericht (Artikel 21 Absatz 3)*

# Mehrfarbiger Fused Deposition Modeling Druck

## Gebiet der Erfindung

Die Erfindung betrifft ein modifiziertes Fused Deposition Modeling-Verfahren zur Herstellung mehrfarbiger dreidimensionaler Objekte. Insbesondere betrifft die Erfindung ein 3D-Druckverfahren mit dem gegenüber dem Stand der Technik 3D-Objekte mit besonders gutem Farbbild hergestellt werden können. Das erfindungsgemäße Verfahren basiert darauf, dass der zur Herstellung des eigentlichen Objekts verwendete Polymerstrang oder die daraus resultierende Schmelze oberflächlich in der Düse eingefärbt oder mit Additiven beschichtet wird.

## Stand der Technik

Rapid-Prototyping bzw. Rapid-Manufacturing-Verfahren sind Fertigungsverfahren, die das Ziel haben, vorhandene dreidimensionale CAD-Daten möglichst ohne manuelle Umwege oder Formen direkt und schnell in Werkstücke umzusetzen.

Unter den Rapid-Prototyping-Verfahren gibt es inzwischen diverse Verfahren. diese lassen sich in zwei Gruppen unterteilen: Laserbasierte und Verfahren ohne Verwendung eines Lasers.

Das bekannteste laserbasierte und gleichzeitig älteste 3D-Druckverfahren ist die Stereolithographie (SLA). Hierbei wird eine flüssige Zusammensetzung eines strahlenhärtbaren Polymers mit einem Laser schichtweise ausgehärtet. Dem Fachmann ist klar ersichtlich, dass ein auf diese Weise produziertes Werkstück nur nachträglich an der Oberfläche koloriert werden kann. Dies ist aufwendig und zeitintensiv.

Ähnlich ist das Selective Laser Sintering Verfahren (SLS), bei dem ein pulverförmiger Rohstoff, wie z.B. ein Thermoplast oder ein sinterfähiges Metall, mittels eines Lasers analog zum SLA Schicht für Schicht selektiv gesintert wird. Auch mit diesem Verfahren kann man im ersten Verfahrensschritt nur einfarbige oder unspezifisch gefärbte 3D-Objekte erhalten. Das gleiche gilt für das dritte

laserbasierte Verfahren „Laminated Object Manufacturing“, bei dem eine mit Klebstoff versehene Papierbahn oder Kunststoffolie Schicht für Schicht aufeinander verklebt und mittels Laser geschnitten wird. Das nachträgliche Färben eines Objekts ist zum Beispiel in US 6,713,125 beschrieben.

Ein bekanntes 3D-Druckverfahren, das auch zur Herstellung mehrfarbiger Objekte verwendet werden kann, ist das UV-Inkjet-Verfahren. Bei diesem dreistufigen Verfahren wird ein pulverförmiges Material in dünnen Schichten aufgetragen, auf diese wird eine UV-härtbare Flüssigkeit in Form der jeweiligen Schicht des späteren dreidimensionalen Produktes gedruckt und schließlich wird die bedruckte Schicht mit einer UV-Quelle ausgehärtet. Diese Verfahrensschritte werden Schicht für Schicht wiederholt.

In EP 1 475 220 werden verschieden gefärbte Flüssigkeiten mit Härter bereitgehalten und in WO 2008/077850 zusätzlich in einer Kammer direkt vor dem Drucken vermischt. So ist eine selektive Färbung möglich. Durch die Mischkammer sind jedoch keine scharfen Farbübergänge möglich. Ferner ist ein solches Verfahren an den Grenzen der Aushärtung unscharf, was zu einer weniger glatten Oberfläche und unter Umständen zu einer ungleichmäßigen Färbung führen kann. In WO 01/26023 werden zwei Druckköpfe mit verschiedenfarbigen Härterzusammensetzungen, die zu Objektteilen mit unterschiedlichen Elastizitätseigenschaften führen beschrieben. Mehr als zwei Farben sind jedoch nicht beschrieben.

Eine Variante, bei der anstatt mit UV-Licht mit einer Wärmestrahlung ausgehärtet wird und gleichfalls verschiedenfarbige Härterzusammensetzungen verwendet werden, ist in WO 2008/075450 beschrieben.

In GB 2419679 ist ein Verfahren offenbart, bei dem verschieden gefärbte Polymerteilchen selektiv aufgetragen und bei verschiedenen Wellenlängen ausgehärtet werden können. Dieses Verfahren ist äußerst aufwendig und führt gleichzeitig zu einem unscharfen Farbbild.

In einem dem Inkjet-3D-Druck ähnlichen Verfahren nach der WO 2009/139395 wird eine farbige Flüssigkeit schichtweise aufgetragen und slektiv mit einer zweiten Flüssigkeit, die zu einer Härtreeaktion mit der ersten Flüssigkeit führt, bedruckt. Ein solches Verfahren kann Farben nur schichtweise aufbauen,

davon abgesehen, dass es zwischen den nicht gehärteten Flüssigkeitsschichten zu Vermischungen kommen kann.

Ein weiteres Verfahren stellt das Three Dimension Printing (TDP) dar. Bei diesem Verfahren werden analog zu den Inkjet-Verfahren pulverförmige Materialien, bei denen es sich jedoch bevorzugt um Keramiken handelt, mit einer der Schmelze eines thermoplastischen Polymers Schicht für Schicht selektiv durchtränkt. Nach jeder Druckschicht muss eine neue Schicht des pulverförmigen Materials aufgebracht werden. Beim Erstarren des Thermoplasten wird das dreidimensionale Objekt gebildet.

Bei dem in US 2004/0251574 beschriebenen Verfahren wird anschließend an den Druck des Thermoplasten selektiv mit einer Farbe gedruckt. Vorteil dieses Verfahrens ist, dass sehr selektiv gedruckt werden kann. Nachteil dieses Verfahrens jedoch ist, dass kein gleichmäßiges und leuchtendes Farbbild erreicht werden kann, da ein gleichmäßiges Eindringen der Farbe in den Composit aus dem (Keramik)Pulver und dem Bindemittel nicht erreicht werden kann.

Bei dem in EP 1 491 322 beschriebenen Verfahren werden zwei unterschiedliche Materialien gedruckt. Das erste enthält das Bindemittel und eine Farbe, die bei Kontakt mit dem zweiten Material ausgefällt wird und damit selektiv die Oberfläche einfärbt. Auf diese Weise können besseren Farbeigenschaften an der Objektoberfläche erzeugt werden. Probleme stellen jedoch die gleichmäßige Vermischung der beiden Materialien und der aufwendige zweistufige Prozess dar. Wie und ob ein gutes Farbbild bei einem Mehrfarbdruck gewährleistet werden kann, ist nicht beschrieben.

In US 6,401,002 werden verschiedene Flüssigkeiten mit unterschiedlichen Farben und dem Bindemittel verwendet. Diese Flüssigkeiten werden entweder getrennt aufgetropft oder über Leitungen in einer Düse vor dem Auftropfen zusammengeführt. Der Fachmann weiß, dass beide Vorgehen zu nicht optimalen Farbbildern führen. Bei ersterem findet die Mischung der Farben in viskosen Flüssigkeiten auf der Oberfläche statt. Diese Mischung erfolgt so nur selten vollständig. Beim zweiten Vorgehen können Druckunterschiede in den Leitungen zu sehr starken Farbschwankungen führen.

Das bezüglich der Herstellung von dreidimensionalen Objekten mittels eines Druckverfahrens materialsparenste und auch in Bezug auf die maschinelle Ausgestaltung günstigste Verfahren ist das Fused Deposition Modeling (FDM). Dies verfahren wird mit kleinen Abwandlungen auch Selective Deposition Modeling (SDM) genannt.

Bei der FDM-Methode werden zwei unterschiedliche Polymerfäden in einer Düse aufgeschmolzen und selektiv gedruckt. Bei dem einen Material handelt es sich um ein Support-Material, das nur an Stellen benötigt wird, über denen später z.B. ein überhängender Teil des 3D-Objektes, der während des Druckvorgangs gestützt werden muss, gedruckt wird. Dieses Support-Material kann später, z.B. durch Lösen in Säuren, Basen oder Wasser entfernt werden. Das andere Material (das Build-Material) formt das eigentliche 3D-Objekt. Auch hier erfolgt der Druck in der Regel schichtweise. Zum ersten Mal wurde das FDM-Verfahren in US 5,121,329 beschrieben. Das Färben allgemein wird in US 2000/20111707 erwähnt, nicht jedoch näher ausgeführt.

Bei dem in EP 1 558 440 beschriebenen Verfahren werden die einzelnen Schichten in einem anschließenden Verfahrensschritt farbig bedruckt. Dieses Verfahren ist langsam und führt bei dem bedrucken der bereits härtenden Thermoplasten zu schlecht aufgelösten Farbbildern.

Bei der farbigen 3D-Druck-Methode nach US 6,165,406 werden für jede einzelne Farbe getrennte Düsen verwendet. Mischfarben sind somit jedoch nur sehr eingeschränkt möglich und das Farbbild wird sehr einfach.

Bei der in US 7,648,664 beschriebenen Variante des FDM werden verschieden gefärbte Build-Materialien in Granulatform eingesetzt, getrennt voneinander aufgeschmolzen und je nach Farbe mittels eines zwischengeschalteten Extruders miteinander vermischt, bevor es verdruckt wird. Diese Methode ist apparativ sehr aufwendig und viele Vorteile des FDM gehen verloren.

In einem sehr ähnlichen System gemäß EP 1 432 566 erfolgt die Vermischung der geschmolzenen Granulate direkt im geheizten Druckkopf, bevor diese direkt verdruckt werden. Diese Mischung kann keinesfalls vollständig erfolgen und die Qualität des Druckbildes ist entsprechend schlecht. Weiterhin hat man auch

hier den Nachteil, dass man Granulate oder Pulver benutzen muss und diese in der Maschine getrennt gelagert und geschmolzen werden müssen.

In US 6,129,872 ist ein Verfahren beschrieben, bei dem das Build-Material in einer Düse aufgeschmolzen wird und am Ende der Düse zu der Schmelze verschiedene Farbmischungen selektiv zudosiert werden. Dies führt jedoch zu keiner ausreichenden Durchmischung und zu einem unsauberen Farbbild.

**Aufgabe**

Aufgabe war es, ein 3D-Druckverfahren zur Verfügung zu stellen, mit dem selektiv gefärbte, mehrfarbige dreidimensionale Objekte mit einem scharfen und klaren Farbbild hergestellt werden können.

Es war weiterhin Aufgabe, ein günstiges und schnell durchführbares 3D-Druckverfahren zum Druck mehrfarbiger Objekte zur Verfügung zu stellen.

Eine weitere Aufgabe war es, farbige Objekte darstellen zu können, wobei die Farbe nicht erst durch einen zusätzlichen Verarbeitungsschritt eingebracht werden soll.

Weitere nicht explizit genannte Aufgaben ergeben sich aus dem Gesamtzusammenhang der nachfolgenden Beschreibung, Ansprüche und Beispiele.

**Lösung**

Unter dem Begriff Druckkopf wird im Rahmen dieser Erfindung die gesamte Vorrichtung zum Fördern, Schmelzen, Färben und Auftragen eines Filaments in einem FDM-3D-Druckverfahren verstanden.

Unter dem Begriff Zusammensetzung wird im Rahmen dieser Erfindung die Zusammensetzung verstanden, die erfindungsgemäß auf den Polymerstrang aufgetragen wird. Die Zusammensetzung enthält Farben, Pigmente und/ oder Additive.

Unter dem Begriff Filament wird im Rahmen der vorliegenden Erfindung die Rohform der Build- bzw. Supportmaterialien in Form eines Stranges verstanden. Dieses Filament wird in dem Druckkopf erfindungsgemäß aufgeschmolzen und danach zu einem 3D-Objekt verdruckt. Bei dem Filament handelt es sich um ein thermoplastisch verarbeitbares Material. In der Regel ist das Filament ein Polymerfilament, jedoch auf solche nicht eingeschränkt. Auch können Polymerfilamente beispielsweise nur teilweise aus einem thermoplastisch polymeren Matrixmaterial und weiteren Füllstoffen oder z.B. Metallen zusammengesetzt sein.

Gelöst wurden die Aufgaben durch Bereitstellen einer neuartigen Vorrichtung zur Herstellung ein- oder mehrfarbiger, dreidimensionaler Objekte aus Filamenten. Insbesondere handelt es sich dabei um eine Vorrichtung, die nach dem Fused Deposition Modeling (FDM)Verfahren arbeitet. Diese Vorrichtung weist erfindungsgemäß mindestens einen ersten Druckkopf, mit dem ein Support-Material gedruckt wird, und einen zweiten Druckkopf, mit dem ein Build-Material gedruckt wird, welches in Form eines Filaments zugefügt wird, auf. Dabei weist der zweite Druckkopf eine Düse, wiederum bestehend aus mindestens zwei Bereichen, auf. In dem ersten, oberen Bereich der Düse ist das Polymer fest und in dem zweiten, unteren liegt das Polymer geschmolzen vor. Dabei ist der Übergang zwischen dem festen Zustand im oberen Bereich und dem geschmolzenen Zustand im unteren Bereich innerhalb des Druckkopfes kontinuierlich.

Insbesondere ist die erfindungsgemäße Vorrichtung dadurch gekennzeichnet, dass dem zweiten Druckkopf Additive und/oder Farben aus mehreren Vorratsbehältern, ausgestattet mit Dosiervorrichtungen, beschichtet wird. Die

Beschichtung kann sowohl an dem noch festen Filament vor dem Schmelzen im oberen Bereich der Düse erfolgen, als auch im unteren Bereich der Düse an dem Schmelzstrang des Build-Materials. Weiterhin kann das Beschichten auch direkt am oder kurz hinter dem Ausgang der Düse erfolgen. In dieser Ausführungsform ist die gesamte Beschichtungsvorrichtung weiterhin als Teil des Druckkopfes zu betrachten.

Auf diese Weise erhält man ein nur oberflächlich gefärbtes Build-Material. Dadurch ist es gegenüber einer in Gänze gefärbten Polymermatrix ein materialsparendes Verfahren. Weiterhin werden Additive, wie insbesondere Haftvermittler, auf diese Weise genau dort aufgebracht, wo sie zur Steigerung der Stabilität des 3D-Objekts benötigt werden.

In einer optionalen Ausführungsform befindet sich vor der Zuleitungsstelle für die Zusammensetzung an der Außenseite des Druckkopfes eine Mischvorrichtung, insbesondere handelt es sich dabei um einen dynamischen Mischer. Diesem dynamischen Mischer werden verschiedene Additive und/oder Farben zunächst zugeführt. Die im dynamischen Mischer erzeugte Mischung wird darauf in den Druckkopf weitergeleitet.

Diese Ausführungsform kann in zwei unterschiedlichen Varianten vorliegen. In einer ersten ist der dynamische Mischer derart an der Düse angebracht, dass die Mischung in die Polymerschmelze im unteren Bereich der Düse geleitet wird.

In einer zweiten Variante ist der dynamische Mischer am Druckkopf oberhalb der Düse angebracht, und die Mischung aus Farben und/oder Additiven wird auf die Oberfläche des festen Filaments aufgetragen. Eine Verteilung der Mischung kann dabei teilweise durch Diffusion in die Schmelze erfolgen. Eine homogene Verteilung in der Schmelze ist jedoch wie beschrieben nicht nötig, da die spätere Oberfläche des dreisimensionalen Objektes ausschließlich von der Oberfläche des Schmelzestrangs gebildet wird. Mit dieser Variante ist es somit insbesondere möglich, ein Verfahren zur Verfügung zu stellen, das mit einem geringeren Farbverbauch verwendet werden kann. Entsprechendes gilt auch für Additive, vor allem solche, die eine Haftungsverbesserung zwischen den einzelnen Schichten im dreidimensionalen Objekt bewirken sollen. Diese werden ausschließlich an der Oberfläche des Schmelzestrangs benötigt.

In einer weiteren Ausführungsform weist der Druckkopf zusätzlich zu dem dynamischen Mischer einen statischen Mischer im unteren Bereich der Düse auf.

Bei den in der Vorrichtung verwendeten Farben handelt es sich um Zusammensetzungen verschiedener Farben, wie z.B. um drei Primärfarben wie z.B. die subtraktive Mischung Magenta, Cyan und Blau bzw. Gelb oder die additive Mischung der Lichtfarben Rot, Grün und Blau. bei der Verwendung von drei Primärfarben kann bevorzugt zusätzlich Schwarz als vierte „Farbe“ hinzukommen. Alternativ kann in Abhängigkeit des Build-Material auch weiß als vierte oder fünfte „Farbe“ eingesetzt werden. Für true color Systeme können jedoch je nach System auch bis zu zwanzig Farben benötigt werden.

Die aufgeführten Farbsysteme unterschiedlicher Zusammensetzungen sind dem Fachmann bereits lange aus dem 2D-Druck bekannt. Alle verwendeten Farben liegen jeweils in getrennten Vorratsbehältern, jeweils ausgestattet mit einer eigenen Dosiervorrichtung, vor und werden von dort je nach Ausführungsform in die Düse oder den dynamischen Mischer dosiert.

Bei den Additiven handelt es sich bevorzugt um ein oder mehrere haftverbessernde Additive. Alternativ oder zusätzlich kann es sich auch um weitere Additive wie z.B. um UV-Vernetzer oder thermisch bzw. magnetisch aktivierbare Klebstoffe handeln. Weiterhin denkbar sind der Zusatz von Additiven zur Verbesserung der Haptik, Schmutz abweisende bzw. die Kratzfestigkeit verbessernde Beschichtungsbestandteile oder Additive zur Oberflächenstabilisierung, wie z.B. UV-Stabilisatoren. Für industrielle Anwendungen sind darüber hinaus Additive zur Verbesserung der Wärmeleitfähigkeit bzw. der elektrischen Leitfähigkeit oder Antistatika von Interesse.

Die Additive werden aus separaten Vorratsbehältern oder gemischt mit einer oder mehreren Farben vorgelegt. Das jeweilige Build-Material und/oder Support-Material wird mit diesen Additiven derart beschichtet, dass nach dem Aufschmelzen eine haftverbessernde Wirkung der Filamente untereinander erzielt wird.

In einer besonderen Ausführungsform weist die Vorrichtung zur Herstellung dreidimensionaler Körper einen dritten Druckkopf auf. Dieser optionale dritte

Druckkopf ist genauso ausgestattet wie der zweite Druckkopf. Insbesondere wird mittels dieses dritten Druckkopfs ein Filament für ein zweites Build-Material verdruckt, welches sich von dem ersten Build-Material unterscheidet. Die Farbzusammensetzungen können optional auch Füllstoffe enthalten, die beim Druck dem transparenten Build-Material bei Bedarf eine nicht transparente Optik verleihen.

Zum Beispiel kann der zweite Druckkopf ein vor dem Färben ungefärbtes, nicht transparentes und der dritte Druckkopf ein vor dem Färben ungefärbtes, transparentes Build-Material enthalten. Bevorzugt verfügen beide Druckköpfe dabei jeweils über eigene Mischvorrichtungen, die auf dieselben Vorratsbehälter zugreifen.

Bevorzugt handelt es sich bei den Build-Materialien jeweils um thermoplastisches Material. Bevorzugt handelt es sich bei dem Build-Material aus dem zweiten und/oder dem dritten optionalen Druckkopf um Acrynitril-Butadien-Styrol-Terpolymer (ABS), Polycarbonat (PC), Poly(meth)acrylat, Polyphenylensulfon (PPSU), HDPE, Polyetherimid (PEI), Polyetheretherketon (PEEK), Polymilchsäure (PLA) oder eine Mischung aus mindestens zwei dieser Polymere oder eine Mischung, die mindestens zu 50 Gew% aus einem dieser genannten Polymere zusammengesetzt ist. Die Schreibweise (Meth)acrylat bedeutet hier sowohl Methacrylat, wie z.B. Methylmethacrylat, Ethylmethacrylat usw., als auch Acrylate, wie z.B. Ethylhexylacrylat, Ethylacrylat usw., sowie Mischungen aus beiden.

Bezüglich des zweiten, optionalen Build-Material aus der dritten Düse sind vor allem Polymethacrylat oder Polycarbonat bevorzugt.

Bezüglich des Support-Materials aus dem ersten Druckkopf sollte es sich bevorzugt um ein säure-, base- oder wasserlösliches Polymer handeln.

Die erfindungsgemäße Vorrichtung zur Verwendung in einem Fused Deposition Modeling (FDM)Verfahren entspricht im Allgemeinen dem Stand der Technik und ist damit in der Regel derart gestaltet, dass der jeweilige Farbton in ein rechnerbasiertes CAD-Programm eingegeben wird und dass dabei eine Datei bereitstellt, die zusätzlich zu den Koordinaten die Farbinformation zur Fertigung und zur Regelung der Material- und Farbeinstellung enthält. Dabei wird durch Regelung der Dosiervorrichtungen und gesteuerte Zudosierung der jeweiligen

Primärfarben bzw. Schwarz aus den Vorratsbehältern der jeweilige Farbton eingestellt.

Optional können der zweite bzw. der dritte Druckkopf der Vorrichtung weitere Vorratsbehälter, die zusätzlich zu Schwarz und den Farben bzw. Primärfarben oder Additiven weitere Pigmente enthalten, aufweisen. Bei diesen weiteren Pigmenten kann es sich z.B. um Metallicpigmente und/oder fluoreszierende Pigmente handeln.

Wie bereits ausgeführt können die Vorratsbehälter auch Additive enthalten. Dabei enthalten die Zusammensetzungen durch Mikrowellen oder Magnetfelder erwärmbare Additive, Haftvermittler oder Klebstoffe. Diese können entweder einer oder allen Zusammensetzungen zugesetzt sein oder aus getrennten Vorratsbehältern zugesetzt werden. In letzterem Fall sind diese Zusammensetzungen farblos. Die konkrete Auswahl der entsprechende Additive ergibt sich dem Fachmann aus der Zusammensetzung und dem verwendeten Build-Material.

Darüber hinaus können ein oder mehrere Vorratsbehälter auch Vernetzer, Initiatoren oder Beschleuniger enthalten, die nach dem Kontakt mit dem Filament aus Druckkopf 2 und/oder 3 zu einer Vernetzung führen, so dass man ein ganz oder teilweise elastomeres oder duroplastisches dreidimensionales Objekt erhält. Bei dem Zusammentreffen dieser Additive mit dem Thermoplasten des Filaments erfolgt eine chemische Reaktion, die zur Aushärten der Matrix führt.

Eine oberflächliche Vernetzung kann auch nachträglich erfolgen, indem zunächst mittels Mikrowellen, Wärme, UV-Licht oder Magnetfelder aktivierbare Additive als Beschichtung aufgetragen werden und diese nachträglich in einem folgenden Verfahrensschritt entsprechend aktiviert werden. So kommt es zu einer besonders vorteilhaften Vernetzung an der Oberfläche der ehemaligen Filamente. Durch Diffusion kann diese nachträgliche Vernetzung jedoch auch innerhalb der ehemaligen Filamente erfolgen.

Alternativ können die Additive aus verschiedenen Vorratsbehältern nach dem Vermischen selbst miteinander reagieren und so z. B. zu einer chemischen Vernetzung an der Filamentoberfläche führen und/oder zu einer Haftverbesserung der Filamente nach dem Druck untereinander.

Üblicherweise handelt es sich bei den Vorratsbehältern um bewegliche Kartuschen, wie sie zum Farbdruck aus dem Stand der Technik für 2-D-Tintenstrahl-Farbdrucker bekannt sind. Diese können derart gestaltet sein, dass sie einfach und individuell ausgetauscht bzw. erneuert werden können.

Zu der Zeichnung:

Fig.1 stellt exemplarisch eine Ausführungsform dar, bei der das nicht geschmolzene Filament oberflächlich beschichtet wird und die Farb- und/oder Additivzusammensetzung vorhergehend in einem dynamischen Mischer homogen vermischt wird. Folgende Indizes finden sich in der Zeichnung:

1:Düse

2:Filament

3:Vorratsbehälter (hier exemplarisch nur einer dargestellt)

4:dynamischer Mischer

5:Schmelze des Build-Materials

6:Beschichtungseinheit

**Ansprüche**

1. Vorrichtung zur Herstellung ein- oder mehrfarbiger, dreidimensionaler Objekte aus Filamenten, aufweisend einen ersten Druckkopf, mit dem ein Support-Material gedruckt wird, und einen zweiten Druckkopf, mit dem ein Build-Material gedruckt wird, dem das Build-Material in Form eines Filaments zugefügt wird, wobei der zweite Druckkopf eine Düse, wiederum bestehend aus mindestens zwei Bereichen, aufweist, wobei in einem oberen Bereich der Düse das Polymer fest und in einem unteren geschmolzen ist, dadurch gekennzeichnet, dass in dem zweiten Druckkopf das Filament mit Additiven und/oder Farben aus mehreren Vorratsbehältern, ausgestattet mit Dosiervorrichtungen, beschichtet wird.

2. Vorrichtung gemäß Anspruch 1, dadurch gekennzeichnet, dass die Farben und/oder Additive vor dem Beschichten in einem an der Außenseite des Druckkopfes angebrachten dynamischen Mischer miteinander derart gemischt werden, dass dem dynamischen Mischer verschiedene Additive und/oder Farben zugeführt werden und dass die darin erzeugte Mischung in den Druckkopf weitergeleitet wird.

3. Vorrichtung gemäß Anspruch 2, dadurch gekennzeichnet, dass der Druckkopf zusätzlich zu dem dynamischen Mischer einen statischen Mischer im unteren Bereich der Düse aufweist.

4. Vorrichtung nach mindestens einem der Ansprüche 1 bis 3, dadurch gekennzeichnet, dass es sich bei den Farben mindestens um drei Primärfarben und Schwarz enthalten, und dass diese jeweils in einem getrennten Vorratsbehälter, ausgestattet mit Dosiervorrichtung, vorgelegt sind.

5. Vorrichtung nach mindestens einem der Ansprüche 1 bis 3, dadurch gekennzeichnet, dass es sich bei den Additiven um ein oder mehrere haftverbessernde Additive handelt, dass diese aus separaten Vorratsbehältern oder gemischt mit einer oder mehreren Farben vorgelegt sind, und dass mit diesen das jeweilige Build-Material und/oder Support-Material derart beschichtet wird, dass nach dem Aufschmelzen eine haftverbessernde Wirkung der Filamente untereinander erzielt wird.

6. Vorrichtung nach mindestens einem der Ansprüche 1 bis 5, dadurch gekennzeichnet, dass die Vorrichtung zur Herstellung dreidimensionaler Körper einen dritten Druckkopf aufweist, der genauso ausgestattet ist wie der zweite Druckkopf, und dass dieser dritte Druckkopf ein Filament für ein zweites Build-Material aufweist.

7. Vorrichtung nach Anspruch 6, dadurch gekennzeichnet, dass der zweite Druckkopf ein vor dem Färben ungefärbtes, nicht transparentes und der dritte Druckkopf ein vor dem Färben ungefärbtes, transparentes Build-Material enthält.

8. Vorrichtung nach Anspruch 6 oder 7, dadurch gekennzeichnet, dass beide Druckköpfe mit jeweils eigenen Mischvorrichtungen auf dieselben Farbvorratsbehälter zugreifen.

9. Vorrichtung nach mindestens einem der Ansprüche 1 bis 8, dadurch gekennzeichnet, dass es sich bei dem Build-Material um eine thermoplastisches Material handelt.

10. Vorrichtung nach Anspruch 9, dadurch gekennzeichnet, dass es sich bei dem Build-Material aus dem zweiten und/oder dem dritten optionalen Druckkopf um Acrynitril-Butadien-Styrol-Terpolymer (ABS), Polycarbonat (PC), Poly(meth)acrylat, Polyphenylensulfon (PPSU), HDPE, Polyetherimid (PEI), Polyetheretherketon (PEEK), Polymilchsäure (PLA) oder eine Mischung aus mindestens zwei dieser Polymere handelt.

11. Vorrichtung nach Anspruch 7, dadurch gekennzeichnet, dass es sich bei dem Build-Material aus der dritten Düse um ein Polymethacrylat oder Polycarbonat handelt.

12. Vorrichtung nach mindestens einem der Ansprüche 1 bis 11, dadurch gekennzeichnet, dass es sich bei dem Support-Material aus dem ersten Druckkopf um ein säure-, base- oder wasserlösliches Polymer handelt.

13. Vorrichtung nach mindestens einem der Ansprüche 1 bis 12, dadurch gekennzeichnet, dass der jeweilige Farbton in ein rechnerbasiertes CAD-Programm eingegeben wird, dass dabei eine Datei bereitstellt, die zusätzlich zu den Koordinaten die Farbinformation zur Fertigung und zur Regelung der Material- und Farbeinstellung enthält und damit durch Regelung der Dosiervorrichtungen und gesteuerte Zudosierung der jeweiligen Primärfarben bzw. Schwarz aus den Vorratsbehältern der jeweilige Farbton eingestellt wird.

14. Vorrichtung nach mindestens einem der Ansprüche 1 bis 13, dadurch gekennzeichnet, dass es weitere Farbvorratsbehälter gibt, die zusätzlich zu Farben oder Additiven weitere Pigmente enthalten.

15. Vorrichtung nach Anspruch 14, dadurch gekennzeichnet, dass es sich bei mindestens einem dieser Pigmente um Metallicpigmente handelt.

16. Vorrichtung nach Anspruch 14, dadurch gekennzeichnet, dass es sich bei mindestens einem dieser Pigmente um fluoreszierende Pigmente handelt.

17. Vorrichtung nach Anspruch 1 oder 14, dadurch gekennzeichnet, dass die Zusammensetzung durch Mikrowellen, Wärme, UV-Licht oder Magnetfelder aktivierbare Additive enthält und optional farblos ist.

18. Vorrichtung nach Anspruch 1 oder 14, dadurch gekennzeichnet, dass die Zusammensetzung Haftvermittler oder Klebstoffe enthält und die Zusammensetzung optional farblos ist.

**Zeichnung**




Fig.1

# INTERNATIONAL SEARCH REPORT

International application No
PCT/EP2012/056009

**A. CLASSIFICATION OF SUBJECT MATTER**
INV. B29C67/00 B01F5/00
ADD.

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
B29C B01F

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

EPO-Internal, WPI Data

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X<br><br>Y | US 6 129 872 A (JANG JUSTIN [US])<br>10 October 2000 (2000-10-10)<br>figures 1, 2<br>column 1, lines 6-10<br>column 7, lines 58-61<br>column 8, lines 1-2, 4-9<br>column 9, lines 36-38, 42-48<br>column 12, lines 46-52<br>column 16, lines 17-23<br>----- | 1,6,8-10<br><br>2-5,7,<br>11-18 |
| Y | US 2010/327479 A1 (ZINNIEL ROBERT L [US] ET AL) 30 December 2010 (2010-12-30)<br>figure 3<br>page 3, paragraph [0027]<br>page 5, paragraph [0040]<br>page 6, paragraph [0049]<br>-----<br>-/-- | 2-5,7,<br>11,13-18 |

[X] Further documents are listed in the continuation of Box C.

[X] See patent family annex.

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier application or patent but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 28 June 2012 | 06/07/2012 |

| Name and mailing address of the ISA/ | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2<br>NL - 2280 HV Rijswijk<br>Tel. (+31-70) 340-2040,<br>Fax: (+31-70) 340-3016 | Gasner, Benoit |

5

**INTERNATIONAL SEARCH REPORT**

International application No
PCT/EP2012/056009

C(Continuation). DOCUMENTS CONSIDERED TO BE RELEVANT

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| Y | US 2011/076495 A1 (BATCHELDER J SAMUEL [US] ET AL) 31 March 2011 (2011-03-31) page 3, paragraph [0047] ----- | 12 |

5

# INTERNATIONAL SEARCH REPORT

Information on patent family members

International application No
PCT/EP2012/056009

| Patent document cited in search report | | Publication date | Patent family member(s) | | | Publication date |
|---|---|---|---|---|---|---|
| US 6129872 | A | 10-10-2000 | NONE | | | |
| US 2010327479 | A1 | 30-12-2010 | EP | 2445701 | A1 | 02-05-2012 |
| | | | US | 2010327479 | A1 | 30-12-2010 |
| | | | WO | 2011005492 | A1 | 13-01-2011 |
| US 2011076495 | A1 | 31-03-2011 | CA | 2775078 | A1 | 07-04-2011 |
| | | | US | 2011076495 | A1 | 31-03-2011 |
| | | | WO | 2011041167 | A1 | 07-04-2011 |

# INTERNATIONALER RECHERCHENBERICHT

Internationales Aktenzeichen
PCT/EP2012/056009

**A. KLASSIFIZIERUNG DES ANMELDUNGSGEGENSTANDES**
INV. B29C67/00 B01F5/00
ADD.

Nach der Internationalen Patentklassifikation (IPC) oder nach der nationalen Klassifikation und der IPC

**B. RECHERCHIERTE GEBIETE**

Recherchierter Mindestprüfstoff (Klassifikationssystem und Klassifikationssymbole )
B29C B01F

Recherchierte, aber nicht zum Mindestprüfstoff gehörende Veröffentlichungen, soweit diese unter die recherchierten Gebiete fallen

Während der internationalen Recherche konsultierte elektronische Datenbank (Name der Datenbank und evtl. verwendete Suchbegriffe)

EPO-Internal, WPI Data

**C. ALS WESENTLICH ANGESEHENE UNTERLAGEN**

| Kategorie* | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
|---|---|---|
| X<br><br>Y | US 6 129 872 A (JANG JUSTIN [US])<br>10. Oktober 2000 (2000-10-10)<br>Abbildungen 1, 2<br>Spalte 1, Zeilen 6-10<br>Spalte 7, Zeilen 58-61<br>Spalte 8, Zeilen 1-2, 4-9<br>Spalte 9, Zeilen 36-38, 42-48<br>Spalte 12, Zeilen 46-52<br>Spalte 16, Zeilen 17-23<br>----- | 1,6,8-10<br><br>2-5,7,<br>11-18 |
| Y | US 2010/327479 A1 (ZINNIEL ROBERT L [US] ET AL) 30. Dezember 2010 (2010-12-30)<br>Abbildung 3<br>Seite 3, Absatz [0027]<br>Seite 5, Absatz [0040]<br>Seite 6, Absatz [0049]<br>-----<br>-/-- | 2-5,7,<br>11,13-18 |

[X] Weitere Veröffentlichungen sind der Fortsetzung von Feld C zu entnehmen [X] Siehe Anhang Patentfamilie

* Besondere Kategorien von angegebenen Veröffentlichungen :
"A" Veröffentlichung, die den allgemeinen Stand der Technik definiert, aber nicht als besonders bedeutsam anzusehen ist
"E" frühere Anmeldung oder Patent, die bzw. das jedoch erst am oder nach dem internationalen Anmeldedatum veröffentlicht worden ist
"L" Veröffentlichung, die geeignet ist, einen Prioritätsanspruch zweifelhaft erscheinen zu lassen, oder durch die das Veröffentlichungsdatum einer anderen im Recherchenbericht genannten Veröffentlichung belegt werden soll oder die aus einem anderen besonderen Grund angegeben ist (wie ausgeführt)
"O" Veröffentlichung, die sich auf eine mündliche Offenbarung, eine Benutzung, eine Ausstellung oder andere Maßnahmen bezieht
"P" Veröffentlichung, die vor dem internationalen Anmeldedatum, aber nach dem beanspruchten Prioritätsdatum veröffentlicht worden ist
"T" Spätere Veröffentlichung, die nach dem internationalen Anmeldedatum oder dem Prioritätsdatum veröffentlicht worden ist und mit der Anmeldung nicht kollidiert, sondern nur zum Verständnis des der Erfindung zugrundeliegenden Prinzips oder der ihr zugrundeliegenden Theorie angegeben ist
"X" Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann allein aufgrund dieser Veröffentlichung nicht als neu oder auf erfinderischer Tätigkeit beruhend betrachtet werden
"Y" Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann nicht als auf erfinderischer Tätigkeit beruhend betrachtet werden, wenn die Veröffentlichung mit einer oder mehreren Veröffentlichungen dieser Kategorie in Verbindung gebracht wird und diese Verbindung für einen Fachmann naheliegend ist
"&" Veröffentlichung, die Mitglied derselben Patentfamilie ist

| Datum des Abschlusses der internationalen Recherche | Absendedatum des internationalen Recherchenberichts |
|---|---|
| 28. Juni 2012 | 06/07/2012 |
| Name und Postanschrift der Internationalen Recherchenbehörde<br>Europäisches Patentamt, P.B. 5818 Patentlaan 2<br>NL - 2280 HV Rijswijk<br>Tel. (+31-70) 340-2040,<br>Fax: (+31-70) 340-3016 | Bevollmächtigter Bediensteter<br><br>Gasner, Benoit |

5

**INTERNATIONALER RECHERCHENBERICHT**

Internationales Aktenzeichen
PCT/EP2012/056009

**C. (Fortsetzung) ALS WESENTLICH ANGESEHENE UNTERLAGEN**

| Kategorie* | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
|---|---|---|
| Y | US 2011/076495 A1 (BATCHELDER J SAMUEL [US] ET AL) 31. März 2011 (2011-03-31)<br>Seite 3, Absatz [0047]<br>----- | 12 |

5

**INTERNATIONALER RECHERCHENBERICHT**

Angaben zu Veröffentlichungen, die zur selben Patentfamilie gehören

Internationales Aktenzeichen

PCT/EP2012/056009

| Im Recherchenbericht angeführtes Patentdokument | Datum der Veröffentlichung | Mitglied(er) der Patentfamilie | Datum der Veröffentlichung |
|---|---|---|---|
| US 6129872 A | 10-10-2000 | KEINE | |
| US 2010327479 A1 | 30-12-2010 | EP 2445701 A1 | 02-05-2012 |
| | | US 2010327479 A1 | 30-12-2010 |
| | | WO 2011005492 A1 | 13-01-2011 |
| US 2011076495 A1 | 31-03-2011 | CA 2775078 A1 | 07-04-2011 |
| | | US 2011076495 A1 | 31-03-2011 |
| | | WO 2011041167 A1 | 07-04-2011 |

**(12) NACH DEM VERTRAG ÜBER DIE INTERNATIONALE ZUSAMMENARBEIT AUF DEM GEBIET DES PATENTWESENS (PCT) VERÖFFENTLICHTE INTERNATIONALE ANMELDUNG**

**(19) Weltorganisation für geistiges Eigentum**
Internationales Büro

**(43) Internationales Veröffentlichungsdatum**
**15. November 2012 (15.11.2012)**

WIPO | PCT

**(10) Internationale Veröffentlichungsnummer**
**WO 2012/152511 A1**

**(51) Internationale Patentklassifikation:** ***B29C 67/00*** (2006.01) ***B01F 5/00*** (2006.01)

**(21) Internationales Aktenzeichen:** PCT/EP2012/056010

**(22) Internationales Anmeldedatum:** 3. April 2012 (03.04.2012)

**(25) Einreichungssprache:** Deutsch

**(26) Veröffentlichungssprache:** Deutsch

**(30) Angaben zur Priorität:**
10 2011 075 544.6 10. Mai 2011 (10.05.2011) DE

**(71) Anmelder** *(für alle Bestimmungsstaaten mit Ausnahme von US)*: **EVONIK RÖHM GMBH** [DE/DE]; Kirschenallee, 64293 Darmstadt (DE).

**(72) Erfinder; und**
**(75) Erfinder/Anmelder** *(nur für US)*: **PRIDÖHL, Markus** [DE/DE]; Robert-Koch-Weg 7, 63538 Großkrotzenburg (DE). **SCHMITT, Günter** [DE/DE]; Nach dem Wieschen 3, 64291 Darmstadt (DE). **POPPE, Dirk** [DE/DE]; Röderbergweg 172, 60385 Frankfurt am Main (DE). **KOHLSTRUK, Stephan** [DE/DE]; Am alten Stadion 33, 48249 Dülmen (DE). **HAMMANN, Benjamin** [DE/DE]; Lettigkautweg 25, 60599 Frankfurt (DE). **CREMER, Sonja** [DE/DE]; Am Weiher 6, 63834 Sulzbach (DE). **BEKS, Kris** [BE/BE]; Daalstraat 58A, B-3740 Bilzen (Rosmeer) (BE). **DEWAELHEYNS, Ludo** [BE/BE]; Genkerweg 15, B-3690 Zutendaal (BE).

**(81) Bestimmungsstaaten** *(soweit nicht anders angegeben, für jede verfügbare nationale Schutzrechtsart)*: AE, AG, AL, AM, AO, AT, AU, AZ, BA, BB, BG, BH, BR, BW, BY, BZ, CA, CH, CL, CN, CO, CR, CU, CZ, DE, DK, DM, DO, DZ, EC, EE, EG, ES, FI, GB, GD, GE, GH, GM, GT, HN, HR, HU, ID, IL, IN, IS, JP, KE, KG, KM, KN, KP, KR, KZ, LA, LC, LK, LR, LS, LT, LU, LY, MA, MD, ME, MG, MK, MN, MW, MX, MY, MZ, NA, NG, NI, NO, NZ, OM, PE, PG, PH, PL, PT, QA, RO, RS, RU, RW, SC, SD, SE, SG, SK, SL, SM, ST, SV, SY, TH, TJ, TM,

*[Fortsetzung auf der nächsten Seite]*

**(54) Title**: MULTICOLOURED FUSED DEPOSITION MODELLING PRINT

**(54) Bezeichnung** : MEHRFARBIGER FUSED DEPOSITION MODELING DRUCK




Fig.1

**(57) Abstract**: A fused deposition modelling method for producing multicoloured three-dimensional objects, in particular a 3D printing method with which 3D objects can be produced with a particularly good colour image in comparison with the prior art. The method is based on the concept that the polymer strand (2) that is used for producing the actual object is coloured in the nozzle (1), and that a mixing device is used for this, comprising one or more injection needles, a static mixer or a dynamic mixer.

**(57) Zusammenfassung**: Ein Fused Deposition Modeling-Verfahren zur Herstellung mehrfarbiger dreidimensionaler Objekte, insbesondere ein 3D-Druckverfahren mit dem gegenüber dem Stand der Technik 3D-Objekte mit besonders gutem Farbbild hergestellt werden können. Das Verfahren basiert darauf, dass der zur Herstellung des eigentlichen Objekts verwendete Polymerstrang (2) in der Düse (1) eingefärbt wird, und dass dabei eine Mischvorrichtung, bei der es sich um ein mehrere Injektionsnadeln, einen statischen Mischer oder einen dynamischen Mischer handelt, verwendet wird.

WO 2012/152511 A1

TN, TR, TT, TZ, UA, UG, US, UZ, VC, VN, ZA, ZM, ZW.

**(84) Bestimmungsstaaten** *(soweit nicht anders angegeben, für jede verfügbare regionale Schutzrechtsart)*: ARIPO (BW, GH, GM, KE, LR, LS, MW, MZ, NA, RW, SD, SL, SZ, TZ, UG, ZM, ZW), eurasisches (AM, AZ, BY, KG, KZ, MD, RU, TJ, TM), europäisches (AL, AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HR, HU, IE, IS, IT, LT, LU, LV, MC, MK, MT, NL, NO, PL, PT, RO, RS, SE, SI, SK, SM, TR), OAPI (BF, BJ, CF, CG, CI, CM, GA, GN, GQ, GW, ML, MR, NE, SN, TD, TG).

**Veröffentlicht**:

— *mit internationalem Recherchenbericht (Artikel 21 Absatz 3)*

# Mehrfarbiger Fused Deposition Modeling Druck

## Gebiet der Erfindung

Die Erfindung betrifft ein modifiziertes Fused Deposition Modeling-Verfahren zur Herstellung mehrfarbiger dreidimensionaler Objekte. Insbesondere betrifft die Erfindung ein 3D-Druckverfahren, mit dem gegenüber dem Stand der Technik 3D-Objekte mit besonders gutem Farbbild hergestellt werden können. Das erfindungsgemäße Verfahren basiert darauf, dass der zur Herstellung des eigentlichen Objekts verwendete Polymerstrang in der Düse eingefärbt wird, und dass dabei eine Mischvorrichtung, bei der es sich um ein mehrere Injektionsnadeln, einen statischen Mischer oder einen dynamischen Mischer handelt, verwendet wird.

## Stand der Technik

Rapid-Prototyping bzw. Rapid-Manufacturing-Verfahren sind Fertigungsverfahren, die das Ziel haben, vorhandene dreidimensionale CAD-Daten möglichst ohne manuelle Umwege oder Formen direkt und schnell in Werkstücke umzusetzen.

Unter den Rapid-Prototyping-Verfahren gibt es inzwischen diverse Verfahren. Diese lassen sich in zwei Gruppen unterteilen: Laserbasierte und Verfahren ohne Verwendung eines Lasers.

Das bekannteste laserbasierte und gleichzeitig älteste 3D-Druckverfahren ist die Stereolithographie (SLA). Hierbei wird eine flüssige Zusammensetzung eines strahlenhärtbaren Polymers mit einem Laser schichtweise ausgehärtet. Dem Fachmann ist klar ersichtlich, dass ein auf diese Weise produziertes Werkstück nur nachträglich an der Oberfläche koloriert werden kann. Dies ist aufwendig und zeitintensiv.

Ähnlich ist das Selective Laser Sintering Verfahren (SLS), bei dem ein pulverförmiger Rohstoff, wie z.B. ein Thermoplast oder ein sinterfähiges Metall, mittels eines Lasers analog zum SLA Schicht für Schicht selektiv gesintert wird. Auch mit diesem Verfahren kann man im ersten Verfahrensschritt nur einfarbige

oder unspezifisch gefärbte 3D-Objekte erhalten. Das gleiche gilt für das dritte laserbasierte Verfahren „Laminated Object Manufacturing“, bei dem eine mit Klebstoff versehene Papierbahn oder Kunststoffolie Schicht für Schicht aufeinander verklebt und mittels Laser geschnitten wird. Das nachträgliche Färben eines Objekts ist zum Beispiel in US 6,713,125 beschrieben.

Ein bekanntes 3D-Druckverfahren, das auch zur Herstellung mehrfarbiger Objekte verwendet werden kann, ist das UV-Inkjet-Verfahren. Bei diesem dreistufigen Verfahren wird ein pulverförmiges Material in dünnen Schichten aufgetragen, auf diese wird eine UV-härtbare Flüssigkeit in Form der jeweiligen Schicht des späteren dreidimensionalen Produktes gedruckt und schließlich wird die bedruckte Schicht mit einer UV-Quelle ausgehärtet. Diese Verfahrensschritte werden Schicht für Schicht wiederholt.

In EP 1 475 220 werden verschieden gefärbte Flüssigkeiten mit Härter bereitgehalten und in WO 2008/077850 zusätzlich in einer Kammer direkt vor dem Drucken vermischt. So ist eine selektive Färbung möglich. Durch die Mischkammer sind jedoch keine scharfen Farbübergänge möglich. Ferner ist ein solches Verfahren an den Grenzen der Aushärtung unscharf, was zu einer weniger glatten Oberfläche und unter Umständen zu einer ungleichmäßigen Färbung führen kann. In WO 01/26023 werden zwei Druckköpfe mit verschiedenfarbigen Härterzusammensetzungen, die zu Objektteilen mit unterschiedlichen Elastizitätseigenschaften führen beschrieben. Mehr als zwei Farben sind jedoch nicht beschrieben.

Eine Variante, bei der anstatt mit UV-Licht mit einer Wärmestrahlung ausgehärtet wird und gleichfalls verschiedenfarbige Härterzusammensetzungen verwendet werden, ist in WO 2008/075450 beschrieben.

In GB 2419679 ist ein Verfahren offenbart, bei dem verschieden gefärbte Polymerteilchen selektiv aufgetragen und bei verschiedenen Wellenlängen ausgehärtet werden können. Dieses Verfahren ist äußerst aufwendig und führt gleichzeitig zu einem unscharfen Farbbild.

In einem dem Inkjet-3D-Druck ähnlichen Verfahren nach der WO 2009/139395 wird eine farbige Flüssigkeit schichtweise aufgetragen und selektiv mit einer zweiten Flüssigkeit, die zu einer Härterreaktion mit der ersten Flüssigkeit führt, bedruckt. Ein solches Verfahren kann Farben nur schichtweise aufbauen,

davon abgesehen, dass es zwischen den nicht gehärteten Flüssigkeitsschichten zu Vermischungen kommen kann.

Ein weiteres Verfahren stellt das Three Dimension Printing (TDP) dar. Bei diesem Verfahren werden analog zu den Inkjet-Verfahren pulverförmige Materialien, bei denen es sich jedoch bevorzugt um Keramiken handelt, mit einer der Schmelze eines thermoplastischen Polymers Schicht für Schicht selektiv durchtränkt. Nach jeder Druckschicht muss eine neue Schicht des pulverförmigen Materials aufgebracht werden. Beim Erstarren des Thermoplasten wird das dreidimensionale Objekt gebildet.

Bei dem in US 2004/0251574 beschriebenen Verfahren wird anschließend an den Druck des Thermoplasten selektiv mit einer Farbe gedruckt. Vorteil dieses Verfahrens ist, dass sehr selektiv gedruckt werden kann. Nachteil dieses Verfahrens jedoch ist, dass kein gleichmäßiges und leuchtendes Farbbild erreicht werden kann, da ein gleichmäßiges Eindringen der Farbe in den Composit aus dem (Keramik)Pulver und dem Bindemittel nicht erreicht werden kann.

Bei dem in EP 1 491 322 beschriebenen Verfahren werden zwei unterschiedliche Materialien gedruckt. Das erste enthält das Bindemittel und eine Farbe, die bei Kontakt mit dem zweiten Material ausgefällt wird und damit selektiv die Oberfläche einfärbt. Auf diese Weise können besseren Farbeigenschaften an der Objektoberfläche erzeugt werden. Probleme stellen jedoch die gleichmäßige Vermischung der beiden Materialien und der aufwendige zweistufige Prozess dar. Wie und ob ein gutes Farbbild bei einem Mehrfarbdruck gewährleistet werden kann, ist nicht beschrieben.

In US 6,401,002 werden verschiedene Flüssigkeiten mit unterschiedlichen Farben und dem Bindemittel verwendet. Diese Flüssigkeiten werden entweder getrennt aufgetropft oder über Leitungen in einer Düse vor dem Auftropfen zusammengeführt. Der Fachmann weiß, dass beide Vorgehen zu nicht optimalen Farbbildern führen. Bei ersterem findet die Mischung der Farben in viskosen Flüssigkeiten auf der Oberfläche statt. Diese Mischung erfolgt so nur selten vollständig. Beim zweiten Vorgehen können Druckunterschiede in den Leitungen zu sehr starken Farbschwankungen führen.

Das bezüglich der Herstellung von dreidimensionalen Objekten mittels eines Druckverfahrens materialsparenste und auch in Bezug auf die maschinelle Ausgestaltung günstigste Verfahren ist das Fused Deposition Modeling (FDM). Dies verfahren wird mit kleinen Abwandlungen auch Selective Deposition Modeling (SDM) genannt.

Bei der FDM-Methode werden zwei unterschiedliche Polymerfäden in einer Düse aufgeschmolzen und selektiv gedruckt. Bei dem einen Material handelt es sich um ein Support-Material, das nur an Stellen benötigt wird, über denen später z.B. ein überhängender Teil des 3D-Objektes, der während des Druckvorgangs gestützt werden muss, gedruckt wird. Dieses Support-Material kann später, z.B. durch Lösen in Säuren, Basen oder Wasser entfernt werden. Das andere Material (das Build-Material) formt das eigentliche 3D-Objekt. Auch hier erfolgt der Druck in der Regel schichtweise. Zum ersten Mal wurde das FDM-Verfahren in US 5,121,329 beschrieben. Das Färben allgemein wird in US 2000/20111707 erwähnt, nicht jedoch näher ausgeführt.

Bei dem in EP 1 558 440 beschriebenen Verfahren werden die einzelnen Schichten in einem anschließenden Verfahrensschritt farbig bedruckt. Dieses Verfahren ist langsam und führt bei dem bedrucken der bereits härtenden Thermoplasten zu schlecht aufgelösten Farbbildern.

Bei der farbigen 3D-Druck-Methode nach US 6,165,406 werden für jede einzelne Farbe getrennte Düsen verwendet. Mischfarben sind somit jedoch nur sehr eingeschränkt möglich und das Farbbild wird sehr einfach.

Bei der in US 7,648,664 beschriebenen Variante des FDM werden verschieden gefärbte Build-Materialien in Granulatform eingesetzt, getrennt voneinander aufgeschmolzen und je nach Farbe mittels eines zwischengeschalteten Extruders miteinander vermischt, bevor es verdruckt wird. Diese Methode ist apparativ sehr aufwendig und viele Vorteile des FDM gehen verloren.

In einem sehr ähnlichen System gemäß EP 1 432 566 erfolgt die Vermischung der geschmolzenen Granulate direkt im geheizten Druckkopf, bevor diese direkt verdruckt werden. Diese Mischung kann keinesfalls vollständig erfolgen und die Qualität des Druckbildes ist entsprechend schlecht. Weiterhin hat man auch

hier den Nachteil, dass man Granulate oder Pulver benutzen muss und diese in der Maschine getrennt gelagert und geschmolzen werden müssen.

In US 6,129,872 ist ein Verfahren beschrieben, bei dem das Build-Material in einer Düse aufgeschmolzen wird und am Ende der Düse zu der Schmelze verschiedene Farbmischungen selektiv zudosiert werden. Dies führt jedoch zu keiner ausreichenden Durchmischung und zu einem unsauberen Farbbild.

**Aufgabe**

Aufgabe war es ein 3D-Druckverfahren zur Verfügung zu stellen, mit dem selektiv gefärbte, mehrfarbige dreidimensionale Objekte mit einem scharfen und klaren Farbbild hergestellt werden können.

Es war weiterhin Aufgabe, ein günstiges und schnell durchführbares 3D-Druckverfahren zum druck mehrfarbiger Objekte zur Verfügung zu stellen.

Eine weitere Aufgabe war es, farbige Objekte darstellen zu können, wobei die Farbe nicht erst durch einen zusätzlichen Verarbeitungsschritt eingebracht werden soll.

Weitere nicht explizit genannte Aufgaben ergeben sich aus dem Gesamtzusammenhang der nachfolgenden Beschreibung, Ansprüche und Beispiele.

**Lösung**

Unter dem Begriff Druckkopf wird im Rahmen dieser Erfindung die gesamte Vorrichtung zum Fördern, Schmelzen, Färben und Auftragen eines Filaments in einem FDM-3D-Druckverfahren verstanden.

Unter dem Begriff Zusammensetzung wird im Rahmen dieser Erfindung die Zusammensetzung verstanden, die erfindungsgemäß zum Einfärben und/oder Additivieren des Polymerstrangs verwendet wird. Die Zusammensetzung enthält Farben, Pigmente und/ oder Additive.

Unter dem Begriff Filament wird im Rahmen der vorliegenden Erfindung die Rohform der Build- bzw. Supportmaterialien in Form eines Stranges verstanden. Dieses Filament wird in dem Druckkopf erfindungsgemäß aufgeschmolzen und danach zu einem 3D-Objekt verdruckt. Bei dem Filament handelt es sich um ein thermoplastisch verarbeitbares Material. In der Regel ist das Filament ein Polymerfilament, jedoch auf solche nicht eingeschränkt. Auch können Polymerfilamente beispielsweise nur teilweise aus einem thermoplastisch polymeren Matrixmaterial und weiteren Füllstoffen oder z.B. Metallen zusammengesetzt sein.

Gelöst wurden die Aufgaben durch Bereitstellen einer neuartigen Vorrichtung zur Herstellung ein- oder mehrfarbiger, dreidimensionaler Objekte aus Filamenten. Insbesondere handelt es sich dabei um eine Vorrichtung, die nach dem Fused Deposition Modeling (FDM)Verfahren arbeitet. Diese Vorrichtung weist erfindungsgemäß mindestens einen ersten Druckkopf, mit dem ein Support-Material gedruckt wird, und einen zweiten Druckkopf, mit dem ein Build-Material gedruckt wird, welches in Form eines Filaments zugefügt wird, auf. Dabei weist der zweite Druckkopf eine Düse, wiederum bestehend aus mindestens zwei Bereichen, auf. In dem ersten, oberen Bereich der Düse ist das Polymer fest und in dem zweiten, unteren liegt das Polymer geschmolzen vor. Dabei ist der Übergang zwischen dem festen Zustand im oberen Bereich und dem geschmolzenen Zustand im unteren Bereich innerhalb des Druckkopfes kontinuierlich.

Insbesondere ist die erfindungsgemäße Vorrichtung dadurch gekennzeichnet, dass dem zweiten Druckkopf Additive und/oder Farben aus mehreren Vorratsbehältern, ausgestattet mit Dosiervorrichtungen, zugeführt werden, und dass der zweite Druckkopf eine Mischvorrichtung zum Vermischen dieser Additive und/oder Farben aufweist.

Bezüglich dieser Mischvorrichtung sind verschiedene Ausführungsformen denkbar. In einer ersten Ausführungsform ist die Vorrichtung dadurch gekennzeichnet, dass es sich bei der Mischvorrichtung um einen statischen Mischer in besagten unteren Bereich der Düse handelt, und dass die Farben und/oder Additive aus den Vorratsbehältern oberhalb des statischen Mischers der Schmelze zudosiert werden. In dieser Ausführungsform erfolgt eine Vermischung der jeweils zugeführten Farben gleichzeitig mit der Vermischung dieser mit der Polymerschmelze und man erhält eine homogen gefärbte und/oder additivierte Polymerschmelze.

In einer zweiten Ausführungsform handelt es sich bei der Mischvorrichtung um einen an der Außenseite des Druckkopfes angebrachten dynamischen Mischer. Diesem dynamischen Mischer werden verschiedene Additive und/oder Farben zunächst zugeführt. Die im dynamischen Mischer erzeugte Mischung wird darauf in den Druckkopf weitergeleitet.

Diese zweite Ausführungsform kann in zwei unterschiedlichen Varianten vorliegen. In einer ersten ist der dynamische Mischer derart an der Düse angebracht, dass die Mischung in die Polymerschmelze im unteren Bereich der Düse geleitet wird.

In einer zweiten Variante ist der dynamische Mischer am Druckkopf oberhalb der Düse angebracht, und die Mischung aus Farben und/oder Additiven wird auf die Oberfläche des festen Filaments aufgetragen. Eine Verteilung der Mischung kann dabei teilweise durch Diffusion in die Schmelze erfolgen. Eine homogene Verteilung in der Schmelze ist darüber hinaus nicht zwingend nötig, da die spätere Oberfläche des dreisimensionalen Objektes ausschließlich von der Oberfläche des Schmelzestrangs gebildet wird. Mit dieser Variante ist es somit insbesondere möglich, ein Verfahren zur Verfügung zu stellen, das mit einem geringeren Farbverbauch verwendet werden kann. Entsprechendes gilt

auch für Additive, vor allem solche, die eine Haftungsverbesserung zwischen den einzelnen Schichten im dreidimensionalen Objekt bewirken sollen. Diese werden ausschließlich an der Oberfläche des Schmelzestrangs benötigt.

In einer dritten Ausführungsform ist eine Kombination der ersten beiden Ausführungsformen denkbar. In dieser Ausführungsform weist der Druckkopf zusätzlich zu dem dynamischen Mischer gemäß der zweiten Ausführungsform einen statischen Mischer gemäß der ersten Ausführungsform im unteren Bereich der Düse auf.

Eine vierte Ausführungsform ist dadurch gekennzeichnet, dass die Additive und/oder Farben mittels Mikroinjektionsnadeln, bevorzugt pulsierend und in einem Winkel ≤90° in die Schmelze einstechend, in die Schmelze in besagten unteren Bereich der Düse injiziert, dosiert und verteilt werden. Der besagte Winkel ist der Winkel, der zwischen den Mikroinjektionsnadeln und dem Filament, bzw. der daraus gebildeten Schmelze in Transportrichtung des Filaments gebildet wird. Dadurch, dass dieser Winkel kleiner 90° ist, erreicht man zusätzlich einen Transporteffekt des Filaments bzw. der Schmelze. Mit der bei dieser Ausführungsform verwendeten Frequenz kann insbesondere die Verteilung und/oder die Konzentration der jeweiligen Farbkomponente gesteuert werden. Die Anzahl der Nadeln ergibt sich dem Fachmann insbesondere aus der Wahl des gewählten Farbsystems.

Bei den in der Vorrichtung verwendeten Farben handelt es sich um Zusammensetzungen verschiedener Farben, wie z.B. um drei Primärfarben wie z.B. die subtraktive Mischung Magenta, Cyan und Blau bzw. Gelb oder die additive Mischung der Lichtfarben Rot, Grün und Blau. bei der Verwendung von drei Primärfarben kann bevorzugt zusätzlich Schwarz als vierte „Farbe“ hinzukommen. Alternativ kann in Abhängigkeit des Build-Material auch weiß als vierte oder fünfte „Farbe“ eingesetzt werden. Für true color Systeme können jedoch je nach System auch bis zu zwanzig Farben benötigt werden.

Die aufgeführten Farbsysteme unterschiedlicher Zusammensetzungen sind dem Fachmann bereits lange aus dem 2D-Druck bekannt. Alle verwendeten Farben liegen jeweils in getrennten Vorratsbehältern, jeweils ausgestattet mit

einer eigenen Dosiervorrichtung, vor und werden von dort je nach Ausführungsform in die Düse oder den dynamischen Mischer dosiert.

In einer besonderen Ausführungsform weist die Vorrichtung zur Herstellung dreidimensionaler Körper einen dritten Druckkopf auf. Dieser optionale dritte Druckkopf ist genauso ausgestattet wie der zweite Druckkopf. Insbesondere wird mittels diesen dritten Druckkopfs ein Filament für ein zweites Build-Material verdruckt, welches sich von dem ersten Build-Material unterscheidet.

Zum Beispiel kann der zweite Druckkopf ein vor dem Färben ungefärbtes, nicht transparentes und der dritte Druckkopf ein vor dem Färben ungefärbtes, transparentes Build-Material enthalten. Bevorzugt verfügen beide Druckköpfe dabei jeweils über eigene Mischvorrichtungen, die auf dieselben Vorratsbehälter zugreifen. Die Farbzusammensetzungen können optional auch Füllstoffe enthalten, die beim Druck dem transparenten Build-Material bei Bedarf eine nicht transparente Optik verleihen.

Bevorzugt handelt es sich bei den Build-Materialien jeweils um thermoplastisches Material. Bevorzugt handelt es sich bei dem Build-Material aus dem zweiten und/oder dem dritten optionalen Druckkopf um Acrynitril-Butadien-Styrol-Terpolymer (ABS), Polycarbonat (PC), Poly(meth)acrylat, Polyphenylensulfon (PPSU), HDPE, Polyetherimid (PEI), Polyetheretherketon (PEEK), Polymilchsäure (PLA) oder eine Mischung aus mindestens zwei dieser Polymere oder eine Mischung, die mindestens zu 50 Gew% aus einem dieser genannten Polymere zusammengesetzt ist. Die Schreibweise (Meth)acrylat bedeutet hier sowohl Methacrylat, wie z.B. Methylmethacrylat, Ethylmethacrylat usw., als auch Acrylate, wie z.B. Ethylhexylacrylat, Ethylacrylat usw., sowie Mischungen aus beiden.

Bezüglich des zweiten, optionalen Build-Material aus der dritten Düse sind vor allem Polymethacrylat oder Polycarbonat bevorzugt.

Bezüglich des Support-Materials aus dem ersten Druckkopf sollte es sich bevorzugt um ein säure-, base- oder wasserlösliches Polymer handeln.

Die erfindungsgemäße Vorrichtung zur Verwendung in einem Fused Deposition Modeling (FDM)Verfahren entspricht im Allgemeinen dem Stand der Technik und ist damit in der Regel derart gestaltet, dass der jeweilige Farbton in ein rechnerbasiertes CAD-Programm eingegeben wird und dass dabei eine Datei bereitstellt, die zusätzlich zu den Koordinaten die Farbinformation zur Fertigung und zur Regelung der Material- und Farbeinstellung enthält. Dabei wird durch Regelung der Dosiervorrichtungen und gesteuerte Zudosierung der jeweiligen Primärfarben bzw. Schwarz aus den Vorratsbehältern der jeweilige Farbton eingestellt.

Optional können der zweite bzw. der dritte Druckkopf der Vorrichtung weitere Vorratsbehälter, die zusätzlich zu Schwarz und den Farben bzw. Primärfarben weitere Pigmente enthalten, aufweisen. Bei diesen weiteren Pigmenten kann es sich z.B. um Metallicpigmente und/oder fluoreszierende Pigmente handeln.

Wie bereits ausgeführt können die Vorratsbehälter auch Additive enthalten. Dabei können die Zusammensetzungen durch Mikrowellen, Wärme, UV-Licht oder Magnetfelder aktivierbare Additive, Haftvermittler oder Klebstoffe enthalten. Diese können entweder einer oder allen Zusammensetzungen zugesetzt sein oder aus getrennten Vorratsbehältern zugesetzt werden. In letzterem Fall sind diese Zusammensetzungen farblos.

Alternativ oder zusätzlich kann es sich auch um weitere Additive zur Verbesserung der Haptik, Schmutz abweisende bzw. die Kratzfestigkeit verbessernde Beschichtungsbestandteile oder Additive zur Oberflächenstabilisierung, wie z.B. UV-Stabilisatoren, handeln. Für industrielle Anwendungen sind darüber hinaus Additive zur Verbesserung der Wärmeleitfähigkeit bzw. der elektrischen Leitfähigkeit oder Antistatika von Interesse.

Die konkrete Auswahl der entsprechenden Additive ergibt sich dem Fachmann aus der Zusammensetzung und dem verwendeten Build-Material.

Darüber hinaus können ein oder mehrere Vorratsbehälter auch Vernetzer, Initiatoren oder Beschleuniger enthalten, die nach dem Mischen mit dem Filamentmaterial aus Druckkopf 2 und/oder 3 zu einer Vernetzung führen, so dass man ein ganz oder teilweise elastomeres oder duroplastisches dreidimensionales Objekt erhält. Bei dem Zusammentreffen dieser Additive mit dem Thermoplasten des Filaments erfolgt eine chemische Reaktion, die zur Aushärten der Matrix führt.

Alternativ können die Additive aus verschiedenen Vorratsbehältern nach dem Vermischen selbst miteinander reagieren und so z. B. zu einer chemischen Vernetzung an der Filamentoberfläche führen und/oder zu einer Haftverbesserung der Filamente nach dem Druck untereinander.

Üblicherweise handelt es sich bei den Vorratsbehältern um bewegliche Kartuschen, wie sie zum Farbdruck aus dem Stand der Technik für 2-D-Tintenstrahl-Farbdrucker bekannt sind. Diese können derart gestaltet sein, dass sie einfach und individuell ausgetauscht bzw. erneuert werden können.

Zu den Zeichnungen:

Fig.1 stellt exemplarisch eine Ausführungsform dar, bei der die einzelnen Farben getrennt zum aufschmelzenden Build-Material dosiert und anschließend durch einen statischen Mischer mit der Schmelze des Build-Materials gemischt werden. Folgende Indizes finden sich in der Zeichnung:

1:Düse

2:Filament

3:Vorratsbehälter (hier exemplarisch nur einer dargestellt)

4:statischer Mischer

5:Schmelze des Build-Materials

Fig.2 stellt exemplarisch eine Ausführungsform dar, bei der das nicht geschmolzene Filament oberflächlich beschichtet wird und die Farb- und/oder

Additivzusammensetzung vorhergehend in einem dynamischen Mischer homogen vermischt wird. Folgende Indizes finden sich in der Zeichnung:

1:Düse

2:Filament

3:Vorratsbehälter (hier exemplarisch nur einer dargestellt)

4:dynamischer Mischer

5:Schmelze des Build-Materials

6:Beschichtungseinheit

Fig.3 stellt exemplarisch eine Ausführungsform dar, bei der die Farben mittels pulsierender Mikronadeln in die Schmelze bzw. genauer den schmelzenden Strang des Build-Materials gegeben werden. Folgende Indizes finden sich in der Zeichnung:

1:Filament

2:Düse

3a:Vorratsbehälter 1

3b:Vorratsbehälter 2

(hier exemplarisch nur zwei Vorratbehälter dargestellt)

4:Injektionsnadeln

5:Schmelze des Build-Materials

**Ansprüche**

1. Vorrichtung zur Herstellung ein- oder mehrfarbiger, dreidimensionaler Objekte aus Filamenten, aufweisend einen ersten Druckkopf, mit dem ein Support-Material gedruckt wird, und einen zweiten Druckkopf, mit dem ein Build-Material gedruckt wird, dem das Build-Material in Form eines Filaments zugefügt wird, wobei der zweite Druckkopf eine Düse, wiederum bestehend aus mindestens zwei Bereichen, aufweist, wobei in einem oberen Bereich der Düse das Polymer fest und in einem unteren geschmolzen ist, dadurch gekennzeichnet, dass dem zweiten Druckkopf Additive und/oder Farben aus mehreren Vorratsbehältern, ausgestattet mit Dosiervorrichtungen, zugeführt werden, und dass der zweite Druckkopf eine Mischvorrichtung zum Vermischen der Additive und/oder Farben aufweist.

2. Vorrichtung gemäß Anspruch 1, dadurch gekennzeichnet, dass es sich bei der Mischvorrichtung um einen statischen Mischer in besagten unteren Bereich der Düse handelt, und dass die Farben aus den Vorratsbehältern oberhalb des statischen Mischers der Schmelze zudosiert werden.

3. Vorrichtung gemäß Anspruch 1, dadurch gekennzeichnet, dass es sich bei der Mischvorrichtung um einen an der Außenseite des Druckkopfes angebrachten dynamischen Mischer handelt, dass diesem verschiedene Additive und/oder Farben zugeführt werden und dass die im dynamischen Mischer erzeugte Mischung in den Druckkopf weitergeleitet wird.

4. Vorrichtung gemäß Anspruch 3, dadurch gekennzeichnet, dass der dynamische Mischer an der Düse angebracht ist, und dass die Mischung auf das Filament im oberen Bereich der Düse oder in die Polymerschmelze im unteren Bereich der Düse geleitet wird.

5. Vorrichtung gemäß Anspruch 3, dadurch gekennzeichnet, dass der dynamische Mischer am Druckkopf oberhalb der Düse angebracht ist, und die Mischung auf die Oberfläche des Filaments aufgetragen wird.

6. Vorrichtung gemäß mindestens einem der Ansprüche 3 bis 5, dadurch gekennzeichnet, dass der Druckkopf zusätzlich zu dem dynamischen Mischer einen statischen Mischer im unteren Bereich der Düse aufweist.

7. Vorrichtung gemäß Anspruch 1, dadurch gekennzeichnet, dass die Additive und/oder Farben mittels Mikroinjektionsnadeln, bevorzugt pulsierend, in einem Winkel ≤90° in die Schmelze einstechenden Mikroinjektionsnadeln in die Schmelze in besagten unteren Bereich der Düse injiziert, dosiert und verteilt werden.

8. Vorrichtung nach mindestens einem der Ansprüche 1 bis 7, dadurch gekennzeichnet, dass es sich bei den Farben mindestens um drei Primärfarben und Schwarz handelt, und dass diese jeweils in einem getrennten Vorratsbehälter, ausgestattet mit Dosiervorrichtung, vorgelegt sind.

9. Vorrichtung nach mindestens einem der Ansprüche 1 bis 8, dadurch gekennzeichnet, dass die Vorrichtung zur Herstellung dreidimensionaler Körper einen dritten Druckkopf aufweist, der genauso ausgestattet ist wie der zweite Druckkopf, und dass dieser dritte Druckkopf ein Filament für ein zweites Build-Material aufweist.

10. Vorrichtung nach Anspruch 9, dadurch gekennzeichnet, dass der zweite Druckkopf ein vor dem Färben ungefärbtes, nicht transparentes und der dritte Druckkopf ein vor dem Färben ungefärbtes, transparentes Build-Material enthält.

11. Vorrichtung nach Anspruch 9 oder 10, dadurch gekennzeichnet, dass beide Druckköpfe mit jeweils eigenen Mischvorrichtungen auf dieselben Vorratsbehälter zugreifen.

12. Vorrichtung nach mindestens einem der Ansprüche 1 bis 11, dadurch gekennzeichnet, dass es sich bei den Build-Materialen um thermoplastisches Material handelt.

13. Vorrichtung nach mindestens einem der Ansprüche 1 bis 12, dadurch gekennzeichnet, dass es sich bei dem Build-Material aus dem zweiten und/oder dem dritten optionalen Druckkopf um Acrynitril-Butadien-Styrol-Terpolymer (ABS), Polycarbonat (PC), Poly(meth)acrylat, Polyphenylensulfon (PPSU), HDPE, Polyetherimid (PEI), Polyetheretherketon (PEEK), Polymilchsäure (PLA) oder eine Mischung aus mindestens zwei dieser Polymere handelt.

14. Vorrichtung nach Anspruch 10, dadurch gekennzeichnet, dass es sich bei dem Build-Material aus der dritten Düse um ein Polymethacrylat oder Polycarbonat handelt.

15. Vorrichtung nach mindestens einem der Ansprüche 1 bis 14, dadurch gekennzeichnet, dass es sich bei dem Support-Material aus dem ersten Druckkopf um ein säure-, base- oder wasserlösliches Polymer handelt.

16. Vorrichtung nach mindestens einem der Ansprüche 1 bis 15, dadurch gekennzeichnet, dass der jeweilige Farbton in ein rechnerbasiertes CAD-Programm eingegeben wird, dass dabei eine Datei bereitstellt, die zusätzlich zu den Koordinaten die Farbinformation zur Fertigung und zur Regelung der Material- und Farbeinstellung enthält und damit durch Regelung der Dosiervorrichtungen und gesteuerte Zudosierung der jeweiligen Primärfarben bzw. Schwarz aus den Vorratsbehältern der jeweilige Farbton eingestellt wird.

17. Vorrichtung nach mindestens einem der Ansprüche 1 bis 16, dadurch gekennzeichnet, dass es weitere Vorratsbehälter gibt, die zusätzlich zu Schwarz und den Primärfarben weitere Farben enthalten.

18. Vorrichtung nach Anspruch 17, dadurch gekennzeichnet, dass mindestens eine dieser Farben Metallicpigmente enthält.

19. Vorrichtung nach Anspruch 17, dadurch gekennzeichnet, dass mindestens eine dieser Farben fluoreszierende Pigmente enthält.

20. Vorrichtung nach Anspruch 1 oder 17, dadurch gekennzeichnet, dass ein oder mehrere Vorratsbehälter durch Mikrowellen, Wärme, UV-Licht oder Magnetfelder aktivierbare Additive enthalten.

21. Vorrichtung nach Anspruch 1 oder 17, dadurch gekennzeichnet, dass ein oder mehrere Vorratsbehälter Haftvermittler oder Klebstoffe enthält und die Zusammensetzung optional farblos ist.




Fig.1




Fig.2




Fig.3

# INTERNATIONAL SEARCH REPORT

International application No
PCT/EP2012/056010

**A. CLASSIFICATION OF SUBJECT MATTER**
INV. B29C67/00 B01F5/00
ADD.

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
B29C B01F

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practicable, search terms used)

EPO-Internal, WPI Data

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category* | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X<br><br>Y | US 6 129 872 A (JANG JUSTIN [US]) 10 October 2000 (2000-10-10)<br>figures 1, 2<br>column 1, lines 6-10<br>column 7, lines 58-61<br>column 8, lines 1-20<br>column 9, lines 36-39<br>column 12, lines 46-52<br>----- | 1,2,7,9, 11-13<br>3-6,8, 10,14-21 |
| Y | US 2010/327479 A1 (ZINNIEL ROBERT L [US] ET AL) 30 December 2010 (2010-12-30)<br>page 5, paragraphs [0040], [0043]<br>page 6, paragraph [0049]<br>----- | 3-6,8, 10,14, 16-21 |
| Y | US 2011/076495 A1 (BATCHELDER J SAMUEL [US] ET AL) 31 March 2011 (2011-03-31)<br>page 3, paragraph [0047]<br>----- | 15 |

☐ Further documents are listed in the continuation of Box C.

☒ See patent family annex.

* Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier application or patent but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 28 June 2012 | 06/07/2012 |

| Name and mailing address of the ISA/ | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2<br>NL - 2280 HV Rijswijk<br>Tel. (+31-70) 340-2040,<br>Fax: (+31-70) 340-3016 | Gasner, Benoit |

1

# INTERNATIONAL SEARCH REPORT

Information on patent family members

International application No
PCT/EP2012/056010

| Patent document cited in search report | | Publication date | Patent family member(s) | | | Publication date |
|---|---|---|---|---|---|---|
| US 6129872 | A | 10-10-2000 | NONE | | | |
| US 2010327479 | A1 | 30-12-2010 | EP | 2445701 | A1 | 02-05-2012 |
| | | | US | 2010327479 | A1 | 30-12-2010 |
| | | | WO | 2011005492 | A1 | 13-01-2011 |
| US 2011076495 | A1 | 31-03-2011 | CA | 2775078 | A1 | 07-04-2011 |
| | | | US | 2011076495 | A1 | 31-03-2011 |
| | | | WO | 2011041167 | A1 | 07-04-2011 |

# INTERNATIONALER RECHERCHENBERICHT

Internationales Aktenzeichen
PCT/EP2012/056010

A. KLASSIFIZIERUNG DES ANMELDUNGSGEGENSTANDES
INV. B29C67/00 B01F5/00
ADD.

Nach der Internationalen Patentklassifikation (IPC) oder nach der nationalen Klassifikation und der IPC

B. RECHERCHIERTE GEBIETE

Recherchierter Mindestprüfstoff (Klassifikationssystem und Klassifikationssymbole )
B29C B01F

Recherchierte, aber nicht zum Mindestprüfstoff gehörende Veröffentlichungen, soweit diese unter die recherchierten Gebiete fallen

Während der internationalen Recherche konsultierte elektronische Datenbank (Name der Datenbank und evtl. verwendete Suchbegriffe)

EPO-Internal, WPI Data

C. ALS WESENTLICH ANGESEHENE UNTERLAGEN

| Kategorie* | Bezeichnung der Veröffentlichung, soweit erforderlich unter Angabe der in Betracht kommenden Teile | Betr. Anspruch Nr. |
|---|---|---|
| X<br><br>Y | US 6 129 872 A (JANG JUSTIN [US])<br>10. Oktober 2000 (2000-10-10)<br>Abbildungen 1, 2<br>Spalte 1, Zeilen 6-10<br>Spalte 7, Zeilen 58-61<br>Spalte 8, Zeilen 1-20<br>Spalte 9, Zeilen 36-39<br>Spalte 12, Zeilen 46-52<br>----- | 1,2,7,9,<br>11-13<br>3-6,8,<br>10,14-21 |
| Y | US 2010/327479 A1 (ZINNIEL ROBERT L [US] ET AL) 30. Dezember 2010 (2010-12-30)<br><br>Seite 5, Absätze [0040], [0043]<br>Seite 6, Absatz [0049]<br>----- | 3-6,8,<br>10,14,<br>16-21 |
| Y | US 2011/076495 A1 (BATCHELDER J SAMUEL [US] ET AL) 31. März 2011 (2011-03-31)<br>Seite 3, Absatz [0047]<br>----- | 15 |

☐ Weitere Veröffentlichungen sind der Fortsetzung von Feld C zu entnehmen ☒ Siehe Anhang Patentfamilie

* Besondere Kategorien von angegebenen Veröffentlichungen :
"A" Veröffentlichung, die den allgemeinen Stand der Technik definiert, aber nicht als besonders bedeutsam anzusehen ist
"E" frühere Anmeldung oder Patent, die bzw. das jedoch erst am oder nach dem internationalen Anmeldedatum veröffentlicht worden ist
"L" Veröffentlichung, die geeignet ist, einen Prioritätsanspruch zweifelhaft erscheinen zu lassen, oder durch die das Veröffentlichungsdatum einer anderen im Recherchenbericht genannten Veröffentlichung belegt werden soll oder die aus einem anderen besonderen Grund angegeben ist (wie ausgeführt)
"O" Veröffentlichung, die sich auf eine mündliche Offenbarung, eine Benutzung, eine Ausstellung oder andere Maßnahmen bezieht
"P" Veröffentlichung, die vor dem internationalen Anmeldedatum, aber nach dem beanspruchten Prioritätsdatum veröffentlicht worden ist
"T" Spätere Veröffentlichung, die nach dem internationalen Anmeldedatum oder dem Prioritätsdatum veröffentlicht worden ist und mit der Anmeldung nicht kollidiert, sondern nur zum Verständnis des der Erfindung zugrundeliegenden Prinzips oder der ihr zugrundeliegenden Theorie angegeben ist
"X" Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann allein aufgrund dieser Veröffentlichung nicht als neu oder auf erfinderischer Tätigkeit beruhend betrachtet werden
"Y" Veröffentlichung von besonderer Bedeutung; die beanspruchte Erfindung kann nicht als auf erfinderischer Tätigkeit beruhend betrachtet werden, wenn die Veröffentlichung mit einer oder mehreren Veröffentlichungen dieser Kategorie in Verbindung gebracht wird und diese Verbindung für einen Fachmann naheliegend ist
"&" Veröffentlichung, die Mitglied derselben Patentfamilie ist

| Datum des Abschlusses der internationalen Recherche | Absendedatum des internationalen Recherchenberichts |
|---|---|
| 28. Juni 2012 | 06/07/2012 |

| Name und Postanschrift der Internationalen Recherchenbehörde | Bevollmächtigter Bediensteter |
|---|---|
| Europäisches Patentamt, P.B. 5818 Patentlaan 2<br>NL - 2280 HV Rijswijk<br>Tel. (+31-70) 340-2040,<br>Fax: (+31-70) 340-3016 | Gasner, Benoit |

1

**INTERNATIONALER RECHERCHENBERICHT**

Angaben zu Veröffentlichungen, die zur selben Patentfamilie gehören

Internationales Aktenzeichen
PCT/EP2012/056010

| Im Recherchenbericht angeführtes Patentdokument | Datum der Veröffentlichung | Mitglied(er) der Patentfamilie | Datum der Veröffentlichung |
|---|---|---|---|
| US 6129872 A | 10-10-2000 | KEINE | |
| US 2010327479 A1 | 30-12-2010 | EP 2445701 A1 | 02-05-2012 |
| | | US 2010327479 A1 | 30-12-2010 |
| | | WO 2011005492 A1 | 13-01-2011 |
| US 2011076495 A1 | 31-03-2011 | CA 2775078 A1 | 07-04-2011 |
| | | US 2011076495 A1 | 31-03-2011 |
| | | WO 2011041167 A1 | 07-04-2011 |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 27182949 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Nathan Scott Smith/Sharon Fennessy |
| **Filer Authorized By:** | Nathan Scott Smith |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 11-OCT-2016 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 18:05:25 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213-IDS.pdf | 195990<br>91096187267bece85e635d28afe3e806107 3929e | yes | 5 |

| | Multipart Description/PDF files in .zip description | | |
|---|---|---|---|
| | **Document Description** | **Start** | **End** |
| | Transmittal Letter | 1 | 2 |
| | Information Disclosure Statement (IDS) Form (SB08) | 3 | 5 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 2 | Foreign Reference | CN101166597A.pdf | 1385617<br>1a4a872bda5b7bdd426106f02f984ffb818ca0d9 | no | 32 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 3 | Foreign Reference | CN102922721A.pdf | 219728<br>5ce9595cb8b4376a4ad1088591d8da90cfff8ebd | no | 6 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 4 | Foreign Reference | CN2761402Y.pdf | 501509<br>b57c6a06d5b32d99a308c07b01c6bc8dfd7511e9 | no | 11 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 5 | Foreign Reference | CN201086388Y.pdf | 583191<br>175589de5d2fb6d0db01356cd00aec7a18eeb9a7 | no | 17 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 6 | Foreign Reference | DE3341201A1.pdf | 441390<br>48c9e4da8d03a5561baef8592da7781c3c698041 | no | 11 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 7 | Foreign Reference | EP0257838A2.pdf | 326312<br>ccbd0a7f9407840f0c21594dc7d46608903ed934 | no | 7 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 8 | Foreign Reference | WO2012152510A1.pdf | 933253<br>f1f1cf79b83056357a3d5e720e2aa0590767<br>7a1b | no | 24 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 9 | Foreign Reference | WO2012152511A1.pdf | 1039888<br>33c8da3c276c813848ace8142f8755561ee1<br>2648 | no | 25 |

**Warnings:**

**Information:**

| | | | | | |
|---|---|---|---|---|---|
| 10 | Non Patent Literature | LEISTER.pdf | 59489<br>0928a0416163b2ac95f5f5a04fb4857e5406<br>8d3a | no | 1 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 5686367 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Docket No.: 092749-0213
(PATENT)

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Patent Application of: Peter DILWORTH et al. | : | Customer Number: 31824 |
| Application No.: 14/821,399 | : | Confirmation No.: 9856 |
| Filed: August 7, 2015 | : | Art Unit: 1743 |
| For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | : | Examiner: L. D. Hohenbrink Jr. |

## INFORMATION DISCLOSURE STATEMENT

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Pursuant to 37 C.F.R. § 1.56, 1.97, and 1.98, the attention of the United States Patent and Trademark Office is hereby directed to the references listed on the attached PTO/SB/08. It is respectfully requested that the information be expressly considered during the prosecution of the above-identified application, and that the references be made of record therein and appear among the “References Cited” on any patent to issue therefrom.

This Information Disclosure Statement is filed before the mailing date of a first Office Action on the merits (37 C.F.R. § 1.97(b)(3)).

In accordance with 37 C.F.R. § 1.97(g), the filing of this Information Disclosure Statement shall not be construed as a representation that a search has been made. In accordance with 37 C.F.R. § 1.97(h), the filing of this Information Disclosure Statement shall not be construed to be

an admission that the information cited in this Information Disclosure Statement is, or is considered to be, material to the patentability as defined in 37 C.F.R. § 1.56(b).

Applicant believes no fee is due with this submission. However, if a fee is due, please charge Deposit Account No. 50-2624.

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

/Nathan S. Smith/
Nathan S. Smith
Registration No. 53,615

Please recognize our Customer No. 31824 as our correspondence address.

4 Park Plaza
Suite 1700
Irvine, CA 92614-2559
Phone: (949) 757-6018 NSS:snf
Facsimile: (949) 851-9348
Date: October 11, 2016

Docket No.: 092749-0213 PATENT

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re Application of | : Customer Number: 31824 |
| Peter DILWORTH et al. | : Group Art Unit: 1743 |
| Application No.: 14/821,399 | : Examiner: Lawrence Hohenbrink, Jr. |
| Filing Date: August 7, 2015 | : Confirmation No.: 9856 |
| For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | : |

**PRELIMINARY AMENDMENT**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

Prior to examination of the above-referenced application, please amend the application as follows.

**Amendments to the claims** begin on Page 2.

**Remarks** begin on Page 5.

## AMENDMENTS TO THE CLAIMS

A complete listing of all claims and their current status is presented below. In the changes made to the following claims, [[deletions are double bracketed]] or ~~shown with strike-through~~, and additions are underlined. This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1.–20. (Canceled)

21. (Currently amended) A three-dimensional (3D) drawing device comprising:

~~an elongate~~ a housing configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having a first end, a second end, and a port configured for introduction of a feed stock ~~through the second end and~~ into an internal volume of the housing, ~~the housing having a length between the first end and the second end, the length being greater than a maximum transverse extent of the housing,~~ and the housing having at least one cooling port extending between the internal volume and an ambient atmosphere;

a first actuator and a second actuator each coupled to the housing and positioned to be actuated by the user's hand while holding the housing;

a motor disposed within the internal volume and controlled in response to operation of the first actuator and the second actuator;

a gear train operatively coupled with the motor to drive the gear train, disposed within the internal volume to receive the feed stock, and configured to move the feed stock when engaged with the gear train; and

a nozzle assembly disposed at the first end of the housing and at least partially within the housing, the nozzle assembly comprising an extruder, an exit nozzle, and a guide tube, the extruder having a heating element surrounded by an insulator, the guide tube extending between the gear train and the extruder, a first end of the guide tube positioned to receive the feed stock from the gear train, a second end of the guide tube aligned with a chamber of the extruder such that the feed stock is directed into the chamber, the extruder being disposed between the guide tube and the exit nozzle.

22. (Previously Presented)The 3D drawing device of claim 21, further comprising a mounting tube having a first end and a second end, and wherein the second end of the guide tube extends into the first end of the mounting tube, and an end of the extruder opposite the nozzle extends into the second end of the mounting tube, the mounting tube holding the second end of the guide tube in alignment with the end of the extruder opposite the nozzle.

23. (Previously Presented) The 3D drawing device of claim 21, further comprising an upper housing and a lower housing, at least one of the upper housing and the lower housing comprising a cooling port proximate to the nozzle.

24. (Previously Presented) The 3D drawing device of claim 23, wherein each of the upper housing and the lower housing comprises a cooling port.

25. (Previously Presented) The 3D drawing device of claim 21, wherein the first actuator and the second actuator are axially aligned and disposed on an outer surface of the housing between the first end and the second end.

26. (Currently Amended) The 3D drawing device of claim 21, wherein actuation of the first actuator causes ~~further comprising a circuit assembly, wherein the circuit assembly directs~~ the motor to rotate in a first direction at a first motor rate ~~in response to actuation of the first actuator such that the~~ to extrude the feed stock ~~is extruded~~ out of the exit nozzle at a first extrusion rate, and actuation of the second actuator causes ~~the circuit assembly directs~~ the motor to rotate in the first direction at a second motor rate ~~in response to actuation of the second actuator such that~~ to extrude the feed stock ~~is extruded~~ out of the exit nozzle at a second extrusion rate that is greater than the first extrusion rate.

27. (Currently Amended)The 3D drawing device of claim 26, wherein simultaneous actuation of the ~~circuit assembly directs~~ first and second actuators causes the motor to rotate in the second ~~direction in response to simultaneous actuation of the first and second actuators~~.

28. (Currently Amended) The 3D drawing device of claim 26, further comprising a variable speed control mechanism ~~operatively connected to the circuit assembly~~ to adjust one or more of the first extrusion rate and the second extrusion rate.

29–33.(Canceled)

34. (New) The 3D drawing device of claim 21, wherein the heating element is positioned adjacent to the exit nozzle and configured to melt the feed stock prior to extrusion through the exit nozzle.

35. (New) The 3D drawing device of claim 21, wherein the housing comprises at least one cooling port proximate to the exit nozzle, the cooling port in fluid communication with the internal volume.

36. (New) The 3D drawing device of claim 21, wherein the wherein the first actuator or the second actuator is configured to selectably cause the motor to rotate in at least a first direction that causes the feed stock to be extruded out of the exit nozzle.

37. (New) The 3D drawing device of claim 36, wherein the first actuator or the second actuator is configured to selectably cause the motor to rotate in a second direction that is opposite the first direction.

38. (New) The 3D drawing device of claim 37, wherein the first and second actuators each comprise at least one button.

39. (New) The 3D drawing device of claim 38, the first actuator comprises a first button that causes the motor to rotate in the first direction at a first speed such that the feed stock is extruded out of the exit nozzle at a first rate; and wherein the second actuator comprises a second button that that causes the motor to rotate in the first direction at a second speed such that the feed stock is extruded out of the exit nozzle at a second rate that is greater than the first rate, wherein simultaneous actuation of the first and second buttons causes the motor to rotate in the second direction.

40. (New) The 3D drawing device of claim 21, wherein:

the feed stock is provided in the in the form of a strand; and

the gear train comprises a final gear having teeth that engage the strand of feed stock such that rotation of the final gear causes the strand of feed stock to linearly move.

41. (New) The 3D drawing device of claim 21, the feed stock comprises a strand of material, the port being configured for introduction of the strand of material.

42. (New) The 3D drawing device of claim 21, further comprising a fan configured to provide a flow cooling air at the exit nozzle.

43. (New) The 3D drawing device of claim 21, wherein the housing comprises a length between the first end and the second end, the length being greater than a maximum transverse extent of the housing.

## REMARKS

Applicant respectfully submits this Preliminary Amendment in addition to a Petition to Make Special Under the Patent Prosecution Highway.

Summary of Amendments to the Claims

In the following amendments to the Claims, Claims 21, and 26–28 have been amended, Claims 29–33 have been canceled, and Claims 34–43 have been added.

Support for Amendments to the Claims

The amendments to the Claims are supported at least throughout the Specification and Figures as filed.

Statement Regarding Claim Correspondence

Amended Claim 21 is identical to issued Claim 1 of Chinese Patent Application No. 201310535754. The remaining dependent claims are allowable dependent claims of Claim 21.

No new matter is believed to have been introduced to the application by this amendment. Please amend this application as set forth above prior to the first Office Action on the merits. However, if the Examiner believes that any new claim would introduce new matter to this application, Applicant respectfully requests the Examiner not to enter the addition of that claim. Also, if the Examiner believes that all of the new claims introduce new matter to this application, Applicant respectfully requests the Examiner not to cancel the originally filed claims.

In view of the foregoing amendments and remarks, Applicant respectfully requests favorable action on this application.

Please charge any shortage in fees due in connection with the filing of this paper, including extension-of-time fees, to Deposit Account 50-2624, and please credit any excess fees to that deposit account.

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

/Nathan S. Smith/

Nathan S. Smith

Registration No. 53,615

4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
Phone: 949.851.0633 DM:sv
Facsimile: 949.851.9348
**Date: December 14, 2016**

**Please recognize our Customer No. 31824 as our correspondence address.**

Doc Code: PPH.PET.652

Document Description: Petition to make special under Patent Pros Hwy

PTO/SB/20GLBL (05-16)

Approved for use through 04/30/2018. OMB 0651-0058

U.S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REQUEST FOR PARTICIPATION IN THE GLOBAL/IP5 PATENT PROSECUTION HIGHWAY (PPH) PILOT PROGRAM IN THE USPTO

| | | | |
|---|---|---|---|
| Application No.: | 14/821,399-Conf. #9856 | First Named Inventor: | Peter DILWORTH |
| Filing Date: | August 7, 2015 | Attorney Docket No.: | 092749-0213 |
| Title of the Invention: | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | | |

**THIS REQUEST FOR PARTICIPATION IN THE PPH PILOT PROGRAM ALONG WITH THE REQUIRED DOCUMENTS MUST BE SUBMITTED VIA EFS-WEB. INFORMATION REGARDING EFS-WEB IS AVAILABLE AT** HTTP://WWW.USPTO.GOV/PATENTS-APPLICATION-PROCESS/APPLYING-ONLINE/ABOUT-EFS-WEB

**APPLICANT HEREBY REQUESTS PARTICIPATION IN THE PATENT PROSECUTION HIGHWAY (PPH) PILOT PROGRAM AND PETITIONS TO MAKE THE ABOVE-IDENTIFIED APPLICATION SPECIAL UNDER THE PPH PILOT PROGRAM.**

**Office of earlier examination (OEE):** P.R. China (State Intellectual Property Office of the People's Republic of China)

**OEE application number:** 201310535754.2

**Both the OEE application and the above-identified U.S. application have the following earliest date (filing or priority date):** December 5, 2012

**Type of OEE work product relied upon:** Decision to grant a patent

**Mailing date of OEE work product:** August 17, 2016

**Supporting Documents**

**1. OEE Work Product and Translation**

A copy of the OEE work product and translation if not already in English:

☐ Attached ☐ Previously submitted ☐ Not required because the decision to grant a patent was the first office action

☒ Applicant requests the USPTO to attempt to obtain the OEE work product from the Dossier Access System or PATENTSCOPE

NOTE: If the applicant requests the USPTO to obtain the OEE work product electronically and such attempt is unsuccessful, the applicant will be required to supply the document. Accordingly, to avoid dismissal of the initial PPH request and potential denial of participation in the PPH program, the applicant should verify that the OEE work product is actually available via the Dossier Access System or PATENTSCOPE before requesting retrieval. If the applicant is unable to verify availability, then the applicant should submit the document with the PPH request.

**2. References Cited in OEE Work Product**

An information disclosure statement (IDS) listing the references cited in the OEE work product and document copies (except U.S. patents and U.S. published patent applications):

☒ Attached ☐ Previously Submitted ☐ Not required because no references were cited in the OEE work product



This collection of information is required by 35 U.S.C. 119, 37 CFR 1.55, and 37 CFR 1.102(d). The information is required to obtain or retain a benefit by the public, which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 2 hours to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS.

PTO/SB/20GLBL (05-16)
Approved for use through 04/30/2018. OMB 0651-0058
U.S. Patent and Trademark Office; U.S DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# REQUEST FOR PARTICIPATION IN THE GLOBAL/IP5 PPH PILOT PROGRAM IN THE USPTO

(continued)

| Application No.: | 14/821,399-Conf. #9856 | First Named Inventor: | Peter DILWORTH |
|---|---|---|---|

**3. Claims Correspondence Certification Statement**

All of the claims in this application sufficiently correspond to the patentable/allowable claims in the OEE application.

**4. Claims Correspondence Table**

| Claims in U.S. Application | Patentable Claims in OEE Application | Explanation Regarding the Correspondence |
|---|---|---|
| 21 | 1 | The claims are identical |
| 22 | | This is a newly added dependent claim of Claim 1 |
| 23 | | This is a newly added dependent claim of Claim 1 |
| 24 | | This is a newly added dependent claim of Claim 1 |
| 25 | | This is a newly added dependent claim of Claim 1 |
| 26 | | This is a newly added dependent claim of Claim 1 |
| 27 | | This is a newly added dependent claim of Claim 1 |
| 28 | | This is a newly added dependent claim of Claim 1 |
| 34 | 2 | The claims are substantially identical |
| 35 | 3 | The claims are identical |
| 36 | 4 | The claims are substantially identical |
| 37 | 5 | The claims are substantially identical |
| 38 | 6 | The claims are substantially identical |
| 39 | 7 | The claims are substantially identical |
| 40 | 8 | The claims are identical |
| 41 | | This is a newly added dependent claim of Claim 1 |
| 42 | | This is a newly added dependent claim of Claim 1 |
| 43 | | This is a newly added dependent claim of Claim 1 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| Signature /Nathan S. Smith/ | Date December 14, 2016 |
|---|---|
| Name (print or type) Nathan S. Smith | Registration Number 53,615 |

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| | Application Number | 14821399 |
| | Filing Date | 2015-08-07 |
| | First Named Inventor | Peter DILWORTH |
| | Art Unit | 1743 |
| | Examiner Name | Lawrence Hohenbrink, Jr. |
| | Attorney Docket Number | 092749-0213 |

**U.S.PATENTS**

| Examiner Initial* | Cite No | Patent Number | Kind Code[1] | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 6162378 | | 2000-12-19 | Bedal et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

**U.S.PATENT APPLICATION PUBLICATIONS**

| Examiner Initial* | Cite No | Publication Number | Kind Code[1] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20010030383 | A1 | 2001-10-18 | Swanson et al. | |
| | 2 | 20070003656 | A1 | 2007-01-04 | LaBossiere et al. | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

**FOREIGN PATENT DOCUMENTS**

| Examiner Initial* | Cite No | Foreign Document Number[3] | Country Code[2] i | Kind Code[4] | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T[5] |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

**NON-PATENT LITERATURE DOCUMENTS**

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 14821399 |
| | Filing Date | 2015-08-07 |
| | First Named Inventor | Peter DILWORTH |
| | Art Unit | 1743 |
| | Examiner Name | Lawrence Hohenbrink, Jr. |
| | Attorney Docket Number | 092749-0213 |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | | |
|---|---|---|
| | Application Number | 14821399 |
| | Filing Date | 2015-08-07 |
| | First Named Inventor | Peter DILWORTH |
| | Art Unit | 1743 |
| | Examiner Name | Lawrence Hohenbrink, Jr. |
| | Attorney Docket Number | 092749-0213 |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Nathan S. Smith/ | Date (YYYY-MM-DD) | 2016-12-14 |
|---|---|---|---|
| Name/Print | Nathan S. Smith | Registration Number | 53,615 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 27799287 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Nathan Scott Smith/Kimila Carraway |
| **Filer Authorized By:** | Nathan Scott Smith |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 14-DEC-2016 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 21:10:01 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213_Request_Participation_PPH_Pilot_Program.pdf | 209544<br>5110315924c07ce2690f4bc8bb78ed7ae90f9d44 | yes | 11 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Petition to make special under Patent Prosecution Hwy | 1 | 2 |
| Preliminary Amendment | 3 | 3 |
| Claims | 4 | 6 |
| Applicant Arguments/Remarks Made in an Amendment | 7 | 8 |
| Information Disclosure Statement (IDS) Form (SB08) | 9 | 11 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 209544 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

# PATENT APPLICATION FEE DETERMINATION RECORD
Substitute for Form PTO-875

| Application or Docket Number | Filing Date | |
|---|---|---|
| 14/821,399 | 08/07/2015 | ☐ To be Mailed |

**ENTITY:** ☐ LARGE ☒ SMALL ☐ MICRO

## APPLICATION AS FILED – PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

| AMENDMENT 12/14/2016 | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 18 | Minus | ** 20 | = 0 | x $40 = | 0 |
| Independent (37 CFR 1.16(h)) | * 1 | Minus | ***3 | = 0 | x $210 = | 0 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

| AMENDMENT | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
ROLITA WIMBUSH

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

31824 7590 12/16/2016
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

| EXAMINER | |
|---|---|
| HOHENBRINK JR, LAWRENCE D | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1743 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 12/16/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mweipdocket@mwe.com

| Office Action Summary | Application No. 14/821,399 | Applicant(s) DILWORTH ET AL. | |
|---|---|---|---|
| | Examiner Lawrence D. Hohenbrink, Jr. | Art Unit 1743 | AIA (First Inventor to File) Status No |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --***

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE 3 MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *8/7/2015*.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on ______.

2a)☐ This action is **FINAL**. 2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ______; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) *21-33* is/are pending in the application.
5a) Of the above claim(s) ______ is/are withdrawn from consideration.
6)☐ Claim(s) ______ is/are allowed.
7)☒ Claim(s) *21-33* is/are rejected.
8)☐ Claim(s) ______ is/are objected to.
9)☐ Claim(s) ______ are subject to restriction and/or election requirement.

* If any claims have been determined allowable, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☒ The drawing(s) filed on *8/7/2015* is/are: a)☒ accepted or b)☐ objected to by the Examiner.
Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
a)☐ All b)☐ Some** c)☐ None of the:
1.☐ Certified copies of the priority documents have been received.
2.☐ Certified copies of the priority documents have been received in Application No. ______.
3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date *12/2/2015; 10/11/2016*.
3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. ______ .
4) ☐ Other: ______.

## DETAILED ACTION

### Status of the Application

1. This Office Action is the first action on the merits and is a Non-Final Rejection.

2. Claims 21-33 are pending and are examined herein.

### *Notice of Pre-AIA or AIA Status*

3. The present application is being examined under the pre-AIA first to invent provisions.

### *Claim Rejections - 35 USC § 112*

4. The following is a quotation of 35 U.S.C. 112(b):

> (b) CONCLUSION.—The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

> The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

5. **Claim 23, 24, 27, and 31 are rejected** under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

6. Claim 23 recites “a cooling port” in line 2. Is this the same cooling port as that recited in Claim 21, or a different cooling port? Thus, the claim is unclear and therefore indefinite. Claim 24 is rejected as indefinite as depending from an indefinite base claim.

7. Claim 24 recites “a cooling port” in line 2. Is this the same cooling port as that recited in Claims 21 and 23, or a different cooling port? Thus, the claim is unclear and therefore indefinite.

8. Claim 27 recites the limitation "the second direction" in line 2. There is insufficient antecedent basis for this limitation in the claim.

9. Claim 31 recites “a first rate” in line 3 and "a first rate" in line 4. Additionally, Claim 31 recites "a second rate" in line 5 and "a second rate" in line 6. The claim is unclear and thus indefinite. For the sake

of compact prosecution, the Examiner will examine the claim as if it recited “a first motor rate”, “a first extrusion rate”, “a second motor rate”, and “a second extrusion rate”, respectively.

### *Claim Rejections - 35 USC § 103*

10. The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

11. The factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under pre-AIA 35 U.S.C. 103(a) are summarized as follows:

1. Determining the scope and contents of the prior art.
2. Ascertaining the differences between the prior art and the claims at issue.
3. Resolving the level of ordinary skill in the pertinent art.
4. Considering objective evidence present in the application indicating obviousness or nonobviousness.

12. This application currently names joint inventors. In considering patentability of the claims under pre-AIA 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of pre-AIA 35 U.S.C. 103(c) and potential pre-AIA 35 U.S.C. 102(e), (f) or (g) prior art under pre-AIA 35 U.S.C. 103(a).

13. **Claims 21 and 23-25 are rejected** under pre-AIA 35 U.S.C. 103(a) as being unpatentable over *Skubic et al.* (US 2008/0213419 A1, hereinafter "***Skubic***") in view of *Lee* (US 2004/0232164 A1, hereinafter "***Lee***") and *Young* (US 6,460,481 B1, hereinafter "***Young***"), and further in view of *Pohl et al.* (US 3,604,597, hereinafter "***Pohl***").

14. Regarding Claim 21, *Skubic* discloses a three-dimensional printing device comprising a nozzle assembly (two-stage pump system, 10) comprising a gear train (gear system, 40), a guide tube (exit channel, 44), an extruder (screw pump, 24), and an exit nozzle (extrusion tip, 82), with the guide tube extending between the gear train and the extruder with a first end of the guide tube positioned to receive the feed stock from the gear train, and a second end of the guide tube aligned with a chamber of the extruder such that the feed stock is directed into the chamber, and the extruder is disposed between the guide tube and the exit nozzle (¶0022 L1-5; ¶0024 L1-2; ¶0029 L9-11; ¶0030; ¶0037; Figs. 1A, 1B, 2A, 2B, 3). The gear train is operatively coupled with a drive motor (16) for feeding a filament of build or support material to the extruder (¶0028 L1-5). The extruder includes a heating element (heater rods, 110) which supply heat to the extruder chamber to thermally melt the filament to a desired flowable viscosity (¶0043 L5-11; Fig. 4). The Examiner notes the *Skubic* device is construed as being contained within a housing (unnumbered), the housing having a first end and a second end, and a port (unnumbered) capable of receiving a filament feed stock through the second end and into the internal volume of the housing (Fig. 1A). *Skubic* is silent as a whether the heating element is surrounded by an insulator, however it is well known in the art to insulate heating element for the benefit of thermal and cost efficiencies.

15. In a related field of endeavor, hand-held material extruders, *Lee* discloses a hand-held glue gun including a heating device including an insulation body coated on heat conductive plates (¶0025 L9-14).

16. It would have been obvious to one with ordinary skill in the art at the time of the Applicant's invention, to modify or combine the *Skubic* invention of an apparatus for a three-dimensional printing device, as discussed above, with the *Lee* teaching of an insulating body coated onto portions of the apparatus. One would be motivated to combine them by a desire to gain a market advantage by attaining

the capability of insulating portions of the device so to thermally insulate the heated portions for the benefit of localized thermal economy.

17. The combination *Skubic* and *Lee* does not disclose an elongate housing configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having a first end, a second end, and a port configured for introduction of a feed stock through the second end and into an internal volume of the housing, the housing having a length between the first end and the second end, the length being greater than a maximum transverse extent of the housing, and the housing having at least one cooling port extending between the internal volume and an ambient atmosphere, a first actuator and a second actuator each coupled to the housing and positioned to be actuated by the user's hand while holding the housing, a motor disposed within the internal volume and controlled in response to operation of the first actuator and the second actuator, and the gear train disposed within the internal volume.

18. In a related field of endeavor, extruding material through a nozzle to make a 3D object, *Young* discloses a hand-held cake decorator extruder comprising an elongate housing (12) capable of fitting in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having a first end, a second end, and an internal volume, a nozzle assembly at least partially disposed in the housing, and the length of the housing between the first and second ends is greater than a maximum transverse extent of the housing (C1 L11-16; C2 L23-29; Fig. 1). *Young* further discloses a first actuator (switch, 74) and a second actuator (switch, 76) each coupled to the housing and positioned to be actuated by the user's hand while holding the housing (C3 L11-14; Fig. 1), and discloses an electric motor (62) disposed in the housing and a gear train (64) disposed in the housing, the motor configured to drive the gear train in response to operation of the actuators (C3 L1-4).

19. It would have been obvious to one with ordinary skill in the art at the time of the Applicant's invention, to modify or combine the combination *Skubic* and *Lee* invention as discussed above, with the *Young* teaching of handheld pen-like extruding device that can extrude 3D objects from an extrudable material such as decorator pastry. One would be motivated to combine them by a desire to gain a marketing advantage by providing the extrusion apparatus of the combination *Skubic* and *Lee* in the form factor of *Young's* handheld pen thus allowing a user to freeform 3D objects from a filament material.

20. The combination *Skubic* and *Lee* and *Young* does not disclose the housing having at least one cooling port extending between the internal volume and an ambient atmosphere, however it is well known in the art to provide thermal vents for motors in housings.

21. In a related field of endeavor, hand-held plastic extrusion device, *Pohl* discloses a dispensing gun for melting and extruding a thermoplastic rod material in a molten state (Abstract), the gun including a housing (100) preferably formed with enlarged openings for permitting heat to dissipate (C3 L34-38).

22. It would have been obvious to one with ordinary skill in the art at the time of the Applicant's invention, to modify or combine the combination *Skubic* and *Lee* and *Young* invention as discussed above, with the *Pohl* teaching of a cooling port in the housing. One would be motivated to combine them by a desire to gain a market advantage by attaining the capability of venting the interior volume of the housing for the benefit of allowing excess heat to dissipate from the housing.

23. Regarding Claims 23 and 24, the limitations of Claim 21 from which Claims 23 and 24 depend are disclosed by the combination *Skubic* and *Lee* and *Young* and *Pohl* as discussed above. *Young* further discloses the handheld pen-like extruding device comprising a plurality of housing sections (12, 14). The Examiner notes that under the standard of broadest reasonable interpretation the housing sections may be construed as an upper housing and a lower housing. One of ordinary skill in the art at the time of the invention would have found it a matter of design choice to dispose cooling ports in either or both of the sections. Thus, a *prima facie* case of obviousness is established.

24. Regarding Claim 25, the limitations of Claim 21 from which Claim 25 depends are disclosed by the combination *Skubic* and *Lee* and *Young* and *Pohl* as discussed above. *Young* further discloses the first and second actuators are axially aligned and disposed on an outer surface of the housing between the first end and the second end (Fig. 1).

25. **Claim 22 is rejected** under pre-AIA 35 U.S.C. 103(a) as being unpatentable over *Skubic et al.* (US 2008/0213419 A1, hereinafter "***Skubic***") in view of *Lee* (US 2004/0232164 A1, hereinafter "***Lee***") and

*Young* (US 6,460,481 B1, hereinafter "***Young***") and *Pohl et al.* (US 3,604,597, hereinafter "***Pohl***"), and further in view of *Dziki* (US 4,552,287, hereinafter "***Dziki***").

26. Regarding Claim 22, the limitations of Claim 21 from which Claim 22 depends are disclosed by the combination *Skubic* and *Lee* and *Young* and *Pohl* as discussed above. The combination *Skubic* and *Lee* and *Young* and *Pohl* does not disclose a mounting tube having a first end and a second end, and wherein the second end of the guide tube extends into the first end of the mounting tube, and an end of the extruder opposite the nozzle extends into the second end of the mounting tube, the mounting tube holding the second end of the guide tube in alignment with the end of the extruder opposite the nozzle.

27. In a related field of endeavor, extruding material through a nozzle, *Dziki* discloses a handheld material dispensing device (10) comprising a two-part frame (12), a mounting tube (barrel member, 14) mounted between the parts of the frame and having first and second ends and an internal melting chamber (16) communicating via a discharge passageway (17) through a valve assembly (18) with an outlet opening (19) through a nozzle (21), and a guide tube (sleeve, 20) with a cylindrical through opening (22) having one end secured to the mounting tube with its through opening communicating with the end of the melting chamber opposite the discharge passageway (C3 L55-65; Fig. 2). An end of an extruder (valve body, 49) opposite the nozzle extends into the second end of the mounting tube (Fig. 2). The guide tube is coupled to the mounting tube by a metal barrier ring (38) (Figs. 2 and 3), that is heated by heating element (43), and an end portion (41) of the barrier ring opposite the mounting tube is press fit into an internally relieved area of the guide tube (C5 L32-34, L 43-46). The Examiner notes that the barrier ring is construed as an extension of the guide tube, thus the second end of the guide tube extends into the first end of the mounting tube.

28. It would have been obvious to one with ordinary skill in the art at the time of the Applicant's invention, to modify or combine the combination *Skubic* and *Lee* and *Young* and *Pohl* invention as discussed above, with the *Dziki* teaching of a mounting tube with part of the extruder disposed in one end and part of the guide tube disposed in the other end. One would be motivated to combine them by a desire to gain a marketing advantage by restricting the extrusion of material back toward the interior of

the device, thus preventing the user from being burned, as taught by *Dziki* [C1 L35-39; C2 L5-10, L 36-39].

29. **Claims 26-28 are rejected** under pre-AIA 35 U.S.C. 103(a) as being unpatentable over *Skubic et al.* (US 2008/0213419 A1, hereinafter "***Skubic***") in view of *Lee* (US 2004/0232164 A1, hereinafter "***Lee***") and *Young* (US 6,460,481 B1, hereinafter "***Young***") and *Pohl et al.* (US 3,604,597, hereinafter "***Pohl***"), and further in view of *Pettersson et al.* (US 2012/0219699 A1, hereinafter "***Pettersson***").

30. Regarding Claims 26-28, the limitations of Claim 21 from which Claims 26-28 depend are disclosed by the combination *Skubic* and *Lee* and *Young* and *Pohl* as discussed above. *Young* further discloses a circuit assembly (78) wherein the circuitry controls the direction and on/off of the motor (C3 L15-27) that drives the gear train that causes feedstock to be extruded, thus a first motor rate causes extrusion at a first extrusion rate. *Young* does not disclose that the circuit assembly capable of directing the motor at a second motor rate to cause extrusion at a second extrusion rate, or that the circuit assembly is configured to control the motor to rotate in the second direction in response to simultaneous actuation of the first and second actuators, or a variable speed control mechanism operatively connected to the circuit assembly to adjust one or more of the first extrusion rate and the second extrusion rate.

31. In a related field of endeavor, a handheld 3D printing device, *Pettersson* discloses a graphical application system comprising a handheld 3D printing device comprising a nozzle means (1) that is capable of ejecting feedstock material (2) such a plastic, a nozzle control mechanism (4), and a computational means (8) for controlling the nozzle control mechanism according to stored data (6) (Abstract; ¶0126; ¶0128; ¶0131; ¶0132 L1-2; ¶0142 L1-7). The computational control means is capable of controlling expelling characteristics such as extrusion flow rate by adjusting motors (¶0131). The computational control means can also be connected to one or more human interfaces (26) like a button, knob, dial, or joystick (¶0143).

32. The Examiner notes that *Pettersson's* nozzle control mechanism and computational control means are operatively connected and are capable of adjusting one or more of a first extrusion rate and a second extrusion rate. The Examiner further notes it would have been obvious to one of ordinary skill in

the art at the time of the invention to use one of *Pettersson's* disclosed human interfaces such as a dial to adjustably control the extrusion rate. Furthermore, it would have been obvious to one of ordinary skill to control the motor rate thus making it capable of rotating at a second speed such that the feedstock is extruded out of the exit nozzle at a second rate that may be greater than the first rate. Lastly, the Examiner notes that although the cited prior art does not disclose simultaneous actuation of the first and second buttons to cause the motor to rotate in the second direction, it would have been obvious to one skilled in the art to design the actuators to work in the claimed manner. There are only four states of operation in the claimed invention: off, rotating first direction at first speed, rotating first direction at second speed, and rotating second direction. This results a finite number of predictable potential actuator solutions. It would have been obvious for a person of ordinary skill in the art to try various combinations of actuators to minimize user controls and simplifying the design and to do so with a reasonable expectation of success. The use of two actuator buttons results in four possible states: off/off, on/off, off/on, and on/on. Because the operation of the apparatus required four states of operation, it would have been obvious to try matching the four actuator states to the four operational states, predictably resulting in the solution.

33. It would have been obvious to one with ordinary skill in the art at the time of the Applicant's invention, to modify or combine the combination *Skubic* and *Lee* and *Young* and *Pohl* invention as discussed above, with the *Pettersson* teaching of a handheld 3D printing device with circuitry that can control and adjust extrusion rates. One would be motivated to combine them by a desire to gain a market advantage by attaining the capability of providing a handheld 3D printer capable of extruding at more than one extrusion rate according to desired 3D printing data, as taught by *Pettersson* [¶0027].

34. **Claims 29-33 are rejected** under pre-AIA 35 U.S.C. 103(a) as being unpatentable over *Skubic et al.* (US 2008/0213419 A1, hereinafter "***Skubic***") in view of *Young* (US 6,460,481 B1, hereinafter "***Young***") and further in view of *Pettersson et al.* (US 2012/0219699 A1, hereinafter "***Pettersson***").

35. Regarding Claims 29-33, *Skubic* discloses a three-dimensional printing device comprising a nozzle assembly (two-stage pump system, 10) comprising a gear train (gear system, 40), a guide tube (exit channel, 44), an extruder (screw pump, 24), and an exit nozzle (extrusion tip, 82), with the guide tube extending between the gear train and the extruder with a first end of the guide tube positioned to receive the feed stock from the gear train, and a second end of the guide tube aligned with a chamber of the extruder such that the feed stock is directed into the chamber, and the extruder is disposed between the guide tube and the exit nozzle (¶0022 L1-5; ¶0024 L1-2; ¶0029 L9-11; ¶0030; ¶0037; Figs. 1A, 1B, 2A, 2B, 3). The gear train is operatively coupled with a drive motor (16) for feeding a filament of build or support material to the extruder (¶0028 L1-5). The Examiner notes the *Skubic* device is construed as being contained within a housing (unnumbered), the housing having a first end and a second end, and a port (unnumbered) capable of receiving a filament feed stock through the second end and into the internal volume of the housing (Fig. 1A).

36. *Skubic* does not disclose a first actuator and a second actuator each disposed on an outer surface of the housing between the first and second ends.

37. In a related field of endeavor, extruding material through a nozzle to make a 3D object, *Young* discloses a hand-held cake decorator extruder comprising an elongate housing (12) capable of fitting in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having a first end, a second end, and an internal volume, a nozzle assembly at least partially disposed in the housing, and the length of the housing between the first and second ends is greater than a maximum transverse extent of the housing (C1 L11-16; C2 L23-29; Fig. 1). *Young* further discloses a first actuator (switch, 74) and a second actuator (switch, 76) each disposed on an outer surface of the housing between the first end and the second end (C3 L11-14; Fig. 1), and discloses an electric motor (62) disposed in the housing and a gear train (64) disposed in the housing, the motor configured to drive the gear train in response to operation of the actuators (C3 L1-4). *Young* further discloses the first and second actuators are axially aligned (Fig. 1).

38. It would have been obvious to one with ordinary skill in the art at the time of the Applicant's invention, to modify or combine the *Skubic* invention of an apparatus for a three-dimensional printing

device that can extrude 3D objects from an extrudable filament material, as discussed above, with the *Young* teaching of handheld pen-like extruding device that can extrude 3D objects from an extrudable material such as decorator pastry. One would be motivated to combine them by a desire to gain a marketing advantage by providing the extrusion apparatus of *Skubic* in the form factor of *Young's* handheld pen thus allowing a user to freeform 3D objects from a filament material.

39. The combination *Skubic* and *Young* do not disclose a variable speed control mechanism operatively connected to the motor and the first actuator to adjust a rate of extrusion of the feed stock out of the exit nozzle, or the circuit assembly is configured to control the motor to rotate in the second direction in response to simultaneous actuation of the first and second actuators. However, *Young* further discloses a circuit assembly (78) wherein the circuitry controls the direction and on/off of the motor (C3 L15-27) that drives the gear train that causes feedstock to be extruded, thus a first motor rate causes extrusion at a first extrusion rate.

40. In a related field of endeavor, a handheld 3D printing device, *Pettersson* discloses a graphical application system comprising a handheld 3D printing device comprising a nozzle means (1) that is capable of ejecting feedstock material (2) such a plastic, a nozzle control mechanism (4), and a computational means (8) for controlling the nozzle control mechanism according to stored data (6) (Abstract; ¶0126; ¶0128; ¶0131; ¶0132 L1-2; ¶0142 L1-7). The computational control means is capable of controlling expelling characteristics such as extrusion flow rate by adjusting motors (¶0131). The computational control means can also be connected to one or more human interfaces (26) like a button, knob, dial, or joystick (¶0143).

41. The Examiner notes that *Pettersson's* nozzle control mechanism and computational control means are operatively connected and are capable of adjusting one or more of a first extrusion rate and a second extrusion rate. The Examiner further notes it would have been obvious to one of ordinary skill in the art at the time of the invention to use one of *Pettersson's* disclosed human interfaces such as a dial to adjustably control the extrusion rate. Furthermore, it would have been obvious to one of ordinary skill to control the motor rate thus making it capable of rotating at a second speed such that the feedstock is extruded out of the exit nozzle at a second rate that may be greater than the first rate. Lastly, the

Examiner notes that although the cited prior art does not disclose simultaneous actuation of the first and second buttons to cause the motor to rotate in the second direction, it would have been obvious to one skilled in the art to design the actuators to work in the claimed manner. There are only four states of operation in the claimed invention: off, rotating first direction at first speed, rotating first direction at second speed, and rotating second direction. This results a finite number of predictable potential actuator solutions. It would have been obvious for a person of ordinary skill in the art to try various combinations of actuators to minimize user controls and simplifying the design and to do so with a reasonable expectation of success. The use of two actuator buttons results in four possible states: off/off, on/off, off/on, and on/on. Because the operation of the apparatus required four states of operation, it would have been obvious to try matching the four actuator states to the four operational states, predictably resulting in the solution.

42. It would have been obvious to one with ordinary skill in the art at the time of the Applicant's invention, to modify or combine the combined *Skubic* and *Young* invention as discussed above, with the *Pettersson* teaching of a handheld 3D printing device with circuitry that can control and adjust extrusion rates. One would be motivated to combine them by a desire to gain a market advantage by attaining the capability of providing a handheld 3D printer capable of extruding at more than one extrusion rate according to desired 3D printing data, as taught by *Pettersson* [¶0027].

***Conclusion***

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Lawrence D. Hohenbrink Jr. whose telephone number is 571-270-5549. The examiner can normally be reached Monday - Friday, 8:00 am to 4:00 pm Eastern Time U.S.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Joseph S. Del Sole can be reached on 571-272-1130. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Lawrence D. Hohenbrink, Jr./
Examiner, Art Unit 1743

/MATTHEW DANIELS/
Primary Examiner, Art Unit 1742

| *Notice of References Cited* | Application/Control No.<br>14/821,399 | Applicant(s)/Patent Under Reexamination<br>DILWORTH ET AL. | |
|---|---|---|---|
| | Examiner<br>Lawrence D. Hohenbrink, Jr. | Art Unit<br>1743 | Page 1 of 1 |

**U.S. PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Name | CPC Classification | US Classification |
|---|---|---|---|---|---|---|
| * | A | US-2008/0213419 A1 | 09-2008 | Skubic; Robert L. | B29C47/6018 | 425/113 |
| * | B | US-6,460,481 B1 | 10-2002 | Young; Christopher | A23G3/28 | 118/14 |
| * | C | US-2012/0219699 A1 | 08-2012 | PETTERSSON; Bo | B05B12/122 | 427/8 |
| * | D | US-4,552,287 A | 11-1985 | Dziki; Michael M. | B05C17/00533 | 137/522 |
| * | E | US-2004/0232165 A1 | 11-2004 | Lee, Kuo-Jium | B05C17/0053 | 222/146.5 |
| * | F | US-3,604,597 A | 09-1971 | Pohl; Harold E. | B29B13/022 | 219/230 |
| | G | US- | | | | |
| | H | US- | | | | |
| | I | US- | | | | |
| | J | US- | | | | |
| | K | US- | | | | |
| | L | US- | | | | |
| | M | US- | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | Document Number<br>Country Code-Number-Kind Code | Date<br>MM-YYYY | Country | Name | CPC Classification |
|---|---|---|---|---|---|---|
| | N | | | | | |
| | O | | | | | |
| | P | | | | | |
| | Q | | | | | |
| | R | | | | | |
| | S | | | | | |
| | T | | | | | |

**NON-PATENT DOCUMENTS**

| * | | Include as applicable: Author, Title Date, Publisher, Edition or Volume, Pertinent Pages) |
|---|---|---|
| | U | |
| | V | |
| | W | |
| | X | |

*A copy of this reference is not being furnished with this Office action. (See MPEP § 707.05(a).)
Dates in MM-YYYY format are publication dates. Classifications may be US or foreign.

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 3

| *Complete if Known* | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] *(if known)* | Publication Date MM-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | US-3,559,241 | 02-1971 | Chu | |
| | A2 | US-3,604,597 | 09-1971 | Pohl et al. | |
| | A3 | US-3,887,319 | 06-1975 | Cottingham | |
| | A4 | US-5,121,329 | 06-1992 | Crump | |
| | A5 | US-5,169,587 | 12-1992 | Courval | |
| | A6 | US-6,129,872 | 10-2000 | Jang | |
| | A7 | US-6,238,613 | 05-2001 | Batchelder et al. | |
| | A8 | US-6,500,374 | 12-2002 | Akioka et al. | |
| | A9 | US-6,558,059 | 05-2003 | Hillinger et al. | |
| | A10 | US-8,262,304 | 09-2012 | Llach et al. | |
| | A11 | US-8,926,882 | 01-2015 | Batchelder | |
| | A12 | US-2005/0129941-A1 | 06-2005 | Comb et al. | |
| | A13 | US-2005/0288813-A1 | 12-2005 | Yang et al. | |
| | A14 | US-2007/0228590-A1 | 10-2007 | LaBossiere et al. | |
| | A15 | US-2008/0197116-A1 | 08-2008 | Achtner et al. | |
| | A16 | US-2008/0213419-A1 | 09-2008 | Skubic et al. | |
| | A17 | US-2010/0147465-A1 | 06-2010 | Di Miceli et al. | |
| | A18 | US-2010/0327479-A1 | 12-2010 | Zinniel et al. | |
| | A19 | US-2011/0076496-A1 | 03-2011 | Batchelder et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B1 | CN-101166597-A | 04-2008 | Tdy, Ind Inc | | X |
| | B2 | CN-102922721-A | 02-2013 | Chen | | X |
| | B3 | CN-2761402-Y | 03-2006 | Overseas Univ | | X |
| | B4 | CN-201086388-Y | 07-2008 | Pumma Technology Co., Ltd | | X |
| | B5 | DE-3341201-A1 | 05-1985 | Ursprung,reinhard | | X |
| | B6 | EP-0257838-A2 | 03-1988 | Bostik Ltd | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | Application Number | 14/821,399-Conf. #9856 |
| | | | | Filing Date | August 7, 2015 |
| | | | | First Named Inventor | Peter DILWORTH |
| | | | | Art Unit | 1743 |
| *(Use as many sheets as necessary)* | | | | Examiner Name | L. D. Hohenbrink |
| Sheet | 2 | of | 3 | Attorney Docket Number | 092749-0213 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A20 | US-2011/0079936-A1 | 04-2011 | Oxman | |
| | A21 | US-2011/0196660-A1 | 08-2011 | Liu et al. | |
| | A22 | US-2012/0070523-A1 | 03-2012 | Swanson et al. | |
| | A23 | US-2013/0209600-A1 | 08-2013 | Tow | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B7 | WO-2012152510-A1 | 11-2012 | Evonik Roehm Gmbh | | |
| | B8 | WO-2012152511-A1 | 11-2012 | Evonik Roehm Gmbh | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

DM_US 76569124-1.092749.0213

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Complete if Known | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

Sheet 3 of 3

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | C1 | "A Range of Leister Hand-Held and Automatic Welders from Techspan," December 12, 2006, retrieved from http://www.ferret.com.au/c/techspan-group/a-range-of-Leister-hand-held-automatic-welders-from-Techspan-n667443 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /LAWRENCE D. HOHENBRINK, JR./ | Date Considered | 11/09/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

DM_US 76569124-1.092749.0213

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# BIB DATA SHEET

**CONFIRMATION NO. 9856**

| SERIAL NUMBER | FILING or 371(c) DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015<br>**RULE** | 425 | 1743 | 092749-0213 |

**APPLICANTS**
WobbleWorks, Inc., Wilmington, DE;

**INVENTORS**
Peter DILWORTH, Somerville, MA;
Maxwell BOGUE, Hong Kong, HONG KONG;

** **CONTINUING DATA** *************************
This application is a CON of 13/831,050 03/14/2013 PAT 9102098
which claims benefit of 61/733,689 12/05/2012

** **FOREIGN APPLICATIONS** *************************

** **IF REQUIRED, FOREIGN FILING LICENSE GRANTED** ** ** SMALL ENTITY **
08/21/2015

| | | STATE OR COUNTRY | SHEETS DRAWINGS | TOTAL CLAIMS | INDEPENDENT CLAIMS |
|---|---|---|---|---|---|
| Foreign Priority claimed ☐ Yes ☑ No<br>35 USC 119(a-d) conditions met ☐ Yes ☐ No<br>Verified and Acknowledged /LAWRENCE D HOHENBRINK JR/ Examiner's Signature | ☐ Met after Allowance<br>Initials | MA | 4 | 13 | 2 |

**ADDRESS**

MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001
UNITED STATES

**TITLE**

HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

| FILING FEE RECEIVED | | |
|---|---|---|
| 800 | FEES: Authority has been given in Paper No.____________ to charge/credit DEPOSIT ACCOUNT No.____________ for following: | ☐ All Fees<br>☐ 1.16 Fees (Filing)<br>☐ 1.17 Fees (Processing Ext. of time)<br>☐ 1.18 Fees (Issue)<br>☐ Other ________________<br>☐ Credit |

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 3

| Complete if Known | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1* | US-3,281,576 | 10-25-1966 | Cooper et al. | |
| | A2* | US-3,665,158 | 05-23-1972 | Froedge | |
| | A3* | US-4,059,204 | 11-22-1977 | Duncan et al. | |
| | A4* | US-4,552,287 | 11-12-1985 | Dziki | |
| | A5* | US-4,597,821 | 07-01-1986 | Munro | |
| | A6* | US-4,681,524 | 07-21-1987 | Ikeda et al. | |
| | A7* | US-5,853,774 | 12-29-1998 | Dreve | |
| | A8* | US-6,162,378 | 12-19-2000 | Bedal et al. | |
| | A9* | US-6,776,602 | 08-17-2004 | Swanson et al. | |
| | A10* | US-8,221,669 | 07-17-2012 | Batchelder et al. | |
| | A11* | US-8,236,227 | 08-07-2012 | Batchelder et al. | |
| | A12* | US-8,439,665 | 05-14-2013 | Batchelder et al. | |
| | A13* | US-9,102,098 | 08-11-2015 | Dilworth et al. | |
| | A14* | US-2001/0033037-A1 | 10-25-2001 | Nitschke et al. | |
| | A15* | US-2001/0030383-A1 | 10-18-2001 | Swanson et al. | |
| | A16* | US-2003/0137077-A1 | 07-24-2003 | Lee et al. | |
| | A17* | US-2007/0003656-A1 | 01-04-2007 | LaBossiere et al. | |
| | A18* | US-2007/0029693-A1 | 02-08-2007 | Wigand et al. | |
| | A19* | US-2012/0219699-A1 | 08-30-2012 | Pettersson et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B1 | CN-101172428-A | 05-07-2008 | Lite On Technology Corp | | X |
| | B2 | CN-202399493-U | 08-29-2012 | Shenzhen Weistek Technology Co.,ltd | | X |
| | B3 | CN-203592687-U | 05-14-2014 | Wobble Works Inc | | X |
| | B4 | JP-S 61-141959-A | 06-28-1986 | Bosch Gmbh Robert | | X |
| | B5 | JP-S63-205216-A | 08-24-1988 | Junkosha Co Ltd | | X |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | Application Number | 14/821,399-Conf. #9856 |
| | | | | Filing Date | August 7, 2015 |
| | | | | First Named Inventor | Peter DILWORTH |
| | | | | Art Unit | 1743 |
| *(Use as many sheets as necessary)* | | | | Examiner Name | L. D. Hohenbrink |
| Sheet | 2 | of | 3 | Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A20* | US-2012/0258190-A1 | 10-11-2012 | Batchelder et al. | |
| | A21* | US-2013/0234366-A1 | 09-12-2013 | Batchelder et al. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | **Application Number** | 14/821,399-Conf. #9856 |
| | | | | **Filing Date** | August 7, 2015 |
| | | | | **First Named Inventor** | Peter DILWORTH |
| | | | | Art Unit | 1743 |
| ***(Use as many sheets as necessary)*** | | | | Examiner Name | L. D. Hohenbrink |
| Sheet | 3 | of | 3 | Attorney Docket Number | 092749-0213 |

**NON PATENT LITERATURE DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | C1 | Donutman.sub.--2000 "Plastic Welding Gun (Plastruder MK4)" published Sep. 19, 2010, http://www.thingiverse.com/thing:4156, last accessed Jul. 3, 2014 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /LAWRENCE D. HOHENBRINK, JR./ | Date Considered | 11/09/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14821399 | DILWORTH ET AL. |
| | Examiner | Art Unit |
| | LAWRENCE D HOHENBRINK JR | 1743 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| B29C47/862,364,0805 | 11/10/2016 | LDH |
| B05C17/0053 | 11/10/2016 | LDH |
| B29C67/0051,0055,0085 | 11/10/2016 | LDH |
| B33Y10/00 | 11/10/2016 | LDH |
| B33Y30/00 | 11/10/2016 | LDH |

## CPC COMBINATION SETS - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 425 | 376.1,375,87,458,72.2,378.2 | 11/10/2016 | LDH |
| 156 | 498,368 | 11/10/2016 | LDH |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Searched EAST (see attached) | 11/10/2016 | LDH |
| Inventor search | 11/10/2016 | LDH |
| Assignee search | 11/10/2016 | LDH |
| IDS reference review | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, USPC class/subclass, 425/376.1,375,87,458,72.2,378.2 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, USPC class/subclass, 156/498,368 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, CPC group/subgroup, B29C47/862,364,0805 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, CPC group/subgroup, B05C17/0053 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, CPC group/subgroup, B29C67/0051,0055,0085 | 11/10/2016 | LDH |

/L.D.H./
Examiner.Art Unit 1743

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Image flip search with appropriate text limitation, CPC group/subgroup, B33Y10/00 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, CPC group/subgroup, B33Y30/00 | 11/10/2016 | LDH |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| | | | |

| | |
|---|---|
| /L.D.H./<br>Examiner.Art Unit 1743 | |

**EAST Search History**

**EAST Search History (Prior Art)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S2 | 1 | us-20140154347-$.did. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:07 |
| S3 | 1 | us-20120219699-$.did. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:29 |
| S4 | 4 | (4552287\|4597821\|4681524\|3665158).pn. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:30 |
| S5 | 1 | us-20030137077-$.did. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:31 |
| S6 | 8 | (dilworth near2 (pete or peter)).in. or (boque near2 (max or maxwell)).in. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:48 |
| S7 | 1 | (wobble near works).as. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:54 |
| S8 | 272 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/17 12:50 |
| S9 | 422 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/17 12:51 |
| S10 | 501 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:41 |
| S11 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:42 |
| S12 | 27 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:42 |
| S13 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:42 |
| S14 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:42 |
| S15 | 1281 | S8 or S9 or S10 or S11 or S12 or S13 or S14 | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:43 |
| S16 | 479 | S15 and (nozzle or (die near3 open$3)) | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:43 |
| S17 | 1 | "6722872".pn. | US-PGPUB; USPAT | OR | ON | 2014/06/19 13:46 |
| S18 | 271 | 425/87.ccls. | US-PGPUB; | OR | ON | 2014/06/25 13:21 |

Case 2:26-cv-01592-MEMF-PVC Document 35-5 Filed 03/23/26 Page 283 of 583 Page ID #:2349

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S19 | 421 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S20 | 504 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S21 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S22 | 27 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S23 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S24 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S25 | 1282 | S18 or S19 or S20 or S21 or S22 or S23 or S24 | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S26 | 480 | S25 and (nozzle or (die near3 open$3)) | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S27 | 196 | S26 and hand | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S28 | 41 | S26 and (hand near4 (hold or held)) | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:23 |
| S29 | 6 | S26 and ((fan or blower) near3 (cool or cold)) | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:31 |
| S30 | 841 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:53 |
| S31 | 500 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:53 |
| S32 | 1339 | S30 or S31 | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S33 | 271 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S34 | 421 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S35 | 504 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S36 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S37 | 28 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S38 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S39 | 65 | b05c17/0053.cpc. | US- | OR | ON | 2014/06/26 |

Case 2:26-cv-01592-MEMF-PVC Document 35-5 Filed 03/23/26 Page 284 of 583 Page ID #:2350

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 07:54 |
| S40 | 1283 | S33 or S34 or S35 or S36 or S37 or S38 or S39 | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S41 | 2525 | S32 or S40 | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S42 | 103 | S41 and (hand near4 (hold or held)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S43 | 11 | S41 and ((fan or blower) near3 (cool or cold)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 08:26 |
| S44 | 1306 | S41 and ((button or control or switch or knob)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:16 |
| S45 | 282 | S44 and ((button or control or switch or knob) with first) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:16 |
| S46 | 251 | S44 and ((button or control or switch or knob) with second) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:17 |
| S47 | 206 | S45 and S46 | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:17 |
| S48 | 74 | S44 and ((button or control or switch or knob) near2 first) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:17 |
| S49 | 65 | S44 and ((button or control or switch or knob) near2 second) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:17 |
| S50 | 38 | S48 and S49 | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:18 |
| S51 | 498 | S41 and ((button or control or switch or knob) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:19 |
| S52 | 41 | S51 and ((button or control or switch or knob) near2 first) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:19 |
| S53 | 39 | S51 and ((button or control or switch or knob) near2 second) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:20 |
| S54 | 21 | S52 and S53 | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:20 |
| S55 | 20 | S33 and ((button or control or switch or knob) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 10:33 |
| S56 | 20 | S33 and ((button or control or switch or knob or dial or toggle) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 10:34 |
| S57 | 20 | S33 and ((button or control or switch or knob or dial or toggle or actuator) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 10:34 |
| S58 | 1 | "7384255".pn. | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:00 |
| S59 | 91 | ("3016451" \| "3381812" \| "3841000" \| "4152367" \| "4665492" \| "4749347" \| "4844373" \| "4928897" \| "4961154" \| "5169081" \| "5257657" \| "5263585" \| "5293996" \| "5303141" \| "5312224" \| "5340433" \| "5402351" \| "5474719" \| "5503785" \| "5578227" \| "5587913" \| "5633021" \| "5637175" \| "5695707" \| "5738817" \| "5764521" \| "5816466" \| "5866058" \| "5868296" \| "5893404" \| "5900207" \| "5932055" \| "5936861" \| | US-PGPUB; USPAT; | OR | ON | 2014/06/27 08:02 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "5943235" \| "5968561" \| "6004124" \| "6041991" \| "6054[illegible]" \| "[illegible]" \| "[illegible]" \| "6119567" \| "6127492" \| "6129872" \| "6162378" \| "6165406" \| "6193923" \| "6214279" \| "6228923" \| "6257517" \| "6261077" \| "6322728" \| "6557742" \| "6572228" \| "6645412" \| "6685866" \| "6722872" \| "6730252" \| "6749414" \| "6776602" \| "6814907" \| "6866807" \| "6923634" \| "7026574").PN. OR ("7384255").URPN. | USOCR | | | |
| S60 | 12 | S59 and (motor with (reverse or opposite or clockwise)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:03 |
| S61 | 5 | S59 and (retract) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:27 |
| S62 | 18 | S59 and (strand) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:28 |
| S63 | 2 | S59 and (button) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:48 |
| S64 | 40 | S59 and ((button or control or switch or knob or dial or toggle or actuator) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:51 |
| S65 | 16 | S59 and ((button or switch or knob or dial or toggle or actuator or rocker) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:52 |
| S66 | 841 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S67 | 500 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S68 | 1339 | S66 or S67 | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S69 | 271 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S70 | 421 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S71 | 504 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S72 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S73 | 28 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S74 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S75 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S76 | 1283 | S69 or S70 or S71 or S72 or S73 or S74 or S75 | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S77 | 2525 | S68 or S76 | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S78 | 194 | S77 and ((button or switch or knob or dial or toggle or actuator or rocker) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S79 | 145 | S77 and ((button or switch or knob or dial or toggle or actuator or rocker) with (motor or drive)) | US-PGPUB; | OR | ON | 2014/06/27 09:04 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S80 | 824 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:53 |
| S81 | 160 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:53 |
| S82 | 982 | S80 or S81 | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:54 |
| S83 | 73 | S82 and fan | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:54 |
| S84 | 208 | S82 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:55 |
| S85 | 25 | S84 and fan | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:55 |
| S86 | 60 | S84 and (fan or blower) | US-PGPUB; USPAT | OR | ON | 2014/06/27 12:37 |
| S87 | 19 | S84 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) with (fan or blower)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 12:38 |
| S88 | 78 | S82 and ((button or switch or knob or dial or toggle or actuator or rocker) with (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 12:41 |
| S89 | 841 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S90 | 500 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S91 | 1339 | S89 or S90 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S92 | 271 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S93 | 421 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S94 | 504 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S95 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S96 | 28 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S97 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S98 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S99 | 1283 | S92 or S93 or S94 or S95 or S96 or S97 or S98 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S100 | 2525 | S91 or S99 | US- | OR | ON | 2014/07/02 |

Case 2:26-cv-01592-MEMF-PVC Document 35-5 Filed 03/23/26 Page 287 of 583
Page ID #:2353

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | US-PGPUB; USPAT | | | 10:00 |
| S101 | 824 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S102 | 160 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S103 | 982 | S101 or S102 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S104 | 3507 | S100 or S103 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S105 | 223 | S104 and ((button or switch or knob or dial or toggle or actuator or rocker) with (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:01 |
| S106 | 178 | S105 and ((first same second)) | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:02 |
| S107 | 35 | S105 and ((button or switch or knob or dial or toggle or actuator or rocker) with (first and second)) | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:02 |
| S108 | 865 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:16 |
| S109 | 249 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:16 |
| S110 | 1019 | S108 or S109 | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:16 |
| S111 | 56 | S110 and fan | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:17 |
| S112 | 1 | us-20010033037-$.did. | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:32 |
| S113 | 2 | "3281576".pn. or "4059204".pn. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:17 |
| S114 | 5 | (8221669\|8236227\|8439665).pn. or us-20120258190-$.did. or us-20130234366-$.did. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:20 |
| S115 | 861 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S116 | 525 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S117 | 1383 | S115 or S116 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S118 | 274 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S119 | 425 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S120 | 561 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S121 | 77 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S122 | 348 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S123 | 32 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S124 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S125 | 1684 | S118 or S119 or S120 or S121 or S122 or S123 or S124 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S126 | 2952 | S117 or S125 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S127 | 830 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S128 | 164 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S129 | 992 | S127 or S128 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S130 | 3944 | S126 or S129 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S131 | 32 | S130 and ((fan or blower) near3 (cool or cold)) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S132 | 11 | S130 and ((port) near (cool$4 or cold)) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:53 |
| S133 | 1407 | S130 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:56 |
| S134 | 1558 | S130 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice) or orifice) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:56 |
| S135 | 263 | S134 and (fan or blower) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:57 |
| S136 | 56 | S130 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice) or orifice) with (fan or blower)) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:58 |
| S137 | 868 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S138 | 540 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S139 | 1405 | S137 or S138 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S140 | 275 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S141 | 425 | 425/458.ccls. | US-PGPUB; | OR | ON | 2015/02/20 08:03 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S142 | 616 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S143 | 85 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S144 | 379 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S145 | 36 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S146 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S147 | 1780 | S140 or S141 or S142 or S143 or S144 or S145 or S146 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S148 | 3063 | S139 or S147 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S149 | 835 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S150 | 167 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S151 | 1000 | S149 or S150 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S152 | 4063 | S148 or S151 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S153 | 32 | S152 and ((fan or blower) near3 (cool or cold)) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:04 |
| S154 | 12 | S152 and ((port) near (cool$4 or cold)) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:04 |
| S155 | 1482 | S152 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:05 |
| S156 | 1640 | S152 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice) or orifice) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:05 |
| S157 | 274 | S156 and (fan or blower) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:05 |
| S158 | 59 | S152 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice) or orifice) with (fan or blower)) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:06 |
| S159 | 867 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:50 |
| S160 | 249 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:50 |
| S161 | 1021 | S159 or S160 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:50 |
| S162 | 57 | S161 and fan | US- | OR | ON | 2015/02/20 |

Case 2:26-cv-01592-MEMF-PVC Document 35-5 Filed 03/23/26 Page 290 of 583
Page ID #:2356

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 08:51 |
| S177 | 1 | us-20160031141-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 09:52 |
| S178 | 1 | "9102098".pn. | US-PGPUB; USPAT | OR | ON | 2016/11/08 09:53 |
| S179 | 1 | us-20160285028-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 10:14 |
| S180 | 1 | us-20160185028-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 10:15 |
| S181 | 16 | (dilworth near2 (pete or peter)).in. or (boque near2 (max or maxwell)).in. | US-PGPUB; USPAT | OR | ON | 2016/11/08 13:54 |
| S182 | 1 | (wobble near works).as. or (wobble near works).aanm. | US-PGPUB; USPAT | OR | ON | 2016/11/08 13:55 |
| S183 | 15 | (5853774\|6162378\|6776602\|9102098\|3559241\|3604597\|3887319\|5121329\|5169587\|6129872\|6238613\|6500374\|6558059\|8262304\|8926882).pn. | US-PGPUB; USPAT | OR | ON | 2016/11/08 14:52 |
| S184 | 3 | us-20010033037-$.did. or us-20010030383-$.did. or us-20070029693-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 15:35 |
| S185 | 7 | us-20050129941-$.did. or us-20050288813-$.did. or us-20070228590-$.did. or us-20080197116-$.did. or us-20080197116-$.did. or us-20080213419-$.did. or us-20100147465-$.did. or us-20100327479-$.did. or us-201100766496-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 16:20 |
| S186 | 8 | us-20050129941-$.did. or us-20050288813-$.did. or us-20070228590-$.did. or us-20080197116-$.did. or us-20080213419-$.did. or us-20100147465-$.did. or us-20100327479-$.did. or us-20110076496-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 16:22 |
| S187 | 4 | us-20110079936-$.did. or us-20110196660-$.did. or us-20120070523-$.did. or us-20130209600-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 16:35 |
| S188 | 1 | "6460481".pn. | US-PGPUB; USPAT | OR | ON | 2016/11/08 17:41 |
| S189 | 890 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S190 | 0 | 425/37375.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S191 | 661 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S192 | 278 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S193 | 429 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S194 | 878 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S195 | 250 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S196 | 846 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S197 | 170 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S198 | 586 | B29C47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S199 | 425 | B29C47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S200 | 60 | B29C47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S201 | 71 | B05C17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S202 | 770 | B29C67/0051.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S203 | 1191 | B29C67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S204 | 836 | B29C67/0085.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S205 | 1817 | B33Y10/00.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S206 | 1220 | B33Y30/00.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S207 | 8572 | S189 or S191 or S192 or S193 or S194 or S195 or S196 or S197 or S198 or S199 or S200 or S201 or S202 or S203 or S204 or S205 or S206 | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:32 |
| S208 | 3608 | S207 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:38 |
| S209 | 130 | S208 and (hand near4 (hold or held)) | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:39 |
| S210 | 1133 | S208 and ((button or control or switch or knob or dial or toggle or actuator or rocker) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2016/11/09 12:29 |
| S211 | 390 | S210 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same ((button or control or switch or knob or dial or toggle or actuator or rocker) same (motor or drive))) | US-PGPUB; USPAT | OR | ON | 2016/11/09 12:30 |
| S212 | 4 | S208 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same (port near (cool$4 or cold))) | US-PGPUB; USPAT | OR | ON | 2016/11/09 13:25 |
| S213 | 5 | S208 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same3 (port near (cool$4 or cold))) | US-PGPUB; USPAT | OR | ON | 2016/11/09 13:25 |
| S214 | 53 | S210 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same ((button or control or switch or knob or dial or toggle or actuator or rocker) same (motor or drive) same gear)) | US-PGPUB; USPAT | OR | ON | 2016/11/09 14:35 |
| S215 | 2 | S210 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same ((button or control or switch or knob or dial or toggle or actuator or rocker) same (motor or drive) same gear same (vary or variable))) | US-PGPUB; USPAT | OR | ON | 2016/11/09 14:36 |
| S216 | 20 | S208 and ((vary or varies or varied or variable) near3 (extrusion or extruder) near3 rate) | US-PGPUB; USPAT | OR | ON | 2016/11/09 15:19 |
| S217 | 60 | B29C47/0805.cpc. | US-PGPUB; | OR | ON | 2016/11/10 10:17 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S218 | 890 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S219 | 661 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S220 | 278 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S221 | 429 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S222 | 878 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S223 | 250 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S224 | 846 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S225 | 170 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S226 | 586 | B29C47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S227 | 425 | B29C47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S228 | 71 | B05C17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S229 | 773 | B29C67/0051.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S230 | 1193 | B29C67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S231 | 842 | B29C67/0085.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S232 | 1845 | B33Y10/00.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S233 | 1238 | B33Y30/00.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S234 | 8607 | S218 or S219 or S220 or S221 or S222 or S223 or S224 or S225 or S226 or S227 or S217 or S228 or S229 or S230 or S231 or S232 or S233 | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S235 | 2089 | S234 and (extruder) | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S236 | 86 | S235 and (extruder near3 tube) | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:49 |
| S237 | 157 | S235 and (extruder near2 mount$3) | US-PGPUB; USPAT | OR | ON | 2016/11/10 12:13 |
| S238 | 10 | S235 and (extruder near2 mount$3 near2 end) | US- | OR | ON | 2016/11/10 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 12:14 |
| S239 | 66 | S235 and ((extruder near2 mount$3) same (nozzle or die)) | US-PGPUB; USPAT | OR | ON | 2016/11/10 12:16 |
| S240 | 120 | S235 and (extruder with (tube and end)) | US-PGPUB; USPAT | OR | ON | 2016/11/10 13:38 |
| S241 | 42 | (US-20140154347-$ or US-20030137077-$ or US-20120219699-$ or US-20130164960-$ or US-20120161350-$ or US-20120121748-$ or US-20110076495-$ or US-20100021580-$ or US-20120189729-$ or US-20090035405-$ or US-20080213419-$ or US-20070003656-$ or US-20060269639-$ or US-20060051442-$ or US-20040232165-$ or US-20010033037-$ or US-20070029693-$ or US-20160185028-$ or US-20160303789-$ or US-20160059481-$ or US-20150037446-$).did. or (US-4552287-$ or US-3665158-$ or US-6722872-$ or US-3953006-$ or US-3750905-$ or US-6162378-$ or US-5853774-$ or US-7384255-$ or US-8448825-$ or US-4676851-$ or US-5589125-$ or US-4033742-$ or US-3281576-$ or US-4059204-$ or US-8236227-$ or US-3604597-$ or US-3559241-$ or US-6558059-$ or US-6460481-$ or US-9266286-$ or US-5889064-$).did. | US-PGPUB; USPAT | OR | ON | 2016/11/10 18:31 |
| S242 | 6 | S241 and (insulator or insulate or insulation) | US-PGPUB; USPAT | OR | ON | 2016/11/10 18:32 |
| S243 | 11 | (US-20140154347-$ or US-20120219699-$ or US-20080213419-$ or US-20070003656-$ or US-20040232165-$).did. or (US-4552287-$ or US-3665158-$ or US-6162378-$ or US-5853774-$ or US-3604597-$ or US-6460481-$).did. | US-PGPUB; USPAT | OR | ON | 2016/11/12 16:33 |
| S244 | 4 | S243 and circuit | US-PGPUB; USPAT | OR | ON | 2016/11/12 16:33 |
| S245 | 4 | S243 and circuit$2 | US-PGPUB; USPAT | OR | ON | 2016/11/12 16:33 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S163 | 1 | 425/376.1.ccls. | | OR | ON | 2015/02/20 08:29 |
| S164 | 0 | 425/375.ccls. | | OR | ON | 2015/02/20 08:29 |
| S165 | 0 | 425/87.ccls. | | OR | ON | 2015/02/20 08:29 |
| S166 | 0 | 425/458.ccls. | | OR | ON | 2015/02/20 08:29 |
| S167 | 0 | 425/458.ccls. | | OR | ON | 2015/02/20 08:29 |
| S168 | 0 | b29c67/0055.cpc. | | OR | ON | 2015/02/20 08:29 |
| S169 | 0 | b29c47/862.cpc. | | OR | ON | 2015/02/20 08:29 |
| S170 | 0 | b29c47/364.cpc. | | OR | ON | 2015/02/20 08:30 |
| S171 | 0 | b29c47/0805.cpc. | | OR | ON | 2015/02/20 08:30 |
| S172 | 0 | b05c17/0053.cpc. | | OR | ON | 2015/02/20 08:30 |
| S173 | 1 | 156/498.ccls. | | OR | ON | 2015/02/20 08:30 |
| S174 | 0 | 156/368.ccls. | | OR | ON | 2015/02/20 08:30 |
| S175 | 0 | 425/378.2.ccls. | | OR | ON | 2015/02/20 08:49 |
| S176 | 0 | 425/72.2.ccls. | | OR | ON | 2015/02/20 08:50 |

**11/13/2016 1:56:30 PM**
**C:\Users\lhohenbrink\Documents\EAST\Workspaces\14821399 Hand-Held 3D Printer CON.wsp**

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 3

| Complete if Known | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1* | US-3,281,576 | 10-25-1966 | Cooper et al. | |
| | A2* | US-3,665,158 | 05-23-1972 | Froedge | |
| | A3* | US-4,059,204 | 11-22-1977 | Duncan et al. | |
| | A4* | US-4,552,287 | 11-12-1985 | Dziki | |
| | A5* | US-4,597,821 | 07-01-1986 | Munro | |
| | A6* | US-4,681,524 | 07-21-1987 | Ikeda et al. | |
| | A7* | US-5,853,774 | 12-29-1998 | Dreve | |
| | A8* | US-6,162,378 | 12-19-2000 | Bedal et al. | |
| | A9* | US-6,776,602 | 08-17-2004 | Swanson et al. | |
| | A10* | US-8,221,669 | 07-17-2012 | Batchelder et al. | |
| | A11* | US-8,236,227 | 08-07-2012 | Batchelder et al. | |
| | A12* | US-8,439,665 | 05-14-2013 | Batchelder et al. | |
| | A13* | US-9,102,098 | 08-11-2015 | Dilworth et al. | |
| | A14* | US-2001/0033037-A1 | 10-25-2001 | Nitschke et al. | |
| | A15* | US-2001/0030383-A1 | 10-18-2001 | Swanson et al. | |
| | A16* | US-2003/0137077-A1 | 07-24-2003 | Lee et al. | |
| | A17* | US-2007/0003656-A1 | 01-04-2007 | LaBossiere et al. | |
| | A18* | US-2007/0029693-A1 | 02-08-2007 | Wigand et al. | |
| | A19* | US-2012/0219699-A1 | 08-30-2012 | Pettersson et al. | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B1 | CN-101172428-A | 05-07-2008 | Lite On Technology Corp | | X |
| | B2 | CN-202399493-U | 08-29-2012 | Shenzhen Weistek Technology Co.,ltd | | X |
| | B3 | CN-203592687-U | 05-14-2014 | Wobble Works Inc | | X |
| | B4 | JP-S 61-141959-A | 06-28-1986 | Bosch Gmbh Robert | | X |
| | B5 | JP-S63-205216-A | 08-24-1988 | Junkosha Co Ltd | | X |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

DM_US 68129393-1.092749.0213

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

PTO/SB/08a (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Sheet | 2 | of | 3 |
|---|---|---|---|

| ***Complete if Known*** | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A20* | US-2012/0258190-A1 | 10-11-2012 | Batchelder et al. | |
| | A21* | US-2013/0234366-A1 | 09-12-2013 | Batchelder et al. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] -Number[4] -Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. * CITE NO.: Those application(s) which are marked with an single asterisk (*) next to the Cite No. are not supplied (under 37 CFR 1.98(a)(2)(iii)) because that application was filed after June 30, 2003 or is available in the IFW. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | Complete if Known | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | **Application Number** | 14/821,399-Conf. #9856 |
| | | | | **Filing Date** | August 7, 2015 |
| | | | | **First Named Inventor** | Peter DILWORTH |
| | | | | Art Unit | 1743 |
| *(Use as many sheets as necessary)* | | | | Examiner Name | L. D. Hohenbrink |
| Sheet | 3 | of | 3 | Attorney Docket Number | 092749-0213 |

## NON PATENT LITERATURE DOCUMENTS

| Examiner Initials* | Cite No.[1] | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc.), date, page(s), volume-issue number(s), publisher, city and/or country where published. | T[2] |
|---|---|---|---|
| | C1 | Donutman.sub.--2000 "Plastic Welding Gun (Plastruder MK4)" published Sep. 19, 2010, http://www.thingiverse.com/thing:4156, last accessed Jul. 3, 2014 | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| Examiner Signature | /LAWRENCE D. HOHENBRINK, JR./ | Date Considered | 11/09/2016 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] Applicant's unique citation designation number (optional). [2] Applicant is to place a check mark here if English language Translation is attached.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 1

| Complete if Known | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | US-5,672,312 | 09-30-1997 | Almquist et al. | |
| | A2 | US-6,117,385 | 09-12-2000 | Chartoff et al. | |
| | A3 | US-7,959,847 | 06-14-0211 | Wicker et al. | |
| | A4 | US-2006/0198918-A1 | 09-07-2006 | Koyagi et al. | |
| | A5 | US-2009/0133800-A1 | 05-28-2009 | Morohoshi et al. | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14821399 |
| **Filing Date:** | 07-Aug-2015 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Filer:** | Nathan Scott Smith/Sharon Fennessy |
| **Attorney Docket Number:** | 092749-0213 |

Filed as Small Entity

**Filing Fees for** **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| SUBMISSION- INFORMATION DISCLOSURE STMT | 2806 | 1 | 90 | 90 |
| | | **Total in USD ($)** | | **90** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 28127249 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Nathan Scott Smith/Sharon Fennessy |
| **Filer Authorized By:** | Nathan Scott Smith |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 20-JAN-2017 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 21:31:28 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $90 |
| RAM confirmation Number | 012317INTEFSW00016075502624 |
| Deposit Account | |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213-IDS.pdf | 112049<br>bbb215f8ce8ef320fffd033f53d7234457120319 | yes | 3 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Transmittal Letter | 1 | 2 |
| Information Disclosure Statement (IDS) Form (SB08) | 3 | 3 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30585<br>2cf308b766c92d4836ef2e59ce558efd25168b00 | no | 2 |

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 142634 |
|---|---|

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Docket No.: 092749-0213
(PATENT)

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Patent Application of:<br>Peter DILWORTH et al. | : | Customer Number: 31824 |
| Application No.: 14/821,399 | : | Confirmation No.: 9856 |
| Filed: August 7, 2015 | : | Art Unit: 1743 |
| For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | : | Examiner: L. D. Hohenbrink |

**<u>INFORMATION DISCLOSURE STATEMENT</u>**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Pursuant to 37 C.F.R. § 1.56, 1.97, and 1.98, the attention of the United States Patent and Trademark Office is hereby directed to the references listed on the attached PTO/SB/08. It is respectfully requested that the information be expressly considered during the prosecution of the above-identified application, and that the references be made of record therein and appear among the "References Cited" on any patent to issue therefrom.

This Information Disclosure Statement is filed more than three months after the filing date of this application, and after the mailing date of a first Office Action on the merits, but before the mailing date of any of a Final Action under 37 C.F.R.§ 1.113, a Notice of Allowance under 37 C.F.R. § 1.311 or an action that otherwise closes prosecution in this application (37 C.F.R. § 1.97(c)).

In accordance with 37 C.F.R. § 1.97(g), the filing of this Information Disclosure Statement shall not be construed as a representation that a search has been made. In accordance with 37 C.F.R. § 1.97(h), the filing of this Information Disclosure Statement shall not be construed to be an admission that the information cited in this Information Disclosure Statement is, or is considered to be, material to the patentability as defined in 37 C.F.R. § 1.56(b).

Please charge Deposit Account No. 50-2624 in the amount of $90.00 covering the fee set forth in 37 C.F.R. § 1.17(p).

The Director is hereby authorized to charge any deficiency in the fees filed, asserted to be filed or which should have been filed herewith to Deposit Account No. 50-2624.

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

/Nathan S. Smith/
Nathan S. Smith
Registration No. 53,615

Please recognize our Customer No. 31824 as our correspondence address.

4 Park Plaza
Suite 1700
Irvine, CA 92614-2559
Phone: (949) 757-6018 NSS:snf
Facsimile: (949) 851-9348
Date: January 20, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

31824 7590 02/03/2017
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

| EXAMINER | |
|---|---|
| HOHENBRINK JR, LAWRENCE D | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1743 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/03/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mweipdocket@mwe.com

| *Applicant-Initiated Interview Summary* | Application No. | Applicant(s) | | |
|---|---|---|---|---|
| | 14/821,399 | DILWORTH ET AL. | | |
| | **Examiner** | **Art Unit** | **AIA (First Inventor to File) Status** | **Page** |
| | Lawrence D. Hohenbrink, Jr. | 1743 | No | 1 of 2 |

All participants (applicant, applicant's representative, PTO personnel):

1. Lawrence D. Hohenbrink, Jr. (Examiner); Telephonic
2. Nate Smith (Attorney); Telephonic

**Date of Interview:** 11 January 2017

**Amendment Proposed:** Applicant filed a Preliminary Amendment on 12/14/2016.

**Brief Description of main topic of discussion:** The Applicant filed a preliminary amendment on Wednesday, Dec. 14, 2016. The Office mailed Office Action Non-Final Rejection on Friday, Dec. 16, 2016. In a manner of speaking, the Applicant's filing and the Office's mailing crossed in the mail.

## Issues Discussed:

**Other:**

MPEP 714.01(e) gives guidance for this circumstance.

714.01(e) Amendments Before First Office Action
IV. Preliminary Amendments May Be Disapproved
B. Unduly Interferes With the Preparation of an Office Action
1, When Disapproval is Appropriate

The factors that will be considered for denying entry of preliminary amendments under 37 CFR 1.115 include:

(A) The state of preparation of a first Office action as of the date of receipt (37 CFR 1.6 ) of the preliminary amendment; and

(B) The nature of any changes to the specification or claims that would result from entry of the preliminary amendment.

The entry of a preliminary amendment that would unduly interfere with the preparation of an Office action may be denied if the following two conditions are met:

(A) the examiner has devoted a significant amount of time on the preparation of an Office action before the amendment is received in the Office (i.e., the 37 CFR 1.6 receipt date of the amendment); and

(B) the entry of the amendment would require significant additional time in the preparation of the Office action.

The preliminary amendment filed on 12/14/2016 was not entered because entry of the amendment would unduly interfere with the preparation of the Office action. See 37 CFR 1.115(b)(2). The examiner spent a significant amount of time on the preparation of an Office action before the preliminary amendment was received. On the date of receipt of the amendment, the Examiner had already completed the Office Action and had posted it to the Examiner's reviewer two days earlier.

Furthermore, entry of the preliminary amendment would require significant additional time on the preparation of the Office action. Specifically, entry of the preliminary amendment would require the examiner to prepare a new office action because the preliminary amendment amended existing claims and added ten new claims.

A responsive reply (under 37 CFR 1.111 or 37 CFR 1.113 as appropriate) to the Office action must be timely filed to avoid abandonment.

If the Office action is not a final Office action, applicant may wish to resubmit the amendment along with a responsive reply under 37 CFR 1.111 to ensure proper entry of the amendment.

| | |
|---|---|
| /Lawrence D. Hohenbrink, Jr./<br>Examiner, Art Unit 1743 | /JOSEPH S. DEL SOLE/<br>Supervisory Patent Examiner, Art Unit 1743 |

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable time limit of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicant's responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**

Please further see:

**MPEP 713.04**
**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)**
**37 CFR § 1.2 Business to be transacted in writing**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

31824 7590 03/09/2017
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

| EXAMINER | |
|---|---|
| HOHENBRINK JR, LAWRENCE D | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1743 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/09/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mweipdocket@mwe.com

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

| | |
|---|---|
| **In re Application of** | |
| **DILWORTH ET AL.** | **: DECISION ON REQUEST TO** |
| **Application No.: 14/821,399** | **: PARTICIPATE IN THE PATENT** |
| **Filed: August 07, 2015** | **: PROSECUTION HIGHWAY** |
| **Attorney Docket No.: 092749-0213** | **: PROGRAM AND PETITION** |
| **For: HAND-HELD THREE-** | **: TO MAKE SPECIAL UNDER** |
| **DIMENSIONAL DRAWING DEVICE** | **: 37 CFR 1.102(a)** |

This is a decision on the request to participate in the Patent Prosecution Highway (PPH) program and the petition under 37 CFR 1.102(a), filed December 14, 2016, to make the above-identified application special.

The request and petition are **DENIED**.

## DISCUSSION

A grantable request to participate in the PPH pilot program and petition to make special require:

1. The U.S. application for which participation in the Global/IP5 PPH pilot program is requested must have the same earliest date, whether this is the priority date or filing date, as that of a corresponding national or regional application filed with another Global/IP5 PPH participating office or a corresponding PCT international application for which one of the Global/IP5 PPH participating offices was the International Searching Authority (ISA) or the International Preliminary Examining Authority (IPEA).

2. Applicant must:
    a. Ensure all the claims in the U.S. application must sufficiently correspond or be amended to sufficiently correspond to the allowable/patentable claim(s) in the corresponding Office of Earlier Examination (OEE) application and
    b. Submit a claims correspondence table in English;
3. Examination of the U.S. application has not begun;
4. Applicant must submit:
    a. Documentation of prior office action:
        i. a copy of the office action(s) just prior to the "Decision to Grant a Patent" from each of the Global/IP5 PPH participating office application(s) containing the allowable/patentable claim(s) or

ii. if the allowable/patentable claims(s) are from a "Notification of Reasons for Refusal" then the Notification of Reasons for Refusal or
iii. if the Global/IP5 PPH participating office application is a first action allowance then no office action from the Global/IP5 PPH participating office is necessary should be indicated on the request/petition form or
iv. the latest work product in the international phase of the OEE PCT application;

b. An English language translation of the Global/IP5 PPH participating office action or work product from (4)(a)(i)-(ii) or (iv) above;

5. Applicant must submit:
   a. An IDS listing the documents cited by the Global/IP5 PPH participating office examiner in the Global/IP5 PPH participating office action or work product (unless already submitted in this application)
   b. Copies of the documents except U.S. patents or U.S. patent application publications (unless already submitted in this application);

The request to participate in the PPH pilot program and petition fails to meet condition (3) above.

Regarding the requirement of condition (3), a non-final Office action was mailed on December 16, 2016. Therefore, since examination of the U.S. application has begun, the renewed request filed December 14, 2016, to make the above-identified application special cannot be granted and is hereby **DENIED**.

Telephone inquiries concerning this decision should be directed to JoAnne Burke (571) 272-4584.

All other inquiries concerning the examination or status of the application is accessible in the PAIR system at http://www.uspto.gov/ebc/index.html.

/Charles Kim/
Director (Acting)
Office of Petitions

# Office of Petitions: Decision Count Sheet

Mailing Month: 3

Application No. 14821399

* 1 4 8 2 1 3 9 9 *

For US serial numbers: enter number only, no slashes or commas. Ex: 10123456
For PCT: enter "51+single digit of year of filing+last 5 numbers", Ex. for PCT/US05/12345, enter 51512345

Deciding Official: BURKE, JOANNE

**Count (1) - Palm Credit** 14/821,399

Decision: DENIED

FINANCE WORK NEEDED
Select Check Box for YES ☐

* D E N I E D *

Decision Type: 652 - Petition to make special-PPH

* 6 5 2 *

Notes:

**Count (2)**

Decision: n/a

FINANCE WORK NEEDED
Select Check Box for YES ☐

Decision Type: NONE

Notes:

**Count (3)**

Decision: n/a

FINANCE WORK NEEDED
Select Check Box for YES ☐

Decision Type: NONE

Notes:

Initials of Approving Official (if required)

If more than 3 decisions, attach 2nd count sheet & mark this box ☐

Printed on: 3/6/2017

# Office of Petitions: Routing Sheet

4700

**Application No.** 14821399

**This application is being forwarded to your office for further processing. A decision has been rendered on a petition filed in this application, as indicated below. For details of this decision, please see the document PET.OP.DEC filed on the same date as this document.**

- [ ] **GRANTED**
- [ ] **DISMISSED**
- [x] **DENIED**

Docket No.: 092749-0213 PATENT

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Application of | : | Customer Number: 31824 |
| Peter DILWORTH et al. | : | Confirmation Number: 9856 |
| Application No.: 14/821,399 | : | Group Art Unit: 1743 |
| Filed: August 7, 2015 | : | Examiner: Lawrence D. Hohenbrink, Jr. |
| For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | : | |

**RESPONSE TO NON-FINAL OFFICE ACTION DATED DECEMBER 16, 2016**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Commissioner:

In response to the Office Action dated December 16, 2016 (the "Office Action"), please consider the above-captioned application in view of the following amendments and remarks.

**Amendments to the Claims** begin on Page 2.

**Remarks** begin on Page 6.

## AMENDMENTS TO THE CLAIMS

A complete listing of all claims and their current status is presented below. In the changes made to the following claims, [[deletions are double bracketed]] or ~~shown with strike-through~~, and additions are underlined. This listing of claims will replace all prior versions, and listings, of claims in the application.

**Listing of Claims:**

1.–20. (Canceled)

21. (Currently Amended) A three-dimensional (3D) drawing device comprising:

a housing configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having a first end, a second end, and a port configured for introduction of a strand of feed stock into an internal volume of the housing, [[and]] the housing having at least one cooling port extending between the internal volume and an ambient atmosphere;

a first actuator and a second actuator each coupled to the housing and positioned to be actuated by the user's hand while holding the housing;

a motor disposed within the internal volume and controlled in response to operation of the first actuator and the second actuator;

a gear train operatively coupled with the motor to drive the gear train, disposed within the internal volume to receive the strand of feed stock, and configured to move the strand of feed stock when engaged with the gear train; and

a nozzle assembly disposed at the first end of the housing and at least partially within the housing, the nozzle assembly comprising an extruder, an exit nozzle, and a guide tube, the extruder having a heating element surrounded by an insulator, the guide tube extending between the gear train and the extruder, a first end of the guide tube positioned to receive the strand of feed stock from the gear train, a second end of the guide tube aligned with a chamber of the extruder such that the strand of feed stock is directed into the chamber, the extruder being disposed between the guide tube and the exit nozzle such that rotation of the motor causes the strand to be extruded out of the exit nozzle for permitting the user to draw in free space to form a three-dimensional object.

22. (Previously Presented)The 3D drawing device of claim 21, further comprising a mounting tube having a first end and a second end, and wherein the second end of the guide tube extends into the first end of the mounting tube, and an end of the extruder opposite the nozzle extends into the second end of the mounting tube, the mounting tube holding the second end of the guide tube in alignment with the end of the extruder opposite the nozzle.

23. (Currently Amended) The 3D drawing device of claim 21, ~~further comprising~~ wherein the housing comprises an upper housing and a lower housing, at least one of the upper housing and the lower housing comprising a cooling port of the at least one cooling port proximate to the nozzle.

24. (Currently Amended) The 3D drawing device of claim 23, wherein each of the upper housing and the lower housing comprises [[a]] the cooling port.

25. (Previously Presented) The 3D drawing device of claim 21, wherein the first actuator and the second actuator are axially aligned and disposed on an outer surface of the housing between the first end and the second end.

26. (Currently Amended) The 3D drawing device of claim 21, wherein actuation of the first actuator causes the motor to rotate in a first direction at a first motor rate to extrude the strand of feed stock out of the exit nozzle at a first extrusion rate, and actuation of the second actuator causes the motor to rotate in the first direction at a second motor rate to extrude the strand of feed stock out of the exit nozzle at a second extrusion rate that is greater than the first extrusion rate.

27. (Currently Amended)The 3D drawing device of claim 26, wherein simultaneous actuation of the first and second actuators causes the motor to rotate in ~~the~~ a second direction.

28. (Previously presented) The 3D drawing device of claim 26, further comprising a variable speed control mechanism to adjust one or more of the first extrusion rate and the second extrusion rate.

29–33.(Canceled)

34. (Currently Amended) The 3D drawing device of claim 21, wherein the heating element is positioned adjacent to the exit nozzle and configured to melt the strand of feed stock prior to extrusion through the exit nozzle.

35. (Previously presented) The 3D drawing device of claim 21, wherein the housing comprises at least one cooling port proximate to the exit nozzle, the cooling port in fluid communication with the internal volume.

36. (Currently Amended) The 3D drawing device of claim 21, wherein the wherein the first actuator or the second actuator is configured to selectably cause the motor to rotate in at least a first direction that causes the strand of feed stock to be extruded out of the exit nozzle.

37. (Previously presented) The 3D drawing device of claim 36, wherein the first actuator or the second actuator is configured to selectably cause the motor to rotate in a second direction that is opposite the first direction.

38. (Previously presented) The 3D drawing device of claim 37, wherein the first and second actuators each comprise at least one button.

39. (Currently Amended) The 3D drawing device of claim 38, the first actuator comprises a first button that causes the motor to rotate in the first direction at a first speed such that the strand of feed stock is extruded out of the exit nozzle at a first extrusion rate; and wherein the second actuator comprises a second button that that causes the motor to rotate in the first direction at a second speed such that the strand of feed stock is extruded out of the exit nozzle at a second extrusion rate that is greater than the first rate, wherein simultaneous actuation of the first and second buttons causes the motor to rotate in the second direction.

40. (Currently Amended) The 3D drawing device of claim 21, wherein:

~~the feed stock is provided in the in the form of a strand; and~~

the gear train comprises a final gear having teeth that engage the strand of feed stock such that rotation of the final gear causes the strand of feed stock to linearly move.

41. (Canceled)

42. (Previously presented) The 3D drawing device of claim 21, further comprising a fan configured to provide a flow cooling air at the exit nozzle.

43. (Previously presented) The 3D drawing device of claim 21, wherein the housing comprises a length between the first end and the second end, the length being greater than a maximum transverse extent of the housing.

44. (New) A three-dimensional (3D) drawing device comprising:

an elongate housing having an internal volume and a port that permits insertion of a strand of material into the internal volume;

a gear train disposed within the internal volume to receive and move the strand when engaged with the gear train;

a motor, disposed within the internal volume, operatively coupled with the gear train to drive motion of the strand;

at least one actuator coupled to the housing to actuate the motor to control a movement of the strand; and

a nozzle assembly disposed at a distal end of the housing and comprising an extruder and an exit nozzle, the extruder having a heating element for melting the strand, the extruder being disposed between the gear train and the exit nozzle such that rotation of the motor causes the strand to be melted and extruded out of the exit nozzle to permit the user to draw in free space to form a three-dimensional object.

45. (New) The 3D drawing device of Claim 44, further comprising a guide tube disposed within the housing and extending between the gear train and the extruder, a first end of the guide tube positioned to receive the strand from the gear train, a second end of the guide tube aligned with a chamber of the extruder such that the strand is directed into the chamber.

46. (New) The 3D drawing device of Claim 44, wherein the housing comprises at least one cooling port extending between the internal volume and an ambient atmosphere.

## REMARKS

Claims 21–28 and 34–43 were pending in this application, with Claim 21 being the sole independent claim. The Office Action rejected Claims 21–33. Without prejudice or disclaimer of subject matter, Applicant herein amends Claims 21, 23, 24, 26, 27, 34, 36, 39, and 40, cancels Claim 41, and adds new Claims 44–46. Accordingly, Claims 21–28, 34–40, 42–46 are pending in this application for further consideration. Applicant reserves the right to pursue claims to the previously pending subject matter in the future. Support for these amendments is found in the original disclosure, including, for example, in at least paragraph [0019] and Figures 3A and 3B. No new matter is believed to have been introduced to the application by this amendment.

**Summary of the Interview**

Applicant and Applicant's representative express their appreciation for the telephonic interviews conducted on January 11, 2017 and March 16, 2017, attended by Examiner Lawrence D. Hohenbrink, Jr. and Applicant's representative Nathan S. Smith.

In the first interview of January 11, 2017, Applicant's representative and Examiner Hohenbrink discussed the entry of the Preliminary Amendment and the PPH Request submitted on December 14, 2016. Examiner Lawrence D. Hohenbrink, Jr. denied entry of Applicant's Preliminary Amendment and maintained the Office Action in force.

In the second interview of March 16, 2017, Applicant's representative and Examiner Hohenbrink discussed the Office Action and U.S. Patent Application Publication No. 2008/0213419 to Skubic et al. ("Skubic") in view of U.S. Patent Application Publication No. 2004/0232165 to Lee ("Lee") and U.S. Patent No. 6,460,481 to Young ("Young") and further in view of U.S. Patent No. 3,604,597 to Pohl et al. ("Pohl"). In addition, Examiner Hohenbrink and Applicant's representative also discussed the amendments presented above and the arguments presented herein. Examiner Hohenbrink agreed to consider further the response.

**Claim Rejections Under 35 U.S.C. § 112**

Claims 23, 24, 27, and 31 were rejected under 35 U.S.C. § 112, second paragraph, as allegedly being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Applicant has amended Claims 23, 24, and 27 and canceled Claim 31. Therefore, Applicant respectfully submits that the rejections are overcome by the accompanying amendments to the claims.

**Claim Rejections Under 35 USC § 103(a)**

Claims 21 and 23–25 were rejected under 35 U.S.C. § 103(a) as allegedly being unpatentable over Skubic in view of Lee and Young and further in view of Pohl. Claim 22 was rejected under § 103(a) as allegedly being unpatentable over Skubic, in view of Lee, Young, and Pohl, and further in view of U.S. Patent No. 4,552,287 to Dziki ("Dziki"). Claims 26–28 were rejected under § 103(a) as allegedly being unpatentable over Skubic, in view of Lee, Young, and Pohl, and further in view of U.S. Patent Application No. 2012/0219699 to Pettersson ("Pettersson"). Claims 29–33 were rejected under § 103(a) as allegedly being unpatentable over Skubic, in view of Young, and further in view of Pettersson. Applicant respectfully disagrees with the rejection of independent Claim 21. However, solely to expedite prosecution, Applicant has amended Claim 21. Applicant respectfully submits that the applied references do not teach or otherwise suggest each and every feature of Claim 21, whether considered alone or in combination.

Independent Claim 21

Independent Claim 21 recites a three-dimensional (3D) drawing device comprising, *inter alia*, "a housing configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having . . . a port configured for introduction of a strand of feed stock," "a gear train . . . configured to move the strand of feed stock when engaged with the gear train," and a nozzle assembly "comprising an extruder, an exit nozzle, and a guide tube, . . . a first end of the guide tube positioned to receive the strand of feed stock from the gear train, a second end of the guide tube aligned with a chamber of the extruder such that the strand of feed stock is directed into the chamber" wherein "the extruder being disposed between the guide tube and the exit nozzle such that rotation of the motor causes the strand to be extruded out of the exit nozzle for permitting the user to draw in free space to form a three-dimensional object."

Applicant respectfully submits that Skubic does not teach or otherwise suggest each and every feature of independent Claim 21, particularly with respect to at least the features of "a

three-dimensional (3D) drawing device" that is "configured to accept a strand of feed stock and to be held in a user's hand and shaped to allow manipulation of the housing like a pen" to permit "the user to draw in free space to form a three-dimensional object."

Skubic teaches a "two-stage pump system 10, which is a suitable extrusion system for use as an extrusion head in an extrusion-based layered manufacturing system . . ."[1] As illustrated in Figures 1A and 1B, reproduced below, "pump system 10 includes frame 12, inlet portion 14, drive motors 16 and 18, guide tube 20, filament delivery assembly 22, and screw pump 24."[2]



**Skubic, Figure 1A**




**Skubic, Figure 1B**

Skubic does not teach or otherwise suggest a "three-dimensional (3D) drawing device," as discussed further below with regard to Lee and Pohl,[3] or that a housing of the two-stage pump system 10 is configured "to be held in a user's hand and shaped to allow manipulation of the housing like a pen" to permit "the user to draw in free space to form a three-dimensional object." Skubic, whether considered alone or in combination, does not teach or otherwise suggest that the two-stage pump system 10 is a "three-dimensional (3D) drawing device" that is compact enough to "be held in a user's hand" to permit "the user to draw in free space to form a three-dimensional object," as recited in Claim 21.

---

[1] Skubic, ¶ [0022].
[2] *Id.*
[3] Applicant discusses further below that the glue applicators of Lee and Pohl are not "three-dimensional (3D) drawing devices" for at least the reason that none of these prior art devices or materials will immediately produce a freestanding 3D drawing or structure in a single, vertical stroke.

Nevertheless, the Office Action refers to Lee to remedy the deficiencies of Skubic.[4] Even if the proposed combination was proper,[5] Applicant respectfully submits that neither Lee nor Skubic teach or otherwise suggest each and every feature of Claim 21.

Instead, Lee teaches a glue applicator that "comprises a gun body 10, a driving mechanism 20, and a heating device 30."[6] As illustrated in Figure 1, reproduced below, "[t]he heating device 30 is mounted in the gun body 10. The heating device 30 includes a heating barrel 31, a plurality of heat conductive plates 33, and an ejection nozzle 36."[7]




FIG. 1

**Lee, Figure 1**

Applicant respectfully submits that Lee does not teach or otherwise suggest a "three-dimensional (3D) drawing device" that permits "the user to draw in free space to form a three-dimensional object," as recited in Claim 21. Lee instead describes a glue applicator that uses a glue stick, not a "3D drawing device" that uses "a strand"[8] of feed stock as recited in Claim 21. The glue applicator of Lee cannot be considered a 3D drawing device any more than a bottle of

---

[4] Office Action, page 4
[5] Applicant does not concede that the proposed combination is proper for at least the reason that the glue applicator of Lee is directed to an entirely different function and purpose than that of the two-stage pump system 10 of Skubic "which is a suitable extrusion system for use as an extrusion head in an extrusion-based layered manufacturing system." Skubic, ¶ [0022]. Applicant reserves the right to present further arguments regarding the combinability of Lee and Skubic.
[6] Lee, ¶ [0022].
[7] *Id.* at ¶ [0025].
[8] The definition of the claim term "strand" is as follows: "A single thin length of something such as thread, fiber, or wire, especially as twisted together with others." *See* Oxford Dictionary, *available at* http://www.oxforddictionaries.com/us/definition/american_english/strand (last accessed August 11, 2016). The glue stick of D1 and D2 is not a "strand," or a thin length of thread, fiber, or wire.

craft glue, a caulking gun, a mechanical pencil, or a paintbrush. These prior art devices, after numerous repeated applications of glue, caulk, pencil lead, or paint, and with significant curing or drying time, may deposit material in layers over time. However, these prior art devices are not in and of themselves 3D drawing devices; unlike the claimed 3D drawing device, none of these prior art devices or materials will immediately produce a freestanding 3D drawing or structure in a single, vertical stroke. Indeed, there is no external factor, including curing or drying time, that can be manipulated to enable these prior art devices to easily and immediately create a 3D drawing or structure in the manner made possible by using the claimed 3D drawing device. There is no manner of using the glue applicator of Lee (or any of the other prior art devices of the applied references) that allows an artist to create a complex, intricately detailed 3D drawing or structure with the speed and facility made possible by using the presently claimed 3D drawing device.

Applicant submits that glue applicators, such as the glue applicator described by Lee, simply provide a manner of applying an adhesive or sealant in a molten, low-viscosity state that eventually cools and hardens to join or seal two parts together. These types of glue applicators are an alternative to using other glues, staples, tacks, or nails to join two parts together. When applied, the glue is runny, separates easily, and does not form a solid or semi-solid form when extruded from the glue applicator. Thus, Lee, whether considered alone or in combination, fails to teach or otherwise suggest a "three-dimensional (3D) drawing device" that permits "the user to draw in free space to form a three-dimensional object," as recited in Claim 21.

Young also fails to remedy the deficiencies of Skubic and Lee, even if the proposed combination was proper.[9] Instead Young teaches a cake decorator 10 comprising "a housing 12 to the front of which is secured a removable preferably transparent cylinder 14."[10] As described by Young, "[i]n use, the reservoir cylinder 14 is unscrewed from the housing 12 and filled with the selected icing or other fluid paste."[11] With the piston retracted, the cylinder is reinstalled on

---

[9] Applicant does not concede that the proposed combination is proper for at least the reason that the cake decorator of Young is directed to an entirely different function and purpose than that of the two-stage pump system 10 of Skubic, "which is a suitable extrusion system for use as an extrusion head in an extrusion-based layered manufacturing system." Skubic, ¶ [0022]. Applicant reserves the right to present further arguments regarding the combinability of Young, Lee, and Skubic.
[10] Young, col. 2:22–25.
[11] *Id.* at col. 3:36–38

the housing. Thereafter, the reservoir cylinder and housing 12 are gripped with one hand and the handle 28 with the other hand."[12]

Similar to the glue applicator of Lee discussed above, the Young cake decorator 10 does not teach or otherwise suggest a "three-dimensional (3D) drawing device" that permits "the user to draw in free space to form a three-dimensional object," as recited in Claim 21. As similarly discussed above with respect to Lee, in operating Young's device cake frosting, when applied, is runny, separates easily, and does not immediately produce a freestanding 3D drawing or structure in a single, vertical stroke. Further, as disclosed in Young, the cylinder 14 of the cake decorator 10 is "filled with the selected icing or other fluid paste." Icing or other fluid paste is not a "strand" or a thin length of thread, fiber, or wire, as described above.

Finally, the Office Action relies on Pohl for allegedly teaching "at least one cooling port extending between the internal volume and an ambient atmosphere."[13] Although Pohl teaches "a dispensing gun . . . including a housing (100) preferably formed with enlarged openings for permitting heat to dissipate,"[14] Pohl fails to remedy at least the above-noted deficiencies of Skubic, Lee, and Young. Pohl does not teach or otherwise suggest a "three-dimensional (3D) drawing device" that permits "the user to draw in free space to form a three-dimensional object," as recited in Claim 21. As with Lee, Pohl's dispensing gun is a glue applicator that uses a "thermoplastic adhesive rod R"[15] to complete any of "numerous purposes where quick-setting adhesives are desired or required."[16] Thus, as with the glue applicators discussed above and the other applied references, Pohl fails to teach or otherwise suggest each and every feature of Claim 21, whether considered alone or in combination.

Furthermore, the Office Action has not shown any reason or motivation whereby a person of skill in the art would modify the devices of Skubic, Lee, Young, and Pohl individually or in combination to provide a device that provides the unique features and advantages of the device recited in Claim 21.

Indeed, not only is the device of Claim 21 capable of something completely different than the devices discussed in the applied references, but Applicant also notes that the features of the

[12] *Id.* at col. 3:38–41
[13] Office Action, page 6.
[14] Pohl, Abstract.
[15] *Id.* at col. 2:23, 24.
[16] *Id.* at col. 1:13–16.

3D drawing device recited in Claim 21 (which are not all taught or suggested in the applied references) make a substantial contribution to the working of the device of Claim 21. For example, Claim 21 indicates that the gear train and housing are "configured to accept a strand of feed stock and to be held in a user's hand." Further, the "three-dimensional (3D) drawing device" permit "the user to draw in free space to form a three-dimensional object." Thus, the configuration of the housing and gear train, along with the use of a strand of feedstock, enable the 3D drawing device to create a product that is completely different from the well understood and expected product of the extrusion system, glue applicators, and cake frosting applicator disclosed in Skubic, Lee, Young, and Pohl. Indeed, the 3D drawing device of Claim 21 not only uses different structures, components, and materials, but produces a completely different result than that of the devices in Skubic, Lee, Young, and Pohl.

For at least the reasons described above regarding the applied references, Applicant respectfully submits that the cited portions and proposed combination of the applied references are not understood to disclose or teach each and every feature of independent Claim 21. Accordingly, it is respectfully submitted that independent Claim 21 is in condition for allowance.

Video Demonstration of the Substantial Differences Between a Glue Applicator and a 3D Drawing Device.

In order to further illustrate the substantial differences between Applicant's claimed 3D drawing device and the glue applicators of Lee and Pohl, Applicant invites the Examiner to review video demonstrations prepared by Applicant comparing the 3Doodler (a 3D drawing device made by Applicant and an embodiment of the device recited in Claim 1) and a glue applicator. The videos are available at the website: https://www.dropbox.com/sh/cry4ejjfaiwul0q/AADdY-eKIXPvUHjC2R_-GYsza?dl=0.[17] These videos compare the 3D drawing capabilities of the 3Doodler and a glue applicator in (i) drawing up and (ii) drawing a spiral. No external fans were used, and both devices were used under identical circumstances. Further, the timing and hand movements for both devices are the same and nothing was sped up or slowed down. As demonstrated, the glue applicator is not a 3D drawing device because it is incapable of instantly producing a 3D object in free space.

---

[17] Additional videos of Applicant's 3D drawing device in operation can be found at http://the3doodler.com/videos/.

Dependent claims

Applicant respectfully submits that the rejection to Claims 29–33 is rendered moot by cancellation thereof. The other claims currently under consideration in the application are dependent from their respective independent claims discussed above and therefore are believed to be allowable based on their own merit and for at least the reason that they depend from allowable independent base claim. Reconsideration and withdrawal of the rejections of the dependent claims are respectfully requested.

**New Claims 44–46**

Applicant hereby submits new Claims 44–46 for consideration. Claim 44 is an independent claim that is believed to be allowable for reasons similar to that discussed above with respect to Claim 21. Claims 45 and 46 are dependent claims of Claim 21 and are believed to be allowable based on their own merit and for at least the reason that they depend from allowable independent base claim. Accordingly, Applicant respectfully requests the allowance of Claims 44–46.

**Conclusion**

Applicant has made a good faith effort to respond fully to the Office Action and respectfully requests allowance of the present application. Nevertheless, if any undeveloped issues remain or if any issues require clarification, the Examiner is cordially invited to contact Applicant's attorney, at the telephone number below, to resolve any such issues promptly.

Any remarks in support of patentability of one claim should not necessarily be imputed to any other claim, even if similar terminology is used. Any remarks referring to only a portion of a claim should not necessarily be understood to base patentability on solely that portion; rather, patentability must rest on each claim taken as a whole.

Applicant respectfully reserves the right to traverse any of the rejections or assertions in the Office Action, even if not discussed herein, including the right to challenge later whether any of the cited references are prior art. The absence of a reply to a specific rejection, issue, or comment does not signify agreement with or concession of that rejection, issue, or comment. In addition, because the arguments made above may not be exhaustive, there may be other reasons that have not been expressed for patentability of any or all claims. No acquiescence or estoppel

is implied by any change to any claim; any amendments are made only to expedite prosecution of the present application and are without prejudice to the presentation or assertion, in the future, of claims directed to subject matter that is same as or similar to that previously pending. Nothing in this paper should be construed as an intent to concede, or actual concession of, any issue with regard to any claim, or to any cited art, except as specifically stated in this paper, and the amendment or cancelation of any claim does not necessarily signify concession of unpatentability of the claim prior to its amendment or cancelation.

To the extent necessary, a petition for an extension of time under 37 C.F.R. 1.136 is hereby made. Please charge any shortage in fees due in connection with the filing of this paper, including extension-of-time fees, to Deposit Account 50-2624, and please credit any excess fees to that deposit account.

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

/Nathan S. Smith/

Nathan S. Smith

Registration No. 53,615

4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
Phone: 949.851.0633 DM:sv
Facsimile: 949.851.9348
**Date: March 16, 2017**

**Please recognize our Customer No. 31824 as our correspondence address.**

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 28652389 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Nathan Scott Smith/Kimila Carraway |
| **Filer Authorized By:** | Nathan Scott Smith |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 16-MAR-2017 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 20:00:59 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213_Amendment.pdf | 240110<br>e16f6bd520e4df650347aff6ebd05e521932eacb | yes | 14 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Amendment/Req. Reconsideration-After Non-Final Reject | 1 | 1 |
| Claims | 2 | 5 |
| Applicant Arguments/Remarks Made in an Amendment | 6 | 14 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 240110 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

PTO/SB/06 (09-11)
Approved for use through 1/31/2014. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

| PATENT APPLICATION FEE DETERMINATION RECORD<br>Substitute for Form PTO-875 | Application or Docket Number<br>14/821,399 | Filing Date<br>08/07/2015 | ☐ To be Mailed |
|---|---|---|---|

ENTITY: ☐ LARGE ☒ SMALL ☐ MICRO

## APPLICATION AS FILED – PART I

| FOR | (Column 1)<br>NUMBER FILED | (Column 2)<br>NUMBER EXTRA | RATE ($) | FEE ($) |
|---|---|---|---|---|
| ☐ BASIC FEE (37 CFR 1.16(a), (b), or (c)) | N/A | N/A | N/A | |
| ☐ SEARCH FEE (37 CFR 1.16(k), (i), or (m)) | N/A | N/A | N/A | |
| ☐ EXAMINATION FEE (37 CFR 1.16(o), (p), or (q)) | N/A | N/A | N/A | |
| TOTAL CLAIMS (37 CFR 1.16(i)) | minus 20 = | * | X $ = | |
| INDEPENDENT CLAIMS (37 CFR 1.16(h)) | minus 3 = | * | X $ = | |
| ☐ APPLICATION SIZE FEE (37 CFR 1.16(s)) | If the specification and drawings exceed 100 sheets of paper, the application size fee due is $310 ($155 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s). | | | |
| ☐ MULTIPLE DEPENDENT CLAIM PRESENT (37 CFR 1.16(j)) | | | | |
| * If the difference in column 1 is less than zero, enter "0" in column 2. | | | TOTAL | |

## APPLICATION AS AMENDED – PART II

AMENDMENT

| 03/16/2017 | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * 20 | Minus | ** 20 | = 0 | x $40 = | 0 |
| Independent (37 CFR 1.16(h)) | * 2 | Minus | ***3 | = 0 | x $210 = | 0 |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | **0** |

AMENDMENT

| | (Column 1)<br>CLAIMS REMAINING AFTER AMENDMENT | | (Column 2)<br>HIGHEST NUMBER PREVIOUSLY PAID FOR | (Column 3)<br>PRESENT EXTRA | RATE ($) | ADDITIONAL FEE ($) |
|---|---|---|---|---|---|---|
| Total (37 CFR 1.16(i)) | * | Minus | ** | = | X $ = | |
| Independent (37 CFR 1.16(h)) | * | Minus | *** | = | X $ = | |
| ☐ Application Size Fee (37 CFR 1.16(s)) | | | | | | |
| ☐ FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM (37 CFR 1.16(j)) | | | | | | |
| | | | | | TOTAL ADD'L FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

LIE
ROZENIA HARMON

This collection of information is required by 37 CFR 1.16. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

31824 7590 03/21/2017
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

| EXAMINER | |
|---|---|
| HOHENBRINK JR, LAWRENCE D | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1743 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/21/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mweipdocket@mwe.com

| *Applicant-Initiated Interview Summary* | **Application No.**<br>14/821,399 | **Applicant(s)**<br>DILWORTH ET AL. | | |
|---|---|---|---|---|
| | **Examiner**<br>Lawrence D. Hohenbrink, Jr. | **Art Unit**<br>1743 | **AIA (First Inventor to File) Status**<br>No | **Page**<br>1 of 2 |

All participants (applicant, applicant's representative, PTO personnel):

1. Lawrence D. Hohenbrink, Jr. (Examiner); Telephonic
2. Nathan S. Smith (Attorney of Record); Telephonic

**Date of Interview:** 16 March 2017

**Claim(s) discussed:** 21

**Identification of prior art discussed:** Skubic, Lee, Young

**Amendment Proposed:** On an initial note, the Examiner reviewed the Applicant's attempted preliminay amendment from Dec. 14, 2016 which was denied entry, and reminded Applicant that amended claims that will be filed in response to the outstanding Office Action mailed Dec. 16, 2016 need to be amended using the 12/18/2015 claim set as a base, because the claim set filed 12/14/2016 was not entered.

**Brief Description of main topic of discussion:** Examiner suggested to Applicant to add a limitation to the independent claim that the instant 3D drawing device can draw in free space, and that will differentiate the instant device from prior art that can only draw in 2D space or on a substrate.

## Issues Discussed:

**Proposed Amendments:**
Examiner indicated that with a limitation that the instant device can draw in free space, the prior art of record would appear to be overcome, however additional search and consideration are required.

**Attachment(s):** Agenda, Proposed Amendments, Proposed Arguments

| | |
|---|---|
| /Lawrence D. Hohenbrink, Jr./<br>Examiner, Art Unit 1743 | /ALISON HINDENLANG/<br>Primary Examiner, Art Unit 1744 |

**Applicant recordation instructions:** The formal written reply to the last Office action must include the substance of the interview. (See MPEP section 713.04). If a reply to the last Office action has already been filed, applicant is given a non-extendable time limit of the longer of one month or thirty days from this interview date, or the mailing date of this interview summary form, whichever is later, to file a statement of the substance of the interview.

**Examiner recordation instructions:** Examiners must summarize the substance of any interview of record. A complete and proper recordation of the substance of an interview should include the items listed in MPEP 713.04 for complete and proper recordation including the identification of the general thrust of each argument or issue discussed, a general indication of any other pertinent matters discussed regarding patentability and the general results or outcome of the interview, to include an indication as to whether or not agreement was reached on the issues raised.

**Applicant is reminded that a complete written statement as to the substance of the interview must be made of record in the application file. It is the applicant's responsibility to provide the written statement, unless the interview was initiated by the Examiner and the Examiner has indicated that a written summary will be provided. See MPEP 713.04**

Please further see:

**MPEP 713.04**
**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews, paragraph (b)**
**37 CFR § 1.2 Business to be transacted in writing**

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 1

| Complete if Known | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink, Jr. |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | US-5,340,433 | 08-23-1994 | Crump | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] -Number[4] -Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 28799770 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Nathan Scott Smith/Sharon Fennessy |
| **Filer Authorized By:** | Nathan Scott Smith |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 31-MAR-2017 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 16:53:01 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | no |

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213-IDS.pdf | 114693<br>fac982268151876f9ad8f10f463b258e5b0e6e4c | yes | 3 |

| | | | | | |
|---|---|---|---|---|---|
| | **Multipart Description/PDF files in .zip description** | | | | |
| | **Document Description** | | **Start** | | **End** |
| | Transmittal Letter | | 1 | | 2 |
| | Information Disclosure Statement (IDS) Form (SB08) | | 3 | | 3 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| 2 | Other Reference-Patent/App/Search documents | TWOA.pdf | 144583<br>7f0c7f2603d6e80c79236d0b76122324f2e85f68 | no | 4 |
| **Warnings:** | | | | | |
| **Information:** | | | | | |
| | | **Total Files Size (in bytes):** | 259276 | | |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Docket No.: 092749-0213
(PATENT)

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re Patent Application of: Peter DILWORTH et al. | : Customer Number: 31824 |
| Application No.: 14/821,399 | : Confirmation No.: 9856 |
| Filed: August 7, 2015 | : Art Unit: 1743 |
| For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | : Examiner: L. D. Hohenbrink, Jr. |

**INFORMATION DISCLOSURE STATEMENT**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Pursuant to 37 C.F.R. § 1.56, 1.97, and 1.98, the attention of the United States Patent and Trademark Office is hereby directed to the references listed on the attached PTO/SB/08. It is respectfully requested that the information be expressly considered during the prosecution of the above-identified application, and that the references be made of record therein and appear among the "References Cited" on any patent to issue therefrom.

This Information Disclosure Statement is filed more than three months after the filing date of this application, and after the mailing date of a first Office Action on the merits, but before the mailing date of any of a Final Action under 37 C.F.R.§ 1.113, a Notice of Allowance under 37 C.F.R. § 1.311 or an action that otherwise closes prosecution in this application (37 C.F.R. § 1.97(c)).

Pursuant to 37 C.F.R. § 1.97(e)(1), each item of information contained in this Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of this Information Disclosure Statement.

The Examiner's attention is directed to a Taiwanese Office Action dated February 22, 2017, which issued in Taiwanese Application No. 102144186 (copy attached).

In accordance with 37 C.F.R. § 1.97(g), the filing of this Information Disclosure Statement shall not be construed as a representation that a search has been made. In accordance with 37 C.F.R. § 1.97(h), the filing of this Information Disclosure Statement shall not be construed to be an admission that the information cited in this Information Disclosure Statement is, or is considered to be, material to the patentability as defined in 37 C.F.R. § 1.56(b).

Applicant believes no fee is due with this submission. However, if a fee is due, please charge Deposit Account No. 50-2624.

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

/Nathan S. Smith/
Nathan S. Smith
Registration No. 53,615

4 Park Plaza
Suite 1700
Irvine, CA 92614-2559
Phone: (949) 757-6018 NSS:snf
Facsimile: (949) 851-9348
Date: March 31, 2017

Please recognize our Customer No. 31824 as our correspondence address.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

31824 7590 04/13/2017
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

| EXAMINER | |
|---|---|
| HOHENBRINK JR, LAWRENCE D | |
| ART UNIT | PAPER NUMBER |
| 1743 | |

DATE MAILED: 04/13/2017

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

TITLE OF INVENTION: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 07/13/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED. THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.**

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED. SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

31824 7590 04/13/2017

MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

(Depositor's name)

(Signature)

(Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

TITLE OF INVENTION: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 07/13/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HOHENBRINK JR, LAWRENCE D | 1743 | 425-087000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
   - ❑ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
   - ❑ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
   (1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
   (2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.
   1 ____________
   2 ____________
   3 ____________

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual ❑ Corporation or other private group entity ❑ Government

4a. The following fee(s) are submitted:
- ❑ Issue Fee
- ❑ Publication Fee (No small entity discount permitted)
- ❑ Advance Order - # of Copies ____________

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
- ❑ A check is enclosed.
- ❑ Payment by credit card. Form PTO-2038 is attached.
- ❑ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number ____________ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
- ❑ Applicant certifying micro entity status. See 37 CFR 1.29 — NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
- ❑ Applicant asserting small entity status. See 37 CFR 1.27 — NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
- ❑ Applicant changing to regular undiscounted fee status. — NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature ____________ Date ____________

Typed or printed name ____________ Registration No. ____________

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

31824 7590 04/13/2017

MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

| EXAMINER | |
|---|---|
| HOHENBRINK JR, LAWRENCE D | |
| ART UNIT | PAPER NUMBER |
| 1743 | |

DATE MAILED: 04/13/2017

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

## OMB Clearance and PRA Burden Statement for PTOL-85 Part B

The Paperwork Reduction Act (PRA) of 1995 requires Federal agencies to obtain Office of Management and Budget approval before requesting most types of information from the public. When OMB approves an agency request to collect information from the public, OMB (i) provides a valid OMB Control Number and expiration date for the agency to display on the instrument that will be used to collect the information and (ii) requires the agency to inform the public about the OMB Control Number's legal significance in accordance with 5 CFR 1320.5(b).

The information collected by PTOL-85 Part B is required by 37 CFR 1.311. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, Virginia 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, Virginia 22313-1450. Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

## Privacy Act Statement

**The Privacy Act of 1974 (P.L. 93-579)** requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent. Accordingly, pursuant to the requirements of the Act, please be advised that: (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent. If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C 552a). Records from this system of records may be disclosed to the Department of Justice to determine whether disclosure of these records is required by the Freedom of Information Act.
2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.
3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.
4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract. Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).
5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.
6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).
7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906. Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive. Such disclosure shall not be used to make determinations about individuals.
8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151. Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspection or an issued patent.
9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

| **Notice of Allowability** | **Application No.**<br>14/821,399 | **Applicant(s)**<br>DILWORTH ET AL. | |
|---|---|---|---|
| | **Examiner**<br>Lawrence D. Hohenbrink, Jr. | **Art Unit**<br>1743 | **AIA (First Inventor to File) Status**<br>No |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *Applicant's filing of 3/16/2017*.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on______.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on ______; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claim(s) is/are *21-28,34-40 and 42-46*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All b) ☐ Some *c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. ______ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: ______.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date ______.

   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date See Continuation Sheet
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date ______ .
5. ☐ Examiner's Amendment/Comment
6. ☒ Examiner's Statement of Reasons for Allowance
7. ☐ Other ______.

/MATTHEW DANIELS/
Primary Examiner, Art Unit 1742

Continuation of Attachment(s) 2. Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date: 12/14/2016; 1/20/2017; 3/31/2017.

## DETAILED ACTION

### Status of the Application

1. This Office Action is the second action on the merits and is a Notice of Allowability. The Examiner acknowledges receipt of Applicant's Amendment, including amended Claims and Arguments/Remarks, filed 3/21/2017 in response to Office Action mailed 12/16/2016. The Examiner notes preliminary amendment filed 12/14/2016 was not entered for reasons documented in the record.

2. Claims 21-33 were previously pending. The claim set filed 12/14/2016 as part of a preliminary amendment was not examined because the preliminary amendment was not entered, as documented in the record. In the claim set filed 12/14/2016, Claims 21 and 26-28 were amended, Claims 29-33 were cancelled, Claims 22-25 were are previously presented, and Claims 34-43 were newly added. The claim set filed 3/16/2017 presents claims amended from the 12/14/2016 claim set. In the claim set filed 3/16/2017, Claims 21, 23, 24, 26, 27, 34, 36, 39, and 40 are amended, Claims 22, 25, 28, 35, 37, 38, 42, and 43 are as previously presented, Claim 41 is cancelled, and Claims 44-46 are newly presented. Currently, Claims 21-28, 34-40, and 42-46 are pending and are examined herein.

### *Notice of Pre-AIA or AIA Status*

3. The present application is being examined under the pre-AIA first to invent provisions.

### *Response to Amendment*

4. Claims 23, 24, 27, and 31 were previously rejected under 35 USC 112(b) as indefinite. In light of Applicant's amendments or claim cancellation, these rejections are **withdrawn**.

### *Response to Arguments*

5. Applicant's arguments, see pages 6-14, filed 3/16/2017, with respect to the prior art rejections under 35 USC 103(a) have been fully considered and are persuasive. The rejections of Claims 21-33 are **withdrawn**. The Examiner acknowledges that Claims 29-33 are cancelled.

***Allowable Subject Matter***

**6. Claims 21-28, 34-40, and 42-46 are allowed.**

7. The following is an examiner's statement of reasons for allowance: Independent Claims 21 and 44 are allowable because the recited limitations for a three-dimensional (3D) drawing device comprising a housing configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, the housing further comprising an internal volume into which a strand of feed stock can be introduced and at least one cooling port extending between the internal volume and an ambient atmosphere, the 3D drawing device further comprising a motor disposed within the internal volume and a gear train operatively coupled with the motor to drive the gear train, and wherein a rotation of the motor causes the strand to be extruded out of an exit nozzle of a nozzle assembly also comprising an extruder having a heating element surrounded by an insulator, when taken with the whole of the claims, respectively, are novel and nonobvious over the prior art of record. Dependent Claims 22-28, 37-40, 42-43, and 45-46 are allowable as depending from an allowable base claim.

8. A close prior art reference *Skubic* discloses a three-dimensional (3D) drawing device comprising a nozzle assembly comprising a gear train, a guide tube, an extruder (screw pump), and an exit nozzle, with the guide tube extending between the gear train and the screw pump with a first end of the guide tube positioned to receive the feed stock from the gear train, and a second end of the guide tube aligned with a chamber of the screw pump such that the feed stock is directed into the chamber, and the screw pump is disposed between the guide tube and the exit nozzle. The gear train is operatively coupled with a drive motor for feeding a filament of build or support material to the extruder. The screw pump includes a heating element which supply heat to the chamber to thermally melt the filament to a desired flowable viscosity and a second motor to drive an impeller of the screw pump. *Skubic* does not disclose a housing configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, an insulator, at least one cooling port extending between an internal volume and an ambient atmosphere, and wherein a rotation of the motor causes the strand to be extruded out of an exit nozzle. As discussed above, *Skubic* requires two motors, one to drive the gears and one to drive the impeller. Thus, the instant claim is structurally distinguishable over *Skubic*.

9. Another close prior art reference *Young* discloses a three-dimensional (3D) drawing device (hand-held cake decorator extruder) comprising an elongate housing capable of fitting in a user's hand but requiring both hands to operate, the housing having a first end, a second end, an internal volume, and a nozzle assembly at least partially disposed in the housing. *Young* further discloses a first actuator and a second actuator each coupled to the housing and positioned to be actuated by the user's hand while holding the housing, and discloses an electric motor disposed in the housing and a gear train disposed in the housing, the motor configured to drive the gear train in response to operation of the actuators. *Young's* feed stock is not in strand form. *Young* does not disclose a housing shaped to allow manipulation of the housing like a pen, a housing having an internal volume into which a strand of feed stock can be introduced, orat least one cooling port extending between an internal volume and an ambient atmosphere, or wherein a rotation of the motor causes a strand to be extruded out of an exit nozzle of a nozzle assembly also comprising an extruder having a heating element surrounded by an insulator. Thus, the instant claim is structurally distinguishable over *Young*.

10. An updated search of the relevant prior art failed to turn up any other prior art references which anticipated or could be used individually or in combination to set forth a *prima facie* case of obviousness, and upon which to base a prior art rejection for claims reciting these limitations.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

## *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to Lawrence D. Hohenbrink Jr. whose telephone number is 571-270-5549. The examiner can normally be reached Monday - Friday, 8:00 am to 4:00 pm Eastern Time U.S.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Joseph S. Del Sole can be reached on 571-272-1130. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system. Status information for published applications may be obtained from either Private PAIR or Public PAIR. Status information for unpublished applications is available through Private PAIR only. For more information about the PAIR system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a USPTO Customer Service Representative or access to the automated information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/Lawrence D. Hohenbrink, Jr./
Examiner, Art Unit 1743

/MATTHEW DANIELS/
Primary Examiner, Art Unit 1742

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Substitute for form 1449/PTO | | | | *Complete if Known* | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** | | | | Application Number | 14/821,399-Conf. #9856 |
| | | | | Filing Date | August 7, 2015 |
| | | | | First Named Inventor | Peter DILWORTH |
| | | | | Art Unit | 1743 |
| *(Use as many sheets as necessary)* | | | | Examiner Name | L. D. Hohenbrink |
| Sheet | 1 | of | 1 | Attorney Docket Number | 092749-0213 |

**U. S. PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | US-5,672,312 | 09-30-1997 | Almquist et al. | |
| | A2 | US-6,117,385 | 09-12-2000 | Chartoff et al. | |
| | A3 | US-7,959,847 | 06-14-0211 | Wicker et al. | |
| | A4 | US-2006/0198918-A1 | 09-07-2006 | Koyagi et al. | |
| | A5 | US-2009/0133800-A1 | 05-28-2009 | Morohoshi et al. | |

**FOREIGN PATENT DOCUMENTS**

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|

| Examiner Signature | /LAWRENCE D. HOHENBRINK, JR./ | Date Considered | 03/29/2017 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 1

| Complete if Known | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink, Jr. |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | A1 | US-5,340,433 | 08-23-1994 | Crump | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | | | | | | |

| Examiner Signature | /LAWRENCE D. HOHENBRINK, JR./ | Date Considered | 04/01/2017 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

Doc code: IDS
Doc description: Information Disclosure Statement (IDS) Filed

PTO/SB/08a (01-10)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( **Not for submission under 37 CFR 1.99)** | | |
|---|---|---|
| | Application Number | 14821399 |
| | Filing Date | 2015-08-07 |
| | First Named Inventor | Peter DILWORTH |
| | Art Unit | 1743 |
| | Examiner Name | Lawrence Hohenbrink, Jr. |
| | Attorney Docket Number | 092749-0213 |

**U.S.PATENTS**

| Examiner Initial* | Cite No | Patent Number | Kind Code1 | Issue Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 6162378 | | 2000-12-19 | Bedal et al. | |

If you wish to add additional U.S. Patent citation information please click the Add button.

**U.S.PATENT APPLICATION PUBLICATIONS**

| Examiner Initial* | Cite No | Publication Number | Kind Code1 | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|---|
| | 1 | 20010030383 | A1 | 2001-10-18 | Swanson et al. | |
| | 2 | 20070003656 | A1 | 2007-01-04 | LaBossiere et al. | |

If you wish to add additional U.S. Published Application citation information please click the Add button.

**FOREIGN PATENT DOCUMENTS**

| Examiner Initial* | Cite No | Foreign Document Number3 | Country Code2 j | Kind Code4 | Publication Date | Name of Patentee or Applicant of cited Document | Pages,Columns,Lines where Relevant Passages or Relevant Figures Appear | T5 |
|---|---|---|---|---|---|---|---|---|
| | 1 | | | | | | | ☐ |

If you wish to add additional Foreign Patent Document citation information please click the Add button

**NON-PATENT LITERATURE DOCUMENTS**



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

| INFORMATION DISCLOSURE STATEMENT BY APPLICANT ( Not for submission under 37 CFR 1.99) | Application Number | 14821399 |
|---|---|---|
| | Filing Date | 2015-08-07 |
| | First Named Inventor | Peter DILWORTH |
| | Art Unit | 1743 |
| | Examiner Name | Lawrence Hohenbrink, Jr. |
| | Attorney Docket Number | 092749-0213 |

| Examiner Initials* | Cite No | Include name of the author (in CAPITAL LETTERS), title of the article (when appropriate), title of the item (book, magazine, journal, serial, symposium, catalog, etc), date, pages(s), volume-issue number(s), publisher, city and/or country where published. | T[5] |
|---|---|---|---|
| | 1 | | ☐ |

If you wish to add additional non-patent literature document citation information please click the Add button

**EXAMINER SIGNATURE**

| Examiner Signature | /LAWRENCE D. HOHENBRINK, JR./ | Date Considered | 03/29/2017 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through a citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

[1] See Kind Codes of USPTO Patent Documents at www.USPTO.GOV or MPEP 901.04. [2] Enter office that issued the document, by the two-letter code (WIPO Standard ST.3). [3] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [4] Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [5] Applicant is to place a check mark here if English language translation is attached.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

| **INFORMATION DISCLOSURE STATEMENT BY APPLICANT** ( Not for submission under 37 CFR 1.99) | Application Number | 14821399 |
|---|---|---|
| | Filing Date | 2015-08-07 |
| | First Named Inventor | Peter DILWORTH |
| | Art Unit | 1743 |
| | Examiner Name | Lawrence Hohenbrink, Jr. |
| | Attorney Docket Number | 092749-0213 |

**CERTIFICATION STATEMENT**

Please see 37 CFR 1.97 and 1.98 to make the appropriate selection(s):

☐ That each item of information contained in the information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(1).

**OR**

☐ That no item of information contained in the information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in the information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement. See 37 CFR 1.97(e)(2).

☐ See attached certification statement.

☐ The fee set forth in 37 CFR 1.17 (p) has been submitted herewith.

☒ A certification statement is not submitted herewith.

**SIGNATURE**

A signature of the applicant or representative is required in accordance with CFR 1.33, 10.18. Please see CFR 1.4(d) for the form of the signature.

| Signature | /Nathan S. Smith/ | Date (YYYY-MM-DD) | 2016-12-14 |
|---|---|---|---|
| Name/Print | Nathan S. Smith | Registration Number | 53,615 |

This collection of information is required by 37 CFR 1.97 and 1.98. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 1 hour to complete, including gathering, preparing and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

| Issue Classification | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14821399 | DILWORTH ET AL. |
| | **Examiner** | **Art Unit** |
| | LAWRENCE D HOHENBRINK JR | 1743 |

| CPC | | | | | |
|---|---|---|---|---|---|
| **Symbol** | | | | **Type** | **Version** |
| B29C | 47 | / | 0002 | F | 2013-01-01 |
| B29C | 47 | / | 0805 | I | 2013-01-01 |
| B29C | 47 | / | 862 | A | 2013-01-01 |
| B05C | 17 | / | 0053 | A | 2013-01-01 |
| B29C | 47 | / | 364 | I | 2013-01-01 |
| B29C | 67 | / | 0051 | A | 2013-01-01 |
| B33Y | 10 | / | 00 | A | 2014-12-01 |
| B29C | 67 | / | 0085 | I | 2013-01-01 |
| B29C | 47 | / | 802 | A | 2013-01-01 |
| B29C | 47 | / | 92 | A | 2013-01-01 |
| B29C | 2947 | / | 9258 | A | 2013-01-01 |
| B29C | 2947 | / | 92704 | A | 2013-01-01 |
| B29C | 67 | / | 0055 | I | 2013-01-01 |
| B33Y | 30 | / | 00 | A | 2014-12-01 |
| B29C | 47 | / | 864 | I | 2013-01-01 |
| B29C | 47 | / | 0014 | I | 2013-01-01 |
| B29C | 47 | / | 0806 | I | 2013-01-01 |

| CPC Combination Sets | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Symbol** | | | | **Type** | **Set** | **Ranking** | **Version** |
| | | / | | | | | |
| | | / | | | | | |

| | | | |
|---|---|---|---|
| /LAWRENCE D HOHENBRINK JR/<br>Examiner.Art Unit 1743<br><br>(Assistant Examiner) | 03/30/2017<br><br>(Date) | **Total Claims Allowed:**<br><br>20 | |
| /MATTHEW DANIELS/<br>Primary Examiner.Art Unit 1742<br><br>(Primary Examiner) | 04/03/2017<br><br>(Date) | O.G. Print Claim(s)<br><br>1 | O.G. Print Figure<br><br>2 |

| ***Issue Classification*** | **Application/Control No.** 14821399 | **Applicant(s)/Patent Under Reexamination** DILWORTH ET AL. |
|---|---|---|
| | **Examiner** LAWRENCE D HOHENBRINK JR | **Art Unit** 1743 |

| US ORIGINAL CLASSIFICATION | |
|---|---|
| CLASS | SUBCLASS |
| 425 | 375 |

CROSS REFERENCE(S)

| CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | | | | |
|---|---|---|---|---|---|
| | | | | | |

INTERNATIONAL CLASSIFICATION

| CLAIMED | | | | | NON-CLAIMED | | | | |
|---|---|---|---|---|---|---|---|---|---|
| B | 2 | 9 | C | 67 / 00 (2006.0) | | | | | |

| | | |
|---|---|---|
| /LAWRENCE D HOHENBRINK JR/<br>Examiner.Art Unit 1743<br>(Assistant Examiner) | 03/30/2017<br>(Date) | **Total Claims Allowed:**<br>20 |
| /MATTHEW DANIELS/<br>Primary Examiner.Art Unit 1742<br>(Primary Examiner) | 04/03/2017<br>(Date) | O.G. Print Claim(s): 1 — O.G. Print Figure: 2 |

| Issue Classification | Application/Control No. 14821399 | Applicant(s)/Patent Under Reexamination DILWORTH ET AL. |
|---|---|---|
| | Examiner LAWRENCE D HOHENBRINK JR | Art Unit 1743 |

☒ Claims renumbered in the same order as presented by applicant ☐ CPA ☐ T.D. ☐ R.1.47

| Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original | Final | Original |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | 17 | | 33 | | | | | | | | | | |
| | 2 | | 18 | 9 | 34 | | | | | | | | | | |
| | 3 | | 19 | 10 | 35 | | | | | | | | | | |
| | 4 | | 20 | 11 | 36 | | | | | | | | | | |
| | 5 | 1 | 21 | 12 | 37 | | | | | | | | | | |
| | 6 | 2 | 22 | 13 | 38 | | | | | | | | | | |
| | 7 | 3 | 23 | 14 | 39 | | | | | | | | | | |
| | 8 | 4 | 24 | 15 | 40 | | | | | | | | | | |
| | 9 | 5 | 25 | | 41 | | | | | | | | | | |
| | 10 | 6 | 26 | 16 | 42 | | | | | | | | | | |
| | 11 | 7 | 27 | 17 | 43 | | | | | | | | | | |
| | 12 | 8 | 28 | 18 | 44 | | | | | | | | | | |
| | 13 | | 29 | 19 | 45 | | | | | | | | | | |
| | 14 | | 30 | 20 | 46 | | | | | | | | | | |
| | 15 | | 31 | | | | | | | | | | | | |
| | 16 | | 32 | | | | | | | | | | | | |

| | | | |
|---|---|---|---|
| /LAWRENCE D HOHENBRINK JR/<br>Examiner.Art Unit 1743<br><br>(Assistant Examiner) | 03/30/2017<br><br>(Date) | Total Claims Allowed:<br><br>20 | |
| /MATTHEW DANIELS/<br>Primary Examiner.Art Unit 1742<br><br>(Primary Examiner) | 04/03/2017<br><br>(Date) | O.G. Print Claim(s)<br><br>1 | O.G. Print Figure<br><br>2 |

EAST Search History

EAST Search History (Prior Art)

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|
| S2 | 1 | us-20140154347-$.did. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:07 |
| S3 | 1 | us-20120219699-$.did. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:29 |
| S4 | 4 | (4552287\|4597821\|4681524\|3665158).pn. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:30 |
| S5 | 1 | us-20030137077-$.did. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:31 |
| S6 | 8 | (dilworth near2 (pete or peter)).in. or (boque near2 (max or maxwell)).in. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:48 |
| S7 | 1 | (wobble near works).as. | US-PGPUB; USPAT | OR | ON | 2014/06/17 09:54 |
| S8 | 272 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/17 12:50 |
| S9 | 422 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/17 12:51 |
| S10 | 501 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:41 |
| S11 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:42 |
| S12 | 27 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:42 |
| S13 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:42 |
| S14 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:42 |
| S15 | 1281 | S8 or S9 or S10 or S11 or S12 or S13 or S14 | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:43 |
| S16 | 479 | S15 and (nozzle or (die near3 open$3)) | US-PGPUB; USPAT | OR | ON | 2014/06/17 13:43 |
| S17 | 1 | "6722872".pn. | US-PGPUB; USPAT | OR | ON | 2014/06/19 13:46 |
| S18 | 271 | 425/87.ccls. | US-PGPUB; | OR | ON | 2014/06/25 13:21 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S19 | 421 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S20 | 504 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S21 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S22 | 27 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S23 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S24 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S25 | 1282 | S18 or S19 or S20 or S21 or S22 or S23 or S24 | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S26 | 480 | S25 and (nozzle or (die near3 open$3)) | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S27 | 196 | S26 and hand | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:21 |
| S28 | 41 | S26 and (hand near4 (hold or held)) | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:23 |
| S29 | 6 | S26 and ((fan or blower) near3 (cool or cold)) | US-PGPUB; USPAT | OR | ON | 2014/06/25 13:31 |
| S30 | 841 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:53 |
| S31 | 500 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:53 |
| S32 | 1339 | S30 or S31 | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S33 | 271 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S34 | 421 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S35 | 504 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S36 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S37 | 28 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S38 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S39 | 65 | b05c17/0053.cpc. | US- | OR | ON | 2014/06/26 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB; USPAT | | | 07:54 |
| S40 | 1283 | S33 or S34 or S35 or S36 or S37 or S38 or S39 | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S41 | 2525 | S32 or S40 | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S42 | 103 | S41 and (hand near4 (hold or held)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 07:54 |
| S43 | 11 | S41 and ((fan or blower) near3 (cool or cold)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 08:26 |
| S44 | 1306 | S41 and ((button or control or switch or knob)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:16 |
| S45 | 282 | S44 and ((button or control or switch or knob) with first) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:16 |
| S46 | 251 | S44 and ((button or control or switch or knob) with second) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:17 |
| S47 | 206 | S45 and S46 | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:17 |
| S48 | 74 | S44 and ((button or control or switch or knob) near2 first) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:17 |
| S49 | 65 | S44 and ((button or control or switch or knob) near2 second) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:17 |
| S50 | 38 | S48 and S49 | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:18 |
| S51 | 498 | S41 and ((button or control or switch or knob) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:19 |
| S52 | 41 | S51 and ((button or control or switch or knob) near2 first) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:19 |
| S53 | 39 | S51 and ((button or control or switch or knob) near2 second) | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:20 |
| S54 | 21 | S52 and S53 | US-PGPUB; USPAT | OR | ON | 2014/06/26 09:20 |
| S55 | 20 | S33 and ((button or control or switch or knob) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 10:33 |
| S56 | 20 | S33 and ((button or control or switch or knob or dial or toggle) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 10:34 |
| S57 | 20 | S33 and ((button or control or switch or knob or dial or toggle or actuator) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/26 10:34 |
| S58 | 1 | "7384255".pn. | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:00 |
| S59 | 91 | ("3016451" \| "3381812" \| "3841000" \| "4152367" \| "4665492" \| "4749347" \| "4844373" \| "4928897" \| "4961154" \| "5169081" \| "5257657" \| "5263585" \| "5293996" \| "5303141" \| "5312224" \| "5340433" \| "5402351" \| "5474719" \| "5503785" \| "5578227" \| "5587913" \| "5633021" \| "5637175" \| "5695707" \| "5738817" \| "5764521" \| "5816466" \| "5866058" \| "5868296" \| "5893404" \| "5900207" \| "5932055" \| "5936861" \| "5943235" \| "5968561" \| "6004124" \| "6041991" \| "6054077" \| "6070107" \| "6085957" \| "6119567" \| "6127492" \| "6129872" \| "6162378" \| | US-PGPUB; USPAT; USOCR | OR | ON | 2014/06/27 08:02 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | "6165406" \| "6193923" \| "6214279" \| "6228923" \| "6257917" \| "6261077" \| "6322728" \| "6557742" \| "6572228" \| "6645412" \| "6685866" \| "6722872" \| "6730252" \| "6749414" \| "6776602" \| "6814907" \| "6866807" \| "6923634" \| "7026574").PN. OR ("7384255").URPN. | | | | |
| S60 | 12 | S59 and (motor with (reverse or opposite or clockwise)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:03 |
| S61 | 5 | S59 and (retract) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:27 |
| S62 | 18 | S59 and (strand) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:28 |
| S63 | 2 | S59 and (button) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:48 |
| S64 | 40 | S59 and ((button or control or switch or knob or dial or toggle or actuator) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:51 |
| S65 | 16 | S59 and ((button or switch or knob or dial or toggle or actuator or rocker) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 08:52 |
| S66 | 841 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S67 | 500 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S68 | 1339 | S66 or S67 | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S69 | 271 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S70 | 421 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S71 | 504 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S72 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S73 | 28 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S74 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S75 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S76 | 1283 | S69 or S70 or S71 or S72 or S73 or S74 or S75 | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S77 | 2525 | S68 or S76 | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S78 | 194 | S77 and ((button or switch or knob or dial or toggle or actuator or rocker) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |
| S79 | 145 | S77 and ((button or switch or knob or dial or toggle or actuator or rocker) with (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 09:04 |

Case 2:26-cv-01592-MEMF-PVC Document 35-5 Filed 03/23/26 Page 359 of 583
Page ID #:2425

| | | | | | | |
|---|---|---|---|---|---|---|
| S80 | 824 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:53 |
| S81 | 160 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:53 |
| S82 | 982 | S80 or S81 | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:54 |
| S83 | 73 | S82 and fan | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:54 |
| S84 | 208 | S82 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:55 |
| S85 | 25 | S84 and fan | US-PGPUB; USPAT | OR | ON | 2014/06/27 10:55 |
| S86 | 60 | S84 and (fan or blower) | US-PGPUB; USPAT | OR | ON | 2014/06/27 12:37 |
| S87 | 19 | S84 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) with (fan or blower)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 12:38 |
| S88 | 78 | S82 and ((button or switch or knob or dial or toggle or actuator or rocker) with (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/06/27 12:41 |
| S89 | 841 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S90 | 500 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S91 | 1339 | S89 or S90 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S92 | 271 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S93 | 421 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S94 | 504 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S95 | 69 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S96 | 28 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S97 | 23 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S98 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S99 | 1283 | S92 or S93 or S94 or S95 or S96 or S97 or S98 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S100 | 2525 | S91 or S99 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S101 | 824 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S102 | 160 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S103 | 982 | S101 or S102 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S104 | 3507 | S100 or S103 | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:00 |
| S105 | 223 | S104 and ((button or switch or knob or dial or toggle or actuator or rocker) with (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:01 |
| S106 | 178 | S105 and ((first same second)) | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:02 |
| S107 | 35 | S105 and ((button or switch or knob or dial or toggle or actuator or rocker) with (first and second)) | US-PGPUB; USPAT | OR | ON | 2014/07/02 10:02 |
| S108 | 865 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:16 |
| S109 | 249 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:16 |
| S110 | 1019 | S108 or S109 | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:16 |
| S111 | 56 | S110 and fan | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:17 |
| S112 | 1 | us-20010033037-$.did. | US-PGPUB; USPAT | OR | ON | 2014/12/01 20:32 |
| S113 | 2 | "3281576".pn. or "4059204".pn. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:17 |
| S114 | 5 | (8221669\|8236227\|8439665).pn. or us-20120258190-$.did. or us-20130234366-$.did. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:20 |
| S115 | 861 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S116 | 525 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S117 | 1383 | S115 or S116 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S118 | 274 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S119 | 425 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S120 | 561 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S121 | 77 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S122 | 348 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S123 | 32 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S124 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S125 | 1684 | S118 or S119 or S120 or S121 or S122 or S123 or S124 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S126 | 2952 | S117 or S125 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S127 | 830 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S128 | 164 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S129 | 992 | S127 or S128 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S130 | 3944 | S126 or S129 | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S131 | 32 | S130 and ((fan or blower) near3 (cool or cold)) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:48 |
| S132 | 11 | S130 and ((port) near (cool$4 or cold)) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:53 |
| S133 | 1407 | S130 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:56 |
| S134 | 1558 | S130 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice) or orifice) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:56 |
| S135 | 263 | S134 and (fan or blower) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:57 |
| S136 | 56 | S130 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice) or orifice) with (fan or blower)) | US-PGPUB; USPAT | OR | ON | 2014/12/08 19:58 |
| S137 | 868 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S138 | 540 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S139 | 1405 | S137 or S138 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S140 | 275 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S141 | 425 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S142 | 616 | b29c67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S143 | 85 | b29c47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S144 | 379 | b29c47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S145 | 36 | b29c47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S146 | 65 | b05c17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S147 | 1780 | S140 or S141 or S142 or S143 or S144 or S145 or S146 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S148 | 3063 | S139 or S147 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S149 | 835 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S150 | 167 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S151 | 1000 | S149 or S150 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S152 | 4063 | S148 or S151 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:03 |
| S153 | 32 | S152 and ((fan or blower) near3 (cool or cold)) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:04 |
| S154 | 12 | S152 and ((port) near (cool$4 or cold)) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:04 |
| S155 | 1482 | S152 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:05 |
| S156 | 1640 | S152 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice) or orifice) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:05 |
| S157 | 274 | S156 and (fan or blower) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:05 |
| S158 | 59 | S152 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice) or orifice) with (fan or blower)) | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:06 |
| S159 | 867 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:50 |
| S160 | 249 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:50 |
| S161 | 1021 | S159 or S160 | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:50 |
| S162 | 57 | S161 and fan | US-PGPUB; USPAT | OR | ON | 2015/02/20 08:51 |
| S177 | 1 | us-20160031141-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 09:52 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S178 | 1 | "9102098".pn. | US-PGPUB; USPAT | OR | ON | 2016/11/08 09:53 |
| S179 | 1 | us-20160285028-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 10:14 |
| S180 | 1 | us-20160185028-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 10:15 |
| S181 | 16 | (dilworth near2 (pete or peter)).in. or (boque near2 (max or maxwell)).in. | US-PGPUB; USPAT | OR | ON | 2016/11/08 13:54 |
| S182 | 1 | (wobble near works).as. or (wobble near works).aanm. | US-PGPUB; USPAT | OR | ON | 2016/11/08 13:55 |
| S183 | 15 | (5853774\|6162378\|6776602\|9102098\|3559241\|3604597\|3887319\|5121329\|5169587\|6129872\|6238613\|6500374\|6558059\|8262304\|8926882).pn. | US-PGPUB; USPAT | OR | ON | 2016/11/08 14:52 |
| S184 | 3 | us-20010033037-$.did. or us-20010030383-$.did. or us-20070029693-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 15:35 |
| S185 | 7 | us-20050129941-$.did. or us-20050288813-$.did. or us-20070228590-$.did. or us-20080197116-$.did. or us-20080197116-$.did. or us-20080213419-$.did. or us-20100147465-$.did. or us-20100327479-$.did. or us-201100766496-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 16:20 |
| S186 | 8 | us-20050129941-$.did. or us-20050288813-$.did. or us-20070228590-$.did. or us-20080197116-$.did. or us-20080213419-$.did. or us-20100147465-$.did. or us-20100327479-$.did. or us-20110076496-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 16:22 |
| S187 | 4 | us-20110079936-$.did. or us-20110196660-$.did. or us-20120070523-$.did. or us-20130209600-$.did. | US-PGPUB; USPAT | OR | ON | 2016/11/08 16:35 |
| S188 | 1 | "6460481".pn. | US-PGPUB; USPAT | OR | ON | 2016/11/08 17:41 |
| S189 | 890 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S190 | 0 | 425/37375.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S191 | 661 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S192 | 278 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S193 | 429 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S194 | 878 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S195 | 250 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:29 |
| S196 | 846 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S197 | 170 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S198 | 586 | B29C47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S199 | 425 | B29C47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S200 | 60 | B29C47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S201 | 71 | B05C17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:30 |
| S202 | 770 | B29C67/0051.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S203 | 1191 | B29C67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S204 | 836 | B29C67/0085.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S205 | 1817 | B33Y10/00.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S206 | 1220 | B33Y30/00.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:31 |
| S207 | 8572 | S189 or S191 or S192 or S193 or S194 or S195 or S196 or S197 or S198 or S199 or S200 or S201 or S202 or S203 or S204 or S205 or S206 | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:32 |
| S208 | 3608 | S207 and (nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:38 |
| S209 | 130 | S208 and (hand near4 (hold or held)) | US-PGPUB; USPAT | OR | ON | 2016/11/09 11:39 |
| S210 | 1133 | S208 and ((button or control or switch or knob or dial or toggle or actuator or rocker) same (motor or drive)) | US-PGPUB; USPAT | OR | ON | 2016/11/09 12:29 |
| S211 | 390 | S210 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same ((button or control or switch or knob or dial or toggle or actuator or rocker) same (motor or drive))) | US-PGPUB; USPAT | OR | ON | 2016/11/09 12:30 |
| S212 | 4 | S208 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same (port near (cool$4 or cold))) | US-PGPUB; USPAT | OR | ON | 2016/11/09 13:25 |
| S213 | 5 | S208 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same3 (port near (cool$4 or cold))) | US-PGPUB; USPAT | OR | ON | 2016/11/09 13:25 |
| S214 | 53 | S210 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same ((button or control or switch or knob or dial or toggle or actuator or rocker) same (motor or drive) same gear)) | US-PGPUB; USPAT | OR | ON | 2016/11/09 14:35 |
| S215 | 2 | S210 and ((nozzle or (die near3 open$3) or dispenser or (exit near2 orifice)) same ((button or control or switch or knob or dial or toggle or actuator or rocker) same (motor or drive) same gear same (vary or variable))) | US-PGPUB; USPAT | OR | ON | 2016/11/09 14:36 |
| S216 | 20 | S208 and ((vary or varies or varied or variable) near3 (extrusion or extruder) near3 rate) | US-PGPUB; USPAT | OR | ON | 2016/11/09 15:19 |
| S217 | 60 | B29C47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 10:17 |
| S218 | 890 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S219 | 661 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S220 | 278 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S221 | 429 | 425/458.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S222 | 878 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S223 | 250 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S224 | 846 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S225 | 170 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S226 | 586 | B29C47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S227 | 425 | B29C47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S228 | 71 | B05C17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S229 | 773 | B29C67/0051.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S230 | 1193 | B29C67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S231 | 842 | B29C67/0085.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S232 | 1845 | B33Y10/00.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S233 | 1238 | B33Y30/00.cpc. | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S234 | 8607 | S218 or S219 or S220 or S221 or S222 or S223 or S224 or S225 or S226 or S227 or S217 or S228 or S229 or S230 or S231 or S232 or S233 | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S235 | 2089 | S234 and (extruder) | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:48 |
| S236 | 86 | S235 and (extruder near3 tube) | US-PGPUB; USPAT | OR | ON | 2016/11/10 11:49 |
| S237 | 157 | S235 and (extruder near2 mount$3) | US-PGPUB; USPAT | OR | ON | 2016/11/10 12:13 |
| S238 | 10 | S235 and (extruder near2 mount$3 near2 end) | US-PGPUB; USPAT | OR | ON | 2016/11/10 12:14 |
| S239 | 66 | S235 and ((extruder near2 mount$3) same (nozzle or die)) | US-PGPUB; USPAT | OR | ON | 2016/11/10 12:16 |
| S240 | 120 | S235 and (extruder with (tube and end)) | US-PGPUB; USPAT | OR | ON | 2016/11/10 13:38 |

| | | | | | | |
|---|---|---|---|---|---|---|
| S241 | 42 | (US-20140154347-$ or US-20030137077-$ or US-20120219699-$ or US-20130104960-$ or US-20120161350-$ or US-20120121748-$ or US-20110076495-$ or US-20100021580-$ or US-20120189729-$ or US-20090035405-$ or US-20080213419-$ or US-20070003656-$ or US-20060269639-$ or US-20060051442-$ or US-20040232165-$ or US-20010033037-$ or US-20070029693-$ or US-20160185028-$ or US-20160303789-$ or US-20160059481-$ or US-20150037446-$).did. or (US-4552287-$ or US-3665158-$ or US-6722872-$ or US-3953006-$ or US-3750905-$ or US-6162378-$ or US-5853774-$ or US-7384255-$ or US-8448825-$ or US-4676851-$ or US-5589125-$ or US-4033742-$ or US-3281576-$ or US-4059204-$ or US-8236227-$ or US-3604597-$ or US-3559241-$ or US-6558059-$ or US-6460481-$ or US-9266286-$ or US-5889064-$).did. | US-PGPUB; USPAT | OR | ON | 2016/11/10 18:31 |
| S242 | 6 | S241 and (insulator or insulate or insulation) | US-PGPUB; USPAT | OR | ON | 2016/11/10 18:32 |
| S243 | 11 | (US-20140154347-$ or US-20120219699-$ or US-20080213419-$ or US-20070003656-$ or US-20040232165-$).did. or (US-4552287-$ or US-3665158-$ or US-6162378-$ or US-5853774-$ or US-3604597-$ or US-6460481-$).did. | US-PGPUB; USPAT | OR | ON | 2016/11/12 16:33 |
| S244 | 4 | S243 and circuit | US-PGPUB; USPAT | OR | ON | 2016/11/12 16:33 |
| S245 | 4 | S243 and circuit$2 | US-PGPUB; USPAT | OR | ON | 2016/11/12 16:33 |
| S246 | 17 | (dilworth near2 (pete or peter)).in. or (boque near2 (max or maxwell)).in. | US-PGPUB; USPAT | OR | ON | 2017/03/29 19:46 |
| S247 | 1 | (wobble near works).as. or (wobble near works).aanm. | US-PGPUB; USPAT | OR | ON | 2017/03/29 19:47 |
| S248 | 101901 | ((three near dimension$2) or ("3D")) and (nozzle or orifice) | US-PGPUB; USPAT | OR | ON | 2017/03/29 19:49 |
| S249 | 1479 | S248 and (((three near dimension$2) or ("3D")) and (nozzle or orifice) and (extruder same (filament or strand))) | US-PGPUB; USPAT | OR | ON | 2017/03/29 19:50 |
| S250 | 63 | S249 and ((((three near dimension$2) or ("3D")) and (nozzle or orifice) and (extruder same (filament or strand))) and (hand near (held or hold$3))) | US-PGPUB; USPAT | OR | ON | 2017/03/29 19:51 |
| S251 | 3 | (5672312\|6117385\|7959847).pn. | US-PGPUB; USPAT | OR | ON | 2017/03/29 20:17 |
| S252 | 2 | us-20060198918-$.did. or us-20090133800-$.did. | US-PGPUB; USPAT | OR | ON | 2017/03/29 20:18 |
| S253 | 221361 | ((three near dimension$2) or ("3D")) and (nozzle or orifice or die) | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:29 |
| S254 | 2422 | S253 and (((three near dimension$2) or ("3D")) and (nozzle or orifice or die) and (extruder same (filament or strand))) | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:30 |
| S255 | 101 | S254 and ((((three near dimension$2) or ("3D")) and (nozzle or orifice or die) and (extruder same (filament or strand))) and (hand near (held or hold$3))) | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:30 |
| S256 | 62 | B29C47/0805.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S257 | 890 | 425/376.1.ccls. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S258 | 661 | 425/375.ccls. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S259 | 278 | 425/87.ccls. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S260 | 429 | 425/458.ccls. | US-PGPUB; | OR | ON | 2017/03/30 07:55 |

Case 2:26-cv-01592-MEMF-PVC Document 35-5 Filed 03/23/26 Page 367 of 583 Page ID #:2433

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | USPAT | | | |
| S261 | 878 | 425/72.2.ccls. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S262 | 250 | 425/378.2.ccls. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S263 | 846 | 156/498.ccls. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S264 | 170 | 156/368.ccls. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S265 | 600 | B29C47/862.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S266 | 433 | B29C47/364.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S267 | 74 | B05C17/0053.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S268 | 924 | B29C67/0051.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S269 | 1408 | B29C67/0055.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S270 | 1044 | B29C67/0085.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S271 | 3869 | B33Y10/00.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S272 | 2820 | B33Y30/00.cpc. | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S273 | 10947 | S257 or S258 or S259 or S260 or S261 or S262 or S263 or S264 or S265 or S266 or S256 or S267 or S268 or S269 or S270 or S271 or S272 | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:55 |
| S274 | 12 | S273 and (((nozzle or orifice or die) and (extruder same (filament or strand))) and (hand near (held or hold$3))) | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:56 |
| S275 | 32 | S273 and ((nozzle or orifice or die) same (hand near (held or hold$3))) | US-PGPUB; USPAT | OR | ON | 2017/03/30 07:57 |
| S276 | 262 | S273 and (hand near (held or hold$3)) | US-PGPUB; USPAT | OR | ON | 2017/03/30 08:26 |
| S277 | 10 | S276 and ((hand near (held or hold$3)) and (free near space)) | US-PGPUB; USPAT | OR | ON | 2017/03/30 08:26 |
| S278 | 144 | S276 and ((hand near (held or hold$3)) and (space)) | US-PGPUB; USPAT | OR | ON | 2017/03/30 08:28 |
| S299 | 1 | "5340433".pn. | US-PGPUB; USPAT | OR | ON | 2017/04/01 16:54 |

**EAST Search History (Interference)**

| Ref # | Hits | Search Query | DBs | Default Operator | Plurals | Time Stamp |
|---|---|---|---|---|---|---|

Case 2:26-cv-01592-MEMF-PVC Document 35-5 Filed 03/23/26 Page 368 of 583
Page ID #:2434

| | | | | | | |
|---|---|---|---|---|---|---|
| S163 | 1 | 425/376.1.ccls. | | OR | ON | 2015/02/20 08:29 |
| S164 | 0 | 425/375.ccls. | | OR | ON | 2015/02/20 08:29 |
| S165 | 0 | 425/87.ccls. | | OR | ON | 2015/02/20 08:29 |
| S166 | 0 | 425/458.ccls. | | OR | ON | 2015/02/20 08:29 |
| S167 | 0 | 425/458.ccls. | | OR | ON | 2015/02/20 08:29 |
| S168 | 0 | b29c67/0055.cpc. | | OR | ON | 2015/02/20 08:29 |
| S169 | 0 | b29c47/862.cpc. | | OR | ON | 2015/02/20 08:29 |
| S170 | 0 | b29c47/364.cpc. | | OR | ON | 2015/02/20 08:30 |
| S171 | 0 | b29c47/0805.cpc. | | OR | ON | 2015/02/20 08:30 |
| S172 | 0 | b05c17/0053.cpc. | | OR | ON | 2015/02/20 08:30 |
| S173 | 1 | 156/498.ccls. | | OR | ON | 2015/02/20 08:30 |
| S174 | 0 | 156/368.ccls. | | OR | ON | 2015/02/20 08:30 |
| S175 | 0 | 425/378.2.ccls. | | OR | ON | 2015/02/20 08:49 |
| S176 | 0 | 425/72.2.ccls. | | OR | ON | 2015/02/20 08:50 |
| S279 | 36 | B29C47/0805.cpc. | US-PGPUB | OR | ON | 2017/03/30 09:00 |
| S280 | 113 | 425/376.1.ccls. | US-PGPUB | OR | ON | 2017/03/30 09:01 |
| S281 | 287 | 425/375.ccls. | US-PGPUB | OR | ON | 2017/03/30 09:01 |
| S282 | 30 | 425/87.ccls. | US-PGPUB | OR | ON | 2017/03/30 09:18 |
| S283 | 17 | 425/458.ccls. | US-PGPUB | OR | ON | 2017/03/30 09:18 |
| S284 | 165 | 425/72.2.ccls. | US-PGPUB | OR | ON | 2017/03/30 09:18 |
| S285 | 24 | 425/378.2.ccls. | US-PGPUB | OR | ON | 2017/03/30 09:18 |
| S286 | 108 | 156/498.ccls. | US-PGPUB | OR | ON | 2017/03/30 09:18 |
| S287 | 11 | 156/368.ccls. | US-PGPUB | OR | ON | 2017/03/30 09:19 |
| S288 | 214 | B29C47/862.cpc. | US-PGPUB | OR | ON | 2017/03/30 09:19 |
| S289 | 204 | B29C47/364.cpc. | US-PGPUB | OR | ON | 2017/03/30 09:19 |
| S290 | 16 | B05C17/0053.cpc. | US-PGPUB | OR | ON | 2017/03/30 09:19 |
| S291 | 611 | B29C67/0051.cpc. | US-PGPUB | OR | ON | 2017/03/30 09:19 |
| S292 | 1004 | B29C67/0055.cpc. | US-PGPUB | OR | ON | 2017/03/30 09:19 |
| S293 | 783 | B29C67/0085.cpc. | US-PGPUB | OR | ON | 2017/03/30 09:19 |
| S294 | 2893 | B33Y10/00.cpc. | US- | OR | ON | 2017/03/30 |

Case 2:26-cv-01592-MEMF-PVC Document 35-5 Filed 03/23/26 Page 369 of 583 Page ID #:2435

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | PGPUB | | | 09:20 |
| S295 | 2042 | B33Y30/00.cpc. | US-PGPUB | OR | ON | 2017/03/30 09:21 |
| S296 | 5242 | S279 or S280 or S281 or S282 or S283 or S284 or S285 or S286 or S287 or S288 or S289 or S290 or S291 or S292 or S293 or S294 or S295 | US-PGPUB | OR | ON | 2017/03/30 09:22 |
| S298 | 0 | S296 and ((nozzle or orifice or die) and (extruder) and (filament or strand) and (hand near (held or hold$3))).clm. | US-PGPUB | OR | ON | 2017/03/30 09:24 |

**4/1/2017 5:47:51 PM**
**C:\Users\lhohenbrink\Documents\EAST\Workspaces\14821399 Hand-Held 3D Printer CON.wsp**

| *Search Notes* | Application/Control No. | Applicant(s)/Patent Under Reexamination |
|---|---|---|
| | 14821399 | DILWORTH ET AL. |
| | **Examiner** | **Art Unit** |
| | LAWRENCE D HOHENBRINK JR | 1743 |

## CPC- SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| B29C47/862,364,0805 | 11/10/2016 | LDH |
| B05C17/0053 | 11/10/2016 | LDH |
| B29C67/0051,0055,0085 | 11/10/2016 | LDH |
| B33Y10/00 | 11/10/2016 | LDH |
| B33Y30/00 | 11/10/2016 | LDH |
| updated above | 3/30/2017 | LDH |

## CPC COMBINATION SETS - SEARCHED

| Symbol | Date | Examiner |
|---|---|---|
| | | |

## US CLASSIFICATION SEARCHED

| Class | Subclass | Date | Examiner |
|---|---|---|---|
| 425 | 376.1,375,87,458,72.2,378.2 | 11/10/2016 | LDH |
| 156 | 498,368 | 11/10/2016 | LDH |
| | updated above | 3/30/2017 | LDH |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Searched EAST (see attached) | 11/10/2016 | LDH |
| Inventor search | 11/10/2016 | LDH |
| Assignee search | 11/10/2016 | LDH |
| IDS reference review | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, USPC class/subclass, 425/376.1,375,87,458,72.2,378.2 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, USPC class/subclass, 156/498,368 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, CPC group/subgroup, B29C47/862,364,0805 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, CPC group/subgroup, B05C17/0053 | 11/10/2016 | LDH |

| | |
|---|---|
| /L.D.H./<br>Examiner.Art Unit 1743 | |

## SEARCH NOTES

| Search Notes | Date | Examiner |
|---|---|---|
| Image flip search with appropriate text limitation, CPC group/subgroup, B29C67/0051,0055,0085 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, CPC group/subgroup, B33Y10/00 | 11/10/2016 | LDH |
| Image flip search with appropriate text limitation, CPC group/subgroup, B33Y30/00 | 11/10/2016 | LDH |
| updated above | 3/30/2017 | LDH |

## INTERFERENCE SEARCH

| US Class/ CPC Symbol | US Subclass / CPC Group | Date | Examiner |
|---|---|---|---|
| 425 | 376.1,375,87,458,72.2,378.2 | 3/30/2017 | LDH |
| 156 | 498,368 | 3/30/2017 | LDH |
| B29C47 | 862,364,0805 | 3/30/2017 | LDH |
| B05C17 | 0053 | 3/30/2017 | LDH |
| B29C67 | 0051,0055,0085 | 3/30/2017 | LDH |
| B33Y10 | 00 | 3/30/2017 | LDH |
| B33Y30 | 00 | 3/30/2017 | LDH |

| | |
|---|---|
| /L.D.H./<br>Examiner.Art Unit 1743 | |

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

Sheet 1 of 1

| ***Complete if Known*** | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink, Jr. |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3] Number[4] Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B1 | CN-1285856-A | 02-28-2001 | Trexel, Inc | | X |
| | B2 | CN-202079738-U | 12-21-2011 | Yingjun, Zhang | | X |
| | B3 | WO-99/32544-A1 | 07-01-1999 | Trexel, Inc | | |

| Examiner Signature | | Date Considered | |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.

Espacenet

# Bibliographic data: CN1285856 (A) — 2001-02-28

## Microcellular foam extrusion/blow molding process and article made thereby

**Inventor(s):** ANDERSON JERE R [US]; FTRAFF RICHARD S [US]; OKAMOTO KELVIN [US] ± (JERE R. ANDERSON, ; RICHARD S. FTRAFF, ; KELVIN OKAMOTO, ; JERE R. ANDERSON,RICHARD S. FTRAFF,KELVIN OKAMOTO)

**Applicant(s):** TREXEL INC [US] ± (TREXEL, INC)

**Classification:**
- **international:** ***B29C49/04; B65D1/00; C08J9/00; C08J9/12;*** (IPC1-7): B65D1/02; C08J9/00
- **cooperative:** **B29C44/08; B29C44/348; B29C44/60; B29C47/0021; B29C47/1063; B29C47/22; B29C47/92; B29C49/04; C08J9/00; C08J9/122;** B29B2911/14326; B29C2947/92076; B29C2947/92095; B29C2947/92314; B29C2947/92514; B29C2947/92647; B29C2947/92685; B29C2947/92695; B29C2947/92876; B29C2947/92895; B29C2947/92904; B29C49/0073; B29K2105/0005; B29K2105/04; B29K2105/041; C08J2201/03; C08J2323/02; C08J2323/06; Y10T428/1376; Y10T428/249977; Y10T428/249986; Y10T428/253

**Application number:** CN1998813127 19981218

**Priority number(s):** US19970068173P 19971219 ; US19980107754P 19981110

**Also published as:** CN1265955 (C) WO9932544 (A1) US6294115 (B1) US6376059 (B1) US6169122 (B1) more

**Abstract not available for CN1285856 (A)**
**Abstract of corresponding document: WO9932544 (A1)**

A microcellular injection blow molding system and method, and microcellular blow molded articles produced thereby, are described. The system is equipped to extrude microcellular material that changes in thickness, material density, or both in the machine direction while maintaining a constant pressure drop rate during nucleation just prior to extrusion, providing the ability to produce consistent uniform microcellular material independent of material thickness. The systems and methods are particularly useful in production of strong, thin-walled, non-liquid-permeable, opaque containers

that do not contain reinforcing agent, chromophore, or residue of chemical blowing agent or chemical blowing agent by-product. Semi-crystalline microcellular foams that include a midlevel amount of nucleating agent, and methods of their production, also are provided. The microcellular foams can be produced in typical polymer processing techniques such as extrusion, injection molding and blow molding. The foams exhibit excellent mechanical properties and can be formed over a broad range of density into a number of different foam articles. Also provided are high-density polyethylene foams and dies that are suited for use with HDPE, foams.

[19]中华人民共和国国家知识产权局

[51]Int. Cl[7]
C08J 9/00
B65D 1/02

# [12]发明专利申请公开说明书

[21]申请号 98813127.7

[43]公开日 2001年2月28日

[11]公开号 CN 1285856A

[22]申请日 1998.12.18 [21]申请号 98813127.7
[30]优先权
[32]1997.12.19 [33]US [31]60/068,173
[32]1998.11.10 [33]US [31]60/107,754
[86]国际申请 PCT/US98/27118 1998.12.18
[87]国际公布 WO99/32544 英 1999.7.1
[85]进入国家阶段日期 2000.7.14

[71]申请人 特瑞塞尔公司
地址 美国马萨诸塞州
[72]发明人 杰里・R・安德森
理查德・S・斯特拉福
凯尔文・奥克蒙托 肯特・布利泽德
戴维・皮尔瑞克

[74]专利代理机构 永新专利商标代理有限公司
代理人 程 伟

权利要求书27页 说明书55页 附图页数10页

[54]发明名称 微孔泡沫塑料的挤塑/吹塑方法和借此制作的制品

[57]摘要

这项发明介绍一种微孔注坯吹塑系统和方法以及借此生产 的微孔吹塑制品。这种系统是为挤塑微孔材料而配备的，它在 保持恰好在挤出前的成核期间的恒定压降速率的同时按加工方 向改变材料的厚度或密度或两者，从而提供生产均匀一致性与 材料厚度无关的微孔材料的能力。这种系统和方法在生产强度 高、薄壁、无液体渗透而且不含增强剂、发色团或残留的化学 发泡剂或化学发泡剂副产物的不透明容器时特别有用。这项发明还提供了一种包含中等剂量成核剂的半结晶的微孔泡沫塑料 及其生产方法。这种微孔泡沫塑料可以用典型的聚合物加工方 法(如挤塑、注塑和吹塑)来生产。这种泡沫塑料呈现极好的 机械性能并且可以在非常宽的密度范围内被制成许多种不同的 泡沫塑料制品。这项发明还提供了一些高密度聚乙烯泡沫塑料 以及适合与HDPE泡沫塑料一起使用的模头。



ISSN 1008-4274

知识产权出版社出版

# 权 利 要 求 书

1. 一种制品，包括：

聚合物微孔泡沫塑料吹塑制品。

2. 一种制品，包括：

适合吹塑的挤塑微孔型坯。

3. 一种聚合物制品包括：

包含大量泡孔的聚合物材料基体，其中平均泡孔尺寸小于 60 微米，

包括半结晶聚合物和成核剂的聚合物材料，其中成核剂的含量按聚合物材料的重量计在大约 2.5%重量百分比和 7%重量百分比之间。

4. 一种泡沫制品，包括：

包含大量泡孔的聚合物材料基体，所述聚合物材料基本上由高密度聚乙烯组成、基本上没有残留的化学发泡剂和化学发泡剂的反应副产物，并且具有与连续挤出物的形状基本一致的形状。

5. 一种泡沫制品，包括：

包含大量泡孔的聚合物材料基体，该聚合物材料基本上由高密度聚乙烯组成、基本上没有残留的化学发泡剂和化学发泡剂的反应副产物并且具有与模具内部形状基本一致的形状。

00·07·14

6. 根据上述权利要求中任何一项的制品，该制品包括半结晶聚合物材料，并且包括按聚合物材料重量计含量从大约 2.5%重量百分比至大约 7%重量百分比的成核剂。

7. 根据上述权利要求中任何一项的制品，该制品基本上呈现白色的固态塑料制品的外观。

8. 根据权利要求第 1、3 和 5 至 7 项中任何一项的制品，该制品是作为食品容器构成的。

9. 根据权利要求第 1、3 和 5 至 8 项中任何一项的制品，该制品是作为牛奶容器构成的。

10. 根据权利要求第 1、3 和 5 至 9 项中任何一项的制品，该制品能装食品。

11. 根据权利要求第 1、3 和 5 至 10 项中任何一项的制品，该制品能装牛奶。

12. 根据上述权利要求中任何一项的制品，其中聚合物基体包括按聚合物重量计介于大约 5%重量百分比至大约 7%重量百分比的成核剂。

13. 根据上述权利要求中任何一项的制品，该制品包括残留的化学发泡剂和化学发泡剂的反应副产物，其含量小于在采用大约 0.1%重量百分比以上化学发泡剂吹塑的制品中必然发现的含量。

14. 根据上述权利要求中任何一项的制品，该制品包括残留的化学发泡剂和化学发泡剂的反应副产物，其含量小于在采用大约 0.05%重量百分比以上化学发泡剂吹塑的制品中必然发现的含量。

15. 根据上述权利要求中任何一项的制品，该制品基本上没有残留的化学发泡剂和化学发泡剂的反应副产物。

16. 根据上述权利要求中任何一项的制品，该制品具有小于大约 0.1%重量百分比的辅助发色团，其结构设计适合装暴露于光线下时易遭破坏的物质。

17. 根据上述权利要求中任何一项的制品，该制品没有为了支撑该泡沫塑料制品而定位的非泡沫塑料的结构支撑材料。

18. 根据上述权利要求中任何一项的制品，该制品包括至少两个吹塑的聚合物微孔泡沫塑料层。

19. 根据权利要求 18 的制品，该制品包括至少两个共挤层。

20. 根据上述权利要求中任何一项的制品，该制品包括与该泡沫塑料制品相邻的辅助的非泡沫塑料的非结构支撑层。

21. 根据上述权利要求中任何一项的制品，该制品包括至少一个壁厚小于大约 0.075 英寸的部分。

22. 根据权利要求第 1、3 和 5 至 21 项中任何一项的制品，其中该制品是一个容器，并且该容器至少有 50%的壁厚小于 0.075 英寸。

23. 根据权利要求 22 的制品，其中该制品是一个容器，并且该容器至少有 50%的壁厚小于大约 0.050 英寸。

24. 根据权利要求 22 的制品，其中该制品是一个容器，并且该容器至少有 50%的壁厚小于大约 0.040 英寸。

25. 根据上述权利要求中任何一项的制品，该制品是由熔体流速不超过 0.2 克 /10 分钟的聚合物材料制成的。

26. 根据权利要求第 1、3 和 5 至 25 中任何一项的制品，其中该制品是吹塑成形的，并且包括被膨胀到第一程度的第一部分和被膨胀到至少是第一程度的 1.5 倍的第二部分，第一和第二部分在各自的厚度、材料密度和泡孔密度方面相差不超过 5%。

27. 根据上述权利要求中任何一项的制品，该制品包括少于大约 10%重量百分比的增强剂。

28. 根据上述权利要求中任何一项的制品，该制品具有小于大约 100 微米的平均泡孔尺寸。

29. 根据上述权利要求中任何一项的制品，该制品具有小于大约 50 微米的平均泡孔尺寸。

30. 根据权利要求 1 的制品，该制品具有小于大约 30 微米的平均泡孔尺寸。

31. 根据上述权利要求中任何一项的制品，该制品具有大约为 75 微米的最大泡孔尺寸。

32. 根据上述权利要求中任何一项的制品，该制品具有大约为 50 微米的最大泡孔尺寸。

33. 根据上述权利要求中任何一项的制品，该制品具有大约为 35 微米的最大泡孔尺寸。

34. 根据上述权利要求中任何一项的制品，该制品具有小于大约 30 微米的平均泡孔尺寸和大约为 75 微米的最大泡孔尺寸。

35. 根据上述权利要求中任何一项的制品，该制品具有小于大约 20 微米的平均泡孔尺寸和大约为 50 微米的最大泡孔尺寸。

36. 根据上述权利要求中任何一项的制品，该制品具有小于大约 10 微米的平均泡孔尺寸和大约为 25 微米的最大泡孔尺寸。

37. 根据上述权利要求中任何一项的制品，其中泡孔主要是封闭的泡孔。

38. 根据上述权利要求中任何一项的制品，该制品包括至少大约 1%重量百分比的成核剂。

39. 根据权利要求 38 的制品，其中成核剂是滑石粉。

40. 根据权利要求 2 至 4 和 6 至 39 中任何一项的制品，该制品是作为适合吹塑的挤塑型坯成形的，它具有第一部分和在型坯加工方向上与该第一部分隔开的第二部分，第一部分和第二部分厚度差异至少是大约 1.1 倍。

41. 根据权利要求 40 的制品，其中第一部分和第二部分厚度差异至少是大约 1.3 倍。

42. 根据权利要求 40 的制品，其中第一部分和第二部分厚度差异至少是大约 1.5 倍。

**43.** 根据权利要求 40 的制品，其中第一部分和第二部分厚度差异至少是大约 1.7 倍。

**44.** 根据权利要求第 2 至 4 和 6 至 43 项中任何一项的制品，该型坯具有第一部分和在型坯加工方向上与该第一部分隔开的第二部分，第一部分和第二部分材料密度差异至少是大约 1.1 倍。

**45.** 根据权利要求 44 的制品，其中第一部分和第二部分材料密度差异至少是大约 1.3 倍。

**46.** 根据权利要求 44 的制品，其中第一部分和第二部分材料密度差异至少是大约 1.5 倍。

**47.** 根据权利要求 44 的制品，其中第一部分和第二部分材料密度差异至少是大约 1.7 倍。

**48.** 根据权利要求 44 的制品，其中第一部分和第二部分材料密度差异至少是大约 2.0 倍。

**49.** 根据上述权利要求中任何一项的制品，该制品具有小于 50%、大于 10%的空隙率。

**50.** 根据上述权利要求中任何一项的制品，其中聚合物包括聚烯烃。

**51.** 根据上述权利要求中任何一项的制品，其中聚合物包括聚丙烯。

**52.** 根据上述权利要求中任何一项的制品，其中聚合物基本上是由聚丙烯组成的。

53. 根据上述权利要求中任何一项的制品，其中聚合物包括高密度聚乙烯。

54. 根据上述权利要求中任何一项的制品，其中聚合物至少包括 80%高密度聚乙烯。

55. 根据上述权利要求中任何一项的制品，其中聚合物至少包括 90%高密度聚乙烯。

56. 根据上述权利要求中任何一项的制品，其中聚合物基本上是由高密度聚乙烯组成的。

57. 根据上述权利要求中任何一项的制品，该制品包含成核剂，该成核剂包括无机固体。

58. 根据上述权利要求中任何一项的制品，该制品包含成核剂，该成核剂包括填料。

59. 根据上述权利要求中任何一项的制品，该制品包含成核剂，该成核剂包括滑石粉。

60. 一种微孔吹塑系统，该系统包括：

挤塑装置，该装置包括具有为接收聚合物微孔材料的母料而设计的入口、结构设计适合提供聚合物材料和发泡剂的单相非成核溶液的挤塑机和与该挤塑机流体连通并且具有为释放微孔材料型坯而设计的出口的吹塑成形模头，该装置还包括连接挤塑机入口和模头出口的封闭通道，该通道包括为在发泡剂和流体聚合物材料的单相非成核溶液中形成速率足以引起微孔成核作用的压降而选定的长度和截面尺寸的成核通道；以及

吹塑模具，该模具的位置是可调的，以便接收来自模头出口的微孔材料型坯。

61. 一种系统，该系统包括：

结构设计适合挤塑聚合物泡沫塑料的母体材料的挤塑机；

与所述挤塑机相关联、能够接收来自该挤塑机的聚合物泡沫塑料母体材料并且能够聚集聚合物泡沫塑料母体材料的装模料的储料缸；以及

为了接收储料缸的产品可借助成形模头定位的吹塑装置，该装置的结构设计适合把所述材料吹塑成形，以便形成聚合物泡沫塑料的吹塑制品。

62. 一种用于微孔吹塑成形的系统，该系统包括：

具有为接收聚合物微孔材料的母料而设计的入口，并且其结构设计适合提供聚合物材料和发泡剂的单相非成核溶液的挤塑机；

可以为了接收来自挤塑机的聚合物泡沫塑料母体材料和聚集聚合物泡沫塑料母体材料的装模料而定位的储料缸；

与储料缸流体连通并且具有为了释放微孔材料型坯而设计的出口的吹塑成形模头；以及

可以为了来自模头出口的微孔材料型坯而调整位置且其结构设计适合形成聚合物微孔泡沫塑料吹塑制品的吹塑模具，

该装置包括一个连接挤塑机的入口与模具的出口的封闭通道，该通道包括成核通道，该成核通道的长度和截面尺寸是为了在发泡剂和流体聚合物材料的单相非成核溶液中形成速率足以引起微孔成核作用的压降而选定的。

63. 一种用于挤塑微孔聚合物材料的系统，该系统包括：

聚合物成形模头，该模头包括在其上游端为接收微孔挤出物母料而设计的入口、在其下游端定义模口间隙以便释放发泡的聚合物材料的出口、以及连接入口和出口的流体通道，该流体通道包括一成核通道，该成核通道以大于 4° 的夹角使下游方向的横截面逐渐减小。

64. 一种微孔材料成形系统，该系统包括：

结构设计适合提供包括聚合物材料和发泡剂的单相非成核溶液的微孔挤出物母料的挤塑机；

可以为了接收来自挤塑机的微孔挤出物母料和聚集微孔挤出物母料的装模料而定位的储料缸；以及

聚合物成形模头，该模头包括在其上游端为从挤塑机接收微孔挤出物母料而设计的入口、在其下游端定义模口间隙以便释放发泡的聚合物材料的出口、以及连接入口和出口的流体通道，该流体通道包括一成核通道，该成核通道以大于 4°的夹角使下游方向的横截面逐渐减小。

65. 一种微孔聚合物材料挤塑系统，该系统包括：

聚合物成形模头，该模头包括在其上游端为接收微孔挤出物母料而设计的入口、在其下游端、定义模口间隙、用于释放发泡聚合物材料的出口、以及连接入口和出口的流体通道，该流体通道包括成核通道，该成核通道是这样构成的，以致当聚合物材料与发泡剂的单相非成核溶液以大约 100lbs/hr.的流速引入该模头并通过该模头输送时，该溶液的成核作用发生以致形成成核的聚合物流，该聚合物流在不超过大约 0.002 秒的时间周期内从模头中释放出来。

66. 根据权利要求第 60 至 65 项中任何一项的系统，该系统包括成核通道，该成核通道的长度和横截面尺寸致使当流体聚合物以每小时大约 40 lbs 的速率通过该成核通道时，在该流体聚合物中将形成至少大约 0.3GPa/sec 的压降速率。

67. 根据权利要求第 60 至 66 项中任何一项的系统，该系统包括挤塑机，该挤塑机具有入口、出口和在入口与出口之间、结构设计适合接收在环境条件下呈气态的发泡剂、并且适合把发泡剂与母料混合以形成单相非成核溶液的、封闭的、容纳螺杆的机筒。

68. 根据权利要求第 60 至 67 项中任何一项的系统，该系统包括一结构设计适合使微孔材料以至少大约 60 lbs/hr 的速率成核的成核通道。

69. 根据权利要求 68 的系统，该系统包括一结构设计适合使微孔材料以至少大约 100 lbs/hr 的速率成核的成核通道。

70. 根据权利要求 68 的系统，该系统包括一结构设计适合使微孔材料以至少大约 400 lbs/hr 的速率成核的成核通道。

71. 根据权利要求第 60 至 70 项中任何一项的系统，其中模头具有引出间隙并且其结构设计适合在挤塑期间改变引出间隙的大小，以便形成厚度随着离开引出间隙的距离变化的挤出物。

72. 根据权利要求第 60 至 62 和 65 至 71 项中任何一项的系统，该模头的结构设计适合在不改变聚合物材料/发泡剂的混合物通过该模头时所经历的压降速率的实例中改变引出间隙的大小。

73. 根据权利要求第 60 至 72 项中任何一项的系统，该系统包括成核通道，该成核通道的横截面尺寸沿其长度变化。

74. 根据权利要求 73 的系统，其中成核通道使下游方向的横截面逐渐减小。

75. 根据权利要求第 60 至 74 项中任何一项的系统，该系统包括结构设计适合形成吹塑的聚合物微孔泡沫塑料制品的吹塑模具。

76. 根据权利要求第 60 至 75 项中任何一项的系统，该系统包括一模头，该模头包括一成核通道，该成核通道的长度和横截面尺寸是为了在发泡剂和流体聚合物材料的单相非成核溶液中形成其下降速率以足以引起成核作用的压降而选定的。

77. 根据权利要求 76 的系统，其中所述模头包括一成核通道，该成核通道的长度和横截面尺寸是为了在发泡剂和流体聚合物材料的单相非成核溶液中形成下降速率足以引起微孔成核作用的压降而选定的。

78. 根据权利要求第 61、62 和 66 至 77 项中任何一项的系统，该系统进一步包括位置可调的模头，以便接收储料缸的产品和挤塑微孔聚合物型坯，并且该吹塑装置的结构设计适合把型坯吹塑成聚合物微孔泡沫塑料的吹塑制品。

79. 根据权利要求第 60 至 63 和 65 至 78 项中任何一项的系统，其中模头的结构设计适合在挤塑期间改变模口间隙的宽度，同时保持恒定的成核通道间隙。

80. 根据权利要求第 63 和 65 至 79 项中任何一项的系统，该系统进一步包括结构设计适合制备微孔挤出物母料，并且可以为了把该母料输送到模头入口而调整位置的挤塑机。

81. 根据权利要求 80 的系统，其中所述挤塑机的结构设计适合提供聚合物材料和发泡剂的单相非成核溶液，并且把该单相溶液输送到模头入口。

82. 根据权利要求 80 的系统，其中成形模头与所述挤塑机流体连通，并且具有为释放微孔材料型坯而设计的出口的吹塑成形模头，该系统进一步包括可为接收来自模头出口的微孔材料型坯调整位置的吹塑模具。

83. 根据权利要求 80 的系统，其中所述挤塑机的结构设计适合接收在环境条件下呈气态的发泡剂，并且把该发泡剂与母料混合成单相非成核溶液。

84. 根据权利要求 83 的系统，该系统进一步包括：

与所述挤塑机流体连通、能够接收来自所述挤塑机的聚合物泡沫塑料的母体材料和聚集聚合物泡沫塑料母体材料的装模料的储料缸；以及

可以为了接收储料缸的产品借助成形模头调整位置的吹塑装置，该装置的结构设计适合把材料吹塑成聚合物泡沫塑料的吹塑制品。

85. 根据权利要求第 60 至 84 项中任何一项的系统，其中模头的结构设计适合挤塑微孔材料的管状型坯。

86. 根据权利要求第 60 至 84 项中任何一项的系统，其中模头具有引出间隙，并且其结构设计适合在挤塑期间改变引出间隙的大小，以便形成厚度随着距引出间隙的距离变化的挤出物。

87. 根据权利要求第 64 至 86 项中任何一项的系统，其中成核通道以大于 6°的夹角使下游方向的横截面逐渐减小。

88. 根据权利要求 87 的系统，其中成核通道以大于 7°的夹角使下游方向的横截面逐渐减小。

89. 根据权利要求 87 的系统，其中成核通道以大于 8°的夹角使下游方向的横截面逐渐减小。

90. 根据权利要求第 64 至 86 项中任何一项的系统，其中成核通道以大于 4°且小于 18°的夹角使下游方向的横截面逐渐减小。

91. 根据权利要求 90 的系统，其中成核通道以大于 4°且小于 8°的夹角使下游方向的横截面逐渐减小。

92. 根据权利要求 65 的系统，其中成核通道以大于 4°的夹角使下游方向的横截面逐渐减小。

93. 一种方法，该方法包括:

在改变挤出物厚度的同时把聚合物微孔泡沫塑料挤出物挤出。

94. 根据权利要求 93 的方法，该方法包括提供聚合物材料和在环境条件下呈气态的发泡剂的单相非成核溶液、通过使该单相溶液承受高压降速率使之成核、以及挤出作为该单相溶液的产物的聚合物泡沫塑料挤出物。

95. 根据权利要求 94 的方法，该方法包括挤塑适合吹塑的微孔型坯。

96. 根据权利要求 95 的方法，该方法进一步包括将型坯吹塑成形，以便形成吹塑的微孔制品。

97. 根据权利要求第 93 至 96 项中任何一项的方法，挤出物，即型坯具有至少大约 10%的空隙率。

98. 根据权利要求第 93 至 97 项中任何一项的方法，该方法包括形成泡沫聚合物材料母体和发泡剂的单相非成核流体溶液的物料流、使该溶液连续地成核以形成成核的聚合物流体、以及由成核的聚合物流体挤塑成聚合物泡沫挤出物。

99. 根据权利要求 98 的方法，其中连续成核的步骤涉及在没有辅助成核剂时，通过使物料流承受足以在溶液中形成成核部位的溶解度变化条件件，在该物料流中形成发泡剂成核部位。

100. 根据权利要求第 93 至 99 中任何一项的方法，该方法包括形成泡沫聚合物材料母体和超临界流体发泡剂的流体单相非成核溶液的物料流。

101. 根据权利要求第 98 至 100 中任何一项的方法，该方法涉及使该物料流承受压降，其压降速率足以形成成核部位。

102. 根据权利要求 101 的方法，该方法涉及使该物料流承受压降，其压降速率足以以至少大约每立方厘米 $10^7$ 个部位的密度形成成核部位。

103. 根据权利要求 101 的方法，该方法涉及使该物料流在压降速率至少大约为 0.3 GPa/秒的条件下承受压降以便形成成核部位。

104. 根据权利要求第 93 至 103 中任何一项的方法，该方法包括把聚合物泡沫挤出物从挤塑机模头挤出到环境条件中，同时改变挤出物的厚度。

**105.** 根据权利要求第 93 至 104 中任何一项的方法，该方法涉及形成泡沫聚合物材料母体和发泡剂的流体单相非成核溶液的物料流，其方法是把在环境条件下呈气态的流体在不足大约 1 分钟的周期内引入至少以大约 10 lbs/hr 的速度流动的流体聚合物材料从而形成该流体与聚合物的单相溶液，在该溶液中该流体的含量按溶液重量计至少为 2%重量百分比。

**106.** 根据权利要求 105 的方法，该方法包括使该溶液连续地成核，其方法是在以递增的速度流动的单相物料流的逐次连续的诸部分内连续地降低压力。

**107.** 根据权利要求 106 的方法，其中发泡剂在均匀的单相非成核溶液中的浓度按该溶液的重量计至少是大约 5%重量百分比。

**108.** 根据权利要求第 93 至 107 中任何一项的方法，该方法涉及形成泡沫聚合物材料的母体和发泡剂的流体单相溶液的物料流，其中发泡剂在均匀的单相非成核溶液中的浓度按该溶液的重量计至少是大约 7%重量百分比。

**109.** 根据权利要求 108 的方法，其中发泡剂在均匀的单相非成核溶液中的浓度按该溶液的重量计至少是大约 10%重量百分比。

**110.** 根据权利要求第 108 至 109 中任何一项的方法，其中发泡剂是超临界的二氧化碳。

**111.** 一种方法，包括：

提供挤出的聚合物微孔泡沫塑料型坯；以及

使该型坯承受吹塑条件。

**112.** 一种方法，包括：

提供聚合物泡沫塑料型坯；以及

使该型坯承受至少大约 15psi 的吹塑条件，借此至少使一部分型坯在圆周上至少膨胀大约 50%，并形成吹塑成形的制品，同时借助在从型坯变成吹塑制品的过程中，使该型坯的密度增加不超过大约 20%保持相对不变的密度。

**113.** 一种方法，包括：

提供聚合物微孔泡沫塑料型坯；以及

在不给该型坯加热的条件下，使该型坯承受吹塑条件。

**114.** 根据权利要求第 111 至 113 中任何一项的方法，其中泡沫塑料型坯的孔隙度至少是大约 10%。

**115.** 根据权利要求第 111 至 114 中任何一项的方法，其中型坯具有不足大约 0.100 英寸的预吹厚度。

**116.** 根据权利要求第 111 至 115 中任何一项的方法，该方法包括把聚合物材料与发泡剂的混合物挤塑成型坯，在该混合物中存在的发泡剂含量按混合物的重量计不足大约 3%重量百分比。

**117.** 根据权利要求第 111 至 116 中任何一项的方法，该方法包括把聚合物材料与超临界发泡剂的单相溶液挤塑成型坯。

**118.** 根据权利要求第 116 至 117 中任何一项的方法，其中发泡剂包括二氧化碳。

**119.** 根据权利要求第 116 至 117 中任何一项的方法，其中发泡剂包括氮气。

**120.** 根据权利要求第 111 至 119 中任何一项的方法，其中承受步骤涉及在型坯内部施加至少大约 1.5 bar 的压力。

**121.** 根据权利要求 120 的方法，该方法涉及在型坯内部施加至少大约 3 bar 的压力。

**122.** 根据权利要求 120 的方法，该方法涉及在型坯内部施加至少大约 5 bar 的压力。

**123.** 根据权利要求 120 的方法，该方法涉及在型坯内部施加至少 10 bar 的压力。

**124.** 根据权利要求第 111 至 123 中任何一项的方法，该方法涉及形成基本上没有非泡沫塑料支撑结构的最终的吹塑制品，该制品基本上是闭孔的，其壁厚不足大约 0.075 英寸。

**125.** 根据权利要求第 111 至 124 中任何一项的方法，该方法包括连续挤塑聚合物泡沫塑料挤出物和连续地使该挤出物承受吹塑条件。

126. 根据权利要求第 111 至 125 中任何一项的方法，包括：

提供挤出的聚合物泡沫塑料型坯，该型坯具有第一部分和在型坯的加工方向上与第一部分隔开的第二部分，第一和第二部分在厚度上至少相差大约 1.1 倍；以及

使该型坯承受吹塑条件。

127. 根据权利要求 126 的方法，其中第一和第二部分在厚度上至少相差大约 1.3 倍。

128. 根据权利要求 126 的方法，其中第一和第二部分在厚度上至少相差大约 1.5 倍。

129. 根据权利要求 126 的方法，其中第一和第二部分在厚度上至少相差大约 1.7 倍。

130. 根据权利要求第 126 至 129 中任何一项的方法，包括：

提供挤出的聚合物泡沫塑料型坯，该型坯具有第一部分和在型坯的加工方向上与第一部分隔开的第二部分，第一和第二部分在材料密度上至少相差大约 1.1 倍；以及

使该型坯承受吹塑条件。

131. 根据权利要求第 111 至 130 中任何一项的方法，包括：

提供熔体流不超过 0.2 g/10min 的聚合物材料的挤塑型坯；以及

使该型坯承受吹塑条件。

132. 一种方法，包括：

按加工方向从挤塑机模头挤出聚合物泡沫塑料挤出物，同时改变离开模头的挤出物的温度，借此形成具有第一部分和在加工方向上与第一部分隔开的第二部分的挤出物，第一部分和第二部分在材料密度上至少相差大约 1.1 倍。

133. 根据权利要求 132 的方法，包括借助冷却气流连续地改变离开模头的挤出物的温度。

134. 一种形成泡沫塑料制品的方法，包括：

在聚合物加工装置中朝下游方向输送聚合物材料，该聚合物材料基本上是由高密度聚乙烯组成的；

在聚合物加工装置中把物理发泡剂引入聚合物材料；以及

由聚合物材料形成泡沫制品。

135. 一种形成泡沫塑料制品的方法，包括：

在聚合物加工装置中朝下游方向输送聚合物材料，该聚合物材料包括半结晶的聚合物，以及按聚合物材料重量计含量介于大约 2.5%重量百分比和大约 7%重量百分比之间的成核剂；以及

由该聚合物材料形成微孔制品。

136. 根据权利要求 134 或 135 的方法进一步包括：在聚合物加工装置中把按聚合物材料重量计不足 1.5%重量百分比的发泡剂引入所述聚合物材料。

137. 根据权利要求第 134 至 136 中任何一项的方法进一步包括：把按聚合物材料重量计不足 0.5%重量百分比的发泡剂引入所述聚合物材料，以形成发泡剂与聚合物材料的溶液。

138. 根据权利要求第 134 至 137 中任何一项的方法，该方法包括把发泡剂引入聚合物材料，其中发泡剂包括二氧化碳。

139. 根据权利要求第 134 至 137 中任何一项的方法，该方法包括把发泡剂引入聚合物材料，其中发泡剂包括氮气。

140. 根据权利要求第 134 至 137 中任何一项的方法，该方法包括把发泡剂引入聚合物材料，其中发泡剂是二氧化碳与氮气的混合物。

141. 根据权利要求第 134 至 140 中任何一项的方法进一步包括在发泡剂和聚合物材料的溶液中形成不足 1.0GPa/s.的压降速率。

142. 根据权利要求 141 的方法，其中压降速率不足 0.10GPa/s。

143. 根据权利要求 141 的方法，其中压降速率不足 0.05GPa/s。

144. 根据权利要求第 134 至 143 中任何一项的方法，其中所述聚合物材料包括按聚合物材料重量计介于大约 5%重量百分比和大约 7%重量百分比之间的成核剂

145. 根据权利要求第 134 至 144 中任何一项的方法，其中聚合物材料包括聚烯烃。

146. 根据权利要求第 134 至 145 中任何一项的方法，其中聚合物材料包括聚丙烯。

147. 根据权利要求第 134 至 146 中任何一项的方法，其中聚合物材料基本上是由聚丙烯组成的。

148. 根据权利要求第 134 至 147 中任何一项的方法，其中聚合物材料包括高密度聚乙烯。

149. 根据权利要求 148 的方法，其中聚合物材料至少包括 80% 的高密度聚乙烯。

150. 根据权利要求 148 的方法，其中聚合物材料至少包括 90% 的高密度聚乙烯。

151. 根据权利要求 148 的方法，其中聚合物材料基本上是由高密度聚乙烯组成的。

152. 根据权利要求 148 的方法，其中所述制品基本上没有残留的化学发泡剂和化学发泡剂的反应副产物。

153. 根据权利要求第 134 至 152 中任何一项的方法，其中成核剂包括无机固体。

154. 根据权利要求第 134 至 152 中任何一项的方法，其中成核剂包括填料。

155. 根据权利要求第 134 至 152 中任何一项的方法，其中成核剂包括滑石粉。

156. 根据权利要求第 134 至 155 中任何一项的方法，其中形成微孔制品包括通过与聚合物加工装置的下游端相连的模头把所述聚合物材料挤出。

157. 根据权利要求第 134 至 155 中任何一项的方法，其中形成微孔制品包括通过与聚合物加工装置的下游端相连的注塑模具模塑所述聚合物材料。

158. 根据权利要求第 134 至 155 中任何一项的方法，其中形成微孔制品包括吹塑成该制品。

159. 根据权利要求第 134 至 158 中任何一项的方法，其中所述泡沫塑料制品包括大量的泡孔，其平均泡孔尺寸小于 100 微米。

160. 根据权利要求第 134 至 158 中任何一项的方法，其中所述泡沫塑料制品包括大量的泡孔，其平均泡孔尺寸小于 50 微米。

161. 根据权利要求第 134 至 158 中任何一项的方法，其中所述泡沫塑料制品包括大量的泡孔，其平均泡孔尺寸小于 20 微米。

162. 根据权利要求第 134 至 161 中任何一项的方法，其中所述聚合物材料基本上没有残留的化学发泡剂或化学发泡剂的副产物。

163. 根据权利要求第 134 至 162 中任何一项的方法，其中所述泡沫塑料制品具有大于 10%的空隙率。

164. 根据权利要求 163 的方法，其中所述泡沫塑料制品具有大于 20%的空隙率。

165. 根据权利要求 163 的方法，其中所述泡沫塑料制品具有大于 50%的空隙率。

166. 根据权利要求 163 的方法，其中所述泡沫塑料制品具有大于 10%且小于 50%的空隙率。

167. 一种方法，包括:

把聚合物材料和发泡剂的单相非成核溶液引入聚合物成形模头的入口，使该溶液成核以形成成核的聚合物物料流，成核后用不超过大约 0.002 秒的时间周期把成核的物料流作为聚合物微孔挤出物从模头出口释放。

168. 根据权利要求 167 的方法，其中模头包括成核通道，该通道以大于 4°的夹角使下游方向的横截面逐渐减小。

169. 根据权利要求 167 的方法，其中模头包括成核通道，该通道以大于 6°的夹角使下游方向的横截面逐渐减小。

170. 根据权利要求 167 的方法，其中模头包括成核通道，该通道以大于 7°的夹角使下游方向的横截面逐渐减小。

171. 根据权利要求 167 的方法，其中模头包括成核通道，该通道以大于 8°的夹角使下游方向的横截面逐渐减小。

172. 根据权利要求第 167 至 171 项中任何一项的方法，包括把 HDPE 和发泡剂的单相非成核溶液引入聚合物成形模头的入口。

173. 根据权利要求第 167 至 172 项中任何一项的方法，包括使聚合物材料和发泡剂单相非成核溶液在模头中成核，其方法是使该溶液承受溶液中的压降，其压降速率至少为大约 0.3 GPa/秒。

174. 根据权利要求第 167 至 173 项中任何一项的方法，其中单相非成核溶液包括按该溶液的重量计不超过大约 3%重量百分比的发泡剂。

175. 根据权利要求第 167 至 174 项中任何一项的方法，包括成核后用不超过大约 0.001 秒的时间周期把成核的物料流作为聚合物微孔挤出物从模头出口释放。

176. 根据权利要求第 167 至 175 项中任何一项的方法，包括通过使溶液承受高压降速率的压降成核该溶液。

177. 根据权利要求 176 的方法，包括通过使溶液承受压降速率足以引起微孔成核作用的压降成核该溶液。

178. 根据权利要求 176 的方法，包括通过使溶液承受压降速率至少大约为 1.0 GPa/秒的压降成核该溶液。

179. 根据权利要求第 167 至 178 项中任何一项的方法，包括在从模头出口释放聚合物微孔挤出物时改变该模头出口定义的模头间隙宽度，同时保持恒定的成核通道间隙在使溶液成核的模头内。

180. 根据权利要求第 167 至 179 项中任何一项的方法，其中所述模头是吹塑成形模头，该方法涉及把聚合物材料挤出物作为微孔型坯从模头出口释放出来，该方法进一步包括把该型坯吹塑成微孔聚合物的吹塑制品。

181. 根据权利要求第 167 至 180 项中任何一项的方法，其中发泡剂是大气气体。

**182.** 根据权利要求 181 的方法，其中发泡剂是二氧化碳。

**183.** 根据权利要求第 180 至 182 项中任何一项的方法，包括把聚合物材料和发泡剂的单相溶液从储料缸引入模头入口。

**184.** 根据权利要求第 167 至 183 项中任何一项的方法，包括从模头出口释放厚度随着至该模头出口的距离变化的挤出物。

**185.** 根据权利要求第 112 至 131 项中任何一项的方法，其中所述型坯是挤出的聚合物微孔泡沫塑料型坯。

**186.** 根据权利要求第 111 至 131 项中任何一项的方法，其中所述泡沫塑料型坯的孔隙度至少大约为 20%。

**187.** 根据权利要求第 111 至 131 项中任何一项的方法，其中所述泡沫塑料型坯的孔隙度至少大约为 30%。

**188.** 根据权利要求第 111 至 131 项中任何一项的方法，其中所述泡沫塑料型坯的孔隙度至少大约为 40%。

**189.** 一种设备，包括：

聚合物成形模头，该模头包括在其上游端结构设计适合接收聚合物流体与在环境条件下呈气态的发泡剂的均匀的单相溶液的入口、在其下游端用于释放泡沫聚合物材料定义模头间隙的出口、以及连接入口和出口的流体通道，该流体通道包括成核通道，该模头的结构设计是为了在挤塑期间改变模头间隙的宽度，同时保持恒定的成核通道间隙而设计的。

**190.** 根据权利要求 189 的方法，其中所述成核通道具有这样的长度和横截面尺寸，以致当流体聚合物以大于每小时 40 磅流体的速度通过该通道时，该通道将在流体聚合物中形成至少大约 0.3 GPa/秒的压降。

# 说 明 书

## 微孔泡沫塑料的挤塑/吹塑方法和借此制作的制品

### 相关的申请

这份申请是美国专利申请第 60/068,173 号（1997 年 12 月 19 日申请）和第 60/107,754 号（1998 年 11 月 10 日申请）的部分继续申请，两者都是由 Jeer R. Anderson 等人申请的，两者的题目都是"Microcellular Extrusion/Blow Molding Process and Article Made Thereby（ 微孔挤塑/吹塑方法和借此制作的制品）"，在此通过引证把这两份申请并入本文。

### 本发明的现有技术

聚合物泡沫塑料在其聚合物基体中包括大量的空隙（也称之为泡孔）。通过用空隙代替固体塑料，聚合物泡沫塑料对于给定的体积所用的原材料比密实的塑料少。因此，在许多应用中用聚合物泡沫塑料代替密实的塑料将降低材料成本。

微孔泡沫塑料与常规的聚合物泡沫塑料相比，它具有较小的泡孔尺寸和较高的泡孔密度。通常，微孔泡沫塑料被定义为平均泡孔尺寸小于 100 微米，且泡孔密度高于每立方厘米 $10^6$ 个泡孔的固体塑料。在典型的连续形成微孔泡沫塑料的方法（如挤塑）中，作用在发泡剂和聚合物的单相溶液上的压力迅速下降以使这些泡孔成核。成核速率必须足够高才能形成微孔结构。

几份专利介绍了微孔材料和微孔工艺的各个方面。美国专利第 4,473,665 号（Martini-Vvedensky 等人，1984 年 9 月 25 日）

介绍了一种泡孔直径小于大约 100 微米的泡沫聚合物的制作方法。在 Martini-Vvedensky 等人的技术中，用发泡剂使材料母体饱和，把该材料置于高压下，然后使压力迅速下降，从而使发泡剂成核，并且为泡孔的形成创造条件。然后，将该材料迅速冻结以便保持所需的微泡分布。

美国专利第 5,158,986 号（Cha 等人，1992 年 10 月 27 日）介绍了利用超临界流体作为发泡剂形成微孔聚合物材料的方法。在 Cha 等人的分批加工法中，塑料制品被浸没在高压超临界流体中并持续一段时间，然后迅速地返回环境条件从而引起溶解度变化和成核作用。在连续法中，聚合物片被挤塑成形，然后在高压下通过超临界流体容器中的辊隙，然后快速地暴露在环境条件中。在另一种连续法中，用超临界流体饱和的熔融聚合物形成物料流。该聚合物物料流被迅速加热，借此获得的热力学不稳定性（溶解度变化）形成成核作用部位，同时使该系统保持在压力下以阻止泡孔的充分增长。然后将该材料注射到模腔中，在那里压力被降低，从而为泡孔增长创造条件。

国际专利公布号 WO98/08667（Burnham 等人）提供了一些生产微孔材料和微孔制品的方法和系统。在 Burnham 等人的一种方法中，泡沫聚合物母体和发泡剂的流体单相溶液被连续地成核，其方法是把物料流分成若干个分开的部分并且单独成核每个分开的部分。然后，被分开的物料流可以再次合并成一股成核的流体聚合物物料流。再次合并的物料流可以被塑造成所需的形状，例如通过成型模头。Burnham 等人还介绍了一种有利于制作厚微孔制品的模头，该模头包括多路成核段。其它方法也介绍了非常薄的微孔产品的制作。具体地说，提供了一种方法，该方法适合连续地把微孔材料挤塑到金属丝上，从而导致紧固在金属丝上泡孔基本闭合的非常薄的微孔绝缘涂层。在

一些其它方法中，压降速率是一个重要的特征，并且介绍了控制这个参数和其它参数的技术。

聚合物的挤坯吹塑是一种已知的方法，在该方法中熔融聚合物材料作为型坯（基本呈圆筒形的聚合物套）从挤塑机的模头挤出。这种型坯被放入模具，通常在该型坯足够热仍然柔软可模塑时让它承受圆筒内部足够高的气压，朝模具壁膨胀。许多通用制品（如饮料瓶、润滑油瓶、药物的包装、化妆品的包装以及类似的东西）是用这种技术制造的。

在许多案例中，型坯被挤塑成沿其长度具有厚度差异。比较厚的部分可以对应于该制品需要较大程度地增强的位置，或者需要提供比其它区域大的膨胀程度的部分（例如在塑料洗涤剂瓶的吹塑成形中），同时保持该模塑制品上基本上恒定的厚度。

美国专利第 4,444,702 号（Thomas 等人）介绍了一种生产热塑材料的管状挤出型坯的系统，这种挤出型坯的壁厚是在挤塑期间改变的。

美国专利第 3,939,236 号（Hahn）介绍了一种涉及挤塑管状微孔聚合物型坯、然后吹塑该型坯的技术。

美国专利第 3,225,127 号（Scott）介绍了一种方法，该方法涉及通过环形模孔挤塑包含发泡剂的熔融塑料以形成泡沫型坯，然后把该型坯放在吹塑模腔中并使该型坯在该模具内膨胀。

美国专利第 4,874,649 号（Daubenbuchel 等人）指出了在使已经发泡的塑坯再膨胀的泡沫塑料制品挤坯吹塑法中存在的主要困难。Daubenbuchel 等人指出仍然处于热塑条件的塑坯中已

发泡的材料在塑坯的长度和周边上有一些呈现不同的强度值和发泡率值的区域，结果导致在内部压力的作用下在塑坯内形成若干薄弱点，这些薄弱点引起塑坯壁或由该塑坯生产的模塑制品撕裂而产生废品。Daubenbuchel 等人声称通过共挤多层热塑塑坯（其中至少有一层是不可发泡的）解决了这个问题。据称，利用一层不发泡层为塑坯在材料已经发泡后再膨胀创造了条件，而没有形成薄弱点或穿透制品壁的孔的危险。当这个不可发泡层安排在制品的外面时该制品将具有平滑的外表面。Daubenbuchel 等人还介绍了为了避免在已发泡的材料中因受压缩出现的泡泡或孔在数量级为 1bar 或低于大约 0.5bar 的压力下塑坯的吹塑膨胀，他们以其作为特征的压力显著地低于在常规的挤坯吹塑法中使用的压力。

在某些案例中，常规的发泡工艺在加工期间把成核剂（其中有一些是无机固体颗粒）并入聚合物熔体。这样的成核剂可以有各种各样的组成，例如滑石粉和碳酸钙。具体地说，成核剂通常以低于聚合物熔体重量的 1%的剂量并入聚合物熔体，以便降低用于泡孔成核的能量。成核剂在聚合物混合物内的分散对于形成均匀的微孔结构往往是十分关键的。在某些案例中，不采用较高的剂量，因为颗粒形成絮团可能导致具有异常的大泡孔的不均匀的微孔结构。下面的美国专利介绍成核剂在发泡工艺中的运用。

美国专利第 3,491,032 号（Skochdopole 等人，1970 年 1 月 20 日）介绍一种制作微孔聚合物材料的方法。在 Skochdopole 的方法中，细碎的固体物质（如硅酸钙、硬脂酸锌、硬脂酸镁和类似的东西可能有利于在膨胀前与聚合物或凝胶合并。这种细碎的物质有助于控制微泡的尺寸，其用量按聚合物重量计从大约 0.01%重量百分比到大约 2.0 %重量百分比。

美国专利第 5,116,881 号（Park 等人，1992 年 5 月 26 日）介绍一种聚丙烯泡沫塑料片及其制造方法。在 Park 的方法中，成核剂被用于形成气泡开始出现的部位。优选的是成核剂的粒度范围从 0.3 微米至 5.0 微米以及成核剂的浓度按重量计小于每百份聚合物一份成核剂。按重量计，成核剂的浓度大于每百份聚合物五份成核剂将导致形成絮团，即成核物质的分散是如此不充分以致微泡直径变得更大。

在聚合物泡沫塑料中的填料添加量通常按聚合物重量计算至少是 20%重量百分比，在许多案例中大于 30%重量百分比。上述内容是在国际专利公布 WO98/ 08667 中介绍的，Burnham 介绍了一些填料用量按聚合物重量计算至少为 10%重量百分比的微孔材料实例，另一些实例填料用量按聚合物重量计算至少为 25%重量百分比，另一些实例填料用量按聚合物重量计算至少为 35%重量百分比，还有一些实例填料用量按聚合物重量计算至少为 50%重量百分比。

高密度聚乙烯（HDPE）一直被认为是难以加工成泡沫塑料的材料。这部分地是由于 HDPE 的熔体强度低引起的。为了用高密度聚乙烯生产泡沫塑料已经开发了使用化学发泡剂的方法。此外，HDPE 泡沫塑料通过分批工艺已被生产出来（例如，美国专利第 5,158,986 号）。但是，申请人不知道不用化学发泡剂或不添加 20%以上类似低密度聚乙烯（LDPE）或线形低密度聚乙烯（LLDPE）的添加剂是否能用 HDPE 生产挤塑的或泡沫模塑的泡沫塑料。

此外，挤塑微孔材料通常可能是复杂的，因为均衡的压降速率、温度、发泡剂含量以及模头形状和设计都可能影响挤塑的微孔制品的性能和外观。

尽管用于泡沫聚合物材料的挤坯吹塑法是已知的，但是仍然存在对于用简化的方法生产具有良好物理质量的挤坯吹塑产品的需求。此外，虽然在生产泡沫塑料时已经采用了低重量百分比的成核剂以及在生产常规的泡沫塑料和微孔泡沫塑料时已经采用了高重量百分比的填料，但是发泡工艺尚未使用过中等剂量的成核剂。所以，本发明的目标是提供一些具有良好物理性能的挤坯吹塑的泡沫塑料制品和用于生产这些制品的技术。本发明的另一个目标是提供壁厚比较薄的挤坯吹塑的泡沫塑料制品以及生产这些涉及控制泡沫塑料的均匀性和密度的制品的技术。本发明第三个目标是提供一些在聚合物泡沫塑料中以最有利于结果的剂量存在的成核剂。本发明第四个目标是提供非分批生产高质量 HDPE 泡沫塑料的方法。

**本发明的概述**

本发明提供一系列与聚合物泡沫塑料的吹塑制品、包括成核剂的泡沫塑料以及非分批生产的 HDPE 泡沫塑料相关的制品、系统、设备和方法。这些制品、系统、设备和方法中有许多是可以彼此结合使用的。

一方面，本发明提供一种制品。在一个实施方案中，所提供的制品包括聚合物微孔泡沫塑料的吹塑制品。

在另一个实施方案中，本发明提供适合吹塑的挤塑微孔型坯。

另一方面，本发明提供一些系统。一个系统包括具有挤塑机的挤塑装置，其中所述挤塑机有为接收聚合物微孔材料的母体而设计的入口，而且其结构设计适合提供聚合物材料和发泡剂的单相非成核溶液。一个吹塑成形模头与该挤塑机流体连通，

并且具有为释放微孔材料型坯而设计的出口。该装置包括一个把挤塑机的入口与吹塑成形模头的出口连接起来的封闭通道。该通道包括一个具有为在发泡剂与流体聚合物材料的单相非成核溶液中形成，其速率足以引起微孔成核作用的压降而选定的长度和横截面尺寸的成核通道。一个吹塑模具也包括在内，并且其位置是可调的，以便接收来自模头出口的微孔材料型坯。

在另一个实施方案中，所提供的系统包括结构设计适合提供聚合物泡沫塑料母料的挤塑机和与所述挤塑机相关联的储料缸。该储料缸能够接收来自所述挤塑机的聚合物泡沫塑料母料和聚集聚合物泡沫塑料母料的装模料。在这个系统中还提供了吹塑装置，该吹塑装置是可以借助成型模头定位的，以便接收储料缸的产品。这种吹塑装置的结构设计适合把材料吹塑成聚合物泡沫塑料的吹塑制品。

在另一个实施方案中，所提供的系统包括上述的某些方面的组合。这个系统包括挤塑机，该挤塑机具有接收聚合物微孔材料母体的入口，而且其结构设计适合提供聚合物材料和发泡剂的单相非成核溶液。同时还提供了储料缸，而且它是可定位的，以便接收来自所述挤塑机的聚合物泡沫塑料母料和聚集聚合物泡沫塑料母料的装模料。吹塑成形模头与所述储料缸流体连通，并且有为释放微孔材料型坯而设计的出口。吹塑模具是可定位的，以便接收来自模头出口的微孔材料型坯并且其结构设计适合形成聚合物微孔泡沫塑料的吹塑制品。该装置包括把挤塑机入口与模头出口连接起来的封闭通道，该通道包括前面定义的成核通道。

第三方面，本发明提供一种成形模头设备。这种模头包括在其上游端结构设计适合聚合物材料和在环境条件下呈气态的发泡剂的单相非成核溶液的入口，以及在其下游端用于定义模

头间隙和释放聚合物泡沫材料的出口。流体通道把该入口与该出口连接起来，并且包括成核通道。该模头的结构设计适合在挤塑期间改变模头间隙的宽度同时保持恒定的成核通道间隙。

第四方面，本发明提供一系列方法。在一个实施方案中，所提供的方法涉及挤塑来自挤塑机模头的聚合物泡沫塑料挤出物，同时改变该挤出物的厚度。

在另一个实施方案中，所提供的方法包括提供聚合物微孔泡沫塑料挤出物型坯，并且让该型坯承受吹塑条件。

在另一个实施方案中，所提供的方法涉及按加工方向挤塑来自挤塑机模头的聚合物泡沫塑料挤出物，同时改变离开该模头的挤出物的温度。借此形成的挤出物具有第一部分和按加工方向与所述第一部分隔开的第二部分，第一部分和第二部分在材料密度上至少相差 1.1 倍。

在另一个实施方案中，所提供的方法涉及让聚合物泡沫塑料型坯承受比较严酷的吹塑条件，同时保持相对恒定的型坯密度。型坯可以承受至少 15psi 的吹塑条件，借此至少使一部分型坯在圆周方向至少膨胀 50%。这发生在型坯密度保持相对恒定的时候，具体地说，该密度增加将不超过大约 20%。

本发明的第五方面涉及生产包含中等剂量的成核剂的泡沫塑料和微孔泡沫塑料的方法。这些微孔泡沫塑料可以用常规的聚合物加工技术（如挤塑、注塑和吹塑）来生产。这些泡沫塑料呈现极好的机械性能，并且可以在各种各样的密度上构成许多不同的泡沫塑料制品。

在本发明的这个方面，提供一种微孔制品的成形方法。该方法包括在聚合物加工装置中朝下游方向输送聚合物材料。这种聚合物材料包括半结晶的聚合物和按聚合物的重量计含量介于大约 2.5%重量百分比和大约 7%重量百分比之间的成核剂。该方法进一步包括用该聚合物材料制成微孔制品。

在这个方面的某些实施方案中，该方法进一步包括一个在该聚合物加工装置中把按聚合物按重量计少于 1.5%重量百分比的发泡剂引入聚合物材料，以形成发泡剂与聚合物材料的溶液的步骤。在某些实施方案中，该方法进一步包括一个在发泡剂和聚合物材料的溶液中引发低于 1.0 GPa/秒的压降速率的步骤。

第六方面，本发明提供一种微孔聚合物制品，该制品包括聚合物材料基体，在该基体中包含大量的平均尺寸小于大约 60 微米的微泡。这种聚合物材料包括半结晶的聚合物和按聚合物材料重量计含量介于大约 2.5%重量百分比和大约 7%重量百分比之间的成核剂。

在一些其它优点当中，本发明的某些实施方案提供一种有前途的生产微孔泡沫塑料制品的方法，由于存在成核剂该方法采用低发泡剂百分含量和/或低压降速率。采用低发泡剂百分含量导致节约与发泡剂相关的成本，并且可以改善最终的微孔制品的表面质量。与高压降速率相反，使用低压降速率可以为模头设计提供更大的自由度，并且在某些案例中允许生产横截面尺寸比较厚的泡沫塑料制品。

本发明的各种不同的实施方案还提供一些用各种不同的半结晶聚合物材料生产各种不同类型的泡沫塑料制品（如挤塑制品、吹塑制品和注塑制品）的方法。

此外，本发明提供一种包含成核剂的含量足够高（按聚合物材料的重量计介于 2.5%重量百分比和 7%重量百分比之间）的微孔泡沫塑料，以便以不可忽视的量取代固体塑料有效地起填料的作用。用这些成核剂取代固体塑料可以导致节约材料成本和改善机械性能。

此外，在许多案例中，这种微孔泡沫塑料不管是否存在无机颗粒都具有均匀而细小的微泡结构。在许多实施方案中，微泡之间的互连性是最小的。再者，这些泡沫塑料可以在各种各样的密度上生产。具体地说，可以生产性能与未发泡的密实塑料相当的密度比较高的泡沫塑料。

第七方面，本发明提供一种包括包含大量微泡的聚合物材料基体的泡沫塑料制品。该聚合物材料基本上是由高密度聚乙烯组成的，并且基本上没有残留的化学发泡剂和化学发泡剂的反应副产物。这种制品具有基本上与连续挤出物的形状或模具内腔形状一致的形状。

第八方面，本发明提供泡沫塑料制品的成形方法。这种方法包括在聚合物加工装置中朝下游方向输送聚合物材料的步骤。该聚合物材料基本上是由高密度聚乙烯组成的。这种方法进一步包括在聚合物加工装置中把物理发泡剂引入聚合物材料的步骤和用所述聚合物材料形成泡沫塑料制品的步骤。

本发明还提供用物理发泡剂生产 HDPE 泡沫塑料的方法。在许多发泡方法中，用物理发泡剂代替化学发泡剂是有利的。例如，物理发泡剂往往比化学发泡剂便宜。此外，物理发泡剂不会把可能妨碍制品有效再生的活性物质引入制品。最后，使用物理发泡剂的方法可以更有效、更可靠而且不必依靠化学反应地确定发泡工艺期间释放的发泡剂的量。

此外，本发明提供包含少量的或基本上没有残留的化学发泡剂和化学发泡剂的反应副产物的 HDPE 泡沫塑料。在某些案例中，材料中存在残留的化学发泡剂和化学发泡剂的反应副产物是有害的并且可能限制它的用途。按照本发明，HDPE 泡沫塑料有利地适合各种应用（例如包装食品）并且更容易在不产生任何不利影响的案例中得到再生。

第九方面，本发明提供对制作高质量的微孔聚合物挤出物有用的特殊的模头设计。该模头可以作为挤塑系统的一部分提供。该模头包括以大于 4°的夹角朝下游方向使横截面递减的成核通道。

在另一个实施方案中，按照本发明这个方面的成型模头包括这样构成的成核通道，以致当聚合物材料和发泡剂的单相非成核溶液被引入该模头并以大约每小时 100 磅的流速通过该模头时，该溶液的成核作用发生，形成成核的聚合物物料流，该物料流在成核后用不超过大约 0.002 秒的时间周期从该模头中释放出来。

在本发明这个方面的另一个实施方案中，所提供的方法涉及把聚合物材料和发泡剂的单相非成核溶液引入聚合物成形模头。在这个模头内，溶液被成核形成成核的聚合物物料流。该物料流作为聚合物微孔挤出物在成核后用不超过 0.002 秒的时间周期从该模头出口被释放出来。

本发明的其它优点、新颖特征和目标通过结合附图考虑下面的详细说明将变得清晰起来，这些附图是示意图并且不倾向于按比例绘制。在这些附图中，用不同的附图图解说明的每个完全一致或几乎完全一致的零部件都用同一个数字表示。为了简明扼要，在不需要图解说明熟悉这项技术的人就能理解本发

明的场合，既不在每张附图中标注每个零部件，也不展示本发明的每个实施方案的每个零部件。

**附图简要说明**

图 1 是本发明的注坯吹塑系统的示意图；

图 2 是用于图 1 所示注坯吹塑系统的模头示意图；

图 3 是为了挤塑比较厚的微孔材料经过调整的图 2 所示模头的示意图；

图 4 是图 2 所示模头的另一个实施方案的示意图；

图 5 图解说明多孔的发泡剂进料口布局和挤塑螺杆；

图 6 图解说明用于生产微孔泡沫塑料的挤塑系统的替代实施方案。

图 7 是在实施例 4 中生产的材料的横截面的 SEM 显微照片的复制品。

图 8 是在实施例 5 中生产的材料的横截面的 SEM 显微照片的复制品。

图 9 是在实施例 6 中生产的材料的横截面的 SEM 显微照片的复制品。

图 10 是在实施例 7 中生产的材料的横截面的 SEM 显微照片的复制品。

图 11 是在实施例 8 中生产的材料的横截面的 SEM 显微照片的复制品。

图 12 是在实施例 9 中生产的材料的横截面的 SEM 显微照片的复制品。

图 13 是在实施例 10 中生产的材料的横截面的 SEM 显微照片的复制品。

**本发明的详细叙述**

共同拥有的未审国际专利申请 WO98/08667 号（1998 年 3 月 5 日公布）、共同拥有的未审国际专利申请 WO98/31521 号（1998 年 7 月 23 日公布）、共同拥有的未审美国临时专利申请 60/068,173 号（标题为 "Microcellular Extrusion/Blow Molding Process and Article Made Thereby（微孔挤塑/吹塑成形方法以及借此制作的制品）" 1997 年 12 月 19 日申请）、共同拥有的未审美国临时专利申请 60/107,754 号（标题为 "Microcellular Extrusion/Blow Molding Process and Article Made Thereby（微孔挤塑/吹塑成形方法以及借此制作的制品）" 1998 年 11 月 10 日申请）在此全部通过引证并入。

依据下面的定义将更好地理解本发明的各种实施方案和各个方面。文中所用的术语"成核（作用）"定义一种方法，借助这种方法由在环境条件下呈气态的物种溶解在其中的聚合物材料的均匀的单相溶液将形成定义"成核部位"（微泡将从该部位开始生长）的该物种分子群簇。换言之，"成核（作用）"意味着从均匀的单相溶液变成一种混合物，在这种混合物中形成聚集至少几个发泡剂分子的部位。成核作用定义了溶解在聚合物熔体中的气体从溶液中跑出来，在聚合物熔体内形成气泡悬浮

液时出现的一种瞬时状态。通常，这种瞬时状态是由于聚合物熔体的溶解度从足以在溶液中包含某个数量的气体的溶解度状态变成不足以在溶液中包含同样数量的气体的溶解度状态而被迫发生的。成核作用可以受均匀的单相溶液所承受的快速的热力学不稳定性（例如快速的温度变化、快速的压降或两者）的影响。快速的压降可以利用下面定义的成核通道来实现。快速的温度变化可以利用挤塑机的受热部分、灼热的甘油浴或类似的东西来实现。

“成核剂”是一种分散在聚合物中并且能够促进在均匀的单相溶液中形成成核部位的制剂，例如滑石粉或其它填料颗粒。因此，“成核部位”并非定义成核剂在聚合物内的驻留位置。“填料”是为了代替密实塑料而添加的一种被分散的颗粒。

“成核的”指的是包含均匀的单相溶液（其中包括被溶解的在环境条件下呈气态的物种）的流体聚合物材料在某种导致形成成核部位的事件（通常是热力学不稳定性）之后的一种状态。“非成核的”指的是由聚合物材料和被溶解的在环境条件下呈气态的物种的没有成核部位的均匀的单相溶液定义的一种状态。“非成核的”材料可以包括成核剂（如滑石粉）。

“聚合物材料/发泡剂的混合物”可以是至少由这两者组成的非成核的单相溶液、至少由这两者组成的成核的溶液或者是一种发泡剂形成的微泡已开始生长的混合物。

“基本上封闭的微泡”微孔材料意味着定义一种材料，该材料在大约 200 微米厚度范围内不包含通过该材料连在一起的微泡通道。

"成核通道"指的是定义一段通道，该通道构成聚合物微孔泡沫塑料挤塑装置的一部分，并且在该通道中该系统中与发泡剂混合的聚合物材料的单相溶液的压力在该装置的设计运行条件下（通常在成核剂（段）上游压力从大约 1500psi 到大约 30,000psi，流速大于大约每小时 10 磅聚合物材料），以一种或多种有利于快速成核的速率下降到适合特定的发泡剂浓度的饱和压力以下。成核通道（非必选地与其它成核通道一起）定义了本发明的设备的成核作用部位即成核区域。

文中所用的术语"增强剂"指的是基本上呈固态的辅助材料，其结构设计适合增加材料的尺寸、稳定性、或强度、或韧性。这种制剂是以纤维材料为特征的，就象在美国专利第 4,643,940 号和第 4,426,470 号中所介绍的那样。"增强剂"按其定义并非必须包括结构设计不增加尺寸稳定性的填料、或其它添加剂。熟悉这项技术本领域的普通技术人员可以通过试验确定某种添加剂是否是某种特定材料的增强剂。

在优选实施方案中，本发明所提供的微孔材料具有小于 60 微米或 50 微米的平均微泡尺寸。在一些实施方案中，特别小的微泡尺寸是需要的，在这些实施方案中，本发明的材料具有小于大约 30 微米、优选小于大约 20 微米、更优选小于大约 10 微米、最优选小于大约 5 微米的平均微泡尺寸。这种微泡材料优选具有大约 100 微米的最大微泡尺寸或优选小于大约 75 微米。在一些需要微泡尺寸特别小的实施方案中，材料中的最大微泡尺寸可以是大约 50 微米、优选大约 35 微米、更优选大约 25 微米。一组实施方案包括这些显著的平均微泡尺寸和最大微泡尺寸的所有组合。例如，在这组实施方案中的一种组合包括一种平均微泡尺寸小于大约 30 微米而最大微泡尺寸大约 50 微米的微孔材料，而作为另一个实施例其平均微泡尺寸小于大约 30 微

米、最大微泡尺寸大约 35 微米，等等。换言之，为各种不同目的设计的微孔材料，都可以生产而且可以具有为那个目的优选的平均微泡尺寸和最大微泡尺寸的特定组合。下面将更详细地介绍如何控制微泡尺寸。

一方面，本发明提供一些系统和技术，这些系统和技术可用于挤坯吹塑微孔的和其它的聚合物泡沫材料和适合吹塑的微孔型坯，换言之，可用于能承受文中介绍的吹塑条件生产文中介绍的制品的型坯。具体地说，本发明提供的技术适合生产重量轻、强度好的微孔制品，该微孔制品能通过吹塑成形形成壁特别薄的微孔聚合物吹塑制品。一个特点是本发明能够生产的制品没有为支撑该泡沫塑料制品而定位的非泡沫塑料的结构支撑。这意味着在生产诸如塑料瓶之类的东西时瓶壁可以完全与微孔泡沫塑料组成，而没有固体支撑塑料的辅助层。

本发明涉及一项发现，即微孔材料解决了一些与某些现有技术相关的的问题，具体地说是解决了那些在吹塑中与常规热塑性聚合物泡沫塑料固有的比较弱相关的问题。本发明的微孔材料令人惊喜地可以在比较高的压力下进行吹塑，具体地说，微孔型坯内部压力至少为大约 1.5 bar，在一些案例中至少大约 2.5 bar，在一些案例中至少大约 5 bar，在一些案例中至少大约 7 bar，在一些案例中至少大约 10 bar。这种强度即使在该微孔型坯甚至没有增强剂的案例中，至少包括一些部分具有至少大约 5%、优选至少大约 10%、优选至少大约 20%、更优选至少大约 30%、在某些案例中高达至少大约 50%或至少大约 70%的空隙率的时候，以及在形成薄壁（下面具体介绍其厚度）的微孔泡沫塑料终产品的时候也能实现。按这种考虑，所生产的微孔吹塑制品具有少于大约 10%重量百分比的增强剂，优选具有少于大约 5%重量百分比的增强剂，更优选具有少于大约 2%重量百分比的增

强剂，并且在特别优选的实施方案中本发明的制品基本上没有增强剂。

本发明的微孔泡沫塑料型坯能够在比较严酷的条件下进行吹塑，而且在材料的密度方面没有重大的变化也是一项令人惊喜的发现。具体地说，本发明的泡沫塑料型坯可以承受至少大约 15psi 或 18 psi 或 20psi 或文中介绍的其它压力的吹塑条件，借此至少使一部分型坯膨胀至少大约 50%并形成吹塑制品，同时保持材料密度相对恒定不变，具体地说在从型坯变成吹塑制品时，型坯密度增加不超过大约 20%。在优选实施方案中，至少有一部分型坯在圆周方向膨胀至少大约 75%、100%、150%、200%、300%或至少大约 400%，同时保持型坯密度的增加不超过大约 15%、10%、8%、5%、或优选的 3%。

在不指望与任何理论结合的案例中，我们相信本发明的微孔材料特别适用于比较苛刻的吹塑条件，因为本发明的尺寸非常小，微泡不容易被压碎或以其它方式破坏。我们还相信随着微泡尺寸减小，使各个微泡瘪缩所需要的力将显著增大。

本发明的模头可以为了生产具有厚度不同的横截面和空隙率不同的横截面的吹塑制品而加工成形和受控。例如，吹塑的方形瓶子可以成形，它具有比瓶壁的其余部分厚的拐角截面。举例说，比较厚的区域具有 50%的空隙率，而比较薄的区域具有大约 10%的空隙率。这些比较厚的区域是增强区域。增强区域也可以在定义瓶壁与瓶底之间或瓶壁与瓶顶之间的边界的拐角处或在垂直的拐角处或在所有这些拐角处提供。

本发明的一个特点是可以在不用遮光剂的案例中，生产不透明的高强度薄壁制品。这是因为聚合物泡沫塑料折射光线，因此它基本上是不透明的，并且具有白色的外观。本发明的一

个特点是微孔泡沫塑料比常规的泡沫塑料相比更均匀、更不透明。这在与某些为了包装暴露于光线下时易于破坏的物质（如食品包装）而设计的制品结合时是一个显著的优点。这样的物质可能涉及供动物（如人）食用的食品，其中包含暴露于光线下可能遭破坏的维生素。在优选实施方案中，本发明提供数种微孔材料吹塑的牛奶容器，因为众所周知牛奶中的维生素在暴露于荧光光线下时可能丧失。有人向牛奶瓶的容器生产者建议把色素引入牛奶瓶（通常是高密度聚乙烯牛奶瓶）以便防止牛奶接触破坏维生素的光线。但是，含色素的聚合物材料不大适合再生。在一个实施方案中，本发明提供数种薄壁、不透明的吹塑容器，它们包含少于大约 1%重量百分比的辅助遮光剂，优选少于大约 0.05%重量百分比的辅助遮光剂，并且更优选基本上没有辅助遮光剂的材料。在本发明中“辅助遮光剂”指的是定义数种色素、模头、或特地为吸收光线而设计的其它物种、或滑石粉或其它能阻挡或折射光线的物质。熟悉这项技术的本领域的普通技术人员可以通过试验确定某种添加剂是否是遮光剂。本发明的微孔材料吹塑制品具有基本上密实的白色塑料制品的外观，它提供显著的商业吸引力。

在优选实施方案中，本发明的材料是用物理发泡剂（如大气气体，特别是二氧化碳）发泡的，因此在这个实施方案中不需要附加费用和复杂的配制包括化学发泡剂（即在挤塑条件下将发生反应形成发泡剂的物种）的聚合物母料。由于用化学发泡剂发泡的泡沫塑料在生产出最终的泡沫塑料产品后，固有地包含残留的未反应的化学发泡剂，以及形成发泡剂的反应副产物，所以在这组实施方案中本发明的材料包含残留的化学发泡剂或化学发泡剂的反应副产物，其含量小于在用 0.1%重量百分比或更多化学发泡剂发泡的制品中必然发现的量，优选小于在用 0.05%重量百分比或更多化学发泡剂发泡的制品中必然发现

的量。在更优选的实施方案中，该材料的特点是基本上没有残留的化学发泡剂或没有化学发泡剂的反应副产物。换言之，这些材料包含比较少的在用任何化学发泡剂发泡的制品中固有发现的残留的化学发泡剂或其副产物。

不使用或使用非常小剂量的化学发泡剂的实施方案的一个优点是，产品的再生能力被最大化。使用化学发泡剂通常降低聚合物再生的吸引力，因为残留的化学发泡剂和发泡剂的副产物将对再生材料库中的非均质性作贡献。

如上所述，在一些实施方案中本发明是为吹塑空隙率比较高的薄壁制品准备的。具体地说，本发明的制品具有小于大约 0.100 英寸、更优选小于大约 0.075 英寸、更优选小于大约 0.050 英寸、更优选小于大约 0.040 英寸、并且在某些案例中低到 0.025 英寸、0.015 英寸或 0.010 英寸或更小的壁厚。

在一组实施方案中，本发明表示除了在厚度或密度方面必须有所改变的微孔材料吹塑型坯之外，还解决了与挤塑形成具有各种各样的微泡尺寸的聚合物泡沫塑料型坯相关的问题。在本发明这组实施方案中，提供了用于生产聚合物泡沫塑料型坯的技术，该型坯可以是微孔的，并且其厚度和/或密度可以沿其长度变化。具体地说，优选的聚合物泡沫塑料挤塑型坯具有第一部分和在型坯的加工方向上与所述第一部分隔开的第二部分，所述的第一部分和第二部分在厚度上至少相差大约 1.1 倍。在其它优选实施方案中，第一和第二部分在厚度上至少相差大约 1.3、1.5 或 1.7 倍。第一和第二部分在材料密度上至少相差大约 1.1 倍，并且在其它优选实施方案中至少相差大约 1.3、1.5 或 1.7 倍。这种型坯适合吹塑成形，以便生产包括膨胀到第一程度的第一部分和至少膨胀 1.5 倍于第一程度的第二部分的制品。第一和第二部分在膨胀后，在厚度、材料密度和微泡密度每个方

面相差都不超过大约 5%。在这项技术中所提供的聚合物挤塑模头的结构设计适合使熔融的聚合物材料和在大气环境下呈气态的物理发泡剂的正在流动的单相溶液承受一致的压降速率同时改变在模头出口的环形间隙，以利于生产厚度沿其长度变化的聚合物微孔泡沫塑料型坯。这种模头由于实际上把成核与成形分开，所以在这种作业中是有效的。换言之，成核以一致的方式（基本上恒定的压降速率）在成形（段）上游发生，因此差分成形（differential shaping）本质上不影响微泡尺寸、微泡密度或材料密度。此外，该型坯可以在挤塑期间承受温度变化，从而导致在加工方向上随位置变化的局部材料密度。

现在参照图 1，本发明的挤坯吹塑系统 6 被示意地图解说明。系统 6 包括与吹塑挤坯模头 10 流体连通的挤塑机 30 和可为接收来自所述模头出口的微孔材料型坯而定位的吹塑模具 12。吹塑模具 12 可以是常规模具，因此，除了说一下本发明的泡沫塑料型坯可以在不加热的案例中吹塑，因而模具 12 不需要包括辅助加热系统之外，在本文中不详细地介绍该模具。换言之，本发明的泡沫塑料型坯（优选微孔泡沫塑料型坯）可以先被挤塑成形，然后可以在不对模具 12 中的型坯加热的案例中用模具 12 吹塑成形。挤塑机 30 包括机筒 39，该机筒有第一上游端 37 和连接模头 10 的第二下游端 36。安装在机筒 39 内可旋转的是螺杆 38，该螺杆在其上游端可操作地连接在驱动马达 40 上。虽然没有详细地展示，但是螺杆 38 包括进料段、过渡段、注气段、混合段和计量段。聚合物加工空间 35 被定义在螺杆和机筒之间，在该空间中聚合物材料朝下游推进。

非必选地沿着机筒 39 定位的是温度控制单元 42。控制单元 42 可以是电加热器，可以包括供温控流体流动的通道和/或类似的东西。单元 42 可以用于给机筒内的粒状聚合物材料或流体聚

合物材料加热以促进熔融，和/或冷却该物料流以控制粘度和在某些案例中控制发泡剂的溶解度。这个温控单元可以沿着机筒在不同位置以不同的方式运行，即可以在一个或多个位置加热和在一个或多个位置制冷。可以提供任何数量的温控单元。还可以提供为连接在该挤塑系统上的模头加热的温控单元。

机筒 39 的结构设计适合接收聚合物材料的母料。文中所用的术语"聚合物材料的母料"意味着包括所有本身是流体或可以形成流体、并且本质上可以变硬形成微孔聚合物制品的材料。通常该母料是由热塑性聚合物粒料定义的，但是可以包括其它物种。例如，在一个实施方案中母料是由将在各种各样的条件下发生化学反应形成所述的微孔聚合物材料的物种定义的。本发明有意包含由任何能一起反应形成聚合物的物种的组合生产微孔材料，通常这些物种是混合在一起的，并且在发生反应时发泡的单体或低分子量的聚合物母料。优选的是热塑性聚合物或热塑性聚合物的组合选自无定形材料、半结晶材料和结晶材料，包括聚芳烃（例如包括聚苯乙烯在内的苯乙烯聚合物）、聚烯烃（例如聚乙烯和聚丙烯）、含氟聚合物、可交联的聚烯烃和聚胺。

虽然母料可以是通过进料口注入的流体预聚物材料，并且借助（例如）辅助聚合剂在机筒内聚合，但是引入预聚物母料通常是利用装着准备通过进料口 46 添加到挤塑机机筒中的经过造粒的聚合物材料的标准加料漏斗 44。就本发明而言，唯一重要的是聚合物材料的流体物料流是在系统中形成的。从加料漏斗 44 接收的粒料进入螺杆的进料段，并且随着螺杆旋转在聚合物加工空间 35 中朝下游方向输送。来自挤塑机筒 39 的热量和由于螺杆旋转产生剪切力在过渡段内起使粒料软化的作用。通常，在靠近第一混合段的末端的地方，软化的粒料已被变成胶体，即被胶着在一起形成本质上没有夹气的均匀的流体物料流。

紧接在图 1 所示螺杆 38 的下游端 48 的下游的是区域 50，该区域是一个温度调节和控制区、辅助混合区、辅助泵送区、或类似的东西。例如，区域 50 可以包括温控单元，以便象下面介绍的那样，在成核前调节流体聚合物物料流的温度。区域 50 可以包括替代的或外加的额外的标准混合单元（未示出），或诸如齿轮泵之类的流动控制单元（未示出）。在另一个实施方案中，区域 50 可以被可以包括冷却区的一前一后的第二螺杆代替。

按照本发明，微孔材料的生产优选采用物理发泡剂，即在环境条件下呈气态的发泡剂。但是，化学发泡剂也可以使用并且可以与被引入加料漏斗 44 的聚合物粒料一起配制。适当的化学发泡剂通常包括那些在临界温度或另一种在挤塑时能实现的条件下分解并释放诸如氮气、二氧化碳或一氧化碳之类的一种或多种气体的、分子量比较低的化合物。实例包括偶氮化合物，例如偶氮二酰胺。

在一个使用物理发泡剂的实施方案中，沿着挤塑机 30 的机筒有一个与物理发泡剂源 56 流体连通的口 54。就本发明而言，熟悉这项技术的人已知的任何物理发泡剂（例如烃类、含氯氟烃、氮气、二氧化碳和类似的东西以及它们的混合物）都可以使用，并且按照优选实施方案，气源 56 提供二氧化碳或氮气或它们的混合物作为发泡剂。超临界的流体发泡剂是优选的，特别是超临界的二氧化碳和/或氮气。在特别优选的实施方案中，只单独使用二氧化碳或氮气。在使用超临界的流体发泡剂的案例中，形成了聚合物材料和发泡剂的单相溶液，其粘度已降低到即使用熔体流动指数不超过 0.2g/10min 的材料也能轻易地完成挤塑和吹塑的程度。加压和计量设备 58 通常是在发泡剂源 56 和口 54 之间。设备 58 可以用于计量发泡剂，以便控制在挤塑机内聚合物物料流中发泡剂的量，使发泡剂的含量维持在特定

的水平。在优选实施方案中，设备 58 计量发泡剂的质量流速。发泡剂通常少于聚合物物料流和发泡剂之和的大约 15%重量百分比。按照一组实施方案，发泡剂的添加量以聚合物和发泡剂的总重量为基础介于大约 1%重量百分比和 15%重量百分比之间、优选介于大约 3%重量百分比和 12%重量百分比之间，更优选介于大约 5%重量百分比和 10%重量百分比之间，最优选介于大约 7%重量百分比和 9%重量百分比之间。在另一些实施方案中，非常低的发泡剂水平是适当的，例如发泡剂水平低于大约 3%重量百分比、低于大约 2%重量百分比或低于大约 1.5%重量百分比。这些发泡剂水平在某些使用成核剂的实施例中可以找到用途。

本发明的系统和方法允许在不使用成核剂的案例中形成微孔材料。但是这样的制剂可以使用，并且在一些实施方案中包括诸如滑石粉之类的成核剂的聚合物材料被吹塑成形。业已发现，按照本发明包括诸如滑石粉之类的填料的聚合物材料增大了在较高的压力下制作比较厚的部分的能力，并且改善了微泡结构。虽然不指望结合任何理论，但是我们相信使用诸如滑石粉之类的成核剂将降低所需的发泡剂（如二氧化碳或氮气）的用量，因此该材料将具有比较高的粘度（因为二氧化碳或氮气降低这种材料的粘度）。所以，可以增大成核通道和出口间隙的尺寸，同时以其它方式维持类似的挤塑条件，从而导致（形成）比较厚的部分。此外，诸如滑石粉之类的成核剂将增大熔融的聚合物材料固有的粘度，从而为形成比较厚的部分创造了条件。在本发明的这个实施方案中，成核剂（如滑石粉）的添加量至少是 1%、或 2%、或 4%、或 5.5%、甚至 7%或更多。在一个实施方案中，滑石粉的添加量在 2.5%至 7%的范围内，它给出下面将全面介绍的特殊优点。

在一些实施方案中，二氧化碳与其它发泡剂（如氮气）结合使用，而在另一些实施方案中，单独使用二氧化碳，不存在其它发泡剂。在另一些实施方案中，只要其它的发泡剂本质上不改变发泡过程，二氧化碳就与其它发泡剂一起使用。类似地，在使用氮气时它可以单独使用，或者与另一种提高或改变该发泡剂性能的发泡剂结合使用，或者与另一种本质上不改变发泡过程的发泡剂结合使用。

为了非常精确地控制发泡剂在流体聚合物的混合物中的重量百分数，加压和计量设备可以与控制器（未示出）相连，而该控制器还可以与驱动马达 40 和/或齿轮泵的驱动机构（未示出）相连，以便控制与聚合物材料的流动有关的发泡剂的计量。

上述安排使按照本发明的几个实施方案实践与吹塑结合的方法变得比较容易。该方法涉及用少于大约 1 分钟的时间周期，把在环境条件下呈气态的发泡剂引入正在以至少大约 10 lbs/hr. 的流速流动的流体聚合物材料，从而形成发泡剂流体的聚合物单相溶液。在这种安排中，发泡剂流体在该溶液中的量至少是该溶液重量的大约 2.0%重量百分比。在优选实施方案中，流体聚合物的流速是至少大约 40 或 60 lbs/hr，更优选至少大约 80 lbs/hr，在特别优选的实施方案中将大于至少大约 100 lbs/hr，而且在 1 分钟之内把发泡剂流体添加进去并形成单相溶液，其中发泡剂是以至少大约 3 %重量百分比、更优选至少大约 5 %重量百分比、更优选至少大约 7 %重量百分比、更优选至少大约 10 %重量百分比的量存在于溶液中的（虽然如所述在另一组一些实施方案中使用的发泡剂水平比较低）。在这些安排中，每小时至少有大约 2.4 lbs 的发泡剂（优选 $CO_2$）被引入流体物料流并且被混入其中形成单相溶液。引入发泡剂的速率是与聚合物的流速相匹配的，以便获得最佳的发泡剂浓度。

虽然口 54 可以沿着机筒定位在任何位置，但是按照优选实施方案它定位在刚好在螺杆混合段 60 的上游并且螺杆螺纹未断的位置 62。

现在参照图 2，本发明的模头 10 示意地用横截面予以图解说明，该模头包括环绕着内模头体 24 的环形外模头体 26 以及依次被内模头体环绕着的内型芯 31。该模头包括由挤塑机 30 的注射出口和模头侧壁流入口定义的流体入口 14，其结构设计适合接收聚合物流体和在环境条件下呈气态的发泡剂组成的均匀的单相溶液。流体入口 14 与在外模头体和内模头体之间的环形的环状空隙 18 连通，该空隙与作为内模头体 24 与外模头体 26 之间的间隙定义的环形通道 20 流体连通。通道 20 与模头的环形段 28 流体连通，该环形段的宽度比通道 20 大。环形段 28 依次与定义具有间隙 22 的成核通道的变窄的环形部分 29 连通，该间隙的尺寸形成有利于喂入该模头的单相溶液成核的快速压降。在其下游端成核通道 29 与具有间隙 34 的模头出口 32 流体连通。如图所示，成核通道 29 沿其长度具有基本不变的横截面尺寸。该通道也可以沿其长度改变其横截面尺寸，例如朝下游方向逐渐减小横截面尺寸，以便提供特别高的压降速率，就象在通过引证并入的美国专利申请第 08/777,709 号和国际专利申请第 PCT/US97/15088 号中揭示的那样。在通道横截面尺寸朝下游方向递减的案例中，单相溶液可以连续地成核，因为该单相物料流是以递增的速率流动的，所以其源源不断的连续部分将经历连续递减的压力。

模头 10 是这样构成的，以致内模头体 24 可以相对外模头体 26 轴向移动。如图 2 所示，内模头体 24 可以从上游位置移到下游位置，在该位置它几乎填满标注成 25 的区域。因此，当内模头体 24 定位在上游位置（如图 2 所示）时，区域 25 定义了储料缸。

00-07-14

在操作时，聚合物材料和发泡剂的单相溶液 23 从挤塑机 30 喂入模头 10，作为未成核的单相溶液首先进入环形环 18，然后通过通道 20 进入储料缸 25（达到内模头体 24 在上游定位的程度）和模头的环形段 28，通过在成核通道 29 发生的快速压降成核，然后在出口 32 处作为适合吹塑的型坯被挤出。在需要使用模头 10 的聚集特征时，出口 32 可以被关闭（下面介绍），于是聚合物材料和发泡剂的未成核的单相溶液 23 可以从挤塑机 30 喂入储料缸 25，而内模头体 24 朝上游方向移动。在这个过程中，在下游方向上对内模头体 24 施加载荷，以便在储料缸 25 中维持基本不变的压力，该压力将使聚合物/发泡剂溶液维持在未成核的单相条件下。然后，打开出口 32 并且朝下游方向驱动内模头体 24，以便成核和挤出微孔型坯。这个特征为挤塑机连续运行而型坯挤出定期发生创造了条件。

尽管在某些实施方案中在成核通道 29 中成核的聚合物材料可以包括成核剂，但是在另一些实施方案中不使用成核剂。无论在哪种案例中，该通道都被构成，以便不管是否有成核剂存在，都能够在缺乏成核剂的案例中形成成核部位。具体地说，该成核通道具有通过该通道形成所需的压降速率的尺寸。在一组实施方案中，压降速率是比较高的，并且范围相当宽的压降速率是可实现的。在与大约 6 %重量百分比的 $CO_2$ 均匀混合后，聚合物材料熔体可以以每小时大约 40 磅的速率通过该成核通道，通过该通道可以形成的压降速率至少是大约 0.1GPa/sec.。优选的是在这些条件下通过调整该通道尺寸使通过该通道所形成的压降速率为至少大约 0.3GPa/sec.，更优选至少大约 1GPa/sec.，更优选至少大约 3GPa/sec.，更优选至少大约 5GPa/sec.，更优选至少大约 7、10 或 15GPa/sec.。该成核段的结构设计适合使流动的物料流承受足以形成密度达到至少大约 $10^7$、优选 $10^8$ sights/$cm^3$ 的成核部位的压降速率。这种装置的结

构设计适合使以至少 20 lbs/hr、优选至少大约 40 lbs/hr、更优选至少大约 60 lbs/hr、更优选至少大约 80 lbs/hr、更优选至少大约 100、200 甚至 400 lbs/hr 的速度流动的聚合物材料和发泡剂的单相溶液的流体物料流连续成核。

模头 10 具有这样的结构：以致型芯 31 可以相对该模头的其余部分轴向移动。这为关闭出口 32 创造了条件，如果需要可以朝上游方向移动型芯 31，使模口的内唇缘抵住模头的外唇缘形成密封。

现在参照图 3，图解说明模头 10，其中型芯 31 朝远端延伸，以致出口 32 包括一个间隙 33，该间隙相对图 2 所示间隙 34 变得相当宽。在维持模头成核段 29 的间隙 22 不变时，这种设计可能是有效的。这样，当该模头生产厚度发生变化的型坯时，聚合物/发泡剂单相流体物料流的成核作用可以在恒定的压降速率下发生。上面介绍的是利用模头 10 生产的厚度在加工方向上发生变化的同时，具有基本上均匀一致的微孔结构的微孔产品。

本发明还允许共挤泡沫塑料制品或微孔泡沫塑料制品。虽然没有图解说明适合挤塑这种两层或多层制品的模头，但是参照图 2 可以清楚地理解这种模头。在一个实施方案中，多层挤塑模头包括多个共轴的独立定义成核段的通道，它们一起把物料送入单一的出口 32。换言之，该模头包括图 2 所示的成核段 29 和从成核段 29 朝外径向隔开的、并且由类似于环形段 28 的环形段喂料的附加成核段。在分开的各层同时独立地成核之后，在间隙 32 之前或在该间隙处把成核的各层接合起来发生诸层的合并和诸层的成形和注射。

按照本发明的另一方面，可以挤塑材料密度沿其长度有所不同的微孔聚合物型坯。在这个实施方案中，型坯的厚度也可

以沿其长度有所不同。这可以利用图 4 所示系统予以实现，在该系统中提供的模头 10 类似于前几张图中的模头。为了生产厚度发生变化的型坯，模头 10 并非必须包括能在挤塑期间轴向移动的型芯但包括风环 52，以便使该型坯在挤塑期间承受变化的冷却条件。这个风环可以使型坯的不同部分承受不同的冷却条件，因此可以使型坯的某些部分的微泡生长相对其它部分有所下降。以类似的方式，型坯的内表面的选定部分可以通过使空气通过在型芯 31 的内型芯部分 61 和外型芯部分 64 之间形成的通道 63 得到冷却。内部的空气冷却可以与借助风环 52 实现的外部空气冷却交替使用或结合使用。这样得到的型坯可以被吹塑成形并且可以使某些部分的材料密度比其它部分高。由于挤塑后立即承受不同的冷却的各个部分经历了不同的微泡成长过程，所以有不同的密度。

图 4 所示系统还可以用于生产在需要高强度的位置具有增加的密度的吹塑制品。例如，在装饮料的塑料容器上有往上拧螺纹盖的螺纹嘴，人们或许希望该螺纹嘴具有比该塑料瓶其余部分高的材料密度以便增加强度。

本发明的特征之一是：本发明的微孔挤塑型坯与现有技术的泡沫塑料型坯相比更能经得起吹塑条件。这是因为比较小的微泡对吹塑期间施加的压力有更大的承受力。许多现有技术的泡沫塑料暴露在吹塑条件下时将呈现瘪泡。但是随着微泡尺寸减小，引起瘪泡需要更大的压力。

在本发明的一个实施方案中，微孔型坯是与聚合物辅助层共挤成形的，该辅助层可以是该微孔型坯的内部或外部或两者。辅助材料既可以是泡沫塑料也可以不是泡沫塑料，而且为了形成特定的外观（例如在需要有颜色的制品时微孔泡沫塑料芯可以用共挤的着色层覆盖）可以添加辅助材料层。再者，为了在

制品上提供良好的印刷能力或提供特定的表面纹理，可以添加共挤层。其它特征（例如化学相容性和类似的特征）也得到认真考虑。在某些案例中，共挤层可以用在微孔型坯芯的内侧或外侧，以便把芯与制品里面装的东西或外部环境隔离。在优选实施方案中，共挤的辅助层大于结构支撑不是必不可少的。换言之，微孔型坯可以被吹塑成形并且将为它自己提供适当的结构支撑，而共挤层仅仅用于表面修饰目的。在一个实施方案中，非泡沫塑料的非结构支撑辅助层紧邻泡沫塑料制品。这个膜层是为提供特殊的壁垒性能（例如为了与准备装在该制品中的物质相兼容、联邦法律的要求等等）而设计的。

按照本发明生产吹塑的微孔聚合物制品是令人惊奇的，因为就吹塑而言符合要求的聚合物特征不同于典型的挤塑工艺所要求的那些特征。就吹塑而言，为了成功地经受吹塑条件通常需要高分子量的高粘度聚合物。与之相反，在标准的挤塑工艺中使用分子量比较低、粘度比较低的聚合物是符合高挤出量要求的。因此，挤坯吹塑包括固有的二重性，在使用泡沫塑料时这种二重性使问题变得更加复杂化。就受控的发泡而言，分子量比较高、粘度比较高的聚合物对于防止导致开孔材料的非受控的发泡是有利的。

本发明提供成功的高挤出量的微孔聚合物挤坯吹塑，因为可以使用分子量比较高的聚合物同时借助并入超临界的流体发泡剂降低粘度。借助把超临界流体发泡剂用于高挤出量的挤塑降低了分子量比较高的聚合物的粘度，而在挤塑和发泡剂气化时高分子量的聚合物提供成功地控制微泡发泡所需要的强度。所以，如上所述聚合物泡沫塑料材料（优选聚合物微孔泡沫塑料材料）的挤塑和吹塑可以用熔体流动指数不超过大约0.2g/10min、优选不超过大约0.12g/10min、更优选不超过大约0.1g/10min的材料来实现。

另一方面，本发明提供具有中等水平的成核剂的半结晶的微孔泡沫塑料。这种泡沫塑料中这些制剂的水平介于大约 2.5%重量百分比和大约 7%重量百分比之间。在优选实施方案中，该泡沫塑料包括大约 3%重量百分比至大约 7 %重量百分比的成核剂，在一些实施方案中，包括大约 5%重量百分比至大约 7 %重量百分比的成核剂。在本发明的泡沫塑料中成核剂的水平通常高于在常规泡沫塑料加工中作为成核剂、阻燃剂或色素使用的水平。就上述的本发明的任何吹塑方面而言，这些包含 2.5–7%重量百分比成核剂的半结晶微孔泡沫塑料都可以使用。

成核剂可以是技术上已知的任何材料，并且可以有任何种不同的形式。在某些实施方案中，成核剂是技术上通用的那些无机固体，例如滑石粉、碳酸钙（$CaCO_3$）、二氧化钛（$TiO_2$）、硫酸钡（$BaSO_4$）和硫化锌（ZnS）。在某些实施方案中，有机固体（如纤维素类纤维）可以起成核剂作用。在某些案例中，泡沫塑料可以包括一种以上类型的成核剂，以致所有成核剂的总和介于 2.5%重量百分比和 7%重量百分比之间。具体地说，包含滑石粉和二氧化钛两者的微孔泡沫塑料已经在生产。

虽然在某些案例中成核剂可以是纤维状的或具有其它形式，但是成核剂通常是颗粒。成核剂可以有各种各样的形状，如球形、圆柱形或片形。通常，颗粒的尺寸在大约 0.01 微米至大约 10 微米范围内，而更经常介于大约 0.1 微米和大约 1.0 微米之间。在一些实施方案中，颗粒可以用表面活性剂进行处理，以便提高它在聚合物熔体内的分散性和防止颗粒聚集。

在某些案例中，成核剂依据它们的组成还可以起色素、阻燃剂或任何其它添加剂的作用。在 2.5–7%重量百分比的范围内，该制剂还可以充当填料。换言之，成核剂以不可忽视的量代替固体塑料，在某些实施方案中这将导致节约成本，因为填料比

固体塑料便宜。在某些实施方案中，该制剂还可以提高微孔泡沫塑料的机械性能。在在某些案例中，这些颗粒可以提高结晶性。

本发明包含 2.5–7%重量百分比成核剂的微孔泡沫塑料，至少可以部分地由任何半结晶聚合物组成。典型的半结晶聚合物包括、但不限于下述物质：聚对苯二甲酸乙二醇酯（PET）、聚乳酸、尼龙 6、尼龙 6/6、聚乙烯、聚丙烯、间同立构聚苯乙烯和聚缩醛。在某些案例中，半结晶聚合物可以与非半结晶聚合物共混。半结晶聚合物还可以与其它半结晶聚合物共混。在优选的案例中，半结晶聚合物是聚烯烃。在某些案例中，半结晶聚合物是聚丙烯。聚丙烯可以作为多种聚合物成分之一存在。在其它实施方案中，聚合物材料可以基本上由聚丙烯组成，换言之，该聚合物不包括不同于聚丙烯的其它聚合物成分，但除了添加成核剂之外还可以包括其它添加剂，下面将进一步介绍。在另一组优选实施方案中，半结晶材料是高密度聚乙烯。在某些案例中，高密度聚乙烯是作为多种聚合物成分之一存在的。在优选的案例中，高密度聚乙烯的重量百分数占聚合物材料的 80%重量百分比以上。在某些优选的案例中，高密度聚乙烯的重量百分数占聚合物材料的 90%重量百分比以上。在特别优选的案例中，聚合物材料基本上是由高密度聚乙烯组成的，换言之，该聚合物不包括不同于高密度聚乙烯的其它聚合物成分，但除了添加成核剂之外还可以包括其它添加剂，下面将进一步介绍。

除了成核剂之外，泡沫塑料组合物还可以非必选地包括技术上已知的其它添加剂。这类添加剂可以是工艺助剂，如增塑剂（例如低分子量的有机化合物）、润滑剂、流动改进剂和抗氧化剂。在许多优选的案例中，聚合物材料基本上没有残留的化

学发泡剂和反应副产物，因为在这种方法中只使用物理发泡剂。具体地说，许多高密度聚乙烯泡沫塑料基本上没有残留的化学发泡剂和反应副产物。

出人意料的是即使成核剂的量大于 2.5 %重量百分比泡沫塑料依然具有比较均匀而细小的微泡结构。成核剂没有导致异常的大泡在泡沫塑料中出现。按照本发明的这个方面，泡沫塑料制品具有小于 60 微米的平均微泡尺寸，或具有上述的其它优选的平均微泡尺寸或最大微泡尺寸或两者的组合。

微孔泡沫塑料的微泡结构优选的是封闭的微泡结构。我们认为封闭的微泡结构可以对提高泡沫塑料的机械性能产生有利的影响，因为没有长的互连通道，这种通道可能起导致材料过早破损的部位的作用。

按照本发明的这个方面，微孔泡沫塑料可以在相当宽的密度范围上生产。在许多实施方案中，空隙率大于 10%，在其它实施方案中大于 20%，而在另一些实施方案中大于 50%。在另一组实施方案中，微孔泡沫塑料空隙率小于 50%，在另一些实施方案中小于 30%。在特别优选的实施方案中，微孔泡沫塑料具有介于 10%和 50%之间的空隙率。空隙率在这个优选的范围（10%至 50%）内的泡沫塑料呈现极好的机械性能，例如拉伸强度和拉伸模量，同时仍然具有比固体塑料低得多的密度。

种类繁多的半结晶微孔泡沫塑料制品被本发明的这个方面所包围。制品可以被挤塑、吹塑、注塑成层出不穷的形状和形态。挤塑的片材还可以热塑成形。在某些实施方案中，这种发泡的制品通常比常规的泡沫塑料制品薄，因为在微孔泡沫塑料制品中，微泡尺寸比在常规的泡沫塑料中的微泡尺寸小。在某些案例中，制品至少有一部分的厚度小于 0.1 英寸，在另一些案

例中小于 0.05 英寸，而在另一些案例中小于 0.01 英寸，在许多案例中，微孔泡沫塑料制品具有需要的表面质量，因为该制品可能是在低发泡剂百分比的情况下生产的，因此限制了通过泡沫塑料表面扩散的气体量。正象在微孔泡沫塑料加工领域中众所周知的那样，在某些案例中大量的气体通过表面扩散可能导致表面粗糙和不完整性。

用于生产具有中等剂量成核剂的微孔泡沫塑料的挤塑系统可以是类似于带吹塑模模头 10 和用于回收未充分进一步加工的挤出物的带挤塑模头的吹塑模装置 12 的非必选的替代品和/或用于注塑的模具的图 1 所示系统。

正象在技术上已知的那样，在某些案例中成核剂可以在与半结晶聚合物的浓缩共混物中以粒料形式添加。换言之，成核剂可以以浓缩的百分比（例如 40%重量百分比）分散在半结晶聚合物的粒料中。这种浓缩的粒料可以与适当数量的半结晶粒料共混，以生产具有 2.5%重量百分比至 7%重量百分比成核剂的聚合物材料。以这种方式，在聚合物材料的组成中，滑石粉的百分比可以通过控制浓缩物与纯聚合物粒料的比例进行调整。在熟悉这项技术的人所熟知的其它实施方案中，成核剂可以以颗粒形式直接添加到聚合物材料中。任何技术上众所周知的其它技术也都可以用于把成核剂以可控制的量并入聚合物的组合物。

令人惊奇的是：业已发现在某些实施方案中本发明的微孔半结晶泡沫塑料可以用比较低的发泡剂百分比制成。我们认为成核剂的存在增强了成核作用的驱动力，因此使微孔泡沫塑料的生产能在低发泡剂百分比下进行，例如按聚合物物料流和发泡剂的重量计使用低于 1.5%重量百分比的发泡剂。在优选的实施方案中，该方法涉及添加少于 1.0%重量百分比的发泡剂，并

且在另一些优选的案例中，该方法涉及按聚合物物料流和发泡剂的重量计添加少于 0.1%重量百分比。

现在参照图 5，更详细地图解说明发泡剂口的优选实施方案，此外展示在机筒相对的顶面和底面上的两个口。在这个优选实施方案中，口 154 定位在螺杆的注气段，它位于螺杆 38（包括断头螺纹）的混合段 60 的上游区距混合段上游端不足 4 个全螺槽，优选不足 2 个全螺槽或不足 1 个全螺槽。这样定位，注入的发泡剂被非常迅速非常均匀地混合到流体聚合物物料流中，以促进形成发泡材料母体与发泡剂的单相溶液。

在图解说明的优选实施方案中，口 154 是一个多孔口，它包括许多连接发泡剂源与挤塑机机筒的小孔 164。如图所示，在实施方案中围绕着挤塑机机筒提供许多在不同位置的径向口 154，而且这些口可以彼此纵向对齐。例如，许多口 154 可以围绕着挤塑机机筒安排在 12 点、3 点、6 点和 9 点的位置，每个口都包括许多个小孔 164。以这种方式，在把每个小孔 164 都看作是一个发泡剂孔时，本发明包括具有至少大约 10 个、优选至少大约 40 个、更优选至少大约 100 个、更优选至少大约 300 个、更优选至少大约 500、更优选至少大约 700 个与挤塑机机筒流体连通的发泡剂孔使该机筒与发泡剂源流体连通的挤塑装置。

在这些优选实施方案中还包括一种设计（如图 5 所示），在这种设计中发泡剂孔沿着挤塑机机筒定位在这样的的位置，即当优选的螺杆安装在该机筒中时发泡剂孔与全断头螺纹 165 相邻。以这种方式，在螺杆旋转时每个螺纹都定期地通过或“擦刮”每个小孔。这种擦刮增进发泡剂与流体发泡材料母体的迅速混合，在一个实施方案中基本上是通过迅速地打开和关闭每个小孔来促进迅速混合的，因为当螺纹相对小孔足够大足以在它与小孔对齐时完全阻断小孔 因而可以定期地阻断每个小孔

结果是一种分布，即在注入后混合前立即出现的一种被分得相当细碎的发泡剂孤立区域在流体聚合物材料中的分布。在这种设计中，在大约 30rpm 的标准螺杆旋转速度下，螺纹将以至少大约每秒 0.5 次、更优选至少大约每秒 1 次、更优选至少大约每秒 1.5 次、更优选至少大约每秒 2 次的速度通过每个小孔。在优选实施方案中，小孔 154 定位在距离螺杆始端（在上游端 34）大约 15 至大约 30 个机筒直径的位置。

再次参照图 1，螺杆 38 的混合段 60（在注气段后面的），是为了使发泡剂与聚合物物料流混合，促进形成发泡剂与聚合物的单相溶液而构成的。该混合段包括断头螺纹，它将割断物料流以促进混合。在混合段下游，进料段在聚合物–发泡剂物料流中建立压力。在把母体用于按照模头形状释放成形挤出物的场合，该模头包括具有某种形状和尺寸（模头几何尺寸）的内部通道以控制挤出物的形状。在这个实施方案中，模头可以具有任何技术上已知的构型，以便生产特定形状的微孔泡沫塑料，例如片材、型材或线材。可以使用在通过引证并入的国际专利申请第 WO98/08667 号中介绍的那些模头。除了使从这样的模头中释放的挤出物定型之外，模头还可以完成使聚合物材料和发泡剂的单相溶液成核的功能。正象前面关于图 2 至图 4 的介绍那样，当单相溶液流过模头的内部通道时随着该溶液中的压力下降，发泡剂在聚合物中的溶解度也跟着下降，这是微泡成核作用的驱动力。压降的程度取决于通道的尺寸。具体地说，影响压降的尺寸包括通道形状、通道长度和通道厚度。在各种加工条件下，跨模头的压降通常都大于 1,000psi、优选大于 2,000psi、更优选大于 3,000psi。

本发明的模头也可以象技术上已知的那样，为了在单相溶液流经该通道时提供压降速率（dP/dt）而构成。取决于模头几

何尺寸和流速的压降速率还影响微泡成核过程。通常，为了实现适合微孔材料的成核条件必须引发相当大的压降速率。我们认为成核剂以 2.5%重量百分比至 7%重量百分比的量存在，将降低对压降速率的要求。在某些案例中，使用低压降速率的工艺是需要的。低压降速率通常允许模头结构和最终制品尺寸的更大的自由度。在某些案例中，溶液中的压降速率低于 1.0 GPa/s，在一些实施方案中低于 0.10 GPa/s，在一些实施方案中低于 0.05 GPa/s。在另一些实施方案中，利用比较高的压降速率，例如在生产某种薄产品时。在一些案例中压降速率高于 1.0 GPa/s，在另一些案例中高于 5.0 GPa/s，在另一些案例中高于 10.0 GPa/s。

在另一个实施方案中（未图解说明），压降速率是在模头前或模头内，用至少一个成核通道引发的。在未审的国际专利申请第 WO98/08667 号（1997 年 3 月 5 日公布）中介绍了这种构型，在此通过引证将它并入。

由于升高的温度，从模头挤出的挤出物通常被软化到足以致使成核的微泡生长的程度。当挤出物在大气中冷却并且变成更多的固体时，微泡的生长受到抑制。在某些实施方案中，提供外部冷却装置以加快挤出物的冷却速度是有利于。例如，在这些实施方案中，冷却可以通过朝挤出物吹风、使挤出物接触冷表面或者把挤出物浸没在液体介质中来完成。在需要时，可以在模头下游使用其它设备把挤出物进一步塑造成最终的形状。

参照图 6，按照本发明生产微孔泡沫塑料的另一种挤塑系统 170 包括串联式挤塑机生产线。该串联式生产线包括按平行配置安排并通过转移管 176 连接的主挤塑机 172 和辅挤塑机 174。如上所述，粒料通过漏斗 44 供应给主挤塑机。在一些实施方案中，

辅挤塑机包括发泡剂注入口 54，如图所示。在另一些实施方案中，主挤塑机包括发泡剂注入口。

在其它实施方案中，图 5 和图 6 所示系统象技术上已知的那样经过修改以充当注坯吹塑系统。特别优选的注坯吹塑系统是通过引证并入的国际专利申请第 WO98/31521 号中介绍的系统。通常，注坯吹塑系统不包括挤塑模头，而是包括与聚合物加工空间流体连通的通道，通过该通道聚合物与发泡剂的溶液被注入模具。

另一方面，本发明提供数种特殊的模头设计，这些设计对于制作高质量的微孔聚合物挤出物是有用的。一般的说，该模头是为了提供 HDPE 片材或薄壁管材而设计的。更具体地说，该模头可以为了提供适合吹塑应用的 HDPE 型坯而构成。在这个方面，本发明涉及一项发现，即供微孔聚合物成核的模头有一个特定的锥角范围，这个锥角范围提供在挤塑过程中不破损或撕裂并且具有更均匀的表面外观的 HDPE 挤出物，包括适合吹塑的型坯。

具体地说，在这方面提供一种聚合物成型模头，该模头包括一个横截面以大于 4°的夹角朝下游方向逐渐减小的成核通道。优选的是该夹角大于 6°。在一个实施方案中，该角度介于 4°和 18°之间、优选介于 4°和 8°之间。文中所用的术语“夹角”意味着下游方向锥度的总角度。例如，在环形模头中其外壁向内以 4°锥角逐渐变细而由型芯外部定义的内壁没有锥度，那么该夹角是 4°。在同样的情况下，如果型芯向外以 2°锥角逐渐变细，那么该夹角将是 6°。

本发明的模头锥角定义从开始在模头中成核到从模头出口释放之间的特定时间，而且这种定时定义了本发明的另一个方

面。具体地说，提供了一种涉及在聚合物材料和发泡剂的未成核的单相溶液在模头内成核后的不足 0.001 秒的时间周期里把成核的物料流作为微孔聚合物挤出物从模头出口释放的方法。

本发明包括发现在挤塑 HDPE 片材和型材中存在的问题。业已发现，在微孔挤塑条件下，在使用并行的成核段时挤出物（特别是用于吹塑的 HDPE 型坯）倾向于在挤塑期间破损。在这些案例中，正常的微孔条件是通过使用成核段（它创造形成小微泡所需要的必要的压降速率）和使用典型条件的发泡剂含量和熔体温度来描述的。破损被定义为一种条件，在该条件下挤出物在离开模头时沿着模头长度在一个或多个位置撕破。这种撕裂妨碍均匀挤出物的形成，导致形成又长又薄的条形微孔材料。每条都是在每个观察到撕裂的位置完全切断挤塑的结果。这种现象用 HDPE 已被观察到，而采用其它受试材料（包括聚丙烯）尚未观察到，并且被认为是由于 HDPE 分子的高度线形特性和在低作用力下分子易于相对滑移引起的。

按照本发明 HDPE 的破损问题是通过使用夹角范围非常特殊的带锥度的模头（横截面朝下游方向逐渐减小的模头）得以缓和的。该锥角的最小值是通过解决这个破损问题并且仍然提供制作微孔材料必不可少的最小压降速率的能力来确定的。角度小于 4°不以商业上所需的合理的速率和可接受的总压降产生微孔材料需要的压降速率。角度等于和大于 6°，可以实现充分的压降速率并且可以完全解决破损问题。存在一个仍然能制成可接受的结构的最大角度。角度大于大约 18°，微孔结构倾向于把它自己吹掉，导致适合吹塑目的的微孔结构非常缺乏。

防止破损的结果是出乎意料的。虽然不指望与任何理论结合，但是我们认为因为存在一个成核作用开始发生的临界位置，所以锥形模头起作用。这个位置是由聚合物/发泡剂熔体（聚合

物材料和发泡剂的未成核的单相溶液）中的压力降低到发泡剂在聚合物中的饱和压力以下的那个点定义的。如果这个位置离模头出口太远（不是用距离度量的，而是用驻留时间即成核的聚合物从成核作用的起始点行进到释放聚合物挤出物的模头末端所花费的时间来度量的），那么当作用在正在生长的微泡时的剪切力持续太长的时间，导致熔体撕裂时破损就会发生。如果该位置比这个临界点更接近出口，那么发泡熔体不经受足以引起撕裂的剪切。在压降速率在整个成核作用区的长度上始终保持恒定并且在整个成核段上压力线性下降的并行的成核段中，成核作用起始点离模头出口太远。在压降速率在整个成核段上递增并且在最接近模头出口的地方压力下降的锥形模头中，成核作用点非常接近模头出口。结果是剪切仅仅在短暂的时间周期内起作用并且不发生破损。被提议的理论使人不得不选择既消除破损又虑及使压降速率的标准条件得到满足的特殊的锥角。

按照本发明生产的微孔材料可以在吹塑工艺中使用，例如生产吹塑的瓶子。此外，微孔聚合物材料（包括微孔 HDPE）的片材既可用扁平的模头设计也可用环形模头设计来生产。用本发明的系统制作的材料还可以热塑成形。在一个实施方案中，本发明的模头提供通过相对外模头体移动模头的内销改变型坯厚度的能力。

除了模头的角度和间隙开度之外，特殊的模头还可以用制作无缺陷的微孔型坯所需的压力和压降速率来描述。

在一组实施方案中，基本上由高密度聚乙烯（HDPE）组成的泡沫塑料制品可以在不使用化学发泡剂的情况下成形。文中所述的高密度聚乙烯指的是密度高于 0.94g/cm³ 的聚乙烯。低密度聚乙烯指的是密度低于 0.94g/cm³ 的聚乙烯。在这些制品中，

HDPE 基本上是唯一的聚合物成分，但是该制品包括各种各样技术上已知的添加剂，例如成核剂。因此，这种制品基本上没有残留的化学发泡剂及其反应副产物。在这组实施方案的一些实施方案中，HDPE 泡沫塑料制品是平均微泡尺寸小于 100 微米的微孔泡沫塑料。在某些案例中，微孔泡沫塑料具有小于 50 微米的平均微泡尺寸，在一些案例中小于 20 微米.。在这组的其它实施方案中，HDPE 泡沫塑料是常规泡沫塑料，其平均微泡尺寸大于 100 微米。这些制品可以在相当宽的密度范围上生产。在某些实施方案中，空隙率大于 10%，在一些实施方案中，空隙率大于 20%，在另一些实施方案中，空隙率大于 50%。在一组优选的实施方案中，制品具有介于 10%和 40%之间的空隙率。

高密度聚乙烯泡沫塑料制品的成形方法包括使用上述的物理发泡剂。在这组实施方案中，所生产的 HDPE 泡沫塑料制品具有与连续挤出物基本上一致的形状或者与模具内腔基本上一致的形状。换言之，这些泡沫塑料制品是通过挤塑或模塑（包括吹塑）生产的。虽然一部分微泡生长可能发生在挤塑之后或模塑之后，但是制品保持着记忆中接近挤出物或模具的形状。这将区别于象在采用现有技术的分批工艺中发生的那样，通过诸如用发泡剂饱和、然后膨胀之类的方法在未发泡的状态下挤塑或模塑然后进行后期发泡的制品。

本发明的这些和其它实施方案的功能和优点通过下面的实施例将被更全面地理解。下面的实施例倾向于诠释本发明的益处，但不作为本发明完整范围的例证。

## 实施例 1：用于吹塑的系统

包括一台 2.5mm 32:1 L/D 单螺杆主挤塑机（Akron Extruders, Canal Fulton, OH）和一台 3 36:1L/D 单螺杆辅挤塑机（Akron

Extruders, Canal Fulton, OH）的串联式挤塑生产线系统是按直角配置安排的。一台能够以不超过 30 lb/hr 的速度供料的定容喂料器安装在主挤塑机的进料喉上，以致配混的滑石粉添加剂粒料能够经过计量进入主挤塑机。用于把 $CO_2$ 注入辅机的注射系统被放在距辅机入口大约 8 个直径的地方。这个注射系统包括 4 个沿着圆周等间隔径向定位的口，每个口包括 176 个小孔，每个小孔的直径都是 0.02 英寸，总共 704 个小孔。该注射系统包括一个气动阀，以便精确地计量在 5500psi 的压力下以 0.2 至 12 lbs/hr 的速度流动的发泡剂的质量流速。

主挤塑机的螺杆是特殊设计的螺杆，以便在把发泡剂分散到聚合物中的混合段前面提供聚合物/滑石粉母料的进料、熔化和混合。这台主挤塑机的出口利用大约 24 英寸长的转移管连接到辅挤塑机的入口上。

辅挤塑机配备了特殊设计的深螺槽多螺纹螺杆结构，以便在发泡剂的注射口与通向安装在辅机出口上的齿轮泵（LCI 公司，Charlotte, NC）的入口之间冷却聚合物并且维持微孔材料母体的压力分布。该齿轮泵配备了用于加热/制冷的整体式夹套并且为了以 250 lbs/hr 的最大产出量、10,000psi 额定的最大卸载压力运行对尺寸做了调整。

该系统在齿轮泵出口配备了模头接套和垂直安装的吹塑模头（Magic 公司，Monza，意大利）。该模头接套配备了用于测量熔体刚好在进入模头前的温度和压力的旋塞。该吹塑机头包括常规的支架型流料分配槽和模头调整系统，后者允许模头相对固定的定位尖梢移动以便提供取决于选定的加工的各种各样的出口间隙。

剖开式瓶子模具安装在夹具上，以便手动模塑样品瓶子作为辅助方法。一半模具用夹具安装在辅机上，而另一半安装在线性滑块上。安装在辅机那半个模具上的快速合模器提供撞击合模的机构。利用一段软管把磨尖的短钢管安装到 0 至 50psi 的调压器上提供吹塑系统。模具直径从瓶盖区的大约 1 英寸变化到瓶体部分的 2 至 3 英寸。瓶子模具模腔的总长度大约 10 英寸。

实施例 2：型坯和瓶子成形

高密度聚乙烯粒料（Equistar LR 5403）被引入实施例 1 介绍的挤塑生产线的主加料漏斗，而预先配制的滑石粉母料（50%滑石粉在 HDPE 基础中）被引入添加剂喂料器加料漏斗。安装在吹塑机头上的模具包括出口直径 0.663 英寸、锥角 6.2°的模头和出口直径 0.663 英寸、锥角 2°的尖梢。这种尖梢与模头的组合提供 8.2°的聚流夹角。

挤塑机和齿轮泵的转速被调节到在主机转速大约为 78 rpm、辅机 32 rpm、齿轮泵 50 rpm 时提供大约 210 lbs/hr 的挤出量。辅机机筒温度被调整，以便保持熔体温度在模头入口为大约 315°F。添加剂喂料器经过调整提供大约 11 lbs/hr 的输出能力，从而导致在材料中按聚合物重量计包含 2.7%重量百分比的滑石粉。二氧化碳发泡剂以 3.3 lbs/hr 的额定速率注入，从而导致在材料中按聚合物重量计包含 1.6%重量百分比的发泡剂。

在上述条件下生产的型坯厚度 0.045 英寸、直径 1.3 英寸、密度 0.74g/cm$^3$。根据额定的固体材料密度 0.95g/cm$^3$，实现的密度下降为 23%。

样品瓶子是以下述方式生产的：挤塑出长度为大约 16 英寸的型坯，然后手工操作直接把该型坯从挤塑机移到模具中定位。

将两半模具迅速闭合并完成合模。空气调节器设定在 20psi，然后用磨尖的钢管在模具的顶端刺入型坯并且把空气引入现在被封闭在模具末端的型坯的 ID。

在上述条件下生产的瓶子厚度大约 0.015 英寸、直径大约 2.5 英寸、密度 0.7g/cm³。

<u>实施例 3：型坯和瓶子成形</u>

高密度聚乙烯粒料（Equistar LR 5403）被引入实施例 1 介绍的挤塑生产线的主加料漏斗，而预先配制的滑石粉母料（50%滑石粉在 HDPE 基础中）被引入添加剂喂料器加料漏斗。安装在吹塑机头上的模具包括出口直径 0.675 英寸、锥角 4.0°的模头和出口直径 0.663 英寸、锥角 2°的尖梢。这种尖梢与模头的组合提供 6.0°的聚流夹角。

挤塑机和齿轮泵的转速被调节到在主机转速大约为 66rpm、辅机 30rpm、齿轮泵 40rpm 时，提供大约 180 lbs/hr 的挤出量。辅机机筒温度被调整，以便保持熔体温度在模头入口为大约 310°F。添加剂喂料器经过调整提供大约 18 lbs/hr 的输出能力，从而导致在材料中按聚合物重量计包含 5.3%重量百分比的滑石粉。氮气发泡剂以 0.6 lbs/hr 的额定速率注入，从而导致在材料中按聚合物重量计包含 0.33%重量百分比的发泡剂。

在上述条件下生产的型坯厚度 0.080 英寸、直径 1.2 英寸、密度 0.69g/cm³。根据额定的固体材料密度 0.95g/cm³，实现的密度下降为 29%。

样品瓶子是以下述方式生产的：挤塑出长度为大约 16 英寸的型坯，然后手工操作直接把该型坯从挤塑机移到模具中定位。

将两半模具迅速闭合并完成合模。空气调节器设定在 40psi，然后用磨尖的钢管在模具的顶端刺入型坯并且把空气引入现在被封闭在模具末端的型坯的 ID。

在上述条件下生产的瓶子厚度大约 0.037 英寸、直径大约 2.0 英寸、密度 0.79g/cm$^3$。

实施例 4：挤塑不含填料的微孔聚丙烯材料

串联式挤塑生产线（Akron Extruders, Canal Fulton, OH）被设计成包括一台 2.5 英寸 32/1 L/D 主挤塑机和一台 3 .0 英寸 34/1 L/D 辅挤塑机。用于把 $CO_2$ 注入辅机的注射系统被放在距离喂料段大约 20 个直径的地方。这个注射系统包括 4 个沿着圆周等间隔径向定位的口，每个口包括 176 个小孔，每个小孔的直径都是 0.02 英寸，总共 704 个小孔。

主挤塑机的螺杆配备了两级螺杆，包括常规的第一级喂料段、过渡段和计量段，后面是用于发泡剂分散的多螺纹（四螺纹）混合段。这种螺杆是为高压注入发泡剂同时使第一级的计量段与发泡剂注入点之间的压降减至最小而设计的。混合段包括 4 条在注入口处断开的断头螺纹，以使这些小孔被螺纹刮擦（打开和关闭）。在螺杆转速为 80rpm 时，每个小孔被螺纹以每秒 5.3 次的频率刮擦。该混合段和注入系统考虑到非常迅速地形成发泡剂和聚合物材料的单相溶液。

注射系统包括气动控制阀以便精确地计量在不超过 5500psi 压力下以 0.2 至 12 lbs/hr 的速率流动的发泡剂的质量流速。

辅挤塑机配备了带断头螺纹的深螺槽三螺纹冷却螺杆，它提供在注入发泡剂与进入成核点（在这种情况下是模头）之间

维持微孔材料母体的压力分布曲线变化不超过大约 1500psi，并且在大多数情况下要远远小于这个值。

该系统包括允许测量熔体流压力和温度的测量仪器，从恰好在发泡剂注入口前面的那个位置到进入模头的那个点在该串联系统上至少分布 6 个测量点，以便监视材料状况。沿着螺杆用红外设备测量熔体温度以避免干扰熔体流。

聚丙烯粒料靠重力从加料漏斗喂入该挤塑系统。所用的品级是名义熔体流动指数为 0.5g/10min 的标准均聚物树脂，Montell's 6823。这种聚合物材料基本上没有成核剂。主机螺杆转速为 90 rpm 从而提供大约 84 lbs/hr 物料的总挤出量。辅机螺杆转速为 5rpm。辅挤塑机的机筒温度经过调整，以便在辅挤塑机末端测量的维持熔体温度为 386 °F。二氧化碳发泡剂以 4.0 lbs/hr 的速率注入，从而导致熔体中有 4.8%的发泡剂。在辅挤塑机出料口的模头接套被连接在具有 4.5 英寸宽的模头出口和 0.034 英寸的间隙的平片 T 型模头上。在该模头内包括一长度为 0.5 英寸间隙逐渐减小到出口尺寸 0.015 英寸的独立的成核点。该模头有熔体指示器和压力指示器。在注射口与模头入口之间的压力分布曲线被维持在 2120psi 至 3490psi 之间。

图 7 是该片材截面的 SEM 照片的复制品，表明平均直径为大约 25 微米的微泡是均匀分散的。该片材的厚度大约为 0.033 英寸（0.83mm）。这种微孔泡沫塑料的密度是大约 $0.63g/cm^3$（ ）39 $lbs/ft^3$）。

## 实施例 5：挤塑无填料的微孔聚丙烯片

在这个实施例中使用与实施例 4 完全相同的挤塑系统、模头和聚丙烯品级。这种聚合物材料基本上没有成核剂。主机螺

杆转速为 75 rpm ，提供大约 60 lbs/hr 物料的总挤出量。辅机螺杆转速为 20 rpm。辅挤塑机的机筒温度经过调整，以便维持在辅挤塑机末端测量的熔体温度为 358 °F。二氧化碳发泡剂以 2.5 lbs/hr 的速率注入，从而导致熔体中有 4.2%的发泡剂。在注射口与模头入口之间的压力分布曲线被维持在 2180psi 至 3650psi 之间。

利用三辊式堆片机收集片材，该三辊式堆片机利用循环油维持在 100°F 的温度下。收卷速度大约为 30ft/min，以便最终得到厚度大约为 0.036 英寸（0.93mm）的片材。图 8 是该片材截面的 SEM 照片的复制品，表明呈现不均匀的非微孔结构。平均微泡直径大约为 65 微米，最大直径为 120 微米。实测材料密度为 0.79g/ $cm^3$ （49.3lbs/$ft^3$）。

实施例 5 生产的片材与实施例 4 生产的片材相比前者具有比较大的平均微泡尺寸，这在很大程度上是由于在实施例 5 中在不使用成核剂的情况下采用了比较低的发泡剂浓度。

## 实施例 6：挤塑具有滑石粉填料的微孔聚丙烯

使用与实施例 4 所介绍的完全相同的聚丙烯材料和挤塑系统，聚丙烯粒料靠重力从加料漏斗喂入该挤塑系统。主机螺杆转速为 48 rpm ，提供大约 100 lbs/hr 物料的总挤出量。辅机螺杆转速为 16 rpm。螺旋喂料器被用于把滑石粉/PP 粒状母料（EP5140 A 1,来自 Spartech Polycom）喂入加料漏斗。螺旋喂料器上的螺杆转速被调整到以 12.5 lbs/hr 的速率把滑石粉母料输送到加料漏斗中。这种速率对应于基于总物料挤出量的 12.5%。由于这种母料包含 40%重量百分比的滑石粉，所以最终的配方中包含大约 5%重量百分比的滑石粉。辅挤塑机的机筒温度经过调整，以便维持在辅挤塑机末端测量的熔体温度为 424 °F。二

氧化碳发泡剂以 0.5 lbs/hr 的速率注入，从而导致熔体中有 0.5%的发泡剂。在注射口与模头入口之间的压力分布曲线被维持在 1580psi 至 1900psi 之间。安装在辅挤塑机末端的模头是具有 11 英寸宽乘 0.030 英寸间隙的开口的 t 型扁平模头。模唇是平行的，并且具有 0.5 英寸最终成形段长度。跨模唇的压降速率为 0.07GPa/s。

利用维持在 100°F 下同样的三辊式堆片机以 11.4ft/min 的收卷速度收集片材，从而导致片材厚度大约为 0.038 英寸（0.97mm）。图 9 是该片材截面的 SEM 照片的复制品，表明相当均匀以闭孔为主的微孔结构，其平均微泡直径大约为 50 微米。最终片材密度为 0.71g/ cc （44.3lbs/$ft^3$）。

实施例 6 说明利用比较低的气体百分比和比较低的压降速率生产包括中等水平滑石粉作为成核剂的微孔聚丙烯。

实施例 7：挤塑具有滑石粉和二氧化钛填料的微孔聚丙烯片材

除了把二氧化钛/PP 母料按 4 份滑石粉母料对 1 份二氧化钛（$TiO_2$）母料的比例与滑石粉母料手工操作混合之外，所用的系统与实施例 6 介绍的系统完全相同。由于二氧化钛母料也包含大约 40%重量百分比的 $TiO_2$，所以这种填料由大约 80%的滑石粉和大约 20%的 $TiO_2$ 组成。主机螺杆转速为 48 rpm ，提供大约 100 lbs/hr 物料的总挤出量。螺旋喂料器以 12.5 lbs/hr 的速率喂入浓缩粒料的共混物，从而导致在聚合物基体中包含大约 5%成核剂的最终配方。辅挤塑机的机筒温度被调整，以维持在辅挤塑机末端测量的熔体温度为 424 °F。二氧化碳发泡剂以 0.6 lbs/hr 的速率注入，从而导致熔体中有 0.6%的发泡剂。在注射口与模头入口之间的压力分布曲线被维持在 1550psi 至 1900psi 之间。安装在辅挤塑机末端的模头在各个方面都与实施例 6 介绍的模头完全一致。跨模唇的压降速率为大约 0.07GPa/s。

利用同样的三辊式堆片机，以 11.7ft/min 的收卷速度导致片材厚度大约为 0.040 英寸（1.0mm）、密度为 0.73g/cc（45.6lbs/$ft^3$）。图 10 是该片材截面的 SEM 照片的复制品，表明相当均匀以闭孔为主的微孔结构，其平均微泡直径大约为 40 微米。

实施例 7 说明包括滑石粉和 $TiO_2$ 作为成核剂的微孔聚丙烯的生产。

实施例 8：填充 5%滑石粉的微孔聚丙烯管状产品

单一的 NRM（Pawcatuck, CT）2.5 英寸 44/1 L/D 长挤塑生产线配备了把 $CO_2$ 注入辅机的注射系统，该系统被置于距离喂料段大约 25 个直径的地方。这个注射系统包括 4 个沿着圆周等间隔径向定位的口，每个口包括 417 个小孔，每个小孔的直径都是 0.02 英寸，总共 1668 个小孔。

该挤塑机配备了两级螺杆，包括常规的第一级喂料段、屏障式螺杆过渡段和计量段，后面是用于发泡剂分散的多螺纹（六螺纹）混合段。这种螺杆是为高压注入发泡剂同时使第一级的计量段与发泡剂注入点之间的压降减至最小而设计的。该螺杆的第二级包括 6 条螺纹在注入口处断开的混合段，以使这些小孔被螺纹刮擦（打开和关闭）。在螺杆转速为 80rpm 时，每个小孔被螺纹以每秒 8 次的频率刮擦。该混合段和注入系统考虑到非常迅速地形成发泡剂和聚合物材料的单相溶液。注射系统包括气动控制阀以便精确地计量在不超过 5500psi 的压力下以 0.2 至 50 lbs/hr 的速率流动的发泡剂的质量流速。

该螺杆的第二级还配备了带断头螺纹的深螺槽三螺纹冷却段，它提供冷却聚合物熔体流的能力。

该系统在挤塑机末端包括模头接套和间隙 0.34 英寸、内径 0.4 英寸、成形段长度 2 英寸的圆柱（芯）环形模头，该模头接套配备了用于测量熔体恰好在进入模头前的温度和压力的旋塞。

该系统包括允许测量熔体流压力和温度的测量仪器，从恰好在发泡剂注入口前面的那个位置到进入模头的那个点在系统上至少分布 7 个测量点，以便精确监视材料状况。沿着螺杆用红外设备测量熔体温度以避免干扰熔体流。

名义熔体流动指数为 5g/10min 的标准均聚物树脂，Solvay's HB 1301，被用作基础树脂。由 40%重量百分比滑石粉分散在均聚物聚丙烯基体中形成的粒料组成的滑石粉母料（Montell Astryn $65I^2 4-4$）利用失重型混合系统与 HB 1301 混合，以产生包含 5%重量百分比滑石粉（12.5%滑石粉母料）的混合物。然后，这种混合物靠重力从加料漏斗喂入挤塑系统。主螺杆转速为 50 rpm，提供大约 54 lbs/hr 物料的总挤出量。辅挤塑机的机筒温度经过调整，是在挤塑机末端测量的熔体温度维持在 422 °F。二氧化碳发泡剂以 0.3 lbs/hr 的速率注入，从而导致熔体中有 0.55%的发泡剂。安装在挤塑机出料口上的模头接套连接在间隙为 0.025 英寸、外径 0.18 英寸、成形段长度 0.15 英寸的圆柱（芯）环形模头上。在注射口与模头入口之间的压力分布曲线被维持在 2430psi 至 3540psi 之间。跨模头的压降速率为 11.2GPa/s。

图 11 是该片材截面的 SEM 照片的复制品，表明遍布管壁横截面的通常呈球形的微泡平均直径大约为 50 微米。产品壁厚大约为 0.008 英寸（0.21mm）。产品外径大约为 0.26 英寸（6.60mm）。材料密度大约为 $0.51 g/cm^3$（$32 lbs/ft^3$）。

实施例 8 说明在利用剂量比较低的发泡剂和比较高的压降速率的同时，利用中等水平剂量的滑石粉作为成核剂生产薄壁微孔聚丙烯材料。

实施例 9：填充 3%滑石粉的微孔聚丙烯管状产品

基础聚丙烯树脂品级与实施例 8 完全相同但包含 3%滑石粉（7.5%滑石粉母料）的树脂配方经共混后靠重力从加料漏斗喂入挤塑系统。主螺杆转速为 50 rpm ，提供大约 54 lbs/hr 物料的总挤出量。机筒温度经过调整，使在挤塑机末端测量的熔体温度维持在 427 °F。二氧化碳发泡剂以 0.27 lbs/hr 的速率注入，从而导致熔体中有 0.5%的发泡剂。在实施例 8 中介绍的模头被安装在挤塑机出料口上。在注射口与模头入口之间的压力分布曲线被维持在 2650psi 至 3900psi 之间。跨模头的压降速率为 12.4GPa/s。

图 12 是该挤出物截面的 SEM 照片复制品，表明遍布管壁横截面的通常是直径大约为 60 微米的球形微泡。产品壁厚大约为 0.010 英寸（0.25mm）。产品外径大约为 0.26 英寸（6.60mm）。材料密度大约为 $0.52g/cm^3$（32.4 $lbs/ft^3$）。

实施例 9 生产的材料与实施例 5 生产的材料相比具有比较大的平均微泡尺寸，这是因为在实施例 6 中存在较少的成核剂。

实施例 10：填充 1%滑石粉的非微孔聚丙烯管状产品

基础聚丙烯树脂品级与实施例 8 完全相同但包含 1%滑石粉（2.5%滑石粉母料）的树脂配方经共混后靠重力从加料漏斗喂入挤塑系统。主螺杆转速为 50 rpm ，提供大约 54 lbs/hr 物料的总挤出量。机筒温度经过调整，使在挤塑机末端测量的熔体温

度维持在 428°F。二氧化碳发泡剂以 0.48 lbs/hr 的速率注入，从而导致熔体中有 0.9%的发泡剂。在实施例 8 中介绍的模头被安装在挤塑机出料口上。在注射口与模头入口之间的压力分布曲线被维持在 2600psi 至 3880psi 之间。跨模头的压降速率大约为 12.4GPa/s。

图 13 是该挤出物截面的 SEM 照片复制品，表明遍布管壁横截面的通常是直径大约为 150 微米的球形微泡。产品壁厚大约为 0.018 英寸(0.46mm)。产品外径大约为 0.26 英寸(6.60mm)。材料密度大约为 $0.53 g/cm^3$（$33.1 lbs/ft^3$）。

实施例 10 用低于中等水平的成核剂（1%滑石粉）生产的材料不是微孔材料。

<u>实施例 11–14：高密度聚乙烯微孔泡沫塑料</u>

包括一台 2.5mm 32:1 L/D 单螺杆主挤塑机(Akron Extruders, Canal Fulton, OH）和一台 3 36:1 L/D 单螺杆辅挤塑机（Akron Extruders, Canal Fulton, OH）的串联式挤塑生产线是按直角配置安排的。一台能够以不超过 30 lb/hr 的速度供料的定容喂料器安装在主挤塑机的进料喉上，以致配混的滑石粉添加剂粒料能够经过计量进入主挤塑机。用于把 $CO_2$ 注入辅机的注射系统被放在距离辅机入口大约 8 个直径的地方。这个注射系统包括 4 个沿着圆周等间隔径向定位的口，每个口包括 176 个小孔，每个小孔的直径都是 0.02 英寸，总共 704 个小孔。该注射系统包括一个气动阀以便精确地计量在不超过 5500psi 的压力下以 0.2 至 12 lbs/hr 的速度流动的发泡剂的质量流速。

主挤塑机的螺杆是特殊设计的螺杆，以便在把发泡剂分散到聚合物中的混合段前面提供聚合物/滑石粉母料的进料、计量

和混合。这台主挤塑机的出口利用大约 24 英寸长的转移管连接到辅挤塑机的入口上。

辅挤塑机配备了特殊设计的深螺槽多螺纹螺杆结构，以便在发泡剂的注射口与通向安装在辅机出口上的齿轮泵（LCI 公司，Charlotte, NC）的入口之间冷却聚合物并且维持微孔材料母体的压力分布。该齿轮泵配备了用于加热/制冷的整体式夹套，并且为了以 250 lbs/hr 的最大产出量、10,000psi 额定的最大卸载压力运行对尺寸做了调整。

该系统在齿轮泵出口配备了模头接套和垂直安装的吹塑模头（Magic Company, Monza, Italy）。该模头接套配备了用于测量熔体刚好在进入模头前的温度和压力的旋塞。该吹塑机头包括常规的支架型流料分配槽和模头调整系统，后者允许模头相对固定的定位尖梢移动以便提供取决于选定的加工的各种各样的出口间隙。

上述的系统被用于生产包括实施例 11–14 所描述的中等水平的发泡剂的 HDPE 微孔泡沫塑料样品。用于实施例上 11–14 的加工条件和所得到的产品特性也被扼要地列入下表:

| | 实施例 11 | 实施例 12 | 实施例 13 | 实施例 14 |
|---|---|---|---|---|
| 滑石粉% | 2.5 | 6.5 | 2.5 | 5.0 |
| 气体类型 | $CO_2$ | $CO_2$ | $N_2$ | $N_2$ |
| 气体% | 1.3 | 1.3 | 0.33 | 0.33 |
| 熔体温度（°F） | 311 | 311 | 318 | 318 |
| 挤出量（lb/hr） | 120 | 120 | 217 | 218 |
| dP/dt（GPa/s） | 3.9 | 3.9 | 3.5 | 3.5 |
| 微泡尺寸（微米） | 53 | 29 | 50 | 34 |

## 实施例 15：微泡挤塑系统

除了辅挤塑机配备了深螺槽多螺纹螺杆结构，以便在发泡剂的注射口与通向模头接套和垂直安装的吹塑模头（Magic 公司，Monza，意大利）的入口之间，冷却聚合物并且维持微孔材料母体的压力分布之外，使用在实施例 1 中介绍的串联式挤塑生产线。模头接套配备了用于测量熔体刚好在进入模头前的温度和压力的旋塞。吹塑机头包括常规的支架型流料分配槽和模头调整系统，后者允许模头相对固定的定位尖梢移动以便提供取决于选定的加工的各种各样的出口间隙。

## 实施例 16：对比实验…破损型坯的形成

高密度聚乙烯（Equistar LR 5403）粒料被引入实施例 15 所介绍的挤塑生产线的主加料漏斗。附着在吹塑机头上的模具包括出口直径为 1.227 的模头和出口直径 1.181 且带 2°锥角的尖梢。这种模具构型提供 0.023 英寸的出口间隙和 2°锥形夹角。

该挤塑机经过调整在主机转速大约为 58rpm、辅机转速大约为 25rpm 时提供大约 140 lbs/hr 的挤出量。辅机机筒温度经过调整，以维持在模头入口处的熔体温度大约为 305 F°。关闭定容喂料器，不再添加混配的滑石粉。将二氧化碳发泡剂以 4.8 lbs/hr 的名义速率注入，从而导致按聚合物重量计在该材料中包含 3.4% 的发泡剂。

在上述条件下，从聚合物的成核点到模头出口的时间大约是 0.060 秒。这些条件导致产品的破损。

## 实施例 17： 多用途挤塑系统

除了把齿轮泵（LCI 公司，Charlotte, NC）安装在辅机出口和机头入口之间之外，使用实施例 15 中的系统。该齿轮泵配备了用于加热/制冷的整体式夹套并且为了以 250 lbs/hr 的最大产出量、10,000psi 额定的最大卸载压力运行对尺寸做了调整。

## 实施例 18： 型坯的形成

高密度聚乙烯（Equistar LR 5403）粒料被引入实施例 17 介绍的挤塑生产线的主加料漏斗。附着在吹塑机头上的模具包括出口直径为 0.685 的模头和出口直径 0.623 且带 2°锥角的尖梢。这种模具构型提供 0.031 英寸的出口间隙和 4°锥形夹角。

该挤塑机和齿轮泵经过调整在主机转速大约为 78rpm、辅机转速约为 32rpm、齿轮泵转速为 50rpm 时，提供大约 216 lbs/hr 的挤出量。辅机机筒温度经过调整，以维持在模头入口处的熔体温度大约为 315 F°。调整添加剂喂料器以提供大约 11 lbs/hr 的输出量，从而导致按聚合物重量计在材料中包含 2.7%的滑石粉。将二氧化碳发泡剂以 2.2 lbs/hr 的名义速率注入，从而导致按聚合物重量计在该材料中包含 1.0%的发泡剂。

在上述条件下，从聚合物的成核点到模头出口的时间大约是 0.002 秒。这些条件导致平均微泡尺寸大约为 70 微米且没有破损的好泡沫塑料。

## 实施例 19： 型坯的形成

高密度聚乙烯（Equistar LR 5403）粒料被引入实施例 17 介绍的挤塑生产线的主加料漏斗。附着在吹塑机头上的模具包括出口直径为 0.661 且带 4°锥角的模头以及出口直径为 0.633 且带

2°锥角的尖梢。这种模具构型提供 0.014 英寸的出口间隙和 6°锥形夹角。

该挤塑机和齿轮泵经过调整在主机转速大约为 62rpm、辅机转速大约为 37rpm、齿轮泵转速为 50rpm 时提供大约 212 lbs/hr 的挤出量。辅机机筒温度经过调整，以维持在模头入口处的熔体温度大约为 315 F°。调整添加剂喂料器以提供大约 11 lbs/hr 的输出量，从而导致按聚合物重量计在材料中包含 2.7%的滑石粉。将二氧化碳发泡剂以 3.2 lbs/hr 的名义速率注入，从而导致按聚合物重量计在该材料中包含 1.5%的发泡剂。

在上述条件下，从聚合物的成核点到模头出口的时间大约是 0.003 秒。这些条件导致平均微泡尺寸大约为 19 微米且没有破损的好泡沫塑料。

本领域的技术人员将很容易意识到本文中列出的所有参数都仅仅是示范性的，而实际参数将取决于使用本发明的方法和装置的特定应用。所以，应当理解上述的实施方案仅仅是通过实例的一种表达，而且在权利要求书及其等价文件的范围内本发明可以以不同于本说明书介绍的方式予以实现。

00.07.14

# 说 明 书 附 图




图 1




图 2

00·07·14




图3




图 4




图 5

00.07.14




图 6




图 7




图 8



图9




图 10




图 11




图 12




图 13

Europäisches Patentamt
European Patent Office
Office européen des brevets

Espacenet

# Bibliographic data: CN202079738 (U) — 2011-12-21

## Portable extrusion and injection machine

**Inventor(s):** YINGJUN ZHANG; HAIZHI WANG ± (ZHANG YINGJUN, ; WANG HAIZHI)

**Applicant(s):** YINGJUN ZHANG ± (ZHANG YINGJUN)

**Classification:**
- **international:** ***B29C45/47; B29C45/77; B29C47/38; B29C47/58; B29C47/92***
- **cooperative:** **B29C47/38**

**Application number:** CN2011270047U 20110317

**Priority number(s):** CN2011270047U 20110317

## Abstract of CN202079738 (U)

The utility model provides a portable extrusion and injection machine, which comprises a shell, wherein a power part is arranged in the shell; one side of the shell is connected with one end of a delivery pipe body; an opening is arranged at the other end of the delivery pipe body; a spiral push rod connected through the power part is arranged in the delivery pipe body; a material inlet is arranged on the delivery pipe body; handles are arranged on the two sides of the shell; and control buttons for regulating and controlling the power part are arranged on the handles. Compared with a product performing the same function, the portable multifunctional extrusion and injection machine has the advantages that the volume is small, and the transportation, the operation and the use are convenient.

(19) 中华人民共和国国家知识产权局

(12) 实用新型专利

(10) 授权公告号 CN 202079738 U
(45) 授权公告日 2011.12.21

(21) 申请号 201120070047.7

(22) 申请日 2011.03.17

(73) 专利权人 张英俊
地址 050091 河北省石家庄市中华北大街
186 号中华绿园小区 21 3 302 号

(72) 发明人 张英俊 王海枝

(51) Int. Cl.
*B29C 45/47* (2006.01)
*B29C 45/77* (2006.01)
*B29C 47/38* (2006.01)
*B29C 47/58* (2006.01)
*B29C 47/92* (2006.01)

权利要求书 1 页 说明书 2 页 附图 2 页

(54) 实用新型名称

便携式挤出注射机

(57) 摘要

一种便携式挤出注射机，包括壳体，所述壳体内设有动力部，所述壳体一侧连接输送管体一端，所述输送管体另一端设有开口，所述输送管体内设有通过动力部连接的螺旋推杆，所述输送管体设有进料口，所述壳体两侧设有手柄，所述手柄设有调控动力部的控制按钮。这种便携式多功能挤出注射机，相较于同功能产品，体积小，运输、操作、使用方便。




CN 202079738 U

1. 一种便携式挤出注射机，其特征在于，包括壳体，所述壳体内设有动力部，所述壳体一侧连接输送管体一端，所述输送管体另一端设有开口，所述输送管体内设有通过动力部连接的螺旋推杆，所述输送管体设有进料口，所述壳体两侧设有手柄，所述手柄设有调控动力部的控制按钮。

2. 根据权利要求1所述的便携式挤出注射机，其特征在于，所述输送管体外圆周环绕设置有加热片。

3. 根据权利要求1所述的便携式挤出注射机，其特征在于，所述动力部包括电动机、减速器，所述电动机与减速器传动连接，以驱动所述螺旋推杆。

4. 根据权利要求1所述的便携式挤出注射机，其特征在于，所述进料口外端设有进料斗。

5. 根据权利要求1所述的便携式挤出注射机，其特征在于，所述动力部与螺旋推杆通过输出轴连接。

6. 根据权利要求1所述的便携式挤出注射机，其特征在于，所述壳体内设有电器部件，所述控制按钮与电器部件电连接。

# 便携式挤出注射机

## 技术领域

[0001] 本实用新型涉及一种便携式挤出注射机。

## 背景技术

[0002] 现有挤出机注射机,其存在体积大、重量大、只能国家在某地加工,不宜移动和携带。再有现在有挤压注射设备加工技术环境要求较高,不适用便携加工,一些外部施工、技术创新研究、土木施工,铸造等各种加工均不能实施。。

## 实用新型内容

[0003] 针对现有市场需求机型的不足,本实用新型提出一种体积小,操作方便的的便携式挤出注射机。

[0004] 所述技术方案如下：

[0005] 一种便携式挤出注射机,包括壳体,所述壳体内设有动力部,所述壳体一侧连接输送管体一端,所述输送管体另一端设有开口,所述输送管体内设有通过动力部连接的螺旋推杆,所述输送管体设有进料口,所述壳体两侧设有手柄,所述手柄设有调控动力部的控制按钮。

[0006] 作为上述技术方案的优选,所述输送管体外圆周环绕设置有加热片。

[0007] 作为上述技术方案的优选,所述动力部包括电动机、减速器,所述电动机与减速器传动连接,以驱动所述螺旋推杆。

[0008] 作为上述技术方案的优选,所述进料口外端设有进料斗。

[0009] 作为上述技术方案的优选,所述动力部与螺旋推杆通过输出轴连接。

[0010] 作为上述技术方案的优选,所述壳体内设有电器部件,所述控制按钮与电器部件电连接

[0011] 本实用新型提供的技术方案带来的有益效果是：

[0012] 1}这种便携式多功能挤出注射机,相较于同功能产品,体积小,运输、操作、使用方便。

[0013] 2}便携式多功能挤出注射机使用 220V 电压,无需工业电压,任何场所都可使用。

[0014] 3)便携式多功能挤出注射机根据用途不同,选择不同的输出转速,可用作注射机或挤出机。

[0015] 4)此机器填补了一项电动工具的空白。

## 附图说明

[0016] 为了更清楚地说明本实用新型实施例的技术方案,下面将对实施例中使用的附图作一简单地介绍,显而易见地,下面所列附图仅仅是本实用新型的一些实施例,对于本领域普通技术人员来讲,在不付出创造性劳动的前提下,还可以根据这些附图获得其他的附图。

[0017] 图 1 是本实施例中便携式挤出注射主视图；

[0018] 图 2 是本实施例中便携式挤出注射俯视图。

## 具体实施方式

[0019] 为使本实用新型的目的、技术方案和优点更加清楚，下面将结合附图对本实用新型实施方式作进一步地详细描述。

[0020] 实施例

[0021] 如图 1、图 2 所示，本实用新型提出一种便携式多功能挤出注射机。包括壳体 1，所述壳体 1 内设有动力部，所述壳体 1 一侧连接输送管体 13 一端，所述输送管体 13 另一端设有开口 8，所述输送管体 13 内设有通过动力部连接的螺旋推杆 6，所述输送管体 13 设有进料口 5，所述壳体两侧设有手柄 12，所述手柄 12 设有调控动力部的控制按钮 11。所述输送管体 13 外圆周环绕设置有加热片 7。动力部包括电动机 2、减速器 3，所述电动机 2 与减速器 3 传动连接，以驱动所述螺旋推杆 6，所述进料口 3 外端设有进料斗 4，所述动力部与螺旋推杆 6 通过输出轴 10 连接，所述壳体 1 内设有电器部件 14，所述控制按钮 11 与电器部件 14 电连接。

[0022] 这样，进行工作时，电机 2 通过减速器 3 减速后将力矩传动到输出轴 10，输出轴 10 与螺旋推杆 6 连接，螺旋推杆 6 外侧通过输送管体 13 防护，输送管体 13 外圆周环绕设置有加热片 7。将物料倒入进料斗 4，按动电机壳体 1 的手柄 12 上的按钮 11，电机 2 驱动螺旋推杆 6 旋转，将加热片 7 加热熔化后的物料沿螺旋推杆 6 的螺旋料道 9 向出料口 8 挤出。

[0023] 最后应说明的是：以上实施例仅用以说明本实用新型的技术方案，而非对其限制；尽管参照前述实施例对本实用新型进行了详细的说明，本领域的普通技术人员应当理解：其依然可以对前述各实施例所记载的技术方案进行修改，或者对其中部分技术特征进行等同替换；而这些修改或者替换，并不使相应技术方案的本质脱离本实用新型各实施例技术方案的精神和范围。




图 1



图 2

PCT

WORLD INTELLECTUAL PROPERTY ORGANIZATION
International Bureau

INTERNATIONAL APPLICATION PUBLISHED UNDER THE PATENT COOPERATION TREATY (PCT)

(51) International Patent Classification 6 : C08J 9/00, B65D 1/02

A1

(11) International Publication Number: WO 99/32544

(43) International Publication Date: 1 July 1999 (01.07.99)

(21) International Application Number: PCT/US98/27118

(22) International Filing Date: 18 December 1998 (18.12.98)

(30) Priority Data:
60/068,173 19 December 1997 (19.12.97) US
60/107,754 10 November 1998 (10.11.98) US

(71) Applicant *(for all designated States except US)*: TREXEL, INC. [US/US]; 45 Sixth Road, Woburn, MA 01801 (US).

(72) Inventors; and
(75) Inventors/Applicants *(for US only)*: ANDERSON, Jere, R. [US/US]; 15 Boylston Street, Newburyport, MA 01950 (US). STRAFF, Richard, S. [US/US]; 2 Sheldon Road, Marblehead, MA 01945 (US). OKAMOTO, Kelvin [US/US]; 717 Atlantic Avenue #3A, Boston, MA 02111 (US). BLIZARD, Kent [US/US]; 221 Eliot Street, Ashland, MA 02116 (US). PIERICK, David [US/US]; 23 Sawmill Way, Georgetown, MA 01833 (US).

(74) Agent: OYER, Timothy, J.; Wolf, Greenfield & Sacks, P.C., 600 Atlantic Avenue, Boston, MA 02210 (US).

(81) Designated States: AU, CA, CN, JP, US, European patent (AT, BE, CH, CY, DE, DK, ES, FI, FR, GB, GR, IE, IT, LU, MC, NL, PT, SE).

**Published**
*With international search report.*
*Before the expiration of the time limit for amending the claims and to be republished in the event of the receipt of amendments.*

(54) Title: MICROCELLULAR FOAM EXTRUSION/BLOW MOLDING PROCESS AND ARTICLE MADE THEREBY




**(57) Abstract**

A microcellular injection blow molding system and method, and microcellular blow molded articles produced thereby, are described. The system is equipped to extrude microcellular material that changes in thickness, material density, or both in the machine direction while maintaining a constant pressure drop rate during nucleation just prior to extrusion, providing the ability to produce consistent uniform microcellular material independent of material thickness. The systems and methods are particularly useful in production of strong, thin–walled, non–liquid–permeable, opaque containers that do not contain reinforcing agent, chromophore, or residue of chemical blowing agent or chemical blowing agent by–product. Semi–crystalline microcellular foams that include a midlevel amount of nucleating agent, and methods of their production, also are provided. The microcellular foams can be produced in typical polymer processing techniques such as extrusion, injection molding and blow molding. The foams exhibit excellent mechanical properties and can be formed over a broad range of density into a number of different foam articles. Also provided are high–density polyethylene foams and dies that are suited for use with HDPE, foams.

***FOR THE PURPOSES OF INFORMATION ONLY***

Codes used to identify States party to the PCT on the front pages of pamphlets publishing international applications under the PCT.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **AL** | Albania | **ES** | Spain | **LS** | Lesotho | **SI** | Slovenia |
| **AM** | Armenia | **FI** | Finland | **LT** | Lithuania | **SK** | Slovakia |
| **AT** | Austria | **FR** | France | **LU** | Luxembourg | **SN** | Senegal |
| **AU** | Australia | **GA** | Gabon | **LV** | Latvia | **SZ** | Swaziland |
| **AZ** | Azerbaijan | **GB** | United Kingdom | **MC** | Monaco | **TD** | Chad |
| **BA** | Bosnia and Herzegovina | **GE** | Georgia | **MD** | Republic of Moldova | **TG** | Togo |
| **BB** | Barbados | **GH** | Ghana | **MG** | Madagascar | **TJ** | Tajikistan |
| **BE** | Belgium | **GN** | Guinea | **MK** | The former Yugoslav Republic of Macedonia | **TM** | Turkmenistan |
| **BF** | Burkina Faso | **GR** | Greece | | | **TR** | Turkey |
| **BG** | Bulgaria | **HU** | Hungary | **ML** | Mali | **TT** | Trinidad and Tobago |
| **BJ** | Benin | **IE** | Ireland | **MN** | Mongolia | **UA** | Ukraine |
| **BR** | Brazil | **IL** | Israel | **MR** | Mauritania | **UG** | Uganda |
| **BY** | Belarus | **IS** | Iceland | **MW** | Malawi | **US** | United States of America |
| **CA** | Canada | **IT** | Italy | **MX** | Mexico | **UZ** | Uzbekistan |
| **CF** | Central African Republic | **JP** | Japan | **NE** | Niger | **VN** | Viet Nam |
| **CG** | Congo | **KE** | Kenya | **NL** | Netherlands | **YU** | Yugoslavia |
| **CH** | Switzerland | **KG** | Kyrgyzstan | **NO** | Norway | **ZW** | Zimbabwe |
| **CI** | Côte d'Ivoire | **KP** | Democratic People's Republic of Korea | **NZ** | New Zealand | | |
| **CM** | Cameroon | | | **PL** | Poland | | |
| **CN** | China | **KR** | Republic of Korea | **PT** | Portugal | | |
| **CU** | Cuba | **KZ** | Kazakstan | **RO** | Romania | | |
| **CZ** | Czech Republic | **LC** | Saint Lucia | **RU** | Russian Federation | | |
| **DE** | Germany | **LI** | Liechtenstein | **SD** | Sudan | | |
| **DK** | Denmark | **LK** | Sri Lanka | **SE** | Sweden | | |
| **EE** | Estonia | **LR** | Liberia | **SG** | Singapore | | |

# MICROCELLULAR FOAM EXTRUSION/BLOW MOLDING PROCESS AND ARTICLE MADE THEREBY

## Related Applications

This application is a continuation-in-part of co-pending U.S. application serial no. 60/068,173, filed December 19, 1997 and U.S. application serial no. 60/107,754, filed November 10, 1998, both entitled "Microcellular Extrusion/Blow Molding Process and Article Made Thereby" both by Jere R. Anderson et al., and both incorporated herein by reference.

## Background of the Invention

Polymeric foams include a plurality of voids, also called cells, in a polymer matrix. By replacing solid plastic with voids, polymeric foams use less raw material than solid plastics for a given volume. Thus, by using polymeric foams in many applications instead of solid plastics, material costs are reduced.

Microcellular foams have smaller cell sizes and higher cell densities than conventional polymeric foams. Typically, microcellular foams are defined as having average cell sizes of less than 100 microns and a cell density of greater than $10^6$ cells/cm$^3$ of solid plastic. In a typical continuous process for forming microcellular foam (e.g. extrusion), the pressure on a single-phase solution of blowing agent and polymer is rapidly dropped to nucleate the cells. The nucleation rate must be high enough to form the microcellular structure.

Several patents describe aspects of microcellular materials and microcellular processes.

U.S. Patent No. 4,473,665 (Martini-Vvedensky, et al.; September 25, 1984) describes a process for making foamed polymer having cells less than about 100 microns in diameter. In the technique of Martini-Vvedensky, et al., a material precursor is saturated with a blowing agent, the material is placed under high pressure, and the pressure is rapidly dropped to nucleate the blowing agent and to allow the formation of cells. The material then is frozen rapidly to maintain a desired distribution of microcells.

U.S. Patent No. 5,158,986 (Cha, et al.; October 27, 1992) describes formation of microcellular polymeric material using a supercritical fluid as a blowing agent. In a batch process of Cha, et al., a plastic article is submerged at pressure in supercritical fluid for a

period of time, and then quickly returned to ambient conditions creating a solubility change and nucleation. In a continuous process, a polymeric sheet is extruded, and then can be run through rollers in a container of supercritical fluid at high pressure, and then exposed quickly to ambient conditions. In another continuous process, a supercritical fluid-saturated molten polymeric stream is established. The polymeric stream is rapidly heated, and the resulting thermodynamic instability (solubility change) creates sites of nucleation, while the system is maintained under pressure preventing significant growth of cells. The material then is injected into a mold cavity where pressure is reduced and cells are allowed to grow.

International patent publication no. WO 98/08667 (Burnham et al.) provides methods and systems for producing microcellular material, and microcellular articles. In one method of Burnham et al., a fluid, single phase solution of a precursor of foamed polymeric material and a blowing agent is continuously nucleated by dividing the stream into separate portions and separately nucleating each of the separate portions. The divided streams can be recombined into a single stream of nucleated, fluid polymeric material. The recombined stream may be shaped into a desired form, for example, by a shaping die. Burnham et al. also describe a die for making advantageously thick microcellular articles, that includes a multiple pathway nucleation section. Other methods describe the fabrication of very thin microcellular products, as well. In particular, a method for continuously extruding microcellular material onto a wire, resulting in very thin essentially closed cell microcellular insulating coating secured to the wire, is provided. In some of the methods, pressure drop rate is an important feature and techniques to control this and other parameters are described.

Polymeric extrusion blow molding is a known process in which a molten polymeric material is extruded from an extruder die as a parison (an essentially cylindrical polymeric sleeve). The parison is placed in a mold and, typically while still warm enough to be soft and moldable, is subjected to significant gas pressure internal of the cylinder and expanded against the mold. Many common articles such as beverage bottles, motor oil bottles, pharmaceutical packaging, cosmetic packaging, and the like are manufactured using this technique.

In many cases, a parison is extruded so as to have differing thickness along its length. Thicker portions may correspond to locations where the article needs to be reinforced to a relatively greater extent, or to provide for expansion in some regions to a greater extent than in other regions (in the blow-molding formation of, for example, a plastic detergent bottle), while maintaining an essentially constant thickness in the molded article.

U.S. Patent No. 4,444,702 (Thomas, et al.) describes a system for producing tubular extruded parisons of thermoplastic material, the wall thickness of the extruded parison being varied during extrusion.

U.S. Patent No. 3,939,236 (Hahn) describes a technique involving extruding a cellular polymeric tubular parison, then blow molding the parison.

U.S. Patent No. 3,225,127 (Scott) describes a process involving extruding molten plastic containing a foaming agent through an annular orifice to form a foamed parison, then placing the parison in a blow mold cavity and expanding the parison within the mold.

U.S. Patent No. 4,874,649 (Daubenbüchel, et al.) states that major difficulties exist in extrusion blow molding of foam articles in which a preform that has already been foamed is expanded. Daubenbüchel, et al. state that foamed material of a preform that is still in a thermoplastic condition has regions that exhibit different strength and expandability values over the length and periphery of the preform, with the result that weak points are formed under the effect of internal pressure within the preform, and that in many circumstances these weak points cause the wall of the preform or the molded article produced therefrom to tear open, giving rise to wastage. Daubenbüchel, et al. purportedly solve this problem by co-extruding a multi-layer thermoplastic preform in which at least one layer is non-foamable. Using a non-foamable layer purportedly allows the preform to be expanded, after the material has been foamed, without giving rise to the danger of forming weak points or holes through the wall of the article. When the layer of non-foamable material is arranged on the outside of the article, an article is produced having a smooth exterior surface. Daubenbüchel, et al. also describe blow-molding expansion of the preforms at a pressure on the order of 1 bar, or less than around 0.5 bar, which they characterize as markedly lower than in the case of conventional extrusion blowing process, to avoid bubbles or pores in the foamed material from being compressed.

Conventional foam processes, in some cases, incorporate nucleating agents, some of which are inorganic solid particles, into the polymer melt during processing. Such agents can be of a variety of compositions, such as talc and calcium carbonate. In particular, nucleating agents are incorporated into the polymer melt typically at levels less than 1% by weight of polymeric melt to lower the energy for cell nucleation. The dispersion of nucleating agents within the polymer mixture is often times critical in forming a uniform cell structure. In some cases, higher levels are not used because of the agglomeration of the particles which can lead

to non-uniform cell structures having anomalous large cells. The following U.S. Patents describe the use of nucleating agents in foam processes.

U.S. Patent No. 3,491,032 (Skochdopole et al.; January 20, 1970) describes a process for making cellular polymer materials. In a process of Skochdopole, finally divided solid materials such as calcium silicate, zinc stearate, magnesium stearate and the like can advantageously be incorporated with the polymer or gel prior to expanding the same. Such finely divided materials aid in controlling the size of the cells, and are employed in amounts of from about 0.01% to about 2.0% by weight of the polymer.

U.S. Patent No. 5,116,881 (Park et al.; May 26, 1992) describes polypropylene foam sheets and a process for their manufacture. In a process of Park, a nucleating agent is used to create sites for bubble initiation. It is preferred that the nucleating agent have a particle size in the range of 0.3 to 5.0 microns and that its concentration be less than one part per hundred parts polymer by weight. Concentrations of nucleating agents greater than five parts per hundred parts polymer by weight leads to agglomeration, or insufficient dispersion of nucleating substance so that the diameter of the cell size becomes greater.

Fillers in polymeric foams are typically added in amounts of at least 20% by weight polymeric material, and in many cases greater than 30% by weight. In international patent publication no. WO 98/08667 described above, Burnham describes examples of microcellular material that include filler levels in an amount of at least 10% by weight polymeric material, other examples include filler levels in an amount of at least about 25% by weight polymeric material, other examples include filler levels in an amount of at least about 35% by weight polymeric material, and still other examples include filler levels of at least about 50% by weight polymeric material.

High-density polyethylene (HDPE) has traditionally been a difficult material to process as a foam. This, in part, arises from the low melt strength of HDPE. Processes that employ chemical blowing agents have been developed to produce foams from high-density polyethylene. Additionally, HDPE foams have been produced by batch processes (see, for example, U.S. Patent No. 5,158,986. However, the applicants are unaware of extruded or foam-molded foams from HDPE produced without the use of chemical blowing agents or without the addition of greater than 20% additive like low density polyethylene (LDPE) or linear low density polyethylene (LLDPE).

In addition, in general, extrusion of microcellular material can be technically

complicated because a balance of pressure drop rate, temperature, blowing agent content, and die shape and design can affect properties and appearance of an extruded microcellular article.

While processes for the extrusion blow molding of foamed polymeric material are known, a need exists for simplified processes for production of extruded blow-molded products having good physical qualities. Additionally, though nucleating agents have been used in low weight percentages in the production of foams and fillers have been used in high weight percentages in the production of conventional foams and microcellular foams, foam processes typically have not employed a midlevel amount of nucleating agent. It is an object of the invention, therefore, to provide extrusion blow-molded foam articles of good physical properties, and techniques for producing these articles. It is another object to provide relatively thin-walled extruded, blow-molded foam articles and techniques for producing these articles that involve controlling foam uniformity and density. It is another object of the invention to provide nucleating agents in polymeric foam material at levels that maximize advantageous results. It is yet another object of the invention to provide non-batch-process HDPE foams of high quality.

Summary of the Invention

The present invention provides a series of articles, systems, devices, and methods associated with polymeric foam, blow-molded articles, foams including nucleating agents, and non-batch HDPE foams. Many of the articles, systems, devices, and methods can be used in conjunction with each other.

In one aspect, the invention provides an article. In one embodiment, an article is provided comprising a blow-molded, foam, microcellular, polymeric article.

In another embodiment, the invention provides an extruded, microcellular parison suitable for blow-molding.

In another aspect, the invention provides systems. One system includes extrusion apparatus having an extruder with an inlet designed to receive a precursor of polymeric microcellular material, constructed and arranged to provide a single-phase, non-nucleated solution of polymeric material and a blowing agent. A blow-molding forming die is fluidly connected to the extruder and has an outlet designed to release a parison of microcellular material. The apparatus includes an enclosed passageway connecting the extruder inlet to a blow molding forming die outlet. The passageway includes a nucleating pathway having

length and cross-sectional dimensions selected to create, in a single-phase, non-nucleated solution of blowing agent and fluid polymeric material, a pressure drop at a rate sufficient to cause microcellular nucleation. A blow mold also is included, and is positionable to receive a parison of microcellular material from the die outlet.

In another embodiment, a system is provided that includes an extruder constructed and arranged to provide a polymeric foam precursor material, and an accumulator associated with the extruder. The accumulator is able to receive polymeric foam precursor material from the extruder and to accumulate a charge of polymeric foam precursor material. Blow molding apparatus also is provided in this system, and is positionable to receive a product of the accumulator, via a forming die. The blow molding apparatus is constructed and arranged to blow mold the material to form a blow-molded foam polymeric article.

In another embodiment a system that includes a combination of some aspects described above is provided. The system includes an extruder having an inlet to receive a precursor of polymeric microcellular material that is constructed and arranged to provide a single-phase non-nucleated solution of polymeric material and a blowing agent. An accumulator is provided and is positionable to receive polymeric foam precursor material from the extruder and to accumulate a charge of the polymeric foam precursor material. A blow-molding forming die is fluidly connected to the accumulator and has an outlet designed to release a parison of microcellular material. A blow mold is positionable to receive a parison of microcellular material from the die outlet and is constructed and arranged to form a blow-molded, foam, microcellular, polymeric article. The apparatus includes an enclosed passageway connecting the extruder inlet with the die outlet, the passageway including a nucleating pathway defined above.

In another aspect, the invention provides a forming die device. The die includes an inlet at an upstream end constructed and arranged to receive a single-phase, homogeneous solution of polymeric material and a blowing agent that is a gas under ambient conditions, and an outlet at a downstream end thereof, defining a die gap, for releasing foamed polymeric material. A fluid pathway connects the inlet with the outlet and includes a nucleating pathway. The die is constructed and arranged to vary the width of the die gap during extrusion while maintaining a constant nucleating pathway gap.

In another aspect, the invention provides a series of methods. In one embodiment, a method is provided that involves extruding polymeric foam extrudate from an extruder die

while varying the thickness of the extrudate.

In another embodiment, a method is provided that includes providing an extrudate polymeric microcellular foam parison and subjecting the parison to blow molding conditions.

In another embodiment, a method is provided that involves extruding a polymeric foam extrudate from an extruder die in a machine direction while varying the temperature of the extrudate exiting the die. An extrudate thereby is formed having a first portion and a second portion spaced from the first portion in the machine direction, the first portion and second portion differing in material density by a factor of at least 1.1.

In another embodiment, a method is provided that involves subjecting a foam polymeric parison to relatively severe blow-molding conditions while maintaining relatively constant density in the parison. A parison can be subjected to blow-molding conditions of at least about 15 psi thereby expanding at least a portion of the parison at least about 50% in circumference. This takes place while the density of the parison remains relatively constant, in particular the density is increased by no more than about 20%.

Another aspect of the invention involves a process for producing a foam, and a microcellular foam, that includes a midlevel amount of nucleating agent. The microcellular foams can be produced in typical polymer processing techniques such as extrusion, injection molding and blow molding. The foams exhibit excellent mechanical properties and can be formed over a broad range of density into a number of different foam articles.

In this aspect of the invention a method is provided of forming a microcellular article. The method includes conveying polymeric material in a downstream direction in a polymer processing apparatus. The polymeric material includes a semicrystalline polymer, and a nucleating agent in an amount between about 2.5 and about 7 weight percent by weight of the polymeric material. The method further includes forming a microcellular article from the polymeric material.

In certain embodiments of this aspect, the process further includes the step of introducing blowing agent into the polymeric material in the polymer processing apparatus in an amount less than 1.5 weight percent by weight of the polymeric material, to form a solution of blowing agent and polymeric material. In certain embodiments, the process further includes the step of inducing a pressure drop rate of less than 1.0 GPa/s in the solution of blowing agent and polymeric material.

In another aspect, the invention provides a microcellular polymeric article including a

matrix of polymeric material including a plurality of cells having an average cell size of less than about 60 microns. The polymeric material includes a semicrystalline polymer and a nucleating agent in an amount between about 2.5 and about 7 weight percent, by weight of the polymeric material.

Among other advantages, certain embodiments of the invention provide a viable process for producing the microcellular foam articles with low blowing agent percentages and/or low pressure drop rates due to the presence of the nucleating agent. Using low blowing agent percentages results in cost savings associated with the blowing agent and also may improve the surface quality of resulting microcellular articles. Employing low pressure drop rates as opposed to high pressure drop rates generally permits greater freedom in die design and, in some cases, allows for the production of foam articles at thicker cross-sectional dimensions.

Different embodiments of the invention also provide processes for the production of a variety of different types of foam articles, for example, extruded articles, blow molded articles, and injection molded articles, from a variety of different semi-crystalline polymeric materials.

Furthermore, the invention provides a microcellular foam that includes nucleating agents at high enough levels, between 2.5% and 7% by weight polymeric material, to effectively function as filler that replaces solid plastic in a non-negligible amount. Replacing solid plastic with these agents can result in material cost savings and mechanical property enhancement.

In addition, in many cases the microcellular foams have uniform and fine cell structures despite the presence of the inorganic particles. The interconnectivity between cells is minimal, in many embodiments. Also, the foams can be produced over a range of densities. In particular, relatively high density foams can be produced having properties comparable to the solid, unfoamed plastic.

In another aspect, the invention provides a foam article that includes a matrix of polymeric material including a plurality of cells. The polymeric material consists essentially of high-density polyethylene and is essentially free of residual chemical blowing agent and reaction-by-products of chemical blowing agent. The article has a shape essentially identical to that of a continuous extrudate or the interior of a mold.

In another aspect, the invention provides a method of forming a foam article. The

method includes the step of conveying polymeric material in a downstream direction in a polymer processing apparatus. The polymeric material consists essentially of high-density polyethylene. The method further includes the steps of introducing a physical blowing agent into the polymeric material in the polymer processing apparatus and forming a foam article from the polymeric material.

The invention also provides a method of producing HDPE foams with a physical blowing agent. In many foam processes, it is advantageous to use physical blowing agents instead of chemical blowing agents. For instance, physical blowing agents are often less expensive than chemical blowing agents. In addition, physical blowing agents do not introduce reactive materials into the article that may interfere with effective recycling of the articles. Finally, processes using physical blowing agents are more efficient and reliable, not having to depend on a chemical reaction to determine the amount of blowing agent released during the foaming process.

Furthermore, the invention provides an HDPE foam containing low amounts of, or essentially free of residual chemical blowing agent and reaction-by-products of chemical blowing agents. In some cases, the presence of residual chemical blowing agents and reaction-by-products of chemical blowing agents in a material is detrimental and can restrict its use. The HDPE foams, in accordance to the invention, are advantageously suitable for applications, such as food packaging, and are more easily recycled without adverse effects.

In another aspect the invention provides specific die designs useful for making high quality, microcellular, polymeric extrudate. The die can be provided as part of a system of extrusion. The die includes a nucleating pathway that decreases in cross-section in a downstream direction with an included angle of greater than 4°.

In another embodiment a forming die according to this aspect of the invention includes a nucleating pathway constructed such that when a single-phase, non-nucleated solution of polymeric material and blowing agent is introduced into the die and conveyed through the die at a flow rate of about 100 pounds per hour, nucleation of the solution occurs to form a nucleated polymeric stream that is released from the die in a period of time of no more than about 0.002 second after nucleation.

In another embodiment of this aspect of the invention a method is provided that involves introducing a single-phase, non-nucleated solution of polymeric material and blowing agent into a polymer forming die. Within the die the solution is nucleated to form a

nucleated polymeric stream. The stream is released as a polymeric microcellular extrudate from an outlet of the die in a period of time of no more than about 0.002 second after nucleation.

Other advantages, novel features, and objects of the invention will become apparent from the following detailed description of the invention when considered in conjunction with the accompanying drawings, which are schematic and which are not intended to be drawn to scale. In the figures, each identical or nearly identical component that is illustrated in various figures is represented by a single numeral. For purposes of clarity, not every component is labeled in every figure, nor is every component of each embodiment of the invention shown where illustration is not necessary to allow those of ordinary skill in the art to understand the invention.

Brief Description of the Drawings

Fig. 1 is a schematic illustration of an injection blow molding system of the invention;

Fig. 2 is a schematic illustration of a die for the injection blow molding system of Fig. 1;

Fig. 3 is a schematic illustration of the die of Fig. 2, adjusted to extrude relatively thicker microcellular material;

Fig. 4 is a schematic illustration of another embodiment of the die of Fig. 2;

Fig. 5 illustrates a multihole blowing agent feed orifice arrangement and extrusion screw;

Fig. 6 illustrates an alternative embodiment of an extrusion system for producing microcellular foam;

Fig. 7 is a photocopy of an SEM micrograph of a cross-section of the material produced in Example 4;

Fig. 8 is a photocopy of an SEM micrograph of a cross-section of the material produced in Example 5;

Fig. 9 is a photocopy of an SEM micrograph of a cross-section of the material produced in Example 6;

Fig. 10 is a photocopy of an SEM micrograph of a cross-section of the material produced in Example 7;

Fig. 11 is a photocopy of an SEM micrograph of a cross-section of the material

produced in Example 8;

Fig. 12 is a photocopy of an SEM micrograph of a cross-section of the material produced in Example 9; and

Fig. 13 is a photocopy of an SEM micrograph of a cross-section of the material produced in Example 10.

Detailed Description of the Invention

Commonly owned, co-pending international patent publication no. WO 98/08667 published March 5, 1998, commonly owned, co-pending international patent publication no.WO 98/31521 published July 23, 1998, commonly owned, co-pending U.S. provisional patent application serial no. 60/068,173 entitled "Microcellular Extrusion/Blow Molding Process and Article Made Thereby", filed December 19, 1997, commonly owned, co-pending U.S. provisional patent application serial no. 60/107,754 entitled "Microcellular Extrusion/Blow Molding Process and Article Made Thereby", filed November 10, 1998, all are incorporated by reference.

The various embodiments and aspects of the invention will be better understood from the following definitions. As used herein, "nucleation" defines a process by which a homogeneous, single-phase solution of polymeric material, in which is dissolved molecules of a species that is a gas under ambient conditions, undergoes formations of clusters of molecules of the species that define "nucleation sites", from which cells will grow. That is, "nucleation" means a change from a homogeneous, single-phase solution to a mixture in which sites of aggregation of at least several molecules of blowing agent are formed. Nucleation defines that transitory state when gas, in solution in a polymer melt, comes out of solution to form a suspension of bubbles within the polymer melt. Generally this transition state is forced to occur by changing the solubility of the polymer melt from a state of sufficient solubility to contain a certain quantity of gas in solution to a state of insufficient solubility to contain that same quantity of gas in solution. Nucleation can be effected by subjecting the homogeneous, single-phase solution to rapid thermodynamic instability, such as rapid temperature change, rapid pressure drop, or both. Rapid pressure drop can be created using a nucleating pathway, defined below. Rapid temperature change can be created using a heated portion of an extruder, a hot glycerine bath, or the like.

A "nucleating agent" is a dispersed agent, such as talc or other filler particles, added to

a polymer and able to promote formation of nucleation sites from a single-phase, homogeneous solution. Thus "nucleation sites" do not define locations, within a polymer, at which nucleating agent particles reside. A "filler" is a dispersed particle added to replace solid plastic.

"Nucleated" refers to a state of a fluid polymeric material that had contained a single-phase, homogeneous solution including a dissolved species that is a gas under ambient conditions, following an event (typically thermodynamic instability) leading to the formation of nucleation sites. "Non-nucleated" refers to a state defined by a homogeneous, single-phase solution of polymeric material and dissolved species that is a gas under ambient conditions, absent nucleation sites. A "non-nucleated" material can include nucleating agent such as talc.

A "polymeric material/blowing agent mixture" can be a single-phase, non-nucleated solution of at least the two, a nucleated solution of at least the two, or a mixture in which blowing agent cells have grown.

"Essentially closed-cell" microcellular material is meant to define material that, at a thickness of about 200 microns, contains no connected cell pathway through the material.

"Nucleating pathway" is meant to define a pathway that forms part of microcellular polymeric foam extrusion apparatus and in which, under conditions in which the apparatus is designed to operate (typically at pressures of from about 1500 to about 30,000 psi upstream of the nucleator and at flow rates of greater than about 10 pounds polymeric material per hour), the pressure of a single-phase solution of polymeric material admixed with blowing agent in the system drops below the saturation pressure for the particular blowing agent concentration at a rate or rates facilitating rapid nucleation. A nucleating pathway defines, optionally with other nucleating pathways, a nucleation or nucleating region of a device of the invention.

"Reinforcing agent", as used herein, refers to auxiliary, essentially solid material constructed and arranged to add dimensional stability, or strength or toughness, to material. Such agents are typified by fibrous material as described in U.S. Patent Nos. 4,643,940 and 4,426,470. "Reinforcing agent" does not, by definition, necessarily include filler or other additives that are not constructed and arranged to add dimensional stability. Those of ordinary skill in the art can test an additive to determine whether it is a reinforcing agent in connection with a particular material.

In preferred embodiments, microcellular material of the invention is produced having average cell size of less than about 60 microns or 50 microns. In some embodiments

particularly small cell size is desired, and in these embodiments material of the invention has average cell size of less than about 30 microns, more preferably less than about 20 microns, more preferably less than about 10 microns, and more preferably still less than about 5 microns. The microcellular material preferably has a maximum cell size of about 100 microns or preferably less than about 75 microns. In embodiments where particularly small cell size is desired, the material can have maximum cell size of about 50 microns, more preferably about 35 microns, and more preferably still about 25 microns. A set of embodiments includes all combinations of these noted average cell sizes and maximum cell sizes. For example, one embodiment in this set of embodiments includes microcellular material having an average cell size of less than about 30 microns with a maximum cell size of about 50 microns, and as another example an average cell size of less than about 30 microns with a maximum cell size of about 35 microns, etc. That is, microcellular material designed for a variety of purposes can be produced having a particular combination of average cell size and a maximum cell size preferable for that purpose. Control of cell size is described in greater detail below.

In one aspect, the present invention provides systems and techniques for extrusion blow molding of microcellular and other polymeric foam material, and microcellular parisons suitable for blow molding, that is, parisons that can be subjected to blow molding conditions as described herein to produce articles as described herein. In particular, the invention provides techniques for production of lightweight, strong microcellular articles that can be blow molded to form microcellular polymeric blow molded parisons that can have particularly thin walls. It is a feature that articles of the invention can be produced that are free of a non-foam, structurally-supporting material positioned to support the foam article. This means that where a plastic bottle, for example, is produced, the walls of the bottle can be composed entirely of the microcellular foam material, without an auxiliary layer of solid supporting plastic.

The invention involves the discovery that microcellular material overcomes problems associated with certain prior art techniques, in particular, problems in blow molding associated with the inherent relative weakness of conventional thermoplastic polymer foams. Microcellular material of the present invention surprisingly can be blow molded at relatively high pressures, in particular a pressure of at least about 1.5 bar internal of a microcellular parison, in some cases at least about 2.5 bar, in some cases at least about 5 bar, in some cases at least about 7 bar, and in some cases still at least about 10 bar internal of the parison. This

strength is achieved even in microcellular parisons including at least some portion having a void volume of at least about 5%, preferably at least about 10%, preferably at least about 20%, more preferably at least about 30%, and in some cases as high as at least about 50% or at least about 70%, even without reinforcing agents, and while forming final microcellular foam products having thin walls, in particular at thicknesses described below. In this regard, microcellular blow molded articles are produced having less than about 10% reinforcing agent by weight, more preferably less than about 5% reinforcing agent, more preferably still less than about 2%, and in particularly preferred embodiments the articles of the invention are essentially free of reinforcing agent.

It also has been surprisingly found that microcellular foam parisons of the invention can be blow molded under relatively severe conditions without a significant change in density in the material. Specifically, a foam parison of the invention can be subjected to blow-molding conditions of at least about 15 psi, or 18 or 20 psi or other pressures described herein, thereby expanding at least a portion of the parison by at least about 50% and forming a blow-molded article while maintaining a relatively constant density in the material, specifically, increasing the density of the parison by no more than about 20% in going from the parison to the blow-molded article. In preferred embodiments at least a portion of the parison is expanded by at least about 75%, 100%, 150%, 200%, 300%, or at least about 400% in circumference while the density of the parison is increased by no more than about 15%, 10%, 8%, 5% or preferably 3%.

Without wishing to be bound by any theory, it is believed that the microcellular material of the invention is particularly suitable to the relatively harsh conditions of blow molding because the cells of the invention, of very small size, are not easily crushed or otherwise distorted. It is believed that as the size of the cells decreases, the force required to cause collapse of an individual cell significantly increases.

The die of the invention can be shaped and controlled to produce blow-molded articles that have sections with differing thicknesses and sections with differing void volume. For example, a blow-molded, square-shaped bottle can be formed that has sections defining its corners that are thicker than remaining portions of the bottle wall. The thicker portions can, e.g., have a void volume of 50% and the thinner wall a void volume of about 10%. These thicker regions are reinforcing regions. Reinforcing regions also can be provided at corners that define the boundary between the bottle wall and the bottle bottom, or the bottle wall and

bottle top, or vertical corners, or all of these.

It is a feature of the present invention that strong, thin-walled articles can be produced that are opaque without the use of opacifiers. This is because polymeric foam diffracts light, thus it is essentially opaque and has a white appearance. It is a feature of the invention that microcellular foams are more opaque, and uniformly so, than conventional foams. This is a significant advantage in connection with articles constructed and arranged to contain material that is subject to destruction upon exposure to light, such as food containers. Such material can involve food consumable by animals such as humans, containing vitamins that can be destroyed upon exposure to light. In a preferred embodiment the invention provides microcellular blow-molded milk containers, as it is particularly known that vitamins in milk can be lost upon exposure to fluorescent light. Milk bottle container producers are reported to introduce pigments into milk bottles, typically high density polyethylene milk bottles, so as to protect milk from vitamin-destroying light. However, pigmented polymeric material is less amenable to recycling. The present invention provides, in one embodiment, thin, opaque, blow-molded containers that include less than about 1% by weight auxiliary opacifer, preferably less than about 0.05% by weight auxiliary opacifer, and more preferably still material that is essentially free of auxiliary opacifer. "Auxiliary opacifer", in the present invention, is meant to define pigments, dies, or other species that are designed specifically to absorb light, or talc or other materials that can block or diffract light. Those of ordinary skill in the art can test whether an additive is an opacifer. Microcellular blow molded articles of the invention have the appearance of essentially solid, white, plastic articles, which offers significant commercial appeal.

Material of the present invention is, in preferred embodiments, blown with a physical blowing agent such as an atmospheric gas, in particular carbon dioxide, and thus in this embodiment does not require the added expense and complication of formulating a polymeric precursor to include a chemical blowing agent, that is, a species that will react under extrusion conditions to form a blowing agent. Since foams blown with chemical blowing agents inherently include a residual, unreacted chemical blowing agent after a final foam product has been produced, as well as chemical by-products of the reaction that forms a blowing agent, material of the present invention in this set of embodiments includes residual chemical blowing agent, or reaction by-product of chemical blowing agent, in an amount less than that inherently found in articles blown with 0.1% by weight chemical blowing agent or more,

preferably in an amount less than that inherently found in articles blown with 0.05% by weight chemical blowing agent or more. In particularly preferred embodiments, the material is characterized by being essentially free of residual chemical blowing agent or free of reaction by-products of chemical blowing agent. That is, they include less residual chemical blowing agent or by-product that is inherently found in articles blown with any chemical blowing agent.

One advantage of embodiments in which a chemical blowing agent is not used or used in very minute quantities is that recyclability of product is maximized. Use of a chemical blowing agent typically reduces the attractiveness of a polymer to recycling since residual chemical blowing agent and blowing agent by-products contribute to non-uniformity in the recyclable material pool.

As mentioned, the present invention provides for blow-molding of relatively high void-volume articles having thin walls, in some embodiments. In particular, the articles of the invention have a wall thickness less than about 0.100 inch, more preferably less than about 0.075 inch, more preferably less than about 0.050 inch, more preferably still less than about 0.040 inch, and in some cases as low as 0.025 inch, 0.015 inch, or 0.010 inch or less.

In one set of embodiments the invention represents the solution of problems associated with the extrusion of polymeric foam parisons having a variety of conventional cell sizes, in addition to microcellular parisons, for blow molding, that must be varied in thickness or density. In this set of embodiments the invention provides techniques for producing a polymeric foam parison, which can be microcellular, that varies in thickness, and/or varies in material density, along its length. Specifically, the preferred extruded polymeric foam parison has a first portion and a second portion spaced from the first portion in the parison machine direction, the first portion and the second portion differing in thickness by a factor of at least about 1.1. In other embodiments the first and second portions differ in thickness by factors of at least about 1.3, 1.5, or 1.7. The first and second portions can differ in material density by a factor of at least about 1.1, and in other embodiments by a factor of at least about 1.3, 1.5, or 1.7. The parison is suitable for blow-molding to produce an article including a first portion expanded to a first extent and a second portion expanded at least 1.5 times the first extent, the first and second portions, after expansion, differing in each of thickness, material density, and cellular density by no more than about 5%. In this technique, a polymeric extrusion die is provided that is constructed and arranged to subject a flowing, single-phase solution of molten

polymeric material and physical blowing agent that is a gas under atmospheric conditions to a consistent pressure drop rate while varying the annular gap at the die exit to facilitate production of a microcellular polymeric foam parison that varies in thickness along its length. The die is effective in this task by providing the physical separation of nucleation from shaping. That is, nucleation occurs in a consistent manner (an essentially constant pressure drop rate) upstream of shaping, thus differential shaping does not effect cell size, cell density, or material density, substantially. Alternatively or in addition, the parison can be subjected, during extrusion, to differing temperature resulting in differential material density as a function of position in the machine direction.

Referring now to Fig. 1, an extrusion blow molding system 6 of the present invention is illustrated schematically. System 6 includes an extruder 30 fluidly connected to a blow-molding extrusion die 10, and a blow mold 12 positionable to receive a parison of microcellular material from the outlet of the die. Blow mold 12 can be a conventional mold, and is not described in detail here except to say that foam parisons of the invention can be blow molded without heating, thus mold 12 need not include auxiliary heating systems. That is, a foam parison of the invention, preferably a microcellular foam parison, can be extruded and then blow molded in mold 12 without applying heat to the parison in the mold. Extruder 30 includes a barrel 39 having a first, upstream end 37, and a second, downstream end 36 connected to die 10. Mounted for rotation within barrel 39 is a screw 38 operably connected, at its upstream end, to a drive motor 40. Although not shown in detail, screw 38 includes feed, transition, gas injection, mixing, and metering sections. A polymer processing space 35 is defined between the screw and the barrel in which polymeric material is urged downstream.

Positioned along barrel 39, optionally, are temperature control units 42. Control units 42 can be electrical heaters, can include passageways for temperature control fluid, and or the like. Units 42 can be used to heat a stream of pelletized or fluid polymeric material within the barrel to facilitate melting, and/or to cool the stream to control viscosity and, in some cases, blowing agent solubility. The temperature control units can operate differently at different locations along the barrel, that is, to heat at one or more locations, and to cool at one or more different locations. Any number of temperature control units can be provided. Temperature control units also can be supplied to heat a die to which the extrusion system is connected.

Barrel 39 is constructed and arranged to receive a precursor of polymeric material. As used herein, "precursor of polymeric material" is meant to include all materials that are fluid,

or can form a fluid and that subsequently can harden to form a microcellular polymeric article. Typically, the precursor is defined by thermoplastic polymer pellets, but can include other species. For example, in one embodiment the precursor can be defined by species that will react to form microcellular polymeric material as described, under a variety of conditions. The invention is meant to embrace production of microcellular material from any combination of species that together can react to form a polymer, typically monomers or low-molecular-weight polymeric precursors which are mixed and foamed as the reaction takes place. Preferably, a thermoplastic polymer or combination of thermoplastic polymers is selected from among amorphous, semicrystalline, and crystalline material including polyaromatics such as styrenic polymers including polystyrene, polyolefins such as polyethylene and polypropylene, fluoropolymers, crosslinkable polyolefins, and polyamides.

Typically, introduction of the pre-polymeric precursor utilizes a standard hopper 44 for containing pelletized polymeric material to be fed into the extruder barrel through orifice 46, although a precursor can be a fluid prepolymeric material injected through an orifice and polymerized within the barrel via, for example, auxiliary polymerization agents. In connection with the present invention, it is important only that a fluid stream of polymeric material be established in the system. From hopper 44 pellets are received into the feed section of screw and conveyed in a downstream direction in polymer processing space 35 as the screw rotates. Heat from extrusion barrel 39 and shear forces arising from the rotating screw, act to soften the pellets within the transition section. Typically, by the end of the first mixing section the softened pellets have been gelated, that is, welded together to form a uniform fluid stream substantially free of air pockets.

Immediately downstream of the downstream end 48 of screw 38 in Fig. 1 is a region 50 which can be a temperature adjustment and control region, auxiliary mixing region, auxiliary pumping region, or the like. For example, region 50 can include temperature control units to adjust the temperature of a fluid polymeric stream prior to nucleation, as described below. Region 50 can include instead, or in addition, additional, standard mixing units (not shown), or a flow-control unit such as a gear pump (not shown). In another embodiment, region 50 can be replaced by a second screw in tandem which can include a cooling region.

Microcellular material production according to the present invention preferably uses a physical blowing agent, that is, an agent that is a gas under ambient conditions. However, chemical blowing agents can be used and can be formulated with polymeric pellets introduced

into hopper 44. Suitable chemical blowing agents include those typically relatively low molecular weight organic compounds that decompose at a critical temperature or another condition achievable in extrusion and release a gas or gases such as nitrogen, carbon dioxide, or carbon monoxide. Examples include azo compounds such as azo dicarbonamide.

In embodiments in which a physical blowing agent is used, along barrel 39 of extruder 30 is a port 54 in fluid communication with a source 56 of a physical blowing agent. Any of a wide variety of physical blowing agents known to those of ordinary skill in the art such as hydrocarbons, chlorofluorocarbons, nitrogen, carbon dioxide, and the like, and mixtures, can be used in connection with the invention and, according to a preferred embodiment, source 56 provides carbon dioxide, or nitrogen, or a mixture thereof as a blowing agent. Supercritical fluid blowing agents are preferred, particularly supercritical carbon dioxide and/or nitrogen. In particularly preferred embodiments solely carbon dioxide or nitrogen, repsectively, is used. Where a supercritical fluid blowing agent is used, a single-phase solution of polymeric material and blowing agent is created having viscosity reduced to the extent that extrusion and blow-molding is readily accomplished even with material of melt flow no more than about 0.2 g/10 min. A pressure and metering device 58 typically is provided between blowing agent source 56 and port 54. Device 58 can be used to meter the blowing agent so as to control the amount of the blowing agent in the polymeric stream within the extruder to maintain a level of blowing agent at a particular level. In a preferred embodiment, device 58 meters the mass flow rate of the blowing agent. The blowing agent is generally less than about 15% by weight of polymeric stream and blowing agent. According to one set of embodiments, blowing agent is added in an amount of between about 1% and 15% by weight, preferably between about 3% and 12% by weight, more preferably between about 5% and 10% by weight, more preferably still between about 7% and 9% by weight, based on the weight of the polymeric stream and blowing agent. In other embodiments very low levels of blowing agents are suitable, for example less than about 3%, less than about 2%, or less than about 1.5% by weight blowing agent. These blowing agent levels can find use, in some instances, where a nucleating agent is used.

The systems and methods of the invention allow formation of microcellular material without use of a nucleating agent. But such agents can be used and, in some embodiments, polymeric material including a nucleating agent such as talc is blow molded. It has been discovered, in accordance with the invention, that polymeric material including a filler such as

talc adds to the ability to make thicker parts at higher pressures, and improves cell structure. Although not wishing to be bound by any theory, it is believed that use of a nucleating agent such as talc reduces the amount of blowing agent such as carbon dioxide or nitrogen needed, thus the material will have a higher viscosity (since carbon dioxide or nitrogen reduces viscosity in such material). Therefore, the size of nucleating pathways and exit gaps can be increased while maintaining similar extrusion conditions otherwise, resulting in thicker parts. In addition, a nucleating agent such as talc adds to the viscosity of molten polymeric material inherently, allowing formation of thicker parts. In this embodiment of the invention nucleating agent such as talc can be added in an amount of at least 1%, or 2%, or 4%, 5.5% or even 7% or more. In one embodiment talc is added within a range of from 2.5% to 7%, which gives specific advantages described more fully below.

In some embodiments carbon dioxide is used in combination with other blowing agents such as nitrogen, and in other embodiments carbon dioxide is used alone with no other blowing agents present. In other embodiments carbon dioxide can be used with other blowing agents so long as the other blowing agents do not materially alter the blowing process. When nitrogen is used, similarly it can be used alone, in combination with another blowing agent that adds to or changes the blowing agent properties, or in combination with another agent that does not materially change the blowing process.

The pressure and metering device can be connected to a controller (not shown) that also is connected to drive motor 40 and/or a drive mechanism of a gear pump (not shown) to control metering of blowing agent in relationship to flow of polymeric material to very precisely control the weight percent blowing agent in the fluid polymeric mixture.

The described arrangement facilitates a method that is practiced according to several embodiments of the invention, in combination with blow molding. The method involves introducing, into fluid polymeric material flowing at a rate of at least about 10 lbs/hr., a blowing agent that is a gas under ambient conditions and, in a period of less than about 1 minute, creating a single-phase solution of the blowing agent fluid in the polymer. The blowing agent fluid is present in the solution in an amount of at least about 2.0% by weight based on the weight of the solution in this arrangement. In preferred embodiments, the rate of flow of the fluid polymeric material is at least about 40 or 60 lbs/hr., more preferably at least about 80 lbs/hr., and in a particularly preferred embodiment greater than at least about 100 lbs/hr., and the blowing agent fluid is added and a single-phase solution formed within one

minute with blowing agent present in the solution in an amount of at least about 3% by weight, more preferably at least about 5% by weight, more preferably at least about 7%, and more preferably still at least about 10% (although, as mentioned, in a another set of preferred embodiments lower levels of blowing agent are used). In these arrangements, at least about 2.4 lbs per hour blowing agent, preferably $CO_2$, is introduced into the fluid stream and admixed therein to form a single-phase solution. The rate of introduction of blowing agent is matched with the rate of flow of polymer to achieve the optimum blowing agent concentration.

Although port 54 can be located at any of a variety of locations along the barrel, according to a preferred embodiment it is located just upstream from a mixing section 60 of the screw and at a location 62 of the screw where the screw includes unbroken flights.

Referring now to Fig. 2, a die 10 of the invention is illustrated schematically in cross-section and includes an annular outer die body 26 surrounding an inner die body 24 which, in turn, surrounds an inner mandrel 31. The die includes a fluid inlet 14, constructed and arranged to receive a single-phase, homogeneous solution of polymeric fluid and blowing agent that is a gas under ambient conditions, defined by the junction of the outlet of extruder 30 and a sidewall entrance of the die. Fluid inlet 14 communicates with an annular ring-like void 18 between the outer die body and inner die body that is in fluid communication with an annular channel 20 defined as a gap between the inner die body 24 and outer die body 26. Channel 20 fluidly communicates with an annular section 28 of the die that is of greater width than that of channel 20. Section 28 communicates, in turn, with a narrowed annular portion 29 defining a nucleating pathway having a gap 22 that is of a dimension that creates a rapid pressure drop facilitating nucleation of the single-phase solution fed to the die. At its downstream end nucleating pathway 29 fluidly communicates with an exit 32 of the die having a gap 34. Nucleating pathway 29, as illustrated, has an essentially constant cross-sectional dimension along its length. The pathway can change in cross-sectional dimension along its length as well, for example decreasing in cross-sectional dimension in a downstream direction for particularly high pressure drop rates, as disclosed in U.S. patent application serial no. 08/777,709 and International patent application serial no. PCT/US97/15088, incorporated by reference. Where the pathway decreases in cross-sectional dimension in a downstream direction, a single-phase solution can be continuously nucleated by experiencing continuously decreasing pressure within successive, continuous portions of the flowing, single-phase

stream at a rate which increases.

Die 10 is constructed such that inner die body 24 can move axially relative to outer die body 26. Inner die body 24 can move from an upstream position as illustrated in Fig. 2 to a downstream position in which it almost fills a region indicated as 25. Thus, when inner die body 24 is positioned in an upstream position as illustrated in Fig. 2, region 25 defines an accumulator.

In operation, a single-phase solution 23 of polymeric material and blowing agent is fed from extruder 30 to the die 10, first into annular ring 18, then through channel 20, accumulator 25 (to the extent that inner die body 24 is positioned upstream) and section 28 of the die as a single-phase, non-nucleated solution, is nucleated through a rapid pressure drop occurring at nucleating pathway 29, and is extruded at exit 32 as a parison suitable for blow molding. When it is desired to use the accumulating feature of die 10, exit 32 can be closed (described below) and non-nucleated, single-phase solution 23 of polymeric material and blowing agent can be fed from extruder 30 into accumulator 25 while inner die body 24 moves in an upstream direction. A load can be applied to inner die body 24 in a downstream direction, during this procedure, to maintain in accumulator 25 an essentially constant pressure that maintains the polymer/blowing agent solution in a non-nucleated, single-phase condition. Then, exit 32 can be opened and inner die body 24 driven in a downstream direction to nucleate and extrude a microcellular parison. This feature allows for an extruder to be run continuously while parison extrusion occurs periodically.

While polymeric material nucleated in nucleating pathway 29 can include nucleating agent in some embodiments, in other embodiments no nucleating agent is used. In either case, the pathway is constructed so as to be able to create sites of nucleation in the absence of nucleating agent whether or not nucleating agent is present. In particular, the nucleating pathway has dimensions creating a desired pressure drop rate through the pathway. In one set of embodiments, the pressure drop rate is relatively high, and a wide range of pressure drop rates are achievable. A pressure drop rate can be created, through the pathway, of at least about 0.1 GPa/sec in molten polymeric material admixed homogeneously with about 6 wt % $CO_2$ passing through the pathway of a rate of about 40 pounds fluid per hour. Preferably, the dimensions create a pressure drop rate through the pathway of at least about 0.3 GPa/sec under these conditions, more preferably at least about 1 GPa/sec, more preferably at least about 3 GPa/sec, more preferably at least about 5 GPa/sec, and more preferably still at least

about 7,10, or 15 GPa/sec. The nucleator is constructed and arranged to subject the flowing stream to a pressure drop at a rate sufficient to create sites of nucleation at a density of at least about $10^7$ or, preferably, $10^8$ sights/$cm^3$. The apparatus is constructed and arranged to continuously nucleate a fluid stream of single-phase solution of polymeric material and flowing agent flowing at a rate of at least 20 lbs/hour, preferably at least about 40 lbs/hour, more preferably at least about 60 lbs/hour, more preferably at least about 80 lbs/hour, and more preferably still at least about 100, 200, or 400 lbs/hour.

Die 10 is constructed such that mandrel 31 can move axially relative to the remainder of the die. This allows for exit 32 to be closed, if desired, by moving mandrel 31 in an upstream direction so as to seal the inner die lip against the outer die lip.

Referring now to Fig. 3, die 10 is illustrated with mandrel 31 extended distally such that exit 32 includes a gap 33 that is significantly widened relative to gap 34 as illustrated in Fig. 2. This can be effected while maintaining a constant gap 22 in nucleating section 29 of the die. Thus, nucleation of the single-phase polymer/blowing agent fluid stream takes place at a constant pressure drop rate while the die can produce a parison that varies in thickness. A controller actuates the mandrel such that exit 32 widens and narrows to produce a parison having varied thickness as desired. A microcellular product varying in thickness in a machine direction while having essentially uniform microcellular structure as is produced using die 10 are described above.

The invention also allows co-extrusion of foam or microcellular foam articles. Although a die for extrusion of such an article with two or more layers is not illustrated, it can be clearly understood with reference to Fig. 2. A multi-layer extrusion die, in one embodiment, includes co-axial, separate, pathways defining nucleating sections that feed together into a single exit 32. That is, the die includes a nucleating section 29 as illustrated in Fig. 2, and an additional nucleating section spaced radially outwardly from nucleating section 29 and fed by a separate section similar to section 28. Simultaneous, separate nucleation of separate layers is followed by joining of the nucleated layers slightly before or at gap 32 where combination of the layers and shaping and ejection of the layers takes place.

According to another aspect of the invention a microcellular polymeric parison is extruded that differs in material density along its length. In this embodiment the parison can differ in thickness along its length, as well. This can be accomplished using the system illustrated in Fig. 4 in which die 10 is provided that is similar to the die of previous figures.

Die 10 need not necessarily include a mandrel that is movable axially during extrusion to produce a parison of varying thickness, but includes an air ring 52 for subjecting the parison, during extrusion, to varying conditions of cooling. The air ring can subject different portions of the parison to different cooling conditions, thus reducing cell growth in certain portions of the parison relative to other portions. In a similar manner, selected sections of the internal surface of the parison can be cooled by passing air through a channel 63 formed in mandrel 31 between an inner mandrel part 61 and an outer mandrel part 64. Internal air cooling can be used alternately or in conjunction with external air cooling via air ring 52. The resulting parison can be blow molded and can be created such that some sections are relatively higher in material density than others. Sections subjected to different cooling immediately post-extrusion experience different cell growth and therefore different density.

The system of Fig. 4 can be used also to produce a blow-molded article having increased density at locations where greater strength is required. For example, in a plastic beverage container including a threaded mouth for receiving a screw-on cap, the threaded mouth might desirably be made of higher material density for added strength than the remainder of the bottle.

It is one feature of the present invention that the microcellular extruded parison of the invention is better able to withstand blowing conditions than many prior art foam parisons. This is because of the greater resistance of smaller cells to the pressure exerted during blowing. Many prior art foams will exhibit cell collapse when exposed to blow molding conditions. However, as cell size decreases, greater pressure is required to cause cell collapse.

In one embodiment of the invention, a microcellular parison is co-extruded with an auxiliary polymeric layer that can be internal of or external of the microcellular parison, or both. The auxiliary material can be foam or non-foam and can be added to create a particular appearance (for example when a colored article is desired, a microcellular foam core can be covered with a colored, co-extruded layer). Also, a co-extruded layer may be added to provide good printability on an article or to provide a particular surface texture. Other characteristics such as chemical compatibility, and the like are contemplated. In some cases, a co-extruded layer may be used, internally or externally of a microcellular parison core, to isolate the core from internal contents of the article, or external environment. This can be useful to increase the use of recycled material in the core. The auxiliary, co-extruded layer, in preferred embodiments, is not necessary for structural support. That is, the microcellular

parison could be blow-molded and would provide adequate structural support on its own, and the co-extruded layer is for purposes of surface modification only. In one embodiment, an auxiliary non-foam, non-structurally-supporting layer is provided adjacent the foam article. This layer can be designed for specific barrier properties (for example, for compatibility with material to be contained in the article, Federal regulation requirements, etc.).

The production of blow-molded microcellular polymeric articles in accordance with the invention is surprising since desirable characteristics for polymers for blow molding are different from those characteristics desired in typical extrusion processes. For blow molding, typically high-molecular-weight, high-viscosity polymers are needed to withstand, successfully, blow molding conditions. In contrast, in standard extrusion it is desirable to use lower-molecular weight, lower-viscosity polymers for high throughput. Thus, extrusion blow molding includes an inherent dichotomy that adds even more complication when foams are used. For controlled foaming, higher-molecular weight, higher-viscosity polymers are favored to prevent uncontrolled foaming resulting in open-celled material.

The present invention provides successful high-throughput microcellular polymeric extrusion blow molding since higher-molecular weight polymers can be used while reducing viscosity via supercritical fluid blowing agent incorporation. Relatively high molecular weight polymers are reduced in viscosity via the supercritical fluid blowing agent for high-throughput extrusion, yet at extrusion and gasification of the blowing agent the high-molecular weight polymer provides the strength needed for well-controlled microcellular foaming. Therefore, as noted above, extrusion and blow molding of foam polymeric material, preferably microcellular foam polymeric material, can be accomplished with material of melt flow ono more than about 0.2 g/10 min, preferably no more than about 0.12 g/10 min, more preferably no more than about 0.1 g/10 min.

In another aspect, the present invention provides a semi-crystalline microcellular foam having a midrange level of nucleating agent. The foam includes between about 2.5 weight percent and about 7 weight percent of these agents. In preferred embodiments, the foam includes between about 3 and about 7 weight percent nucleating agent, and in some embodiments between about 5 weight percent and about 7 weight percent nucleating agent. The level nucleating agent in the present foam is, generally, greater than the levels used as nucleating agents, flame retardents, or pigments in conventional foam processing. These semi-crystalline microcellular foams containing about 2.5-7 weight percent nucleating agent

can be used in connection with any of the blow molding aspects of the invention described above.

The nucleating agents can be any of a variety of materials and in any number of forms, as known in the art. In certain embodiments, the nucleating agents are inorganic solids such as those commonly used in the art, for example talc, calcium carbonate ($CaCO_3$), titanium oxide ($TiO_2$), barium sulfate ($BaSO_4$), and, zinc sulfide ($ZnS$). In certain embodiments, organic solids, such as cellulosic fibers, may also function as nucleating agents. The foams, in some cases, may include more than one type of nucleating agent such that the sum total of all of the nucleating agents is between about 2.5 weight percent and 7 weight percent. In particular, microcellular foams including both talc and titanium oxide have been produced.

Typically, the nucleating agents are particles, though in some cases the nucleating agents may be fibrous or have other forms. The nucleating particles can have a variety of shapes such as spherical, cylindrical, or planar. Generally, the particles have a size in the range of about 0.01 microns to about 10 microns, and more typically between about 0.1 microns and 1.0 microns. In some embodiments, the particles may be surface treated with a surfactant to enhance dispersibility within polymer melt and to prevent particle agglomeration.

In some cases, the nucleating agents, depending on their composition, may also function as pigments, flame retardents or any other typical additive. In the 2.5-7 weight percent range, the agents also function as fillers. That is, the nucleating agents replace solid plastic in a non-negligible amount which, in certain embodiments, leads to cost savings because filler is less expensive than the solid plastic. In certain embodiments, the agents also may enhance the mechanical properties of the microcellular foam. In some cases, the particles may enhance crystallinity.

The present microcellular foam including about 2.5-7 weight percent nucleating agent can be composed, at least in part, of any semi-crystalline polymer. Typical semi-crystalline polymers include, but are not limited to, the following materials: polyethylene terephthalate (PET), polylactic acid, nylon 6, nylon 6/6, polyethylene, polypropylene, syndiotactic polystyrene, and polyacetal. In certain cases, the semi-crystalline polymer may be blended with non-semi-crystalline polymers. The semi-crystalline polymer may also be blended with other semi-crystalline polymers. In preferred cases, the semi-crystalline material is a polyolefin. In some cases, the semi-crystalline material is polypropylene. Polypropylene may

be present as one of multiple polymeric components. In other embodiments, the polymeric material can consist essentially of polypropylene, that is, the polymeric material includes no other polymeric components other than polypropylene, but may include other additives, as described further below, in addition to the nucleating agent. In another set of preferred embodiments the semi-crystalline material is high-density polyethylene. High-density polyethylene, in some cases, is present as one of multiple polymeric components. In preferred cases, the weight percentage of high-density polyethylene is greater than 80% by weight polymeric material. In some preferred cases, the weight percentage of high-density polyethylene is greater than 90% by weight polymeric material. In a particularly preferred case the polymeric material consists essentially of high density polyethylene, that is, the polymeric material includes no other polymer components other than high-density polyethylene, but may include other additives, as described further below, in addition to the nucleating agent.

Optionally, the foam composition may also include other additives, as known in the art, in addition to the nucleating agents. Such additives may be processing aids such as plasticizers (e.g. low-molecular weight organic compounds), lubricants, flow enhancers, and anti-oxidants. In many preferred cases, the polymeric material is essentially free of residual chemical blowing agents and reaction by products because only physical blowing agents are used in the process. In particular, many high-density polyethylene foams are essentially free of residual chemical blowing agents and reaction by-products.

Surprisingly, even though the amount of nucleating agent is greater than 2.5 weight percent, the foams have a relatively uniform and fine cell structure. The nucleating agents have not led to the presence of anomalous large cells in the foams. Foam articles, according to this aspect of the invention, have an average cell size of less than about 60 microns, or other preferred average cell sizes or maximum cell sizes, or combinations, described above.

The cell structure of the microcellular foam, preferably, is a closed cell structure. It is believed that the closed cell structure may, advantageously, contribute to enhancing the mechanical properties of the foam due to the absence of a long interconnected pathway which could act as a site that leads to premature failure of the material.

In accordance with this aspect of the invention, microcellular foams can be produced over a wide range of densities. In many embodiments, the void volume is greater than 10%, in other embodiments greater than 20%, and in still other embodiments greater than 50%. In

another set of embodiments, the microcellular foam has a void volume of less than 50%, and in some embodiments less than 30%. In a particularly preferred embodiment, the microcellular foam has a void volume between about 10% and about 50%. Foams within this preferred void volume range (10% to 50%) exhibit excellent mechanical properties such as tensile strength and tensile modulus, while still having a significant density reduction from the solid plastic.

An unlimited variety of semicrystalline microcellular foam articles are embraced by this aspect of the invention. Articles may be extruded, blow molded, injection molded into an unlimited number of shapes and forms. Extruded sheet can also be thermoformed. The foamed articles, in certain embodiments, are generally thinner than conventional foam articles because the cell sizes in the microcellular foam articles are smaller than the cell sizes in conventional foams. In certain cases, the articles have at least one portion having a thickness of less than 0.1 inches, in other cases less than 0.05 inch, and in other cases less than 0.01 inch. In many cases, the microcellular foam articles have a desirable surface quality because the articles can be produced with low blowing agent percentages, thus limiting the amount of gas that diffuses through the foam surface. As is known in the field of microcellular foam processing, large quantities of gas that diffuse through the surface can lead to surface roughness and imperfections, in some cases.

An extrusion system for the production of microcellular foam having a midlevel amount of nucleating agent can be similar to that illustrated in Fig. 1, with optional replacement of blow mold die 10 and blow mold apparatus 12 with an extrusion die for recovery of extrudate that is not significantly further processed, and/or a mold for injection molding.

As is well known in the art, in some cases, the nucleating agent may be added in a concentrate blend with the semicrystalline polymer in pellet form. That is, nucleating agent particles are dispersed in pellets of semicrystalline polymer in concentrated percentages, for example 40% by weight. The concentrated pellets are blended with suitable amounts of semicrystalline pellets to produce a polymeric material having between 2.5 and 7 weight percent nucleating agent. In this fashion, the percentage of talc in the polymeric material composition can be adjusted by controlling the ratio of concentrate to pure polymer pellets. In other embodiments, also well known to those skilled in the art, nucleating agents in particulate form may be added directly to the polymeric material. Any other techniques well known in

the art may also be employed for incorporating the nucleating agents into the polymer composition in controllable amounts.

Surprisingly, in some embodiments, it has been discovered that the present microcellular semicrystalline foam can be formed using relatively low blowing agent percentages. The presence of the nucleating agent is believed to enhance the driving force for nucleation thus enabling the production of microcellular foam at low blowing agent percentages, for example less than 1.5 percent blowing agent by weight of polymeric stream and blowing agent. In preferred embodiments, the process involves adding less than 1.0 weight percent blowing agent, and in other preferred cases, the process involves adding less than 0.1 percent, by weight of polymeric stream and blowing agent.

Referring now to Fig. 5, a preferred embodiment of the blowing agent port is illustrated in greater detail and, in addition, two ports on opposing top and bottom sides of the barrel are shown. In this preferred embodiment, port 154 is located in the gas injection section of the screw at a region upstream from mixing section 60 of screw 38 (including highly-broken flights) at a distance upstream of the mixing section of no more than about 4 full flights, preferably no more than about 2 full flights, or no more than 1 full flight. Positioned as such, injected blowing agent is very rapidly and evenly mixed into a fluid polymeric stream to promote production of a single-phase solution of the foamed material precursor and the blowing agent.

Port 154, in the preferred embodiment illustrated, is a multi-hole port including a plurality of orifices 164 connecting the blowing agent source with the extruder barrel. As shown, in preferred embodiments a plurality of ports 154 are provided about the extruder barrel at various positions radially and can be in alignment longitudinally with each other. For example, a plurality of ports 154 can be placed at the 12 o'clock, 3 o'clock, 6 o'clock, and 9 o'clock positions about the extruder barrel, each including multiple orifices 164. In this manner, where each orifice 164 is considered a blowing agent orifice, the invention includes extrusion apparatus having at least about 10, preferably at least about 40, more preferably at least about 100, more preferably at least about 300, more preferably at least about 500, and more preferably still at least about 700 blowing agent orifices in fluid communication with the extruder barrel, fluidly connecting the barrel with a source of blowing agent.

Also in preferred embodiments is an arrangement (as shown in Fig. 5) in which the blowing agent orifice or orifices are positioned along the extruder barrel at a location where,

when a preferred screw is mounted in the barrel, the orifice or orifices are adjacent full, unbroken flights 165. In this manner, as the screw rotates, each flight, passes, or "wipes" each orifice periodically. This wiping increases rapid mixing of blowing agent and fluid foamed material precursor by, in one embodiment, essentially rapidly opening and closing each orifice by periodically blocking each orifice, when the flight is large enough relative to the orifice to completely block the orifice when in alignment therewith. The result is a distribution of relatively finely-divided, isolated regions of blowing agent in the fluid polymeric material immediately upon injection and prior to any mixing. In this arrangement, at a standard screw revolution speed of about 30 rpm, each orifice is passed by a flight at a rate of at least about 0.5 passes per second, more preferably at least about 1 pass per second, more preferably at least about 1.5 passes per second, and more preferably still at least about 2 passes per second. In preferred embodiments, orifices 154 are positioned at a distance of from about 15 to about 30 barrel diameters from the beginning of the screw (at upstream end 34).

Referring again to Fig. 1, mixing section 60 of screw 38, following the gas injection section, is constructed to mix the blowing agent and polymer stream to promote formation of a single phase solution of blowing agent and polymer. The mixing section includes unbroken flights which break up the stream to encourage mixing. Downstream the mixing section, a metering section builds pressure in the polymer-blowing agent stream. Where a die is used that released shaped extrudate according to the die shape, the die includes inner passageways having shape and dimensions (die geometry) to control the shape of the extrudate. The die, in this embodiment, can have any of a variety of configurations, as is known in the art, to produce microcellular foam in specific forms, for example, sheets, profiles, or strands. Dies described in international patent publication no. WO 98/08667 incorporated herein by reference can be used. In addition to shaping extrudate released from such a die, the die can also perform the function of nucleating the single-phase solution of polymeric matieral and blowing agent. As described above with respect to Figs. 2-4, as the pressure in the single-phase solution drops as the solution flows through die internal passageways, solubility of the blowing agent in the polymer decreases, which is the driving force for cell nucleation. The extent of pressure drop depends upon the dimensions of the passageway. Specifically, the dimensions that effect pressure dropping include the shape of the passageway, the length of the passageway, and the thickness of the passageway. Under processing conditions, the pressure drop across the die is generally greater than 1,000 psi, preferably greater than 2,000

psi, and more preferably greater than 3,000 psi.

Dies of the invention can be also configured, as known in the art, to provide a pressure drop rate (dP/dt) as the single-phase solution flows across the passageway. Pressure drop rate, which depends upon die geometry and flow rate, also effects the cell nucleation process. Typically, a sufficient pressure drop rate must be induced to achieve appropriate nucleation conditions for microcellular material. The presence of the nucleating agent at an amount between 2.5-7% by weight is believed to lower the pressure drop rate required. In certain cases, it is desirable to use a process that employs low pressure drop rates. Lower pressure drop rates, generally, allow for more freedom in die construction and resulting article dimensions. In certain embodiments, the pressure drop rate in the solution is less than 1.0 GPa/s, in some embodiments less than 0.10 GPa/s, and, in some embodiments less than 0.05 GPa/s. In other embodiments, higher pressure drop rates are utilized, for example, in the production of certain thin products. In some cases, the pressure drop rate is greater than 1.0 GPa/s, in others greater than 5.0 GPa/s, and in others greater than 10.0 GPa/s.

In another embodiment, not illustrated, the pressure drop rate is induced in at least one nucleating pathway prior to or within the die. Such configurations are described in co-pending international patent publication no. WO 98/08667 published March 5, 1997 and incorporated herein by reference.

As a result of elevated temperatures, extrudate that is released from a die is typically soft enough so that the nucleated cells grow. As the extrudate cools in the atmosphere and becomes more solid, cell growth is restricted. In certain embodiments, it is advantageous to provide external cooling means to speed the cooling rate of the extrudate. For example, in these embodiments, cooling may be accomplished by blowing air on the extrudate, contacting the extrudate with a cool surface, or submerging the extrudate in a liquid medium. Other equipment (not illustrated) downstream of the die can be used, as required, for additional shaping of the extrudate into a final form.

Referring to Fig. 6, an alternative extrusion system 170 for producing microcellular foam in accordance with the invention includes a tandem extruder line. The tandem line includes a primary extruder 172 and a secondary extruder 174 arranged in parallel configuration and connected through a transfer pipe 176. As described above, pellets are supplied into the primary extruder through hopper 44. In some embodiments, the secondary extruder includes blowing agent injection port 54, as illustrated. In other embodiments, the

primary extruder includes the blowing agent injection port.

In other embodiments, the systems of Figs. 5 and 6 are modified, as known in the art, to function as injection molding systems. Particularly preferred injection molding systems are described in international patent publication no. WO 98/31521 which is incorporated by reference. Generally, injection molding systems do not include an extrusion die, but rather include a pathway fluidly connected to the polymer processing space through which the polymer and blowing agent solution is injected into the mold.

The invention provides, in another aspect, specific die designs that are useful for making high quality, microcellular, polymeric extrudate. Generally, the die is constructed to provide HDPE sheet or tubes of thin walls. More specifically, the die can be constructed to provide HDPE parisons for blow molding applications. In this aspect the invention involves the discovery that a specific range of taper angles of a converging nucleating microcellular polymeric die provides HDPE extrudate, including parisons for blow molding, that do not strip, or tear in the extrusion process and that include are more uniform in surface appearance.

Specifically, in this aspect a polymer forming die is provided that includes a nucleating pathway that decreases in cross section in a downstream direction with an included angle of greater than 4°. Preferably, the included angle is greater than 6°. In one embodiment the angle is between 4° and 18°, preferably between 4° and 8°. "Included angle", as used herein, means the total angle of downstream-direction taper. For example, in an annular die in which the exterior wall tapers inwardly at 4° and the interior wall, defined by the exterior of a mandral, has no taper, the included angle is 4°. In an identical situation in which the mandral tapers outwardly at 2°, the included angle would be 6°.

The taper angle of the die of the invention defines a particular time between initiation of nucleation in the die and release from the die exit, and this timing defines another aspect of the invention. Specifically, a method is provided that involves releasing a nucleated stream as a polymeric microcellular extrudate from an outlet of a die in a period of time of no more than about 0.001 second after nucleation, within the die, of a single-phase, non-nucleated solution of polymeric material and blowing agent.

The invention involves the discovery of a problem in the extrusion of HDPE sheet or thin profiles. It has been discovered that under microcellular extrusion conditions where a parallel type nucleator is used extrudate, especially HDPE parisons for blow molding, tend to strip during the extrusion process. Normal microcellular conditions, in these cases, are

described byusing a nucleator that creates the necessary pressure drop rate required to form small cells and using typical conditions of blowing agent content and melt temperature. Stripping is defined as a condition in which extrudate, upon exiting a die, tears at one or more locations along the length of the die. This tearing interferes with the formation of a uniform extrudate, resulting in the formation of long, thin strips of microcellular material. Each strip is the result of the complete severing of the extrusion at each of the locations of the observed tear. This phenomena has been observed in HDPE and has not been observed in other materials tested, including polypropylene, and is thought to be caused by the highly linear nature of the HDPE molecule and the ease with which the molecules slip past one another under low force.

The problem of HDPE stripping is alleviated according to the invention by using a tapered die (a die that decreases in cross section in a downstream direction) of a very specific included taper angle. The taper angle minimum is dictated by the ability to overcome this stripping problem and still provide a minimum pressure drop rate necessary to make microcellular material. Angles of less than about 4 degrees do not generate the required pressure drop rate for microcellular material at commercially reasonable rates and at acceptable total pressure drops. At angles of 6 degrees and greater, a sufficient pressure drop rate can be achieved and the stripping problem is completely overcome. A maximum angle exists that still makes an acceptable structure. A angles greater than about 18 degrees, the microcellular structure tends to blow itself apart, resulting in very poor cell structures for blow molding purposes.

The result of stripping prevention was unexpected. Although not wishing to be bound by any theory, it is believed that the tapered die works because there is a critical location where the beginning of nucleation occurs. This location is defined by the point at which the pressure in the polymer/blowing agent melt (single-phase, non-nucleated solution of polymeric material and blowing agent) is reduced below the saturation pressure of the blowing agent in the polymer. If this location is too far away from the exit of the die (measured not by distance, but by residence time or the time it takes the nucleated polymer to travel from the initial nucleation point to the end of the die where release of polymer extrudate occurs), then stripping occurs when shear forces on the growing cell acts for too long a time resulting in tearing of the melt. If the location is closer to the exit than this critical point, then the foaming melt does not undergo enough shear to cause tearing. In parallel nucleators,

where pressure drop rate is constant throughout the nucleation land length and pressure decreases linearly throughout the nucleator, the point of nucleation occurs too far from the exit of the die. In tapered dies, where pressure drop rate increases throughout the nucleator and pressure decreases mostly near the die exit, the point of nucleation is very close to the die exit. The result is that shearing acts over only a short period of time and no stripping occurs. The proposed theory compels selection of a specific taper angle that both eliminates stripping and allows for the standard conditions of pressure drop rate to be met.

Microcellular material produced according to the invention can be used in blow molding processes, for example in production of blow molded bottles. Additionally, sheets of microcellular polymeric material, including microcellular HDPE, either in flat die or annular die designs, can be made. Material made with systems of the invention also can be thermoformed. In one embodiment, the die of the invention provides the ability to change parison thickness by movement of the inner pin of the die with respect to the outer die body.

In addition to die angle and gap opening, the specific dies can also be described by the pressure and pressure drop rate needed to make defect free, microcellular parisons.

In one set of embodiments, foam articles that consist essentially of high-density polyethylene (HDPE), are formed without the use of a chemical blowing agent. High-density polyethylene , as used herein, refers to polyethylene having a density of greater than 0.94 g/cm$^3$. Low-density polyethylene refers to polyethylene having a density of less than 0.94 g/cm$^3$. In such articles, HDPE is essentially the only polymeric component but the article includes any variety of additives as known in the art, such as a nucleating agent. Such articles thus, are essentially free of residual chemical blowing agent and reaction-by-products of chemical blowing agent. In some embodiments of this set, the HDPE foam articles are microcellular foams having average cell sizes of less than 100 microns. In certain cases, the microcellular foams have average cell sizes of less than 50 microns, and in some cases less than 20 microns. In other embodiments of this set, the HDPE foams are conventional foams having average cell sizes of greater than 100 microns. The articles can be produced over a broad range of densities. In certain embodiments, the void volume is greater than 10%, in some embodiments greater than 20%, in other embodiments greater than 50%. In a preferred set of embodiments, the article has a void volume of between 10% and 40%.

The process of forming the high-density polyethylene foam articles employs the use of a physical blowing agent, as described above. In this set of embodiments, HDPE foam

articles are produced that have a shape essentially identical to that of a continuous extrudate, or a shape essentially identical to that of the interior of a mold. That is, the foam articles are produced by continuous extrusion, or molding, including blow-molding. Although some cell growth can occur following extrusion, or following molding, the articles retain shapes that are closely reminiscent of the extrudate or of the mold. This is to distinguish articles that are extruded or molded in an un-foamed state, and then later foamed by, for example, saturation with blowing agent and expansion, as occurs in typical prior art batch processes.

The function and advantage of these and other embodiments of the present invention will be more fully understood from the examples below. The following examples are intended to illustrate the benefits of the present invention, but do not exemplify the full scope of the invention.

Example 1 - System for Blow Molding

A tandem extrusion line including a 2 ½ mm 32:1 L/D single screw primary extruder (Akron Extruders, Canal Fulton, OH) and a 3 36:1 L/D single screw secondary extruder (Akron Extruders, Canal Fulton, OH) was arranged in a right angle configuration. A volumetric feeder capable of suppling up to 30 lb/hr was mounted in the feed throat of the primary extruder such that compounded talc additive pellets could be metered into the primary extruder. An injection system for the injection of $CO_2$ into the secondary was placed at approximately 8 diameters from the inlet to the secondary. The injection system included 4 equally spaced circumferential, radially- positioned ports, each port including 176 orifices, each orifice of 0.02 inch diameter, for a total of 704 orifices. The injection system included an air actuated control valve to precisely meter a mass flow rate of blowing agent at rates from 0.2 to 12 lbs/hr at pressures up to 5500 psi.

The screw of the primary extruder was specially designed screw to provide feeding, melting and mixing of the polymer/talc concentrate followed by a mixing section for the dispersion of blowing agent in the polymer. The outlet of this primary extruder was connected to the inlet of the secondary extruder using a transfer pipe of about 24 inches in length.

The secondary extruder was equipped with specially designed deep channel, multi-flighted screw design to cool the polymer and maintain the pressure profile of the microcellular material precursor, between injection of blowing agent and entrance to a gear

pump (LCI Corporation, Charlotte, NC) attached to the exit of the secondary. The gear pump was equipped with an integral jacket for heating/cooling and sized to operate at a maximum output of 250 lb/hr with a rated maximum discharge pressure of 10,000 psi.

The system was equipped, at exit from the gear pump, with a die adapter and a vertically mounted blow molding die (Magic Company, Monza, Italy). The die adapter was equipped with taps for measurement of melt temperature and pressure just prior to entry into the die. The blow molding head included a conventional spider type flow distribution channel and a die adjustment system that allowed movement of the die relative to the fixed position tip providing a variety of exit gaps depending on the chosen tooling.

A two-piece bottle mold was mounted in a fixture for the hand molding of sample bottles as a secondary process. One half of the mold was mounted stationary in the fixture with the other half mounted on linear slides. Quick acting clamps mounted on the stationery half of the mold provided the mechanism to clap the mold shut. A short section of steel tubing sharpened to a point attached to a 0 - 50 psi regulator using a length of flexible hose provided the blow system. Mold diameter varied from approximately 1 inch in the cap area to 2 to 3 inches in the body of the bottle. The overall cavity length of the bottle mold was approximately 10 inches.

Example 2: Parison and bottle formation

High density polyethylene (Equistar LR 5403) pellets were introduced into the main hopper of extrusion line described in example 1 and a precompounded talc concentrate (50% talc in a HDPE base) was introduced in the additive feeder hopper. The tooling attached to the blow molding head included a die with a 0.663 inch exit diameter and 6.2° taper angle and a tip of 0.633 inch exit diameter and 2° taper angle. The combination of this tip and die provides an 8.2° included convergence angle.

The extruder and gear pump rpm were adjusted to provide an output of approximately 210 lb/hr at speeds of approximately 78 rpm on the primary, 32 rpm on the secondary and 50 rpm of the gear pump. Secondary barrel temperatures were set to maintain a melt temperature of approximately 315° F at entrance to the die. The additive feeder was set to provide an output of approximately 11 lb/hr resulting in a 2.7 % by polymer weight talc in the material. $CO_2$ blowing agent was injected at a nominal rate of 3.3 lb/hr resulting in a 1.6% by polymer weight blowing agent in the material.

The above conditions produced a parison that was 0.045 inch thick by approximately 1.3 inches in diameter at a density of 0.74 gm/cc. Based on a nominal solid material density of 0.95 gm/cc, the achieved density reduction is 23 %.

Sample bottles were produced in the following manner: A parison of approximately 16 inches in length was extruded, manually removed from the extruder and immediately positioned in the mold. The mold halves were quickly closed and clamped. With the air regulator set to 20 psi, the sharpened tube was then used to pierce the parison at the top of the mold and introduce the air into the ID of the parison now closed at end of the mold.

The above conditions produced a bottle of 0.015 inch thick by approximately 2.5 inches in diameter at a density of 0.70 gm/cc.

Example 3: Parison and bottle formation

High density polyethylene (Equistar LR 5403) pellets were introduced into the main hopper of an extrusion line described in example 1 and a precompounded talc concentrate (50% talc in a HDPE base) was introduced in the additive feeder hopper. The tooling attached to the blow molding head included a die with a 0.675 exit diameter and 4.0° taper angle and a tip of 0.633 exit diameter and 2° taper angle. The combination of this tip and die provideed a 6.0° included convergence angle.

The extruder and gear pump rpm were adjusted to provide an output of approximately 180 lb/hr at speeds of approximately 66 rpm on the primary, 30 rpm on the secondary and 40 rpm of the gear pump. Secondary barrel temperatures were set to maintain a melt temperature of approximately 310 °F at entrance to the die. The additive feeder was set to provide an output of approximately 18 lb/hr resulting in a 5.3 % by polymer weight talc in the material. $N_2$ blowing agent was injected at a nominal rate of 0.6 lb/hr resulting in a 0.33% by polymer weight blowing agent in the material.

The above conditions produced a parison that was 0.080 inch thick by approximately 1.2 inches in diameter at a density of 0.69 gm/cc. Based on a nominal solid material density of 0.95 gm/cc, the achieved density reduction is 29 %.

Sample bottles were produced in the following manner: A parison of approximately 16 inches in length was extruded, manually removed from the extruder and immediately positioned in the mold. The mold halves were quickly closed and clamped. With the air regulator set to 40 psi, the sharpened tube was then used to pierce the parison at the top of the

mold and introduce the air into the ID of the parison now closed at end of the mold.

The above conditions produced a bottle of 0.037 inch thick by approximately 2.0 inches in diameter at a density of 0.79 gm/cc.

Example 4. Extrusion of Microcellular Polypropylene Material Without Filler

A tandem extrusion line (Akron Extruders, Canal Fulton, OH) was arranged including a 2.5 inch, 32/1 L/D primary extruder and a 3.0 inch, 34/1 L/D secondary extruder. An injection system for injection of $CO_2$ into the primary was placed at a distance of approximately 20 diameters from the feed section. The injection system included 4 equally-spaced circumferentially, radially-positioned ports, each port including 176 orifices, each orifice of 0.02 inch diameter, for a total of 704 orifices.

The primary extruder was equipped with a two-stage screw including conventional first-stage feed, transition, and metering sections, followed by a multi-flighted (four flights) mixing section for blowing agent dispersion. The screw was designed for high-pressure injection of blowing agent with minimized pressure drop between the first-stage metering section and point of blowing agent injection. The mixing section included 4 flights unbroken at the injection ports so that the orifices were wiped (opened and closed) by the flights. At a screw speed of 80 RPM each orifice was wiped by a flight at a frequency of 5.3 wipes per second. The mixing section and injection system allowed for very rapid establishment of a single-phase solution of blowing agent and polymeric material.

The injection system included air-actuated control valve to precisely meter a mass flow rate of blowing agent at rates from 0.2 to 12 lbs/hr at pressures up to 5500 psi.

The secondary extruder was equipped with a deep channel, three-flighted cooling screw with broken flights, which provided the ability to maintain a pressure profile of microcellular material precursor, between injection of blowing agent and entrance to the point of nucleation (the die, in this case) varying by no more than about 1500 psi, and in most cases considerably less.

The system included instrumentation allowing measurement of pressure and temperature of the melt stream at least six locations throughout the tandem system between a location just prior to the blowing agent injection ports to the point of entry into the die to precisely monitor material conditions. Along the screw, melt temperature was measured with infrared equipment to avoid disruption of the melt stream.

Polypropylene pellets were gravity-fed from a hopper into the extrusion system. The grade used was a standard homopolymer resin, Montell's 6823, having a nominal melt flow index of 0.5 g/ 10 min. The polymeric material was essentially free of nucleating agent. Primary screw speed was 90 RPM, giving a total output of approximately 84 lbs/hr of material. Secondary screw speed was 5 RPM. Barrel temperatures of the secondary extruder were set to maintain a melt temperature of 386 deg. F measured at the end of the secondary extruder. $CO_2$ blowing agent was injected at a rate of 4.0 lbs/hr resulting in 4.8% blowing agent in the melt. A die adapter at the discharge of the secondary extruder was connected to a flat sheet T-type die having a die exit of 4.5 inches width and gap of 0.034 inch. A separate nucleator of constantly decreasing gap to an exit dimension of 0.015 inch was positioned within 0.5 inches of the die exit. The die had both melt and pressure indicators. Pressure profile between the injection ports and the inlet of the die was maintained between 2120 and 3490 psi.

Fig. 7 is a photocopy of an SEM image of the cross section of the sheet showing a uniform dispersion of cells having an average diameter of about 25 microns. The sheet had an approximate thickness of 0.033 inch (0.83 mm). The density of the microcellular foam was approximately 0.63 $g/cm^3$ (39 $lbs/ft^3$).

Example 5. Extrusion of Microcellular Polypropylene Sheet Without Filler

The same extrusion system, die, and polypropylene grade as described above in Example 4 was used for this example. The polymeric material was essentially free of nucleating agent. Primary screw speed was 75 RPM, giving a total output of approximately 60 lbs/hr of material. Secondary screw speed was 20 RPM. Barrel temperatures of the secondary extruder were set to maintain a melt temperature of 358 deg. F measured at the end of the secondary extruder. $CO_2$ blowing agent was injected at a rate of 2.5 lbs/hr resulting in 4.2% blowing agent in the melt. Pressure profile between the injection ports and the inlet of the die was maintained between 2180 psi and 3650 psi.

The sheet was taken up using a standard three roll stack, maintained at a temperature of 100 deg. F using circulating oil. The take up speed was about 30 ft/min, to give a final sheet thickness of approximately 0.036 inch (0.93 mm). Fig. 8 is a photocopy of an SEM image of the cross section of the sheet, showing a non-uniform, generally non-microcellular structure. The average cell size was about 65 microns, with maximum size of 120 microns

diameter. Material density was measured to be 0.79 g/cm$^3$ (49.3 lbs/ft$^3$).

The larger average cell size of the sheet produced in Example 5 compared to the sheet produced in Example 4 is due, in large part, to the lower blowing agent concentration used in Example 5 without the use of a nucleating agent.

Example 6. Extrusion of Microcellular Polypropylene Sheet Having Talc Filler

Using the same polypropylene material and extrusion system as described in Example 4, polypropylene pellets were gravity-fed from a hopper into the extrusion system. Primary screw speed was 48 RPM, giving a total output of approximately 100 lbs/hr of material. Secondary screw speed was 16 RPM. An auger type feeder was used to feed a talc/PP pellet concentrate (EP5140 A1 from Spartech Polycom) into the hopper. The screw speed on the auger was set to deliver 12.5 lb/hr of talc concentrate into the hopper. This rate corresponded to 12.5% by weight based on the total material output. Since this concentrate was 40% by weight of talc, the resultant formulation contained about 5% talc. Barrel temperatures of the secondary extruder were set to maintain a melt temperature of 424 deg. F measured at the end of the secondary extruder. $CO_2$ blowing agent was injected at a rate of 0.5 lbs/hr resulting in 0.5% blowing agent in the melt. Pressure profile between the injection ports and the inlet of the die was maintained between 1580 psi and 1900 psi. The die placed at the end of the secondary extruder was a t-type flat die having an opening of 11 inches in width by 0.030 inch gap. The die lips were parallel, having a 0.5 inch final land length. The pressure drop rate across the die lips was 0.07 GPa/s.

Using the same three roll stack maintained at 100°F, the sheet was taken up at 11.4 ft/min, resulting in a sheet thickness of 0.038 inch (0.97 mm). Fig. 9 is a photocopy of an SEM image of the cross section of the sheet, showing fairly uniform, primarily closed cells of an average of about 50 microns diameter. The resultant sheet density was 0.71 g/cc (44.3 lbs/ft$^3$).

Example 6 illustrates the production of microcellular polypropylene, including a mid-level range of talc as a nucleating agent, using a relatively low gas percentage and a relatively low pressure drop rate.

Example 7. Extrusion of Microcellular Polypropylene Sheet Having Talc and Titanium Dioxide Fillers

The system identical to that described in Example 6 was used, except that a titanium dioxide/PP concentrate was hand mixed with the talc concentrate in a ratio of four parts talc concentrate to one part titanium dioxide ($TiO_2$) concentrate. Since the titanium dioxide concentrate also had about 40% by weight of $TiO_2$, this filler consisted of approximately 80% talc and 20% $TiO_2$. Primary screw speed was 48 RPM, giving a total output of approximately 100 lbs/hr of material. The blend of concentrate pellets was fed by the auger feeder at a rate of 12.5 lb/hr, resulting in a final formulation containing 5% nucleating agent in the polypropylene matrix. Barrel temperatures of the secondary extruder were set to maintain a melt temperature of 424° F measured at the end of the secondary extruder. $CO_2$ blowing agent was injected at a rate of 0.6 lbs/hr resulting in 0.6% blowing agent in the melt. Pressure profile between the injection ports and the inlet of the die was maintained between 1550 psi and 1900 psi. The die placed at the end of the secondary extruder was identical in all respects to that described in Example 6. The pressure drop rate across the die lips was about 0.07 GPa/s.

Using the same three roll stack, a take up speed of 11.7 ft/min resulted in a sheet thickness of 0.040 inch (1.0 mm) and had a density of 0.73 g/cc (45.6 lbs/ft$^3$). Fig. 10 is a photocopy of an SEM image of the cross section of the sheet, showing fairly uniform, primarily closed cells of an average of about 40 microns diameter.

Example 7 illustrates the production of microcellular polypropylene, including talc and $TiO_2$ as nucleating agents.

Example 8. Microcellular Polypropylene 5% Talc Filled Tubular Product

An NRM (Pawcatuck, CT) 2.5 inch 44/1 L/D long single extrusion line was equipped with an injection system for injection of $CO_2$ placed at a distance of approximately 25 diameters from the feed section. The injection system included 4 equally-spaced circumferentially, radially-positioned ports, each port including 417 orifices, each orifice of 0.02 inch diameter, for a total of 1668 orifices.

The extruder was equipped with a two-stage screw including conventional first-stage feed, barrier flight transition, and metering sections, followed by a multi-flighted (six flights) mixing section for blowing agent dispersion. The screw was designed for high-pressure injection of blowing agent with minimized pressure drop between the first-stage metering section and point of blowing agent injection. The second stage of the screw included a mixing

section having 6 flights unbroken at the injection ports so that the orifices were wiped (opened and closed) by the flights. At a screw speed of 80 RPM each orifice was wiped by a flight at a frequency of 8 wipes per second. The mixing section and injection system allowed for very rapid establishment of a single-phase solution of blowing agent and polymeric material. The injection system included an air-actuated control valve to precisely meter a mass flow rate of blowing agent at rates from 0.2 to 50 lbs/hr at pressures up to 5500 psi.

The second stage of the screw was also equipped with a deep channel, three-flighted cooling section with broken flights, which provided the ability to cool the polymer melt stream.

The system included, at the end of the extruder, a die adapter and a cylindrical annular die with a gap of 0.34 inch, inner diameter of 0.4 inch, and land length of 2 inches. The die adapter was equipped with taps for measurement of melt temperature and pressure just prior to entry into the die.

The system included instrumentation allowing measurement of pressure and temperature of the melt stream at least 7 locations throughout the system between a location just prior to the blowing agent injection ports to the point of entry into the die to precisely monitor material conditions. Along the screw, melt temperature was measured with infrared equipment to avoid disruption of the melt stream.

A standard homopolymer resin, Solvay's HB 1301, having a nominal melt flow index of 5g/10 min., was used as the base resin. Talc concentrate consisting of pellets having 40 percent by weight of talc dispersed in a homopolymer polypropylene matrix (Montell Astryn 65F4-4) were blended with the HB 1301 using a loss-in-weight type blending system to produce a mixture containing 5% by weight of talc (12.5% talc concentrate). This mixture was then gravity fed from a hopper into the extrusion system. Primary screw speed was 50 RPM, giving a total output of approximately 54 lbs/hr of material. Barrel temperatures were set to maintain a melt temperature of 422 deg. F measured at the end of the extruder. $CO_2$ blowing agent was injected at a rate of 0.3 lbs/hr resulting in 0.55% blowing agent in the melt. A die adapter was attached to the discharge of the extruder, connecting to a cylindrical annular die having a gap of 0.025 inches with an outer diameter of 0.18 inches and a land length of 0.15 inches. Pressure profile between the injection ports and the inlet of the die was maintained between 2430 and 3540 psi. The pressure drop rate across the die was 11.2 GPa/s.

Fig. 11 is a photocopy of an SEM image of the cross section of the extrudate, showing generally spherical cells approximately 50 microns in diameter dispersed throughout the cross section of the tube wall. Wall thickness of the product was approximately 0.008 inch (0.21 mm). Product outer diameter was about 0.26 inch (6.60 mm). Material density was approximately 0.51 g/cm$^3$ (32 lbs/ft$^3$).

Example 8 illustrates the production of thin microcellular polypropylene material using a mid-level amount of talc as a nucleating agent, while utilizing a relatively low amount of blowing agent and a relatively high pressure drop rate.

Example 9. Microcellular Polypropylene 3% Talc Filled Tubular Product

A resin formulation having the same base polypropylene resin grade as Example 8, but with 3% of talc (7.5% talc concentrate) was blended and gravity fed from a hopper into the extrusion system. Primary screw speed was 50 RPM, giving a total output of approximately 54 lbs/hr of material. Barrel temperatures were set to maintain a melt temperature of 427°F measured at the end of the extruder. $CO_2$ blowing agent was injected at a rate of 0.27 lbs/hr resulting in 0.5% blowing agent in the melt. A die as described in Example 8 was attached to the discharge of the extruder. Pressure profile between the injection ports and the inlet of the die was maintained between 2650 and 3900 psi. The pressure drop rate across the die was 12.4 GPa/s.

Fig. 12 is a photocopy of an SEM image of the cross section of the extrudate, showing generally spherical cells approximately 60 microns in diameter dispersed throughout the cross section of the tube wall. Wall thickness of the product was approximately 0.010 inch (0.25 mm). Product outer diameter was about 0.26 inch ( 6.60 mm). Material density was approximately 0.52 g/cm$^3$ (32.4 lbs/ft$^3$).

The material produced in Example 9 has a larger average cell size compared to the material produced in Example 5 due to the presence of less nucleating agent in Example 6.

Example 10. Non-Microcellular Polypropylene 1% Talc Filled Tubular Product

A resin formulation having the same base polypropylene resin grade as Example 8, but with 1% of talc (2.5% talc concentrate) was blended and gravity fed from a hopper into the extrusion system. Primary screw speed was 50 RPM, giving a total output of approximately 54 lbs/hr of material. Barrel temperatures were set to maintain a melt temperature of 428°F

measured at the end of the extruder. $CO_2$ blowing agent was injected at a rate of 0.48 lbs/hr resulting in 0.9% blowing agent in the melt. A die as described in Example 8 was attached to the discharge of the extruder. Pressure profile between the injection ports and the inlet of the die was maintained between 2600 and 3880 psi. The pressure drop rate across the die was about 12.4 GPa/s.

Fig. 13 is a photocopy of an SEM image of the cross section of the extrudate, showing generally spherical cells approximately 150 microns in diameter dispersed throughout the cross section of the tube wall. Wall thickness of the product was approximately 0.018 inch (0.46 mm). Product outer diameter was about 0.26 inch (6.60 mm). Material density was approximately 0.53 g/cm$^3$ (33.1 lbs/ft$^3$).

The material produced in Example 10 with less than a mid-level range of nucleating agent (1% talc) is non-microcellular.

Examples 11-14 High-Density Polyethylene Microcellular Foam

A tandem extrusion line including a 2 1/2 mm 32:1 L/D single screw primary extruder (Akron Extruders, Canal Fulton, OH) and a 3 36:1 L/D single screw secondary extruder (Akron Extruders, Canal Fulton, OH) was arranged in a right angle configuration. A volumetric feeder capable of suppling up to 30 lb/hr was mounted in the feed throat of the primary extruder such that compounded talc additive pellets could be metered into the primary extruder. An injection system for the injection of $CO_2$ into the secondary was placed at approximately 8 diameters from the inlet to the secondary. The injection system included 4 equally spaced circumferential, radially-positioned ports, each port including 176 orifices, each orifice of 0.02 inch diameter, for a total of 704 orifices. The injection system included an air actuated control valve to precisely meter a mass flow rate of blowing agent at rates from 0.2 to 12 lbs/hr at pressures up to 5500 psi.

The screw of the primary extruder was specially designed screw to provide feeding, melting and mixing of the polymer/talc concentrate followed by a mixing section for the dispersion of blowing agent in the polymer. The outlet of this primary extruder was connected to the inlet of the secondary extruder using a transfer pipe of about 24 inches in length.

The secondary extruder was equipped with specially designed deep channel, multi-flighted screw design to cool the polymer and maintain the pressure profile of the

microcellular material precursor, between injection of blowing agent and entrance to a gear pump (LCI Corporation, Charlotte, NC) attached to the exit of the secondary. The gear pump was equipped with an integral jacket for heating/cooling and sized to operate at a maximum output of 250 lb/hr with a rated maximum discharge pressure of 10,000 psi.

The system was equipped, at exit from the gear pump, with a die adapter and a vertically mounted blow molding die (Magic Company, Monza, Italy). The die adapter was equipped with taps for measurement of melt temperature and pressure just prior to entry into the die. The blow molding head included a conventional spider type flow distribution channel and a die adjustment system that allowed movement of the die relative to the fixed position tip providing a variety of exit gaps depending on the chosen tooling.

The above described system was used to produce microcellular HDPE foam samples including a mid-level range of nucleating agent as illustrated in Examples 11-14. The processing conditions and the resulting product characteristics for Examples 11-14 are summarized as follows:

| | Example 11 | Example 12 | Example 13 | Example 14 |
|---|---|---|---|---|
| Talc % | 2.5 | 6.5 | 2.5 | 5.0 |
| Gas Type | $CO_2$ | $CO_2$ | $N_2$ | $N_2$ |
| Gas % | 1.3 | 1.3 | 0.33 | 0.33 |
| Melt Temp (OF) | 311 | 311 | 318 | 318 |
| Output (lb/hr) | 120 | 120 | 217 | 218 |
| dP/dt (GPa/s) | 3.9 | 3.9 | 3.5 | 3.5 |
| Cell Size (μm) | 53 | 29 | 50 | 34 |

Example 15: Microcellular Extrusion System

A tandem extrusion line as described in Example 1 was used with the exception that the secondary extruder was equipped with a deep channel, multi-flighted screw design to cool the polymer and maintain the pressure profile of the microcellular material precursor, between injection of blowing agent and entrance to a die adapter and a vertically mounted blow molding die (Magic Company, Monza, Italy). The die adapter was equipped with taps for measurement of melt temperature and pressure just prior to entry into the die. The blow molding head included a conventional spider type flow distribution channel and a die adjustment system that allowed movement of the die relative to the fixed position tip providing a variety of exit gaps depending on the chosen tooling.

Example 16: Comparative: Stripped Parison formation

High density polyethylene (Equistar LR 5403) pellets were introduced into the main hopper of the extrusion line described in example 15. The tooling attached to the blow molding head included a die with a 1.227 exit diameter and a tip of 1.181 exit diameter and 2° taper angle. This tooling configuration provided an exit gap of 0.023 inches and an included taper angle of 2°.

The extruder was adjusted to provide an output of approximately 140 lb/hr at speeds of approximately 58 rpm on the primary and 25 rpm on the secondary. Secondary barrel temperatures were set to maintain a melt temperature of approximately 305°F at entrance to the die. The volumetric feeder was turned off and no compounded talc was added. $CO_2$ blowing agent was injected at a nominal rate of 4.8 lb/hr resulting in a 3.4% by polymer weight blowing agent in the material.

At the above conditions, the time to die exit from the point of nucleation of the polymer was approximately 0.060 seconds. These conditions produced stripping of the product.

Example 17: Miscellaneous Extrusion System

A system as in Example 15 was employed except that a gear pump (LCI Corporation, Charlotte, NC) was installed between the exit of the secondary and entrance to the head. The gear pump was equipped with an integral jacket for heating/cooling and sized to operate at a maximum output of 250 lb/hr with a rated maximum discharge pressure of 10,000 psi.

Example 18: Parison formation

High density polyethylene (Equistar LR 5403) pellets were introduced into the main hopper of the extrusion line described in example 17. The tooling attached to the blow molding head included a die with a 0.685 exit diameter and a tip of 0.623 exit diameter and 2° taper angle. This tooling configuration provided an exit gap of 0.031 inches and an included taper angle of 4°.

The extruder and gear pump rpm were adjusted to provide an output of approximately 216 lb/hr at speeds of approximately 78 rpm on the primary, 32 rpm on the secondary and 50 rpm on the gear pump. Secondary barrel temperatures were set to maintain a melt temperature of approximately 315°F at entrance to the die. The additive feeder was set to provide an

output of approximately 11 lb/hr resulting in a 2.7% by polymer weight talc in the material. $CO_2$ blowing agent was injected at a nominal rate of 2.2 lb/hr resulting in a 1.0% by polymer weight blowing agent in the material.

At the above conditions, the time to die exit from the point of nucleation of the polymer was approximately 0.002 seconds. These conditions produced good foam with an average cell size of approximately 70 microns without stripping.

Example 19: Parison formation

High density polyethylene (Equistar LR 5403) pellets were introduced into the main hopper of the extrusion line described in example 17. The tooling attached to the blow molding head included a die with a 0.661 exit diameter and of 4° taper angle and a tip of 0.633 exit diameter and 2° taper angle. This tooling configuration provided an exit gap of 0.014 inches and an included taper angle of 6°.

The extruder and gear pump rpm were adjusted to provide an output of approximately 212 lb/hr at speeds of approximately 62 rpm on the primary, 37 rpm on the secondary and 50 rpm on the gear pump. Secondary barrel temperatures were set to maintain a melt temperature of approximately 315°F at entrance to the die. The additive feeder was set to provide an output of approximately 11 lb/hr resulting in a 2.7% by polymer weight talc in the material. $CO_2$ blowing agent was injected at a nominal rate of 3.2 lb/hr resulting in a 1.5% by polymer weight blowing agent in the material.

At the above conditions, the time to die exit from the point of nucleation of the polymer was approximately 0.003 seconds. These conditions produced good foam with an average cell size of approximately 19 microns without stripping.

Those skilled in the art would readily appreciate that all parameters listed herein are meant to be exemplary and that actual parameters will depend upon the specific application for which the methods and apparatus of the present invention are used. It is, therefore, to be understood that the foregoing embodiments are presented by way of example only and that, within the scope of the appended claims and equivalents thereto, the invention may be practiced otherwise than as specifically described.

What is claimed is:

## CLAIMS

1. An article comprising:

a blow molded, foam, microcellular, polymeric article.

2. An article comprising:

an extruded, microcellular parison suitable for blow molding.

3. A polymeric article comprising:

a matrix of polymeric material including a plurality of cells having an average cell size of less than 60 microns,

the polymeric material comprising a semi-crystalline polymer, and a nucleating agent in an amount between about 2.5 and about 7 weight percent, by weight of the polymeric material.

4. A foam article comprising:

a matrix of polymeric material including a plurality of cells, the polymeric material consisting essentially of high-density polyethylene and being essentially free of residual chemical blowing agent and reaction-by-products of chemical blowing agent and having a shape essentially identical to that of a continuous extrudate.

5. A foam article comprising:

a matrix of polymeric material including a plurality of cells, the polymeric material consisting essentially of high-density polyethylene and being essentially free of residual chemical blowing agent and reaction-by-products of chemical blowing agent and having a shape essentially identical to that of the interior of a mold.

6. An article as in any preceding claim, comprising polymeric semi-crystalline material and including nucleating agent in an amount of from about 2.5% to about 7% by weight, by weight of the polymeric material.

7. An article as in any preceding claim, having the appearance of an essentially solid,

white plastic article.

8. An article as in any of claims 1, 3, and 5-7, constructed as a container for food.

9. An article as in any of claims 1, 3, and 5-8, constructed as a container for milk.

10. An article as in any of claims 1, 3, and 5-9, containing food.

11. An article as in any of claims 1, 3, and 5-10, containing milk.

12. A polymeric article as in any preceding claim wherein the polymer matrix comprises between about 5 weight percent and about 7 weight percent of nucleating agent, by weight of the polymeric material.

13. An article as in any preceding claim, including residual chemical blowing agent or reaction by-product of chemical blowing agent in an amount less than that inherently found in articles blown with about 0.1% by weight chemical blowing agent or more.

14. An article as in any preceding claim, including residual chemical blowing agent or reaction by-product of chemical blowing agent in an amount less than that inherently found in articles blown with 0.05% by weight chemical blowing agent or more.

15. An article as in any preceding claim, being essentially free of residual chemical blowing agent or reaction by-product of chemical blowing agent.

16. An article as in any preceding claim, having less than about 0.1 percent by weight auxiliary chromophore, constructed and arranged for containing material subject to destruction upon exposure to light.

17. An article as in any preceding claim, the article being free of a non-foam, structurally-supporting material positioned to support the foam article.

18. An article as in any preceding claim, comprising at least two blow-molded, foam, microcellular polymeric layers.

19. An article as in claim 18, comprising at least two co-extruded layers.

20. An article as in any preceding claim, comprising an auxiliary non-foam, non-structurally-supporting layer adjacent the foam article.

21. An article as in any preceding claim, including at least one portion having a wall thickness of less than about 0.075 inch.

22. An article as in any of claims 1, 3, and 5-21, wherein the article is a container and at least 50% of the container has a wall thickness of less than about 0.075 inch.

23. An article as in claim 22, wherein the article is a container and at least 50% of the container has a wall thickness of less than about 0.050 inch.

24. An article as in claim 22, wherein the article is a container and at least 50% of the container has a wall thickness of less than about 0.040 inch.

25. An article as in any preceding claim, formed of polymeric material having melt flow of no more than about 0.2 g/10 min.

26. An article as in any of claims 1, 3, and 5-25, wherein the article is blow molded and includes a first portion expanded to a first extent and a second portion expanded at least 1.5 times the first extent, the first and second portions differing in each of thickness, material density, and cellular density by no more than about 5%.

27. An article as in any preceding claim, including less than about 10 percent by weight reinforcing agent.

28. An article as in any preceding claim, having an average cell size of less than about 100

microns.

29. An article as in any preceding claim, having an average cell size of less than about 50 microns.

30. An article as in claim 1, having an average cell size of less than about 30 microns.

31. An article as in any preceding claim, having a maximum cell size of about 75 microns.

32. An article as in any preceding claim, having a maximum cell size of about 50 microns.

33. An article as in any preceding claim, having a maximum cell size of about 35 microns.

34. An article as in any preceding claim, having an average cell size of less than about 30 microns and a maximum cell size of about 75 microns.

35. An article as in any preceding claim, having an average cell size of less than about 20 microns and a maximum cell size of about 50 microns.

36. An article as in any preceding claim, having an average cell size of less than about 10 microns and a maximum cell size of about 25 microns.

37. An article as in any predecing claim wherein the cells are primarily closed cells.

38. An article as in any preceding claim, including at least about 1% by weight nucleating agent.

39. An article as in claim 38, wherein the nucleating agent is talc.

40. An article as in any of claims 2-4 and 6-39, formed as an extruded parison suitable for blow molding, having a first portion and a second portion spaced from the first portion in a parison machine direction, the first portion and second portion differing in thickness by a

factor of at least about 1.1.

41. An article as in claim 40, the first portion and second portion differing in thickness by a factor of at least about 1.3.

42. An article as in claim 40, the first portion and second portion differing in thickness by a factor of at least about 1.5.

43. An article as in claim 40, the first portion and second portion differing in thickness by a factor of at least about 1.7.

44. An article as in any of claims 2-4 and 6-43, the parison having a first portion and a second portion spaced from the first portion in a parison machine direction, the first portion and second portion differing in material density by a factor of at least about 1.1.

45. An article as in claim 44, the first portion and second portion differing in material density by a factor of at least about 1.3.

46. An article as in claim 44, the first portion and second portion differing in material density by a factor of at least about 1.5.

47. An article as in claim 44, the first portion and second portion differing in material density by a factor of at least about 1.7.

48. An article as in claim 44, the first portion and second portion differing in material density by a factor of at least about 2.0.

49. An article as in any preceding claim having a void volume of less than 50%, and greater than 10%.

50. An article as in any preceding claim wherein the polymer comprises a polyolefin.

51. An article as in any preceding claim wherein the polymer comprises polypropylene.

52. An article as in any preceding claim wherein the polymer consists essentially of polypropylene.

53. An article as in any preceding claim wherein polymer comprises high-density polyethylene.

54. An article as in any preceding claim wherein the polymer comprises at least 80% high-density polyethylene.

55. An article as in any preceding claim wherein the polymer comprises at least 90% high-density polyethylene.

56. An article as in any preceding claim wherein the polymer consists essentially of high-density polyethylene.

57. An article as in any preceding claim wherein, containing nucleating agent that comprises an inorganic solid.

58. An article as in any preceding claim, containing a nucleating agent that comprises a filler.

59. An article as in any preceding claim, containing a nucleating agent that comprises talc.

60. A system for microcellular blow molding, comprising:

extrusion apparatus including an extruder having an inlet designed to receive a precursor of polymeric microcellular material, constructed and arranged to provide a single-phase, non-nucleated solution of polymeric material and blowing agent, and a blow molding forming die fluidly connected to the extruder and having an outlet designed to release a parison of microcellular material, the apparatus including an enclosed passageway connecting the extruder inlet with the die outlet, the passageway including a nucleating pathway having

length and cross-sectional dimensions selected to create in a single-phase, non-nucleated solution of blowing agent and fluid polymeric material a pressure drop at a rate sufficient to cause microcellular nucleation; and

a blow mold positionable to receive a parison of microcellular material from the die outlet.

61. A system comprising:

an extruder constructed an arranged to extrude polymeric foam precursor material;

an accumulator, associated with the extruder, able to receive polymeric foam precursor material from the extruder and to accumulate a charge of polymeric foam precursor material; and

blow molding apparatus positionable to receive a product of the accumulator, via a forming die, and constructed and arranged to blow mold the material to form a blow molded foam polymeric article.

62. a system for microcellular blow molding, comprising:

an extruder having an inlet designed to receive a precursor of polymeric microcellular material, constructed and arranged to provide a single-phase, non-nucleated solution of polymeric material and blowing agent;

an accumulator positionable to receive polymeric foam precursor material from the extruder and to accumulate a charge of polymeric foam precursor material;

a blow molding forming die fluidly connected to the accumulator and having an outlet designed to release a parison of microcellular material; and

a blow mold positionable to receive a parison of microcellular material from the die outlet and constructed and arranged to form a blow molded, foam, microcellular, polymeric article,

the apparatus including an enclosed passageway connecting the extruder inlet with the die outlet, the passageway including a nucleating pathway having length and cross-sectional dimensions selected to create in a single-phase, non-nucleated solution of blowing agent and fluid polymeric material a pressure drop at a rate sufficient to cause microcellular nucleation.

63. A system for extruding microcellular polymeric material, comprising:

a polymer forming die including an inlet at an upstream end thereof constructed and arranged to receive microcellular extrudate precursor, an outlet at a downstream end thereof, defining a die gap, for releasing foamed polymeric material, and a fluid pathway connecting the inlet with the outlet, the fluid pathway including a nucleating pathway that decreases in cross section in a downstream direction with an included angle of greater than 4°.

64. A system for forming microcellular material:

an extruder constructed and arranged to provide microcellular extrudate precursor comprising a single-phase, non-nucleated solution of polymeric material and blowing agent;

an accumulator positionable to receive microcellular extrudate precursor from the extruder and to accumulate a charge of microcellular extrudate precursor; and

a polymer forming die including an inlet at an upstream end thereof constructed and arranged to receive microcellular extrudate precursor from the extruder, an outlet at a downstream end thereof, defining a die gap, for releasing foamed polymeric material, and a fluid pathway connecting the inlet with the outlet, the fluid pathway including a nucleating pathway that decreases in cross section in a downstream direction with an included angle of greater than 4°.

65. A system for extruding microcellular polymeric material, comprising:

a polymer forming die including an inlet at an upstream end thereof constructed and arranged to receive microcellular extrudate precursor, an outlet at a downstream end thereof, defining a die gap, for releasing foamed polymeric material, and a fluid pathway connecting the inlet with the outlet, the fluid pathway including a nucleating pathway constructed such that when a single-phase, non-nucleated solution of polymeric material and blowing agent is introduced into the die and conveyed through the die at a flow rate of about 100 lbs/hr, nucleation of the solution occurs to form a nucleated polymeric stream that is released from the die in a period of time of no more than about 0.002 second after nucleation.

66. A system as in any of claims 60-65, including a nucleating pathway having length and cross-sectional dimensions such that, when fluid polymer is passed through the pathway at a rate of about 40 lbs fluid per hour, a pressure drop rate in the fluid polymer of at least about 0.3 GPa/sec is created.

67. A system as in any of claims 60-66, including an extruder having an inlet and outlet and an enclosed, screw-containing barrel between the inlet with the outlet constructed and arranged to receive a blowing agent that is a gas under ambient conditions and to mix the blowing agent with the precursor to form a single-phase, non-nucleated solution.

68. A system as in any of claims 60-67 including a nucleating pathway constructed and arranged to nucleate microcellular material at a rate of at least about 60 lbs per hour.

69. A system as in claim 68 wherein the nucleating pathway constructed and arranged to nucleate microcellular material at a rate of at least about 100 lbs per hour.

70. A system as in any of claim 68 wherein the nucleating pathway is constructed and arranged to nucleate microcellular material at a rate of at least about 400 lbs per hour.

71. A system as in any of claims 60-70, the die having an exit gap and being constructed and arranged to vary the size of the exit gap, during extrusion, to form an extrudate having a thickness that varies as a function of distance from the exit gap.

72. A system as in any of claims 60-62 and 65-71, the die constructed and arranged to vary the size of the exit gap without changing pressure drop rate to which a polymeric material/blowing agent mixture passing through the die is subjected.

73. A system as in any of claims 60-72 including a nucleating pathway that has a cross sectional dimension that changes along its length.

74. A system as in claim 73, wherein the pathway decreases in cross section in a downstream direction.

75. A system as in any of claims 60-74 including a blow mold that is constructed and arranged to form a blow molded, foam, microcellular, polymeric article.

76. A system as in any of claims 60-75 including a die that includes a nucleating pathway

having length and cross-sectional dimensions selected to create, in a single-phase, non-nucleated solution of blowing agent and fluid polymeric material, a pressure drop at a rate sufficient to cause nucleation.

77. A system as in claim 76, wherein the die includes a nucleating pathway having length and cross-sectional dimensions selected to create, in a single-phase, non-nucleated solution of blowing agent and fluid polymeric material, a pressure drop at a rate sufficient to cause microcellular nucleation.

78. A system as in any of claims 61, 62 and 66-77, further comprising a die positionable to receive a product of the accumulator and to extrude a microcellular polymeric parison, and the blow molding apparatus is constructed and arranged to blow mold the parison to form a blow molded, foam, microcellular, polymeric article.

79 . A system as in any of claims 60-63 and 65-78, the die constructed and arranged to vary the width of the die gap during extrusion while maintaining a constant nucleating pathway gap.

80. A system as in any of claims 63 and 65-79, further comprising an extruder constructed and arranged to prepare microcellular extrudate precursor, positionable to deliver the precursor to the die inlet.

81. A system as in claim 80, wherein the extruder is constructed and arranged to provide a single-phase, non-nucleated solution of polymeric material and blowing agent and to deliver the single-phase solution to the die inlet.

82. A system as in claim 80, wherein the forming die is a blow molding forming die fluidly connectable to the extruder and having an outlet designed to release a parison of microcellular material, the system further comprising a blow mold positionable to receive a parison of microcellular material from the die outlet.

83. A system as in claim 80, the extruder constructed and arranged to receive a blowing

agent that is a gas under ambient conditions and to mix the blowing agent with the precursor to form a single-phase, non-nucleated solution.

84. A system as in claim 83, further comprising an accumulator, associated with the extruder, able to receive polymeric foam precursor material from the extruder and to accumulate a charge of polymeric foam precursor material; and

blow molding apparatus positionable to receive a product of the accumulator, via the forming die, and constructed and arranged to blow mold the material to form a blow molded foam polymeric article.

85. A system as in any of claims 60-84, the die constructed and arranged to extrude a tubular parison of microcellular material.

86. A system as in any of claims 60-84, the die having an exit gap and being constructed and arranged to vary the size of the exit gap, during extrusion, to form an extrudate having a thickness that varies as a function of distance from the exit gap.

87. A system as in any of claims 64-86, wherein the nucleating pathway decreases in cross section in a downstream direction with an included angle of greater than 6°.

88. A system as in claim 87, wherein the nucleating pathway decreases in cross section in a downstream direction with an included angle of greater than 7°.

89. A system as in claim 87, wherein the nucleating pathway decreases in cross section in a downstream direction with an included angle of greater than 8°.

90. A system as in any of claims 64-86, wherein the nucleating pathway decreases in cross section in a downstream direction with an included angle of greater than 4° and less than 18°.

91. A system as in claim 90, wherein the nucleating pathway decreases in cross section in a downstream direction with an included angle of greater than 4° and less than 8°.

92. A system as in claim 65, wherein the nucleating pathway decreases in cross section in a downstream direction with an included angle of greater than 4°.

93. A method comprising:

extruding microcellular polymeric foam extrudate from an extruder die while varying the thickness of the extrudate.

94. A method as in claim 93, comprising providing a single-phase, non-nucleated solution of polymeric material and a blowing agent that is a gas under ambient conditions, nucleating the single-phase solution by subjecting the solution to a high pressure drop rate, and extruding polymeric foam extrudate that is a product of the single-phase solution.

95. A method as in claim 94, comprising extruding a microcellular parison suitable for blow molding.

96. A method as in claim 95, further comprising blow molding the parison to form a microcellular, blow-molded article.

97. A method as in any of claims 93-96, the extrudate or parison having a void volume of at least about 10%.

98. A method as in any of claims 93-97, comprising establishing a stream of a fluid, single-phase non-nucleated solution of a precursor of foamed polymeric material and a blowing agent, continuously nucleating the solution to form a nucleated polymeric fluid, and extruding the polymeric foam extrudate from the nucleated polymeric fluid.

99. A method as in claim 98, the step of continuously nucleating involving creating sites of nucleation of the blowing agent in the stream by subjecting the stream to conditions of solubility change sufficient to create sites of nucleation in the solution in the absence of an auxiliary nucleating agent.

100. A method as in any of claims 93-99, comprising establishing a stream of a fluid,

single-phase non-nucleated solution of a precursor of foamed polymeric material and a supercritical fluid blowing agent.

101. A method as in any of claims 98-100, involving subjecting the stream to a pressure drop at a pressure drop rate sufficient to create sites of nucleation.

102. A method as in claim 101, involving subjecting the stream to a pressure drop at a pressure drop rate sufficient to create sites of nucleation at a density of at least about $10^7$ sites/cm$^3$.

103. A method as in claim 101, involving subjecting the stream to a pressure drop at a pressure drop rate of at least about 0.3 GPa/sec to create sites of nucleation.

104. A method as in any of claims 93-103, comprising extruding polymeric foam extrudate into ambient conditions from an extruder die while varying the thickness of the extrudate.

105. A method as in any of claims 93-104, involving establishing a stream of fluid, single-phase non-nucleated solution of a precursor of foamed polymeric material and a blowing agent by introducing, into fluid polymeric material flowing at a rate of at least about 10 lbs./hr, a fluid that is a gas under ambient conditions and, in a period of less than about one minute, creating a single-phase solution of the fluid and the polymer, the fluid present in the solution in an amount of at least about 2% by weight based on the weight of the solution.

106. A method as in claim 105, comprising continuously nucleating the solution by continuously decreasing the pressure within successive, continuous portions of the flowing, single-phase stream at a rate which increases.

107. A method as in claim 106, wherein the concentration of the blowing agent in the homogeneous single-phase non-nucleated solution is at least about 5 percent, by weight, of the solution.

108. A method as in any of claims 93-107, involving establishing a stream of fluid, single-

phase solution of a precursor of foamed polymeric material and a blowing agent, wherein the concentration of the blowing agent in the homogeneous single-phase non-nucleated solution is at least about 7 percent, by weight, of the solution.

109. A method as in claim 108 wherein the concentration of the blowing agent in the homogeneous single-phase non-nucleated solution is at least about 10 percent, by weight, of the solution.

110. A method as in any of claims 108-109, wherein the blowing agent is supercritical carbon dioxide.

111. A method comprising:
providing an extruded polymeric microcellular foam parison; and
subjecting the parison to blow molding conditions.

112. A method comprising:
providing a polymeric foam parison; and
subjecting the parison to blow molding conditions of at least about 15 psi thereby expanding at least a portion of the parison by at least about 50% in circumference and forming a blow-molded article, while maintaining a relatively unchanged density by increasing the density of the parison by no more than about 20% in going from the parison to the blow-molded article.

113. A method comprising:
providing a polymeric microcellular foam parison; and
without heating the parison subjecting the parison to blow molding conditions.

114. A method as in any of claims 111-113, wherein the foam parison is of void fraction of at least about 10%.

115. A method as in any of claims 111-114, wherein the parison has a pre-blown thickness of less than about 0.100 inch.

116. A method as in any of claims 111-115, comprising extruding the parison from a mixture of polymeric material and blowing agent, the blowing agent present in the mixture in an amount less than about 3% by weight based on the weight of the mixture.

117. A method as in any of claims 111-116, comprising extruding the parison from a single-phase solution of polymeric material and supercritical blowing agent.

118. A method as in any of claims 116-117, wherein the blowing agent comprises carbon dioxide.

119. A method as in any of claims 116-117, wherein the blowing agent comprises nitrogen.

120. A method as in any of claims 111-119, the subjecting step involving applying pressure of at least about 1.5 bar internal of the parison.

121. A method as in claim 120, involving applying pressure of at least about 3 bar internal of the parison.

122. A method as in claim 120, involving applying pressure of at least about 5 bar internal of the parison.

123. A method as in claim 120, involving applying pressure of at least 10 bar internal of the parison.

124. A method as in any of claims 111-123, involving forming a final blow-molded product that is essentially free of a supporting, non-foam structure, the article being essentially closed cell, having a wall thickness of less than about 0.075 inch.

125. A method as in any of claims 111-124, comprising continuously extruding polymeric foam extrudate and continuously subjecting the extrudate to blow molding conditions.

126. A method as in any of claims 111-125, comprising:

providing an extruded polymeric foam parison having a first portion and a second portion spaced from the first portion in the parison machine direction, the first portion and the second portion differing in thickness by a factor of at least about 1.1; and

subjecting the parison to blow molding conditions.

127. A method as in claim 126, the first portion and the second portion differing in thickness by a factor of at least about 1.3.

128. A method as in claim 126, the first portion and the second portion differing in thickness by a factor of at least about 1.5.

129. A method as in claim 126, the first portion and the second portion differing in thickness by a factor of at least about 1.7.

130. A method as in any of claims 126-129, comprising:

providing an extruded polymeric foam parison having a first portion and a second portion spaced from the first portion in the parison machine direction, the first portion and the second portion differing in material density by a factor of at least about 1.1; and

subjecting the parison to blow molding conditions.

131. A method as in any of claims 111-130, comprising:

providing an extruded parison of polymeric material of melt flow no more than about 0.2 g/10 min; and

subjecting the parison to blow molding conditions.

132. A method comprising:

extruding a polymeric foam extrudate from a extruder die in a machine direction while varying the temperature of the extrudate exiting the die thereby forming an extrudate having a first portion and a second portion spaced from the first portion in the machine direction, the first portion and the second portion differing in material density by a factor of at least about 1.1.

133. A method as in claim 132, comprising successively varying the temperature of the extrudate exiting the die via a cold gas stream.

134. A method as informing a foam article comprising:

conveying polymeric material in a downstream direction in a polymer processing apparatus, the polymeric material consisting essentially of high-density polyethylene;

introducing a physical blowing agent into the polymeric material in the polymer processing apparatus; and

forming a foam article from the polymeric material.

135. A method of forming a microcellular article comprising:

conveying polymeric material in a downstream direction in a polymer processing apparatus, the polymeric material comprising a semi-crystalline polymer, and a nucleating agent in an amount between about 2.5 and about 7 weight percent, by weight of the polymeric material; and

forming a microcellular article from the polymeric material.

136. A method as in claims 134 or 135 further comprising introducing blowing agent into the polymeric material in the polymer processing apparatus in an amount less than 1.5 weight percent, by weight of the polymeric material.

137. A method as in any of claims 134-136 further comprising introducing blowing agent into the polymeric material in an amount less than 0.5 weight percent, by weight of the polymeric material, to form a solution of blowing agent and polymeric material

138. A method as in any of claims 134-137, comprising introducing blowing agent into the polymeric material, the blowing agent comprising carbon dioxide.

139. A method as in any of claims 134-137, comprising introducing blowing agent comprising nitrogen into the polymeric material.

140. A method as in any of claims 134-137, comprising introducing blowing agent that is a

mixture of carbon dioxide and nitrogen into the polymeric material.

141. A method as in any of claims 134-140 further comprising inducing a pressure drop rate of less than 1.0 GPa/s in the solution of blowing agent and polymeric material.

142. A method as in claim 141 wherein the pressure drop rate is less than 0.10 GPa/s.

143. A method as in claim 141 wherein the pressure drop rate is less than 0.05 GPa/s.

144. A method as in any of claims 134-143, wherein the polymeric material comprises between about 5 and about 7 weight percent nucleating agent, by weight of the polymeric material.

145. A method as in any of claims 134-144 wherein the polymer comprises a polyolefin.

146. A method as in any of claims 134-145 wherein the polymer comprises polypropylene.

147. A method as in any of claims 134-146 wherein the polymer consists essentially of polypropylene.

148. A method as in any of claims 134-147 wherein polymer comprises high-density polyethylene.

149. A method as in claim 148 wherein the polymer comprises at least 80% high-density polyethylene.

150. A method as in claim 148 wherein the polymer comprises at least 90% high-density polyethylene.

151. A method as in claim 148 wherein the polymer consists essentially of high-density polyethylene.

152 A method as in claim 148 wherein the article is essentially free of residual chemical blowing agent and reaction-by-products of chemical blowing agent.

153. A method as in any of claims 134-152 wherein the nucleating agent comprises an inorganic solid.

154. A method as in any of claims 134-152 wherein the nucleating agent comprises a filler.

155. A method as in any of claims 134-152 wherein the nucleating agent comprise talc.

156. A method as in any of claims 134-155 wherein forming the microcellular article comprises extruding the polymeric material through a die connected to a downstream end of the polymer processing apparatus.

157. A method as in any of claims 134-155 wherein forming the microcellular article comprises molding the polymeric material in an injection mold connected to a downstream end of the polymer processing space.

158. A method as in any of claims 134-155 wherein forming the microcellular article comprises blow molding the article.

159. A method as in any of claims 134-158 wherein the foam article includes a plurality of cells having an average cell size of less than 100 microns.

160. A method as in any of claims 134-158 wherein the foam article includes a plurality of cells having an average cell size of less than 50 microns.

161. A method as in any of claims 134-158 wherein the foam article includes a plurality of cells having an average cell size of less than 20 microns.

162. A method as in any of claims 134-161, wherein the polymeric material is essentially free of residual chemical blowing agents or by-product of chemical blowing agent.

163. A method as in any of claims 134-162 wherein the foam article has a void volume of greater than 10%.

164. A method as in claim 163 wherein the foam article has a void volume of greater than 20%.

165. A method as in claim 163 wherein the foam article has a void volume of greater than 50%.

166. A method as in claim 163 wherein the foam article has a void volume of greater than 10% and less than 50%.

167. A method comprising:

introducing a single-phase, non-nucleated solution of polymeric material and blowing agent into an inlet of a polymer forming die, nucleating the solution to form a nucleated polymeric stream, and releasing the nucleated stream as a polymeric microcellular extrudate from an outlet of the die in a period of time of no more than about 0.002 second after nucleation.

168. A method as in claim 167, wherein the die includes a nucleating pathway that decreases in cross section in a downstream direction with an included angle of greater than 4°.

169. A method as in claim 167, wherein the die includes a nucleating pathway that decreases in cross section in a downstream direction with an included angle of greater than 6°.

170. A method as in claim 167, wherein the die includes a nucleating pathway that decreases in cross section in a downstream direction with an included angle of greater than 7°.

171. A method as in claim 167, wherein the die includes a nucleating pathway that decreases in cross section in a downstream direction with an included angle of greater than 8°.

172. A method as in any of claims 167-171, comprising introducing a single-phase, non-

nucleated solution of HDPE and blowing agent into the inlet of the polymer forming die.

173. A method as in any of claims 167-172, comprising nucleating the single-phase, non-nucleated solution of polymeric material and blowing agent in the die by subjecting the solution to a pressure drop in the solution at a pressure drop rate of at least about 0.3 GPa/sec.

174. A method as in any of claims 167-173, wherein the single-phase, non-nucleated solution includes blowing agent at a level of no more than about 3% by weight based on the weight of the solution.

175. A method as in any of claims 167-174, comprising releasing the nucleated stream as a polymeric microcellular extrudate from an outlet of the die in a period of time of no more than about 0.001 second after nucleation.

176. A method as in any of claims 167-175, comprising nucleating the solution by subjecting the solution to a pressure drop at a high pressure drop rate.

177. A method as in claim 176, comprising nucleating the solution by subjecting the solution to a pressure drop at a rate sufficient to cause microcellular nucleation.

178. A method as in claim 176, comprising nucleating the solution by subjecting the solution to a pressure drop at a pressure drop rate of at least about 1.0 GPa/sec.

179. A method as in any of claims 167-178, comprising varying the width of a die gap defined by the die outlet, while releasing polymeric microcellular extrudate from the outlet, while maintaining a constant nucleating pathway gap within the die by which the solution is nucleated.

180. A method as in any of claims 167-179, wherein the die is a blow molding forming die, the method involving releasing the polymeric material extrudate from the outlet of the die as a microcellular parison, the method further comprising blow molding the parison into a blow-molded microcellular polymeric article.

181. A method as in any of claims 167-180, wherein the blowing agent is an atmospheric gas.

182. A method as in claim 181, wherein the blowing agent is carbon dioxide.

183. A method as in any of claims 180-182, comprising introducing the single-phase solution of polymeric material and blowing agent into the inlet of the die from an accumulator.

184. A method as in any of claims 167-183, comprising releasing extrudate from the die outlet having a thickness that varies as a function of distance from the die outlet.

185. A method as in any of claims 112-131, wherein the parison is an extruded polymeric microcellular foam parison.

186. A method as in any of claims 111-131, wherein the foam parison is of void fraction of at least about 20%.

187. A method as in any of claims 111-131, wherein the foam parison is of void fraction of at least about 30%.

188. A method as in any of claims 111-131, wherein the foam parison is of void fraction of at least about 40%.

189. A device comprising:

a polymer forming die including an inlet at an upstream end thereof constructed and arranged to receive a single-phase, homogeneous solution of polymeric fluid and blowing agent that is a gas under ambient conditions, an outlet at a downstream end thereof, defining a die gap, for releasing foamed polymeric material, and a fluid pathway connecting the inlet with the outlet, the fluid pathway including a nucleating pathway, the die constructed and arranged to vary the width of the die gap during extrusion while maintaining a constant nucleating pathway gap.

190. A device as in claim 189, the nucleating pathway having length and cross-sectional dimensions that, when fluid polymer is passed through the pathway at a rate greater than 40 lbs fluid per hour, creates a pressure drop in the fluid polymer of at least about 0.3 GPa/sec.

WO 99/32544 PCT/US98/27118






FIG. 1

RECTIFIED SHEET (RULE 91)
ISA/EP




FIG. 2




FIG. 3




FIG. 4




FIG. 5




FIG. 6




Fig. 7




Fig. 8




Fig. 9




Fig. 10




Fig. 11




Fig. 12




Fig. 13

# INTERNATIONAL SEARCH REPORT

Interna. ıl Application No
PCT/US 98/27118

**A. CLASSIFICATION OF SUBJECT MATTER**
IPC 6 C08J9/00 B65D1/02

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
IPC 6 C08J B65D

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category ° | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X<br>A | US 4 627 177 A (MEYERS STUART R)<br>9 December 1986<br>see column 3, line 49 - column 4, line 11<br>see claims 1,3 | 1<br>6-59 |
| X | GB 1 456 171 A (KRAUSS MAFFEI AG)<br>17 November 1976<br>see page 1, line 92 - page 2, line 10<br>see claims | 1,8-11 |
| A | US 5 468 530 A (GOETZ WALTER ET AL)<br>21 November 1995<br>see column 6, line 26-29<br>see column 6, line 41-44<br>see column 8, line 60 - column 9, line 3 | 6 |

☐ Further documents are listed in the continuation of box C.

☒ Patent family members are listed in annex.

° Special categories of cited documents :

"A" document defining the general state of the art which is not considered to be of particular relevance

"E" earlier document but published on or after the international filing date

"L" document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

"O" document referring to an oral disclosure, use, exhibition or other means

"P" document published prior to the international filing date but later than the priority date claimed

"T" later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

"X" document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

"Y" document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

"&" document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 22 April 1999 | 07/05/1999 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2<br>NL - 2280 HV Rijswijk<br>Tel. (+31-70) 340-2040, Tx. 31 651 epo nl,<br>Fax: (+31-70) 340-3016 | Oudot, R |

1

# INTERNATIONAL SEARCH REPORT

Information on patent family members

International Application No
PCT/US 98/27118

| Patent document cited in search report | Publication date | Patent family member(s) | Publication date |
|---|---|---|---|
| US 4627177 A | 09-12-1986 | NONE | |
| GB 1456171 A | 17-11-1976 | NONE | |
| US 5468530 A | 21-11-1995 | DE 4339509 A | 24-05-1995 |
| | | DE 59407873 D | 08-04-1999 |
| | | EP 0654505 A | 24-05-1995 |
| | | JP 7196916 A | 01-08-1995 |

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14821399 |
| **Filing Date:** | 07-Aug-2015 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Filer:** | Nathan Scott Smith/Sharon Fennessy |
| **Attorney Docket Number:** | 092749-0213 |

Filed as Small Entity

**Filing Fees for** **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| **Extension-of-Time:** | | | | |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Miscellaneous:** | | | | |
| SUBMISSION- INFORMATION DISCLOSURE STMT | 2806 | 1 | 90 | 90 |
| | **Total in USD ($)** | | | **90** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29440598 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Nathan Scott Smith/Sharon Fennessy |
| **Filer Authorized By:** | Nathan Scott Smith |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 08-JUN-2017 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 17:34:56 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $90 |
| RAM confirmation Number | 060917INTEFSW00004644502624 |
| Deposit Account | |
| Authorized User | |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213-IDS.pdf | 119676<br>4959961ee3e342a1345f0b5c0b5ef7317f4b21b2 | yes | 3 |

**Multipart Description/PDF files in .zip description**

| Document Description | Start | End |
|---|---|---|
| Transmittal Letter | 1 | 2 |
| Information Disclosure Statement (IDS) Form (SB08) | 3 | 3 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Foreign Reference | CN1285856A.pdf | 3922227<br>35c378a0177ff39574ffd0741f1c9e318ff90213 | no | 95 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 3 | Foreign Reference | CN202079738U.pdf | 221285<br>df201a07dd33f63dcdac675cdbf67602bf4bae70 | no | 7 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 4 | Foreign Reference | WO9932544A1.pdf | 4872344<br>ea6caf959199d3c564c781976f572908718a2c10 | no | 84 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 5 | Fee Worksheet (SB06) | fee-info.pdf | 30585<br>35797554cb886109990dad0c0385c57ad78a6647 | no | 2 |

**Warnings:**

**Information:**

| Total Files Size (in bytes): | 9166117 |
|---|---|

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**New Applications Under 35 U.S.C. 111**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**
**National Stage of an International Application under 35 U.S.C. 371**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**
**New International Application Filed with the USPTO as a Receiving Office**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

Docket No.: 092749-0213
(PATENT)

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | | |
|---|---|---|
| In re Patent Application of: | : | Customer Number: 31824 |
| Peter DILWORTH et al. | : | Confirmation Number: 9856 |
| Application No.: 14/821,399 | : | Group Art Unit: 1743 |
| Filed: August 7, 2015 | : | |
| For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | : | Examiner: L. D. Hohenbrink Jr. |

**INFORMATION DISCLOSURE STATEMENT**

Mail Stop Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Pursuant to 37 C.F.R. § 1.56, 1.97, and 1.98, the attention of the United States Patent and Trademark Office is hereby directed to the references listed on the attached PTO/SB/08. It is respectfully requested that the information be expressly considered during the prosecution of the above-identified application, and that the references be made of record therein and appear among the "References Cited" on any patent to issue therefrom.

This Information Disclosure Statement is filed after the mailing date of either a Final Action under 37 C.F.R. § 1.113, a Notice of Allowance under 37 C.F.R.§ 1.113, or an action that otherwise closed prosecution in this application, but on or before payment of the Issue Fee (37 C.F.R. § 1.97(d)).

Pursuant to 37 C.F.R. § 1.97(e)(1), each item of information contained in this Information Disclosure Statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of this Information Disclosure Statement.

It is believed that WO 99/32544 is an English language equivalent of CN 1285856; a copy of WO 99/32544 is enclosed, and it is also listed on the attached form SB/08.

In accordance with 37 C.F.R. § 1.97(g), the filing of this Information Disclosure Statement shall not be construed as a representation that a search has been made. In accordance with 37 C.F.R. § 1.97(h), the filing of this Information Disclosure Statement shall not be construed to be an admission that the information cited in this Information Disclosure Statement is, or is considered to be, material to the patentability as defined in 37 C.F.R. § 1.56(b).

Please charge Deposit Account No. 50-2624 in the amount of $90.00 covering the fee set forth in 37 C.F.R. § 1.17(p).

The Director is hereby authorized to charge any deficiency in the fees filed, asserted to be filed or which should have been filed herewith to Deposit Account No. 50-2624.

Respectfully submitted,

MCDERMOTT WILL & EMERY LLP

/Nathan S. Smith/
Nathan S. Smith
Registration No. 53,615

Please recognize our Customer No. 31824 as our correspondence address.

4 Park Plaza
Suite 1700
Irvine, CA 92614-2559
Phone: (949) 757-6018 NSS:snf
Facsimile: (949) 851-9348
Date: June 8, 2017

# PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to: Mail** **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
**or Fax (571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

31824 7590 04/13/2017
MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**

I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

(Depositor's name)
(Signature)
(Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

TITLE OF INVENTION: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | SMALL | $480 | $0 | $0 | $480 | 07/13/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HOHENBRINK JR, LAWRENCE D | 1743 | 425-087000 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list

(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,

(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 Nathan S. Smith
2 McDermott Will & Emery LLP
3

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE: WobbleWorks, Inc.

(B) RESIDENCE: (CITY and STATE OR COUNTRY): Wilmington, DE

Please check the appropriate assignee category or categories (will not be printed on the patent) : ☐ Individual ☒ Corporation or other private group entity ☐ Government

4a. The following fee(s) are submitted:
☒ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies ..................

4b. Payment of Fee(s): **(Please first reapply any previously paid issue fee shown above)**
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☒ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number 50-2624 (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)

☐ Applicant certifying micro entity status. See 37 CFR 1.29

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.

☐ Applicant asserting small entity status. See 37 CFR 1.27

NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.

☐ Applicant changing to regular undiscounted fee status.

NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature /Nathan S. Smith/ Date July 12, 2017

Typed or printed name Nathan S. Smith Registration No. 53,615

Docket No.: 092749-0213 **PATENT**

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| In re Patent Application of:<br>Peter DILWORTH et al. | : Customer Number: 31824 |
| Application No.: 14/821,399 | : Confirmation No.: 9856 |
| Filed: August 7, 2015 | : Art Unit: 1743 |
| For: HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE | : Examiner: Lawrence D. Hohenbrink, Jr. |

**COMMENTS ON EXAMINER'S STATEMENT OF REASONS FOR ALLOWANCE**

Mail Stop Issue Fee
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Commissioner:

In response to the Statement of Reasons for Allowance, which statement was communicated to Applicant with the Notice of Allowability dated April 13, 2017, Applicant makes the following comments:

Applicant respectfully disagrees with the Statement of Reasons for Allowance to the extent that the recitations of the allowable subject matter in the Statement deviate from the language of the allowed claims. Also, to the extent that the Statement of Reasons for Allowance implies that the patentability of the claims rests solely on the recitation of one or more particular features, Applicant respectfully disagrees with the Statement because, for each claim, it is the combination of features or elements recited in the claim that makes the claim patentable.

Applicant may disagree with and respectfully reserves the right to traverse any of the characterizations and the assertions in the Notice of Allowability, even if not discussed herein. Applicant respectfully reserves the right to challenge later whether any cited reference is prior art. The absence of a reply to a specific issue or comment in the Statement does not signify

agreement with or concession of that issue or comment. In addition, there may be other reasons that have not been expressed for patentability of any or all claims.

Nothing in this paper should be construed as an intent to concede, or actual concession of, any issue with regard to any claim, or to any cited art, except as specifically stated in this paper.

If there are any questions, the Examiner is respectfully requested to telephone the undersigned Attorney.

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

/Nathan S. Smith/

Nathan S. Smith
Registration No. 53,615

**Please recognize our Customer No. 31824 as our correspondence address.**

4 Park Plaza, Suite 1700
Irvine, CA 92614-2559
Phone: 949.851.0633
Facsimile: 949.851.9348

**Date: July 12, 2017**

# Electronic Patent Application Fee Transmittal

| | |
|---|---|
| **Application Number:** | 14821399 |
| **Filing Date:** | 07-Aug-2015 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Filer:** | Nathan Scott Smith/Kimila Carraway |
| **Attorney Docket Number:** | 092749-0213 |

Filed as Small Entity

**Filing Fees for** **Utility under 35 USC 111(a)**

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Basic Filing:** | | | | |
| **Pages:** | | | | |
| **Claims:** | | | | |
| **Miscellaneous-Filing:** | | | | |
| **Petition:** | | | | |
| **Patent-Appeals-and-Interference:** | | | | |
| **Post-Allowance-and-Post-Issuance:** | | | | |
| UTILITY APPL ISSUE FEE | 2501 | 1 | 480 | 480 |

| Description | Fee Code | Quantity | Amount | Sub-Total in USD($) |
|---|---|---|---|---|
| **Extension-of-Time:** | | | | |
| **Miscellaneous:** | | | | |
| | | **Total in USD ($)** | | **480** |

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 29767398 |
| **Application Number:** | 14821399 |
| **International Application Number:** | |
| **Confirmation Number:** | 9856 |
| **Title of Invention:** | HAND-HELD THREE-DIMENSIONAL DRAWING DEVICE |
| **First Named Inventor/Applicant Name:** | Peter DILWORTH |
| **Customer Number:** | 31824 |
| **Filer:** | Nathan Scott Smith/Kimila Carraway |
| **Filer Authorized By:** | Nathan Scott Smith |
| **Attorney Docket Number:** | 092749-0213 |
| **Receipt Date:** | 12-JUL-2017 |
| **Filing Date:** | 07-AUG-2015 |
| **Time Stamp:** | 21:07:13 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | DA |
| Payment was successfully received in RAM | $480 |
| RAM confirmation Number | 071317INTEFSW00006751502624 |
| Deposit Account | 502624 |
| Authorized User | Kimila Carraway |

The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows:

37 CFR 1.16 (National application filing, search, and examination fees)

37 CFR 1.17 (Patent application and reexamination processing fees)

37 CFR 1.19 (Document supply fees)

37 CFR 1.20 (Post Issuance fees)

37 CFR 1.21 (Miscellaneous fees and charges)

## File Listing:

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 1 | | 092749-0213_Issue_Fee_Comments_Statement_Reasons_Allowance.pdf | 366296<br>a79538ffc223d6ca9fc6399698bdbf9c7743e110 | yes | 3 |

| Multipart Description/PDF files in .zip description | | |
|---|---|---|
| **Document Description** | **Start** | **End** |
| Issue Fee Payment (PTO-85B) | 1 | 1 |
| Post Allowance Communication - Incoming | 2 | 3 |

**Warnings:**

**Information:**

| Document Number | Document Description | File Name | File Size(Bytes)/ Message Digest | Multi Part /.zip | Pages (if appl.) |
|---|---|---|---|---|---|
| 2 | Fee Worksheet (SB06) | fee-info.pdf | 30652<br>eceff9bd45864bfcca37931ef87855adb4c3e2c3 | no | 2 |

**Warnings:**

**Information:**

| | |
|---|---|
| **Total Files Size (in bytes):** | 396948 |

**This Acknowledgement Receipt evidences receipt on the noted date by the USPTO of the indicated documents, characterized by the applicant, and including page counts, where applicable. It serves as evidence of receipt similar to a Post Card, as described in MPEP 503.**

**<u>New Applications Under 35 U.S.C. 111</u>**
**If a new application is being filed and the application includes the necessary components for a filing date (see 37 CFR 1.53(b)-(d) and MPEP 506), a Filing Receipt (37 CFR 1.54) will be issued in due course and the date shown on this Acknowledgement Receipt will establish the filing date of the application.**

**<u>National Stage of an International Application under 35 U.S.C. 371</u>**
**If a timely submission to enter the national stage of an international application is compliant with the conditions of 35 U.S.C. 371 and other applicable requirements a Form PCT/DO/EO/903 indicating acceptance of the application as a national stage submission under 35 U.S.C. 371 will be issued in addition to the Filing Receipt, in due course.**

**<u>New International Application Filed with the USPTO as a Receiving Office</u>**
**If a new international application is being filed and the international application includes the necessary components for an international filing date (see PCT Article 11 and MPEP 1810), a Notification of the International Application Number and of the International Filing Date (Form PCT/RO/105) will be issued in due course, subject to prescriptions concerning national security, and the date shown on this Acknowledgement Receipt will establish the international filing date of the application.**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/07/2015 | Peter DILWORTH | 092749-0213 | 9856 |

31824 7590 07/13/2017

MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

| EXAMINER | |
|---|---|
| HOHENBRINK JR, LAWRENCE D | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1743 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 07/13/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

mweipdocket@mwe.com

| *Supplemental Notice of Allowability* | **Application No.** 14/821,399 | **Applicant(s)** DILWORTH ET AL. | |
|---|---|---|---|
| | **Examiner** Lawrence D. Hohenbrink, Jr. | **Art Unit** 1743 | **AIA (First Inventor to File) Status** No |

***-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *Applicant's filing of 6/8/2017*.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on______.
2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
3. ☒ The allowed claim(s) is/are *21-28,34-40 and 42-46*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.
4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

   **Certified copies:**

   a) ☐ All b) ☐ Some *c) ☐ None of the:
   1. ☐ Certified copies of the priority documents have been received.
   2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
   3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

   * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____.

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)
2. ☒ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date 6/8/2017
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
4. ☐ Interview Summary (PTO-413), Paper No./Mail Date _____ .
5. ☐ Examiner's Amendment/Comment
6. ☐ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____.

/MATTHEW DANIELS/
Primary Examiner, Art Unit 1742

PTO/SB/08b (07-09)
Approved for use through 07/31/2016. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

Substitute for form 1449/PTO

# INFORMATION DISCLOSURE STATEMENT BY APPLICANT

*(Use as many sheets as necessary)*

| Sheet | 1 | of | 1 |
|---|---|---|---|

| Complete if Known | |
|---|---|
| Application Number | 14/821,399-Conf. #9856 |
| Filing Date | August 7, 2015 |
| First Named Inventor | Peter DILWORTH |
| Art Unit | 1743 |
| Examiner Name | L. D. Hohenbrink, Jr. |
| Attorney Docket Number | 092749-0213 |

## U. S. PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Document Number<br>Number-Kind Code[2] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
|---|---|---|---|---|---|
| | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initials* | Cite No.[1] | Foreign Patent Document<br>Country Code[3]-Number[4]-Kind Code[5] *(if known)* | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages Or Relevant Figures Appear | T[6] |
|---|---|---|---|---|---|---|
| | B1 | CN-1285856-A | 02-28-2001 | Trexel, Inc | | X |
| | B2 | CN-202079738-U | 12-21-2011 | Yingjun, Zhang | | X |
| | B3 | WO-99/32544-A1 | 07-01-1999 | Trexel, Inc | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Examiner Signature | /LAWRENCE D. HOHENBRINK, JR./ | Date Considered | 07/05/2017 |
|---|---|---|---|

*EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant. [1] Applicant's unique citation designation number (optional). [2] See Kinds Codes of USPTO Patent Documents at www.uspto.gov or MPEP 901.04. [3] Enter Office that issued the document, by the two-letter code (WIPO Standard ST.3). [4] For Japanese patent documents, the indication of the year of the reign of the Emperor must precede the serial number of the patent document. [5]Kind of document by the appropriate symbols as indicated on the document under WIPO Standard ST.16 if possible. [6] Applicant is to place a check mark here if English language Translation is attached.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /L.D.H./

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | ISSUE DATE | PATENT NO. | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/821,399 | 08/15/2017 | 9731444 | 092749-0213 | 9856 |

31824 7590 07/26/2017

MCDERMOTT WILL & EMERY LLP
The McDermott Building
500 North Capitol Street, N.W.
Washington, DC 20001

# ISSUE NOTIFICATION

The projected patent number and issue date are specified above.

**Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)**
(application filed on or after May 29, 2000)

The Patent Term Adjustment is 19 day(s). Any patent to issue from the above-identified application will include an indication of the adjustment on the front page.

If a Continued Prosecution Application (CPA) was filed in the above-identified application, the filing date that determines Patent Term Adjustment is the filing date of the most recent CPA.

Applicant will be able to obtain more detailed information by accessing the Patent Application Information Retrieval (PAIR) WEB site (http://pair.uspto.gov).

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Application Assistance Unit (AAU) of the Office of Data Management (ODM) at (571)-272-4200.

APPLICANT(s) (Please see PAIR WEB site http://pair.uspto.gov for additional applicants):

Peter DILWORTH, Somerville, MA;
WobbleWorks, Inc., Wilmington, DE;
Maxwell BOGUE, Hong Kong, HONG KONG;

The United States represents the largest, most dynamic marketplace in the world and is an unparalleled location for business investment, innovation, and commercialization of new technologies. The USA offers tremendous resources and advantages for those who invest and manufacture goods here. Through SelectUSA, our nation works to encourage and facilitate business investment. To learn more about why the USA is the best country in the world to develop technology, manufacture products, and grow your business, visit SelectUSA.gov.

Case 8:17-cv-02147-DOC-DFM Document 5 Filed 12/08/17 Page 1 of 1 Page ID #:31

AO 120 (Rev. 08/10)

| | |
|---|---|
| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Central District of California on the following

☐ Trademarks or ☒ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| 8:17-CV-2147 | 12/08/2017 | Central District of California |

| PLAINTIFF | DEFENDANT |
|---|---|
| WOBBLEWORKS, INC. | DITEC SOLUTIONS, LLC |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 9,731,444 | 08/15/2017 | Hand-Held Three-Dimensional Drawing Device |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| **PATENT OR TRADEMARK NO.** | **DATE OF PATENT OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director** **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director** **Copy 4—Case file copy**

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 120 (Rev. 08/10)

| TO: **Mail Stop 8 Director of the U.S. Patent and Trademark Office P.O. Box 1450 Alexandria, VA 22313-1450** | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Eastern of Texas on the following

☐ Trademarks or ☒ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED 12/08/2017 | U.S. DISTRICT COURT Eastern District of Texas |
|---|---|---|
| PLAINTIFF WOBBLEWORKS, INC. | | DEFENDANT DIM3PRINTING, LLC |
| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 9,731,444 | 08/15/2017 | Hand-Held Three-Dimensional Drawing Device |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director**
**Copy 3—Upon termination of action, mail this copy to Director**
**Copy 4—Case file copy**

American LegalNet, Inc. www.FormsWorkFlow.com

Case 2:17-cv-00782-JRG Document 4 Filed 12/21/17 Page 1 of 1 PageID #: 46

AO 120 (Rev. 08/10)

| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Eastern of Texas on the following

☐ Trademarks or ☒ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| 2:17-cv-782 | 12/21/2017 | Eastern District of Texas |
| PLAINTIFF<br>WOBBLEWORKS, INC. | | DEFENDANT<br>3D SYNERGY TECHNOLOGIES, INC. |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 9,102,098 | 08/11/2017 | Hand-Held Three-Dimensional Drawing Device |
| 2 9,731,444 | 08/15/2017 | Hand-Held Three-Dimensional Drawing Device |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| **PATENT OR TRADEMARK NO.** | **DATE OF PATENT OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director**
**Copy 3—Upon termination of action, mail this copy to Director**
**Copy 4—Case file copy**

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 120 (Rev. 08/10)

| | |
|---|---|
| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Eastern of Texas on the following

☐ Trademarks or ☒ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED<br>12/08/2017 | U.S. DISTRICT COURT<br>Eastern District of Texas |
|---|---|---|

| PLAINTIFF<br>WOBBLEWORKS, INC. | DEFENDANT<br>DIM3PRINTING, LLC |
|---|---|

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 9,731,444 | 08/15/2017 | Hand-Held Three-Dimensional Drawing Device |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| **PATENT OR TRADEMARK NO.** | **DATE OF PATENT OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

DECISION/JUDGEMENT

ORDERED that the Complaint as against the Defendant is hereby dismissed without prejudice

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| David A. O'Toole | CH | **4/23/18** |

**Copy 1—Upon initiation of action, mail this copy to Director** **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director** **Copy 4—Case file copy**

American LegalNet, Inc.
www.FormsWorkFlow.com

AO 120 (Rev. 08/10)

| TO: **Mail Stop 8 Director of the U.S. Patent and Trademark Office P.O. Box 1450 Alexandria, VA 22313-1450** | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Eastern of Texas on the following

☐ Trademarks or ☒ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| 2:17-cv-782 | 12/21/2017 | Eastern District of Texas |
| PLAINTIFF WOBBLEWORKS, INC. | | DEFENDANT 3D SYNERGY TECHNOLOGIES, INC. |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 9,102,098 | 08/11/2017 | Hand-Held Three-Dimensional Drawing Device |
| 2 9,731,444 | 08/15/2017 | Hand-Held Three-Dimensional Drawing Device |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director** **Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director** **Copy 4—Case file copy**

American LegalNet, Inc. www.FormsWorkFlow.com

Case: 1:18-cv-00224-PAG Doc #: 3 Filed: 01/30/18 1 of 1. PageID #: 16

AO 120 (Rev. 08/10)

| TO: **Mail Stop 8 Director of the U.S. Patent and Trademark Office P.O. Box 1450 Alexandria, VA 22313-1450** | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court NORTHERN DISTRICT OF OHIO, EASTERN DIVISION on the following

☐ Trademarks or ☒ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED 01/-----/2018 | U.S. DISTRICT COURT NORTHERN DISTRICT OF OHIO, EASTERN DIVISION |
|---|---|---|
| PLAINTIFF WOBBLEWORKS, INC. | | DEFENDANT YURI GAGARIN, LLC |
| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 9,731,444 | 08/15/2017 | Hand-Held Three-Dimensional Drawing Device |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| | | |

**Copy 1—Upon initiation of action, mail this copy to Director Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director Copy 4—Case file copy**

American LegalNet, Inc. www.FormsWorkFlow.com

Case 8:17-cv-02147-DOC-DFM Document 78 Filed 09/04/19 Page 1 of 1 Page ID #:470

AO 120 (Rev. 08/10)

| TO: Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | **REPORT ON THE FILING OR DETERMINATION OF AN ACTION REGARDING A PATENT OR TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court Central District of California on the following

☐ Trademarks or ☒ Patents. ( ☐ the patent action involves 35 U.S.C. § 292.):

| DOCKET NO. | DATE FILED | U.S. DISTRICT COURT |
|---|---|---|
| 8:17-CV-2147 | 12/08/2017 | Central District of California |

| PLAINTIFF | DEFENDANT |
|---|---|
| WOBBLEWORKS, INC. | DITEC SOLUTIONS, LLC |

| PATENT OR TRADEMARK NO. | DATE OF PATENT OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 9,731,444 | 08/15/2017 | Hand-Held Three-Dimensional Drawing Device |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment ☐ Answer ☐ Cross Bill ☐ Other Pleading | |
|---|---|---|
| **PATENT OR TRADEMARK NO.** | **DATE OF PATENT OR TRADEMARK** | **HOLDER OF PATENT OR TRADEMARK** |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| ORDER GRANTING JOINT MOTION TO DISMISS [76] Case Closed 9/4/19 |

| CLERK | (BY) DEPUTY CLERK | DATE |
|---|---|---|
| Kiry K. Gray | Trina DeBose | 9/4/19 |

**Copy 1—Upon initiation of action, mail this copy to Director Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director Copy 4—Case file copy**

American LegalNet, Inc.
www.FormsWorkFlow.com