# EXHIBIT 70




**March 2014 Issue**

PDF version

Back to Main

## EPO Practice

*Intermediate Generalization: Amending European Patents and Applications Under Article 123(2) EPC*

*by Martin D. Hyden and Theresa M. Weisenberger*

Article 123(2) EPC stands as the European analogue to the U.S. proscription against adding "new matter" to a U.S. patent or patent application, codified as 35 U.S.C. §§ 132 and 251. Article 123(2) comes into play whenever claims of a European application or patent are amended. In full, Article 123(2) EPC states: "The European patent application or European patent may not be amended in such a way that it contains subject-matter which extends beyond the content of the application as filed." According to Guidelines H-IV, 2.2, the purpose of Article 123(2) is to prevent an applicant from "improv[ing] his position by adding subject-matter not disclosed in the application as filed, which would give him an unwarranted advantage and could be damaging to the legal security of third parties relying on the content of the original application." This purpose is similar to the purpose of 35 U.S.C. §§ 132 and 251 as well as the "written description" requirement of 35 U.S.C. § 112(a).

The European standard for new matter under Article 123(2) is much more strict than the U.S. "written description" and "new matter" standards. For example, amendments that take features out of their initial context and combine them with others—so-called "intermediate generalization"—are particularly challenging for European Patent Office (EPO) applications. In some instances, taking characteristics from a working example and combining them with features disclosed in a more general context will not violate Article 123(2) EPC. However, as the EPO Board of Appeals articulated in T 0962/98, intermediate generalization is "only admissible if the skilled person can recognize **without any doubt** from the application as filed that those characteristics are not closely related to the other characteristics of the working example and apply directly and unambiguously to the more general context." T 0962/98 Part 2.5. That a skilled person must be able to recognize "without any doubt" that particular characteristics apply "directly and unambiguously" to a general context is a high standard, especially in the field of compositions. In this particular EPO appeal, the claim was drawn to a composition comprising a mixture of surfactants. The Board determined that the disclosure included only one exemplary mixture in accordance with the amended claim, and that, to include one or more of the four surfactants listed in the

amended claim, the concentration percentages of the ingredients in the exemplary mixture would have to be modified. Since the disclosure gave no guidance about which components in the exemplary mixture must remain unchanged and which ones can vary, too much doubt existed to survive the Article 123(2) challenge, and the claim was found invalid.

Intermediate generalization is not limited to compositions. Indeed, apparatus claims have been invalidated under this rule. For example, T 0219/09 revoked a patent for a "stick provided with [a] shock-absorber" comprising a grip member that included a shock-absorbing mechanism that could be turned on and off by engaging a pin with a slot. In the original claim, the activation and deactivation of the shock-absorbing mechanism was controlled by the grip member. In one example, the disclosure teaches including two slots shaped as an inverted L with a cam in the upper end and separating the two parts of the inverted L so that the grip member must be lowered and twisted to move the pin beyond the cam to activate the shock absorber. The Board found no indication that other features discussed with the cam, like the inverted L-shaped slots, "might somehow be incidental to the on/off mechanism's proper functioning and could therefore be omitted or modified without consequences for the cam and its arrangement." T 0219/09 Part 3.3. Since the patent did not claim a specifically shaped slot, nor did it discuss any other specifically shaped slots except in the context of the cam, the amended claim covered a wide variety of cam mechanisms, with any number of slots of various shapes. Thus, the Board found that, although the patent disclosed a cam in one location and disclosed slots of an undefined shape in a different location, the combination of a cam with the slots of various shapes was outside the scope of the original patent.

Thus, the issue presented by intermediate generalization is not whether the claims would encompass something taught by the disclosure or whether portions of the disclosure could be combined to practice the claims. In many cases, such as the shock-absorbing stick of T 0219/09, it is clear that the specific example would be covered by the amended claims. Likewise, in T 0962/98, it was undisputed that the disclosure provided a generic teaching of surfactants as well as the specific example in accordance with the claim (with the exception of the surfactants). Rather, the question is whether the amended claim seeks to claim more than what its specific examples teach. Had the slot shape of the amended claim been specified as an inverted L, as the disclosure taught in connection with the cam, the patent may have survived the Article 123(2) EPC challenge. In T 0962/98, had the disclosure provided guidance as to how to include surfactants in the specific example that embodied the claim, the result may have been different.

Objectionable intermediate generalization seeks to limit claim amendments to those specific embodiments disclosed in the patent. To avoid an Article 123(2) EPC challenge based on intermediate generalization, the specification should provide a teaching or suggestion of how to combine generally discussed features with specific embodiments. Thus, practitioners should review their draft specifications before filing to identify possible additional claim elements or fall-back limitations that they might consider adding to the claims in later amendments, such as to avoid prior art. And they should consider adding further disclosure or additional claims that combine those elements or fall-back limitations with the generally discussed features of the invention before filing their original application. Drafting all original

dependent claims in multiple-dependent format or, alternatively, if the first-filed application is a U.S. nonprovisional application (where nested multiple dependent claims are not allowed), including a list of the claimed embodiments in multiple-dependent format within the specification text may also help to avoid the intermediate-generalization problem in some instances.

FINNEGAN

*DISCLAIMER: The information contained herein is intended to convey general information only and should not be construed as a legal opinion or as legal advice. The firm disclaims liability for any errors or omissions and readers should not take any action that relies upon the information contained in this newsletter. You should consult your own lawyer concerning your own situation and any specific legal questions. This promotional newsletter does not establish any form of attorney-client relationship with our firm or with any of our attorneys.*

**If you have any questions or need additional information, please contact:**

Eric P. Raciti, Editor-in-Chief
Elizabeth A. Doherty, Ph.D., Associate Editor
J. Derek McCorquindale, Associate Editor

Atlanta ▪ Boston ▪ London ▪ Palo Alto ▪ Reston ▪ Shanghai ▪ Taipei ▪ Tokyo ▪ Washington, DC

**www.finnegan.com**

Copyright © 2014 Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | All rights reserved