UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOBBLEWORKS, INC.,<br>Plaintiff,<br>v.<br>GUANGZHOU JER EDUCATION TECHNOLOGY et al.,<br>Defendants. | Case No.: 2:26-cv-01592-MEMF-PVC<br>**ORDER DENYING MOTION TO DISMISS [DKT. NO. 48], AND GRANTING REQUEST FOR JUDICIAL NOTICE [DKT. NO. 49]** |

Before the Court are a Motion to Dismiss and Request for Judicial Notice filed by Defendant MyFirst USA, Inc ("MyFirst"). Dkt. Nos. 48 ("Motion"), 49 ("RJN"). The Court finds this matter appropriate for resolution without oral argument *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons stated herein, the Court DENIES the Motion and GRANTS the RJN.

# I. Factual Background[1]

## A. The Parties

Plaintiff WobbleWorks, Inc. ("WobbleWorks") is a Delaware corporation with a principal place of business at 1209 Orange Street, Wilmington, Delaware 19801. Compl. ¶ 1. WobbleWorks is a pioneer in the development of three-dimensional (3D) drawing devices that can be used within minutes, without needing any technical knowledge, software, or computers. *Id.* ¶ 13. WobbleWorks was founded in 2010 to develop new toy and robotics concepts. *Id.* In 2012 the company developed a new product that allows children and adults to draw 3D artwork, where the user can draw in the air. *Id.* Its founders brought with them experience from film, computer science, and robotics. *Id.* WobbleWorks was led by Maxwell Bogue, a former R&D project manager and consumer robotics specialist, and Peter Dilworth, an alumnus of MIT's Leg Laboratory and the MIT Media Lab. *Id.*

Defendant Guangzhou JER is a Chinese company with a principal place of business at Room 301, 3/F, Building 2, 510530, Guangdong, China. *Id.* ¶ 2. Guangzhou JER operates the website https://jer3d.com/. *Id.* Guangzhou JER has made available a page on that website https://jer3d.com/3dprinter-pen-education/) that claims it: (1) has "successfully made 3D printing pen classes available in tens of thousands of schools in South Korea, Hongkong [sic], United States [sic]" and (2) "will make [its] 3D printing pen classes available in more schools." *Id.* ¶ 11.

Defendant MyFirst is a California corporation with a principal place of business at 168 North Mason Way #B1, City of Industry, California 91746. *Id.* ¶ 3. MyFirst operates the website https://us.MyFirst.tech/ via which it offers to sell and sells infringing 3D printing pens to customers in the United States, including in California and this District. *Id.* ¶ 7.

## B. WobbleWorks' Patents

On August 15, 2017, United States Patent No. 9,731,444 ("-444 Patent") was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). *Id.* ¶ 14. The -444

---

[1] The following factual allegations are derived from the allegations in WobbleWorks' Complaint, Dkt. No. 1 ("Compl."), unless otherwise indicated. For the purposes of these briefs, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they *are* true.

Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.* On October 6, 2020, United States Patent No. 10,792,850 ("the '850 Patent") was duly and legally issued by the USPTO. *Id.* ¶ 15. The '850 Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.* On September 20, 2022, United States Patent No. 11,446,852 ("the '852 Patent") was duly and legally issued by the USPTO. *Id.* ¶ 16. The '852 Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.* On September 26, 2023, United States Patent No. 11,766,819 ("the '819 Patent") was duly and legally issued by the USPTO. *Id.* ¶ 17. The '819 Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.* On April 22, 2025, United States Patent No. 12,280,529 ("the '529 Patent") was duly and legally issued by the USPTO. *Id.* ¶ 18. The '529 Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.*

WobbleWorks is the assignee of all right, title, and interest in the -444, -850, -852, -819, and -529 Patents (collectively, the "Asserted Patents"), including all rights to enforce and prosecute actions for infringement and to collect damages, including past damages, for all relevant times against infringers of the Asserted Patents. *Id.* ¶ 19. Accordingly, WobbleWorks possesses the exclusive right and standing to prosecute the present action for infringement of the Asserted Patents by Guangzhou JER and MyFirst. *Id.* ¶ 20.

