UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOBBLEWORKS, INC.,<br>Plaintiff,<br>v.<br>GUANGZHOU JER EDUCATION TECHNOLOGY et al.,<br>Defendants. | Case No.: 2:26-cv-01592-MEMF-PVC<br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION [DKT. NO. 18] AND DENYING AS MOOT REQUEST FOR RULING [DKT. NO. 78]** |

Before the Court is a Motion for a Preliminary Injunction filed by Plaintiff WobbleWorks, Inc. Dkt. No. 18 ("Motion"). For the reasons stated herein, the Court DENIES the Motion and DENIES AS MOOT the Request for Ruling on the Motion for PI pursuant to Local Rule 83.9-2, Dkt. No. 78. This Order is not a final decision on the merits of any claim or counterclaim, nor is it a decision on the merits of the factual assertions either party made in support of any claim or counterclaim.

## I. Factual Background[1]

### A. The Parties

Plaintiff WobbleWorks, Inc. ("WobbleWorks") is a Delaware corporation with a principal place of business at 1209 Orange Street, Wilmington, Delaware 19801. Compl. ¶ 1. WobbleWorks is a pioneer in the development of three-dimensional (3D) drawing devices that can be used within minutes, without needing any technical knowledge, software, or computers. *Id.* ¶ 13. WobbleWorks was founded in 2010 to develop new toy and robotics concepts. *Id.* In 2012, the company developed a new product that allows children and adults to draw 3D artwork, allowing the user to draw in the air. *Id.* Its founders brought with them experience from film, computer science, and robotics and were led by Maxwell Bogue, a former R&D project manager and consumer robotics specialist, and Peter Dilworth, an alumnus of MIT's Leg Laboratory and the MIT Media Lab. *Id.*

Defendant Guangzhou JER is a Chinese company with a principal place of business at Room 301, 3/F, Building 2, 510530, Guangdong, China. *Id.* ¶ 2. Guangzhou JER operates the website https://jer3d.com/. *Id.* Guangzhou JER has made available a page on that website https://jer3d.com/3dprinter-pen-education/ that claims it: (1) has "successfully made 3D printing pen classes available in tens of thousands of schools in South Korea, Hongkong [sic], United States [sic]"; and (2) "will make [its] 3D printing pen classes available in more schools." *Id.* ¶ 11.

Defendant myFirst is a California corporation with a principal place of business at 168 North Mason Way #B1, City of Industry, California 91746. *Id.* ¶ 3. myFirst operates the website https://us.myFirst.tech/ via which it offers to sell and sells infringing 3D printing pens to customers in the United States, including in California and this District. *Id.* ¶ 7.

### B. WobbleWorks' Patents

On August 15, 2017, United States Patent No. 9,731,444 ("the '444 Patent") was duly and legally issued by the United States Patent and Trademark Office. *Id.* ¶ 14. The '444 Patent is titled

---

[1] The following factual allegations are derived from the allegations in WobbleWorks' Complaint, Dkt. No. 1 ("Compl."), unless otherwise indicated. For the purposes of these briefs, the Court treats these factual allegations as true, but at this stage of the litigation, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they *are* true.

"Hand-Held Three-Dimensional Drawing Device." *Id.* On October 6, 2020, United States Patent No. 10,792,850 ("the '850 Patent") was duly and legally issued by the United States Patent and Trademark Office. *Id.* ¶ 15. The '850 Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.* On September 20, 2022, United States Patent No. 11,446,852 ("the '852 Patent") was duly and legally issued by the United States Patent and Trademark Office. *Id.* ¶ 16. The '852 Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.* On September 26, 2023, United States Patent No. 11,766,819 ("the '819 Patent") was duly and legally issued by the United States Patent and Trademark Office. *Id.* ¶ 17. The '819 Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.* On April 22, 2025, United States Patent No. 12,280,529 ("the '529 Patent") was duly and legally issued by the United States Patent and Trademark Office. *Id.* ¶ 18. The '529 Patent is titled "Hand-Held Three-Dimensional Drawing Device." *Id.*

WobbleWorks is the assignee of all right, title, and interest in the '444, '850, '852, '819, and '529 Patents (collectively, the "Asserted Patents"), including all rights to enforce and prosecute actions for infringement and to collect damages, including past damages, for all relevant times against infringers of the Asserted Patents. *Id.* ¶ 19. Accordingly, WobbleWorks possesses the exclusive right and standing to prosecute the present action for infringement of the Asserted Patents by Guangzhou JER and myFirst. *Id.* ¶ 20.