**C. WobbelWorks' Practicing Products**

WobbleWorks sells within the United States 3D printing pens that practice the Asserted Patents, including the exemplary claims that WobbleWorks has identified as infringed by Defendants throughout this Complaint. *Id.* ¶ 21. WobbleWorks has and continues to market its 3D printing pens that practice the Asserted Patents, including the exemplary claims that WobbleWorks has identified as infringed by Defendants throughout this Complaint. *Id.* WobleWorks has done so by, for example, notifying the public that its 3D printing pens are subject to WobbleWorks' patents in product manuals accompanied by an address to a page on WobbleWorks' website. *Id.* The page on WobbleWorks' website (https://wobbleworks.net/patents) associates WobbleWorks' 3D printing pens with the Asserted Patents. *Id.*

/ / /

**D. Prior Proceedings Regarding Asserted Patents**

The -444 Patent—which, again, is in the same patent family as all the Asserted Patents—has had its validity challenged before the USPTO's Patent Trial and Appeal Board. *Id.* ¶ 22. The Patent Trial and Appeal Board declined to institute a trial because the challenging party had "failed to demonstrate a reasonable likelihood that it would prevail in showing that at least one claim of the -444 patent is unpatentable. . . ." *Id.* Defendant Guangzhou JER was identified as a real party-in-interest in the aforementioned challenge before the Patent Trial and Appeal Board. *Id.* ¶ 23.

WobbleWorks has also previously asserted the -444 Patent against a third-party competitor in this District. Ex. M. Attached as Exhibit M is a copy of the Complaint that initiated that action. *Id.* ¶ 24. That third-party competitor identified Guangzhou JER as the "supplier/manufacturer" of the infringing 3D printing pens that were accused in that action. *Id.*

The patent family that includes all the Asserted Patents also includes European Patent EP 2 928 672 B1 (the "EP '672 Patent"). *Id.* ¶ 25. WobbleWorks has thus far obtained three preliminary injunctions in Germany against parties infringing the EP '672 Patent:

1. The Regional Court of Nuremberg-Fürth issued a preliminary injunction against MyFirst Asia Pte Ltd. on January 31, 2024, in Case No. 19 O 581/24.[2]
2. The Regional Court of Nuremberg-Fürth issued a preliminary injunction against Guangzhou JER on January 27, 2026.
3. The Munich Regional Court issued a preliminary injunction against guang zhou shu yu ke ji you xian gong si on January 27, 2026.

*Id.* ¶ 26.

**E. The Present Action**

On May 28, 2025, WobbleWorks informed MyFirst Asia PTE Ltd. that it was infringing the Asserted Patents. *Id.* ¶ 27. In addition to manufacturing infringing products for MyFirst, Guangzhou JER also manufactures infringing products for MyFirst Asia Pte Ltd. MyFirst is in a corporate family with MyFirst Asia Pte. Ltd. *Id.* ¶ 28. Guangzhou JER, MyFirst Asia Pte Ltd., and MyFirst are all competitors of WobbleWorks. *Id.* ¶ 29. Guangzhou JER, MyFirst Asia Pte Ltd., and MyFirst all sell 3D printing pens that compete with 3D printing pens that WobbleWorks sells. *Id.* ¶ 30. At least

---

[2] As noted in MyFirst's Notice of Supplemental Authority, the preliminary injunction issued by the German Regional Court was dissolved and an application for injunctive relief based on patent infringement was rejected. Dkt. No. 61-2 at 2.

Guangzhou JER and MyFirst USA, Inc. sell 3D printing pens in the United States that compete with 3D printing pens that WobbleWorks sells in the United States. *Id.*

## II. Procedural History

WobbleWorks filed its Complaint on February 16, 2026, alleging patent infringement on five of its patents. *See* Compl. On March 3, 2026, WobbleWorks filed a Motion for Preliminary Injunction. Dkt. No. 18. The Motion for Preliminary Injunction was accompanied by a Declaration from Maxwell Bogue, Dkt. No. 18-1 ("Bogue Decl."), and Peter Bressler, Dkt No. 18-3 ("Bressler Decl."). On March 5, 2026, the Court granted WobbleWorks's Application to file under seal its Motion for Preliminary Injunction. Dkt. No. 23.