**C. WobbleWorks' Practicing Products**

WobbleWorks offers to sell and sells within the United States 3D printing pens that practice the Asserted Patents, including the exemplary claims that WobbleWorks has identified as infringed by Defendants throughout this Complaint. *Id.* ¶ 21. WobbleWorks has and continues to mark its 3D printing pens that practice the Asserted Patents, including the exemplary claims that WobbleWorks has identified as infringed by Defendants throughout this Complaint. *Id.* WobbleWorks has done so by, for example, notifying the public that its 3D printing pens are subject to WobbleWorks' patents in product manuals accompanied by an address to a page on WobbleWorks' website. *Id.* The page on WobbleWorks' website (https://wobbleworks.net/patents) associates WobbleWorks' 3D printing pens with the Asserted Patents. *Id.*

/ / /

**D. Prior Proceedings Regarding Asserted Patents**

The '444 Patent—which, again, is in the same patent family as all the Asserted Patents—has had its validity challenged before the United States Patent and Trademark Office's Patent Trial and Appeal Board. *Id.* ¶ 22. The Patent Trial and Appeal Board declined to institute a trial because the challenging party had "failed to demonstrate a reasonable likelihood that it would prevail in showing that at least one claim of the '444 patent is unpatentable . . . ." *Id.* Defendant Guangzhou JER was identified as a real party-in-interest in the aforementioned challenge before the Patent Trial and Appeal Board. *Id.* ¶ 23.

WobbleWorks has also previously asserted the '444 Patent against a third-party competitor in this District. Ex. M. Attached as Exhibit M is a copy of the Complaint that initiated that action. *Id.* ¶ 24. That third-party competitor identified Guangzhou JER as the "supplier/manufacturer" of the infringing 3D printing pens that were accused in that action. *Id.*

The patent family that includes all the Asserted Patents also includes European Patent EP 2 928 672 B1 (the "EP '672 Patent"). *Id.* ¶ 25. WobbleWorks has thus far obtained three preliminary injunctions in Germany against parties infringing the EP '672 Patent:

1. The Regional Court of Nuremberg-Fürth issued a preliminary injunction against myFirst Asia Pte Ltd. on January 31, 2024, in Case No. 19 O 581/24.
2. The Regional Court of Nuremberg-Fürth issued a preliminary injunction against Guangzhou JER on January 27, 2026.
3. The Munich Regional Court issued a preliminary injunction against guang zhou shu yu ke ji you xian gong si on January 27, 2026.

*Id.* ¶ 26.

**E. The Present Action**

On May 28, 2025, WobbleWorks informed myFirst Asia PTE Ltd. that it was infringing the Asserted Patents. *Id.* ¶ 27. In addition to manufacturing infringing products for myFirst USA, Inc., Guangzhou JER also manufactures infringing products for myFirst Asia Pte Ltd. myFirst USA, Inc. is in a corporate family with myFirst Asia Pte. Ltd. *Id.* ¶ 28. Guangzhou JER, myFirst Asia Pte Ltd., and myFirst USA, Inc. are all competitors of WobbleWorks. *Id.* ¶ 29. Guangzhou JER, myFirst Asia Pte Ltd., and myFirst USA, Inc. all offer to sell and sell 3D printing pens that compete with 3D printing pens that WobbleWorks offers to sell and sells. *Id.* ¶ 30. At least Guangzhou JER and

myFirst USA, Inc. offer to sell and sell 3D printing pens in the United States that compete with 3D printing pens that WobbleWorks offers to sell and sells in the United States. *Id.*

**II. <u>Procedural History</u>**

WobbleWorks filed its Complaint on February 16, 2026, alleging patent infringement on five of its patents. *See* Compl. On March 3, 2026, WobbleWorks filed the instant Motion. Motion. The Motion was accompanied by a Declaration from Maxwell Bogue, Dkt. No. 18-1 ("Bogue Decl."), and Peter Bressler, Dkt No. 18-3 ("Bressler Decl."). On March 5, 2026, the Court granted WobbleWorks' Application to file under seal its Motion. Dkt. No. 23.