On March 16, 2026, MyFirst filed an Ex Parte Application to continue the hearing on the Motion for Preliminary Injunction. Dkt. No. 29. On March 17, 2026, WobbleWorks filed an opposition to the Ex Parte Application. Dkt. No. 31. On March 13, 2026, the Court granted the Ex Parte Application, extending the parties' deadlines regarding the Motion by twenty-one days. Dkt. No. 28. On March 23, 2026, MyFirst filed an opposition to the Motion for Preliminary Injunction. Dkt. No. 35. The opposition was accompanied by a Declaration from Tim Osswald. Dkt. No. 35-2 ("Osswald Decl."). On March 24, 2026, MyFirst filed a Notice of Errata concerning its opposition. Dkt. No. 36. On March 30, 2026, WobbleWorks filed a Reply in Support of the Motion for Preliminary Injunction. Dkt. No. 37. On March 31, 2026, WobbleWorks filed a Notice of Errata, Dkt. No. 39, where it attached the corrected Reply, Dkt. No. 39-1. The Reply was accompanied by a Reply Declaration from Bressler. Dkt. No. 37-2 ("Bressler Reply Decl."). The Court held a hearing on the Motion for Preliminary Injunction on April 16, 2026.

On April 13, 2026, MyFirst filed the instant Motion and RJN. Motion; RJN. On April 27, 2026, WobbleWorks filed an opposition to the Motion. Dkt. No. 56 ("Opposition"). On May 4, 2026, MyFirst filed a Reply. Dkt. No. 58 ("Reply"). On May 13, 2026, MyFirst filed a Notice of Supplemental Authority. Dkt. No. 61.

**REQUEST FOR JUDICIAL NOTICE (DKT. NO. 49)**

**I. Applicable Law**

A court may judicially notice facts that: "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Under this standard, courts may judicially notice "undisputed matters of public record," but generally may not notice "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002).

On a motion to dismiss, courts are generally prohibited from "consider[ing] any material beyond the pleadings." *United States v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011) (quoting *Lee*, 250 F.3d at 688). Courts generally only consider the complaint and other materials "submitted with and attached to the Complaint." *Id.* at 999. Documents not attached to the complaint—including documents that might otherwise be subject to judicial notice—may only be considered if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Id.* (citing *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)).

**II. Discussion**

In support of its Motion, MyFirst requests the Court judicially notice eleven (11) facts and documents. *See* RJN. WobbleWorks has not filed an opposition to the request. The facts and documents are listed below (with descriptions based on MyFirst's descriptions of the documents):

1. Exhibit 2 to Fu Declaration: a true and correct copy of excerpts of the prosecution history of U.S. Patent No. 9,731,444 (the "'444 Patent," Exhibit A to Complaint, ECF 001-01);
2. Exhibit 3 to Fu Declaration: a true and correct copy of excerpts of the prosecution history of U.S. Patent No. 11,466,852 (the "'852 Patent," Exhibit C to Complaint, ECF 001-03);
3. Exhibit 4 to Fu Declaration: a true and correct copy of excerpts of the prosecution history of U.S. Patent No. 11,766,819 (the "'819 Patent," Exhibit D to Complaint, ECF 001-04);
4. Exhibit 5 to Fu Declaration: a true and correct copy of excerpts of the prosecution history of U.S. Patent No. 12,280,529 (the "'529 Patent," Exhibit E to Complaint, ECF 001-05);