On March 16, 2026, myFirst filed an Ex Parte Application to continue the hearing on the Motion. Dkt. No. 29. On March 17, 2026, WobbleWorks filed an opposition to the Ex Parte Application. Dkt. No. 31. On March 13, 2026, the Court GRANTED the Ex Parte Application, extending the parties' deadlines regarding the Motion by twenty-one days. Dkt. No. 28. On March 23, 2026, myFirst filed an opposition. Dkt. No. 35 ("Opposition"). The Opposition was accompanied by a Declaration from Tim Osswald. Dkt. No. 35-2 ("Osswald Decl."). On March 24, 2026, myFirst filed a Notice of Errata concerning its Opposition. Dkt. No. 36. On March 30, 2026, WobbleWorks filed a Reply. Dkt. No. 37. On March 31, 2026, WobbleWorks filed a Notice of Errata, Dkt. No. 39, where it attached the corrected Reply, Dkt. No. 39-1 ("Reply"). The Reply was accompanied by a Reply Declaration from Bressler. Dkt. No. 37-2 ("Bressler Reply Decl.").

The Court held a hearing on the Motion on April 16, 2026.

**III. <u>Applicable Law</u>**

A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20 ("*Winter* Test").

The Ninth Circuit also recognizes a "serious questions" variation of the Winter Test. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). Under this variation, "a preliminary injunction is proper if there are serious questions going to the merits; there is a

likelihood of irreparable injury to the plaintiff; the balance of the hardships tips sharply in favor of plaintiff; and injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

A preliminary injunction is an extraordinary and drastic remedy" and "should not be granted unless the movant, *by clear showing*, carries the burden of persuasion." *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (emphasis in original) (quotations omitted). At this stage, the Court is only determining whether Defendants have met their burden for a preliminary injunction. *See Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). Accordingly, as stated above, this Order is not a final decision on the merits of any claim or counterclaim, nor is it a decision on the merits of the factual assertions either party made in support of any claim or counterclaim. *See id.*

## IV. <u>Discussion</u>

A party seeking a preliminary injunction must establish that it is "likely to suffer irreparable harm in the absence of preliminary relief." *See Winter*, 555 U.S. at 24. "Where the alleged injury is not quantifiable, the harm cannot be adequately compensated and is irreparable." *Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1378 (Fed. Cir. 2024) (citing *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017)). "It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988). "[T]he fact that other infringers may be in the marketplace does not negate irreparable harm." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005). Evidence of "consumer confusion, reputational harm, and loss of good will" can support a showing of irreparably harm. *Tinnus Enters., LLC v. Telebrands Corp.,* 846 F.3d 1190, 1200-01 (Fed. Cir. 2017); *see also Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 645 (Fed. Cir. 2015) (considering harm regarding "the 'ecosystem effect'—that is, the effect the sale of a single product can have on downstream sales of accessories, computers, software applications, and future smartphones and tablets").

WobbleWorks argues that, as a result of myFirst's infringement, it has suffered the following harms: (1) loss of market share; (2) loss in revenue; (3) reputational and business relationship damage; (4) brand recognition damage; and (5) negative ecosystem effects. Motion at 10-11. In response, myFirst claims that: (1) WobbleWorks' "Eight-Year Delay" in seeking injunctive relief negates irreparable harm; (2) "purely economic harms are not irreparable"; and (3) WobbleWorks' alleged reputational harm is conclusory. Opposition at 7-9.

WobbleWorks, through the Declaration of Maxwell Bogue, asserts that WobbleWorks, based on prior market share losses when it did not have patent protection, will be subject to a 30-40% market share drop and thus, suffer a loss in revenue without preliminary relief. Motion at 16-17; Bogue Decl. ¶ 29. It further contends that allowing myFirst to continue selling the 3D printing pens will lead to consumers "continuing to buy products" from myFirst, depriving WobbleWorks of future sales related to its other products such as filaments. Motion at 18-19; Bogue Decl. ¶ 29. myFirst maintains that these alleged harms are not irreparable because they constitute "purely economic harm." Opposition at 8. In *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039 (9th Cir. 2015), the Ninth Circuit held that "[p]urely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." *Id.* at 1046; *see also Sampson v. Murray*, 415 U.S. 61, 61–62, 89–92 (2015) (reversing injunction against firing of probationary government employee because loss of earnings is not irreparable harm). In *Coeur d'Alene Tribe*, the Ninth Circuit upheld injunctive relief finding that the "the State [would be barred] from recovering monetary damages incurred during the course of this litigation." 794 F.3d at 1046.