5. Exhibit 6 to Fu Declaration: a true and correct copy of the Patent Owner's Preliminary Response, IPR 2018-01414, Paper 7 (Oct. 24, 2018);
6. Exhibit 7 to Fu Declaration: a true and correct copy of U.S. Patent No. 7,604,470 (the "'470 Patent");
7. Exhibit 8 to Fu Declaration: a true and correct copy of U.S. Patent No. 6,460,481 (the "'481 Patent," cited in the prosecution history of the asserted '444 Patent ('444 Patent Pros. Hist., 2016-12-16 List of References Cited by Examiner, p. 302));
8. Exhibit 9 to Fu Declaration: a true and correct copy of U.S. Patent No. 3,604,597 (the "'597 Patent," cited in the prosecution history of the asserted '444 Patent ('444 Patent Pros. Hist., 2016-12-16 List of References Cited by Examiner, p. 302));
9. Exhibit 10 to Fu Declaration: a true and correct copy of U.S. Patent No. 5,121,329 (the "'329 Patent," cited in the prosecution history of the asserted '444 Patent ('444 Patent Pros. Hist., 2016-12-16 List of References Cited by Examiner, p. 303)); and
10. Exhibit 11 to Fu Declaration: a true and correct copy of U.S. Patent No. 3,665,158 (the "'158 Patent", cited in the prosecution history of the asserted '444 Patent ('444 Patent Pros. Hist., 2016-12-16 List of References Cited by Examiner, p. 307)).

*See* RJN. Exhibits 2-11 are referred to and relied on by the Complaint and no party questions the authenticity of the exhibits. Accordingly, the Court GRANTS MyFirst's Request for Judicial Notice as to all documents.

## MOTION TO DISMISS (DKT. NO. 48)

### I. Applicable Law

#### A. 35 U.S.C. § 101

Section 101 of the Patent Act provides that "[w]however invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101. There are three narrow judicial exceptions to this broad grant of eligibility: laws of nature, natural phenomena, and abstract ideas. *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).

To determine whether a claim falls within one of these exceptions, courts apply the two-step framework set forth in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012). At step one, the court considers the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1367–68 (Fed. Cir. 2020). This inquiry is informed by the claim language and the specification. *Id.* If the claims are not directed to a patent-ineligible concept, the analysis ends and the claims are patent-eligible under Section 101. *Id.* at 1368. If the claims are directed to a patent-ineligible concept, the court proceeds to step two and considers whether the claim elements, individually and as an ordered combination, contain an "inventive concept" sufficient to transform the nature of the claim into a patent-eligible application. *Alice*, 573 U.S. at 217-18. This requires assessing whether the additional elements amount to "significantly more" than the ineligible concept itself. *Id.* The Supreme Court has long recognized that applications of scientific principles to concrete structures or processes may be patentable. *See Diamond v. Diehr*, 450 U.S. 175, 187 (1981); *Mackay Radio & Tel. Co. v. Radio Corp. of Am.*, 306 U.S. 86, 94 (1939).

Although patent eligibility under Section 101 is ultimately a question of law, step two may involve underlying questions of fact as it may depend on subsidiary factual inquiries, including whether the claimed elements or their ordered combination are "well understood, routine, and conventional" to a person of ordinary skill in the art at the time of the invention. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). This issue is a question of fact, which must be proven by clear and convincing evidence. *Id.*; *see also Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016). At the pleading stage, courts may resolve Section 101 as a matter of law only where there are no material factual disputes bearing on eligibility. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018).

## II. Discussion

The parties dispute whether WobbleWorks' patent claims are patentable under 35 U.S.C. § 101. *See* Motion; Opposition; Reply. MyFirst contends that claim one of the -444 patent is representative of all other asserted claims and WobbleWorks addresses but does not adopt claim one of the -444 patent as representative in its Opposition. Motion at 7-8; Opposition at 1-4; Reply at 2-3. Thus, the Court will address claim one of the -444 patent ("Representative Claim") to determine patentability under Section 101. *e-Numerate Solutions, Inc. v. United States*, 149 Fed. Cl. 563, 574 (2020) ("A single claim may serve as representative for multiple asserted patents."); *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1162 (Fed. Cir. 2018).