Here, WobbleWorks' revenue loss concerns are monetary in nature and thus, constitute economic harm. Similarly, market share derives from company and industry sales, which are economic harms. And WobbleWorks' ecosystem damage[2] relates to the loss of sales in its other products—also constituting a form of economic harm. The Court agrees with WobbleWorks that its economic harms are not speculative, Reply at 21-22, but these alleged harms are not irreparable as

---

[2] Ecosystem damages refer to instances where "one company's customers will continue to buy that company's products and recommend them to others." *Samsung Elecs. Co., Ltd.*, 809 F.3d at 641.

the Court finds that they can be revered later in the ordinary course of litigation. *Coeur d'Alene Tribe*, 794 F.3d at 1046.

At the April 16, 2026 hearing, WobbleWorks pointed to *Apple Inc. v. Samsung* to argue that the Federal Circuit has held that market share and ecosystem damages constitute irreparable harm. There, the Federal Circuit explained that the moving party must demonstrate a "causal nexus" showing some connection "between the patented features and the demand for the infringing products." *Samsung Elecs. Co., Ltd.*, 809 F.3d at 641. Finding that the plaintiff provided evidence indicating that patented features caused consumers to purchase the accused devices, the court found irreparable harm. *Id.* at 642. Here, WobbleWorks has failed to establish the causal nexus as WobbleWorks has not provided evidence substantiating that consumers purchased the 3D Printing Pens due to the patented features. WobbleWorks generally claims that consumers have been confused, and it is subject to market share and ecosystem losses. Bogue Decl. ¶ 29. This does not establish the required causal nexus as it is not indicative of whether the consumers purchased the 3D Printing Pens due to the patented features. *Samsung Elecs. Co., Ltd.*, 809 F.3d at 641. Therefore, even if the Court considered market share and ecosystem effects as non-economic damages, WobbleWorks has failed to satisfy the requirements under *Apple Inc. v. Samsung*.

Also, WobbleWorks suggests that being forced to take action against myFirst's contracts with third-party retailers has damaged WobbleWorks' relationships through "unnecessary hostility" with retailers. Motion at 17-18; Reply at 22; Bogue Decl. ¶¶ 18, 20, 29. Additionally, WobbleWorks describes how consumers are confusing the 3D printing pens manufactured by WobbleWorks and myFirst, thereby "underm[ing] the faith retailers and consumers have in WobbleWorks." Opposition at 18; Bogue Decl. ¶ 29. However, as argued by myFirst, WobbleWorks fails to point to evidence beyond its co-founder's Declaration, substantiating deteriorated relationships with retailers regarding the 3D printing pens. Opposition at 8. The Bogue Declaration does discuss retailers that WobbleWorks was "negotiating" contracts with but fails to set forth whether the relationship was hindered when WobbleWorks raised its patent rights against the retailer's and myFirst's contract. Bogue Decl. ¶ 29. Rather, Bogue states that it "conceivably soured WobbleWorks' relationship" with the retailer. *Id.* At the April 16, 2026 hearing, WobbleWorks provided that it sent cease and

desist letters to its retailers upon discovering their attempts to work with myFirst. WobbleWorks claims that this conduct harmed its relationships with the retailers but similarly fails to detail how those relationships were damaged. Without additional concrete evidence indicating deteriorated relationships, WobbleWorks has not demonstrated that it is likely to be *irreparably* harmed as to its business relationships. *See Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); *Winter*, 555 U.S. at 22 (finding the Ninth Circuit's 'possibility' standard "too lenient" in determining whether "irreparable injury is likely in the absence of an injunction").

As to consumer confusion, the Bogue Declaration explicitly states that "WobbleWorks has received returns of Unlicensed 3D Printing Pens from consumers who thought they were WobbleWorks' 3D printing pens." Bogue Decl. ¶ 29. Because consumers appear to be mistaken as to which 3D printing pens are WobbleWorks', the Court finds that there is a likelihood that consumers are suffering from brand confusion when purchasing 3D printing pens. Such confusion could negatively impact WobbleWorks' brand recognition, particularly if consumers return non-WobbleWorks' products, believing that they were made by myFirst.[3] *Id.*; *Tinnus Enters., LLC,* 846 F.3d at 1200-01. Harm to one's brand recognition cannot be considered a purely economic harm and because WobbleWorks pointed to actual consumer confusion, the harm is not speculative. *Winter*, 555 U.S. at 22. As such, the Court finds irreparable harm can be based on consumer confusion. But as discussed further, WobbleWorks' failure to enforce its patent rights substantiates that WobbleWorks will not be irreparably harmed absent injunctive relief.