The Representative Claim sets forth the following:

| **Structure** | **Claim One of the -444 Patent** |
|---|---|
| Preamble | A three-dimensional (3D) drawing device comprising: |
| Housing | A **housing** configured to fit in a user's hand and shaped to allow manipulation of the housing like a pen, the housing having a first and second end, and a **port** configured for introduction of a strand of feed stock into an internal volume of the housing, the housing having at least one **cooling port** extending between the internal volume and an ambient atmosphere; |
| Actuators | A first **actuator** and a second **actuator** each coupled to the housing and positioned to be actuated by the user's hand while holding the housing; |
| Motor | a **motor** disposed within the internal volume and controlled in response to operation of the first actuator and the second actuator; |
| Gear Train | A **gear train** operatively coupled with the motor to receive the strand of feed stock, and configured to move the strand of feed stock when engaged with the gear train; and |

| | |
|---|---|
| Nozzle Assembly | A **nozzle assembly** disposed at the first end of the housing and at least partially within the housing, the nozzle assembly comprising an **extruder**, an **exit nozzle**, and a **guide tube**, the extruder having a **heating element** surrounded by an **insulator**, the guide tube extending between the gear train and the extruder, a first end of the guide tube positioned to receive the strand of feed stock from the gear train, a second end of the guide tube aligned with a chamber of the extruder such that the strand of feed stock is directed into the chamber, the extruder being disposed between the guide tube and the exit nozzle such that rotation of the motor causes the strand to be extruded out of the exit nozzle for permitting the user to draw in free space to form a three-dimensional object. |

Dkt. No. 1-1 at 12.

MyFirst argues that the Representative Claim: (1) is directed to a law of nature; and (2) lacks an inventive concept. *See* Motion. WobbleWorks responds that the Representative Claim: (1) involves meaningful limitations beyond the law of nature; and (2) contains inventive concepts regarding the product's configuration and combination. *See* Opposition. For the reasons stated herein, the Court finds that the Representative Claim is not directed to a law of nature and includes inventive concepts.

**A. WobbleWorks' Claims Are Not Directed to a Law of Nature.**

i. <u>MyFirst Misrepresents the Nature of the Representative Claim</u>.

MyFirst asserts that the Representative Claim is "patent-ineligible under [S]ection 101 because [it seeks] to capture well-known laws of heat transfer (conduction and convection), crystallization kinetics of polymer, and mechanics to create extrusions that can form three-dimensional objects." Motion at 14. WobbleWorks counters, stating the MyFirst improperly disregards the "actual limitations" of the Representative Claim and thus, fails to consider that the Representative Claim includes specific limitations that result in technological improvement. Opposition at 7-8.

Whether a device is "a tangible system (in [Section] 101 terms, a 'machine')" is not dispositive. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 770 (Fed. Cir. 2019). In *PowerBlock Holdings, Inc. v. iFit, Inc.*, 146 F.4th 1366 (Fed. Cir. 2025), the Federal Circuit held that although the claim language was "broad", it provided "meaningful limitations" to achieve the specified result as it was "limited to a particular type of dumbbell." *Id.* at 1371-72. Further, in *Am. Axle & Mfg., Inc. v. NeapcoHoldings LLC*, 967 F.3d 1285 (Fed. Cir. 2020), the Federal Circuit determined the patented claim ran afoul with Section 101 because it "define[d] a goal," did not "claim to have discovered a previously unknown natural law," and failed to explain specific ways in which the patented product achieved the claimed result. *Id.* at 1293-94. As a result, to maintain patent eligibility under Section 101, a claim must specify the manner in which it achieves the claimed result. *Id.*

MyFirst focuses on the prosecution of the patent and the Inter Partes Review ("IPR") proceeding, emphasizing that WobbleWorks "repeatedly argued that the invention's novelty lies in its ability to immediately form freestanding 3D structures in free space." Motion at 14; Dkt. No. 48-11 at 6. MyFirst contends that the immediacy with which the 3D printing pen "produce[s] a freestanding 3D drawing or structure" "is not determined by the claimed device but is merely the result of natural laws at work," which is "easily proven by swapping out materials with different compositions." Motion at 15; Reply at 3-4. As such, MyFirst concludes that the Representative Claim seeks to patent a "natural phenomenon." Motion at 16. But MyFirst's contention fails to fully address WobbleWorks' claim and arguments.