myFirst asserts that the fact that WobbleWorks did not enforce its patent rights for eight years indicates that it does "not face irreparable injury." Opposition at 7-8. myFirst cites to *ZapIp LLC v. FlyDive Inc.*, No. 16-01607, 2017 WL 8292394 (C.D. Cal. Oct. 19, 2017), where the court held that "the most obvious indication that [plaintiff] does not face irreparable injury is [plaintiff's

---

[3] At the April 16, 2026 hearing, myFirst conceded that consumers have confused the products during returns but emphasizes that WobbleWorks has not provided evidence that consumers returned the product for quality issues. Thus, WobbleWorks brand was not negatively impacted. myFirst's argument misinterprets the standard in *Tinnus Enters., LLC*, which focuses on consumers' "false association" between the parties and products. 846 F.3d at 1201.

thirteen month] delay in bringing a lawsuit to enforce" the patent. *Id.* at *4. Further, in *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551 (Fed. Cir. 1995), the Federal Circuit considered a seventeen-month delay in seeking a preliminary injunction demonstrated "that there is no apparent urgency to the request for injunctive relief." *Id.* at 1557.

WobbleWorks admits that it was aware of Guangzhou JER's infringing activity "in approximately 2017 or 2018" and of myFirst's infringing activity in 2023. Bogue Decl. ¶¶ 15-16. WobbleWorks explains that there was no reason to seek relief in the United States until recently given that: (1) it negotiated a "restrictive license" with Guangzhou JER's only United States reseller; and (2) it was not aware of myFirst's infringing presence in the United States until early 2026. Reply at 18-19. Although WobbleWorks contends that it only found the need to seek relief in the United States recently, the record demonstrates that it was aware of Guangzhou JER's and myFirst's United States presence in 2025. Bogue Decl. ¶¶ 21 (acknowledging a representative of myFirst was at a Sams Club's U.S. headquarters in August 2025), 22 (acknowledging that Guangzhou JER imported infringing products in September 2025).

At the April 16, 2026 hearing, myFirst directed the Court to a January 14, 2025 email exchange between representatives of myFirst and WobbleWorks. There, WobbleWorks' representative indicated WobbleWorks' awareness that myFirst has "appeared at trade shows and sales meeting[s] and stated that they have all the rights and certifications to sell in markets where [WobbleWorks has] patents." Dkt. No. 37-8 at 2. Since WobbleWorks possesses U.S. patents, there is a reasonable implication that it became aware of the alleged infringing conduct in January 2025.

Taken together, it appears that WobbleWorks has been aware of Guangzhou JER's and myFirst's infringing activity and conduct to geographically expand such conduct for years, and was explicitly on notice of their United States presence in 2025.[4] Bogue Decl. ¶¶ 15-24. Despite being on notice of Guangzhou JER's and myFirst's conduct, WobbleWorkds did not seek preliminary

---

[4] In Bogue's Reply Declaration, Bogue asserts that he first became aware of the significant importation of pens for sale through Price Smart. Dkt. No. 37-1 ¶ 4. Yet, as was demonstrated during the April 16, 2026 hearing, the Reply Declaration does not assert that WobbleWorks had no notice of infringement prior to February 2026. To the contrary, the earlier Bogue declaration, Dkt. No. 43-1 at ¶¶ 18, 21, makes clear that it did.

injunctive relief until this instant Motion. In accord with Federal Circuit precedent, WobbleWorks' years of delay are indicative that it will not be irreparably harmed. *High Tech Med. Instrumentation, Inc.*, 49 F.3d at 1557.

Accordingly, the Court determines that WobbleWorks has not demonstrated a likelihood of irreparable harm. As such, preliminary injunctive relief is not warranted. The Court, therefore need not address WobbleWorks' likelihood of success on the merits.

## V. <u>Conclusion</u>

WobbleWorks has failed to show the required elements for a preliminary injunction.[5] *See Winter*, 555 U.S. at 24. In light of this, WobbleWorks has failed to meet its burden.

For the reasons stated herein, WobbleWorks' Motion for a Preliminary Injunction (Dkt. No. 18) is DENIED.[6]

IT IS SO ORDERED.



Dated: August 25, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

---

[5] Because the Court declines to enjoin myFirst, the Court need not address whether myFirst is entitled to a $4,000,000 bond. Reply at 23.

[6] The Request for Ruling on the Motion for PI pursuant to Local Rule 83.9-2, Dkt. No. 78, is therefore DENIED AS MOOT.