During the patent prosecution, WobbleWorks explicitly posited that the achieved result—permitting the user to draw in free space to form a three-dimensional object—is made possible by (1) "a three-dimensional drawing device"; (2) "that is compact enough to 'be held in a user's hand' to permit the user to draw in free space to form" a three-dimensional object; (3) using "'a strand' of feed stock"; and (4) a "gear train and housing" "'configured to accept a strand of feed stock and to be held in a user's hand[.]'" Dkt. No. 35-5 at 319-23. As such, WobbleWorks concedes that there is similar prior art but emphasizes that the Representative Claim "recite[s] a different, improved, device architecture." Opposition at 10.

Similarly, during the IPR proceedings, WobbleWorks argued that the "entire thrust of the [-]444 patent—from beginning to end and as emphasized during the prosecution history—is a device structured to have the functionality of 'permit[ting] the user to draw in free space to form a three-dimensional object.'" Dkt. No. 48-11 at 11. Thus, contrary to MyFirst's assertion, WobbleWorks' claim focuses on the technological device designed in a particular method to achieve the claimed result. *Alice*, 573 U.S. at 217. This is substantiated by the claim itself. It discusses how the device comprises of housing, actuators, motor, gear train, and nozzle assembly —each contributing a specific way to the claimed device. The housing includes multiple ports and is "configured to fit in user's hand and shaped to allow manipulation of the housing like a pen." Dkt. No. 1-1 at 12. There are two actuators coupled to the housing. *Id.* The motor is 'controlled in response" to the actuators. *Id.* The gear train is coupled with the motor and relates to the "strand of feed stock." *Id.* And the nozzle assembly is made up of numerous components with specific arrangements "permitting the user to draw in free space to form a three-dimensional object." *Id.* In all, the claim details numerous device parts with specific configurations that work together to achieve the claimed result.[3] *PowerBlock Holdings*, 146 F.4th at 1373 (considering a claim "in [its] entirety to ascertain whether [its] character as a whole is directed to excluded subject matter").

Although the Representative Claim relies upon natural law, "an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice*, 573 U.S. at 217; *see id.* ("At some level, 'all inventions[] embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" (quoting *Mayo*, 566 U.S. at 71)); *id.* ("'[A]pplication[s]' of such concepts 'to a new and useful end,' we have said, remain eligible for patent protection." (quoting *Gottschalk v. Benson,* 409 U.S. 63, 67 (1972))). In sum, the Representative Claim is "directed to a specific 3D drawing pen" with specific components working in a "specific way to achieve a specific result." Opposition at 6-9. Such a claim does not run afoul with Section 101.

---

[3] In MyFirst's Reply, it reiterates that the "essence" of the asserted claims "is to heat[] material[s] that cool[] and [solidify] in free space over time." Reply at 3-4. But MyFirst appears to focus on the claimed result rather than the "meaningful limitations" to achieve the specified result. *PowerBlock Holdings*, 146 F.4th at 1371-72. MyFirst also claims that WobbleWorks does not explain anything "specific" about the components. Reply at 7. But as discussed above, the claim itself details the manner in which the components operate. *See* Dkt. No. 1-1 at 12.

ii. MyFirst's Cited Authorities Are Distinguishable.

MyFirst relies on the following authorities to assert that the Representative Claim violates Section 101: (1) *Electric Power Grp., L.L.C. v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016); (2) *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019); (3) *Am. Axle & Manu., Inc. v. Neapco Holdings, LLC*, 967 F.3d 1285 (Fed. Cir. 2020); and (4) *O'Reilly v. Morse*, 56 U.S. 62 (1853). Motion at 7, 13-14, 16-18.

In *Electic Power*, *ChargePoint*, and *Am. Axle*, the Federal Circuit found that the claims at issue were directed at a process of gathering information or an abstract idea, rather than a specific device as present in this matter. *Electric Power*, 830 F.3d at 1354 ("The advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions."); *ChargePoint*, 920 F.3d at 770 ("[T]he inventors here had the good idea to add networking capabilities to existing charging stations to facilitate various business interactions. But that is where they stopped, and that is all they patented."); *Am. Axle*, 967 F.3d at 1295 ("What is missing is any physical structure or steps for achieving the claimed result. The focus of the claimed advance here is simply the concept of achieving that result, by whatever structures or steps happen to work.").

And unlike in *O'Reily*, the Supreme Court upheld patent claims where specific devices were tethered to the claimed result and rejected a claim that sought to patent a natural law regardless of the means of achieving the result. *O'Reilly*, 56 U.S. at 112-13. In sum, MyFirst's cited authorities are distinguishable given that WobbleWorks does not attempt to patent a natural law result but rather is "limited to a particular machine . . . specifically configured 'to improve the user's control over extrusion and free-space drawing.'" Opposition at 14.

MyFirst, in its Reply, contends that *PowerBlock Holdings* and *CardioNet* are not on point because they concerned patent-eligibility in the abstract idea context. Reply at 5-6. It further emphasizes that *Am. Axle* is relevant because it concerns claims "directed at law of nature." *Id.* at 6. The fact that *PowerBlock Holdings* and *CardioNet* involved abstract ideas rather than natural laws does not render the holdings inapplicable to this matter. The *Alice*/*Mayo* framework applies to each judicial exception recognized by *Chakrabarty*. 447 U.S. at 309. In *PowerBlock*, *CardioNet*, and *Am.*

*Axle*, the federal circuit stood for the proposition that a patent cannot claim a result dictated by the judicial exceptions. *Am. Axle*, 967 F.3d at 1295; *PowerBlock Holdings*, 146 F.4th at 1373; *CardioNet*, 955 F.3d at 1367–68. As stated, MyFirst characterizes the Representative Claim as WobbleWorks' attempt to patent the functionality of "permit[ting] the user to draw in free space to form a three-dimensional object." Reply at 7. Doing so fails to account for the focal point of the -444 patent—a specific device architecture that achieves the claimed result. Opposition at 14. As a result, the Court finds MyFirst's arguments unavailing.

Taken together, MyFirst has not established that the Representative Claim is directed at a law of nature. *Alice*, 573 U.S. at 217-18; *Mayo*, 566 U.S. at 71; *Chakrabarty*, 447 U.S. at 309. Because the Representative Claim is directed to a patent-eligible subject under step one of the *Alice*/*Mayo* framework, the Court need not address the parties' arguments as to step two but will proceed to do so.

**B. The Representative Claim Involves Inventive Concepts.**

It is MyFirst's burden to prove, by clear and convincing evidence, that a "claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field." *Berkheimer*, 881 F.3d at 1368. MyFirst asserts that the Representative Claim adds "nothing inventive beyond the routine, merely reciting generic, conventional 3D printing extruder components arranged in a conventional and well-known manner." Motion at 18; Reply at 8. WobbleWorks argues that the specific manner regarding the device's configuration and process constitutes an inventive concept. Opposition at 15-16.

Here, WobbleWorks appears to concede the possibility that the Representative Claim's components are generic or conventional. Opposition at 15; Reply at 8. However, as claimed by WobbleWorks, the focus of the Court's step two analysis should be on the "specific arrangement of those components in the Representative Claim." *Id.* The Federal Circuit has found that an inventive concept can be based on the "non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also Am. Axle*, 967 F.3d at 1295. Therefore, the fact that a motor, gear,

actuator, heating element, nozzle are known, conventional pieces does not preclude the Representative Claim from invoking an inventive concept. *Id.*

MyFirst further contends that there is nothing conventional about the arrangement of the components because they are positioned in a conventional "ordered combination." Motion at 19; Reply at 4, 9-10. In particular, MyFirst relies on U.S. Patent No. 7,604,470 ("'470"), stating that it represents prior art of the claimed mechanical elements. *Id.* The '470 patent involves an "extrusion head that extrudes multiple materials for building 3D objects with a single drive motor." Dkt. No. 48-7 at 18. The '470 patent includes the following components just as the instant patent: (1) housing; (2) actuators; (3) motor; (4) gear mechanism; and (5) nozzle. *Id.* at 18-25. But the limitations and arrangements differ between the claims. Notably, the '470 patent does not include the Representative Claim's housing limitations such as: (1) "configured to fit in a user's hand"; (2) "shaped to allow manipulation of the housing like a pen"; (3) have "a second end"; (4) have "a port configured for introduction of a strand of feed stock into an internal volume of the housing"; and (5) have "at least one cooling port extending between the internal volume and an ambient atmosphere."[4] Dkt. No. 1-1 at 12. And the Figures of the -470 patent illustrate the significant disparity in the structure of the two patents. *See* Dkt. Nos 1-1 at 4, 48-7 at 5-6. As a result, the '470 patent does not disclose the components that parallel the limitations set forth in the -444 patent.

MyFirst then suggests that the U.S. Patent No. 6,460,481("Young") or U.S. Patent No. 3,604,597 ("Pohl") constitute prior art because they teach that an "extrusion device can be used with thermoplastics." Motion at 21-22. And MyFirst asserts U.S. Patent No. 5,121,329 ("Crump") "details printing continuously in free space rather than building up layers." *Id.* Together, MyFirst maintains that the patents "illustrate how the claimed elements, both individually and as an ordered combination, are conventional and well-known." CITE. The Young, Pohl, and Crump patents,

---

[4] In its Reply, MyFirst states that the components are not innovative because "hand-held devices with buttons capable of extruding heated materials are also very common" well before the -444 patent. Reply at 4. But as discussed, the alleged prior art does not address the specific configuration of the asserted claim and thus, the Court does not find clear and convincing evidence that the claimed arrangement is conventional. *Berkheimer*, 881 F.3d at 1368. Nor does the Court find MyFirst's contention that WobbleWorks improperly relies on the specifications of the -444 patent availing, Reply at 8, as WobbleWorks cites to components set forth in the claim, Opposition at 17; Dkt. No. 1-1 at 12.

however, similarly fail to establish that the Representative Claim does not involve an inventive concept as they do not address the specific and novel technological device and component details claimed. *See* Dkt. Nos. 48-8, 48-9, 48-10. Each, in their own respect, involves similar components working together to reach the claimed result.[5] *Id.* Although they speak to the claimed result or benefits, Reply at 8-10, none set forth, in a clear and convincing manner, the specific configuration in which the claimed result is achieved according to the Representative Claim's detailed specific arrangement—the inventive concept. Therefore, MyFirst has not met its burden to prove that the Representative Claim does not contain an inventive concept under the *Alice*/*Mayo* framework. *Alice*, 573 U.S. at 217-18; *Mayo*, 566 U.S. at 71; *Berkheimer*, 881 F.3d at 1368.

In sum, MyFirst has not demonstrated that the Representative Claim is directed to a law of nature or does not involve an inventive concept. Accordingly, MyFirst has not established patent-indelibility under Section 101.

## III. <u>Conclusion</u>

For the reasons stated herein, MyFirst's Motion to Dismiss (Dkt. No. 48) is DENIED. MyFirst's Request for Judicial Notice (Dkt. No. 49) is GRANTED.

IT IS SO ORDERED.

Dated: June 9, 2026

HON. MICHELLE WILLIAMS COURT

United States District Judge

[5] Even if these components are generally arranged in conventional locations as argued by MyFirst, Reply at 9-10, the alleged prior art does not disclose the "specific housing with specific ports, specific actuators, a specific motor, a specific gear train, and a specific nozzle assembly, all of which work together in a specific way to achieve a specific result." Dkt. No. 1-1 at 12; *see* Dkt. No. 48 at 7.